J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Nicholas J. Peterson (287902)
**Kerley Schaffer LLP**
1939 Harrison Street, Suite 900
Oakland, California 94612
Telephone: (510) 379-5801
service@kslaw.us

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KATHY MYLES,** an individual, and **WILLIE DANIELS**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**STATE FARM GENERAL INSURANCE COMPANY,** an Illinois corporation, and **DOES 1 through 10**,<br><br>Defendants. | Case No.: 2:26-cv-00452<br><br>**<u>DISCOVERY MATTER</u>**<br><br>Magistrate Judge Michael B. Kaufman<br><br>**PLAINTIFFS' BRIEF RE: PROTECTIVE ORDER DISPUTED ISSUES**<br><br>**Hearing Date: July 8, 2026**<br>**Time: 10:00 a.m.**<br>**Courtroom:** 255 E. Temple St., Los Angeles, Courtroom 790, 7th Floor<br><br>Complaint Filed: January 15, 2026 |

# INTRODUCTION

Kathy Myles' and Willie Daniels' (Myles) home in Gardena suffered a devastating water loss in October 2025. The source was a failed hot water supply line inside their slab foundation. They are insured by State Farm General Insurance Company (State Farm). Without seeing the failed line, or hiring an expert to investigate, State Farm denied the claim, paying nothing to remove potentially thousands of gallons of water from the Myles' home, for the repairs which will run to hundreds of thousands of dollars, or for loss of use during a months'-long fix.

This lawsuit followed.

State Farm's baseless denial of the Myles' claim is part of a decade old, consultant-driven scheme by State Farm to reduce its water loss exposure in California. The scheme—sometimes called the "Water Initiative"—has been admitted by State Farm and proven in courts around this state repeatedly in the last few years. *See, e.g., Nargizyan v. State Farm,* 120 Cal.App.5th 581 (2026).

The Myles' lawyers have litigated several such cases against State Farm over the past decade, including an all but identical dispute just a year ago in this Court: *Tong v. State Farm,* No. 2:24-cv-02219-DSF-MAR, 2024 WL 5472414 (C.D. Cal., Dec. 20, 2024) [court ordered production of a broad swath of State Farm documents relating to Water Initiative, training, and personnel information.]

During these cases, State Farm has sought to avoid producing evidence of its institutional practices related to its water-loss handling in three ways:

1. As the *Tong* court found (*Tong,* 2024 WL 5472414, at *12-13), in responses to requests for production across its water loss cases, State Farm:
    a. defaults in its obligation to search its records and serves incomplete and/or inconsistent responses to requests for documents relating to its institutional practices;
    b. fails to certify that it has searched for and produced all non-privileged responsive documents; and

c. inconsistently produces responsive documents to similar discovery requests in cases involving nearly identical water loss claims and denials.

The Myles have served many such requests for pattern and institutional evidence in this case, as State Farm acknowledges in its brief. And in response, State Farm has adopted the identical practices the *Tong* court found are improper—it has failed to search for documents, it has failed to certify that it has searched for and produced documents, and it has produced a tiny fraction of the materials we know exist, based on experience in other cases.

The parties conferred on June 19, 2026. The process was of little value. State Farm will continue to pay its delay and obstruction game unless and until this Court, as the *Tong* court did, requires State Farm to satisfy its discovery obligations.

2. Due to State Farm's practice of refusing to produce evidence of its institutional practices, in related document requests, lawyers for insureds commonly identify documents by type, title and Bates range, relying on information learned from prior cases. In response, State Farm seeks terminating and aggressive money sanctions for alleged violations of "use" provisions in protective orders. *See* Exhibit A, *Pachall v. State Farm,* San Diego Superior Court No. 37-2022-00044176-CU-IC-CTL, State Farm Motion for Enforcement and Sanctions. Although State Farm seeks to use the *Pachall* order as evidence of perceived wrongdoing by counsel for the Myles, in fact that court denied State Farm's motion as to the issue before this Court. Exhibit B, Order Denying *Pachall* Enforcement Motion. State Farm has never convinced any court that such practices violate "use" provisions in standard protective orders, because three decades of cases are to the contrary.

3. Finally, and most relevant here, having lost its enforcement/sanctions

motions, State Farm's new strategy is to demand edits to the standard "use" provision in protective orders which seek to define "use" to bar lawyers from citing document types, titles, and Bates ranges garnered from an instant matter, elsewhere. No fully briefed court has ever accepted State Farm's argument.[1] *See* Exhibit C, *Dixon v. State Farm,* San Mateo Superior Court, No. 24-CIV-02224, Order Denying State Farm's Motion for a Protective Order.

As we show, State Farm's proposed modifications are irreconcilable with decades of settled law. But to start, here is the *Dixon* court's take on the subject:

> By seeking to prevent Plaintiff's counsel's future "use" of its confidential materials by referencing kinds, titles, and Bates numbers of documents, Defendant State Farm misconstrues the purpose of a protective order to prevent counsel from using such "information for any commercial, competitive, personal, or other purpose" [citation]: the purpose of a protective order is to prevent actions such as selling trade secrets to competing insurance companies, not to prevent counsel from using their experience gained in years of litigation from pursuing in discovery documents that Defendant State Farm has withheld. Defendant State Farm further misconstrues the kind of "competitive harm that

---

[1] State Farm's briefly constantly refers to the *Tong* ruling, in which the Court entered State Farm's modified protective order. The carrier suggests the *Tong* order supports its proposed modifications here. That is wrong. First, State Farm's proposed order in that case did not include the modifications it seeks here regarding "use." The *Tong* court was never briefed on the issue. Exhibit D, *Tong v. State Farm,* Dkt. No.41-19. Second, the *Tong* order resolved a motion to compel and State Farm's motion for a protective order together, but it entered its order *before plaintiffs' deadline to submit their brief relating to the protective order*, and as such plaintiffs never had an opportunity to respond to State Farm's baseless assertions regarding alleged prior misconduct. The primary allegation—that present counsel had in an earlier case placed into the public record State Farm's proprietary materials—is provably false. In fact, as State Farm's lawyers well know, counsel for the carrier in that case *approved and jointly filed that submission,* which remains available for public viewing today.

> protective orders are designed to prevent" [citation], which is the disclosure of Defendant State Farm's know-how as described in the substance of the documents named by its Declarants. ***That the bar comes to know of the kinds, titles, and Bates numbers of such documents and to use those in its practice to help plaintiffs gain access to discovery-responsive documents that Defendant State Farm should be producing is not a kind of "competitive harm" against which a protective order is designed to protect.***

(Exhibit C, Order p.7 (emphases added).) This Court should come to the same conclusion and reject State Farm's proposed protective order.

## ARGUMENT

### I. The Court Should Reject State Farm's Restrictive Definition of "Use".

State Farm seeks to modify the model order by specifying that *use* includes "referencing the existence or contents of Protected Material, including the titles of documents produced pursuant to this Protective Order, or Bates ranges of documents produced pursuant to this Protective Order …." (Stipulation, Dkt. No.30, pp.1:28-2:4.) That is precisely the enhancement State Farm sought to the model order in *Dixon*, and which the *Dixon* court rejected. It was the subject of State Farm's sanctions motion in *Pachall,* which the court denied in relevant part. Decades of law supports those holdings.

Before turning to the law, consider the implications of the rule State Farm contemplates. The Myles lawyers specialize in representing California property insureds. During years of litigation against State Farm, counsel has become aware of types, titles, and Bates ranges of discoverable guidelines, training, and other institutional evidence at State Farm. They *know* that such documents exist. As State Farm points out in its brief, the Myles' lawyers routinely rely on that knowledge in cases against State Farm in fashioning discovery requests, and more importantly, in moving to compel documents State Farm claims do not exist or which State Farm refuses upon request to produce.

Say those lawyers are retained tomorrow by a State Farm insured. They will have the same duty of loyalty and competence to the new client as they had to prior State Farm clients. In the new case, of course counsel cannot disclose the *substance* of confidential materials that were produced subject to protective orders in prior matters which bar *use* in other matters. But it would be illogical to require lawyers to pretend across closely related-cases against the same insurer that such materials *do not exist*. That is uniquely true where, as the *Tong* court found, State Farm routinely violates its discovery obligations when asked for the documents.

If the Court were to disagree with the *Pachall* and *Dixon* courts and accept State Farm's restrictive view, a lawyer who receives information subject to a protective order in a case against State Farm would effectively have her hands tied behind her back in every similar future retention, an outcome which would to gut the ability of counsel to provide competent representation vis a vis any particular carrier *more than once.* It would also give State Farm license to continue to obstruct discovery in the ways the *Tong* court held had been proven in that matter.

Unsurprisingly, courts have described State Farm's position here as "*absurd*". *In re Dual-Deck Video Cassette Recorder Antitrust Litig*., 10 F.3d 693, 695 (9th Cir. 1993). Start with *Royal Park Investments SA/NV v. Deutsche Bank National Trust Company*, 192 F.Supp.3d 400 (S.D.N.Y., 2016). There, the Plaintiff argued that counsel for the defendant violated the *use* limitation in a standard protective order by relying on the *existence* of documents and *Bates ranges* to obtain discovery in another case. *Id.* at 402. The court found there had been no improper *use* of confidential information; accepting Royal Park's "*interpretation would allow it to withhold relevant and discoverable documents in one action with impunity, even after producing them in a similar case…, safe in the knowledge that its adversary could not mention their existence without risking sanctions*. Royal Park's inability to identify any concrete harm suffered as a result of Deutsche Bank's conduct underscores my concern and suggests *that plaintiffs primary*

*objective is not to prevent discovery abuse by the defendants it has sued but to hamper their ability to obtain discovery to which they are entitled*." *Id.* at 403.

*Royal Park* concluded that there is no improper *use* when lawyers employ

> knowledge of what has been produced here to advocate for the production of the same documents, if otherwise discoverable.... Royal Park…strain[s] the term 'use' when it insists that those lawyers committed a clear violation of the Protective Order merely by asking Royal Park to promptly turn over documents which…were within the scope of discovery in [another case]. *Acknowledging the existence of such documents, in that setting and for that purpose, cannot be considered a prohibited 'use' of discovery materials without rendering the Protective Order absurd.*

*Id.* at 405 (emphasis added).

*Royal Park* cited and discussed three cases that should be persuasive here. In *Milwaukee Electric Tool Corporation v. Snap–on Incorporated,* No. 14-CV-1296-JPS, 2016 WL 1719657 (E.D. Wis. Mar. 16, 2016), the court rejected the argument that plaintiffs violated a protective order when, in connection with efforts to obtain additional discovery in a related proceeding, plaintiffs' lawyers *acknowledged the existence of confidential documents and listed them by Bates numbers*. *Id.* at *2. "There is a distinction between the use of knowledge regarding the existence of certain documents versus the use of the confidential content within the documents…." *Id.* at *4. A protective order should be interpreted "to comply with common sense….''; the interpretation urged by the defendant would "lead[ ] to absurd results that would give an unfair competitive advantage to Snap-on and undermine the efficacy of [the related proceeding]." *Ibid.*

In *Streck, Inc. v. Research & Diagnostic Systems, Inc.,* 250 F.R.D. 426 (D. Neb. 2008), the court rejected defendants' claim that plaintiff improperly *used* documents in violation of a broad protective order by seeking their disclosure in a related proceeding. *Id.* at 434. There, plaintiff's counsel did not merely allude to the existence of the documents at issue; he told the court he had reason to believe,

based on the confidential production, that the defendant in the related proceeding had not produced all discoverable materials. *Id.* at 434, n.4. Thus, in *Streck,* unlike here, counsel revealed, at least in broad strokes, the *contents* of the documents he was not permitted to *use*. Still, the court denied the enforcement motion, ruling that defendants were "straining the term 'use,'" and noting that "[t]he plaintiff was not relying on the materials themselves, but attempting to secure their disclosure in the [related proceeding]." *Id.* at 435.

Finally, *Royal Park* relied on a Ninth Circuit contempt matter, *In re Dual–Deck Video Recorder Antitrust Litigation,* 10 F.3d 693 (9th Cir. 1993). The stipulated protective order stated that discovery materials, *whether or not confidential*, "shall not be used at any time *for any... purpose whatsoever*" other than preparing or trying the case in which they were produced. *Id.* at 694 (emphasis added). Plaintiff relied on produced documents to (a) file a second lawsuit, (b) pursue an anti-spoliation order in the second suit; and (c) *serve a discovery request in that lawsuit which referred to discovery obtained in the first case. Id.* at 695-96. The district court cited plaintiff for contempt, but the Ninth Circuit reversed, refusing to apply the no-use-whatsoever language "literally," where such a reading would render the order "absurd." *Id.* at 695.

As the Ninth Circuit explained: "Because Go–Video's lawyers cannot achieve total amnesia and all their subsequent work in antitrust litigation against the defendants (and perhaps anyone else) would be informed by what they learned during discovery in the 1987 suit, the order would prohibit them from representing Go–Video at all in the 1990 litigation. Indeed, lawyers who learn from and use their experience obtained in discovery under such an order would have to change fields, and never do antitrust work again, lest they 'use' what they learned in a prior case in any way whatsoever in any 'other action.' For the protective order to comply with common sense, a reasonable reading must connect its prohibitions to its purpose—protection against disclosure of commercial secrets." *Ibid.*

Unlike in *Tong,* where the *use* issue never arose, present counsel cited and discussed these cases in *Pachall,* where State Farm argued that by referring to document types, titles, and Bates ranges, counsel had violated the Court's protective order. Counsel likewise relied on these authorities to oppose State Farm's request in *Dixon* for the identical modifications it seeks here. Relying on those cases, the *Pachall* and *Dixon* courts denied State Farm's motions. Consistent with three decades of cases and the courts' conclusions in *Pachall* and *Dixon,* the Court should enter its standard protective order.[2]

## II. The Protective Order Should Not Bar Plaintiffs from "Scanning, Storing, [or] searching" Confidential Documents.

State Farm next seeks to modify the model protective order by barring "the scanning, storing, searching or manipulation of Protected Material …." (Stipulation, Dkt. No.30, p.2:4-5.) The Court should reject the proposed change. Both sides will produce documents in digital format designated *CONFIDENTIAL*. Both sides will send download links from which the documents can be accessed. It is hard to understand how *either* side can meaningfully obtain, and use, documents produced in that manner without storing and searching the materials. State Farm cannot articulate any threat to its proprietary and/or commercial interests associated with the proposed bar on scanning, searching, and/or manipulating confidential documents. Given the relative wealth of the parties, barring a provable threat to State Farm's proprietary and/or commercial interests, the Court should refrain from increasing the litigation burden unnecessarily. Nothing about storing, scanning, and manipulation, particularly given the overall bar on *use* outside this case, threatens State Farm's economic interests.

---

[2] State Farm carries its *use* argument into the proposed Exhibit A to the protective order. It adds this language to Exhibit A: "I further acknowledge and agree to use any Protected Material that I receive in connection with this Action solely and exclusively for purposes of this Action." (Stipulation, Dkt. No.30, p.3:10-13.) The Court should strike that language as unnecessary.

## III. The Protective Order Should Not Bar Plaintiffs from Using AI.

State Farm seeks a bar against "the sharing of Protected Material with artificial intelligence." The interim protective order protects State Farm's concern that use of *public* AI systems threatens to make public its confidential documents. Given the other related terms of the protective order, there is nothing about use of AI that threatens State Farm's commercial interests.

## IV. The Protective Order Should be Mutual: Either Both Sides Should be Barred from Using the Substance of Documents Outside the Litigation and Required to Dispose of Such Materials with the Related Certifications After the Litigation Ends, or the Restrictions Should Apply to Neither Party.

The interim protective order bars the parties from using the substance of protected materials outside the litigation and requires the parties to dispose of confidential materials after the case is over. The use and final disposition rules are mutual. State Farm proposes one-sided changes to the model protective order that would allow it to:

a. transfer protected material from its lawyers possession to State Farm's claim file (Stipulation, Dkt. No.30, p.2:13-15), thus using the materials for a non-litigation purpose and avoiding final disposition rules;

b. maintain confidential documents to satisfy "retention requirements", likewise avoiding final disposition rules; and

c. retain "Confidential Materials that may exist on back-up media or other computer or archive storage not regularly accessed by business users in the ordinary course, provided that, should a copy of the Confidential Materials be accessed, it will be used for a purpose consistent with this Order."

None of the three requests are necessary or appropriate. State Farm has no rational basis, for example, to place private medical information about the Myles into its claim system, which is widely accessible by State Farm employees who

have nothing to do with this case, and to maintain such material both in the claim file and its litigation file without being subject to the final disposition rules.

State Farm's obligation under California regulations is to create and maintain its claim file for five years. 10 CCR §2695.3. That rule has no bearing here. State Farm seeks a modification (a., above) to the model protective order that would permit it, without notice to the Myles, or oversight by the Court, to transfer to its electronic claim system any confidential documents *it* concludes should be in the claim file. The proposal conflicts with the protective order's bar on *use* of protected materials outside this litigation. And nothing in California law requires such a transfer. Given that State Farm has informed the Court it maintains its claim files for many years consistent with the foregoing regulation, the modification is likewise irreconcilable with the protective order's directives relating to final disposition. The Court should reject it. Or, if it allows State Farm to share confidential materials outside this litigation, the Myles should have the same right.

As for State Farm's proposed retention language (b. and c., above), under the quoted regulation State Farm has the obligation to retain the Myles' *claim file* for five years. The regulation says nothing about litigation files. There is no California law or regulation that preempts an order of this Court as to confidential materials produced in litigation. Or, if State Farm is permitted to maintain confidential material, the Myles should have the same right.

Date: June 19, 2026 Kerley Schaffer LLP

/s/ Dylan L. Schaffer
Dylan L. Schaffer
Counsel for Plaintiffs

# EXHIBIT A

EXHIBIT A

HUGHES & NUNN LLP
Randall M. Nunn (SBN 109762)
E. Kenneth Purviance (SBN 126206)
350 Tenth Avenue, Suite 1000
San Diego, CA 92101
Telephone (619) 231-1661
Facsimile (619) 236-9271

Attorneys for Defendant State Farm
General Insurance Company

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| BONITA PACHALL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation authorized to do business in California; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 37-2022-00044176-CU-IC-CTL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT STATE FARM GENERAL INSURANCE COMPANY FOR ENFORCEMENT OF PROTECTIVE ORDER AND FOR SANCTIONS**<br><br>Date: November 7, 2025<br>Time: 9:30 a.m.<br>Dept.: C-72<br>Judge: Hon. Marcella McLaughlin<br>T/D: May 2, 2025<br>Complaint Filed: November 2, 2022 |

Defendant State Farm General Insurance Company ("State Farm") submits the following memorandum of points and authorities in support of its Motion for Enforcement of Protective Order and for sanctions. Given Plaintiff's counsel's willful violation of the Protective Order and disregard for its terms, State Farm brings this motion to request that the Court direct Plaintiff's counsel to fully comply with the Order and also impose both remedial and preventative measures to safeguard State Farm's confidential materials. In addition, State Farm seeks monetary sanctions of $17,080 for the reasonable fees and costs it unnecessarily incurred in bringing this motion and an additional amount for uncovering any other unauthorized disclosures to rectify and deter this misconduct.

/ / / / /

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ....4

II. RELEVANT BACKGROUND ....5

A. The Court Enters the Protective Order and Limits Disclosure of Confidential Information Subject to it to Authorized Persons and Only For This Case ....5

B. The First Known Disclosure and Misuse of Protected Information ....7

C. The Second Known Disclosure and Misuse of Protected Information ....7

D. Plaintiff's Counsel Persist in their Recalcitrance and Fail to Redress Disclosures ....8

III. THE COURT SHOULD ENFORCE THE PROTECTIVE ORDER ....10

A. Legal Standard ....10

B. Plaintiff's Counsel Knowingly Violated the Protective Order, At Least Twice ....10

C. Plaintiff's Counsel's Bad Faith Discovery Abuse Requires Remedial Measures ....13

IV. CONCLUSION ....14

# TABLES OF AUTHORITIES

**Cases** **Page**

*Apple, Inc. v. Samsung Electronics Co., Ltd.*
(N.D. Cal., Oct. 15, 2013, No. 11-CV-01846-LHK) 2013 WL 5693759, at *1 ................12

*Cleveland v. Ludwig Inst. for Cancer Research Ltd.*
(S.D.Cal. Oct. 27, 2021, No. 19-cv-02141-JM (JLB))
2021 U.S. Dist. LEXIS 207446, at *5-7, *11, *13-14 ................10

*Mahboob v. Educ. Credit Mgmt. Corp.*
(S.D.Cal. Mar. 2, 2021, No. 15-cv-0628-TWR-AGS)
2021 U.S. Dist. LEXIS 39404, at *3 ................10

*On Command Video Corp. v. Lodgenet Entertainment Corp.*
(N.D. Cal. 1997) 976 F.Supp. 917 ................10

*Padron v. Watchtower Bible & Tract Society of New York, Inc.*
(2017) 16 Cal.App.5th 1246 ................9, 13

*Wallis v. PHL Associates, Inc.*
(2008) 168 Cal.App.4th 882 ................9, 10

**Statutes** **Page**

Code. Civ. Proc., §§ 2023.030, 2023.010 ................9

# I.

# INTRODUCTION

State Farm brings this Motion to redress an indisputable and inexcusable violation of the Protective Order in this matter.

This Court entered a Protective Order to facilitate and safeguard the exchange of State Farm's relevant, yet competitively valuable and sensitive, information in this matter. The Protective Order limited the use of information disclosed subject to it to this litigation. The Protective Order also included the additional safeguard of obligating parties subject to it to alert other parties of an unauthorized disclosure of information subject to the Protective Order. In reliance on and subject to the Court's Protective Order, State Farm produced confidential information to Plaintiffs' counsel.

Plaintiffs' counsel, however, disregarded the terms of the Protective Order, and disclosed State Farm's confidential information to a third party (attorney Dylan Schaffer) in violation of it. Rather than alert State Farm to their improper actions, as the Protective Order required, State Farm discovered counsel's unauthorized disclosure on its own. When finally confronted with the violations, Plaintiffs' counsel both denied any violation and blamed the Court for their conduct by alleging a purported (and nonexistent) ambiguity in the Protective Order.

That third party—attorney Dylan Schaffer—has now associated in as co-counsel of record in this case. Mr. Schaffer's association does *not* excuse counsel's past violations of the Protective Order in this matter, nor Mr. Schaffer's ongoing misuse of State Farm's confidential information in at least one other matter that he is currently litigating against State Farm in violation of the Protective Order in this case. Specifically, Mr. Schaffer has repeatedly served requests for production of documents in *Tong v. State Farm General Ins. Co.*, Case No. 2:24-cv-02219-DSF-MAA, pending in the United States District Court, Central District of California ("*Tong*"), specifically referencing the contents and Bates ranges of confidential documents produced in this case.

Notwithstanding their affirmative obligation under the Protective Order, Plaintiff's counsel did not disclose to State Farm the unauthorized disclosure of its confidential information to Mr. Schaffer. Plaintiff's counsel further refuse to provide details regarding the unauthorized disclosure

so that State Farm can ensure that its confidential information remains protected. Rather, Plaintiff's counsel's conduct appears designed to frustrate State Farm's undeniable interests in ensuring that its confidential information is not misused in violation of the Protective Order entered in this matter.

Plaintiff's counsel's repeated, willful disregard of the Court's Protective Order amounts to nothing less than bad faith. State Farm therefore has no choice but to bring this motion to redress these violations. Specifically, State Farm requests an order directing Plaintiff's counsel to:

- Identify in a sworn declaration each and every disclosure of the confidential information produced in this case pursuant to the Protective Order, by date, recipient, contact information, and identification of the specific materials disclosed;
- Identify, by sworn declaration of counsel, each and every use of the confidential information in matters other than the present case;
- Produce all communications between Plaintiff's counsel which pre-date any retention agreement between Plaintiff and Kerley Schaffer LLP which relate to State Farm's confidential records;
- Require the return of confidential materials produced in this case from recipients whose receipt is unauthorized pursuant to the terms of the Protective Order, as well as a sworn declaration of compliance;
- Modify the terms of the Protective Order to bar Plaintiff's counsel from disclosing State Farm's confidential information to anyone, regardless of their execution of Exhibit A, until Plaintiff's counsel has provided State Farm with notice of the intended disclosure and the opportunity to consent or object to such disclosure; and
- Pay sanctions for the fees and costs incurred by State Farm in investigating and redressing the violations, or to deter such misconduct in an amount of at least $15,000.

## II.

## RELEVANT BACKGROUND

### A. The Court Enters the Protective Order and Limits Disclosure of Confidential Information Subject to it to Authorized Persons and Only For This Case

On July 19, 2023, this Court found good cause to enter a Stipulated Protective Order between Plaintiff and State Farm. (Ex. 1). The Court recognized that State Farm possessed "confidential, proprietary, or trade secret information that may be subject to discovery in this action," which should otherwise "**not be made publicly available.**" (Ex. 1, 1:26-28) (bold added). The Order expressly limits disclosure of confidential materials to authorized persons and for this litigation.

> **All materials** provided by the Parties pursuant to this Stipulated Protective Order **that are designated Confidential Information** and/or Trade Secret information **shall be used solely and exclusively for the preparation for and conduct of this litigation, and shall not** unless, directed by an appropriate Court, **be made available, disclosed, or disseminated in any manner for any business or other purpose whatsover. Individuals authorized to review** Confidential Information and/or Trade Secret **Information pursuant to this Protective Order shall not divulge the Confidential Information** and/or Trade Secret Information, either verbally or in writing, **to any person or entity not otherwise authorized** to receive the information under this Order unless authorized to do so by Court order.

(Ex. 1, 2:5-15) (emphasis added).

The Protective Order repeats that confidential information "may be disclosed only for purposes of the *Pachall v. State Farm General Insurance Company, et al.* litigation and only" to certain authorized persons. (Ex. 1, 3:14-16). These persons include, "[t]he parties and attorneys for parties in this litigation who have executed this Stipulated Protective Order or are otherwise subject to this Stipulated Protective Order by virtue of having signed Exhibit 1 hereto, and [staff] . . . working under their supervision." (Ex. 1, 3:17-21).

The Order details procedures for designating materials as Confidential and objecting to such designation. (Ex. 1, 2:22-3:11). In the event of an unauthorized disclosure, the Order requires the disclosing party to "immediately (a) notify . . . the Designating Party . . . (b) use its best efforts to retrieve all unauthorized copies . . . (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or person to execute the "Nondisclosure Agreement." (Ex. 1, 4:9-17).

Signatories to the Order swear that they are familiar with and will abide by the Order. Signatories also declare that information obtained pursuant to this Order "shall not be disclosed to anyone except as expresssly permitted" and that they "will not copy or use" this information "except solely for purposes of this Proceeding . . . ." (Ex. 1, 12:3-13).

As of entry of the Order, the only attorneys of record were Eric D. Townsend for Law Eagles, counsel for Plaintiff, and Randall M. Nunn and E. Kenneth Purviance for Hughes & Nunn, counsel for State Farm. Pursuant to the terms of the Order, then, only Mr. Townsend and his staff were permitted to view State Farm's production of confidential documents in this case.

**B. The First Known Disclosure and Misuse of Protected Information**

On December 2, 2024, State Farm produced materials to Plaintiff's counsel and designated them as Confidential pursuant to the Order. The production bore a Bates stamp range of PACHB00001096-PACHB00004750.

Four days later, another attorney, Mr. Schaffer, served requests for production in another case that referenced the contents of State Farm's confidential production in this case. Specifically, Mr. Schaffer served a Sixth Request for Production of Documents in in *William Tong, et al. v. State Farm General Insurance Company*, Case No. 2:24-CV-02219-DSF-MAR in the United States District Court for the Central District of California ("*Tong*"). Many requests in that set referenced the exact titles of confidential materials that State Farm produced in this case on December 2, 2024. (Purviance Declaration at ¶¶ 4-5).

By comparing the requests in both cases, counsel for State Farm identified requests which specifically referenced State Farm's confidential materials in this case. (Purviance Declaration at ¶¶ 4-5). Several *Tong* requests referred to the exact titles of media files produced in *Pachall* just four days earlier. (Id.) In addition, other requests appeared to be based on State Farm's confidential production of reviews of State Farm personnel in *Pachall*. None of those confidential documents (or types of confidential documents) had been produced in *Tong* as of that date. (Batezel Dec., at ¶ 4).

Nearly one week later, on December 12, 2024, Mr. Schaffer associated as co-counsel for Plaintiff in this case.

**C. The Second Known Disclosure and Misuse of Protected Information**

Mr. Schaffer served a Seventh Request for Production of Documents in *Tong* on December 19, 2024. That document contains only two requests, one of which expressly refers to confidential documents that State Farm produced in this case on December 2, 2024 by Bates range:

> 315. All DOCUMENTS, including but not limited to COMMUNICATIONS, POLICIES/PROCEDURES, TRAINING AND GUIDELINES, applicable to the period 2010 to present, in which YOU describe or explain how the BELOW THE SURFACE OF THE GROUND exclusion is to be applied, ***including but not limited to the DOCUMENTS YOU produced in Pachall v. State Farm General Insurance Company, San Diego Superior Court, No. 37-2022-00044167, Bates PACHB00003374-PACHB00003331***.

(Ex. 2) (emphasis added).

There is no dispute that State Farm designated bates nos. PACHB00003374-PACHB00003431 as confidential in its December 2, 2024 production to Plaintiff's counsel in this case. (Purviance Declaration at ¶ 3.)

**D. <u>Plaintiff's Counsel Persist in their Recalcitrance and Fail to Redress Disclosures</u>**

On December 23, 2024, State Farm's counsel sent a letter to Plaintiff's Counsel—Eric Townsend and Jacob Pyle of Legal Eagles and newly associated counsel Dylan Schaffer of Kerley Schaffer—regarding their and Mr. Schaffer's apparent misuse of State Farm's confidential materials. (Ex. 3). The letter detailed the unauthorized disclosures for their consideration and, to redress the potential for any further harm, asked Plaintiff's counsel to respond to the following questions:

1.) When was information from, or materials from the December 2, 2024 production, provided to Mr. Schaffer, and specifically, what information and materials were provided to him or his firm?

2.) Who else have the materials been provided to?

(Ex. 3).

Plaintiff's counsel, including Mr. Schaffer, denied that there have ever been any unauthorized disclosures and refused to respond to the questions. In their January 6, 2025 email, (Ex. 4), they evaded providing any information to help ascertain the extent of unauthorized disclosures based on "privileged work product." Instead, they shared for the first time that Mr. Schaffer purportedly signed the Nondisclosure Agreement (Exhibit A to the Order) on December 3, 2024—nine days before Mr. Schaffer associated in as counsel on December 12, 2024. (Ex. 4 (including attachment)). The Protective Order only allows disclosure of confidential information ***to certain individuals***, including "attorneys for parties" who have executed the Order, ***and only for purposes of this litigation***. (Ex. 1, 3:14-21). Mr. Schaffer was ***not*** an attorney for the parties on the purported date of execution of Exhibit A. Nor was he an attorney for the parties when he first served requests in *Tong* based on the confidential production of documents in *Pachall*. Thus, Mr. Schaffer's receipt State Farm's confidential production before December 6, 2024 violated the Protective Order's restrictions on disclosure. And, when Mr. Schaffer used that confidential information to develop discovery requests in the *Tong* case, he again violated the Protective Order's

restrictions on use.

Unable to justify the unauthorized disclosure to Mr. Schaffer, and Mr. Schaffer's unauthorized use of the confidential information, Plaintiff's counsel summarily and inexplicably rejected that they violated the Protective Order. Plaintiff's counsel additionally, and inconsistently, suggested that the Protective Order was somehow ambiguous:

> We likely have substantial differences regarding the *meaning* and *application* of the PO, but see no reason to delve into those matters absent a specific dispute. In any case, we do not dispute the existence of the PO. But we reject the suggestion in your letter that we have violated the PO; we have not.

(Ex. 4).

Plaintiff's counsel did not, and cannot, identify any such ambiguity in the Protective Order.

In a further good faith effort to informally resolve this dispute, State Farm sought to obtain the information it requested regarding the unauthorized disclosure through discovery. In its Second Request for Production, it asked Plaintiff to produce her retention agreement with Mr. Schaffer. (Exhibit 5, at Request No. 20.) It asked for, among other things, copies of pre-retention communications between Plaintiff's attorneys and Mr. Schaffer about the discovery in this case. (*Id.* at Request Nos. 21-24.) It also sought production of communications between Mr. Schaffer's firm and other lawyers about documents State Farm has produced pursuant to protective order in actions against State Farm. (*Id.* at Request No. 25.). State Farm separately served a Second Set of Special Interrogatories asking for facts related to Mr. Schaffer's retention. Plaintiffs responded to State Farm's interrogatory that they purportedly retained Mr. Schaffer on December 3. However, in response to State Farm's document requests, Plaintiffs provided only objections to , including objections based on privilege They did not provide a privilege log.

Counsel's violation of the protective order, and their refusal to provide information requested by State Farm, necessitated this Motion.

**III.**

**THE COURT SHOULD ENFORCE THE PROTECTIVE ORDER**

Plaintiff's counsel knowingly violated the Court's Protective Order on at least two occasions and refuse to even consider, let alone admit or redress, any wrongdoing. The Court should issue an

order finding Plaintiff's counsel in violation of the Protective Order and award sanctions to enforce compliance, mitigate harm, and stop this abuse.

**A. Legal Standard**

Protective orders are essential to facilitate discovery of confidential information. Both willful or even careless violations impair their usefulness and undermine a court's authority to manage discovery disputes. Courts accordingly have inherent powers to enforce and fashion remedial procedures to promote compliance and deter litigation abuse. (*Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1264, 1260). Code of Civil Procedure Section 2023 specifically authorizes courts to impose sanctions for misuses of the discovery process, which include, among other things "[d]isobeying a court order," noncompliance with specified procedures, and persisting to obtain information that is outside the scope of permissible discovery. (Code. Civ. Proc., §§ 2023.030, 2023.010). In addition, Section 128.5 allows sanctions for bad faith litigation tactics. (*See Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 886-87) (affirming sanctions for violating a protective order in bad faith, which restricted viewing to certain qualified persons, by disclosing confidential materials and without challenging confidentiality pursuant to the Order).

**B. Plaintiff's Counsel Knowingly Violated the Protective Order, At Least Twice**

Plaintiff's counsel violated the Protective Order on at least two occasions: (1) when Plaintiff's counsel, Eric Townsend, disclosed State Farm's confidential materials to third-party Dylan Schaffer, who used those materials in preparing a Sixth Set of Requests for Production in the *Tong* case; and (2) when Plaintiff's newly-associated counsel, Mr. Schaffer, misused State Farm's confidential materials again in preparing a Seventh Set of Requests for Production in *Tong* after associating in as counsel in this case.

Courts have routinely found protective order violations where counsel disclosed confidential information to unauthorized persons and/or used that information in another lawsuit. (*See, e.g.*, *Cleveland v. Ludwig Inst. for Cancer Research Ltd.* (S.D.Cal. Oct. 27, 2021, No. 19-cv-02141-JM (JLB)) 2021 U.S. Dist. LEXIS 207446, at *5-7, *11, *13-14 (barring use of confidential information in collateral litigation and awarding sanctions in part because plaintiffs shared confidential

information with new counsel in a subsequent action); *On Command Video Corp. v. Lodgenet Entertainment Corp.* (N.D. Cal. 1997) 976 F.Supp. 917, 920, 922, 924 (finding plaintiff violated a protective order that authorized use "in this litigation" because he based another lawsuit on confidential materials); *Mahboob v. Educ. Credit Mgmt. Corp.* (S.D.Cal. Mar. 2, 2021, No. 15-cv-0628-TWR-AGS) 2021 U.S. Dist. LEXIS 39404, at *3 (awarding sanctions where counsel violated a protective order by using confidential information in a subsequent lawsuit)). Moreover, a court may infer bad faith when counsel engages in repeated violations or interferes with discovering the extent of unauthorized disclosures. (*See Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 892 (finding counsel violated protective order when he informed unauthorized persons how to access confidential information, encouraged persons to view the information, viewed the information himself, and delayed discovery and destroyed evidence to prevent ascertaining the violations)).

In this case, Plaintiff's counsel knowingly and repeatedly violated the Protective Order by sharing State Farm's confidential materials with unauthorized persons and for unauthorized use in the *Tong* case. The Order unequivocally provides that Plaintiff's counsel may only disclose confidential materials to authorized persons and for use in this litigation. (*See supra* Part II.A). Plaintiff's counsel admitted they are familiar with the terms of the Order. (Ex. 4). Despite this knowledge, Mr. Townsend disclosed State Farm's confidential information to Mr. Schaffer, a third party not authorized to receive the materials under the plain terms of the Protective Order. Mr. Schaffer then drafted the Sixth Production Set in the *Tong* case based on State Farm's confidential materials in this case, which he obtained *before* associating in as counsel in this case. This shows that Plaintiff's counsel, Mr. Townsend, improperly disclosed confidential materials to Mr. Schaeffer or some other intermediary. Furthermore, through this disclosure, Plaintiff's counsel encouraged or, at a minimum, facilitated, the misuse of this information in another case.

Then, just sixteen days after Mr. Schaffer associated as Plaintiff's counsel and signed the Nondisclosure agreement where he promised that State Farm's confidential documents would be used solely for this case, he identified these documents by bates number and case name in his Seventh Request for Production in *Tong*. (Ex. 2 (requesting "DOCUMENTS YOU produced in *Pachall v. State Farm General Insurance Company*, San Diego Superior Court, No. 37-2022-

00044167, Bates PACHB00003374-PACHB00003331.”)).

Plaintiff’s counsel admitted they are familiar with and are bound by the terms of the Protective Order, and yet remain steadfast in denying any misconduct despite objective and undeniable evidence of the same. As such, they cannot be trusted to safeguard confidential information or voluntarily comply with the Protective Order’s procedures to remedy the unauthorized disclosures.

Even worse, this is not the first time Mr. Schaffer has sought to erode the protections afforded to State Farm’s confidential information under a court’s order. Indeed, the *Tong* court entered State Farm’s proposed protective order, over Mr. Schaffer’s objections, which included heightened protections beyond the *Tong* court’s model protective order based specifically on Mr. Schaffer’s prior conduct in derogation of court-ordered protections. (Request for Judicial Notice, (Ex. “6”, Order re: Plaintiff’s Motion to Compel and Defendant’s Motion for a Protective Order, Dkts. 40, 41 in *Tong*).) The *Tong* court found: it “necessary” to include “additional protections” given Mr. Schaffer’s “belated compliance with protective orders in other cases against [State Farm]” and his efforts to obtain State Farm’s confidential materials “outside the limitations of a protective order.” (*Id.* at 8). For example, Mr. Schaffer subpoenaed another attorney in yet another unrelated matter to obtain State Farm’s confidential materials that it had produced in that case “outside the limitations of a protective order.” (*Id.* at 7, 8). In addition, a list of State Farm’s “confidential training material and claims guidelines identical to a list compiled by [Mr. Schaffer] [in another case] [somehow] . . . appeared as a blog post on the website of another plaintiffs’ [law] firm who also frequently handled cases against [State Farm].” (*Id.* at 7-8). Given Mr. Schaffer’s prior conduct, the *Tong* court found that without enhanced protections, there was a “legitimate risk” that State Farm’s “confidential commercial information will be disclosed to its competitors.” (*Id.* at 8).

**C. <u>Plaintiff’s Counsel’s Bad Faith Discovery Abuse Requires Remedial Measures</u>**

State Farm knows that Plaintiff’s counsel deliberately misused its confidential information on at least two occasions because of its own investigation, and despite Plaintiff’s counsel’s efforts to thwart State Farm’s attempts to learn more. Plaintiff’s counsel’s defiance in recognizing or even investigating any unauthorized disclosures is worrisome. State Farm therefore requests the Court to

impose remedial measures and sanctions to ensure that its confidential materials will be protected and to mitigate harm caused by violations of the Protective Order to date.

State Farm requests further discovery to determine the full scope of unauthorized disclosures so that it may safeguard its confidential materials and ensure that it has not been further disseminated or used. (*See Apple, Inc. v. Samsung Electronics Co., Ltd.* (N.D. Cal., Oct. 15, 2013, No. 11-CV-01846-LHK) 2013 WL 5693759, at *1 (ordering discovery to determine scope of potential breaches) ("Rarely is the fox [] permitted to investigate without supervision the disappearance of chickens at the henhouse.")). Specifically, State Farm requests that the Court direct Plaintiff's counsel to fully comply with the Order and:

- Identify in a sworn declaration each and every unauthorized disclosure of the confidential information produced in this case pursuant to the Protective Order, by date, recipient (with contact information), and identification of the specific materials disclosed;
- Identify, by sworn declaration of counsel, each and every use of the confidential information in matters other than the present case;
- Produce all communications between Plaintiff's counsel which pre-date any retention agreement between Plaintiff and Kerley Schaffer LLP which relate to State Farm's confidential records;
- Require the return of confidential materials produced in this case from recipients whose receipt is unauthorized pursuant to the terms of the Protective Order; and
- Modify the terms of the Protective Order to bar Plaintiff's counsel from disclosing State Farm's confidential information to anyone, regardless of their execution of Exhibit A, until Plaintiff's counsel has provided State Farm with notice of the intended disclosure and the opportunity to consent or object to such disclosure.

State Farm also seeks sanctions for its fees and costs incurred in investigating and redressing these violations. Monetary sanctions are especially proper here to redress and deter Plaintiff counsel's willful and repeated misconduct. (*See Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1259-1260 (affirming sanctions for willful and repeated noncompliance with discovery order); *Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 886-87) (affirming sanctions, which include an amount for attorney's fees expended to uncover counsel's bad faith tactics)). Moreover, the misconduct is not limited to this case. As the *Tong* court separately found, Mr. Schaffer's attempts to avoid Protective Orders in other matters warranted

heightened restrictions on the Protective Order in that case over Mr. Schaffer's objections. Here, State Farm seeks monetary sanctions of $17,080 for the reasonable fees it unnecessarily incurred in bringing this motion and an additional amount for uncovering any other unauthorized disclosures in violation of this Court's Order. (Declaration).

## IV.

## CONCLUSION

For the reasons set forth above, State Farm respectfully requests that the Court grant its motion, find Plaintiff's counsel in violation of the Protective Order, direct Plaintiff's counsel to comply with remedial and preventative measures, and impose monetary sanctions to safeguard State Farm's confidential information and stop this misconduct.

Dated: April 9, 2025

HUGHES & NUNN LLP

By: *E. Kenneth Purviance*
Randall M. Nunn
E. Kenneth Purviance

Attorneys for Defendant
State Farm General Insurance Company

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | | COURT USE ONLY |
|---|---|---|
| TITLE OF CASE (ABBREVIATED)<br>Pachall v. State Farm General Insurance Company, et al. | | |
| ATTORNEY OR PARTY WITHOUT ATTORNEY (NAME AND ADDRESS):<br>Randall M. Nunn (SB #109762)<br>E. Kenneth Purviance (SB #126206)<br>**HUGHES & NUNN LLP**<br>350 Tenth Avenue, Suite 1000<br>San Diego, CA 92101<br><br>ATTORNEY FOR (NAME): Defendant State Farm General Insurance Company | TELEPHONE NO.:<br>Tel: (619) 231-1661<br>Fax: (619) 236-9271 | |
| ATTORNEYS FOR:<br>Defendant State Farm | HEARING DATE – TIME | CASE NUMBER:<br>37-2022-00044176-CU-IC-CTL |

**PROOF OF SERVICE**

I am a resident of the state of California over the age of eighteen years, and not a party to the within action. My business address is Hughes & Nunn LLP, 350 Tenth Ave., Ste. 1000, San Diego, California 92101. On April 9, 2025, I served the within documents:

1. **NOTICE OF MOTION BY DEFENDANT STATE FARM GENERAL INSURANCE COMPANY FOR ENFORCEMENT OF PROTECTIVE ORDER AND FOR SANCTIONS**

2. **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT STATE FARM GENERAL INSURANCE COMPANY FOR ENFORCEMENT OF PROTECTIVE ORDER AND FOR SANCTIONS**

3. **DECLARATION OF MATTHEW BATEZEL IN SUPPORT OF DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER AND FOR SANCTIONS**

4. **DECLARATION OF E. KENNETH PURVIANCE IN SUPPORT OF DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER AND FOR SANCTIONS**

5. **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER AND FOR SANCTIONS**

6. **NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER AND FOR SANCTIONS**

☒ by transmitting via electronic mail the document(s) listed above to the e-mail address set forth below on this date before 5:00pm

Eric D. Townsend
Jacob Pyle, Esq.
LAW EAGLES, PC
5638 Lake Murray Blvd., Suite 381
La Mesa, CA 91942
Emails: eric@laweagles.com; jacob@laweagles.com
Telephone: (858) 634-0099
**Attorneys for Plaintiff Bonita Pachall**

Dylan L. Schaffer
KERLEY SCHAFFER LLP
1939 Harrison Street, Suite 900
Oakland, CA 94612
Emails: dylan@kslaw.us; service@kslaw.us; rmorrill@kslaw.us

**Attorney for Plaintiff Bonita Pachall**

Executed on April 2, 2025, at San Diego, California.

☒ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose directions the service was made.

Jenna Schamber [signature]

Jenna Schamber

101.840/POS-040925.doc

EXHIBIT B

EXHIBIT B

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 05/30/2025 TIME: 2:00 PM DEPT: C-72

JUDICIAL OFFICER: MARCELLA O. MCLAUGHLIN
CLERK: Valerie Secaur
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT: N/A

CASE NO: **37-2022-00044176-CU-IC-CTL** CASE INIT.DATE: 11/02/2022
CASE TITLE: **Pachall vs State Farm General Insurance Company [IMAGED]**
CASE CATEGORY: Civil CASE TYPE: (U)Insurance Coverage

---

**HEARING TYPE**: Ex Parte
MOVING PARTY:

---

**RULING ON MOTION TO SEAL, MOTION FOR PROTECTIVE ORDER, AND MOTION TO COMPEL COMPLIANCE TAKEN UNDER SUBMISSION**

The Court having taken this matter under submission on 5/23/2025, now rules as follows:

**A.** Defendant's motion to seal exhibits to plaintiff's motion to compel further responses to requests for production of documents (set two) is DENIED without prejudice.

The documents sought to be sealed were not lodged in connection with plaintiff's motion to compel further responses to requests for production of documents (set two). *Compare* ROA 76 *with* ROA 133. To the extent defendant seeks to seal documents related to plaintiff's motion to compel compliance with the court's October 11, 2024 (*see* ROA 132), no such documents were lodged with the court. Accordingly, there is nothing for the court to seal at this time.

At the hearing, defense counsel disputed the court's representation regarding the missing lodged documents. However, after the hearing, counsel acknowledged that the documents had not been lodged and stated that defendant would submit on the tentative ruling with respect to the motion to seal.

**B.** Defendant's motion to enforce protective order is DENIED.

The court is not persuaded that Mr. Schaffer violated the protective order by listing the Bates numbers for certain confidential documents. Moreover, although it appears that plaintiff's counsel failed to comply with paragraph 8 of the protective order after Mr. Schaffer received the confidential information, the court finds that circumstances make the imposition of sanctions unjust. *See* Code Civ. Proc. § 2023.030(a); *see also Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 75 ("In general, discovery sanctions may not be imposed as a punishment."). The court, however, orders plaintiff's counsel to provide a signed verification setting forth the following information by June 13, 2025:

- Every disclosure of the confidential information produced in this case pursuant to the protective order, by date, recipient, contact information, and identification of the specific materials disclosed; and

- Every use of the confidential information in matters other than the present case.

Plaintiff's request for sanctions pursuant to Code of Civil Procedure section 128.5 is denied. As noted above, the evidence shows that an executed copy of Exhibit 1 to the protective order was not sent to defense counsel within thirteen days of Mr. Schaffer's receipt of the confidential information. (*See* NOL. Ex. 4; *see also* Schaffer Decl., ¶¶ 57-59.)

Judicial notice is taken as requested (ROA 148). Evid. Code § 452(d).

**C.** Plaintiff's motion to compel defendant to comply with the court's order dated October 11, 2024 is GRANTED in part and DENIED in part.

The motion is granted with respect to performance reviews. In ordering defendant to provide further responses to RFPs 13-21, the court specifically found that "[t]he manner in which these specific employees were trained and incentivized is relevant to Plaintiff's claims[.]" ROA 123. Bonuses are clearly a form of incentive compensation, but defendant has failed to produce records of bonuses paid to its claims personnel who handled plaintiff's claim or the criteria upon which the bonuses were paid. Defendant is therefore to turn over all responsive documents regarding such bonuses by June 13, 2025.

The motion is denied with respect to the privilege log. Defendant states that it is not withholding any documents on the basis of privilege. (*See* Purviance Decl., ¶ 18.) The court declines to order defendant to remove its privilege objections as plaintiff did not move for such an order or file a separate statement.

The motion is denied as moot as to the interactive training materials as those materials have been produced. (Purviance Decl., ¶ 36.)

The motion is otherwise denied as the court is unable to conclude that defendant failed to comply with the court's order. Nevertheless, the purpose of civil discovery is to take the "game element" out of trial preparation by assisting the parties in obtaining the facts and evidence necessary to expeditious resolution of their dispute. *Davies v. Superior Court* (1984) 36 Cal.3d 291, 299. Accordingly, to the extent that defendant is withholding any responsive emails (RFP 1), training materials (RFPs 2-9), water initiative records (RFPs 38-40), or operation guidelines, such evidence must be turned over to plaintiff's counsel, along with a signed verification, by June 13, 2025. If defendant maintains that it has produced all responsive documents and materials in its possession, custody, or control, it must provide a signed verification to that effect to plaintiff's counsel by June 13, 2025.

Plaintiff may seek to exclude any evidence not produced as ordered via motion *in limine*.

Plaintiff's request for monetary sanctions is granted in the reduced amount of $5,560 (10 hours at $550 per hour plus the $60 filing fee). Code Civ. Proc. § 2031.310(i). The sanctions must be paid by defendant State Farm to plaintiff Bonita Pachall by June 13, 2025.

**IT IS SO ORDERED.**

Marcella O. McLaughlin

Judge Marcella O. McLaughlin

EXHIBIT C

EXHIBIT C

J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Nicholas J. Peterson (287902)
Kerley Schaffer LLP
1939 Harrison Street, Suite 900
Oakland, California 94612
Telephone: (510) 379-5801
Facsimile: (510) 228-0350
service@kslaw.us

Attorneys for Plaintiffs

Electronically
**FILED**
By Superior Court of California, County of San Mateo
ON 02/04/2026
By /s/ Tovar, Priscilla
Deputy Clerk

Electronically
**RECEIVED**
1/27/2026
CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| **CAROLYN DIXON,** an individual, and **DAVID BASSI,** an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**STATE FARM GENERAL INSURANCE COMPANY,** an Illinois corporation, **CYNDA WATKINS,** an individual, **ROBIN OOLEY,** an individual, and **DOES 1-10,**<br><br>Defendants. | Case No.: 24-CIV-02224<br>NF<br>**~~[PROPOSED]~~ ORDER RE: DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S, CYNDA WATKINS', AND ROBIN OOLEY'S MOTION FOR PROTECTIVE ORDER** |

Defendants State Farm General Insurance Company, Cynda Watkins, and Robin Ooley (Defendants) Motion for Protective Order was set for hearing on January 20, 2026, in Department 4, Courtroom 4C of this Court. The Court issued its tentative ruling denying the motion on January 16, 2026. State Farm did not contest the ruling. As such, the tentative ruling (Exhibit A) is the order of the Court.

**IT IS SO ORDERED:**

Electronically
**SIGNED**
By /s/ Fineman, Nancy
02/03/2026

Date: ____________________

Hon. Nancy L. Fineman

**APPROVED AS TO FORM:**

Date: 1/27/26

/s/ Chloe J. Loomer
Todd. A. Roberts
Chloe J. Loomer
Attorneys for Defendants

# EXHIBIT A

EXHIBIT A

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SAN MATEO**

**Law and Motion Calendar**
**Honorable Nancy L. Fineman**
**400 County Center, Redwood City**
**Department 4, Courtroom 4C**
**Tuesday January 20, 2026**

**If you intend to appear on any case on this calendar, you must give notice by 4:00 pm the court day before the hearing pursuant to California Rules of Court, Rule 3.1308(a)(1), and San Mateo County L.R. 3.403(b).**

**Failure to comply with notice as outlined will result in no oral presentation.**

## Notice of Appearance and Courtesy Copies

1. **Email Dept4@SanMateoCourt.org before 4:00 pm the court day before with a copy to all parties or their counsel of record. The email must include the name of the case, the case number, and the name of the party contesting the tentative ruling OR call (650) 261-5104 before 4:00 pm the court day before and follow the instructions on the message.**

2. **Courtesy Copies: You must email a copy of any reply brief, or an Opposition to a Motion for Summary Judgment in an Unlawful Detainer matter to: LawAndMotionReplyBriefs@SanMateoCourt.org**

## Day of Hearing

**Appearances can be In Person or Remote. If appearing remotely by Zoom, please use your first and last name and mute your audio until your case is called. All parties must use a device with a camera if you are appearing remotely. Please login to the zoom hearing by 1:50 pm.**

## Remote Appearance Zoom Information

**RECORDING OF A COURT PROCEEDING IS STRICTLY PROHIBITED.**

https://sanmateocourt.zoomgov.com/ **Meeting ID:** 160 624 8977 **Password:** 230279

**TO ASSIST THE COURT REPORTER, the parties are ORDERED to: (1) state their name each time they speak and only speak when directed by the Court; (2) not to interrupt the Court or anyone else; (3) speak slowly and clearly; (4) connect from a computer if at all possible, rather than a cell phone; (5) if a cell phone is absolutely necessary, the parties must be stationary and not driving or moving; (6) no speaker phones under any circumstances; (7) provide the name and citation of any cases referenced; and (8) spell all names, even common names.**

02:00 PM
LINE 3

24-CIV-02224 CAROLYN DIXON, ET AL. VS. CYNDA WATKINS, ET AL.

CAROLYN DIXON J EDWARD KERLEY
CYNDA WATKINS MICHON M. SPINELLI

STATE FARM GENERAL INSURANCE COMPANY, CYNDA WATKINS, AND ROBIN OOLEY'S MOTION FOR PROTECTIVE ORDER

**TENTATIVE RULING:**

Defendant State Farm General Ins. Co. ("State Farm") brings the instant Motion for Protective Order (the "Motion") seeking a "forward-looking" protective order from the Court (Reply, 3:8) preventing Plaintiff's counsel's future "use" of its "confidential materials *by referencing [B]ates numbers and titles of documents*" (*id*., 2:13-14 (emphasis added)).

The Motion is DENIED.

*Background*

This insurance case arises out of a homeowners' insurance policy issued by Defendant State Farm to Plaintiffs Carolyn Dixon and David Bassi for 2020 through 2021. On December 14, 2020, Plaintiffs' property was damaged by a fire. Plaintiffs allege that State Farm was deceptive and ultimately did not pay all amounts due under the policy.

The First Amended Complaint ("FAC") was filed on May 22, 2024, and asserts eight causes of action. Pacific Law Partners, LLP, had been named as a Defendant, but after its successful anti-SLAPP motion, the Court ordered the FAC stricken as to this Defendant. (Judgment in Favor of Defendant Pacific Law Partners, LLP and Against Plaintiffs Carolyn Dixon and David Bassi, filed on November 8, 2024.)

*The Court's Model Protective Order, to Which the Parties Had Stipulated, Suffices.*

Initially, it appeared that Defendant State Farm would ask the Court to protect pursuant to Code of Civil Procedure section 2031.060, subdivisions (b) and (b)(5), its confidential, proprietary material, including trade secrets, such as its:

> 70 Series Operation Guide ("OGs") of its Property & Casualty Claims Department, prepared by its highly experienced claims *and legal personnel* to describe the unique and proprietary method of adjustment that it developed in-house, because these embody its significant investments and confer upon it a competitive edge in the marketplace (Tierney Decl., ¶¶ 5-11);
>
> Standard Claim Process ("SCPs") and Jurisdictional References ("JRs") developed by highly experienced claims *and legal personnel* in its Enterprise Process Ownership unit, representing unique, proprietary claims handling procedures which are not like standard forms used by competitors, because these very valuable assets confer upon it a business advantage (Carter Decl., ¶¶ 5-9, 11); and training materials, a resource-intensive research

> and development investment, prepared by highly experienced *and legal professionals* (Thomas Decl., ¶¶ 4-7).

Defendant State Farm protects all of these materials by various means, including its Code of Conduct, which prohibits its employees from disclosing them outside itself. (Tierney Decl., ¶¶ 13-18; Carter Decl., ¶¶ 13-17; Thomas Decl., ¶¶ 8-9, 12-13.) Defendant State Farm does this because if the materials were disclosed, its business competitors would be provided with an unfair advantage against it. (Tierney Decl., ¶ 12; Carter Decl., ¶¶ 10, 12; Thomas Decl., ¶¶ 10-11, 14.) However, the parties already had stipulated to use of the Court's Model Protective Order to do just that.

Instead, Defendant State Farm seeks to prevent Plaintiffs' counsel from referencing the kinds, titles, and Bates numbers of documents that he knows to exist, from his experience in litigating against Defendant State Farm. This is not the kind of "use" of Defendant State Farm's trade secrets against which a protective order is meant to protect. Neither is the application of the experience of counsel to ensure that Defendant State Farm does not withhold responsive documents the kind of competitive "harm" to defendants against which such orders are meant to protect.

Further, the attack on counsel that turns out to be Defendant State Farm's primary mode of argument is ill founded. Even a Superior Court case that Defendant State Farm recites against him shows that the Court there did not find that he violated a protective order by referring to the Bates numbers of documents that he sought. Moreover, Plaintiffs note that there is no California State Court case on point, and reviews federal cases which this Court finds persuasive. These federal cases address the "absurdity" to which Defendant State Farm's position leads: *how* is counsel supposed to comply with the kind of order that Defendant State Farm seeks? As the Ninth Circuit explains:

> [Plaintiff therein] committed three technical violations of the order by using the discovery from the first lawsuit to advance the second. But the defendant failed to prove by clear and convincing evidence that under a good faith, reasonable interpretation of the protective order, [Plaintiff] did not substantially comply with the order.
>
> The order … was designed to protect commercial secrets. Its detailed provisions were written by defendants' lawyers, not the judge, to throw the biggest possible blanket over every kind of knowledge which might be obtained in the lawsuit, lest a secret be exposed. But as [Plaintiff] explains in its brief, if taken literally, the order would be absurd. Because [Plaintiff's] lawyers cannot achieve total amnesia and all their subsequent work in antitrust litigation against the defendants (and perhaps anyone else) would be informed by what they learned during discovery in the 1987 suit, the order would prohibit them from representing [Plaintiff] at all in the 1990 litigation. Indeed, lawyers who learn from and use their experience obtained in discovery under such an order would have to change fields, and never do antitrust work again, lest they "use" what they learned in a prior case "in any way whatsoever" in any "other action." For the protective order to comply with common sense, a reasonable reading must connect its prohibitions to its purpose—protection against disclosure of commercial secrets.

> …. Privacy of proprietary information, not immunity from suit, was the legitimate purpose of the protective order.

(*In re Dual-Deck Video Cassette Recorder Antitrust Litig*. (9th Cir. 1993) 10 F.3d 693, 695-96 (footnote omitted) (emphasis added).) By seeking to prevent Plaintiff's counsel's future "use" of its confidential materials by referencing kinds, titles, and Bates numbers of documents, Defendant State Farm misconstrues the purpose of a protective order to prevent counsel from using such "information for any commercial, competitive, personal, or other purpose" (Reply, 5:11): the purpose of a protective order is to prevent actions such as selling trade secrets to competing insurance companies, not to prevent counsel from using their experience gained in years of litigation from pursuing in discovery documents that Defendant State Farm has withheld. Defendant State Farm further misconstrues the kind of "competitive harm that protective orders are designed to prevent" (*id*., 4:14), which is the disclosure of Defendant State Farm's know-how as described in the substance of the documents named by its Declarants. That the bar comes to know of the kinds, titles, and Bates numbers of such documents and to use those in its practice to help plaintiffs gain access to discovery-responsive documents that Defendant State Farm should be producing is *not* a kind of "competitive harm" against which a protective order is designed to protect. In fact, if the language was adopted, it might be possible to construe State Farm's identifying by name the 70 Series Operation Guide, and Standard Claims Process and Jurisdictional References, which provides to future litigants the names of documents to request, as violating the protective order proposed by State Farm.

If the tentative ruling is uncontested, it shall become the order of the Court. Thereafter, counsel for Plaintiffs shall prepare for the Court's signature a written order consistent with the Court's ruling, pursuant to California Rules of Court, rule 3.1312, and provide written notice of the ruling to all parties who have appeared in the action, as required by law and by the California Rules of Court.

# EXHIBIT D

EXHIBIT D

J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Nicholas J. Peterson (287902)
Kerley Schaffer LLP
1939 Harrison Street, Ste 900
Oakland, California 94612
Telephone: (510) 379-5801

Attorneys for Plaintiffs

Matthew F. Batezel (185147)
Daniel T. Balmat (230504)
PACIFIC LAW PARTNERS, LLP
15615 Alton Parkway, Ste 240
Irvine, CA 92618
(949)242-2441
Fax (949)242-2446

Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

**WILLIAM TONG,** an individual, and **MALINEE DIBBAYAWAN**, an individual,

Plaintiffs,

v.

**STATE FARM GENERAL INSURANCE COMPANY,** an Illinois corporation, and **DOES 1 through 10**,

Defendants.

Case No. 2:24−cv−02219−DSF−MAR

**STIPULATED PROTECTIVE ORDER**

1. A. PURPOSES AND LIMITATIONS

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

B. GOOD CAUSE STATEMENT

Disclosure and discovery activity in this insurance and bad faith action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. State Farm contends that its internal guidelines and procedures contain proprietary intellectual property that was developed by State Farm for exclusive use by State Farm's claims personnel. State Farm contends that these materials are unique to State Farm, and are the product of internal analyses, and may contain commercial information developed by State Farm and belonging to State Farm and that it maintains certain of the responsive documents in confidence as the documents are not distributed outside of State Farm and are considered by State Farm to be confidential, trade secret protected and proprietary, the dissemination of these materials could cause competitive harm. Other categories of confidential documents from either party may be sought in this litigation. Accordingly, the Parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order.

2. DEFINITIONS

2.1 Action: Tong et al. v. State Farm et al., United States District Court, Central District of California, Case No. 2:24−cv−02219−DSF−MAR

2.2 Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3 "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement.

2.4 Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

2.5 Designating Party: a Party or Non-Party that designates information or Items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information."

2.6 Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7 Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

2.8 House Counsel: attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.9 Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10 Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this

Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party, and includes support staff.

2.11 Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.12 Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.13 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.14 Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information."

2.15 Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

3. SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge. This Order does not govern the use of Protected Material at trial.

4. DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this

Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

All materials provided by the Parties pursuant to this Protective Order that are designated "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information." will be used solely and exclusively for the preparation for and conduct of this litigation, and will not, unless directed by an appropriate Court in an enforceable order, be made available, disclosed, or disseminated in any manner for any business or other purpose whatsoever. Individuals authorized to review "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information" pursuant to this Protective Order will hold Confidential Information and/or Trade Secret Information in confidence and will not divulge the "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information," either verbally or in writing, to any person or entity not otherwise directed to do so by an enforceable Court order. For purposes of this provision, an enforceable Court order does not include a subpoena issued by a private attorney and challenged by any Party or third party.

5. DESIGNATING PROTECTED MATERIAL

5.1 Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions. If it comes to a Designating Party's attention that information or items that it designated for protection do not

qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

5.2 Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affixat minimum, the legend "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information."" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information."" After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition all protected testimony.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information."" If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3 Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6. CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1 Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2 Meet and Confer. The Challenging Party shall initiate the dispute resolution process under Local Rule 37.1 et seq.

6.3 The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdraw the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7. ACCESS TO AND USE OF PROTECTED MATERIAL

7.1 Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Such Protected Material may be

disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2 Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" " or "Confidential Information and/or Trade Secret Information." only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h) during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit 1 hereto; and (2) they will not be permitted to keep any

confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(i) any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

7.3 Inappropriate Disclosures of "CONFIDENTIAL" Information or Items.: Confidential Information produced by the Designating Party will not be shared by the Receiving Party with any person or entity not defined in 7.2 (a) through (i) noted above. Upon demand of the Designating Party, Counsel for the Receiving Party must execute a certification under penalty of perjury advising (1) that the Receiving Party has taken appropriate steps to follow the provisions of the Stipulated Protective Order and (2) that the Receiving Party has undertaken to ensure that all signatories of Exhibit A to the Protective Order are in full compliance with the obligations hereunder. If Counsel for the Receiving Party is unable or unwilling to make such certification, counsel for the Designating Party can seek appropriate relief from the Court including but not limited to the right to withhold additional Confidential Information or Protected Material from production and any other relief as this Court shall deem to be appropriate.

8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena to issue in the other litigation that some or all of the material covered by the subpoena is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

The Party served with the subpoena shall not produce any information designated in this action as "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information" before a determination by the court from which the subpoena issued. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9. A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "Confidential Information and/or Trade Secret Information." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

All confidential information must be held in confidence by those inspecting or receiving it and must be used only for purposes of this action. Counsel for each Party and each person receiving confidential information must take reasonable precautions to prevent the unauthorized or inadvertent disclosure of such information. If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material and to prevent further disclosure by the Party and the person(s) receiving the unauthorized disclosure, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the

Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

12. MISCELLANEOUS

12.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

12.2 Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3 Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

13. FINAL DISPOSITION

(A) After the final disposition of this Action, as defined in paragraph 4, within 30 days of a written request by the Designating Party, each Receiving Party must return or destroy all Protected Material . As used in this subdivision, “all Protected Material” includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. The Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 30 day deadline that

Case 2:24-cv-00152-DSF-MBK Document 31-19 Filed 11/26/24 Page 13 of 15 Page ID #:2161

(1) identifies (by category, where appropriate) all the Protected Material that was destroyed (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material and (3) . affirms that the Receiving Party has obtained a certification, which can be produced on demand from the Designating Party, from each of the parties that signed Exhibit A to this Protective Order signifying that each Exhibit A signatory has identified (by category, where appropriate) all the Protected Material that was shared and has been destroyed and affirms that each Exhibit A signatory has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

(B) Nothing in this Protective Order disallows State Farm from: (a) complying with any state or federal law or regulation, including reporting of information to a regulator or government entity as permitted and/or required by applicable state and federal law; (b) adding information discovered that is relevant to a claim to the relevant electronic record in its electronic claim system; (c) disclosing evidence of a crime or fraud; (d) retaining information necessary to meet mandated retention requirement; or (e) retaining copies of Confidential Materials that may exist on back-up media or other computer or archive storage not regularly accessed by business users in the ordinary course, provided that, should a copy of the Confidential Materials be accessed, it will be used for a purpose consistent with this Order.

14. Any violation of this Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions, including but not limited to counsel's failure to comply with their obligations thereunder – both during the pendency of this matter and after the resolution of this matter.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

_______________________ ________________________________
Date Attorneys for Plaintiffs

_______________________ ________________________________
Date Attorneys for Defendant

FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

_______________________ ________________________________
Date [Name of Judge]

United States District/Magistrate Judge

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____________________________ [print or type full name], of ___________________________ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on [date] in the case of ____________ **[insert formal name of the case and the number and initials assigned to it by the court].** I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order. I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action. I hereby appoint __________________________ [print or type full name] of ________ ____________ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _________________________

City and State where sworn and signed: ______________________________

Printed name: _____________________________________

Signature:__________________________________