J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Nicholas J. Peterson (287902)
**Kerley Schaffer LLP**
1939 Harrison Street, #900
Oakland, California 94612
Telephone: (510) 379-5801

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY MYLES, an individual, and WILLIE DANIELS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 10,<br><br>Defendants. | Case No.: 2:26-cv-00452-CAS-MBK<br><br>**DISCOVERY MATTER**<br><br>Magistrate Judge Michael B. Kaufman<br><br>**DECLARATION OF DYLAN SCHAFFER IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, AND FOR SANCTIONS**<br><br>Hearing Date: September 30, 2026<br>Time: 9:00 a.m.<br>Courtroom: 255 E. Temple St., Los Angeles, Courtroom 550, 5th Floor<br><br>2nd Amended Complaint: 3/16/2026<br>Discovery Cutoff: 4/15/2027 |

I, Dylan Schaffer, declare under penalty of perjury as follows:

1. I am an attorney licensed to practice in California and before this Court. If called to testify I would do so under penalty of perjury as follows:
2. My firm and I are Plaintiffs' counsel. We focus on the representation of property insurance customers in disputes with their carriers.
3. The parties conferred about the subjects at issue in the accompanying Motion to Compel on June 18, 2026, July 15, 2026, July 28, 2026, and August 20, 2026.
4. I certify that the parties have satisfied the requirements of Local Rule 37-1.

**THE CLAIM AND DENIAL**

5. The Myles family lives in Gardena, California, and is insured by State Farm.
6. Kathy Myles awoke on October 7, 2025, to find her kitchen floor and cabinets warm to the touch. There was no such condition the prior evening. She observed water spilling out of an exterior wall.
7. She called a plumber who discovered a failed pressurized hot water supply line in the home's concrete footing.
8. Ms. Myles reported the loss to State Farm on October 8.
9. The Myles family had the plumber return to do a bypass and reroute of the line, but that work did not disturb the failed portion of the supply line, which remained in the slab.
10. State Farm inspected the home once on October 10, 2025.
11. Its adjuster did not see the broken line.
12. After the inspection the adjuster asked her supervisor about potentially

seeking permission to break into the foundation, but State Farm never pursued the point. The adjuster then went on vacation for a week, delaying resolution of the claim and leaving the Myles family in a state of disarray.

13. Although it was aware the home was occupied by a large extended family, that the water supply had been impacted, that there was now contaminated water that had flowed throughout the first floor of the home, and that its adjuster would now be off for a week's rest while the coverage investigation stalled, State Farm refused to afford alternative housing or benefits for mitigation that was crucially necessary to avoid further damage.

14. State Farm thereafter sought, and the Myles family provided, various documents including gas and water records, and documents relating to their HOA.

15. Both Servpro, a State Farm remediation vendor, and Exact Leak Detection, the plumber which found the failed line and did the reroute, told State Farm there was no evidence of any long-term leak such as microbial growth, deteriorated building components, or buckled floors.

16. On October 23, 2025, State Farm denied the claim in its entirety. It relied in part on an exclusion for water losses below the surface of the ground, although all evidence shows the loss was *inside the foundation.* State Farm also relied on an exclusion for "continuous and repeated seepage and leakage," a provision generally aimed at long-term slow leaks, not failed pressurized supply lines.

17. State Farm did not explain how long the loss had been going on, the

location, cause, or size of the crack or hole in the failed supply line, or the volume of water that had been released.

18. The denial relies on the leak detection report, but it says nothing about timing or cause.

19. The denial cites water and gas bills, but the records State Farm obtained did not cover the time of the loss and State Farm never sought other evidence before it was sued. The denial relies on percipient inspection by Servpro and the adjuster, but Servpro never told anyone the loss was ongoing, and the adjuster seems to have made no specific findings about timing, cause, location, or volume of water released.

20. The Myles family filed this lawsuit in January 2026, and amended in March 2026. (Docket 18.)

21. State Farm's lawyers recently served subpoenas on gas and water utilities which produced responsive documents.

22. In August 2026, State Farm's counsel (in argument at the IDC on August 17, 2026) informed counsel for the Myles that State Farm would be further adjusting the claim based on the utility records, which it now claims support the October 2025 denial.

23. In their complaint, Plaintiffs allege not only that State Farm failed to competently investigate and adjust *their* claim, but the events of their claim reflect a variety of initiatives at State Farm since to reduce claims costs, including as to loss adjustment expenses and benefits payments in California water losses. (Second Amended Complaint, Docket 18, ¶¶33-37).

## THE REQUESTS

24. I served Plaintiffs' Requests for Production, Set Two (RPD-2) on April 28, 2026. Those requests are attached as **Exhibit A**.

25. State Farm responded on June 1, 2026. Those responses are attached as **Exhibit B.**

26. State Farm supplemented its responses on July 7, 2026. Those responses are attached as **Exhibit C.**

27. State Farm further supplemented its responses on August 21, 2026. Those responses are attached as **Exhibit S.**

28. I served Requests for Production, Set Three (RPD-3), on July 6, 2026. Those requests are attached as **Exhibit D.**

29. State Farm served its responses on August 25, 2026. Those responses are attached as **Exhibit E.**

30. The requests at issue in this motion relate to four categories of documents:

    a. **Training and Guidelines:** We sought documents containing training and guidelines available to State Farm's claims adjusters in the period of the loss relevant to the investigation of water losses and application of the two exclusions at issue here: below the surface of the ground (BSG) and continuous and repeated seepage and leakage (CRSL). (Exhibit A, RPD-2, Requests 17, 19-23; 82-85; Exhibit D, RPD-3, Requests 103-114);

    b. **Requests Relating to Water Loss Initiatives**: We sought documents

relating to State Farm's systemic initiatives, starting in 2016 and continuing today, to reduce loss adjustment expenses and claim payments in water losses in California. Evidence previously obtained by my firm and others demonstrate a consultant-driven effort, involving the most senior executives at State Farm, to cut California claims loss expenses and benefits, including as to water losses in California, which manifested in a large number of baseless water loss denials in this state, as occurred here. (Exhibit A, RPD-2, Requests 18, 24-43);

c. **Requests Relating to State Farm's Reporting of Metrics/Goals and the Measured Impact of its Water Loss Initiatives:** Based on my understanding of State Farm's conduct, in which it establishes performance metrics, sets performance goals, measures outcomes, and manages its claims staff at all levels according to those goals and outcomes, we sought documents reflecting metrics, goals, and outcomes in the relevant time period. (Exhibit A, RPD-2, Requests 44-75);

d. **Performance Review/Incentive Requests:** Because we are aware that State Farm's systemic loss reduction effort involves managing claims staff at all levels in response to goals and financial outcomes, we requested documents relating to performance reviews, incentives, and audits of the State Farm personnel both directly and indirectly involved in the investigation and adjusting of Plaintiffs' claim. We

believe that using predictive models and AI, among other tools, State Farm "reinspects" paid water loss claims in California and identifies what it describes as failures of "quality", "accuracy", and "consistency"; in other words, where it concludes it might have paid nothing or less than what was paid in benefits, it provides "coaching" and other personnel input at all staff levels to ensure the water initiatives have the intended impact on claims outcomes. (Exhibit A, RPD-2, Requests 86-94).

31. Consistent with its long history of discovery misconduct described below, in response to these requests State Farm has served responses that violate various Federal Rules, delayed production of documents, failed to produce promised documents, and refused to produce broad swaths of discoverable materials that it has been ordered to produce in five other cases:

  a. **Training and Guidelines:** State Farm has (i) delayed production of the narrow swathe of training and guidelines materials it has promised to produce, and (ii) contrary to orders compelling production in two prior cases, refused to produce guidelines and training documents available to the claims staff who investigated adjusted the Myles claim. Its responses, supplemental response, and further supplemental responses are **Exhibits B, C, and E.**

  b. **Requests Relating to Water Loss Initiatives:** State Farm has refused to produce documents in response to these requests. It has not supplemented its original responses, which are **Exhibit B**.

c. **Requests Relating to State Farm's Reporting of Metrics/Goals and the Measured Impact of its Water Loss Initiatives:** State Farm has refused to produce documents in response to these requests. It has not supplemented its original responses, which are **Exhibit B.**

d. **Performance Review/Incentive Requests:** State Farm has refused to produce documents in response to these requests. It has not supplemented its original responses, which are **Exhibit B.**

**STATE FARM'S PATTERN OF DISCOVERY MISCONDUCT**

32. This Court has held that State Farm has a proven pattern of obstructing discovery in violation of Federal Rules of Civil Procedure (FRCP), Rules 26, 34, and 37, and thereby obtaining strategic advantage—namely, delay—even where, as in various cases, it is ultimately compelled to produce documents. *Tong v. State Farm,* No. 2:24-cv-02219-DSF-MAR, 2024 WL 5472414, *12-13 (C.D.Cal. Dec. 20, 2024).

33. Below we do not attempt to provide evidence of *every* instance of such misconduct, which would consume the Court for hours. Rather, by reference to prior cases, we seek to explain the *elements* of State Farm's strategy.

***Wise v. State Farm***

34. I was counsel in the matter of *Wise/Russell v. State Farm General Insurance Company*, 4:23-cv-00163-HSG, Northern District of California.

35. The case involved a large water loss at my clients' home in Solano County, California. As here, no State Farm employee or representative saw the failed water line. As here, State Farm denied that loss in reliance on an exclusion

for water losses resulting in "continuous and repeated seepage and leakage".

36. We sought training and guidelines materials relating to the investigation, adjusting, and denial of water loss claims in California.

37. As is its practice, State Farm did not respond by indicating that it had searched for and would produce responsive documents. Instead, as this Court noted in the *Tong* case (see below), and precisely as it did here, after a series of boilerplate objections, it agreed to produce only documents of its own choosing—namely, Operation Guides, Standard Claims Practices, and Jurisdictional Resources. **Exhibit F** is State Farm's responses to Requests for Production, Set 1, in the *Wise* matter. See Exhibit F, pp.26:1-27:28, 29:11-31:13.

38. Eventually, after its inadvertent revelation of a training transcript for an adjuster in the claim—a revelation which proved State Farm has myriad categories of training and guidelines materials it had never produced, and likely thousands of pages of unproduced responsive documents that fall into those categories—we challenged State Farm's conduct by way of a mandated "Joint Discovery Letter" to the Northern District of California on December 27, 2023. **Exhibit G** to this declaration is a true and correct copy of relevant excerpts from that submission.

39. State Farm settled the case before the court ruled on the issue of the withheld responsive training and guidelines materials.

***Tong v. State Farm***

40. After the *Wise* matter concluded, I was counsel in *Tong v. State Farm*

*General Insurance Company,* Case No. 2:24−cv−02219−DSF−MAR.

41. In its particulars, the *Tong* matter is identical to this case. The loss, in the Los Angeles area, occurred in March 2024, 19 months before the loss here (October 2025). A supply line in the slab foundation failed. The house was damaged. State Farm never saw the broken line. State Farm denied the loss in reliance on the same two exclusions applied here. The family filed a lawsuit.

42. Thereafter, State Farm reversed its denial and paid the claim, eventually settling the bad faith claims shortly after this Court ordered production of large swathes of documents relating to State Farm's efforts to reduce its water loss liabilities in this state. *Tong v. State Farm,* No. 2:24-cv-02219-DSF-MAR, 2024 WL 5472414 (C.D.Cal. Dec. 20, 2024) [court ordered production of a broad swath of State Farm documents relating to Water Initiative, training, and personnel information.]

43. In *Tong,* as in *Wise,* and as here, in response to document requests for training and guidelines available to claims staff relating to the investigation and adjusting of water losses, and specifically seeking training and guidelines relating to application of the two exclusions at issue here, instead of agreeing to search for and produce all responsive documents, State Farm served its template objections, and agreed to produce the same three categories of documents it always agrees to produce: Operations Guides, Jurisdictional Resources, and Standard Claims Practices, and only after entry of a protective order.

44. As here, after a long period of conferral required by the Court, which consumed months of the discovery period, State Farm agreed to produce only the training and guidelines *that appeared on the training transcripts of the adjuster and supervisor who handled the claim.* But it refused to produce any other responsive training and guidelines materials that were *available* to the adjusters in the relevant period and thus reflected State Farm's institutional application of the relevant exclusions.

45. As here, the plaintiffs in *Tong* were left with no choice but to file a motion to compel as relates to the training/guidelines materials, as well as various other categories of documents at issue here, and discussed below.

46. In addition to another *four* rulings compelling production which are discussed below and in the accompanying memorandum, the *Tong* Court found that State Farm had long been engaged in a pattern of discovery misconduct, including, in violation of Rule 34:

a. Defaulting in its obligation to search its records and serving incomplete and/or inconsistent responses to requests for documents relating to its institutional practices;

b. Failing to certify that it has searched for and produced all non-privileged responsive documents; and

c. Inconsistently producing responsive documents to similar discovery requests in cases involving nearly identical water loss claims and denials.

*Tong,* 2024 WL 5472414, at *12-13.

47. The *Tong* court was sufficiently disturbed by State Farm's conduct that it granted Plaintiffs' request for a hands-on inspection of State Farm's internal intranet and its claim system. *Id.* at *11-13.

***Pachall v. State Farm***

48. An order similar to *Tong,* which granted thousands of dollars in sanctions, issued in *Pachall v. State Farm General Insurance Company,* San Diego Superior Court, 37-2022-00044176. The order is attached as **Exhibit H.**

49. In *Pachall,* another water loss denial, just as it has done here, State Farm sought to limit its production of training and guidelines materials to those that appeared on the training transcripts of the adjusters handling the claim. The court rejected the argument: it ordered production of all training and guidelines in effect at the time of the insurance claim, including such materials implemented previously but still effective at the time of the claim. (Exhibit H, pp.2-3.)

50. The court also granted plaintiffs' motion to compel performance review materials, an issue here as well. (Exhibit H, p.3.)

***Myles v. State Farm***

51. State Farm has been nothing if not true to form here.

52. State Farm's serial Rule-violative responses (Exhibits B, C, E, S), narrow agreement to produce training and guidelines materials, delayed production timeline, and non-responsive productions, continue precisely the conduct this Court found wanting in *Tong*.

**Obstructive Responses to Requests for**

**Production of Documents**

53. In response to requests for production of the same categories of training and guidelines documents the *Tong* and *Pachall* courts had ordered it to produce (Exhibit A, Requests 17-23)*,* and consistent with its pattern, here State Farm first ignored our actual requests.

54. Instead of indicating it would produce all responsive documents, or stating that based on its objections it would be withholding documents (as FRCP Rule 34(b)(2)(C) requires), as it always does in its initial responses, State Farm responded that it would produce, yet again, the Operations Guides, Jurisdictional Resources, and Standard Claims Practices. (*See, e.g.,* Exhibit B, p.33:4-12, using Request 17 as an example.)

55. In its original response (Exhibit B) State Farm added this statement to each of its responses, which is designed to give the carrier cover for what it knows will be a future discovery dispute: "State Farm will also produce, subject to protective order, *additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter.*" (*See, e.g.,* Exhibit B, Response to Request 17, p.33:12-14 (emphasis added).)

56. Contrary to the requirements of FRCP Rule 34, State Farm did not indicate it *had searched for* and would produce all responsive documents, nor did it indicate it was withholding responsive documents, nor did it produce any documents, nor did it say *when* it would be producing the documents, nor did it describe *what* documents it would be producing and what it would be

withholding.

57. State Farm's "will produce additional resources" promise is an empty one. First, it does not describe when it will search for or produce the documents. Second, the statement contains an escape hatch for State Farm, namely, it limits any future production to documents "relating to the issues in this case" which, of course, is a line State Farm unilaterally draws.

58. The same sort of "we promise to do more" language appears in each of State Farm's responses to requests for production.

59. After a conferral process over weeks, on July 7, 2026, State Farm supplemented its responses *only as to training and guidelines documents*. (Exhibit C.)

60. Although in its argument to the Court at the IDC, State Farm routinely asserted that it had engaged in good faith efforts to satisfy Plaintiffs' requests, the limit of that discussion was the training and guidelines documents – at no point since service of the requests in April has State Farm narrowed its objections to, or agreed to any sort of compromise, regarding documents bearing on State Farm's water initiatives.

61. As relates to the training and guidelines materials, State Farm took the position throughout, contrary to multiple prior court orders described below, that only documents reviewed by the claims staff here are discoverable.

62. And it again included intentionally vague language promising to do more, without providing a timeline or any meaningful specificity to its plan: "State Farm is completing an additional search for responsive training and resource

materials in effect from September 2023 through the end of claim handling and will produce additional nonprivileged documents located during that search." (Response to Request 17, Exhibit E, pp.34:26-35:2.)

63. Thus, after multiple conferrals, and in abject violation of its obligations under Rule 34, State Farm did not indicate it *had searched for* and would produce all responsive documents, nor did it indicate it was withholding responsive documents, nor did it produce any documents, nor did it say *when* it would be producing the documents, nor did it describe *what* documents it would be producing and what it would be withholding.

64. And although Rule-compliant responses and production of all documents promised should have been completed back in June 2026, given service of the requests in April, *on Friday, August 21, 2026*, at 5:30 p.m., three business days before the due date for this motion, State Farm served "further supplemental responses." The supplemental responses are attached as **Exhibit S.**

65. State Farm's essential position as to water initiative documents (described *supra,* ¶¶30(b)-(d), 31(b)-(d)) has not changed—it continues to refuse to produce a page of responsive documents. Although it tends to blur the line as to the scope of its productions, that refusal has been complete and unchanging since its original responses to RPD-2, in June 2026. (Exhibit B.)

66. As for *training and guidelines* documents, even faced with the motion to compel, and aware of prior orders (*Tong, Pachall*) which are contrary to its position, State Farm maintains its refusal to produce any documents which

the claims staff involved in the Myles claim did not review or rely on at some point.

67. But far more revealing of State Farm's obstructive litigation strategy is that even facing this motion, and having *both* in its original responses and supplemental responses promised to conduct further searches and produce documents at some unspecified further date, in its August 21 further supplemental responses, State Farm *says again*: "State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the filing of this suit. It expects to complete its search and agreed production, to the extent additional non-privileged documents are located during that search, by September 4, 2026." (Exhibit S, p.35:16-20.)

68. The Court will note the following:

*a.* As of the filing of this motion, State Farm has *three times*, in plain violation of the Federal Rules, and in unashamed disregard of the *Tong* Court's criticisms of its discovery conduct, declined to indicate it had searched for and would produce responsive documents;

*b.* Likewise, in each of its responses to Request 17 (and the many other related requests for training and guidelines), State Farm has failed to comply with Rule 34(b)(2)(C), which requires it to state that it is withholding responsive documents, or not;

*c.* And even months after the original due date for production (June 1, 2026), facing a motion to compel, and even ignoring for the moment

the *limitations* State Farm has itself imposed on the scope of its production, in violation of Rule 34(b)(2)(B), State Farm *again* does not produce all documents at issue, or even *say* it will produce all such responsive documents on September 4, but instead only says its *search* will be done by that date.

69. The violations of Rule 34(b)(2)(B) and (C) are unmistakable. The Rules were amended to avoid precisely the sort of delay tactics State Farm makes a centerpiece of its litigation strategy.

70. Plaintiffs' discovery requests at issue were served immediately upon the opening of discovery in April 2026.

71. At an initial IDC in this case, the parties agreed to put in place the temporary protective order on May 19, 2026. (Docket 29.)

72. State Farm served its initial responses on June 1, 2026, but produced no documents on that date, nor indicated in its responses *when* it might be sending over even the narrow categories of documents it *had* agreed to produce. (Exhibit B.)

73. Instead, State Farm engaged in what it has described and defended in communications with me as "rolling productions", which it says are proper notwithstanding the express Federal Rule to the contrary. It has no authority to that effect and Rule 34 was amended to avoid precisely that outcome.

74. After serving its vague supplemental responses on July 7, *State Farm first produced documents in response to the requests for training and guidelines documents on July 15, 2026.*

75. State Farm produced another (entirely non-responsive) set of documents relating to water mitigation on August 8, 2026.

76. On the eve of the recent IDC, on August 14, 2026, State Farm produced several hundred additional pages of entirely non-responsive training materials, which are described below.

77. And as set forth, its response, supplemental response, and further supplemental response all say the same thing: we are continuing to search, without indicating that it *had* searched and *had produced* even the narrow categories of documents it had promised to produce.

**Non-Responsive Productions**

78. To make matters worse, as has been true of every State Farm case I have litigated, the insurer here produced thousands of duplicative and non-responsive documents, including but by no means limited to the following:

a. Deceased insureds

b. Child support liens

c. Returned mail

d. Washing machine losses

e. Bleach damage losses

f. Caller confirmation processes

g. Communications with brokers

h. Phone calls and text messaging

i. Septic losses

j. Smoke damage

k. Personal property losses

l. Water mitigation

m. Calendaring claims

n. How to enter file notes

o. Printing file notes

p. Abandoned claim payments

q. Payment verification requests

r. Tree roots

79. The production of thousands of pages of worthless documents is part of State Farm's strategy. It takes time and resources to review. And it allows the carrier to appear as if, and inform the Court that, it is working hard to comply with its discovery obligations, that its burden is great, and that Plaintiffs have no cause to complain.

80. But, in fact, in all of my State Farm cases, the carrier always produces the *same* bundle of non-responsive documents—starting with deceased insureds and ending with tree roots, for example, which strongly suggests the nonsense productions are not inadvertent, but are part of a well-worn plan.

**Conclusion**

81. Even following the Court's ruling in *Tong,* in which it called out State Farm for its pattern of discovery misconduct, since discovery opened in this case in April 2026, State Farm has engaged in precisely the same misconduct:

a. It served non-responsive and non-rule-compliant responses to requests for production in violation of the Federal Rules;

b. It failed to produce even promised documents in compliance with Rule 34;

c. It failed to indicate the scope of withheld documents in violation of Rule 34;

d. It forced a long conferral process before agreeing to produce documents it knows are discoverable;

e. It produced thousands of pages of non-responsive documents;

f. It repeatedly supplemented its discovery while offering Rule-violative promises about ongoing searches and potential future productions; and

g. It continues to refuse to produce vast quantities of relevant and discoverable materials, including documents it has produced or was ordered to produce in various cases, including *Tong*.

82. It seems reasonable to think that after the *Tong* Court's findings regarding State Farm's pattern of discovery misconduct, the insurer *knows* its conduct here is improper. Its continuing reliance on these tactics is sanctionable conduct.

**STATE FARM'S "QUALITY" INITIATIVES**

83. In 2024 I became aware of discovery responses by State Farm in the matter of *Jacobs v. State Farm General Insurance Company,* 22STCV23446, Superior Court for the County of Los Angeles. **Exhibit I** to this declaration is a true and correct copy of those responses.

84. In those responses, State Farm acknowledged systemic efforts, what have become known as *initiatives* across states, perils, and State Farm

departments, to drive down loss adjustment expenses and indemnity obligations in property claims.

85. There is no shortage of naming conventions that have come to light over the past several years, and State Farm's fondness for generic titles and deep wells of acronyms seems intended to avoid scrutiny. Here are some, but by no means all, of the initiative names we have seen used to describe State Farm's efforts since 2016: Fire[1] Model Enhancement, Quality Pillar Strategy, Fire Quality Plan, Fire Property Claims Quality Plan, Wind Quality Plan, Water Quality Plan, Water Forum, Fire Claim Focus, Fix Profit Task Force, and so on.

86. State Farm's initiatives focus on improvements in, for instance, "quality."

87. But at State Farm, words like "quality", "accuracy", and "consistency" are used to telegraph management goals, plans, and most importantly, expectations, about financial outcomes.

88. Thus, when State Farm indicates as part of its initiatives that it seeks to improve "quality", "accuracy", and "consistency", and sets goals, creates metrics for measuring outcomes, and measures and reports outcomes to its senior management, *opportunity* and *improvement* in these variables always

[1] When State Farm uses the word "fire" in its corporate speak, it refers not to the peril of fire, but instead to insurance and losses under fire *policies,* which may include losses caused by weather conditions such as wind, weather-related water losses, non-weather water losses such as occurred here, *and* fire losses. Thus, the "Fire Model Enhancement" was part of the systemic effort to reduce loss adjustment expenses and indemnity across *all perils,* including water, and not just losses caused by fire.

means less coverage and benefits for its customers.

89. The *Jacob* responses' description of the "water initiative" is consistent with the description above. State Farm explained that is "one or more efforts in California beginning in or around 2017 to help ensure consistency in the handling of water claims in California. Claims handling personnel were provided training that focused on reinforcing existing principles relating to proper investigation and documentation of water loss claims. Topics included the quality first contact, gathering the facts of loss, plumbing issues, additional investigation, determining coverage, estimatics, and damage evaluation. In 2020, the settlement authority of claims handlers on water loss claims was temporarily reduced. During that period, team managers reviewed claim specialists' water loss claims for conformance with quality claim handling expectations." Exhibit I, p.8:13-26.

### *Wise v. State Farm*

90. In *Wise,* I sought to compel production of ten categories of documents I believed would begin to show State Farm's systemic plan to reduce its water loss claim payments in California.

91. I submitted a Joint Letter challenge to State Farm's refusal to produce responsive documents, but State Farm settled that case before the Court ruled on the matter and before any responsive materials were produced. (Exhibit G, pp.2-4, Appendix C, categories 31-40.)

92. Due to my involvement in the *Wise*, and spreading knowledge about the existence of State Farm's systemic effort to reduce its claim liability in

California, I became aware of myriad disputes and lawsuits around the state in which insureds' claims under State Farm's homeowners' policy were denied in reliance on the two exclusions at issue here under circumstances similar to those in *Wise* and in other State Farm water loss cases my firm had handled over the past several years.

93. Those cases routinely allege the precise bad faith practices alleged here relating to the investigation and denial of water losses without adequate investigation and in reliance on the BSG and CRSL exclusions. Some have resulted in published orders from this California federal court which make plain the similarities between other matters and the Myles claim. *See, e.g., Thompson v. State Farm General Insurance Company,* 2024 WL 3447989, at *1 (C.D.Cal., 2024); *Gunaji v. State Farm General Insurance Company,* 2024 WL 3468838, at *1 (C.D.Cal., 2024); *Jarvis v. State Farm General Insurance Company*, 2024 WL 4003319, at *1 (C.D.Cal., 2024); *Fittingoff v. State Farm General Insurance Company*, 2:24-CV-04331 (C.D.Cal., 2024).

94. The same bad faith conduct is at issue in a recently published California state court case. *Nargizyan v. State Farm,* 120 Cal.App.5th 581 (2026).

95. In three such cases, *Mojica v. State Farm General Insurance Company,* Case No.: 3:22-cv-1997-L-DDL (S.D.Cal, 2022), *Stickney v. State Farm General Insurance Company,* Orange County Superior Court, 30-2021-01231896-CU-IC-CXC (Complaint filed Nov. 21, 2021), and *Monego v. State Farm General Insurance Company,* 3:23-cv-10702-JD (N.D.Cal, 2023), State Farm produced a small number documents which, consistent with the

general description in the *Jacobs* discovery response, demonstrate the existence of State Farm's internal scheme to reduce its claims liability in California, including in water losses.

***Mojica v. State Farm***

96. The *Mojica* matter was a water loss case. In that matter the insureds retained a former senior State Farm claims professional who is now an expert witness and consultant to consumer groups.

97. The expert, Sandra Moriarty, has been retained by insureds in many State Farm matters and as such has become familiar with documents produced, and testimony in those cases, relating to the systemic effort at issue here.

98. Ms. Moriarty provided a deposition in the case. **Exhibit P** is excerpts of Ms. Moriarty's testimony in the matter.

99. Ms. Moriarty testified that State Farm had produced thousands of pages of documents relating to State Farm's water initiatives in the case, that she had reviewed. Exhibit P, p.109:5-14.

100. Her testimony identified various elements of the scheme proven by those documents, but also by documents that have since become public, as is set forth below. Exhibit P, pp.112:19-113:12, 258:25-278:29.

***Tong v. State Farm***

101. In the *Tong* case I sought a wide range of documents relating to State Farm's systemic loss reduction initiatives. (*See* Exhibit J, Tong Requests for Production, Set 4, Requests 126, 145-146, pp.11:14-24, 13:22-26.)

102. The definition of WATER INITIATIVE in my *Tong* requests

accounted for the fact that naming conventions at State Farm change over time, and that State Farm employs endless acronyms and euphemistic phrases to guard against revelation of its conduct. For that reason, the requests were broadly aimed at the conduct at issue here, namely systemic efforts to reduce water loss claim adjustment expenses and indemnity obligations. (Exhibit J, pp.7:19-8:4.)

103. As here, State Farm refused to produce a page, relying on relevance, overbreadth, and burden objections.

104. In December 2024, the *Tong* Court granted our motion to compel, ordering broad production of all responsive documents from 2016 to the time of the case, which extended into 2025. *Tong*, 2024 WL 5472414, at *9-11 (C.D.Cal., 2024).

105. The *Tong* Court's order granting the motion to compel directed State Farm to produce all responsive documents:

a. "All DOCUMENTS created by or in the possession of the FIRE CLAIMS DEPARTMENT relating to the WATER INITIATIVE."

b. "All DOCUMENTS reflecting or pertaining to the WATER INITIATIVE", as broadly defined in the requests; and

c. "All DOCUMENTS containing any report or presentation from [2016] to present, from any person or entity employed by YOU, or any person or entity retained by YOU, relating in whole or in part to YOUR INVESTIGATION and/or ADJUSTING of water losses".

(*Tong*, 2024 WL 5472414, at *11, granting requests 94, 126, 145, 146, set forth in

Exhibit J, pp.8:27-28, 11:14-24, 13:22-27.)

106. The *Tong* court likewise granted our request for documents from a management consultant, McKinsey. *Tong*, 2024 WL 5472414, at *11, granting request 146, set forth in Exhibit J, p.13:24-27. It has since become public knowledge that the large management consulting group, Accenture, is another outside entity responsible for providing consulting to State Farm on these issues. For that reason, the related requests in this case broadly seek consulting input from both external and internal consultants, rather than naming a specific consultant. (Exhibit A, Requests 18, 43-48.)

107. State Farm settled the *Tong* matter before producing all responsive documents.

***Savas v. State Farm***

108. *Savas v. State Farm,* Los Angeles Superior Court, No.21STCV03286 (Complaint filed Jan. 26, 2021), is yet another State Farm water loss matter.

109. After counsel for the insured became aware of the water initiative and related documents, and in light of the ruling in *Tong,* the insureds sought to reopen discovery based on State Farm's discovery abuse—namely, its failure to produce documents responsive to requests for production of documents.

110. The *Savas* Court granted the motion but, predictably, State Farm refused to turn over documents relating to its quality initiatives or water programs impacting its California water loss handling.

111. **Exhibit Q** is the motion to compel that was eventually filed after the

court reopened discovery, which sets forth the procedural history. Exhibit Q, p.8:11 et seq.

112. After an informal discovery conference, State Farm agreed to produce responsive documents. (Exhibit Q, p.9:18-24.)

113. But State Farm *still* failed to satisfy its discovery obligation relying on the same misconduct the *Tong* court criticized and which tactics it has employed liberally here: an improperly limited scope of production, failure to produce documents, and delay. (Exhibit Q, p.10:5-9.)

114. The dispute will sound familiar, as it is identical to what arose in the other matters described above:

a. State Farm refused to produce documents that had not been provided to the adjusters on the claim (Exhibit Q, p.11:19-28);

b. State Farm failed to produce documents bearing on the water initiative programs, including categories the court had already ordered to be produced (Exhibit Q, pp.12:1-16:14).

115. The Court granted the motion. **Exhibit R** is the court's order.

***The Oklahoma Cases***

116. Insureds in Oklahoma have asserted the identical allegations here, namely, a decade-long, systemic effort by State Farm to reduce its loss liability across perils, states, and departments. In those cases, the focus is on State Farm's investigation, adjusting, and denials of wind and hail claims.

117. In *West v. State Farm Fire and Casualty Company*, District Court of Comanche County, Oklahoma, No. CJ-2025-135, and *Hursh v. State Farm*

*Fire and Casualty Company,* District Court of Oklahoma County, Oklahoma, No. CJ-2025-2626, individual State Farm insureds who suffered wind and/or hail losses have sued for bad faith, alleging, as here, that in addition to the unlawful individual claims conduct, the denial and/or underpayment of their wind claims is part of a systemic initiative State Farm undertook in concert with its *water initiative* and the other systemic efforts to reduce its claim-related liabilities.

118. Revelation of State Farm's systemic effort to reduce its liability has resulted not only in hundreds of lawsuits in Oklahoma, but also in a prosecution by the Oklahoma attorney general of State Farm for RICO and other violations. The allegations in the individual Oklahoma civil cases, and the state's prosecution, are the same as the allegations in our complaint. *See* https://oklahomavoice.com/2026/06/24/oklahoma-ag-sues-state-farm-alleging-insurance-carrier-fraudulently-denied-claims/.

119. In both of the individual Oklahoma bad faith cases identified above, the plaintiff insureds sought broad production of documents in the same categories at issue in the requests at issue here that set forth in Exhibit A, RPD-2, Requests 24-43 (systemic initiatives), Requests 44-75 (metrics, goals, and outcome measurement), and Requests 86-94 (performance/incentive documents).

120. **Exhibit K** is relevant excerpts from State Farm's responses to the insured's request for production, set one in the *Hursh* matter. The insured sought essentially the identical categories of documents at issue here,

relating to "quality" initiatives, implementation, goals, metrics, financial outcomes, and personnel performance and incentives, and also sought communications of senior managers relating to these topics. (Exhibit K, Requests and State Farm Responses to Requests 13-15, 20-24, 27-30, 32, 33, 36-41, 43).

121. As it has done here, State Farm refused to produce documents responsive to any of the foregoing requests.

122. The insured filed a motion to compel, which the Court granted in its entirety. **Exhibit L** is the motion to compel. **Exhibit M** is the court's order.

123. After the court order and review by Oklahoma appellate courts, State Farm has since produced thousands of responsive documents in the *Hursh* matter.

124. The parties travelled a similar road in the *West* matter. The insured served the same discovery requests, to which State Farm objected on the usual grounds. Excerpts of the discovery requests are attached here as **Exhibit N.**

125. The insured in *West* filed a motion to compel which is in relevant respects is identical to the motion filed in the *Hursh* case. The Court's order granting the motion in key respects is attached as **Exhibit O.**

126. The Court in the *West* case recently granted Plaintiff's motion to remove the confidentiality designation from many documents previously produced by State Farm as confidential, finding that State Farm violated the protective order requirement that it not indiscriminately designate

documents confidential, and forcing State Farm to re-designate its productions in compliance with the protective order. **Exhibit T** is the recent order in *West.*[2]

127. **Exhibit U** is relevant excerpts from the de-designated initiative documents from *West.* The documents have been modified to add internal numbering (bottom right of each page) for this Court's convenience.

**State Farm's Plan to Reduce Claim Costs**

128. The Myles' second amended complaint alleges State Farm's scheme broadly, and sufficiently to warrant the discovery at issue here. (Second Amended Complaint, Docket 18, pp.5:15-6:28.)

129. But based on my litigation of other State Farm cases, my review of the public pleadings from many cases in California and elsewhere, transcripts, and recently released *West* documents, it is possible to describe with increasing specificity and detail State Farm's systemic efforts to reduce its claim costs across the country, and in particular its plan to cut water loss payments and loss adjustment expenses in California.

130. The Myles family alleges those initiatives led to State Farm's failure to investigate and baseless denial of *their* water loss claim, and as such they should be awarded both bad faith and punitive damages because of State

[2] The same problem of over-designation and violations of the protective order's bar against indiscriminate designation exist here. Because Plaintiffs are primarily focused on obtaining the evidence they need for dispositive motions and trial, they have not pursued those issues yet. But they will shortly proceed to seek de-designation of State Farm's produced documents.

Farm's demonstrated malice and fraud in its investigation and handling of thousands of claims in this state and around the country.

131. After receiving input from external and internal consultants, including Accenture and its internal consulting departments, for example, P&C Consulting Services, State Farm's plan was to cut loss adjustment costs and benefits payments in its claims asserted under fire policies like weather-related losses (wind, hail) and non-weather losses (water, fire).

132. State Farm executives will insist these initiatives were intended to improve quality, accuracy, and consistency—and who could argue with that—in fact its goals, metrics, outcome measurements, management efforts, and especially its private communications among senior managers uniformly understand improvements in quality, accuracy, and consistency to be *unidirectional*—that is, in favor of State Farm's bottom line.

133. State Farm's various initiatives target the highest "opportunity" areas, which in California means non-weather perils like water; in other states, it means weather-related losses.

134. Consider the following transcript of an instant-message conversation—not the sort of dialogue either participant assumes will ever see the light of day—between State Farm's Director of Property & Casualty Operations, Nicole Manduca, and Dana Jokerst, another senior manager. (Exhibit U, p.16.)

Transcript for instant messaging (IM) session: Conversation between nicole.manduca.lok2@statefarm.com and dana.jokerst.pmhi@statefarm.com

nicole.manduca.lok2@statefarm.com [2020-12-02 16:51 :06 (UTC)]:

The hypothesis helped us see our **biggest buckets of opportunity (indemnity spend)**

dana.jokerst.pmhi@)_.,statefarm.com 12020-12-02 16:51:24 (UTC)I:

That is great

dana.jokerst.pmhi@statefarm.com (2020-12-02 16:51:41 (UTC)]:

**So Accenture reps will be on the workshop calls**?

nicole.manduca.lok2@statefarm.com (2020-12-02 16:53:04 (UTC)]:

**I have to get my head around what that will look like for Water,** but essentially our analysis found that we (SF) replaced roofs at a far higher percentage for small hail/light wind compared to industry average. For example, we replaced 85% on small hail compared to industry average of 8-10%, followed by 65% on light wind compared to industry average of about 5%. When we ran the dollars, **that narrowed our focus of opportunity.**

nicole.manduca.lok2@statefarm.com (2020-12-02 16:53:14 (UTC)]:

I believe they will just not sure when that begins.

dana.jokerst.pmhi@statefarm.com (2020-12-02 16:53:43 (UTC)]:

Wow! That is significant!

nicole.manduca.lok2@statefarm.com (2020-12-02 16:54:37 (UTC)]:

Indeed. That also supported our need for data integrity (updating participants, additional inspections) so we could track if particular contracting firms drove these outcomes and/or where our skill opportunities resided.

nicole.mandnca.lok2@statefarm.com (2020-12-02 16:56:15 (UTC)]:

**You'll be provided the indemnity spend in the buckets of opportunity - it'll stay at your level and higher.** That's how you'll engage Wendy and the O's on how you prioritize your focus and guidelines. **For example, one of your buckets may be a $5OM opportunity if our Accuracy improves in that space.**

**dana.jokerst.pmhi@statefarm.com** [2020-12-02 17:01:12 (UTC)]:

That's incredible

(Exhibit U, p.16 (emphases added.)

135. Here why this interchange is revealing:

a. First, the parties to the conversation are not claims staff. At State Farm, there are three levels of direct claim staff: adjusters, team managers, section managers, and claim managers. Ms. Manduca and Ms. Jokerst are above those four levels of claims staff;

b. Second, the senior managers repeatedly refer to "opportunity" as relates to wind claims. The conversation reveals that "opportunity" means chances to save State Farm money by paying less benefits. (*See, e.g.,* Exhibit U, pp.15, 17, examples of Ms. Manduca and State Farm revealing what they mean by "opportunity" including as applied to water losses);

c. Third, they make clear these efforts also apply to water losses;

d. Fourth, they mention the involvement of the consulting firm, Accenture, and

e. Fifth, Ms. Manduca, the senior manager, makes clear State Farm seeks to avoid revelation of these efforts when she says the information will stay at the senior management level; State Farm's senior executives are aware that its effort to save $50 million by reducing its coverage for roof replacements may not be a circumstance that will go over well with customers, agents, regulators, and so forth.

136. In a document from 2020, called "Fire Weather Leadership Business Plan – Accuracy Tactical Plan," State Farm demonstrates that its wind/hail and water initiatives go hand in hand, and again, that what it means by "opportunity" is a chance to save State Farm money: ***"Year-over-year trends indicate Wind/Hail and Non-Weather Water perils provide the greatest opportunity to impact enterprise results***, accounting for 57% of Net Paid Indemnity (NPI) and 70% of claim counts. …Water losses account for 17% of NPT and 21% of claim counts, with Incurred Frequency down 4.9% YOY." (Exhibit U, p.17 (emphases added).)

137. State Farm's "quality" initiatives are overseen by a "Pillar Team" led by State Farm vice presidents and is led by senior managers including Ms. Manduca and Ms. Jokerst. (Exhibit U, p.11.)

138. The Pillar Team "Outcomes" include "Execute on Quality Plans" – in other words, the initiatives at issue here like the "Water Quality Plan." (Exhibit U, p.11.)

139. The success of State Farm's "quality" initiatives are determined by reference to "Fire Frequency Errors," which are measured based on audits which, we believe, employ predictive models and AI built by Accenture, together with State Farm's internal consultants including its P&C Consulting Services Department and its P&C Analytics departments. (Exhibit U, pp.11, 50.) As the exhibit shows, *this approach applies to water claims as well as wind, hail and fire.*

140. In 2022, for example, State Farm set specific measures of success,

including a Fire Frequency Error rate of 8.2%. (Exhibit U, p.11.)

141. State Farm established a clear management communications strategy for the "Quality Pillar Strategy", including goals such as driving "improvement in claim handling accuracy and operational expense", but where improvement is measured unidirectionally in favor of State Farm's bottom line. (Exhibit U, p.14.)

142. Other strategic targets include reducing "error rates," "volatility of claim loss trends," "execut[ing] on budget goals," and "achiev[ing] and sustain[ing] productivity targets." (Exhibit U, p.14.)

143. State Farm's P&C Analytics – Claims" tracks the impact of the initiatives. For example, in January 2023, forwarding P&C Analytics data, Ms. Manduca noted that since scaling the wind initiative in 2020, for the years 2020 and 2021 alone State Farm had achieved a "$1.14B decrease in indemnity …." (Exhibit U, p.24.)

144. State Farm's senior most executives, including Ms. Manduca, took part in and/or presented information regarding claims-related initiatives to State Farm's "Fix Profit Task Force" which included Jon Farney, then the CFO and the now CEO of State Farm.

145. In *2024*, a presentation, to the Fix Profit Task Force including, among other elements, a plan to "*Continue focus on coverage for Water, Wind, and Hail.*" (Exhibit U, p.40.)

146. The presentation "headlines" show how well State Farm's initiatives are doing included the following: "Water: the number of errors [also called

"findings"] decreased -6% and their size decreased -14%." (Exhibit U, p.41.)

147. "Errors" or "findings are instances in which, per State Farm's audits, State Farm paid too much either because it covered an excluded claim, or overpaid benefits. "Errors" never mean that State Farm improperly denied a loss or *underpaid* for repairs and other benefits due.

148. State Farm's Fix Profit Task Force headlines indicate that "*Water coverage* improved from YE2022 (7.36%) to YE 2023 (6.1%). The team improved from 8.5% in January to 6.1% YTD. (Slide 7)." (Exhibit U, p.42.)

149. A chart showing improvements in "coverage" in 2023 shows that "findings" or errors are driven by "reinspection" results – but these are not physical re-inspections of homes; instead, the documents will eventually show that "re-inspection" at State Farm involves an internal audit of claim outcomes, which audits are driven by consultant-created predictive models and AI. (Exhibit U, p.43.)

150. State Farm assiduously sticks to its acronyms and euphemistic phrasing. It avoids using terms like "targets" in its presentations, but instead prefers words like "selections." (Exhibit U, p.48.) In the document cited, senior managers refer to the removal of the offending word from the internal presentation.

151. From my prior experience, reviewed pleadings and transcripts, and recently-released documents, State Farm's claims initiatives focus on:

a. Coverage – State Farm seeks to aggressively apply exclusions to reduce claim liability and loss adjustment expenses;

b. Scope – State Farm reduces paid claim liability by limiting the extent of covered damage as to which it must pay for repairs;

c. Estimate writing – State Farm seeks to reduce benefits payments by writing its own estimates rather than relying on licensed building professionals;

d. Estimate reconciliation – State Farm avoids costs by "reconciling," meaning declining to pay or cutting the estimates of its customers' contractors when they exceed State Farm's numbers, often by reliance on competing estimates from its own preferred and therefore biased vendors;

e. Additional layers of, and accelerated, management review to ensure corporate policies are being followed;

f. Vendor management – State Farm relies on and recommends preferred vendors incentivized to keep costs down.

(Exhibit U, pp.54-56.)

152. Elements of the "quality" initiatives include, but are by no means limited to:

a. Re-inspections – which, as noted, are not re-inspections at all, but instead internal audits by State Farm which employ predictive models and AI to review paid claims to determine if State Farm has overpaid—thus demonstrating opportunity, including claims that State Farm believes should have been denied in reliance on the two exclusions at issue here;

b. authority reductions across its perils to ensure that higher level managers are involved in claim coverage decisions;

c. aggressive application of the water loss-related exclusions without clear standards, and

d. increased claim closure pressure.

153. At the heart of the initiatives is State Farm's setting, constant measurement and tracking, and result reviews among senior managers, of

a. Claim metrics, goals, and financial outcomes reflected, for example, in the "Fire Frequency Error" rate that appears in Exhibit U, p.11, and

d. Intensive management to those metrics, goals, and outcomes at all levels of claims staff, including adjusters, claim managers, section managers, and in particular claim managers who sit atop the claims staff.

**TRAINING AND GUIDELINES DOCUMENTS**

154. As the *Tong* Court noted, and as occurred here, in response to the valid and highly specific requests for training and guidelines documents, State Farm's practice is to fail to state that it is producing responsive documents. Instead, its responses indicate that it will produce only categories of documents of its choosing. At a minimum, by that means it delays production, which has the follow-on effect of delaying depositions of percipient witnesses and persons-most-qualified.

155. But State Farm knows that the initial response is improper and that eventually it will have to expand its production. Its second line of defense is

that it in addition to the three categories of documents it always initially says it will produce, it will produce training and guidelines documents, *but only those actually reviewed or relied on by the claims staff involved in the claim at issue.*

156. In both *Tong* and *Pachall,* the courts rejected the argument that State Farm can permissibly limit its production of training and guidelines materials to those materials actually reviewed by the claims staff involved in the investigation and adjusting of the claim at issue. (Exhibit H, p.3; *Tong,* 2024 WL 5472414, *9.)

157. But even though it knows it is likely to lose the issue, State Farm asserts the position because that requires the filing of a motion to compel, which delays production and related depositions dramatically.

158. Thus, contrary to the Court's ruling in *Tong,* and the *Pachall* order, here State Farm reliably takes the position that it is required only to produce training or guidelines listed on the training transcripts of the adjuster and supervisor involved in the claim.

159. State Farm expressly refuses to state in its responses that it will search for and produce all documents responsive to RPD-2, Requests 17-23 (Exhibit B, pp.32:8-45:28; Exhibit C, pp.32:15-48:16), along with RPD-3, Requests 103-114. (Exhibit E, pp.38:25-59:27.) Indeed, in its responses, State Farm expressly refuses to produce any categories of training or guidelines documents not listed on the training transcripts of the adjuster and supervisor involved in the Myles claim.

160. There are hundreds of unproduced, responsive documents State Farm has refused to produce even pursuant to its *adjuster-only* limitation on its production obligation. The following are a few items I know of that State Farm refuses to produce, which, given the nature of the dispute, would appear to be strongly relevant to the dispute between the parties in this lawsuit. Each of these documents were either produced in the *Tong* matter (a March 2024 loss) or are referenced in documents produced in *Tong*—which productions occurred in 2025, the same year as the Myles loss:

a. Water Coverage – Foundation Video (Exhibit E, pp.44:23-46:10);

b. Water Coverage – Foundation Losses (Exhibit E, pp.47:25-49:10); and

c. Water Coverage Investigation - (Exhibit E, pp.46:11-47:24).

161. Based on my experience I have done what I can to provide specificity in my requests, and these are examples of what I know exists that State Farm has withheld. I do not intend this to be the limit of the requests. Rather, State Farm should be compelled to amend its responses to state that it has searched for and produced all non-privileged responsive documents, and thereafter to produce those documents.

Executed this 24th day of August, 2026, at Oakland, California.

/S/ Dylan Schaffer
Dylan Schaffer
Counsel for Plaintiffs

# EXHIBIT A

EXHIBIT A

J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Nicholas J. Peterson (287902)
**Kerley Schaffer LLP**
1939 Harrison Street #900
Oakland, California 94612
Telephone: (510) 379-5801
Facsimile: (510) 228-0350

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

**KATHY MYLES** an individual, and **WILLIE DANIELS**, an individual,

Plaintiffs,

v.

**STATE FARM GENERAL INSURANCE COMPANY**, an Illinois corporation, and **DOES 1 through 10**,

Defendants.

Case No. 2:26-cv-00452-CAS-MBK

**PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO STATE FARM GENERAL INSURANCE COMPANY, SET TWO**

PROPOUNDING PARTY: Plaintiffs Kathy Myles and Willie Daniels

RESPONDING PARTY: Defendant State Farm General Insurance Company

SET NUMBER: Two (2)

**INSTRUCTIONS**

Plaintiffs request that Defendant State Farm General Insurance Company produce the DOCUMENTS described below for inspection and copying and serve Plaintiffs the written response within thirty (30) days after service of this request. The place for inspection shall be at the office of Kerley Schaffer LLP, 1939 Harrison Street, Suite 900, Oakland, CA 94612.

In lieu of personal appearance and production on the above date, compliance with this Request for Production of DOCUMENTS may be accomplished by mailing to counsel at the above address, full, true and correct copies of the requested DOCUMENTS, verified by you as such, in a manner prescribed for written response to the demand for inspection of DOCUMENTS pursuant to Rule 34 of the Federal Rules of Civil Procedure, on or before thirty (30) days from the date of this demand.

YOUR WRITTEN RESPONSE TO THIS INSPECTION DEMAND must respond separately to each numbered demand for inspection below by:

1. A statement that you will comply with the particular demand;
2. A statement that you lack the ability to comply with the particular demand; or
3. Any objection to the particular demand. F.R.C.P. 34(b).

If your response to a particular demand is **a statement that you will comply** with that demand, you must state in your response whether the production will be allowed in whole or in part, and you must state that DOCUMENTS or things in the demanded category that are in your possession, custody or control and to which no objection is being made will be included in the production. F.R.C.P. 34(b).

If your response to a particular demand is **a statement that you lack the ability to comply** with that demand, you must affirm in your response that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand. This statement shall also specify whether the inability to comply is because the particular item or category never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody or control, in which case the name and address of any person or entity known or believed by you to have possession, custody or control of that document or

category of DOCUMENTS should be identified. F.R.C.P. 34(b).

If your response to a particular demand is an objection, you must set forth in your response the extent of, and the specific ground for, the objection. In your response, you must also identify with particularity any document responsive to the particular demand that is being withheld from production based upon a claim of privilege or other protection and state the particular privilege or protection being invoked. (F.R.C.P. 34(b**).) To identify with particularity DOCUMENTS withheld from production**, you should provide, for each document withheld, the following information if known or available to you:

1. Title or subject matter of document;
2. The date composed or date appearing on the document;
3. Author and Addressee;
4. Number of Pages;
5. Identify of all persons or entities who saw or received a copy of such document, including the job titles of each such person;
6. The present location of the item;
7. The identity of the person or persons who have custody, control, or possession thereof.
8. The nature of the privilege claimed; and
9. Each fact upon which you base your claim of privilege.

This request requires the production of DOCUMENTS as they are kept in the usual course of

business or organized and labeled to correspond with the particular demands set forth below. If you choose the former method, the DOCUMENTS are to be produced in the boxes, file folders, bindings or other containers in which the DOCUMENTS are found. The titles, labels, or other descriptions on the boxes, file folders, bindings or other containers are to be left intact.

Electronic media should be produced in its native format (e.g., Word documents and Excel spreadsheets produced with .doc and .xls extensions and email produced in .pst files if Outlook is the email client).

These requests for production include the original media and all copies that differ from the original in any respect, such as notations made on the copy. These requests are also intended to include all media of any nature that are now or have at any time been within your care, custody or control. If a document or media is no longer in your care, custody or control, identify its disposition.

## DEFINITIONS

The following definitions and instructions shall apply to this demand for production:

A. "YOU" or "YOUR" means Defendant State Farm General Insurance Company, and any related entity that has possession and/or control of the DOCUMENTS described requested or items which are sought to be inspected, INCLUDING YOUR agents, officers, directors, employees, CLAIMS ADJUSTERS, FIRE CLAIMS DEPARTMENT, CONSULTANTS, and/or others acting on YOUR behalf.

B. "DOCUMENT" or "DOCUMENTS" means the same as "writing" as defined in Section 250 of the California Evidence Code. "DOCUMENT" and "DOCUMENTS" include the following which are in the possession, custody, or control of YOU or any third-party vendors YOU contract with: electronic communications of any kind, including chats, instant messages, texts, and voicemails; word processing DOCUMENTS, spreadsheets, and databases (including draft versions); database entries, Internet usage files, Internet browser-created files including cookies and caches, activity logs, calendars, telephone logs, contact manager information, network access information.

"DOCUMENT" and "DOCUMENTS" include those to be found on, archived in, or deleted from the following: any on-site or off-site electronic data storage systems or data structures, including but not limited to databases, networks, computer systems, legacy systems (hardware and software), servers, mainframes, network servers, cloud-based servers and backup servers or systems, archives, backup or disaster recovery systems or facilities, tapes, discs, DVDs, CDROMs, drives, portable or removable drives, cartridges and other storage media,

laptops, personal computers, internet data, personal digital assistants, handheld wireless devices, mobile telephones, smart phones, tablet computers, paging devices, and audio systems (including voicemail).

Requests for "DOCUMENTS" is intended to include all "COMMUNICATIONS" and "ESI".

C. "ESI" shall be construed in the broadest sense possible given the definition under California Code of Civil Procedure §2016.020(d) and (e), and shall include, but not be limited to:

a. All electronic mail and information about electronic mail sent or received by YOU;

b. All databases containing any reference and/or information;

c. All activity logs on any computer system which may have been used to process or store electronic data containing information;

d. All word processing files and file fragments, including metadata, containing information;

e. All electronic data files and file fragments created by application programs that process financial, accounting and billing information;

f. All electronic data files and file fragments from electronic calendars and scheduling programs that contain information about the above-listed subjects

g. All electronic data files and file fragments from electronic calendars and scheduling programs that contain information about the above-listed subjects; and

h. All electronic or automated insurance systems or software.

D. "ADJUST", "ADJUSTED", "ADJUSTMENT" or "ADJUSTING" mean to pay or deny, or partially deny, a claim under any policy of insurance issued by YOU.

E. "BELOW THE SURFACE OF THE GROUND EXCLUSION" means any provision in a property policy issued by YOU insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase "below the surface of the ground".

F. "CLAIM" means the claim for policy benefits resulting from the LOSS handled

by YOU under Claim No. 75-91J8.

G. "CLAIM LOG" or "FILE HISTORY" mean the chronological notes, diary, log, or calendar YOU keep to record events in every claim under a California property insurance policy issue by YOU,

H. "CLAIMS ADJUSTER(S)" means any employee, supervisor, manager, agent, outside adjuster, independent adjuster, independent adjusting company, or other person or entity YOU employed, retained, or otherwise relied on to INVESTIGATE and/or ADJUST property claims, INCLUDING any person performing field inspection, desk review, estimate preparation, estimate review, quality assurance review, or claims supervision functions.

I. "COMMUNICATION" means any and all transmission of information from one person or entity to another, including (without limitation) by personal meeting, conference, conversation, telephone, radio, telegraph, electronic mail, teleconference, or any other method of communication or by any medium.

J. "CONSULTANT" means any internal or external consultant, INCLUDING YOUR Office of Consulting Services, YOUR P&C Consulting Services, YOUR Claim Data Analytics, YOUR Execution department, MCKINSEY & COMPANY ("MCKINSEY & COMPANY" means the private corporation McKinsey & Company and any related entity or subsidiary), ACCENTURE ("ACCENTURE" means Accenture plc and any related entity or subsidiary), and/or any internal or external consulting department or entity, firm, advisory firm, management consulting company, or individual consultant used or retained by YOU, to evaluate, assess, recommend changes to, or implement changes in YOUR property claims operations, claims handling systems, quality assurance processes, estimating practices, vendor management programs, or claims financial performance.

K. "CONTINUOUS OR REPEATED SEEPAGE EXCLUSION" means any provision in a property policy issued by YOU insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase

"seepage or leakage".

L. "DENY," "DENYING," "DENIED," or "DENIAL" means any circumstance in which YOU issued a written denial letter pursuant to the requirements of California Code of Regulations, title 10, section 2695.7, subdivisions (b)(1), following notice of a loss pursuant to a policy of insurance sold by YOU covering real property in California.

M. "FINANCIAL IMPACT" means any potential or known impact on YOUR claims investigation expenses, indemnity obligations, administrative costs, SEVERITY, loss ratios, cost-per-claim, average estimate amounts, or any other measure of monetary effect

N. "FIRE CLAIMS DEPARTMENT" means the department, group, or entity, YOU described in YOUR Response to Request for Production 74, p.11:23-25, in the matter *Savas v. State Farm General Insurance Company*, Los Angeles Superior Court, No. 21STCV0286.

O. "GUIDANCE" means any DOCUMENT, TRAINING OR GUIDELINES, POLICIES/PROCEDURES, COMMUNICATIONS, or electronic presentation, intended to communicate the results of any investigation undertaken by YOU or anyone retained by you, and/or YOUR policies, views, directions, and/or recommended polices views or directions to anyone, regarding the appropriate INVESTIGATION and/or ADJUSTING of property claims under insurance policies sold by YOU, generally, as opposed to any such policy, view, or direction expressed uniquely and solely as RELATES TO the INVESTIGATION and/or ADJUSTING of any particular claim, INCLUDING materials delivered through learning management systems, intranet portals, SharePoint sites, or any successor platforms to those identified above.

P. "INCENTIVE" means any system, program, process, promise by way of contract or otherwise, that applied to YOUR CLAIMS ADJUSTERS in the period 2015 to present, which grant financial benefits in addition to base compensation for successful job and/or department and/or region and/or company performance according any metric set by YOU.

Q. "INCLUDE(S)" or "INCLUDING" means "includes or including but is not

limited to." "INCLUDE(S)" or "INCLUDING" means "includes or including but is not limited to."

R. "INVESTIGATE", "INVESTIGATED" or "INVESTIGATION" means the same as is set forth in California Code of Regulations, title 10, section 2695.2, including "all activities of an insurer or its claims agent related to the determination of coverage, liabilities or nature and extent of loss or damage for which benefits are afforded by an insurance policy . . . and other obligations or duties arising from an insurance policy . . ."

S. "LOSS" means all damage resulting from the release of water on or about October 7, 2025, at the PROPERTY.

T. "PERFORMANCE REVIEW" means any record of monthly or other periodic ASSESSMENT (ASSESSMENT mean any written reviews and/or evaluations of work performed by YOUR CLAIMS ADJUSTERS), INCLUDING YOU refer to as any of the following: Performance Enablement, Performance Review, Workday Performance, Performance Summaries, Performance Conversations, My Performance, My Block, Monthly Goals Review, Competency Review, Goals Sign Off, Coaching and Review, Consulting Services review, P&C Consulting review, Claim Data Analytics review, assessment by any Claim Review Team, Excellence ion Operations Management review, Executive analysis of financial trends review, Exposure Management review, Fire executive review, Fire Focus review, Fire Leadership Tracker review, Frequency Error percentage review, Huddle Points, Stewardship Team (all areas), Leadership Guide, Leadership Tracker, MCAR, Quality Targets, OAR, Leadership Action Plan, Leadership Action Plan & Communication Strategy, Process Confirmations, Quality Targets, Quarterly Survey, or Tactical Tracker.

PERFORMANCE REVIEW INCLUDES any disciplinary or personnel action taken by YOU against any CLAIMS ADJUSTER for any failure of job performance.

U. "PLAINTIFFS" means either or both Plaintiffs.

V. "POLICY" means the policy of insurance issued by YOU under the number 71-

CG-U564-7, including all endorsements and amendments thereto.

W. "POLICIES/PROCEDURES" means any and all policies, procedures, manuals, Training or Guidelines, bulletins, operation manuals, and other written materials, including internal memoranda, directives, executive communications, town hall or all-hands presentation materials, and process maps or workflow documentation, limited to first party property claims in California, but excluding auto claims.

X. "PROPERTY" means the real and personal property located at 1015 Topaz Lane, Gardena, California.

Y. "RELATE TO" or "RELATING TO," INCLUDING its various forms such as "RELATES TO" or "RELATED TO," means containing, pertaining directly to, consisting of, concerning, discussing, referring to, or reflecting the matter described, but excludes DOCUMENTS relating solely and uniquely to particular losses or claims.

Z. "TRAINING OR GUIDELINES" means any written or digital means by which YOU provide information to YOUR CLAIMS ADJUSTERS regarding how to INVESTIGATE and/or ADJUST first party property claims in California but excluding auto claims. "TRAINING OR GUIDELINES" includes, but is not limited to, DOCUMENTS in the following formats or resource types, or which are referred to YOU and/or YOUR ADJUSTERS as follows: Electronic Claim System or ECS, State Farm Net or SF Net, State Farm University, Operation Guides, Jurisdictional Resource, Video on Demand, Job Aids, Refreshers, Workday, FAQs, Quality First Contact Guide, Estimating Topics, FAQs, SF Net, Xactimate, ITEL, Scenarios Courses, Jurisdictional Resources, Standard Claims Practices or SCP, Workflow, Scenarios, Claim Scenarios, 360 Claim Scenarios, Coverage Investigation, Dashboard, Quality Claims Handling Expectations, Quality Claims Handling Experience, Quality Claims Handling Standards, Coverage Model, Coverage Analysis, Skills Review, In Role Skills Review, Skills Review Answer Keys, Skills Testing, Resources, Discussion Resources, Core Property Claims, Dollar One, ECHP, Basics, Coverage Analysis, Support Guide, Claim Experience, Claim Experience

Video Collaboration, Reference Guide, Water Plan, Water Forum, Water Initiative, Focus or Fire Focus, INCLUDING materials delivered through learning management systems, intranet portals, SharePoint sites, or any successor platforms to those identified above.

AA. "SEVERITY" means net paid indemnity divided by paid claim count, and/or paid versus reserved amounts, and/or trends of these over time.

BB. "WATER INITIATIVE" is used herein as YOU described it in YOUR Further Responses to Special Interrogatories in the case of *Jacobs et al. v. State Farm,* 22STCV23445, Los Angeles Superior Court. "WATER INITIATIVE" is also used herein as YOU described it in YOUR Response to Request for Production 74, p.12:5-17, in the matter *Savas v. State Farm General Insurance Company*, Los Angeles Superior Court, No. 21STCV0286.

"WATER INITIATIVE" INCLUDES all modifications to YOUR INVESTIGATION and/or ADJUSTING of WATER LOSSES resulting from recommendations by any CONSULTANT.

"WATER INITIATIVE" INCLUDES any systemic efforts by YOU to improve quality, diligence, evaluation of facts, accurate application of coverage, accurate documentation of claim files, efficiency, consistency, accuracy, paying what is owed, and/or customer satisfaction, RELAING TO YOUR INVESTIGATION and/or ADJUSTING of WATER LOSS claims.

CC. "WATER LOSSES" means California non-weather related losses involving escape of water or steam from a heating, air conditioning or automatic fire protection system; household appliance; or plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, whether or not YOU extend coverage for the loss.

DD. All requests are limited to materials applicable to California claims and/or policies whether or not applicable to claims/policies in other states. Plaintiffs do not seek DOCUMENTS solely applicable to claims/policies in states other than California.

EE. If you claim that any document otherwise required to be produced by this request for production of DOCUMENTS is privileged, for each such document provide the following information.

a. The document's title and general subject matter;

b. The date of the document;

c. The author of the document;

d. The person for whom the document was prepared or to whom it was sent, including all persons who received copies of the document;

e. The nature of the privilege claimed; and

f. Each fact upon which you base your claim of privilege.

**DOCUMENTS TO BE PRODUCED**[1]

**Requests relating to Training and Guidelines**

17. YOUR GUIDANCE RELATED TO INVESTIGATION and/or ADJUSTING of WATER LOSSES.

18. GUIDANCE YOU received from any CONSULTANT RELATED TO the INVESTIGATION and/or ADJUSTING of WATER LOSSES.

19. YOUR GUIDANCE RELATING TO application of the CONTINUOUS OR REPEATED SEEPAGE EXCLUSION.

20. YOUR GUIDANCE RELATING TO application of the BELOW THE SURFACE OF THE GROUND EXCLUSION.

21. YOUR GUIDANCE, after the decision in *Varela v. State Farm General Insurance Company,* 555 F.Supp.3d 983 (E.D. Cal. 2021), RELATING TO application of the BELOW THE SURFACE OF THE GROUND EXCLUSION.

22. YOUR GUIDANCE RELATED TO the reduction of CLAIM SIZE ("CLAIM SIZE" means the potential or actual indemnity YOU pay on a claim) thresholds for additional review or reinspection of WATER LOSS claims.

23. YOUR GUIDANCE RELATING TO coding of WATER LOSSES.

**Requests Relating to State Farm WATER LOSS-Related Initiatives**

24. All DOCUMENTS RELATED TO the WATER INITIATIVE INCLUDING

    a. YOUR WATER INITIATIVE-related COMMUNICATIONS

    b. WATER INITIATIVE Power Point(s) or other presentation materials

    c. WATER INITIATIVE executive summaries

    d. Water Forum Power Point(s) or other presentation materials

---

[1] Internal headings are for organizational purposes only and are not intended to define or limit the scope of requested DOCUMENTS. All requests are for the period 2015 to present unless otherwise indicated.

e. California Fire Claims Discussion Resources

f. Claim Folder Claim Level – Claim Details – all topics

g. Quality Claim Handling Expectations

h. Homeowners Policy, Section I Property, Coverage Model

i. California Fire Claims Discussion Agenda

j. Water Forum Coverage Mini Session

25. All DOCUMENTS containing and/or sufficient to describe YOUR Western Market Proximity Fire Claims Quality Plan and/or Fire Quality Plan.

26. All DOCUMENTS containing and/or sufficient to describe YOUR “Water Plan”.

27. All DOCUMENTS containing and/or sufficient to describe YOUR “Excellence in Operations” model or plan.

28. All DOCUMENTS containing and/or sufficient to describe YOUR “Water Quality Strategy” or “Quality Water Strategy”.

29. All DOCUMENTS containing and/or sufficient to describe YOUR “Quality Water Plan” or “Water Quality Plan”.

30. All DOCUMENTS containing and/or sufficient to describe YOUR “Fire Model Enhancement”.

31. All DOCUMENTS containing and/or sufficient to describe YOUR “Fire Model — Property Segment Enhancement: California Water Claim Guidelines”.

32. All DOCUMENTS containing and/or sufficient to describe YOUR “Enterprise Quality Plan”.

33. All DOCUMENTS containing and/or sufficient to describe YOUR “Water Focus”.

34. All DOCUMENTS containing and/or sufficient to describe YOUR “Claim Review Team”.

35. All DOCUMENTS containing and/or sufficient to describe YOUR “Exposure Management Program”.

36. All DOCUMENTS containing and/or sufficient to describe YOUR “fire claims information channel,” as referenced at Bates STICJ1980. (All such identified Bates

ranges are from documents produced in the matter, *James Stickney, et al. v. State Farm General Insurance Company et al.;* Superior Court of California, County of Orange, Case No.: 30-2021-01231896-CU-IC-CXC. Further references to Bates starting with STICJ refer to the *Stickney* matter.)

37. All DOCUMENTS containing and/or sufficient to describe YOUR water forum review, reference Bates STICJ1951, INLUDING all DOCUMENTS YOU agreed to produce in YOUR Response to Request for Production 79, p.19:13-16, in the matter, *Savas v. State Farm General Insurance Company*, Los Angeles Superior Court, No. 21STCV0286, in which YOU stated “State Farm will produce DOCUMENTS representative of its efforts to promote quality claim handling on water loss claims in California during the relevant time frame, including DOCUMENTS referencing the term ‘Water Forum,’ subject to the protective order that has been entered in this matter.”

38. All DOCUMENTS used in any presentation, or distributed to any participants before, during or after, YOUR “California Fire Claims Discussion” sessions as set forth on Bates STICJ1951.

39. All DOCUMENTS reflecting the contents of YOUR “California Fire Claims Discussion” sessions as set forth on Bates STICJ1951.

40. All DOCUMENTS used in any presentation, or distributed to any participants before, during or after, YOUR “California Fire Claims Discussion” sessions.

41. All DOCUMENTS containing and/or sufficient to describe YOUR “California Fire Claims Discussion” sessions INCLUDING All DOCUMENTS used in any presentation, or distributed to any participants before, during or after, YOUR “California Fire Claims Discussion” sessions.

42. All DOCUMENTS containing and/or sufficient to describe “Fire State Model - Property Segment Enhancement - Water Claims”.

43. All DOCUMENTS provided to YOU by the “consultant” referred to at Bates STICJ1951, relating to YOUR INVESTIGATION and/or ADJUSTING of WATER LOSSES.

**Requests Relating to Reporting of Metrics/Goals and Financial Impact of State Farm Initiatives Relating to Water Losses**

44. All DOCUMENTS containing and/or sufficient to describe any tracking YOU, or any CONSULTANT, conducted, RELATED TO the FINANCIAL IMPACT of any GUIDANCE from any source RELATED TO YOUR INVESTIGATION and/or ADJUSTING of WATER LOSS CLAIMS.

45. All DOCUMENTS containing and/or sufficient to describe any tracking YOU, or any CONSULTANT, conducted RELATED TO the FINANCIAL IMPACT of the WATER INITIATIVE.

46. All DOCUMENTS containing and/or sufficient to describe any tracking YOU, or any CONSULTANT, conducted, RELATED TO the FINANCIAL IMPACT of YOUR Western Market Proximity Fire Claims Quality Plan and/or Fire Quality Plan.

47. All DOCUMENTS containing and/or sufficient to describe any tracking YOU, or any CONSULTANT, conducted, RELATED TO the FINANCIAL IMPACT of any GUIDANCE RELATED TO YOUR application of the CONTINUOUS OR REPEATED SEEPAGE EXCLUSION.

48. All DOCUMENTS containing any tracking YOU, or any CONSULTANT, conducted, RELATED TO the FINANCIAL IMPACT of any GUIDANCE RELATED TO YOUR application of the BELOW THE SURFACE OF THE GROUND EXCLUSION.

49. DOCUMENTS sufficient to show YOUR monthly and rolling 12-month count for reported WATER LOSS claims.

50. DOCUMENTS sufficient to show YOUR monthly and rolling 12-month count for paid WATER LOSS claims.

51. DOCUMENTS sufficient to show YOUR monthly and rolling 12-month count for denied WATER LOSS claims.

52. DOCUMENTS sufficient to show YOUR monthly and rolling 12-month count for closed-without-payment WATER LOSS claims.

53. DOCUMENTS sufficient to show YOUR SEVERITY goals and/or targets for WATER

LOSS claims for each of the years 2015 to 2025, and any subset of each year, for example, monthly or weekly analyses.

54. DOCUMENTS sufficient to show YOUR SEVERITY analyses, INCLUDING trend analyses, for WATER LOSS claims for each of the years 2015 to 2025.

55. DOCUMENTS sufficient to show YOUR loss ratio goals and/or targets for WATER LOSS claims for each of the years 2015 to 2025, and any subset of each year, for example, monthly or weekly analyses.

56. DOCUMENTS sufficient to show YOUR loss ratio analyses, INCLUDING trend analysis, for WATER LOSS claims.

57. DOCUMENTS sufficient to show YOUR Claim Data Analytics "monthly water trends".

58. DOCUMENTS sufficient to show YOUR Claim Data Analytics "monthly update on our YTD Water estimate trends" INCLUDING All DOCUMENTS comparing State Farm to industry results.

59. DOCUMENTS containing YOUR Claim Data Analytics findings for WATER LOSS trends.

60. DOCUMENTS sufficient to show YOUR metrics and/or goals pertaining to the each of the following:

    a. WATER INITIATIVE
    b. Water forum
    c. Western Proximity Fire Claims Quality Plan and/or Fire Quality Plan
    d. Excellence in operations
    e. Fire Model Enhancement
    f. Fire Model Property Segment Enhancement
    g. Enterprise Quality Plan
    h. Water Quality Strategy or Quality Water Strategy
    i. Quality Water Plan or Water Quality Plan
    j. Water focus

61. DOCUMENTS sufficient to show YOUR reporting, findings, and/or conclusions as to

YOUR performance compared to metrics and/or goals established for each of the following:

a. WATER INITIATIVE
b. Water forum
c. Western Proximity Fire Claims Quality Plan and/or Fire Quality Plan
d. Excellence in operations
e. Fire Model Enhancement
f. Fire Model Property Segment Enhancement
g. Enterprise Quality Plan
h. Water Quality Strategy or Quality Water Strategy
i. Quality Water Plan or Water Quality Plan
j. Water focus

62. All DOCUMENTS containing or describing YOUR "Consulting Services Directed Reinspection" results for WATER LOSS claims.

63. All DOCUMENTS containing or describing YOUR "Open Assignment Reviews" RELATED TO WATER LOSS claims.

64. All DOCUMENTS containing or describing YOUR "Baseline File Reviews" RELATED TO WATER LOSS claims.

65. All DOCUMENTS containing or describing findings of YOUR Claim Review Team, RELATED TO WATER LOSS claims.

66. All DOCUMENTS containing or describing findings YOUR quarterly "water specific file reviews".

67. All DOCUMENTS containing or describing findings of YOUR "execution" team and/or department RELATED TO WATER LOSS claims.

68. All DOCUMENTS containing or describing findings of YOUR "execution" team or office relating to WATER LOSS claims.

69. All DOCUMENTS containing or describing YOUR "California Water Message Points".

70. All DOCUMENTS containing or describing the findings of YOUR bi-weekly meeting

including VPOs, Claim Managers, Data Analytics, and/or Consulting Services for the purpose of analyzing and/or reporting YOUR WATER LOSS claim trends.

71. All DOCUMENTS containing or describing YOUR monthly meeting including VPOs, Claim Managers, Data Analytics, and/or Consulting Services for the purpose of analyzing and/or reporting WATER LOSS claim trends to YOUR senior management.

72. All DOCUMENTS containing or describing YOUR Monthly Claim Accuracy Review(s) (MCAR) INCLUDING Quality Targets.

73. All DOCUMENTS containing or describing YOUR Operation(s) Account Reviews, INCLUDING any targets and/or results of YOUR Operations(s) Account Reviews.

74. All DOCUMENTS containing or describing the results of YOUR Fire Property Trend file review.

75. All DOCUMENTS containing or describing YOUR audits of WATER LOSS claims.

**Pattern Requests**

76. DOCUMENTS sufficient to show the number of WATER LOSS claims from January 1, 2015, to present YOU DENIED in whole or in part, based on the BELOW THE SURFACE OF THE GROUND EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

77. DOCUMENTS sufficient to show the number of WATER LOSS claims from January 1, 2015, to present YOU DENIED in whole or in part, based on the CONTINUOUS OR REPEATED SEEPAGE AND LEAKAGE EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

78. The complete CLAIM LOG and/or FILE HISTORY for each WATER LOSS claim from January 1, 2015, to present YOU DENIED in whole or in part, based on the BELOW THE SURFACE OF THE GROUND EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

79. The complete CLAIM LOG and/or FILE HISTORY for each WATER LOSS claim from January 1, 2015, to the present YOU DENIED in whole or in part, based on the

CONTINUOUS OR REPEATED SEEPAGE AND LEAKAGE EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

80. Each denial letter for each WATER LOSS claim from January 1, 2015, to present YOU DENIED in whole or in part, based on the BELOW THE SURFACE OF THE GROUND EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

81. Each denial letter for each WATER LOSS claim from January 1, 2015, to the present YOU DENIED in whole or in part, based on the CONTINUOUS OR REPEATED SEEPAGE AND LEAKAGE EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

**Performance Review/Incentives**

**NOTE: REQUESTS 82-91 ARE LIMITED TO THE PERIOD OF EMPLOYMENT BY YOU OF EACH PERSON LISTED OR DESCRIBED**

82. GUIDANCE available to the following persons RELATING TO the INVESTIGATION and/or ADJUSTING of WATER LOSS claims:

    a. Robin Dixon
    b. Ellen Redmond
    c. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

83. GUIDANCE available to the following persons to assist them in applying the BELOW THE SURFACE OF THE GROUND EXCLUSION:

    d. Robin Dixon
    e. Ellen Redmond
    f. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly

from January 1, 2024, to present.

84. GUIDANCE available to the following person to assist them in applying the CONTINUOUS SEEPAGE AND LEAKAGE EXCLUSION:

a. Robin Dixon

b. Ellen Redmond

c. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

85. GUIDANCE available to the following persons to INVESTIGATE and/or ADJUST loss of use and/or additional living expense claims:

d. Robin Dixon

e. Ellen Redmond

f. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

86. DOCUMENTS describing YOUR metrics used to assess or measure job performance of the following persons:

g. Robin Dixon

h. Ellen Redmond

i. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

87. DOCUMENTS describing goals set for the job performance of the following persons:

j. Robin Dixon

k. Ellen Redmond

l. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

88. YOUR PERFORMANCE REVIEW of the following persons, including but not limited to any internal disciplinary actions or threatened internal disciplinary actions:

    m. Robin Dixon

    n. Ellen Redmond

    o. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

89. DOCUMENTS sufficient to describe YOUR POLICIES/PROCEDURES for audits and/or evaluations YOU conducted of claim INVESTIGATION and/or ADJUSTING by the following persons:

    p. Robin Dixon

    q. Ellen Redmond

    r. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

90. DOCUMENTS sufficient to show any audit or evaluation performed by YOU of any claims INVESTIGATED and/or ADJUSTED by the following persons:

    s. Robin Dixon

    t. Ellen Redmond

    u. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

91. YOUR QlikSense ASSESSMENT or ASSESSMENT for the following persons - Robin Dixon, Ellen Redmond, and/or Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond report directly or indirectly – INCLUDING for the following metrics:

    v. Time to inspection

    w. Severity

x. Claim cycle time

y. Claim duration

z. MCAR

aa. Production Indicator

bb. Closed in Field

cc. TIPP Submissions

dd. Team Barometer

ee. New submissions

ff. Completed Reviews

gg. CIT Pendings per CS

92. DOCUMENTS containing or sufficient to describe any INCENTIVE available to the following persons:

hh. Robin Dixon

ii. Ellen Redmond

jj. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

93. DOCUMENTS containing or sufficient to describe YOUR metrics for awarding INCENTIVES to YOUR CLAIMS ADJUSTERS.

94. DOCUMENTS containing or sufficient to describe any INCENTIVE paid to the following persons:

kk. Robin Dixon

ll. Ellen Redmond

mm. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**Other Requests**

95. All DOCUMENTS containing any template or form for use by CLAIM property claim

adjusters or supervisors to use in drafting WATER LOSS claim denials based on any policy exclusion.

96. Inspection of State Farm's intranet or SFNET for the purpose of discovering all GUIDANCE available to the CLAIMS ADJUSTERS involved in INVESTIGATING or ADJUSTING PLAINTIFFS' CLAIM.

Date: April 28, 2026

Kerley Schaffer LLP

/S/ Dylan Schaffer

Dylan L. Schaffer
Attorneys for Plaintiffs

**PROOF OF SERVICE**
***Myles, et al, v. State Farm***
**U.S. DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**
**Case No. 2:26-cv-00452-CAS (MBKx)**

I declare that I am over the age of 18 years and not a party to this action. My business address is 1939 Harrison Street, #900, Oakland, CA 94612. On April 28, 2026, I served the following on the interested parties in this action:

**PLAINTIFF'S INTERROGATORIES TO STATE FARM GENERAL INSURANCE COMPANY, SET ONE**

**PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO STATE FARM GENERAL INSURANCE COMPANY, SET TWO**

| | |
|---|---|
| Jennifer M. Hoffman<br>Madalyn A. Macarr<br>Carolyn Carey<br>**SHEPPARD, MULLIN, RICHTER, & HAMPTON LLP**<br>350 South Grand Avenue, 40th Floor<br>Los Angeles, CA 90071<br>Telephone: 213.620.1780<br>jhoffman@sheppard.com<br>mmacarr@sheppard.com<br>ccarey@sheppard.com<br><br>*ATTORNEYS FOR DEFENDANT STATE FARM GENERAL INSURANCE COMPANY* | |

☐ **MAIL:** By placing such documents(s) in a sealed envelope, with postage prepaid for first class mail, for collection and mailing at Oakland California following ordinary business practice for deposit with United States Postal Service.

☐ **FAX**: By causing to be transmitted the documents by use of fax machine telephone number (510)228-0350 to the parties at the facsimile numbers listed on the service list above. The fax machine used complies with California Rule of Court 2.301. The transmission was reported as complete and no error was reported by the machine. I caused the transmitting machine to print a record of the transmission, a copy of which is attached to this declaration.

☒ **E-MAIL**: By electronic mail to the addresses noted above.

☐ **ELECTRONIC TRANSMISSION**: By electronic transmission via One Legal or other Court-approved vendor as mandated by the California Code of Civil Procedure section 1010.6, California Rules of Court 2.253(b)(2) and San Francisco Superior Court Local Rule 2.10. to the electronic mailing addresses noted above.

☐ **FEDEX:** By placing for overnight delivery such documents(s) in a facility or box that is regularly maintained by FedEx.

☐ **HAND DELIVERY:** Caused to be hand delivered.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true, and if called as a witness I could testify competently thereto. This declaration was executed April 28, 2026, at Oakland, California.

/s/ Ronan Morrill
Ronan Morrill

# EXHIBIT B

EXHIBIT B

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
JENNIFER M. HOFFMAN, Cal. Bar No. 240600
jhoffman@sheppard.com
MADALYN MACARR, Cal. Bar No. 301539
mmacarr@sheppard.com
CAROLYN CAREY, Cal Bar No. 356506
ccarey@sheppard.com
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone: 213.620.1780
Facsimile: 213.620.1398

Attorneys for Defendant
STATE FARM GENERAL
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY MYLES, an individual, and WILLIE DANIELS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 10,<br><br>Defendant. | Case No. 2:26-cv-00452-CAS (MBKx)<br><br>*Assigned to Hon. Christina A. Snyder*<br><br>**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S CONFIDENTIAL RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. TWO**<br><br>Trial Date: October 12. 2027 |

**PROPOUNDING PARTY:** **PLAINTIFFS KATHY MYLES AND WILLIE DANIELS**

**RESPONDING PARTY:** **DEFENDANT STATE FARM GENERAL INSURANCE COMPANY**

**SET NO.:** **TWO (2)**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant State Farm General Insurance Company ("State Farm") hereby objects and responds to Plaintiffs Kathy Myles and Willie Daniels ("Plaintiffs") Second Set of Requests for Production of Documents (the "Requests") as set forth below.

## PRELIMINARY STATEMENT

State Farm responds to the Requests solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, admissibility, privilege, privacy, proprietary information, trade secrets and the like, and any and all other objections on grounds that would require the exclusion of any response herein if such were offered in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

No incidental or implied admissions are intended in these responses. The fact that State Farm has responded to any part or all of any Request should not be taken as an admission that State Farm accepts or admits the existence of any facts set forth or assumed by such Request or that such response constitutes admissible evidence. The fact that State Farm has responded to any part or all of any Request is not intended to and shall not be construed to be a waiver by State Farm of all or any part of any objection to any Request.

State Farm has not completed its discovery in this action or preparation for the trial. State Farm reserves the right to supplement, modify or correct its responses to these Requests, or any part of them, as State Farm acquires additional information in the course of its investigation and discovery in this action.

This preliminary statement is incorporated by reference to each of the responses below as if stated in full.

## GENERAL OBJECTIONS

1. State Farm objects to the Requests including the "Instructions" and "Definitions" sections, to the extent that they conflict with or attempt to enlarge any obligations that State Farm has under the applicable rules and procedures of the Court. State Farm will ignore all such requests, definitions, and instructions to the extent that they conflict with the applicable rules and procedures.

2. State Farm also objects to the Requests to the extent that they seek to impose burdens or obligations beyond or inconsistent with those required by the

Federal Rules of Civil Procedure ("FRCP") or other applicable law.

3. State Farm objects to the Requests to the extent that they seek information protected from disclosure by the attorney-client privilege, the work product doctrines, California Insurance Code section 791.13, and/or any other statutory or common law protection against disclosure.

4. State Farm objects to the extent that the Requests seek personal, private, confidential, trade secret and/or proprietary information of State Farm, and/or its affiliates, agents or partners.

5. State Farm objects to the extent that the Requests seek confidential, private personal or business information, including private information subject to an individual's right of privacy guaranteed by the United States Constitution, the California Constitution, and/or any other statutory or common law privacy protection. Plaintiffs have not established that such information is necessary to a fair adjudication of this case, or that the Requests for information outweighs the privacy interests involved.

6. State Farm objects to the Requests to the extent that they require a claim-by-claim review, seek information not proportionate to the needs of the case, or are otherwise overbroad or unduly burdensome and oppressive.

7. State Farm objects to the Requests to the extent they seek confidential, proprietary business information and/or trade secrets. To the extent that State Farm agrees to provide non-privileged information to these Requests, it will only provide confidential, proprietary business information and/or trade secret information subject to the entry of an acceptable protective order in this case.

8. The above General Objections are incorporated by reference in each of the individual responses that follow, and the individual responses are provided subject to and without waiving the matters set forth therein. The term "objections" shall refer to all General Objections and any objection specifically made to a particular Request.

## INSTRUCTIONS AND OBJECTIONS

**INSTRUCTION:**

Plaintiffs request that Defendant State Farm General Insurance Company produce the DOCUMENTS described below for inspection and copying and serve Plaintiffs the written response within thirty (30) days after service of this request. The place for inspection shall be at the office of Kerley Schaffer LLP, 1939 Harrison Street, Suite 900, Oakland, CA 94612.

In lieu of personal appearance and production on the above date, compliance with this Request for Production of DOCUMENTS may be accomplished by mailing to counsel at the above address, full, true and correct copies of the requested DOCUMENTS, verified by you as such, in a manner prescribed for written response to the demand for inspection of DOCUMENTS pursuant to Rule 34 of the Federal Rules of Civil Procedure, on or before thirty (30) days from the date of this demand.

YOUR WRITTEN RESPONSE TO THIS INSPECTION DEMAND must respond separately to each numbered demand for inspection below by:

1. A statement that you will comply with the particular demand;
2. A statement that you lack the ability to comply with the particular demand; or
3. Any objection to the particular demand. F.R.C.P. 34(b).

If your response to a particular demand is a statement that you will comply with that demand, you must state in your response whether the production will be allowed in whole or in part, and you must state that DOCUMENTS or things in the demanded category that are in your possession, custody or control and to which no objection is being made will be included in the production. F.R.C.P. 34(b).If your response to a particular demand is a statement that you lack the ability to comply with that demand, you must affirm in your response that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand. This statement shall also specify whether the inability to comply is because the particular

item or category never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody or control, in which case the name and address of any person or entity known or believed by you to have possession, custody or control of that document or category of documents should be identified. F.R.C.P. 34(b).

**OBJECTION:**

State Farm objects to this Instruction and inspection demand to the extent they purport to impose obligations on State Farm beyond or inconsistent with the requirements of the Federal Rules of Civil Procedure, including Rule 34(b), or any other applicable statute, rule, or court order.

State Farm further objects to the Instruction and inspection demand as unreasonable, unduly burdensome, and oppressive

State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' Instruction regarding "item[s]" or "categor[ies]" that have been "destroyed", "lost", "misplaced", "stolen", or which have "never been" or "[are] no longer" in State Farm's possession, custody or control.

In addition, State Farm objects to Plaintiffs' Instruction insofar as it seeks details regarding "item[s]" or "categor[ies]" that have been "destroyed", "lost", "misplaced", "stolen", or which have "never been" or "[are] no longer" in State Farm's possession, custody or control on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible

discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' Instruction is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

**INSTRUCTION:**

If your response to a particular demand is an objection, you must set forth in your response the extent of, and the specific ground for, the objection. In your response, you must also identify with particularity any document responsive to the particular demand that is being withheld from production based upon a claim of privilege or other protection and state the particular privilege or protection being invoked. (F.R.C.P. 34(b).) To identify with particularity documents withheld from production, you should provide, for each document withheld, the following information if known or available to you:

1. Title or subject matter of document;
2. The date composed or date appearing on the document;
3. Author and Addressee;
4. Number of Pages;
5. Identify of all persons or entities who saw or received a copy of such document, including the job titles of each such person;
6. The present location of the item;
7. The identity of the person or persons who have custody, control, or possession thereof.
8. The nature of the privilege claimed; and
9. Each fact upon which you base your claim of privilege.

**OBJECTION:**

State Farm objects to Plaintiffs' Instruction insofar as it directs State Farm to undertake efforts that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information and describe the same in accordance with the Federal Rules of Civil Procedure and substantive law.

**INSTRUCTION:**

Electronic media should be produced in its native format (e.g., Word documents and Excel spreadsheets produced with .doc and .xls extensions and email produced in .pst files if Outlook is the email client).

**OBJECTION:**

State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' Instruction to produce "Electronic media" in its "native format".

In addition, State Farm objects to Plaintiffs' Instruction regarding production of "Electronic media" in its "native format" to the extent it purports to seek production of ESI in "native format" both because it contradicts Plaintiffs' definition of the term "DOCUMENT" or "DOCUMENTS" below and because it exceeds the parameters of the Federal Rules of Civil Procedure. Pursuant to Fed. R. Civ. P. 34(b)(2)(E)(ii), State Farm may produce discoverable ESI in reasonably usable formats. Production of ESI in "native format" would be disproportionate to the needs of this case considering the value of the case and the importance of the discovery at issue and would be unduly burdensome to the extent such format is not reasonably accessible to State Farm in the ordinary course of its business. Fed. R. Civ. P. 26(b)(2). In addition, State Farm frequently creates ESI in one format and, in the ordinary course of its business, stores it in another format in its system of record. State Farm further objects that it does not need to produce ESI in more than

one form, and that the production of "Electronic media" in "native format" would be cumulative and duplicative of the alternative reasonably usable formats proffered. Fed. R. Civ. P. 34(b)(2)(E)(iii); 26(b)(2).

To the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

**INSTRUCTION:**

These requests for production include the original media and all copies that differ from the original in any respect, such as notations made on the copy. These requests are also intended to include all media of any nature that are now or have at any time been within your care, custody or control. If a document or media is no longer in your care, custody or control, identify its disposition.

**OBJECTION:**

State Farm objects to Plaintiffs' Instruction to produce "copies" on the grounds that copies are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. Fed. R. Civ. P. 26. To the extent that "copies" are not business records stored in a central repository in State Farm's ordinary course of business, the collection and production of "copies" would not be proportional to the needs of the case. Fed. R. Civ. P. 26.

In addition, State Farm objects to Plaintiffs' Instruction insofar as it seeks details regarding "document[s] or media" that "is no longer in [State Farm's] care, custody or control" on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that

is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' Instruction is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

## OBJECTIONS TO DEFINITIONS

1. State Farm objects to the definition of "YOU" OR "YOUR". State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' definition of "YOU" or "YOUR." State Farm objects to the terms "YOU" or "YOUR" because as defined, the terms are overbroad and over-inclusive, such that they render any category or request that includes the terms vague, ambiguous, overbroad, and potentially in violation of the attorney-client privilege and/or work product doctrines. State Farm objects to the inclusion of the capitalized term "ADJUSTERS," on the grounds that this capitalized term is not a defined term. State Farm shall construe the terms "YOU" or "YOUR" to mean State Farm in and of itself as an entity only.

In addition, State Farm objects to Plaintiffs' definition insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is only obligated to produce discoverable "DOCUMENTS" within its possession, custody, or control.

State Farm also objects to Plaintiffs' definition to the extent it may seek "DOCUMENTS" within the possession, custody, or control of State Farm's

attorneys as this may require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

2. State Farm objects to the definition of "DOCUMENT" or "DOCUMENTS". State Farm incorporates by reference its objections to the terms "COMMUNICATIONS" and "ESI" as if fully set forth herein. State Farm objects to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that it is overly broad and disproportionate to the needs of the case. State Farm further object to the definition to the extent it implies State Farm has an obligation to provide discovery from sources that are not reasonably accessible. Electronically stored information ("ESI") is frequently duplicated and disbursed in the ordinary course of business and discovery regarding all identical copies of ESI would be cumulative and duplicative without any benefit to the adjudication of this action. Fed. R. Civ. P. 26(b)(2).

State Farm also object to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary computer files, log/history files, or file fragments, as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm objects to Plaintiffs' definition as overly broad, disproportionate to the needs of the case, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created by State Farm's users, such as caches, cookies, or logs, or otherwise seek to require State Farm to record and/or provide discovery regarding records and information that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. Fed. R. Civ. P. 26(b)(1).

State Farm objects to the inclusion of "DOCUMENTS" which are in the "possession, custody, or control" of "any third-party vendors" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is only

obligated to produce discoverable "DOCUMENTS" within its possession, custody, or control.

State Farm also objects to Plaintiffs' definition to the extent it may include "DOCUMENTS" within the possession, custody, or control of State Farm's attorneys as production of "DOCUMENTS" within the possession, custody, or control of State Farm's attorneys would require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

State Farm objects to the inclusion of "draft[s]" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that drafts are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. To the extent that a draft is not a business record stored in a central repository in State Farm's ordinary course of business, discovery regarding "draft[s]" would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

State Farm objects to the inclusion of "COMMUNICATIONS," "chats", "instant messages", "texts," "personal digital assistants, handheld wireless devices, mobile telephones, smart phones, tablet computers, paging devices" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that State Farm has no obligation to collect, review, or produce text messages sent or received by devices that are not in State Farm's possession, custody, or control. Fed. R. Civ. P. 26(a), 34(a). State Farm further objects that text message data that exists on mobile devices within State Farm's possession, custody, or control is not relevant to any party's claim or defense, and discovery from such devices would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1), (2). State Farm also objects because any text message data from such devices is unlikely to contain unique, relevant information that does not also exist in the relevant claim file(s) or another location that is less burdensome for collection, review, and production.

State Farm objects to the inclusion of "databases (including draft versions)", "database entries", "Internet usage files", Internet browser-created files including cookies and caches", "activity logs", and "network access information" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" to the extent that Plaintiffs purport to seek information regarding State Farm technical systems and processes that are not relevant to the claims and defenses in this matter. State Farm further objects that production of a database would require production of vast amounts of irrelevant information regarding other claims, would likely result in improper alteration of relevant data, and would require production of privileged information that could not be redacted. In addition, State Farm objects that the resources that would be required to produce databases are significant and would not be proportional under Fed. R. Civ. P. 26. State Farm also objects on the grounds that databases may be proprietary to State Farm's business operations and/or may be confidential and trade secret information that need not be disclosed in order to obtain the fair adjudication of this case.

State Farm objects to Plaintiffs' definition insofar as it seeks details regarding "DOCUMENTS" that have been "deleted" on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' definition is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

State Farm objects to the inclusion of "DOCUMENTS. . . found on, archived in, or deleted from. . .on-site or off-site electronic data storage", "systems or data structures", "legacy systems (hardware and software)", "servers", "mainframes", "network servers", "cloud-based servers", "backup servers or systems", "archives", or "backup or disaster recovery systems or facilities" in Plaintiffs' definition to the extent that Plaintiffs seek discovery regarding ESI from sources that are not reasonably accessible, as it would require unreasonable efforts that are not proportional in light of the claims at issue, the value of the case, or the importance of the discovery at issue. Fed. R. Civ. P. 26(b)(1). State Farm also objects to the inclusion of information located on such systems in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that data on backup media is likely to be duplicative and/or can be discovered from other sources that are more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2) There is no "routine right of direct access to a party's electronic information system[s]" and there has been no showing in this case sufficient to overcome this presumption. Fed. R. Civ. P. 34 (Advisory Committee Notes).

In addition, State Farm objects to the inclusion of "tapes", "discs", "DVDs", "CDROMs", "drives", "portable or removable drives", "cartridges", and "other storage media", "laptops", "personal computers", "internet data", "personal digital assistants", "handheld wireless devices", "mobile telephones", "smart phones", "tablet computers", "paging devices", and "audio systems (including voicemail)" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" because such things are not "DOCUMENTS" but rather media on which "DOCUMENTS" and ESI are stored. State Farm further objects to the extent this definition purports to seek direct access to State Farm's electronic storage media. There is no "routine right of direct

access to a party's electronic information system[s]" and there has been no showing in this case sufficient to overcome this presumption. Fed. R. Civ. P. 34 (Advisory Committee Notes).

Finally, State Farm objects to the definition of "DOCUMENT" or "DOCUMENTS" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges or privacy rights recognized by law.

Notwithstanding these objections, to the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

3. State Farm objects to Plaintiffs' definition of "ESI" on the grounds that it is overly broad and unduly burdensome. State Farm also objects to the extent it relies on the California Code of Civil Procedure or purports to impose obligations on State Farm beyond or inconsistent with the requirements of the Federal Rules of Civil Procedure, including Rule 34(a), or any other applicable statute, rule, or court order. State Farm further objects to the definition to the extent it implies State Farm has an obligation to provide discovery from sources that are not reasonably accessible. ESI is frequently duplicated and disbursed in the ordinary course of business and discovery regarding all identical copies of ESI would be cumulative, duplicative, and impose unnecessary burdens without any benefit to the adjudication of this action. Fed. R. Civ. P. 26(b)(2).

State Farm also objects to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary "data files", "file fragments", computer files, or log/history files as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm objects to Plaintiffs' definition as overly broad, unduly burdensome, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created

by State Farm users, such as caches, cookies, or logs, or otherwise seek to require State Farm to record and/or provide discovery regarding records and information that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. Fed. R. Civ. P. 26(b)(1), 34.

State Farm objects to the inclusion of "metadata" Plaintiffs' definition of "ESI" on the grounds that "metadata" can refer to any number of types of information, so the definition is overbroad, vague and ambiguous as to what specific information it seeks. State Farm further objects on the grounds that metadata is not relevant to the specific claims and defenses of any party, nor is discovery regarding metadata proportional to the needs of the case, and therefore the inclusion of "metadata" in Plaintiffs' definition is beyond the scope of permissible discovery. Fed. R. Civ. P. 26. In particular, the information pertinent to the claims and defenses in this case can be found in the text of discoverable "documents" and is not generally found in metadata. State Farm objects that discovery regarding metadata is not necessary to assure the fair and efficient adjudication of the claims and defenses in this matter.

Finally, State Farm objects to the definition of "ESI" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

Notwithstanding these objections, to the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

4. State Farm objects to the definition of "BELOW THE SURFACE OF THE GROUND EXCLUSION" on the grounds that it is overly broad in scope and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit. State Farm objects to this definition to the extent it purports to define as relevant – by virtue of the inclusion of "any provision in a property policy …

insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase 'below the surface of the ground'" – insurance policies beyond the specific policy at issue in this litigation on the ground that it is overly broad in scope and time. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information and/or documentation that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. This definition goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The subject insurance contract/policy speaks for itself.

5. State Farm objects to the definition of "CLAIM LOG" or "FILE HISTORY". State Farm restates and incorporates its objections to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" and applies the same to Plaintiffs' definition of "CLAIM LOG" or "FILE HISTORY." In addition, State Farm objects to Plaintiffs' definition on the grounds that the terms "chronological notes, diary, log, or calendar" are vague and ambiguous. State Farm objects to this definition as overly broad and disproportionate to the needs of the case by the specific inclusion of the terms "every claim under a California property insurance policy issued by YOU," when this case involves only a claim involving Plaintiffs' October 2025 water loss, and further objects to this definition to the extent that Plaintiff purports to define as relevant information related to other, unrelated claims of individuals not party to this litigation who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client privilege and work product doctrines. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks

information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. As such, to the extent that this definition purports to define as relevant information related to other such claims, State Farm objects to this definition.

6. State Farm objects to the definition of "CLAIM ADJUSTER(S)" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the definition of "CLAIMS ADJUSTER(S)" on the grounds that it is overly broad by virtue of the fact that it is unrestricted in scope and time, and on the basis that it specifically includes categories of individuals who did not work on Plaintiffs' claim – including but not limited to "any employee, supervisor, manager, agent, outside adjuster, independent adjuster, independent adjusting company, or other person or entity . . .employed, retained, or otherwise relied on to INVESTIGATE and/or ADJUST property claims." Information regarding the individuals who were engaged to assist with Plaintiffs' claim are identified in the Claim File and email correspondence produced by State Farm, and those are the only individuals relevant to the issues in this litigation, which stem from a single homeowner's claim relating to a fire to the Plaintiffs' home. State Farm further objects to this definition to the extent it purports to define "CLAIMS ADJUSTER(S)" in a way that diverges from the manner in which State Farm would employ that term. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case. State Farm shall construe this term to mean Claim Specialists that State Farm employed or retained in and of itself to investigate or adjust a property claim, and the Team Managers who directly supervise those Claim Specialists.

7. State Farms objects to the definition of "COMMUNICATION". State Farm restates and incorporates in full by reference its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" and applies the same to Plaintiffs' definition of "COMMUNICATION".

In addition, State Farm objects to the inclusion of oral exchanges, including "personal meeting[s]", "conference[s]", and "conversation[s]" in Plaintiffs' definition of "COMMUNICATION" on the grounds that Fed. R. Civ. P. 34 does not require State Farm to produce "COMMUNICATION[S]" that do not already exist on a medium from which information can be obtained.

State Farm objects to Plaintiffs' definition [to the extent Plaintiff's/Plaintiffs' definition includes text messages] on the grounds that State Farm has no obligation to collect, review, or produce text messages sent or received by devices that are not in State Farm's possession, custody, or control. Fed. R. Civ. P. 26(a), 34(a). State Farm further objects that text message data that exists on mobile devices within State Farm's possession, custody, or control is not relevant to any party's claim or defense, and discovery from such devices would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1), (2). State Farm also objects because any text message data from such devices is unlikely to contain unique, relevant information that does not also exist in the relevant claim file(s) or another location that is less burdensome for collection, review, and production.

8. State Farm objects to the definitions of "CONSULTANT," "MCKINSEY & COMPANY," and "ACCENTURE" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the definition of "CONSULTANT" on the grounds that it is overly broad by virtue of the fact that it is unrestricted in scope and time, on the basis that it purports to include both "internal" and "external" consultants in the definition, and due to the use of the term "including." Further, the definition of the term "CONSULTANT" is overly broad in scope due to the inclusion of the terms "internal or external

consulting department or entity, firm, advisory firm, management consulting company, or individual consultant used or retained by YOU," "evaluate, assess, recommend changes to, or implement changes," "property claims operations," "claims handling systems," "quality assurance processes," "estimating practices," "vendor management programs," and "claims financial performance." State Farm objects to the inclusion of the terms "Office of Consulting Services" in the definition of the term "CONSULTANT" on the grounds that it is vague and ambiguous. State Farm objects to this definition to the extent it is predicated by assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm objects to the terms "CONSULTANT," "MCKINSEY & COMPANY" and "ACCENTURE" to the extent they purport to define as relevant to this action the incredibly broad topics included within this definition -- topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, concepts like "changes in [State Farm's] property claims operations, claims handling systems, quality assurance processes, estimating practices, vendor management programs, or claims financial performance that have absolutely nothing to do with the handling of Plaintiffs' claim. State Farm further objects to the inclusion of "MCKINSEY & COMPANY" and "ACCENTURE" in the definition of "CONSULTANT" to the extent that Plaintiffs purport to suggest that either company is relevant to the issues in this litigation. Finally, State Farm objects to the term "CONSULTANT" to the extent Plaintiffs purport to seek as relevant information related to other, unrelated claims, by virtue of the use of the broad, undefined term "property claims." As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

9. State Farm objects to the definition of "CONTINUOUS OR REPEATED SEEPAGE EXCLUSION" on the grounds that it is overly broad in

scope and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit. State Farm objects to this definition to the extent it purports to define as relevant – by virtue of the inclusion of "any provision in a property policy … insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase 'seepage or leakage'" – insurance policies beyond the specific policy at issue in this litigation on the ground that it is overly broad in scope and time. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information and/or documentation that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. State Farm further objects to this definition as vague and ambiguous as to the phrase "any building". This definition goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The subject insurance contract/policy speaks for itself.

10. State Farm objects to the definitions of "DENY," "DENYING," "DENIED," or "DENIAL" on the grounds that it is overly broad in scope (not limited to the claim at issue in this case by seeking "any circumstance in which [State Farm] issued a written denial letter . . . following notice of a loss pursuant to a policy of insurance sold by [State Farm] covering real property in California") and time (unlimited in time). State Farm objects to this definition to the extent it purports to define as relevant information related to other, unrelated claims, and/or to seek to discover information related to other claims, which are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This definition is not reasonably tailored

to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. As such, to the extent that this definition purports to define as relevant information related to other such claims, State Farm objects to this definition.

11. State Farm objects to the definition of "FINANCIAL IMPACT". State Farm incorporates by reference its objections to the term SEVERITY as fully set forth herein. State Farm objects to the terms "FINANCIAL IMPACT" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the terms "FINANCIAL IMPACT" and to the extent it purports to define as relevant to this action topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, by virtue of the inclusion of these terms in the definition of "FINANCIAL IMPACT" – "investigation expenses, indemnity obligations, administrative costs, SEVERITY . . . loss ratios, cost-per-claim, average estimate amounts, or any other measure of monetary effect." State Farm further objects to the definition of "FINANCIAL IMPACT" to the extent its inclusion purports to define as relevant or to the claims or defense of any party the information included within this definition. Finally, State Farm objects to the term "FINANCIAL IMPACT" to the extent Plaintiffs purport to define "FINANCIAL IMPACT" in a manner that diverges from how such term is used within the Property and Casualty Claims department within State Farm. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

12. State Farm objects to the definition of "FIRE CLAIMS DEPARTMENT" to the extent that it purports to imply that information that was contained in State Farm's response to Request for Production No. 74 in the aforementioned *Savas* matter is relevant, responsive, or proportional to the needs of Plaintiffs' claim. State Farm further states that its response to Request for Production No. 74 in the aforementioned *Savas* matter speaks for itself as to its source and content, but notes that the version cited in this definition is not the operative version, which is subject to the protective order in that case.

13. State Farm objects to the definition of "GUIDANCE". State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENT" or "DOCUMENTS," "TRAINING OR GUIDELINES," "POLICIES/PROCEDURES," "COMMUNICATION" or "COMMUNICATIONS," and applies the same to Plaintiffs' definition of "GUIDANCE." State Farm objects to the term "GUIDANCE" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the inclusion of "TRAINING OR GUIDELINES" and "POLICIES/PROCEDURES" in this definition to the extent redundant or cumulative of the prior definitions. State Farm objects to the term "GUIDANCE" to the extent it purports to seek materials beyond formal resources available to the individuals handling the claim from the date of loss through the end of claim handling.

State Farm further objects to the term "GUIDANCE" on the grounds that it purports to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, a water loss to Plaintiffs' home in October 2025, by seeking information "intended to communicate YOUR policies, views, directions, and/or changes to any policy, view or direction, to anyone, regarding the appropriate INVESTIGATION and/or ADJUSTING of property claims under insurance policies sold by YOU, generally, as opposed to any such policy, view, or direction expressed uniquely and solely as RELATES TO the INVESTIGATION

and/or ADJUSTING of any particular claim," and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of causes of loss. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

14. State Farm objects to the definition of "INCENTIVE". State Farm restates and incorporates its objections to Plaintiffs' definition of "CLAIMS ADJUSTERS" and applies the same to Plaintiffs' definition of "INCENTIVE." State Farm objects to the term "INCENTIVE" as vague, ambiguous, overbroad and disproportionate to the needs of the case, especially as to use of the phrases "any system, program, process, promise by way of contract or otherwise," "financial benefits," and "for successful job and/or department and/or region and/or company performance according [sic] any metric set." State Farm further objects to the term "INCENTIVE" to the extent it purports to seek materials beyond those applicable to the individuals handling the claim from the date of loss up to the end of claim handling.

State Farm objects to this definition on the grounds that it is overly broad in scope—including things that have nothing to do with the performance of the individuals involved in the claim. State Farm also objects to the extent it is predicated by assumptions made by Plaintiffs' and/or Plaintiffs' counsel regarding "financial benefits."

State Farm objects to this definition to the extent it purports to define as relevant to the facts and circumstances of this case personal information of State Farm employees, including but not limited to information regarding the individuals who worked on Plaintiffs' claim, such that this definition may unduly invade the privacy rights of State Farm's employees. This definition goes beyond what is needed to address the claims and defenses at issue; it is not likely to assist in the

resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this definition because it unduly invades the privacy of its employees and is broad enough to potentially implicate information that is confidential, proprietary business information. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

15. State Farm objects to the definition of "PERFORMANCE REVIEW". State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENT" or "DOCUMENTS," and "CLAIMS ADJUSTER," and applies the same to Plaintiffs' definition of "PERFORMANCE REVIEW" and included definition of "ASSESSMENT"." State Farm objects to this definition to the extent that it purports to include topics more appropriately covered in the definitions of "TRAINING OR GUIDELINES," "POLICIES/PROCEDURES," "or "GUIDANCE," rendering this definition overly broad, unduly burdensome, cumulative, duplicative, and not proportional to the needs of the case. State Farm objects to this definition to the extent that it cites the titles of or otherwise relies on proprietary, confidential, or trade secret documents such that their inclusion in this definition violates the protective orders in the matters in which those documents were produced. State Farm objects to this definition on the grounds that it is overly broad in scope—including things that have nothing to do with the performance review of the individuals involved in the claim, to the extent it is predicated by assumptions made by Plaintiffs' and/or Plaintiffs' counsel regarding the extent of terms included in this definition and/or how those might be used in application, including, for example, the inclusion of terms like "Exposure Management review," "Fire executive review," "Fire Leadership Tracker review," "Frequency Error percentage review," "Huddle Points," "Stewardship Team (all areas)," "Leadership Guide," "Quality Targets," "Leadership Action Plan, Leadership Action Plan & Communication Strategy," "Process Confirmations," "Quality Targets," "Quarterly

Survey," or "Tactical Tracker," among others. State Farm objects to this definition on the grounds that it is overly broad in time (without temporal limitation). State Farm objects to this definition to the extent it purports to define as relevant to the facts and circumstances of this case personal information of State Farm employees, including but not limited to information regarding the individuals who worked on Plaintiffs' claim, such that this definition may unduly invade the privacy rights of State Farm's employees. This definition goes beyond what is needed to address the claims and defenses at issue; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this definition because it unduly invades the privacy of its employees and is broad enough to potentially implicate information that is confidential, proprietary business information. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

16. State Farm objects to the definition of "POLICIES/PROCEDURES". State Farm restates and incorporates its objection to Plaintiffs' definition of "TRAINING OR GUIDELINES" and applies the same to Plaintiffs' definition of "POLICIES/PROCEDURES." State Farm objects to the definition of "POLICIES/PROCEDURES" as vague, ambiguous, overbroad and disproportionate to the needs of the case, including with regard to the use of the terms "bulletins," "operation manuals," "other written materials," "internal memoranda,"

directives," "executive communications," "town hall or all-hands presentation materials," "process maps" and "workflow documentation." State Farm objects to this definition on the grounds that it is overly broad due to the inclusion of "executive communications" which are by their plain meaning, neither "policies" nor "procedures". State Farm objects to the inclusion of "TRAINING OR GUIDELINES" in this request to the extent redundant or cumulative of the prior definition. State Farm objects to the terms "POLICIES/PROCEDURES" to the extent they purport to seek materials beyond formal resources available to the

individuals handling Plaintiffs' claim from the date of loss through the end of claim handling. Finally, State Farm objects to the terms 'POLICIES/PROCEDURES" on the grounds that they purport to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, an October 2025 water loss in Plaintiffs' home, by seeking information broadly related to "first party property Claims in California, but excluding auto claims" and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of losses or causes of loss that have no relevance to Plaintiffs' claim. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

17. State Farm objects to Plaintiffs' definition of "RELATE TO" or "RELATING TO", to the extent it would require State Farm to construe such terminology beyond its ordinary meaning. State Farm further objects to the extent this definition purports to seek information that bears no relevance to the claims and defenses of any party in this case or that is disproportionate to the needs of this litigation.

18. State Farm objects to the definition of "TRAINING OR [sic] GUIDELINES". State Farm repeats and incorporates by reference its objections to the terms "DOCUMENT" or DOCUMENTS" as if fully set forth herein. State Farm objects to the terms "TRAINING OR GUIDELINES" as vague, ambiguous, overbroad and disproportionate to the needs of the case. Among other things, it purports to include materials not reasonably characterized as training or guidelines. For example, it includes "Xactimate", which is a tool accessible to State Farm claims personnel; it is neither "training" nor a "guideline". Further, the definition is not limited to the type of claim or issues involved in this matter, including but not limited to the following: "Quality Claims Handling Experience, Quality Claims Handling Standards, Coverage Model, Coverage Analysis, Skills Review, In Role

Skills Review, Skills Review Answer Keys, Skills Testing, Resources, Discussion Resources, Core Property Claims, Dollar One, ECHP, Basics, Coverage Analysis, Support Guide, Claim Experience, Claim Experience Video Collaboration, Reference Guide". State Farm further objects to the extent this definition constitutes a compilation of information gleaned by Plaintiffs' counsel from the production of documents in other matters subject to protective orders in those matters. State Farm further objects to this definition to the extent that it purports to seek information without temporal limitation or information that is broader than a reasonable timeframe, to the extent it purports to seek information beyond formal training taken by the individuals who worked on Plaintiffs' claim, namely Claim Specialist Robin Dixon and Team Manager Ellen Redmond, or formal resources available to the individuals handling the claim from the date of loss through the end of claim handling. Finally, State Farm objects to the terms 'TRAINING OR GUIDELINES" on the grounds that they purport to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, a water loss by seeking information related to "first party property Claims in California, but excluding auto claims" and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of causes of loss (including, but not limited to terms including "Dollar One," "ECHP," or "Fire Focus""). As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

19. State Farm objects to the definition of "SEVERITY". State Farm repeats and incorporated by reference its objections to the term INDEMNITY, to the extent intended to be included in the definition of "SEVERITY," as if fully set forth herein. State Farm objects to the term "SEVERITY" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the term "SEVERITY" to the extent it purports to define as relevant to this action topics

far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, by virtue of the inclusion of these terms in the definition of " SEVERITY -- "net paid indemnity divided by paid claim count, and/or paid versus reserved amounts, and/or trends of these over time." State Farm further objects to the definition of "SEVERITY" to the extent its inclusion purports to define as relevant the information included within this definition. Finally, State Farm objects to the term "SEVERITY" to the extent Plaintiffs purport to define "SEVERITY" in a manner that diverges from how such terms are used within the Property and Causality Claims department within State Farm. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

20. State Farm objects to the definition of "WATER INITIATIVE". State Farm repeats and incorporated by reference its objections to the terms "YOU," "DOCUMENT" or "DOCUMENTS," "RELATING TO," "YOUR, "WATER LOSS," and "CONSULTANT" as if fully set forth herein.

State Farm objects to the term "WATER INITIATIVE" as vague, ambiguous, and not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case. State Farm objects to the terms "modifications," "recommendations" and "systemic efforts" on the grounds that they are vague and ambiguous. This case is about a single water loss in October 2025 involving a pipe leak, and State Farm objects to this definition on the ground that it purports to define as relevant information related to other lawsuits and other claims wholly unrelated to the issues in this case. State Farm objects to this definition on the grounds that it is overly broad in scope (due to the overly broad definition of "WATER LOSS," and the use of the terms "any" and all"), time (due to the lack of temporal restrictions or any reasonable timeframe) and geography (not

limited to the State of California).

State Farm objects to the definition of "WATER INITIATIVE" to the extent that Plaintiffs or Plaintiffs' counsel are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm further objects to the definition of "WATER INITIATIVE" on the grounds that it disputes Plaintiffs' adoption of a term to which State Farm specifically objected to Special Interrogatory Nos. 27 and 28 in *Jacobs et al. v. State Farm*, No. 22STCV23445, including in its Further Response to that Interrogatory. State Farm further objects to this definition in that it is overly broad in time and scope to the extent it attempts to define as relevant and responsive materials related to efforts that allegedly occurred 5 years prior to Plaintiffs' date of loss on October 11, 2025, and as such have absolutely no bearing on Plaintiffs' claim. State Farm further states that its responses to Further Responses to Special Interrogatory Nos. 27 and 28 in the aforementioned *Jacobs* matter speak for themselves as to their source and content.

In addition, State Farm objects to the definition of "WATER INITIATIVE" to the extent that it attempts to define as relevant and responsive materials related to efforts that allegedly occurred years prior to Plaintiffs' date of loss on October 7, 2025 that were produced in *Savas v. State Farm General Insurance Company, Los Angeles Superior Court*, No. 21STCV0286, and as such have absolutely no bearing on Plaintiffs' claim. State Farm further states that its response to Request for Production No. 74 in the aforementioned *Savas* matter speaks for itself as to its source and content, but notes that the version cited in this definition is not the operative version, which is subject to the protective order in that case.

State Farm further objects to this definition to the extent this is predicated on assumptions made by Plaintiffs or their counsel herein, and to the extent that Plaintiffs purport to suggest that it would be in any way problematic to have efforts "to improve quality, diligence, evaluation of facts, accurate application of coverage, accurate documentation of claim files, efficiency, consistency, accuracy, paying what is owed, and/or customer satisfaction" in connection with claim handling for water loss claims.

21. State Farm objects to the definition of "WATER LOSSES" as vague, ambiguous, overbroad and disproportionate to the needs of the case. This case is about a single water loss involving a pipe leak, and State Farm objects to this objection on the ground that it expressly seeks to purport to define as relevant information related to other types water loss claims wholly unrelated to the issues in this case—by the express inclusion of the following terms: "losses involving escape of water or steam from a heating, air conditioning or automatic fire protection system; household appliance; or plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture". State Farm further objects to this definition to the extent it diverges from how State Farm defines and/or catalogues claims involving water losses. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

22. State Farm objects to "definition" DD. State Farm repeats and incorporated by reference its objections to the definition of "DOCUMENT" or "DOCUMENTS," as if fully set forth herein. State Farm objects to "definition" DD on the grounds that it is not a definition, though styled as such, but rather an Instruction.

State Farm objects to Definition/Instruction DD as vague, ambiguous, overbroad and disproportionate to the needs of the case. This case is about a single

water loss involving a pipe leak, and State Farm objects to this objection on the ground that it expressly seeks to purport to define as relevant information related to other types water loss claims wholly unrelated to the issues in this case – by the express inclusion of the following terms: "materials applicable to California claims and/or policies whether or not applicable to claims/policies in other states." State Farm objects to this Definition/Instruction to the extent it purports to define as relevant information related to other, unrelated claims, and/or to seek to discover information related to other claims, which are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This Definition/Instruction is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Further, the policy contract at issue in this case speaks for itself and information related to other policies has no bearing in this action; as such, State Farm objects to this definition/instruction to the extent Plaintiffs purport to suggest that information related to other policies has any bearing on this case and/or Plaintiffs' claim. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

23. State Farm objects to "definition" EE on the grounds that it is not a definition, though styled as such, but rather an Instruction. State Farm objects to Plaintiffs' Definition/Instruction insofar as it directs State Farm to undertake efforts

that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information and describe the same in accordance with the Federal Rules of Civil Procedure and substantive law.

**RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO (2)**

**Requests relating to Training and Guidelines**

**REQUEST FOR PRODUCTION NO. 17:**

YOUR GUIDANCE RELATED TO INVESTIGATION and/or ADJUSTING of WATER LOSSES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATED TO," and "WATER LOSSES," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and WATER LOSSES), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such

information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate

protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 18:**

GUIDANCE YOU received from any CONSULTANT RELATED TO the INVESTIGATION and/or ADJUSTING of WATER LOSSES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

State Farm repeats its objections to the terms “GUIDANCE,” “YOU,” “CONSULTANT,” “RELATED TO,” and “WATER LOSSES,” as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and WATER LOSSES), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm’s procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have

not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate

protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 19:**

YOUR GUIDANCE RELATING TO application of the CONTINUOUS OR REPEATED SEEPAGE EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATING TO," and "CONTINUOUS OR REPEATED LEAKAGE OR SEEPAGE," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and CONTINUOUS OR REPEATED LEAKAGE OR SEEPAGE), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks

confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant

confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 20:**

YOUR GUIDANCE RELATING TO application of the BELOW THE SURFACE OF THE GROUND EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

State Farm repeats its objections to the terms “YOUR,” “GUIDANCE,” “RELATING TO,” and “BELOW THE SURFACE OF THE GROUND EXCLUSION,” as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and BELOW THE SURFACE OF THE GROUND EXCLUSION), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm’s procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work

product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of

business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 21:**

YOUR GUIDANCE, after the decision in *Varela v. State Farm General Insurance Company*, 555 F.Supp.3d 983 (E.D. Cal. 2021), RELATING TO application of the BELOW THE SURFACE OF THE GROUND EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATING TO," and "BELOW THE SURFACE OF THE GROUND EXCLUSION," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms GUIDANCE and BELOW THE SURFACE OF THE GROUND EXCLUSION) and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor

proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 22:**

YOUR GUIDANCE RELATED TO the reduction of CLAIM SIZE ("CLAIM SIZE" means the potential or actual indemnity YOU pay on a claim) thresholds for additional review or reinspection of WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATING TO," "YOU," and "WATER LOSS," as if fully set forth herein.

State Farm objects to the newly-defined term "CLAIM SIZE" on the grounds that it is vague and ambiguous with regard to the terms "potential or actual indemnity," and objects to the extent this definition is predicated on assumptions made by Plaintiffs or their counsel herein. State Farm objects to this definition to the extent that it purports to define as relevant issues relating to other claims.

State Farm objects to this request on the grounds that the phrase “thresholds for additional review or reinspections” is vague and ambiguous. State Farm objects to this request on the grounds that it is overly broad in scope due to the broad definitions of the terms “GUIDANCE” and “WATER LOSS”), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This case involves only Plaintiffs’ October 2025 water loss claims with State Farm, and information regarding what may have transpired in other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm’s procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 23:**

YOUR GUIDANCE RELATING TO coding of WATER LOSSES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

State Farm repeats its objections to the terms “YOUR,” “GUIDANCE,”

"RELATING TO," and "WATER LOSSES," as if fully set forth herein. State Farm objects to this request on the grounds that the term "coding" is vague, ambiguous and undefined. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms GUIDANCE and WATER LOSSES), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm

will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**Requests Relating to State Farm WATER LOSS-Related Initiatives**

**<u>REQUEST FOR PRODUCTION NO. 24:</u>**

All DOCUMENTS RELATED TO the WATER INITIATIVE INCLUDING

a. YOUR WATER INITIATIVE-related COMMUNICATIONS

b. WATER INITIATIVE Power Point(s) or other presentation materials

c. WATER INITIATIVE executive summaries

d. Water Forum Power Point(s) or other presentation materials

e. California Fire Claims Discussion Resources

f. Claim Folder Claim Level – Claim Details – all topics

g. Quality Claim Handling Expectations

h. Homeowners Policy, Section I Property, Coverage Model

i. California Fire Claims Discussion Agenda

j. Water Forum Coverage Mini Session

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 24:</u>**

State Farm repeats its objections to the terms “YOUR,” “DOCUMENTS,” “RELATED TO,” “COMMUNICATIONS,” and “WATER INITIATIVE,” as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs or their counsel are quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024. State Farm objects to this request on the grounds that the term

"WATER INITIATIVE" as used herein is the one of many iterations of this term authored by Plaintiffs' counsel based on the use of information he has seen in other, unrelated cases and/or predicated upon assumptions made by Plaintiffs' counsel in connection therewith.

State Farm objects to this request on the grounds that the terms "other presentation materials," 'executive summaries," and "all topics," among others, are vague and ambiguous. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the term WATER INITIATIVE and the use of the terms "All," and "INCLUDING") time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm states that consistent with its commitment to its

policyholders, the Fire Claims Department ("Fire Claims"), which provides claims services to State Farm and its affiliates, regularly works to ensure quality claim handling on all types of fire policy claims, including water losses. Quality claim handling means diligently investigating each claim, evaluating the facts, applying coverage, accurately documenting the file, and paying what is owed. State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will not produce materials that pre-date this timeframe or that were not available in the relevant timeframe on the grounds that those materials are not relevant, nor proportional to the needs of this case.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by

the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**<u>REQUEST FOR PRODUCTION NO. 25:</u>**

All DOCUMENTS containing and/or sufficient to describe YOUR Western Market Proximity Fire Claims Quality Plan and/or Fire Quality Plan.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 25:</u>**

State Farm repeats its objections to the terms "DOCUMENTS" and "YOUR" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms DOCUMENTS and the use of the term "All") and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects

to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm states that it will produce, subject to the protective order entered in this case, the relevant portion(s) of the Fire Quality Plan in effect during the period claim handling, namely from the date of loss to the end of claim handling. With regard to the "Western Market Proximity Fire Claims Quality Plan," State Farm states, upon information and belief, that Plaintiffs or their Counsel are referencing a draft document produced in error in another case subject to protective order, and that document was not finalized.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS containing and/or sufficient to describe YOUR "Water Plan".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

State Farm repeats its objections to the terms "DOCUMENTS" and "YOUR" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in other, unrelated cases.

State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms DOCUMENTS and the use of the term "All") and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS containing and/or sufficient to describe YOUR "Excellence in Operations" model or plan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

State Farm repeats its objections to the terms "DOCUMENTS" and "YOUR" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm

pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in other, unrelated cases.

State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms DOCUMENTS and the use of the term "All") and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS containing and/or sufficient to describe YOUR "Water Quality Strategy" or "Quality Water Strategy".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

State Farm repeats its objections to the terms "DOCUMENTS" and "YOUR"

as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in other, unrelated cases.

State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms DOCUMENTS and the use of the term "All") and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS containing and/or sufficient to describe YOUR "Quality Water Plan" or "Water Quality Plan".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

State Farm repeats its objections to the terms "DOCUMENTS" and "YOUR" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in other, unrelated cases.

State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms DOCUMENTS and the use of the term "All") and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to

the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS containing and/or sufficient to describe YOUR "Fire Model Enhancement".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

State Farm repeats its objections to the terms "DOCUMENTS" and "YOUR" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in other, unrelated cases.

State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms DOCUMENTS and the use of the term "All") and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor

proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS containing and/or sufficient to describe YOUR "Fire Model — Property Segment Enhancement: California Water Claim Guidelines".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

State Farm repeats its objections to the terms "DOCUMENTS" and "YOUR" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in other, unrelated cases.

State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms DOCUMENTS and the use of the term "All") and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different

ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS containing and/or sufficient to describe YOUR "Enterprise Quality Plan".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," and "YOUR," as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in other, unrelated cases.

State Farm objects to this request on the grounds that the term "Enterprise Quality Plan" is not a defined term within State Farm but rather appears to have

been created and/or predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS containing and/or sufficient to describe YOUR "Water Focus".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," and "YOUR," as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in

other, unrelated cases.

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS containing and/or sufficient to describe YOUR "Claim Review Team".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," and "YOUR," as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in

other, unrelated cases.

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS containing and/or sufficient to describe YOUR "Exposure Management Program".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," and "YOUR," as if fully set forth herein. State Farm objects to this request on the grounds that the term "Exposure Management Program" is not a defined term within State Farm but rather appears to have been created and/or predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel.

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues

involved in this lawsuit and is potentially unduly burdensome. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS containing and/or sufficient to describe YOUR "fire claims information channel," as referenced at Bates STICJ1980. (All such identified Bates ranges are from documents produced in the matter, *James Stickney, et al. v. State Farm General Insurance Company et al.*; Superior Court of California, County of Orange, Case No.: 30-2021-01231896-CU-IC-CXC. Further references to Bates starting with STICJ refer to the Stickney matter.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," and "YOUR," as if fully set forth herein. State Farm objects to this request on the grounds that Plaintiffs are seeking discovery regarding documents produced in contravention of the protective order in Orange County Superior Court Case No. 30-2021-01231896-CU-IC-CXC *Stickney v. State Farm General Insurance Company*, et. al. (the "*Stickney* action") which counsel understood to have been produced improperly to Plaintiffs' counsel in another case, which Plaintiffs' counsel subsequently claimed to have deleted. State Farm repeats its concern regarding Plaintiffs' counsel's abuse of protective orders in other cases, and continued use years after supposedly deleting these documents.

State Farm objects to the term "containing" on the grounds that it is vague and ambiguous. State Farm objects to this request on the grounds that it is overly

broad in scope (types of claims and insurance coverage, and by the request for "DOCUMENTS containing or identified as 'fire claims information channel'"), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS containing and/or sufficient to describe YOUR water forum review, reference Bates STICJ1951, INLUDING [sic] all DOCUMENTS YOU agreed to produce in YOUR Response to Request for Production 79, p.19:13-16, in the matter*, Savas v. State Farm General Insurance Company*, Los Angeles Superior Court, No. 21STCV0286, in which YOU stated "State Farm will produce DOCUMENTS representative of its efforts to promote quality claim handling on water loss claims in California during the relevant time frame, including DOCUMENTS referencing the term 'Water Forum,' subject to the protective order that has been entered in this matter."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR" and "YOU" as if fully set forth herein. State Farm objects to this request on the grounds that Plaintiffs are seeking discovery regarding

documents produced in contravention of the protective order in Orange County Superior Court Case No. 30-2021-01231896-CU-IC-CXC *Stickney v. State Farm General Insurance Company, et. al.* (the "*Stickney* action") which counsel understood to have been produced improperly to Plaintiffs' counsel in another case, which Plaintiffs' counsel subsequently claimed to have deleted. State Farm repeats its concern regarding Plaintiffs' counsel's abuse of protective orders in other cases, and continued use years after supposedly deleting these documents. State Farm further states that its response to Request for Production No. 79 in the aforementioned *Savas* matter speaks for itself as to its source and content, rather than the characterizations of same by Plaintiffs herein, but notes that the version cited in Request No. 37 is not the operative version, which is subject to the protective order in that case.

State Farm further objects to this request on the grounds that this request seeks materials from years prior to the time at which the Claim Specialist and Team Manager on this file were handling claims on behalf of State Farm and as such, this request is not proportional to the needs of this case. This case involves only Plaintiffs' insurance claims with State Farm, and materials potentially relevant to other claims may be unrelated to the specific facts and issues in this case, and as such, this request is patently overbroad and unduly burdensome because it may be relevant to different Policies, coverages, terms, and endorsements. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. State Farm objects to this request to the extent it seeks confidential business information. State Farm additionally objects to the extent the requested information

ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm states that it has already committed to produce, in response to other requests herein, materials that are relevant and proportional to the needs of this case that related to the issues in this case. To that end, State Farm has agreed to produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to

generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS used in any presentation, or distributed to any participants before, during or after, YOUR "California Fire Claims Discussion" sessions as set forth on Bates STICJ1951.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "YOU" as if fully set forth herein. State Farm objects to this request on the grounds that Plaintiffs are seeking discovery regarding documents produced in contravention of the protective order in Orange County Superior Court Case No. 30-2021-01231896-CU-IC-CXC *Stickney v. State Farm General Insurance Company, et. al.* (the "*Stickney* action") which counsel understood to have been produced improperly in this action and which Plaintiffs' counsel subsequently claimed to have deleted.

State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "all" and "any"), and time (not limited by the period of time when this claim was

handled). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures, training, refreshers, and ongoing internal conversations regarding water claims are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm states that it has already committed to produce, in response to other requests herein, materials that are relevant and proportional to the needs of this case that related to the issues in this case. To that end, State Farm has agreed to produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant

to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS reflecting the contents of YOUR "California Fire Claims Discussion" sessions as set forth on Bates STICJ1951.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "YOU" as if fully set forth herein. State Farm objects to this request on the grounds that Plaintiffs are seeking discovery regarding documents produced in contravention of the protective order in Orange County Superior Court Case No. 30-2021-01231896-CU-IC-CXC *Stickney v. State Farm General Insurance Company, et. al.* (the "*Stickney* action") which counsel understood to have been produced improperly in this action and which Plaintiffs' counsel

subsequently claimed to have deleted.

State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "all" and "any"), and time (not limited by the period of time when this claim was handled). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures, training, refreshers, and ongoing internal conversations regarding water claims are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm states that it has already committed to produce, in response to other requests herein, materials that are relevant and proportional to the needs of this case that related to the issues in this case. To that end, State Farm has agreed to produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a

protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS used in any presentation, or distributed to any participants before, during or after, YOUR "California Fire Claims Discussion" sessions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "YOU" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential,

proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in other, unrelated cases.

State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "all" and "any"), and time (not limited by the period of time when this claim was handled). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures, training, refreshers, and ongoing internal conversations regarding water claims are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm states that it has already committed to produce, in response to other requests herein, materials that are relevant and proportional to the needs of this case that related to the issues in this case. To that end, State Farm has agreed to produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along

with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS containing and/or sufficient to describe YOUR "California Fire Claims Discussion" sessions INCLUDING All DOCUMENTS used in any presentation, or distributed to any participants before, during or after, YOUR "California Fire Claims Discussion" sessions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "YOU" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in other, unrelated cases.

State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "all" and "any"), and time (not limited by the period of time when this claim was handled). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures, training, refreshers, and ongoing internal conversations regarding water claims are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm states that it has already committed to produce, in response to other requests herein, materials that are relevant and proportional to the needs of this case that related to the issues in this case. To that end, State Farm has agreed to produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant

confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS containing and/or sufficient to describe "Fire State Model - Property Segment Enhancement - Water Claims".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

State Farm repeats its objections to the term "DOCUMENTS" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms DOCUMENTS and the use of the term "All") and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to

the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS provided to YOU by the "consultant" referred to at Bates STICJ1951, relating to YOUR INVESTIGATION and/or ADJUSTING of WATER LOSSES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOU," "YOUR," and "WATER LOSSES" as if fully set forth herein. State Farm also incorporates by reference its objection to the term "CONSULTANT" to the extent Plaintiffs intended to include the capitalized defined term herein, as if fully set forth herein.

State Farm objects to this request on the grounds that Plaintiffs are seeking discovery regarding documents produced in contravention of the protective order in Orange County Superior Court Case No. 30-2021-01231896-CU-IC-CXC *Stickney v. State Farm General Insurance Company, et. al.* (the "*Stickney* action") which counsel understood to have been produced improperly in this action and which Plaintiffs' counsel subsequently claimed to have deleted.

State Farm objects to this request as it is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. State Farm objects

to the request as vague and ambiguous, specifically with respect to the use of the term "consultant". State Farm further objects to this request, as it is overly broad in scope (not limited to the type of insurance coverage involved in this lawsuit, not limited to a reasonable period of time, and not limited to the issues involved in this litigation) and is potentially unduly burdensome. State Farm also objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Further,

State Farm objects to this request because its scope is broad enough to potentially implicate information that is protected by the attorney/client or work product privileges. Finally, the document referenced by Plaintiffs' herein and any references to the word "consultant" on that document would have absolutely no bearing on the facts and circumstances relating to Plaintiffs' claims given that the individuals who worked on Plaintiffs' October 2025 claim were not employed by State Farm at the time the document referenced herein was prepared and as such, would not have been exposed to the document referenced in this request. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**Requests Relating to Reporting of Metrics/Goals and Financial Impact of State Farm Initiatives Relating to Water Losses**

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS containing and/or sufficient to describe any tracking YOU, or any CONSULTANT, conducted, RELATED TO the FINANCIAL IMPACT of any GUIDANCE from any source RELATED TO YOUR INVESTIGATION and/or ADJUSTING of WATER LOSS CLAIMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of

"DOCUMENTS," "YOU," "CONSULTANT", "RELATED TO," "FINANCIAL IMPACT," GUIDANCE" and "WATER LOSS CLAIMS", as if fully set forth herein. State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "tracking." State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled by seeking information unrestricted in time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 claim and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS containing and/or sufficient to describe any tracking YOU, or any CONSULTANT, conducted RELATED TO the FINANCIAL IMPACT of the WATER INITIATIVE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOU," "CONSULTANT", "RELATED TO," "FINANCIAL

IMPACT," and "WATER INITIATIVE", as if fully set forth herein. State Farm objects to this request as it is vague and ambiguous with respect to the use of the term "tracking." State Farm further objects to this request on the grounds that it is overly broad in scope (by use of the terms "all" and "any" and the overly broad definition crafted by Plaintiffs as to "WATER INITIATIVE"), time (not limited by the period of time when this claim was handled by seeking information unrestricted in time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 claim and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS containing and/or sufficient to describe any tracking YOU, or any CONSULTANT, conducted, RELATED TO the FINANCIAL IMPACT of YOUR Western Market Proximity Fire Claims Quality Plan and/or Fire Quality Plan.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of

"DOCUMENTS," "YOU," "CONSULTANT", "RELATED TO," and "FINANCIAL IMPACT", as if fully set forth herein. State Farm objects to this request as it is vague and ambiguous with respect to the use of the term "tracking." State Farm objects to this request to the extent that Plaintiffs are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders or to the extent this request is predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel from the use of documents produced in other, unrelated cases. State Farm further objects to this request on the grounds that it is overly broad in scope (by use of the terms "all" and "any" not limited by types of claim or insurance coverage), time (not limited by the period of time when this claim was handled by seeking information unrestricted in time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 claim and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS containing and/or sufficient to describe any tracking YOU, or any CONSULTANT, conducted, RELATED TO the FINANCIAL IMPACT of any GUIDANCE RELATED TO YOUR application of the CONTINUOUS OR REPEATED SEEPAGE EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOU," "CONSULTANT", "RELATED TO," "FINANCIAL IMPACT," "GUIDANCE," "YOUR," and "CONTINUOUS OR REPEATED SEEPAGE EXCLUSION", as if fully set forth herein. State Farm objects to this request as it is vague and ambiguous with respect to the use of the term "tracking." State Farm further objects to this request on the grounds that it is overly broad in scope (by use of the terms "all" and "any" not limited by types of claim or insurance coverage), time (not limited by the period of time when this claim was handled by seeking information unrestricted in time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 claim and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State

Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS containing any tracking YOU, or any CONSULTANT, conducted, RELATED TO the FINANCIAL IMPACT of any GUIDANCE RELATED TO YOUR application of the BELOW THE SURFACE OF THE GROUND EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOU," "CONSULTANT", "RELATED TO," "FINANCIAL IMPACT," "GUIDANCE," "YOUR," and "BELOW THE SURFACE OF THE GROUND EXCLUSION", as if fully set forth herein. State Farm objects to this request as it is vague and ambiguous with respect to the use of the term "tracking." State Farm further objects to this request on the grounds that it is overly broad in scope (by use of the terms "all" and "any" not limited by types of claim or insurance coverage), time (not limited by the period of time when this claim was handled by seeking information unrestricted in time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 claim and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the

extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 49:**

DOCUMENTS sufficient to show YOUR monthly and rolling 12-month count for reported WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," and "WATER LOSS", as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "monthly and rolling 12-month count" and "reported." State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), and time (not limited by the period of time when this claim was handled by seeking information for an unrestricted/unspecified period of time) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at

issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 50:**

DOCUMENTS sufficient to show YOUR monthly and rolling 12-month count for paid WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," and "WATER LOSS", as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach

of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the term "monthly and rolling 12-month count." State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), and time (not limited by the period of time when this claim was handled by seeking information for an unrestricted/unspecified period of time) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 51:**

DOCUMENTS sufficient to show YOUR monthly and rolling 12-month count for denied WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," and "WATER LOSS", as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "monthly and rolling 12-month count" and "denied." State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), and time (not limited by the period of time when this claim was handled by seeking information for an unrestricted/unspecified period of time) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or

defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 52:**

DOCUMENTS sufficient to show YOUR monthly and rolling 12-month count for closed-without-payment WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," and "WATER LOSS", as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "monthly and rolling 12-month count." State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims

and insurance coverage), and time (not limited by the period of time when this claim was handled by seeking information for an unrestricted/unspecified period of time) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 53:**

DOCUMENTS sufficient to show YOUR SEVERITY goals and/or targets for WATER LOSS claims for each of the years 2015 to 2025, and any subset of each year, for example, monthly or weekly analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "SEVERITY" and "WATER LOSS", as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "SEVERITY goals and/or targets" and "subset of each year, for example, monthly or weekly analyses." State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled by seeking information from 2015-2025 for an October 2025 claim) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and, as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no

nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 54:**

DOCUMENTS sufficient to show YOUR SEVERITY analyses, INCLUDING trend analyses, for WATER LOSS claims for each of the years 2015 to 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "SEVERITY" and "WATER LOSS", as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "SEVERITY analyses," "trend analysis," subset of each year, for example, monthly or weekly analyses." State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance

coverage), time (not limited by the period of time when this claim was handled by seeking information from 2015-2025 for an October 2025 claim) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and, as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 55:**

DOCUMENTS sufficient to show YOUR loss ratio goals and/or targets for WATER LOSS claims for each of the years 2015 to 2025, and any subset of each year, for example, monthly or weekly analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," and "WATER LOSS", as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "loss ratio goals and/or targets" and "subset of each year, for example, monthly or weekly analyses." State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled by seeking information from 2015-2025 for an October 2025 claim) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and, as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no

nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 56:**

DOCUMENTS sufficient to show YOUR loss ratio analyses, INCLUDING trend analysis, for WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," and "WATER LOSS", as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "loss ratio analyses," and "trend analysis." State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by any period of time) and geography (not limited to California). This case involves only Plaintiffs' October 2025

insurance claim with State Farm and, as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 57:**

DOCUMENTS sufficient to show YOUR Claim Data Analytics "monthly water trends".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "YOUR," as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs'

or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the term "Claims Data Analytics 'monthly water trends.' State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by any period of time) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and, as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request

to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 58:**

DOCUMENTS sufficient to show YOUR Claim Data Analytics "monthly update on our YTD Water estimate trends" INCLUDING All DOCUMENTS comparing State Farm to industry results.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "YOUR," as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "Claims Data Analytics 'monthly update you our YTD Water Estimate trends,'" "comparing" and "industry results" State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by any period of time) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and, as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is

needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 59:**

DOCUMENTS containing YOUR Claim Data Analytics findings for WATER LOSS trends.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "YOUR," as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the

possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "Claims Data Analytics findings" and "WATER LOSS trends." State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by any period of time) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and, as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 60:**

DOCUMENTS sufficient to show YOUR metrics and/or goals pertaining to the each of the following:

a. WATER INITIATIVE
b. Water forum
c. Western Proximity Fire Claims Quality Plan and/or Fire Quality Plan
d. Excellence in operations
e. Fire Model Enhancement
f. Fire Model Property Segment Enhancement
g. Enterprise Quality Plan
h. Water Quality Strategy or Quality Water Strategy
i. Quality Water Plan or Water Quality Plan
j. Water focus

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," and "WATER INITIATIVE" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "metrics" or "goals." State Farm further objects to this request to the extent duplicative or cumulative of prior requests. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by any period of time) and geography (not

limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and, as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 61:**

DOCUMENTS sufficient to show YOUR reporting, findings, and/or conclusions as to YOUR performance compared to metrics and/or goals established for each of the following:

a. WATER INITIATIVE

b. Water forum

c. Western Proximity Fire Claims Quality Plan and/or Fire Quality Plan

d. Excellence in operations

e. Fire Model Enhancement

f. Fire Model Property Segment Enhancement

g. Enterprise Quality Plan

h. Water Quality Strategy or Quality Water Strategy

i. Quality Water Plan or Water Quality Plan

j. Water focus

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," and "WATER INITIATIVE" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "reporting." "findings," "conclusions," "YOUR performance," "metrics and/or goals established." State Farm further objects to this request to the extent duplicative or cumulative of prior requests. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by any period of time) and geography (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and, as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any

party nor proportional to the needs of the case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 62:**

All DOCUMENTS containing or describing YOUR "Consulting Services Directed Reinspection" results for WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," and "WATER LOSS" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such

documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request on the grounds the term "'Consulting Services Directed Reinspection' results" is vague and ambiguous. State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "All," "containing" and "describing"), time (not limited by the period of time when this claim was handled by seeking information for an unrestricted period of time), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks information regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this

case.

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS containing or describing YOUR "Open Assignment Reviews" RELATED TO WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "RELATED TO" and "WATER LOSS" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "All," "containing" or "describing"), time (not limited by the period of time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The

investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS containing or describing YOUR "Baseline File Reviews" RELATED TO WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "RELATED TO," and "WATER LOSS" as if fully set forth herein. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "All," "containing" or "describing"), time (not limited by the period of time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and

irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 65:**

All DOCUMENTS containing or describing findings of YOUR Claim Review Team, RELATED TO WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "RELATED TO" and "WATER LOSS" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective

orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to the term "findings" on the grounds that it is vague and ambiguous. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "All," "containing" or "describing"), time (not limited by the period of time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 66:**

All DOCUMENTS containing or describing findings YOUR quarterly "water specific file reviews".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "RELATED TO" and "WATER LOSS" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to the term "findings" on the grounds that it is vague and ambiguous. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "All," "containing" or "describing"), time (not limited by the period of time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor

disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 67:**

All DOCUMENTS containing or describing findings of YOUR "execution" team and/or department RELATED TO WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "RELATED TO" and "WATER LOSS" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to the term "findings" on the grounds that it is vague and ambiguous. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the

terms “All,” “containing” or “describing”), time (not limited by the period of time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs’ October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner’s claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs’ counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 68:**

All DOCUMENTS containing or describing findings of YOUR “execution” team or office relating to WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "RELATED TO" and "WATER LOSS" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to the term "findings" on the grounds that it is vague and ambiguous. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "All," "containing" or "describing"), time (not limited by the period of time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this

case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 69:**

All DOCUMENTS containing or describing YOUR "California Water Message Points".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "YOUR," as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "All," "containing" or "describing"), time (not limited by the period of time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues

involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 70:**

All DOCUMENTS containing or describing the findings of YOUR bi-weekly meeting including VPOs, Claim Managers, Data Analytics, and/or Consulting Services for the purpose of analyzing and/or reporting YOUR WATER LOSS claim trends.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "RELATED TO" and "WATER LOSS" as if fully set

forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to the terms "findings," "purpose of analyzing and/or reporting," and "claim trends" on the grounds that it is vague and ambiguous. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "All," "containing" or "describing"), time (not limited by the period of time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions

made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 71:**

All DOCUMENTS containing or describing YOUR monthly meeting including VPOs, Claim Managers, Data Analytics, and/or Consulting Services for the purpose of analyzing and/or reporting WATER LOSS claim trends to YOUR senior management.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "RELATED TO" and "WATER LOSS" as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to the terms "monthly meeting," "purpose of analyzing and/or reporting," and "senior management" on the grounds that it is vague and ambiguous. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms "All," "containing" or "describing"), time (not limited by the period of time for an October 2025 claim), and geographic area (not limited to California). This

case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 72:**

All DOCUMENTS containing or describing YOUR Monthly Claim Accuracy Review(s) (MCAR) INCLUDING Quality Targets.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," and "YOUR", as if fully set forth herein. State Farm objects to

this request on the grounds that the phrase "Monthly Claim Accuracy Review(s) (MCAR)" is not known to State Farm but rather appears to have been created and/or predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm objects to this request on the grounds that the term "Quality Targets" are vague and ambiguous. State Farm further objects to this request on the grounds that it is overly broad in scope (the use of the terms "All DOCUMENTS," "containing," "describing," "and INCLUDING"), time (not limited by the period of time when this claim was handled by seeking information unrestricted in time), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not

established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 73:**

All DOCUMENTS containing or describing YOUR Operation(s) Account Reviews, INCLUDING any targets and/or results of YOUR Operations(s) Account Reviews.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," and "YOUR", as if fully set forth herein. State Farm objects to this request on the grounds that the phrases "Operation(s) Account Reviews" and "Operations(s) Account Reviews" are not known to State Farm but rather appears to have been created and/or predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel.

State Farm objects to this request on the grounds that the terms "targets and/or results" are vague and ambiguous. State Farm further objects to this request on the grounds that it is overly broad in scope (the use of the terms "All DOCUMENTS," "containing," "describing," "and INCLUDING"), time (not limited by the period of time when this claim was handled by seeking information unrestricted in time), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and

evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 74:**

All DOCUMENTS containing or describing the results of YOUR Fire Property Trend file review.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "YOUR," as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to the terms "results" and "file review" on the grounds that it is vague and ambiguous. State Farm further objects to this request on the grounds

that it is overly broad in scope (types of claims and insurance coverage and due to the use of the terms “All,” “containing” or “describing”), time (not limited by the period of time for an October 2025 claim), and geographic area (not limited to California). This case involves only Plaintiffs’ October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner’s claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs’ counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 75:**

All DOCUMENTS containing or describing YOUR audits of WATER LOSS claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," and "YOUR", as if fully set forth herein. State Farm objects to this request on the grounds that the term "audits" is vague and ambiguous. State Farm further objects to this request on the grounds that it is overly broad in scope (the use of the terms "All DOCUMENTS," "containing," "describing," "and INCLUDING"), time (not limited by the period of time when this claim was handled by seeking information unrestricted in time), and geographic area (not limited to California). This case involves only Plaintiffs' October 2025 insurance claim with State Farm and as such, this request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the actions, as each claim is handled on its own individual facts. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request to the extent it purports to be predicated upon assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm. Plaintiffs have not established that such information is

necessary to a fair adjudication of this case.

**Pattern Requests**

**<u>REQUEST FOR PRODUCTION NO. 76:</u>**

DOCUMENTS sufficient to show the number of WATER LOSS claims from January 1, 2015, to present YOU DENIED in whole or in part, based on the BELOW THE SURFACE OF THE GROUND EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 76:</u>**

State Farm incorporates by reference its objections to the terms "WATER LOSS," 'YOU," "DENIED," "BELOW THE SURFACE OF THE GROUND EXCLUSION," as if fully set forth herein. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled by seeking information more than ten years prior to the date of loss to the present), and geographic area (not limited to California). This case involves only Plaintiffs' insurance claims with State Farm, and information related to other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters

outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm objects to this request to the extent it seeks confidential business information. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client privilege and work product doctrines. In addition to lack of relevance, State Farm objects to this request as unduly burdensome, oppressive, and not proportional to the needs of this case because the information requested is not readily available and cannot be ascertained through an electronic search. Rather, it would require a manual file-by-file review, which State Farm objects to undertaking for the reasons stated. Plaintiffs has not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 77:**

DOCUMENTS sufficient to show the number of WATER LOSS claims from January 1, 2015, to present YOU DENIED in whole or in part, based on the CONTINUOUS OR REPEATED SEEPAGE AND LEAKAGE EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

State Farm incorporates by reference its objections to the terms “WATER LOSS,” ‘YOU,” “DENIED,” “CONTINUOUS OR REPEATED SEEPAGE AND LEAKAGE EXCLUSION,” as if fully set forth herein. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled by seeking information more than ten years prior to the date of loss to the

present), and geographic area (not limited to California). This case involves only Plaintiffs' insurance claims with State Farm, and information related to other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).State Farm objects to this request to the extent it seeks confidential business information. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client privilege and work product doctrines. In addition to lack of relevance, State Farm objects to this request as unduly burdensome, oppressive, and not proportional to the needs of this case because the information requested is not readily available and cannot be ascertained through an electronic search. Rather, it would require a manual file-by-file review, which State Farm objects to undertaking for the reasons stated. Plaintiff have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 78:**

The complete CLAIM LOG and/or FILE HISTORY for each WATER LOSS claim from January 1, 2015, to present YOU DENIED in whole or in part, based on the BELOW THE SURFACE OF THE GROUND EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

State Farm incorporates by reference its objections to the terms "CLAIM LOG," "FILE HISTORY," WATER LOSS," 'YOU," "DENIED," "BELOW THE SURFACE OF THE GROUND EXCLUSION," as if fully set forth herein. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage due to the overly broad definition of "WATER LOSS" and due to the use of the terms "each . . . claim from January 1, 2015, to the present"), time (not limited by the period of time when this claim was handled by seeking information for more than ten years prior to the date of loss for Plaintiffs' claim), and geographic area (not limited to California). This case involves only Plaintiffs' insurance October 2025 claim with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this

lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003). State Farm objects to this request to the extent it seeks confidential business information. State Farm additionally objects because the requested information ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client privilege and work product doctrines. In addition to lack of relevance, State Farm objects to this request as unduly burdensome, oppressive, and not proportional to the needs of this case because the information requested is not readily available and cannot be ascertained through an electronic search. Rather, it would require a manual file-by-file review, which State Farm objects to undertaking for the reasons stated. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 79:**

The complete CLAIM LOG and/or FILE HISTORY for each WATER LOSS claim from January 1, 2015, to the present YOU DENIED in whole or in part, based on the CONTINUOUS OR REPEATED SEEPAGE AND LEAKAGE EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

State Farm incorporates by reference its objections to the terms “CLAIM LOG,” “FILE HISTORY,” WATER LOSS,” ‘YOU,” “DENIED,” “CONTINUOUS OR REPEATED SEEPAGE AND LEAKAGE,” as if fully set forth herein. State

Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage due to the overly broad definition of "WATER LOSS" and due to the use of the terms "each . . . claim from January 1, 2015, to the present"), time (not limited by the period of time when this claim was handled by seeking information for more than ten years prior to the date of loss for Plaintiffs' claim), and geographic area (not limited to California). This case involves only Plaintiffs' insurance October 2025 claim with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003). State Farm objects to this request to the extent it seeks confidential business information. State Farm additionally objects because the requested information ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client

privilege and work product doctrines. In addition to lack of relevance, State Farm objects to this request as unduly burdensome, oppressive, and not proportional to the needs of this case because the information requested is not readily available and cannot be ascertained through an electronic search. Rather, it would require a manual file-by-file review, which State Farm objects to undertaking for the reasons stated. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 80:**

Each denial letter for each WATER LOSS claim from January 1, 2015, to present YOU DENIED in whole or in part, based on the BELOW THE SURFACE OF THE GROUND EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

State Farm incorporates by reference its objections to the terms " WATER LOSS," 'YOU," "DENIED," "BEYOND THE SURFACE OF THE GROUND EXCLUSION," as if fully set forth herein. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage due to the overly broad definition of "WATER LOSS" and due to the use of the terms "each . . . claim from January 1, 2015, to the present"), time (not limited by the period of time when this claim was handled by seeking information for more than ten years prior to the date of loss for Plaintiffs' claim), and geographic area (not limited to California). This case involves only Plaintiffs' insurance October 2025 claim with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to

include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm objects to this request to the extent it seeks confidential business information. State Farm additionally objects because the requested information ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client privilege and work product doctrines. In addition to lack of relevance, State Farm objects to this request as unduly burdensome, oppressive, and not proportional to the needs of this case because the information requested is not readily available and cannot be ascertained through an electronic search. Rather, it would require a manual file-by-file review, which State Farm objects to undertaking for the reasons stated. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 81:**

Each denial letter for each WATER LOSS claim from January 1, 2015, to the present YOU DENIED in whole or in part, based on the CONTINUOUS OR

REPEATED SEEPAGE AND LEAKAGE EXCLUSION. (This request does not seek to identify the insured or claimant, and any identifying information should be redacted.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

State Farm incorporates by reference its objections to the terms " WATER LOSS," 'YOU," "DENIED," "CONTINUOUS OR REPEATED SEEPAGE AND LEAKAGE," as if fully set forth herein. State Farm further objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage due to the overly broad definition of "WATER LOSS" and due to the use of the terms "each . . . claim from January 1, 2015, to the present"), time (not limited by the period of time when this claim was handled by seeking information for more than ten years prior to the date of loss for Plaintiffs' claim), and geographic area (not limited to California). This case involves only Plaintiffs' insurance October 2025 claim with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters outside of state of California, and/or unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. See: *State*

*Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). State Farm objects to this request to the extent it seeks confidential business information. State Farm additionally objects because the requested information ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client privilege and work product doctrines. In addition to lack of relevance, State Farm objects to this request as unduly burdensome, oppressive, and not proportional to the needs of this case because the information requested is not readily available and cannot be ascertained through an electronic search. Rather, it would require a manual file-by-file review, which State Farm objects to undertaking for the reasons stated. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**Performance Review/Incentives**

**NOTE: REQUESTS 82-91 ARE LIMITED TO THE PERIOD OF EMPLOYMENT BY YOU OF EACH PERSON LISTED OR DESCRIBED**

**REQUEST FOR PRODUCTION NO. 82:**

GUIDANCE available to the following persons RELATING TO the INVESTIGATION and/or ADJUSTING of WATER LOSS claims:

a. Robin Dixon

b. Ellen Redmond

c. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

State Farm repeats its objections to the terms "GUIDANCE," "RELATED

TO," and "WATER LOSSES," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and WATER LOSSES and due to the basis of subpart (c), which by its express term, seeks information regarding individuals who did not have direct engagement on Plaintiffs' claim), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for

handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 83:**

GUIDANCE available to the following persons to assist them in applying the BELOW THE SURFACE OF THE GROUND EXCLUSION:

d. Robin Dixon

e. Ellen Redmond

f. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

State Farm repeats its objections to the terms "GUIDANCE" and "BELOW THE SURFACE OF THE GROUND EXCLUSION," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and due to the basis of subpart (f), which by its express term, seeks information regarding individuals who did not have direct engagement on Plaintiffs' claim), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above,

State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by

the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 84:**

GUIDANCE available to the following person to assist them in applying the CONTINUOUS SEEPAGE AND LEAKAGE EXCLUSION:

a. Robin Dixon

b. Ellen Redmond

c. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

State Farm repeats its objections to the terms "GUIDANCE," and "CONTINUOUS SEEPAGE AND LEAKAGE EXCLUSION," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definition of GUIDANCE and due to the basis of subpart (c), which by its express term, seeks information regarding individuals who did not have direct engagement on Plaintiffs' claim), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in

this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will

produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 85:**

GUIDANCE available to the following persons to INVESTIGATE and/or ADJUST loss of use and/or additional living expense claims:

d. Robin Dixon

e. Ellen Redmond

f. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

State Farm repeats its objections to the term "GUIDANCE" as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definition of GUIDANCE and due to the basis of subpart (f), which by its express term, seeks information regarding individuals who did not have direct engagement on Plaintiffs' claim), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks

information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, and/or which pertain only to other losses/coverages, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. This claim only involves the investigation and coverage determination for a water loss arising from a pipe leak, not supplemental coverages. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 86:**

DOCUMENTS describing YOUR metrics used to assess or measure job performance of the following persons:

g. Robin Dixon

h. Ellen Redmond

i. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

State Farm repeats its objections to the terms "DOCUMENTS" and "YOUR" as if fully set forth herein. State Farm objects to this request as vague and ambiguous as stated, specifically with respect to the use of the terms "DOCUMENTS describing" and "metrics used to assess or measure job performance". Further, this request is also overbroad in scope (not limited to the

employees who actually handled the subject claim, by the express inclusion of subpart (i) in this request) and time (not limited to a reasonable period of time). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm further objects to this request to the extent it calls for confidential, proprietary business information. Finally, State Farm objects to this request to the extent it unduly invades the privacy rights of defendant's employees. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 87:**

DOCUMENTS describing goals set for the job performance of the following persons:

j. Robin Dixon

k. Ellen Redmond

l. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

State Farm repeats its objections to the term "DOCUMENTS" as if fully set forth herein. State Farm objects to this request as vague and ambiguous as stated, specifically with respect to the use of the terms "DOCUMENTS describing" and "metrics used to assess or measure job performance" Further, this request is also overbroad in scope (not limited to the employees who actually handled the subject claim, by the express inclusion of subpart (l) in this request) and time (not limited to a reasonable period of time). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly

burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm further objects to this request to the extent it calls for confidential, proprietary business information. Finally, State Farm objects to this request to the extent it unduly invades the privacy rights of defendant's employees. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 88:**

YOUR PERFORMANCE REVIEW of the following persons, including but not limited

to any internal disciplinary actions or threatened internal disciplinary actions:

m. Robin Dixon

n. Ellen Redmond

o. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

State Farm repeats its objections to the terms "YOUR" and "PERFORMANCE REVIEW" as if fully set forth herein. State Farm objects to this request on the grounds that it is overbroad in scope (not limited in terms of scope of employment or assignment; not limited to materials pertinent to the specific insurance claims and/or coverages at issue in this litigation, and by its express terms in subpart (o), not limited to the individuals who worked on plaintiffs' claim) and time (not limited to a reasonable period of time). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. This type of inquiry goes beyond what is needed to address the claims and defenses at issue; it is not likely to assist in the

resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this request because it unduly invades the privacy of its employees and is broad enough to potentially implicate information that is confidential, proprietary business information. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 89:**

DOCUMENTS sufficient to describe YOUR POLICIES/PROCEDURES for audits and/or evaluations YOU conducted of claim INVESTIGATION and/or ADJUSTING by the following persons:

p. Robin Dixon

q. Ellen Redmond

r. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

State Farm incorporates by reference its objections to the terms "DOCUMENTS," "YOUR," "POLICIES/PROCEDURES," and "YOU" as if fully set forth herein. State Farm objects to this request on the grounds that the terms "audits and/or evaluations" and "conducted" are vague and ambiguous. State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and by the inclusion of subpart (r), not even limited to the individuals who handled Plaintiffs' claim), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the

issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 90:**

DOCUMENTS sufficient to show any audit or evaluation performed by YOU of any claims INVESTIGATED and/or ADJUSTED by the following persons:

s. Robin Dixon

t. Ellen Redmond

u. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

State Farm repeats its objections to the terms "DOCUMENTS" and "YOU" as if fully set forth herein. State Farm objects to this request as vague and ambiguous, specifically with respect to the use of the terms "audit" and "evaluation". State Farm further objects on the grounds that this request is overbroad in scope (not limited to the specific insurance claim/loss at issue in this litigation and by the inclusion of the broad categories of individuals listed in subpart (u) of this request) and time (not limited to a reasonable period of time). This case involves only Plaintiffs' October 2025 insurance claim with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This

request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. Each claim is handled on its own merits. State Farm objects to this request to the extent it seeks confidential and proprietary business information and/or documents are protected by the self-evaluative privilege. State Farm additionally objects because the requested information ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. Further, due to the overly broad nature of this request, it is also a potential invasion of the attorney-client privilege and the work product doctrines. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 91:**

YOUR QlikSense ASSESSMENT or ASSESSMENT for the following persons - Robin Dixon, Ellen Redmond, and/or Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond report directly or indirectly – INCLUDING for the following metrics:

v. Time to inspection

w. Severity

x. Claim cycle time

y. Claim duration

z. MCAR

aa. Production Indicator bb. Closed in Field cc. TIPP Submissions dd. Team Barometer ee. New submissions ff. Completed Reviews gg. CIT Pendings per CS

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "YOUR" and "ASSESSMENT," as if fully set forth herein. State Farm objects to this request to the extent that Plaintiffs are seeking information based on Plaintiffs' or Plaintiffs' counsels' assumptions made from the use of confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm objects to this request on the grounds that the terms "QlikSense ASSESSMENT" and "metrics" are vague and ambiguous. State Farm further objects on the grounds that this request is overbroad in scope (not limited to the specific insurance claim/loss at issue in this litigation and by the inclusion of the broad categories of individuals listed) and time (not limited to a reasonable period of time). This case involves only Plaintiffs' October 2025 insurance claim with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. Each claim is handled on its own merits. State Farm objects to this request to the extent it seeks confidential and proprietary business information and/or documents are protected by the self-evaluative privilege. State Farm additionally objects because the requested information ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose

information is safeguarded from disclosure by federal and state privacy laws. Further, due to the overly broad nature of this request, it is also a potential invasion of the attorney-client privilege and the work product doctrines. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 92:**

DOCUMENTS containing or sufficient to describe any INCENTIVE available to the following persons: hh. Robin Dixon ii. Ellen Redmond jj. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "YOUR" and "INCENTIVE," as if fully set forth herein. State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "INCENTIVE available". Further, the request is overly broad in scope (including by the broad categories of individuals included in subpart jj of this request and due to the use of the term "any") and time (not limited in time) and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm and unduly invades the privacy rights of defendant's employees. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 93:**

DOCUMENTS containing or sufficient to describe YOUR metrics for awarding INCENTIVES to YOUR CLAIMS ADJUSTERS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS," "YOUR," "INCENTIVES," and "CLAIM ADJUSTERS" as if fully set forth herein. State Farm objects to this request as it is vague and ambiguous with respect to the use of the term "metrics for awarding". Further, the request is overly broad in scope (including due to the use of the words "containing," "sufficient to describe" and the overly broad definition of "CLAIM ADJUSTERS") and time (not limited in time) and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm and unduly invades the privacy rights of defendant's employees. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 94:**

DOCUMENTS containing or sufficient to describe any INCENTIVE paid to the following persons: kk. Robin Dixon ll. Ellen Redmond mm. Any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "INCENTIVE," as if fully set forth herein. State Farm objects to this request as it is vague and ambiguous with respect to the use of the terms "INCENTIVE paid". Further, the request is overly broad in scope (including due to the use of the words "containing," "sufficient to describe," and the overly broad list of individuals included in subpart (mm) of this request) and time (not limited in time) and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. This request goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information belonging to State Farm and unduly invades the privacy rights of defendant's employees. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

**Other Requests**

**REQUEST FOR PRODUCTION NO. 95:**

All DOCUMENTS containing any template or form for use by CLAIM property claim adjusters or supervisors to use in drafting WATER LOSS claim denials based on any policy exclusion.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENTS" and "WATER LOSS," as if fully set forth herein. State Farm objects to the terms "template or form for use" and "CLAIM property claim adjusters or supervisors" as vague and ambiguous. State Farm objects to this

request on the grounds that it is overly broad in scope (types of claims and insurance coverage due to the use of the term "any policy exclusion" and due to the use of the terms "All," and "any"), time (not limited by the period of time when this claim), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on

Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**REQUEST FOR PRODUCTION NO. 96:**

Inspection of State Farm's intranet or SFNET for the purpose of discovering all GUIDANCE available to the CLAIMS ADJUSTERS involved in INVESTIGATING or ADJUSTING PLAINTIFFS' CLAIM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

State Farm restates and incorporates its objections to Plaintiffs' definitions of "GUIDANCE" and "CLAIM ADJUSTERS," as if fully set forth herein. State Farm objects to this request as it seeks information that is neither relevant nor proportional to the issues in this case. State Farm objects to the request as vague and ambiguous,

specifically with respect to the use of the terms "Inspection", "discovering all GUIDANCE available", and "involved". State Farm further objects to this request, as it is overly broad in scope (not limited to the type of insurance coverage involved in this lawsuit, not limited to a reasonable period of time, etc.), unreasonably cumulative of other requests, and unduly burdensome. State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets and unduly invades the privacy rights of individuals who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. State Farm further objects on the ground that this request seeks direct access to State Farm's electronic storage media. There is no "routine right of direct access to a party's electronic information system[s]" and there has been no showing in this case sufficient to overcome this presumption. Fed. R. Civ. P. 34 (Advisory Committee Notes). Further, State Farm objects to this request because its scope is broad enough to potentially implicate information that is protected by the attorney/client privilege or work product doctrines.

State Farm further objects that this request constitutes impermissible discovery-about-discovery insofar as Plaintiffs seeks information regarding State Farm's efforts to search for information responsive to Plaintiffs' discovery requests. Absent a colorable showing that it has improperly withheld documents, a court will not allow discovery into a party's retention and discovery efforts. State Farm's objections to the scope of Plaintiffs' discovery do not provide a basis for such an inquiry. State Farm further objects on the grounds that this request improperly implies that Plaintiffs are in a position to assess and determine the manner in which State Farm conducts discovery. This assertion is contrary to best practices and the requirements of the Federal Rules of Civil Procedure. Indeed, the Sedona Principles provide that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and techniques appropriate for preserving and producing their own

electronically stored information." The Sedona Principles, Third Edition: Best Practices, Recommendations and Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 118 (2018). Plaintiffs have not established that such information is necessary to a fair adjudication of this case. As such, State Farm also objects to this request on the basis that it constitutes an improper fishing expedition.

Based on the patent impropriety of this request, State Farm initiated the meet and confer process with Plaintiffs on May 15, 2026 by sending a detailed letter setting out its objections, which it incorporates by this reference. The parties subsequently met and conferred via videoconference, but were unable to resolve the dispute. Accordingly, on May 29, 2026, State Farm requested the Court's assistance in resolving the dispute and, if necessary, leave to file a motion for protective order.

Dated: June 1, 2026 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *Jennifer M. Hoffman*

JENNIFER M. HOFFMAN
MADALYN A. MACARR
CAROLYN CAREY
Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Diego, State of California. My business address is 501 West Broadway, 18th Floor, San Diego, California 92101.

On June 1, 2026, I served true copies of the following document(s) described as **DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. TWO** on the interested parties in this action as follows:

| | |
|---|---|
| **J. Edward Kerley**<br>**Dylan L. Schaffer**<br>**Nicholas J. Peterson**<br>**Kerley Schaffer LLP**<br>**1939 Harrison Street, Suite 900**<br>**Oakland, CA 94612**<br>**Telephone: (510) 379-5801**<br>**edward@kslaw.us**<br>**dylan@kslaw.us**<br>**nicholas@kslaw.us**<br>**service@kslaw.us** | **Attorneys for Plaintiffs**<br>**Kathy Myles and Willie Daniels** |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address jschamber@sheppard.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 1, 2026, at San Diego, California.

______________________________
Jenna Schamber

# EXHIBIT C

EXHIBIT C

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
JENNIFER M. HOFFMAN, Cal. Bar No. 240600
jhoffman@sheppard.com
MADALYN MACARR, Cal. Bar No. 301539
mmacarr@sheppard.com
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071
Telephone: 213.620.1780
Facsimile: 213.620.1398

Attorneys for Defendant
STATE FARM GENERAL
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KATHY MYLES, an individual, and WILLIE DANIELS, an individual,

Plaintiffs,

v.

STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 10,

Defendant.

Case No. 2:26-cv-00452-CAS (MBKx)

*Assigned to Hon. Christina A. Snyder*

**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S CONFIDENTIAL SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. TWO (REQUESTS 17-21 AND 23)**

Trial Date: October 12. 2027

**PROPOUNDING PARTY:** **PLAINTIFFS KATHY MYLES AND WILLIE DANIELS**

**RESPONDING PARTY:** **DEFENDANT STATE FARM GENERAL INSURANCE COMPANY**

**SET NO.:** **TWO (2)**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant State Farm General Insurance Company ("State Farm") hereby objects and responds to Plaintiffs Kathy Myles and Willie Daniels ("Plaintiffs") Second Set of Requests for Production of Documents (the "Requests") as set forth below.

## PRELIMINARY STATEMENT

State Farm responds to the Requests solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, admissibility, privilege, privacy, proprietary information, trade secrets and the like, and any and all other objections on grounds that would require the exclusion of any response herein if such were offered in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

No incidental or implied admissions are intended in these responses. The fact that State Farm has responded to any part or all of any Request should not be taken as an admission that State Farm accepts or admits the existence of any facts set forth or assumed by such Request or that such response constitutes admissible evidence. The fact that State Farm has responded to any part or all of any Request is not intended to and shall not be construed to be a waiver by State Farm of all or any part of any objection to any Request.

State Farm has not completed its discovery in this action or preparation for the trial. State Farm reserves the right to supplement, modify or correct its responses to these Requests, or any part of them, as State Farm acquires additional information in the course of its investigation and discovery in this action.

This preliminary statement is incorporated by reference to each of the responses below as if stated in full.

## GENERAL OBJECTIONS

1. State Farm objects to the Requests including the "Instructions" and "Definitions" sections, to the extent that they conflict with or attempt to enlarge any obligations that State Farm has under the applicable rules and procedures of the

Court. State Farm will ignore all such requests, definitions, and instructions to the extent that they conflict with the applicable rules and procedures.

2. State Farm also objects to the Requests to the extent that they seek to impose burdens or obligations beyond or inconsistent with those required by the Federal Rules of Civil Procedure ("FRCP") or other applicable law.

3. State Farm objects to the Requests to the extent that they seek information protected from disclosure by the attorney-client privilege, the work product doctrines, California Insurance Code section 791.13, and/or any other statutory or common law protection against disclosure.

4. State Farm objects to the extent that the Requests seek personal, private, confidential, trade secret and/or proprietary information of State Farm, and/or its affiliates, agents or partners.

5. State Farm objects to the extent that the Requests seek confidential, private personal or business information, including private information subject to an individual's right of privacy guaranteed by the United States Constitution, the California Constitution, and/or any other statutory or common law privacy protection. Plaintiffs have not established that such information is necessary to a fair adjudication of this case, or that the Requests for information outweighs the privacy interests involved.

6. State Farm objects to the Requests to the extent that they require a claim-by-claim review, seek information not proportionate to the needs of the case, or are otherwise overbroad or unduly burdensome and oppressive.

7. State Farm objects to the Requests to the extent they seek confidential, proprietary business information and/or trade secrets. To the extent that State Farm agrees to provide non-privileged information to these Requests, it will only provide confidential, proprietary business information and/or trade secret information subject to the entry of an acceptable protective order in this case.

8. The above General Objections are incorporated by reference in each of

the individual responses that follow, and the individual responses are provided subject to and without waiving the matters set forth therein. The term "objections" shall refer to all General Objections and any objection specifically made to a particular Request.

## **INSTRUCTIONS AND OBJECTIONS**

**INSTRUCTION:**

Plaintiffs request that Defendant State Farm General Insurance Company produce the DOCUMENTS described below for inspection and copying and serve Plaintiffs the written response within thirty (30) days after service of this request. The place for inspection shall be at the office of Kerley Schaffer LLP, 1939 Harrison Street, Suite 900, Oakland, CA 94612.

In lieu of personal appearance and production on the above date, compliance with this Request for Production of DOCUMENTS may be accomplished by mailing to counsel at the above address, full, true and correct copies of the requested DOCUMENTS, verified by you as such, in a manner prescribed for written response to the demand for inspection of DOCUMENTS pursuant to Rule 34 of the Federal Rules of Civil Procedure, on or before thirty (30) days from the date of this demand.

YOUR WRITTEN RESPONSE TO THIS INSPECTION DEMAND must respond separately to each numbered demand for inspection below by:

1. A statement that you will comply with the particular demand;
2. A statement that you lack the ability to comply with the particular demand; or
3. Any objection to the particular demand. F.R.C.P. 34(b).

If your response to a particular demand is a statement that you will comply with that demand, you must state in your response whether the production will be allowed in whole or in part, and you must state that DOCUMENTS or things in the demanded category that are in your possession, custody or control and to which no objection is being made will be included in the production. F.R.C.P. 34(b).If your

response to a particular demand is a statement that you lack the ability to comply with that demand, you must affirm in your response that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand. This statement shall also specify whether the inability to comply is because the particular item or category never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody or control, in which case the name and address of any person or entity known or believed by you to have possession, custody or control of that document or category of documents should be identified. F.R.C.P. 34(b).

**OBJECTION:**

State Farm objects to this Instruction and inspection demand to the extent they purport to impose obligations on State Farm beyond or inconsistent with the requirements of the Federal Rules of Civil Procedure, including Rule 34(b), or any other applicable statute, rule, or court order.

State Farm further objects to the Instruction and inspection demand as unreasonable, unduly burdensome, and oppressive

State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' Instruction regarding "item[s]" or "categor[ies]" that have been "destroyed", "lost", "misplaced", "stolen", or which have "never been" or "[are] no longer" in State Farm's possession, custody or control.

In addition, State Farm objects to Plaintiffs' Instruction insofar as it seeks details regarding "item[s]" or "categor[ies]" that have been "destroyed", "lost", "misplaced", "stolen", or which have "never been" or "[are] no longer" in State Farm's possession, custody or control on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing

devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' Instruction is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

**INSTRUCTION:**

If your response to a particular demand is an objection, you must set forth in your response the extent of, and the specific ground for, the objection. In your response, you must also identify with particularity any document responsive to the particular demand that is being withheld from production based upon a claim of privilege or other protection and state the particular privilege or protection being invoked. (F.R.C.P. 34(b).) To identify with particularity documents withheld from production, you should provide, for each document withheld, the following information if known or available to you:

1. Title or subject matter of document;
2. The date composed or date appearing on the document;
3. Author and Addressee;
4. Number of Pages;
5. Identify of all persons or entities who saw or received a copy of such document, including the job titles of each such person;
6. The present location of the item;

7. The identity of the person or persons who have custody, control, or possession thereof.

8. The nature of the privilege claimed; and

9. Each fact upon which you base your claim of privilege.

**OBJECTION:**

State Farm objects to Plaintiffs' Instruction insofar as it directs State Farm to undertake efforts that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information and describe the same in accordance with the Federal Rules of Civil Procedure and substantive law.

**INSTRUCTION:**

Electronic media should be produced in its native format (e.g., Word documents and Excel spreadsheets produced with .doc and .xls extensions and email produced in .pst files if Outlook is the email client).

**OBJECTION:**

State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' Instruction to produce "Electronic media" in its "native format".

In addition, State Farm objects to Plaintiffs' Instruction regarding production of "Electronic media" in its "native format" to the extent it purports to seek production of ESI in "native format" both because it contradicts Plaintiffs' definition of the term "DOCUMENT" or "DOCUMENTS" below and because it exceeds the parameters of the Federal Rules of Civil Procedure. Pursuant to Fed. R. Civ. P. 34(b)(2)(E)(ii), State Farm may produce discoverable ESI in reasonably usable formats. Production of ESI in "native format" would be disproportionate to the needs of this case considering the value of the case and the importance of the discovery at issue and would be unduly burdensome to the extent such format is not

reasonably accessible to State Farm in the ordinary course of its business. Fed. R. Civ. P. 26(b)(2). In addition, State Farm frequently creates ESI in one format and, in the ordinary course of its business, stores it in another format in its system of record. State Farm further objects that it does not need to produce ESI in more than one form, and that the production of "Electronic media" in "native format" would be cumulative and duplicative of the alternative reasonably usable formats proffered. Fed. R. Civ. P. 34(b)(2)(E)(iii); 26(b)(2).

To the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

**INSTRUCTION:**

These requests for production include the original media and all copies that differ from the original in any respect, such as notations made on the copy. These requests are also intended to include all media of any nature that are now or have at any time been within your care, custody or control. If a document or media is no longer in your care, custody or control, identify its disposition.

**OBJECTION:**

State Farm objects to Plaintiffs' Instruction to produce "copies" on the grounds that copies are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. Fed. R. Civ. P. 26. To the extent that "copies" are not business records stored in a central repository in State Farm's ordinary course of business, the collection and production of "copies" would not be proportional to the needs of the case. Fed. R. Civ. P. 26.

In addition, State Farm objects to Plaintiffs' Instruction insofar as it seeks details regarding "document[s] or media" that "is no longer in [State Farm's] care, custody or control" on the grounds that it is overly broad, unduly burdensome, and

purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' Instruction is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

## OBJECTIONS TO DEFINITIONS

1. State Farm objects to the definition of "YOU" OR "YOUR". State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' definition of "YOU" or "YOUR." State Farm objects to the terms "YOU" or "YOUR" because as defined, the terms are overbroad and over-inclusive, such that they render any category or request that includes the terms vague, ambiguous, overbroad, and potentially in violation of the attorney-client privilege and/or work product doctrines. State Farm objects to the inclusion of the capitalized term "ADJUSTERS," on the grounds that this capitalized term is not a defined term. State Farm shall construe the terms "YOU" or "YOUR" to mean State Farm in and of itself as an entity only.

In addition, State Farm objects to Plaintiffs' definition insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is

only obligated to produce discoverable "DOCUMENTS" within its possession, custody, or control.

State Farm also objects to Plaintiffs' definition to the extent it may seek "DOCUMENTS" within the possession, custody, or control of State Farm's attorneys as this may require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

2. State Farm objects to the definition of "DOCUMENT" or "DOCUMENTS". State Farm incorporates by reference its objections to the terms "COMMUNICATIONS" and "ESI" as if fully set forth herein. State Farm objects to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that it is overly broad and disproportionate to the needs of the case. State Farm further object to the definition to the extent it implies State Farm has an obligation to provide discovery from sources that are not reasonably accessible. Electronically stored information ("ESI") is frequently duplicated and disbursed in the ordinary course of business and discovery regarding all identical copies of ESI would be cumulative and duplicative without any benefit to the adjudication of this action. Fed. R. Civ. P. 26(b)(2).

State Farm also object to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary computer files, log/history files, or file fragments, as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm objects to Plaintiffs' definition as overly broad, disproportionate to the needs of the case, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created by State Farm's users, such as caches, cookies, or logs, or otherwise seek to require State Farm to record and/or provide discovery regarding records and information that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. Fed. R. Civ. P. 26(b)(1).

State Farm objects to the inclusion of "DOCUMENTS" which are in the "possession, custody, or control" of "any third-party vendors" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is only obligated to produce discoverable "DOCUMENTS" within its possession, custody, or control.

State Farm also objects to Plaintiffs' definition to the extent it may include "DOCUMENTS" within the possession, custody, or control of State Farm's attorneys as production of "DOCUMENTS" within the possession, custody, or control of State Farm's attorneys would require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

State Farm objects to the inclusion of "draft[s]" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that drafts are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. To the extent that a draft is not a business record stored in a central repository in State Farm's ordinary course of business, discovery regarding "draft[s]" would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

State Farm objects to the inclusion of "COMMUNICATIONS," "chats", "instant messages", "texts," "personal digital assistants, handheld wireless devices, mobile telephones, smart phones, tablet computers, paging devices" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that State Farm has no obligation to collect, review, or produce text messages sent or received by devices that are not in State Farm's possession, custody, or control. Fed. R. Civ. P. 26(a), 34(a). State Farm further objects that text message data that exists on mobile devices within State Farm's possession, custody, or control is not relevant to any party's claim or defense, and discovery from such devices would not be proportional

to the needs of the case. Fed. R. Civ. P. 26(b)(1), (2). State Farm also objects because any text message data from such devices is unlikely to contain unique, relevant information that does not also exist in the relevant claim file(s) or another location that is less burdensome for collection, review, and production.

State Farm objects to the inclusion of "databases (including draft versions)", "database entries", "Internet usage files", Internet browser-created files including cookies and caches", "activity logs", and "network access information" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" to the extent that Plaintiffs purport to seek information regarding State Farm technical systems and processes that are not relevant to the claims and defenses in this matter. State Farm further objects that production of a database would require production of vast amounts of irrelevant information regarding other claims, would likely result in improper alteration of relevant data, and would require production of privileged information that could not be redacted. In addition, State Farm objects that the resources that would be required to produce databases are significant and would not be proportional under Fed. R. Civ. P. 26. State Farm also objects on the grounds that databases may be proprietary to State Farm's business operations and/or may be confidential and trade secret information that need not be disclosed in order to obtain the fair adjudication of this case.

State Farm objects to Plaintiffs' definition insofar as it seeks details regarding "DOCUMENTS" that have been "deleted" on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible

discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' definition is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

State Farm objects to the inclusion of "DOCUMENTS. . . found on, archived in, or deleted from. . .on-site or off-site electronic data storage", "systems or data structures", "legacy systems (hardware and software)", "servers", "mainframes", "network servers", "cloud-based servers", "backup servers or systems", "archives", or "backup or disaster recovery systems or facilities" in Plaintiffs' definition to the extent that Plaintiffs seek discovery regarding ESI from sources that are not reasonably accessible, as it would require unreasonable efforts that are not proportional in light of the claims at issue, the value of the case, or the importance of the discovery at issue. Fed. R. Civ. P. 26(b)(1). State Farm also objects to the inclusion of information located on such systems in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that data on backup media is likely to be duplicative and/or can be discovered from other sources that are more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2) There is no "routine right of direct access to a party's electronic information system[s]" and there has been no showing in this case sufficient to overcome this presumption. Fed. R. Civ. P. 34 (Advisory Committee Notes).

In addition, State Farm objects to the inclusion of "tapes", "discs", "DVDs", "CDROMs", "drives", "portable or removable drives", "cartridges", and "other storage media", "laptops", "personal computers", "internet data", "personal digital assistants", "handheld wireless devices", "mobile telephones", "smart phones", "tablet computers", "paging devices", and "audio systems (including voicemail)" in

Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" because such things are not "DOCUMENTS" but rather media on which "DOCUMENTS" and ESI are stored. State Farm further objects to the extent this definition purports to seek direct access to State Farm's electronic storage media. There is no "routine right of direct access to a party's electronic information system[s]" and there has been no showing in this case sufficient to overcome this presumption. Fed. R. Civ. P. 34 (Advisory Committee Notes).

Finally, State Farm objects to the definition of "DOCUMENT" or "DOCUMENTS" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges or privacy rights recognized by law.

Notwithstanding these objections, to the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

3. State Farm objects to Plaintiffs' definition of "ESI" on the grounds that it is overly broad and unduly burdensome. State Farm also objects to the extent it relies on the California Code of Civil Procedure or purports to impose obligations on State Farm beyond or inconsistent with the requirements of the Federal Rules of Civil Procedure, including Rule 34(a), or any other applicable statute, rule, or court order. State Farm further objects to the definition to the extent it implies State Farm has an obligation to provide discovery from sources that are not reasonably accessible. ESI is frequently duplicated and disbursed in the ordinary course of business and discovery regarding all identical copies of ESI would be cumulative, duplicative, and impose unnecessary burdens without any benefit to the adjudication of this action. Fed. R. Civ. P. 26(b)(2).

State Farm also objects to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary "data files", "file fragments",

computer files, or log/history files as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm objects to Plaintiffs' definition as overly broad, unduly burdensome, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created by State Farm users, such as caches, cookies, or logs, or otherwise seek to require State Farm to record and/or provide discovery regarding records and information that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. Fed. R. Civ. P. 26(b)(1), 34.

State Farm objects to the inclusion of "metadata" Plaintiffs' definition of "ESI" on the grounds that "metadata" can refer to any number of types of information, so the definition is overbroad, vague and ambiguous as to what specific information it seeks. State Farm further objects on the grounds that metadata is not relevant to the specific claims and defenses of any party, nor is discovery regarding metadata proportional to the needs of the case, and therefore the inclusion of "metadata" in Plaintiffs' definition is beyond the scope of permissible discovery. Fed. R. Civ. P. 26. In particular, the information pertinent to the claims and defenses in this case can be found in the text of discoverable "documents" and is not generally found in metadata. State Farm objects that discovery regarding metadata is not necessary to assure the fair and efficient adjudication of the claims and defenses in this matter.

Finally, State Farm objects to the definition of "ESI" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

Notwithstanding these objections, to the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

4. State Farm objects to the definition of "BELOW THE SURFACE OF THE GROUND EXCLUSION" on the grounds that it is overly broad in scope and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit. State Farm objects to this definition to the extent it purports to define as relevant – by virtue of the inclusion of "any provision in a property policy … insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase 'below the surface of the ground'" – insurance policies beyond the specific policy at issue in this litigation on the ground that it is overly broad in scope and time. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information and/or documentation that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. This definition goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The subject insurance contract/policy speaks for itself.

5. State Farm objects to the definition of "CLAIM LOG" or "FILE HISTORY". State Farm restates and incorporates its objections to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" and applies the same to Plaintiffs' definition of "CLAIM LOG" or "FILE HISTORY." In addition, State Farm objects to Plaintiffs' definition on the grounds that the terms "chronological notes, diary, log, or calendar" are vague and ambiguous. State Farm objects to this definition as overly broad and disproportionate to the needs of the case by the specific inclusion of the terms "every claim under a California property insurance policy issued by YOU," when this case involves only a claim involving Plaintiffs' October 2025 water loss, and further objects to this definition to the extent that Plaintiff purports to define as relevant information related to other, unrelated claims of individuals not party to this litigation who have a reasonable expectation of

privacy and whose information is safeguarded from disclosure by federal and state privacy laws. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client privilege and work product doctrines. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. As such, to the extent that this definition purports to define as relevant information related to other such claims, State Farm objects to this definition.

6. State Farm objects to the definition of "CLAIM ADJUSTER(S)" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the definition of "CLAIMS ADJUSTER(S)" on the grounds that it is overly broad by virtue of the fact that it is unrestricted in scope and time, and on the basis that it specifically includes categories of individuals who did not work on Plaintiffs' claim – including but not limited to "any employee, supervisor, manager, agent, outside adjuster, independent adjuster, independent adjusting company, or other person or entity . . .employed, retained, or otherwise relied on to INVESTIGATE and/or ADJUST property claims." Information regarding the individuals who were engaged to assist with Plaintiffs' claim are identified in the Claim File and email correspondence produced by State Farm, and those are the only individuals relevant to the issues in this litigation, which stem from a single homeowner's claim relating to a fire to the Plaintiffs' home. State Farm further objects to this definition to the extent it purports to define "CLAIMS ADJUSTER(S)" in a way that diverges from the manner in which State Farm would employ that term. As such, State Farm objects to this definition on the grounds that

it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case. State Farm shall construe this term to mean Claim Specialists that State Farm employed or retained in and of itself to investigate or adjust a property claim, and the Team Managers who directly supervise those Claim Specialists.

7. State Farm objects to the definition of "COMMUNICATION". State Farm restates and incorporates in full by reference its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" and applies the same to Plaintiffs' definition of "COMMUNICATION".

In addition, State Farm objects to the inclusion of oral exchanges, including "personal meeting[s]", "conference[s]", and "conversation[s]" in Plaintiffs' definition of "COMMUNICATION" on the grounds that Fed. R. Civ. P. 34 does not require State Farm to produce "COMMUNICATION[S]" that do not already exist on a medium from which information can be obtained.

State Farm objects to Plaintiffs' definition [to the extent Plaintiff's/Plaintiffs' definition includes text messages] on the grounds that State Farm has no obligation to collect, review, or produce text messages sent or received by devices that are not in State Farm's possession, custody, or control. Fed. R. Civ. P. 26(a), 34(a). State Farm further objects that text message data that exists on mobile devices within State Farm's possession, custody, or control is not relevant to any party's claim or defense, and discovery from such devices would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1), (2). State Farm also objects because any text message data from such devices is unlikely to contain unique, relevant information that does not also exist in the relevant claim file(s) or another location that is less burdensome for collection, review, and production.

8. State Farm objects to the definitions of "CONSULTANT," "MCKINSEY & COMPANY," and "ACCENTURE" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the

definition of "CONSULTANT" on the grounds that it is overly broad by virtue of the fact that it is unrestricted in scope and time, on the basis that it purports to include both "internal" and "external" consultants in the definition, and due to the use of the term "including." Further, the definition of the term "CONSULTANT" is overly broad in scope due to the inclusion of the terms "internal or external consulting department or entity, firm, advisory firm, management consulting company, or individual consultant used or retained by YOU," "evaluate, assess, recommend changes to, or implement changes," "property claims operations," "claims handling systems," "quality assurance processes," "estimating practices," "vendor management programs," and "claims financial performance." State Farm objects to the inclusion of the terms "Office of Consulting Services" in the definition of the term "CONSULTANT" on the grounds that it is vague and ambiguous. State Farm objects to this definition to the extent it is predicated by assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm objects to the terms "CONSULTANT," "MCKINSEY & COMPANY" and "ACCENTURE" to the extent they purport to define as relevant to this action the incredibly broad topics included within this definition -- topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, concepts like "changes in [State Farm's] property claims operations, claims handling systems, quality assurance processes, estimating practices, vendor management programs, or claims financial performance that have absolutely nothing to do with the handling of Plaintiffs' claim. State Farm further objects to the inclusion of "MCKINSEY & COMPANY" and "ACCENTURE" in the definition of "CONSULTANT" to the extent that Plaintiffs purport to suggest that either company is relevant to the issues in this litigation. Finally, State Farm objects to the term "CONSULTANT" to the extent Plaintiffs purport to seek as relevant information related to other, unrelated claims, by virtue of the use of the broad, undefined term "property claims." As such, State

Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

9. State Farm objects to the definition of "CONTINUOUS OR REPEATED SEEPAGE EXCLUSION" on the grounds that it is overly broad in scope and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit. State Farm objects to this definition to the extent it purports to define as relevant – by virtue of the inclusion of "any provision in a property policy … insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase 'seepage or leakage'" – insurance policies beyond the specific policy at issue in this litigation on the ground that it is overly broad in scope and time. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information and/or documentation that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. State Farm further objects to this definition as vague and ambiguous as to the phrase "any building". This definition goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The subject insurance contract/policy speaks for itself.

10. State Farm objects to the definitions of "DENY," "DENYING," "DENIED," or "DENIAL" on the grounds that it is overly broad in scope (not limited to the claim at issue in this case by seeking "any circumstance in which [State Farm] issued a written denial letter . . . following notice of a loss pursuant to a policy of insurance sold by [State Farm] covering real property in California") and time (unlimited in time). State Farm objects to this definition to the extent it purports to define as relevant information related to other, unrelated claims, and/or

to seek to discover information related to other claims, which are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. As such, to the extent that this definition purports to define as relevant information related to other such claims, State Farm objects to this definition.

11. State Farm objects to the definition of "FINANCIAL IMPACT". State Farm incorporates by reference its objections to the term SEVERITY as fully set forth herein. State Farm objects to the terms "FINANCIAL IMPACT" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the terms "FINANCIAL IMPACT" and to the extent it purports to define as relevant to this action topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, by virtue of the inclusion of these terms in the definition of "FINANCIAL IMPACT" – "investigation expenses, indemnity obligations, administrative costs, SEVERITY . . . loss ratios, cost-per-claim, average estimate amounts, or any other measure of monetary effect." State Farm further objects to the definition of "FINANCIAL IMPACT" to the extent its inclusion purports to define as relevant or to the claims or defense of any party the information included within this definition. Finally, State Farm objects to the term "FINANCIAL IMPACT" to the extent Plaintiffs purport to define "FINANCIAL

IMPACT" in a manner that diverges from how such term is used within the Property and Casualty Claims department within State Farm. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

12. State Farm objects to the definition of "FIRE CLAIMS DEPARTMENT" to the extent that it purports to imply that information that was contained in State Farm's response to Request for Production No. 74 in the aforementioned *Savas* matter is relevant, responsive, or proportional to the needs of Plaintiffs' claim. State Farm further states that its response to Request for Production No. 74 in the aforementioned *Savas* matter speaks for itself as to its source and content, but notes that the version cited in this definition is not the operative version, which is subject to the protective order in that case.

13. State Farm objects to the definition of "GUIDANCE". State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENT" or "DOCUMENTS," "TRAINING OR GUIDELINES," "POLICIES/PROCEDURES," "COMMUNICATION" or "COMMUNICATIONS," and applies the same to Plaintiffs' definition of "GUIDANCE." State Farm objects to the term "GUIDANCE" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the inclusion of "TRAINING OR GUIDELINES" and "POLICIES/PROCEDURES" in this definition to the extent redundant or cumulative of the prior definitions. State Farm objects to the term "GUIDANCE" to the extent it purports to seek materials beyond formal resources available to the individuals handling the claim from the date of loss through the end of claim handling.

State Farm further objects to the term "GUIDANCE" on the grounds that it purports to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, a water loss to Plaintiffs' home in October 2025,

by seeking information "intended to communicate YOUR policies, views, directions, and/or changes to any policy, view or direction, to anyone, regarding the appropriate INVESTIGATION and/or ADJUSTING of property claims under insurance policies sold by YOU, generally, as opposed to any such policy, view, or direction expressed uniquely and solely as RELATES TO the INVESTIGATION and/or ADJUSTING of any particular claim," and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of causes of loss. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

14. State Farm objects to the definition of "INCENTIVE". State Farm restates and incorporates its objections to Plaintiffs' definition of "CLAIMS ADJUSTERS" and applies the same to Plaintiffs' definition of "INCENTIVE." State Farm objects to the term "INCENTIVE" as vague, ambiguous, overbroad and disproportionate to the needs of the case, especially as to use of the phrases "any system, program, process, promise by way of contract or otherwise," "financial benefits," and "for successful job and/or department and/or region and/or company performance according [sic] any metric set." State Farm further objects to the term "INCENTIVE" to the extent it purports to seek materials beyond those applicable to the individuals handling the claim from the date of loss up to the end of claim handling.

State Farm objects to this definition on the grounds that it is overly broad in scope—including things that have nothing to do with the performance of the individuals involved in the claim. State Farm also objects to the extent it is predicated by assumptions made by Plaintiffs' and/or Plaintiffs' counsel regarding "financial benefits."

State Farm objects to this definition to the extent it purports to define as relevant to the facts and circumstances of this case personal information of State Farm employees, including but not limited to information regarding the individuals who worked on Plaintiffs' claim, such that this definition may unduly invade the privacy rights of State Farm's employees. This definition goes beyond what is needed to address the claims and defenses at issue; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this definition because it unduly invades the privacy of its employees and is broad enough to potentially implicate information that is confidential, proprietary business information. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

15. State Farm objects to the definition of "PERFORMANCE REVIEW". State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENT" or "DOCUMENTS," and "CLAIMS ADJUSTER," and applies the same to Plaintiffs' definition of "PERFORMANCE REVIEW" and included definition of "ASSESSMENT"." State Farm objects to this definition to the extent that it purports to include topics more appropriately covered in the definitions of "TRAINING OR GUIDELINES," "POLICIES/PROCEDURES," "or "GUIDANCE," rendering this definition overly broad, unduly burdensome, cumulative, duplicative, and not proportional to the needs of the case. State Farm objects to this definition to the extent that it cites the titles of or otherwise relies on proprietary, confidential, or trade secret documents such that their inclusion in this definition violates the protective orders in the matters in which those documents were produced. State Farm objects to this definition on the grounds that it is overly broad in scope—including things that have nothing to do with the performance review of the individuals involved in the claim, to the extent it is predicated by assumptions made by Plaintiffs' and/or Plaintiffs' counsel regarding the extent of

terms included in this definition and/or how those might be used in application, including, for example, the inclusion of terms like "Exposure Management review," "Fire executive review," "Fire Leadership Tracker review," "Frequency Error percentage review," "Huddle Points," "Stewardship Team (all areas)," "Leadership Guide," "Quality Targets," "Leadership Action Plan, Leadership Action Plan & Communication Strategy," "Process Confirmations," "Quality Targets," "Quarterly Survey," or "Tactical Tracker," among others. State Farm objects to this definition on the grounds that it is overly broad in time (without temporal limitation). State Farm objects to this definition to the extent it purports to define as relevant to the facts and circumstances of this case personal information of State Farm employees, including but not limited to information regarding the individuals who worked on Plaintiffs' claim, such that this definition may unduly invade the privacy rights of State Farm's employees. This definition goes beyond what is needed to address the claims and defenses at issue; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this definition because it unduly invades the privacy of its employees and is broad enough to potentially implicate information that is confidential, proprietary business information. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

16. State Farm objects to the definition of "POLICIES/PROCEDURES". State Farm restates and incorporates its objection to Plaintiffs' definition of "TRAINING OR GUIDELINES" and applies the same to Plaintiffs' definition of "POLICIES/PROCEDURES." State Farm objects to the definition of "POLICIES/PROCEDURES" as vague, ambiguous, overbroad and disproportionate to the needs of the case, including with regard to the use of the terms "bulletins," "operation manuals," "other written materials," "internal memoranda,"

directives," "executive communications," "town hall or all-hands presentation materials," "process maps" and "workflow documentation." State Farm objects to

this definition on the grounds that it is overly broad due to the inclusion of "executive communications" which are by their plain meaning, neither "policies" nor "procedures". State Farm objects to the inclusion of "TRAINING OR GUIDELINES" in this request to the extent redundant or cumulative of the prior definition. State Farm objects to the terms "POLICIES/PROCEDURES" to the extent they purport to seek materials beyond formal resources available to the individuals handling Plaintiffs' claim from the date of loss through the end of claim handling. Finally, State Farm objects to the terms 'POLICIES/PROCEDURES" on the grounds that they purport to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, an October 2025 water loss in Plaintiffs' home, by seeking information broadly related to "first party property Claims in California, but excluding auto claims" and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of losses or causes of loss that have no relevance to Plaintiffs' claim. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

17. State Farm objects to Plaintiffs' definition of "RELATE TO" or "RELATING TO", to the extent it would require State Farm to construe such terminology beyond its ordinary meaning. State Farm further objects to the extent this definition purports to seek information that bears no relevance to the claims and defenses of any party in this case or that is disproportionate to the needs of this litigation.

18. State Farm objects to the definition of "TRAINING OR [sic] GUIDELINES". State Farm repeats and incorporates by reference its objections to the terms "DOCUMENT" or DOCUMENTS" as if fully set forth herein. State Farm objects to the terms "TRAINING OR GUIDELINES" as vague, ambiguous, overbroad and disproportionate to the needs of the case. Among other things, it

purports to include materials not reasonably characterized as training or guidelines. For example, it includes “Xactimate”, which is a tool accessible to State Farm claims personnel; it is neither “training” nor a “guideline”. Further, the definition is not limited to the type of claim or issues involved in this matter, including but not limited to the following: “Quality Claims Handling Experience, Quality Claims Handling Standards, Coverage Model, Coverage Analysis, Skills Review, In Role Skills Review, Skills Review Answer Keys, Skills Testing, Resources, Discussion Resources, Core Property Claims, Dollar One, ECHP, Basics, Coverage Analysis, Support Guide, Claim Experience, Claim Experience Video Collaboration, Reference Guide”. State Farm further objects to the extent this definition constitutes a compilation of information gleaned by Plaintiffs’ counsel from the production of documents in other matters subject to protective orders in those matters. State Farm further objects to this definition to the extent that it purports to seek information without temporal limitation or information that is broader than a reasonable timeframe, to the extent it purports to seek information beyond formal training taken by the individuals who worked on Plaintiffs’ claim, namely Claim Specialist Robin Dixon and Team Manager Ellen Redmond, or formal resources available to the individuals handling the claim from the date of loss through the end of claim handling. Finally, State Farm objects to the terms ‘TRAINING OR GUIDELINES” on the grounds that they purport to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, a water loss by seeking information related to “first party property Claims in California, but excluding auto claims” and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of causes of loss (including, but not limited to terms including “Dollar One,” “ECHP,” or “Fire Focus””). As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

19. State Farm objects to the definition of "SEVERITY". State Farm repeats and incorporated by reference its objections to the term INDEMNITY, to the extent intended to be included in the definition of "SEVERITY," as if fully set forth herein. State Farm objects to the term "SEVERITY" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the term "SEVERITY" to the extent it purports to define as relevant to this action topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, by virtue of the inclusion of these terms in the definition of " SEVERITY -- "net paid indemnity divided by paid claim count, and/or paid versus reserved amounts, and/or trends of these over time." State Farm further objects to the definition of "SEVERITY" to the extent its inclusion purports to define as relevant the information included within this definition. Finally, State Farm objects to the term "SEVERITY" to the extent Plaintiffs purport to define "SEVERITY" in a manner that diverges from how such terms are used within the Property and Causality Claims department within State Farm. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

20. State Farm objects to the definition of "WATER INITIATIVE". State Farm repeats and incorporated by reference its objections to the terms "YOU," "DOCUMENT" or "DOCUMENTS," "RELATING TO," "YOUR, "WATER LOSS," and "CONSULTANT" as if fully set forth herein.

State Farm objects to the term "WATER INITIATIVE" as vague, ambiguous, and not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case. State Farm objects to the terms "modifications," "recommendations" and "systemic efforts" on the grounds that they are vague and ambiguous. This case is about a single water loss in October

2025 involving a pipe leak, and State Farm objects to this definition on the ground that it purports to define as relevant information related to other lawsuits and other claims wholly unrelated to the issues in this case. State Farm objects to this definition on the grounds that it is overly broad in scope (due to the overly broad definition of "WATER LOSS," and the use of the terms "any" and all"), time (due to the lack of temporal restrictions or any reasonable timeframe) and geography (not limited to the State of California).

State Farm objects to the definition of "WATER INITIATIVE" to the extent that Plaintiffs or Plaintiffs' counsel are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm further objects to the definition of "WATER INITIATIVE" on the grounds that it disputes Plaintiffs' adoption of a term to which State Farm specifically objected to Special Interrogatory Nos. 27 and 28 in *Jacobs et al. v. State Farm*, No. 22STCV23445, including in its Further Response to that Interrogatory. State Farm further objects to this definition in that it is overly broad in time and scope to the extent it attempts to define as relevant and responsive materials related to efforts that allegedly occurred 5 years prior to Plaintiffs' date of loss on October 11, 2025, and as such have absolutely no bearing on Plaintiffs' claim. State Farm further states that its responses to Further Responses to Special Interrogatory Nos. 27 and 28 in the aforementioned *Jacobs* matter speak for themselves as to their source and content.

In addition, State Farm objects to the definition of "WATER INITIATIVE" to the extent that it attempts to define as relevant and responsive materials related to efforts that allegedly occurred years prior to Plaintiffs' date of loss on October 7,

2025 that were produced in *Savas v. State Farm General Insurance Company, Los Angeles Superior Court*, No. 21STCV0286, and as such have absolutely no bearing on Plaintiffs' claim. State Farm further states that its response to Request for Production No. 74 in the aforementioned *Savas* matter speaks for itself as to its source and content, but notes that the version cited in this definition is not the operative version, which is subject to the protective order in that case.

State Farm further objects to this definition to the extent this is predicated on assumptions made by Plaintiffs or their counsel herein, and to the extent that Plaintiffs purport to suggest that it would be in any way problematic to have efforts "to improve quality, diligence, evaluation of facts, accurate application of coverage, accurate documentation of claim files, efficiency, consistency, accuracy, paying what is owed, and/or customer satisfaction" in connection with claim handling for water loss claims.

21. State Farm objects to the definition of "WATER LOSSES" as vague, ambiguous, overbroad and disproportionate to the needs of the case. This case is about a single water loss involving a pipe leak, and State Farm objects to this objection on the ground that it expressly seeks to purport to define as relevant information related to other types water loss claims wholly unrelated to the issues in this case—by the express inclusion of the following terms: "losses involving escape of water or steam from a heating, air conditioning or automatic fire protection system; household appliance; or plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture". State Farm further objects to this definition to the extent it diverges from how State Farm defines and/or catalogues claims involving water losses. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

22. State Farm objects to "definition" DD. State Farm repeats and incorporated by reference its objections to the definition of "DOCUMENT" or "DOCUMENTS," as if fully set forth herein. State Farm objects to "definition" DD on the grounds that it is not a definition, though styled as such, but rather an Instruction.

State Farm objects to Definition/Instruction DD as vague, ambiguous, overbroad and disproportionate to the needs of the case. This case is about a single water loss involving a pipe leak, and State Farm objects to this objection on the ground that it expressly seeks to purport to define as relevant information related to other types water loss claims wholly unrelated to the issues in this case – by the express inclusion of the following terms: "materials applicable to California claims and/or policies whether or not applicable to claims/policies in other states." State Farm objects to this Definition/Instruction to the extent it purports to define as relevant information related to other, unrelated claims, and/or to seek to discover information related to other claims, which are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This Definition/Instruction is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Further, the policy contract at issue in this case speaks for itself and information related to other policies has no bearing in this action; as such, State Farm objects to this definition/instruction to the extent Plaintiffs purport to suggest that information related to other policies has any

bearing on this case and/or Plaintiffs' claim. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

23. State Farm objects to "definition" EE on the grounds that it is not a definition, though styled as such, but rather an Instruction. State Farm objects to Plaintiffs' Definition/Instruction insofar as it directs State Farm to undertake efforts that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information and describe the same in accordance with the Federal Rules of Civil Procedure and substantive law.

## SUPPLEMENTAL RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO (2)

### Requests relating to Training and Guidelines

**REQUEST FOR PRODUCTION NO. 17:**

YOUR GUIDANCE RELATED TO INVESTIGATION and/or ADJUSTING of WATER LOSSES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATED TO," and "WATER LOSSES," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and WATER LOSSES), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials

on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this

litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from

September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

**REQUEST FOR PRODUCTION NO. 18:**

GUIDANCE YOU received from any CONSULTANT RELATED TO the INVESTIGATION and/or ADJUSTING of WATER LOSSES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

State Farm repeats its objections to the terms “GUIDANCE,” “YOU,” “CONSULTANT,” “RELATED TO,” and “WATER LOSSES,” as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and WATER LOSSES), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm’s procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm’s general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying

claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the

non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

**REQUEST FOR PRODUCTION NO. 19:**

YOUR GUIDANCE RELATING TO application of the CONTINUOUS OR REPEATED SEEPAGE EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATING TO," and "CONTINUOUS OR REPEATED LEAKAGE OR SEEPAGE," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and CONTINUOUS OR REPEATED LEAKAGE OR SEEPAGE),

time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for

Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the

aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

**REQUEST FOR PRODUCTION NO. 20:**

YOUR GUIDANCE RELATING TO application of the BELOW THE SURFACE OF THE GROUND EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATING TO," and "BELOW THE SURFACE OF THE GROUND EXCLUSION," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and BELOW THE SURFACE OF THE GROUND EXCLUSION), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work

product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of

business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

**REQUEST FOR PRODUCTION NO. 21:**

YOUR GUIDANCE, after the decision in *Varela v. State Farm General Insurance Company*, 555 F.Supp.3d 983 (E.D. Cal. 2021), RELATING TO application of the BELOW THE SURFACE OF THE GROUND EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATING TO," and "BELOW THE SURFACE OF THE GROUND EXCLUSION," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms GUIDANCE and BELOW THE SURFACE OF THE GROUND EXCLUSION) and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business

information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant

confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

**REQUEST FOR PRODUCTION NO. 23:**

YOUR GUIDANCE RELATING TO coding of WATER LOSSES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE,"

"RELATING TO," and "WATER LOSSES," as if fully set forth herein. State Farm objects to this request on the grounds that the term "coding" is vague, ambiguous and undefined. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms GUIDANCE and WATER LOSSES), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm

will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guide(s), Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

Dated: July 7, 2026 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Jennifer M. Hoffman*
JENNIFER M. HOFFMAN
MADALYN A. MACARR

Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of . My business address is 350 South Grand Avenue, 40th Floor, Los Angeles, California 90071-3460.

On July 7, 2026, I served true copies of the following document(s) described as **DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S CONFIDENTIAL SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. TWO (REQUESTS 17-21 AND 23** on the interested parties in this action as follows:

| | |
|---|---|
| **J. Edward Kerley**<br>**Dylan L. Schaffer**<br>**Nicholas J. Peterson**<br>**Kerley Schaffer LLP**<br>**1939 Harrison Street, Suite 900**<br>**Oakland, CA 94612**<br>**Telephone: (510) 379-5801**<br>**edward@kslaw.us**<br>**dylan@kslaw.us**<br>**nicholas@kslaw.us**<br>**service@kslaw.us** | **Attorneys for Plaintiffs**<br>**Kathy Myles and Willie Daniels** |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address gpasquale@sheppard.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 7, 2026, at Los Angeles, California.

Gino M. Pasquale

EXHIBIT D

EXHIBIT D

J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Nicholas J. Peterson (287902)
**Kerley Schaffer LLP**
1939 Harrison Street #900
Oakland, California 94612
Telephone: (510) 379-5801
Facsimile: (510) 228-0350

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KATHY MYLES** an individual, and **WILLIE DANIELS**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**STATE FARM GENERAL INSURANCE COMPANY**, an Illinois corporation, and **DOES 1 through 10**,<br><br>Defendants. | Case No. 2:26-cv-00452-CAS-MBK<br><br>**PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO STATE FARM GENERAL INSURANCE COMPANY, SET THREE** |

PROPOUNDING PARTY: Plaintiffs Kathy Myles and Willie Daniels

RESPONDING PARTY: Defendant State Farm General Insurance Company

SET NUMBER: Three (3)

# INSTRUCTIONS

Plaintiffs request that Defendant State Farm General Insurance Company produce the DOCUMENTS described below for inspection and copying and serve Plaintiffs the written response within thirty (30) days after service of this request. The place for inspection shall be at the office of Kerley Schaffer LLP, 1939 Harrison Street, Suite 900, Oakland, CA 94612.

In lieu of personal appearance and production on the above date, compliance with this Request for Production of DOCUMENTS may be accomplished by mailing to counsel at the above address, full, true and correct copies of the requested DOCUMENTS, verified by you as such, in a manner prescribed for written response to the demand for inspection of DOCUMENTS pursuant to Rule 34 of the Federal Rules of Civil Procedure, on or before thirty (30) days from the date of this demand.

YOUR WRITTEN RESPONSE TO THIS INSPECTION DEMAND must respond separately to each numbered demand for inspection below by:

1. A statement that you will comply with the particular demand;
2. A statement that you lack the ability to comply with the particular demand; or
3. Any objection to the particular demand. F.R.C.P. 34(b).

If your response to a particular demand is **a statement that you will comply** with that demand, you must state in your response whether the production will be allowed in whole or in part, and you must state that DOCUMENTS or things in the demanded category that are in your possession, custody or control and to which no objection is being made will be included in the production. F.R.C.P. 34(b).

If your response to a particular demand is **a statement that you lack the ability to comply** with that demand, you must affirm in your response that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand. This statement shall also specify whether the inability to comply is because the particular item or category never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody or control, in which case the name and address of any person or entity known or believed by you to have possession, custody or control of that document or

category of DOCUMENTS should be identified. F.R.C.P. 34(b).

If your response to a particular demand is an objection, you must set forth in your response the extent of, and the specific ground for, the objection. In your response, you must also identify with particularity any document responsive to the particular demand that is being withheld from production based upon a claim of privilege or other protection and state the particular privilege or protection being invoked. (F.R.C.P. 34(b**).) To identify with particularity DOCUMENTS withheld from production**, you should provide, for each document withheld, the following information if known or available to you:

1. Title or subject matter of document;
2. The date composed or date appearing on the document;
3. Author and Addressee;
4. Number of Pages;
5. Identify of all persons or entities who saw or received a copy of such document, including the job titles of each such person;
6. The present location of the item;
7. The identity of the person or persons who have custody, control, or possession thereof.
8. The nature of the privilege claimed; and
9. Each fact upon which you base your claim of privilege.

This request requires the production of DOCUMENTS as they are kept in the usual course of

business or organized and labeled to correspond with the particular demands set forth below. If you choose the former method, the DOCUMENTS are to be produced in the boxes, file folders, bindings or other containers in which the DOCUMENTS are found. The titles, labels, or other descriptions on the boxes, file folders, bindings or other containers are to be left intact.

Electronic media should be produced in its native format (e.g., Word documents and Excel spreadsheets produced with .doc and .xls extensions and email produced in .pst files if Outlook is the email client).

These requests for production include the original media and all copies that differ from the original in any respect, such as notations made on the copy. These requests are also intended to include all media of any nature that are now or have at any time been within your care, custody or control. If a document or media is no longer in your care, custody or control, identify its disposition.

**DEFINITIONS**

The following definitions and instructions shall apply to this demand for production:

A. "YOU" or "YOUR" means Defendant State Farm General Insurance Company, and any related entity that has possession and/or control of the DOCUMENTS described requested or items which are sought to be inspected, INCLUDING YOUR agents, officers, directors, employees, CLAIMS ADJUSTERS, FIRE CLAIMS DEPARTMENT, CONSULTANTS, and/or others acting on YOUR behalf.

B. "DOCUMENT" or "DOCUMENTS" means the same as "writing" as defined in Section 250 of the California Evidence Code. "DOCUMENT" and "DOCUMENTS" include the following which are in the possession, custody, or control of YOU or any third-party vendors YOU contract with: electronic communications of any kind, including chats, instant messages, texts, and voicemails; word processing DOCUMENTS, spreadsheets, and databases (including draft versions); database entries, Internet usage files, Internet browser-created files including cookies and caches, activity logs, calendars, telephone logs, contact manager information, network access information.

"DOCUMENT" and "DOCUMENTS" include those to be found on, archived in, or deleted from the following: any on-site or off-site electronic data storage systems or data structures, including but not limited to databases, networks, computer systems, legacy systems (hardware and software), servers, mainframes, network servers, cloud-based servers and backup servers or systems, archives, backup or disaster recovery systems or facilities, tapes, discs, DVDs, CDROMs, drives, portable or removable drives, cartridges and other storage media,

laptops, personal computers, internet data, personal digital assistants, handheld wireless devices, mobile telephones, smart phones, tablet computers, paging devices, and audio systems (including voicemail).

Requests for "DOCUMENTS" is intended to include all "COMMUNICATIONS" and "ESI".

C. "ESI" shall be construed in the broadest sense possible given the definition under California Code of Civil Procedure §2016.020(d) and (e), and shall include, but not be limited to:

a. All electronic mail and information about electronic mail sent or received by YOU;

b. All databases containing any reference and/or information;

c. All activity logs on any computer system which may have been used to process or store electronic data containing information;

d. All word processing files and file fragments, including metadata, containing information;

e. All electronic data files and file fragments created by application programs that process financial, accounting and billing information;

f. All electronic data files and file fragments from electronic calendars and scheduling programs that contain information about the above-listed subjects

g. All electronic data files and file fragments from electronic calendars and scheduling programs that contain information about the above-listed subjects; and

h. All electronic or automated insurance systems or software.

D. "CLAIM" means the claim for policy benefits resulting from the LOSS handled by YOU under Claim No. 75-91J8.

E. "CLAIM LOG" or "FILE HISTORY" mean the chronological notes, diary, log, or calendar YOU keep to record events in every claim under a California property insurance policy issue by YOU,

F. "TRAINING OR GUIDELINES" means any written or digital means by which YOU provide information to YOUR CLAIMS ADJUSTERS regarding how to INVESTIGATE

and/or ADJUST first party property claims in California but excluding auto claims. "TRAINING OR GUIDELINES" includes, but is not limited to, DOCUMENTS in the following formats or resource types, or which are referred to YOU and/or YOUR ADJUSTERS as follows: Electronic Claim System or ECS, State Farm Net or SF Net, State Farm University, Operation Guides, Jurisdictional Resource, Video on Demand, Job Aids, Refreshers, Workday, FAQs, Quality First Contact Guide, Estimating Topics, FAQs, SF Net, Xactimate, ITEL, Scenarios Courses, Jurisdictional Resources, Standard Claims Practices or SCP, Workflow, Scenarios, Claim Scenarios, 360 Claim Scenarios, Coverage Investigation, Dashboard, Quality Claims Handling Expectations, Quality Claims Handling Experience, Quality Claims Handling Standards, Coverage Model, Coverage Analysis, Skills Review, In Role Skills Review, Skills Review Answer Keys, Skills Testing, Resources, Discussion Resources, Core Property Claims, Dollar One, ECHP, Basics, Coverage Analysis, Support Guide, Claim Experience, Claim Experience Video Collaboration, Reference Guide, Water Plan, Water Forum, Water Initiative, Focus or Fire Focus, INCLUDING materials delivered through learning management systems, intranet portals, SharePoint sites, or any successor platforms to those identified above.

G. All requests are limited to materials applicable to California claims and/or policies whether or not applicable to claims/policies in other states. Plaintiffs do not seek DOCUMENTS solely applicable to claims/policies in states other than California.

H. If you claim that any document otherwise required to be produced by this request for production of DOCUMENTS is privileged, for each such document provide the following information.

a. The document's title and general subject matter;

b. The date of the document;

c. The author of the document;

d. The person for whom the document was prepared or to whom it was sent, including all persons who received copies of the document;

e. The nature of the privilege claimed; and

f. Each fact upon which you base your claim of privilege.

**DOCUMENTS TO BE PRODUCED**[1]

97. The complete CLAIM file, including but not limited to the CLAIM LOG, for the loss and claim referred to by Robin Dixon in her communication to Ellen Redmond on October 10, 2025, in which Ms. Dixon said the following: "I want to make sure I get this right because *the last time I denied coverage for a slab leak and a plumbing reroute, it was overturned and we took care of the resulting damage.*" (Bates MYLEK00000025PROD) The request is for the documents redacted of all references to the insured(s), insured(s) address, or any other identifying information for the insured.

98. YOUR Operations Guide, or "OG", OG 70-140 – Claim File Management and Resources.

99. YOUR TRAINING OR GUIDELINES video titled "Water Loss Coverage and Investigation".

100. YOUR TRAINING OR GUIDELINES video titled "Intro/Introduction to Water Losses".

101. YOUR TRAINING OR GUIDELINES video titled Video - "Water Coverage - Plumbing".

102. YOUR TRAINING OR GUIDELINES video titled "Water Coverage - Plumbing - Pressurized Supply Line Burst".

103. YOUR TRAINING OR GUIDELINES titled "Water Coverage – Plumbing Video" which is referred to in YOUR production in *Tong et al v. State Farm General Insurance Company*, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004431.

104. YOUR TRAINING OR GUIDELINES titled "Residential Plumbing VOD" which is referred to in YOUR production in *Tong et al v. State Farm General Insurance Company*, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004431.

105. YOUR TRAINING OR GUIDELINES titled "Water Coverage – Plumbing Video" which is referred to in YOUR production in *Tong et al v. State Farm General Insurance Company*, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004431.

106. YOUR TRAINING OR GUIDELINES titled "Water Coverage – Foundation Video"

[1] All requests are for the period 2015 to present unless otherwise indicated.

which is referred to in YOUR production in *Tong et al v. State Farm General Insurance Company*, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004431.

107. YOUR TRAINING OR GUIDELINES titled "Water Coverage Investigation" which is referred to in YOUR production in *Tong et al v. State Farm General Insurance Company*, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004442.

108. YOUR TRAINING OR GUIDELINES titled "Water Coverage – Foundation Losses" which is referred to in YOUR production in *Tong et al v. State Farm General Insurance Company*, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004442.

109. YOUR TRAINING OR GUIDELINES titled "Water Coverage – Plumbing" which is referred to in YOUR production in *Tong et al v. State Farm General Insurance Company*, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004442.

110. YOUR TRAINING OR GUIDELINES titled "Water Operational Concepts Onboarding" which begins in YOUR production in *Tong et al v. State Farm General Insurance Company*, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004444.

111. DOCUMENTS YOU produced in the matter *Pachall v. State Farm General Insurance Company,* San Diego Superior Court, No. 37-2022-00044176-CU-IC-CTL, Bates Range PACHB00002480-2554, "HW-2100 – Losses Not Insured Module 2 of 2."

112. DOCUMENTS YOU produced in the matter *Pachall v. State Farm General Insurance Company,* San Diego Superior Court, No. 37-2022-00044176-CU-IC-CTL, Bates Range PACHB00003374-3431, Homeowners Policy Section I Losses Not Insured (Module 2)."

113. DOCUMENTS YOU produced in the matter *Pachall v. State Farm General Insurance Company,* San Diego Superior Court, No. 37-2022-00044176-CU-IC-CTL, Bates Range PACHB00003593-3595, policy slides.

114. DOCUMENTS YOU produced in the matter *Pachall v. State Farm General Insurance Company,* San Diego Superior Court, No. 37-2022-00044176-CU-IC-CTL, Bates Range PACHB00003912-3995,HW-2100 Policy Comparison Section I Module 2 of 2."

115. DOCUMENTS YOU produced in the matter *Pachall v. State Farm General Insurance Company,* San Diego Superior Court, No. 37-2022-00044176-CU-IC-CTL, Bates Range PACHB00004447-4467, "Water Loss Skill Review Answer Key and Resources."

Date: July 6, 2026

Kerley Schaffer LLP

/s/ Dylan Schaffer

Dylan L. Schaffer
Attorneys for Plaintiffs

**PROOF OF SERVICE**
***Myles, et al, v. State Farm***
**U.S. DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**
**Case No. 2:26-cv-00452-CAS (MBKx)**

I declare that I am over the age of 18 years and not a party to this action. My business address is 1939 Harrison Street, #900, Oakland, CA 94612. On July 6, 2026, I served the following on the interested parties in this action:

**PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO STATE FARM GENERAL INSURANCE COMPANY, SET THREE**

| | |
|---|---|
| Jennifer M. Hoffman<br>Madalyn A. Macarr<br>Carolyn Carey<br>**SHEPPARD, MULLIN, RICHTER, & HAMPTON LLP**<br>350 South Grand Avenue, 40th Floor<br>Los Angeles, CA 90071<br>Telephone: 213.620.1780<br>jhoffman@sheppard.com<br>mmacarr@sheppard.com<br>ccarey@sheppard.com<br><br>*ATTORNEYS FOR DEFENDANT STATE FARM GENERAL INSURANCE COMPANY* | |

☐ **MAIL:** By placing such documents(s) in a sealed envelope, with postage prepaid for first class mail, for collection and mailing at Oakland California following ordinary business practice for deposit with United States Postal Service.

☐ **FAX**: By causing to be transmitted the documents by use of fax machine telephone number (510)228-0350 to the parties at the facsimile numbers listed on the service list above. The fax machine used complies with California Rule of Court 2.301. The transmission was reported as complete and no error was reported by the machine. I caused the transmitting machine to print a record of the transmission, a copy of which is attached to this declaration.

☒ **E-MAIL**: By electronic mail to the addresses noted above.

☐ **ELECTRONIC TRANSMISSION**: By electronic transmission via One Legal or other Court-approved vendor as mandated by the California Code of Civil Procedure section 1010.6, California Rules of Court 2.253(b)(2) and San Francisco Superior Court Local Rule 2.10. to the electronic mailing addresses noted above.

☐ **FEDEX:** By placing for overnight delivery such documents(s) in a facility or box that is regularly maintained by FedEx.

☐ **HAND DELIVERY:** Caused to be hand delivered.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true, and if called as a witness I could testify competently thereto. This declaration was executed July 6, 2026, at Oakland, California.

/s/ Ronan Morrill
Ronan Morrill

# EXHIBIT E

EXHIBIT E

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
JENNIFER M. HOFFMAN, Cal. Bar No. 240600
jhoffman@sheppard.com
MADALYN MACARR, Cal. Bar No. 301539
mmacarr@sheppard.com
SARAH A. K. BLITZ, Cal. Bar No. 280118
sblitz@sheppard.com
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone: 213.620.1780
Facsimile: 213.620.1398

Attorneys for Defendant
STATE FARM GENERAL
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY MYLES, an individual, and WILLIE DANIELS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 10,<br><br>Defendant. | Case No. 2:26-cv-00452-CAS (MBKx)<br><br>*Assigned to Hon. Christina A. Snyder*<br><br>**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. THREE**<br><br>Trial Date: October 12, 2027 |

**PROPOUNDING PARTY:** **PLAINTIFFS KATHY MYLES AND WILLIE DANIELS**

**RESPONDING PARTY:** **DEFENDANT STATE FARM GENERAL INSURANCE COMPANY**

**SET NO.:** **THREE (3)**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant State Farm General Insurance Company ("State Farm") hereby objects and responds to Plaintiffs Kathy Myles and Willie Daniels ("Plaintiffs") Third Set of Requests for Production of Documents (the "Requests") as set forth below.

## PRELIMINARY STATEMENT

State Farm responds to the Requests solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, admissibility, privilege, privacy, proprietary information, trade secrets and the like, and any and all other objections on grounds that would require the exclusion of any response herein if such were offered in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

No incidental or implied admissions are intended in these responses. The fact that State Farm has responded to any part or all of any Request should not be taken as an admission that State Farm accepts or admits the existence of any facts set forth or assumed by such Request or that such response constitutes admissible evidence. The fact that State Farm has responded to any part or all of any Request is not intended to and shall not be construed to be a waiver by State Farm of all or any part of any objection to any Request.

State Farm has not completed its discovery in this action or preparation for the trial. State Farm reserves the right to supplement, modify or correct its responses to these Requests, or any part of them, as State Farm acquires additional information in the course of its investigation and discovery in this action.

This preliminary statement is incorporated by reference to each of the responses below as if stated in full.

## GENERAL OBJECTIONS

1. State Farm objects to the Requests including the "Instructions" and "Definitions" sections, to the extent that they conflict with or attempt to enlarge any obligations that State Farm has under the applicable rules and procedures of the Court. State Farm will ignore all such requests, definitions, and instructions to the extent that they conflict with the applicable rules and procedures.

2. State Farm also objects to the Requests to the extent that they seek to impose burdens or obligations beyond or inconsistent with those required by the

Federal Rules of Civil Procedure ("FRCP") or other applicable law.

3. State Farm objects to the Requests to the extent that they seek information protected from disclosure by the attorney-client privilege, the work product doctrines, California Insurance Code section 791.13, and/or any other statutory or common law protection against disclosure.

4. State Farm objects to the extent that the Requests seek personal, private, confidential, trade secret and/or proprietary information of State Farm, and/or its affiliates, agents or partners.

5. State Farm objects to the extent that the Requests seek confidential, private personal or business information, including private information subject to an individual's right of privacy guaranteed by the United States Constitution, the California Constitution, and/or any other statutory or common law privacy protection. Plaintiffs have not established that such information is necessary to a fair adjudication of this case, or that the Requests for information outweighs the privacy interests involved.

6. State Farm objects to the Requests to the extent that they require a claim-by-claim review, seek information not proportionate to the needs of the case, or are otherwise overbroad or unduly burdensome and oppressive.

7. State Farm objects to the Requests to the extent they seek confidential, proprietary business information and/or trade secrets. To the extent that State Farm agrees to provide non-privileged information to these Requests, it will only provide confidential, proprietary business information and/or trade secret information subject to the entry of an acceptable protective order in this case.

8. The above General Objections are incorporated by reference in each of the individual responses that follow, and the individual responses are provided subject to and without waiving the matters set forth therein. The term "objections" shall refer to all General Objections and any objection specifically made to a particular Request.

# INSTRUCTIONS AND OBJECTIONS

**INSTRUCTION:**

Plaintiffs request that Defendant State Farm General Insurance Company produce the DOCUMENTS described below for inspection and copying and serve Plaintiffs the written response within thirty (30) days after service of this request. The place for inspection shall be at the office of Kerley Schaffer LLP, 1939 Harrison Street, Suite 900, Oakland, CA 94612.

In lieu of personal appearance and production on the above date, compliance with this Request for Production of DOCUMENTS may be accomplished by mailing to counsel at the above address, full, true and correct copies of the requested DOCUMENTS, verified by you as such, in a manner prescribed for written response to the demand for inspection of DOCUMENTS pursuant to Rule 34 of the Federal Rules of Civil Procedure, on or before thirty (30) days from the date of this demand.

YOUR WRITTEN RESPONSE TO THIS INSPECTION DEMAND must respond separately to each numbered demand for inspection below by:

1. A statement that you will comply with the particular demand;

2. A statement that you lack the ability to comply with the particular demand; or

3. Any objection to the particular demand. F.R.C.P. 34(b).

If your response to a particular demand is a statement that you will comply with that demand, you must state in your response whether the production will be allowed in whole or in part, and you must state that DOCUMENTS or things in the demanded category that are in your possession, custody or control and to which no objection is being made will be included in the production. F.R.C.P. 34(b).If your response to a particular demand is a statement that you lack the ability to comply with that demand, you must affirm in your response that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand. This statement shall also specify whether the inability to comply is because the particular

item or category never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody or control, in which case the name and address of any person or entity known or believed by you to have possession, custody or control of that document or category of documents should be identified. F.R.C.P. 34(b).

**OBJECTION:**

State Farm objects to this Instruction and inspection demand to the extent they purport to impose obligations on State Farm beyond or inconsistent with the requirements of the Federal Rules of Civil Procedure, including Rule 34(b), or any other applicable statute, rule, or court order.

State Farm further objects to the Instruction and inspection demand as unreasonable, unduly burdensome, and oppressive.

State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' Instruction regarding "item[s]" or "categor[ies]" that have been "destroyed", "lost", "misplaced", "stolen", or which have "never been" or "[are] no longer" in State Farm's possession, custody or control.

In addition, State Farm objects to Plaintiffs' Instruction insofar as it seeks details regarding "item[s]" or "categor[ies]" that have been "destroyed", "lost", "misplaced", "stolen", or which have "never been" or "[are] no longer" in State Farm's possession, custody or control on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible

discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' Instruction is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

**INSTRUCTION:**

If your response to a particular demand is an objection, you must set forth in your response the extent of, and the specific ground for, the objection. In your response, you must also identify with particularity any document responsive to the particular demand that is being withheld from production based upon a claim of privilege or other protection and state the particular privilege or protection being invoked. (F.R.C.P. 34(b).) To identify with particularity documents withheld from production, you should provide, for each document withheld, the following information if known or available to you:

1. Title or subject matter of document;
2. The date composed or date appearing on the document;
3. Author and Addressee;
4. Number of Pages;
5. Identify of all persons or entities who saw or received a copy of such document, including the job titles of each such person;
6. The present location of the item;
7. The identity of the person or persons who have custody, control, or possession thereof.
8. The nature of the privilege claimed; and
9. Each fact upon which you base your claim of privilege.

**OBJECTION:**

State Farm objects to Plaintiffs' Instruction insofar as it directs State Farm to undertake efforts that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information and describe the same in accordance with the Federal Rules of Civil Procedure and substantive law.

**INSTRUCTION:**

Electronic media should be produced in its native format (e.g., Word documents and Excel spreadsheets produced with .doc and .xls extensions and email produced in .pst files if Outlook is the email client).

**OBJECTION:**

State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' Instruction to produce "Electronic media" in its "native format".

In addition, State Farm objects to Plaintiffs' Instruction regarding production of "Electronic media" in its "native format" to the extent it purports to seek production of ESI in "native format" both because it contradicts Plaintiffs' definition of the term "DOCUMENT" or "DOCUMENTS" below and because it exceeds the parameters of the Federal Rules of Civil Procedure. Pursuant to Fed. R. Civ. P. 34(b)(2)(E)(ii), State Farm may produce discoverable ESI in reasonably usable formats. Production of ESI in "native format" would be disproportionate to the needs of this case considering the value of the case and the importance of the discovery at issue and would be unduly burdensome to the extent such format is not reasonably accessible to State Farm in the ordinary course of its business. Fed. R. Civ. P. 26(b)(2). In addition, State Farm frequently creates ESI in one format and, in the ordinary course of its business, stores it in another format in its system of record. State Farm further objects that it does not need to produce ESI in more than one form, and that the production of "Electronic media" in "native format" would be

cumulative and duplicative of the alternative reasonably usable formats proffered. Fed. R. Civ. P. 34(b)(2)(E)(iii); 26(b)(2).

To the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

**INSTRUCTION:**

These requests for production include the original media and all copies that differ from the original in any respect, such as notations made on the copy. These requests are also intended to include all media of any nature that are now or have at any time been within your care, custody or control. If a document or media is no longer in your care, custody or control, identify its disposition.

**OBJECTION:**

State Farm objects to Plaintiffs' Instruction to produce "copies" on the grounds that copies are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. Fed. R. Civ. P. 26. To the extent that "copies" are not business records stored in a central repository in State Farm's ordinary course of business, the collection and production of "copies" would not be proportional to the needs of the case. Fed. R. Civ. P. 26.

In addition, State Farm objects to Plaintiffs' Instruction insofar as it seeks details regarding "document[s] or media" that "is no longer in [State Farm's] care, custody or control" on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly

burdensome, and beyond the scope of permissible discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' Instruction is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

**OBJECTIONS TO DEFINITIONS**

1. State Farm objects to the definition of "YOU" OR "YOUR". State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' definition of "YOU" or "YOUR." State Farm objects to the terms "YOU" or "YOUR" because as defined, the terms are overbroad and over-inclusive, such that they render any category or request that includes the terms vague, ambiguous, overbroad, and potentially in violation of the attorney-client privilege and/or work product doctrines. State Farm objects to the inclusion of the capitalized term "ADJUSTERS," on the grounds that this capitalized term is not a defined term. State Farm shall construe the terms "YOU" or "YOUR" to mean State Farm in and of itself as an entity only.

In addition, State Farm objects to Plaintiffs' definition insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is only obligated to produce discoverable "DOCUMENTS" within its possession, custody, or control.

State Farm also objects to Plaintiffs' definition to the extent it may seek "DOCUMENTS" within the possession, custody, or control of State Farm's attorneys as this may require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

2. State Farm objects to the definition of "DOCUMENT" or "DOCUMENTS". State Farm incorporates by reference its objections to the terms "COMMUNICATIONS" and "ESI" as if fully set forth herein. State Farm objects to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that it is overly broad and disproportionate to the needs of the case. State Farm further object to the definition to the extent it implies State Farm has an obligation to provide discovery from sources that are not reasonably accessible. Electronically stored information ("ESI") is frequently duplicated and disbursed in the ordinary course of business and discovery regarding all identical copies of ESI would be cumulative and duplicative without any benefit to the adjudication of this action. Fed. R. Civ. P. 26(b)(2).

State Farm also object to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary computer files, log/history files, or file fragments, as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm objects to Plaintiffs' definition as overly broad, disproportionate to the needs of the case, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created by State Farm's users, such as caches, cookies, or logs, or otherwise seek to require State Farm to record and/or provide discovery regarding records and information that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. Fed. R. Civ. P. 26(b)(1).

State Farm objects to the inclusion of "DOCUMENTS" which are in the "possession, custody, or control" of "any third-party vendors" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is only obligated to produce discoverable "DOCUMENTS" within its possession, custody, or control.

State Farm also objects to Plaintiffs' definition to the extent it may include

"DOCUMENTS" within the possession, custody, or control of State Farm's attorneys as production of "DOCUMENTS" within the possession, custody, or control of State Farm's attorneys would require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

State Farm objects to the inclusion of "draft[s]" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that drafts are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. To the extent that a draft is not a business record stored in a central repository in State Farm's ordinary course of business, discovery regarding "draft[s]" would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

State Farm objects to the inclusion of "COMMUNICATIONS," "chats", "instant messages", "texts," "personal digital assistants, handheld wireless devices, mobile telephones, smart phones, tablet computers, paging devices" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that State Farm has no obligation to collect, review, or produce text messages sent or received by devices that are not in State Farm's possession, custody, or control. Fed. R. Civ. P. 26(a), 34(a). State Farm further objects that text message data that exists on mobile devices within State Farm's possession, custody, or control is not relevant to any party's claim or defense, and discovery from such devices would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1), (2). State Farm also objects because any text message data from such devices is unlikely to contain unique, relevant information that does not also exist in the relevant claim file(s) or another location that is less burdensome for collection, review, and production.

State Farm objects to the inclusion of "databases (including draft versions)", "database entries", "Internet usage files", Internet browser-created files including cookies and caches", "activity logs", and "network access information" in Plaintiffs'

definition of "DOCUMENT" or "DOCUMENTS" to the extent that Plaintiffs purport to seek information regarding State Farm technical systems and processes that are not relevant to the claims and defenses in this matter. State Farm further objects that production of a database would require production of vast amounts of irrelevant information regarding other claims, would likely result in improper alteration of relevant data, and would require production of privileged information that could not be redacted. In addition, State Farm objects that the resources that would be required to produce databases are significant and would not be proportional under Fed. R. Civ. P. 26. State Farm also objects on the grounds that databases may be proprietary to State Farm's business operations and/or may be confidential and trade secret information that need not be disclosed in order to obtain the fair adjudication of this case.

State Farm objects to Plaintiffs' definition insofar as it seeks details regarding "DOCUMENTS" that have been "deleted" on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' definition is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

State Farm objects to the inclusion of "DOCUMENTS. . . found on, archived in, or deleted from. . .on-site or off-site electronic data storage", "systems or data structures", "legacy systems (hardware and software)", "servers", "mainframes", "network servers", "cloud-based servers", "backup servers or systems", "archives", or "backup or disaster recovery systems or facilities" in Plaintiffs' definition to the extent that Plaintiffs seek discovery regarding ESI from sources that are not reasonably accessible, as it would require unreasonable efforts that are not proportional in light of the claims at issue, the value of the case, or the importance of the discovery at issue. Fed. R. Civ. P. 26(b)(1). State Farm also objects to the inclusion of information located on such systems in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that data on backup media is likely to be duplicative and/or can be discovered from other sources that are more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2) There is no "routine right of direct access to a party's electronic information system[s]" and there has been no showing in this case sufficient to overcome this presumption. Fed. R. Civ. P. 34 (Advisory Committee Notes).

In addition, State Farm objects to the inclusion of "tapes", "discs", "DVDs", "CDROMs", "drives", "portable or removable drives", "cartridges", and "other storage media", "laptops", "personal computers", "internet data", "personal digital assistants", "handheld wireless devices", "mobile telephones", "smart phones", "tablet computers", "paging devices", and "audio systems (including voicemail)" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" because such things are not "DOCUMENTS" but rather media on which "DOCUMENTS" and ESI are stored. State Farm further objects to the extent this definition purports to seek direct access to State Farm's electronic storage media. There is no "routine right of direct access to a party's electronic information system[s]" and there has been no showing in this case sufficient to overcome this presumption. Fed. R. Civ. P. 34 (Advisory Committee Notes).

Finally, State Farm objects to the definition of "DOCUMENT" or "DOCUMENTS" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges or privacy rights recognized by law.

Notwithstanding these objections, to the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

3. State Farm objects to Plaintiffs' definition of "ESI" on the grounds that it is overly broad and unduly burdensome. State Farm also objects to the extent it relies on the California Code of Civil Procedure or purports to impose obligations on State Farm beyond or inconsistent with the requirements of the Federal Rules of Civil Procedure, including Rule 34(a), or any other applicable statute, rule, or court order. State Farm further objects to the definition to the extent it implies State Farm has an obligation to provide discovery from sources that are not reasonably accessible. ESI is frequently duplicated and disbursed in the ordinary course of business and discovery regarding all identical copies of ESI would be cumulative, duplicative, and impose unnecessary burdens without any benefit to the adjudication of this action. Fed. R. Civ. P. 26(b)(2).

State Farm also objects to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary "data files", "file fragments", computer files, or log/history files as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm objects to Plaintiffs' definition as overly broad, unduly burdensome, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created by State Farm users, such as caches, cookies, or logs, or otherwise seek to require State Farm to record and/or provide discovery regarding records and information

that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. Fed. R. Civ. P. 26(b)(1), 34.

State Farm objects to the inclusion of "metadata" Plaintiffs' definition of "ESI" on the grounds that "metadata" can refer to any number of types of information, so the definition is overbroad, vague and ambiguous as to what specific information it seeks. State Farm further objects on the grounds that metadata is not relevant to the specific claims and defenses of any party, nor is discovery regarding metadata proportional to the needs of the case, and therefore the inclusion of "metadata" in Plaintiffs' definition is beyond the scope of permissible discovery. Fed. R. Civ. P. 26. In particular, the information pertinent to the claims and defenses in this case can be found in the text of discoverable "documents" and is not generally found in metadata. State Farm objects that discovery regarding metadata is not necessary to assure the fair and efficient adjudication of the claims and defenses in this matter.

Finally, State Farm objects to the definition of "ESI" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

Notwithstanding these objections, to the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

4. State Farm objects to the definition of "BELOW THE SURFACE OF THE GROUND EXCLUSION" on the grounds that it is overly broad in scope and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit. State Farm objects to this definition to the extent it purports to define as relevant – by virtue of the inclusion of "any provision in a property policy … insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase 'below the surface of the

ground'" – insurance policies beyond the specific policy at issue in this litigation on the ground that it is overly broad in scope and time. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information and/or documentation that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. This definition goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The subject insurance contract/policy speaks for itself.

5. State Farm objects to the definition of "CLAIM LOG" or "FILE HISTORY". State Farm restates and incorporates its objections to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" and applies the same to Plaintiffs' definition of "CLAIM LOG" or "FILE HISTORY." In addition, State Farm objects to Plaintiffs' definition on the grounds that the terms "chronological notes, diary, log, or calendar" are vague and ambiguous. State Farm objects to this definition as overly broad and disproportionate to the needs of the case by the specific inclusion of the terms "every claim under a California property insurance policy issued by YOU," when this case involves only a claim involving Plaintiffs' October 2025 water loss, and further objects to this definition to the extent that Plaintiff purports to define as relevant information related to other, unrelated claims of individuals not party to this litigation who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client privilege and work product doctrines. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what

may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. As such, to the extent that this definition purports to define as relevant information related to other such claims, State Farm objects to this definition.

6. State Farm objects to the definition of "CLAIM ADJUSTER(S)" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the definition of "CLAIMS ADJUSTER(S)" on the grounds that it is overly broad by virtue of the fact that it is unrestricted in scope and time, and on the basis that it specifically includes categories of individuals who did not work on Plaintiffs' claim – including but not limited to "any employee, supervisor, manager, agent, outside adjuster, independent adjuster, independent adjusting company, or other person or entity . . .employed, retained, or otherwise relied on to INVESTIGATE and/or ADJUST property claims." Information regarding the individuals who were engaged to assist with Plaintiffs' claim are identified in the Claim File and email correspondence produced by State Farm, and those are the only individuals relevant to the issues in this litigation, which stem from a single homeowner's claim relating to a fire to the Plaintiffs' home. State Farm further objects to this definition to the extent it purports to define "CLAIMS ADJUSTER(S)" in a way that diverges from the manner in which State Farm would employ that term. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case. State Farm shall construe this term to mean Claim Specialists that State Farm employed or retained in and of itself to investigate or adjust a property claim, and the Team Managers who directly supervise those Claim Specialists.

7. State Farms objects to the definition of "COMMUNICATION". State Farm restates and incorporates in full by reference its objection to Plaintiffs'

definition of "DOCUMENT" or "DOCUMENTS" and applies the same to Plaintiffs' definition of "COMMUNICATION".

In addition, State Farm objects to the inclusion of oral exchanges, including "personal meeting[s]", "conference[s]", and "conversation[s]" in Plaintiffs' definition of "COMMUNICATION" on the grounds that Fed. R. Civ. P. 34 does not require State Farm to produce "COMMUNICATION[S]" that do not already exist on a medium from which information can be obtained.

State Farm objects to Plaintiffs' definition [to the extent Plaintiff's/Plaintiffs' definition includes text messages] on the grounds that State Farm has no obligation to collect, review, or produce text messages sent or received by devices that are not in State Farm's possession, custody, or control. Fed. R. Civ. P. 26(a), 34(a). State Farm further objects that text message data that exists on mobile devices within State Farm's possession, custody, or control is not relevant to any party's claim or defense, and discovery from such devices would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1), (2). State Farm also objects because any text message data from such devices is unlikely to contain unique, relevant information that does not also exist in the relevant claim file(s) or another location that is less burdensome for collection, review, and production.

8. State Farm objects to the definitions of "CONSULTANT," "MCKINSEY & COMPANY," and "ACCENTURE" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the definition of "CONSULTANT" on the grounds that it is overly broad by virtue of the fact that it is unrestricted in scope and time, on the basis that it purports to include both "internal" and "external" consultants in the definition, and due to the use of the term "including." Further, the definition of the term "CONSULTANT" is overly broad in scope due to the inclusion of the terms "internal or external consulting department or entity, firm, advisory firm, management consulting company, or individual consultant used or retained by YOU," "evaluate, assess,

recommend changes to, or implement changes," "property claims operations," "claims handling systems," "quality assurance processes," "estimating practices," "vendor management programs," and "claims financial performance." State Farm objects to the inclusion of the terms "Office of Consulting Services" in the definition of the term "CONSULTANT" on the grounds that it is vague and ambiguous. State Farm objects to this definition to the extent it is predicated by assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm objects to the terms "CONSULTANT," "MCKINSEY & COMPANY" and "ACCENTURE" to the extent they purport to define as relevant to this action the incredibly broad topics included within this definition -- topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, concepts like "changes in [State Farm's] property claims operations, claims handling systems, quality assurance processes, estimating practices, vendor management programs, or claims financial performance that have absolutely nothing to do with the handling of Plaintiffs' claim. State Farm further objects to the inclusion of "MCKINSEY & COMPANY" and "ACCENTURE" in the definition of "CONSULTANT" to the extent that Plaintiffs purport to suggest that either company is relevant to the issues in this litigation. Finally, State Farm objects to the term "CONSULTANT" to the extent Plaintiffs purport to seek as relevant information related to other, unrelated claims, by virtue of the use of the broad, undefined term "property claims." As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

9. State Farm objects to the definition of "CONTINUOUS OR REPEATED SEEPAGE EXCLUSION" on the grounds that it is overly broad in scope and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit. State Farm objects to this definition to the extent it

purports to define as relevant – by virtue of the inclusion of "any provision in a property policy … insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase 'seepage or leakage'" – insurance policies beyond the specific policy at issue in this litigation on the ground that it is overly broad in scope and time. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information and/or documentation that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. State Farm further objects to this definition as vague and ambiguous as to the phrase "any building". This definition goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The subject insurance contract/policy speaks for itself.

10. State Farm objects to the definitions of "DENY," "DENYING," "DENIED," or "DENIAL" on the grounds that it is overly broad in scope (not limited to the claim at issue in this case by seeking "any circumstance in which [State Farm] issued a written denial letter . . . following notice of a loss pursuant to a policy of insurance sold by [State Farm] covering real property in California") and time (unlimited in time). State Farm objects to this definition to the extent it purports to define as relevant information related to other, unrelated claims, and/or to seek to discover information related to other claims, which are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the

claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. As such, to the extent that this definition purports to define as relevant information related to other such claims, State Farm objects to this definition.

11. State Farm objects to the definition of "FINANCIAL IMPACT". State Farm incorporates by reference its objections to the term SEVERITY as fully set forth herein. State Farm objects to the terms "FINANCIAL IMPACT" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the terms "FINANCIAL IMPACT" and to the extent it purports to define as relevant to this action topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, by virtue of the inclusion of these terms in the definition of "FINANCIAL IMPACT" – "investigation expenses, indemnity obligations, administrative costs, SEVERITY . . . loss ratios, cost-per-claim, average estimate amounts, or any other measure of monetary effect." State Farm further objects to the definition of "FINANCIAL IMPACT" to the extent its inclusion purports to define as relevant or to the claims or defense of any party the information included within this definition. Finally, State Farm objects to the term "FINANCIAL IMPACT" to the extent Plaintiffs purport to define "FINANCIAL IMPACT" in a manner that diverges from how such term is used within the Property and Casualty Claims department within State Farm. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

12. State Farm objects to the definition of "FIRE CLAIMS DEPARTMENT" to the extent that it purports to imply that information that was

contained in State Farm's response to Request for Production No. 74 in the aforementioned *Savas* matter is relevant, responsive, or proportional to the needs of Plaintiffs' claim. State Farm further states that its response to Request for Production No. 74 in the aforementioned *Savas* matter speaks for itself as to its source and content, but notes that the version cited in this definition is not the operative version, which is subject to the protective order in that case.

13. State Farm objects to the definition of "GUIDANCE". State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENT" or "DOCUMENTS," "TRAINING OR GUIDELINES," "POLICIES/PROCEDURES," "COMMUNICATION" or "COMMUNICATIONS," and applies the same to Plaintiffs' definition of "GUIDANCE." State Farm objects to the term "GUIDANCE" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the inclusion of "TRAINING OR GUIDELINES" and "POLICIES/PROCEDURES" in this definition to the extent redundant or cumulative of the prior definitions. State Farm objects to the term "GUIDANCE" to the extent it purports to seek materials beyond formal resources available to the individuals handling the claim from the date of loss through the end of claim handling.

State Farm further objects to the term "GUIDANCE" on the grounds that it purports to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, a water loss to Plaintiffs' home in October 2025, by seeking information "intended to communicate YOUR policies, views, directions, and/or changes to any policy, view or direction, to anyone, regarding the appropriate INVESTIGATION and/or ADJUSTING of property claims under insurance policies sold by YOU, generally, as opposed to any such policy, view, or direction expressed uniquely and solely as RELATES TO the INVESTIGATION and/or ADJUSTING of any particular claim," and to the extent this definition purports to seek and define as relevant information that facially appears to relate to

other types of causes of loss. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

14. State Farm objects to the definition of "INCENTIVE". State Farm restates and incorporates its objections to Plaintiffs' definition of "CLAIMS ADJUSTERS" and applies the same to Plaintiffs' definition of "INCENTIVE." State Farm objects to the term "INCENTIVE" as vague, ambiguous, overbroad and disproportionate to the needs of the case, especially as to use of the phrases "any system, program, process, promise by way of contract or otherwise," "financial benefits," and "for successful job and/or department and/or region and/or company performance according [sic] any metric set." State Farm further objects to the term "INCENTIVE" to the extent it purports to seek materials beyond those applicable to the individuals handling the claim from the date of loss up to the end of claim handling.

State Farm objects to this definition on the grounds that it is overly broad in scope—including things that have nothing to do with the performance of the individuals involved in the claim. State Farm also objects to the extent it is predicated by assumptions made by Plaintiffs' and/or Plaintiffs' counsel regarding "financial benefits."

State Farm objects to this definition to the extent it purports to define as relevant to the facts and circumstances of this case personal information of State Farm employees, including but not limited to information regarding the individuals who worked on Plaintiffs' claim, such that this definition may unduly invade the privacy rights of State Farm's employees. This definition goes beyond what is needed to address the claims and defenses at issue; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this

definition because it unduly invades the privacy of its employees and is broad enough to potentially implicate information that is confidential, proprietary business information. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

15. State Farm objects to the definition of "PERFORMANCE REVIEW". State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENT" or "DOCUMENTS," and "CLAIMS ADJUSTER," and applies the same to Plaintiffs' definition of "PERFORMANCE REVIEW" and included definition of "ASSESSMENT"." State Farm objects to this definition to the extent that it purports to include topics more appropriately covered in the definitions of "TRAINING OR GUIDELINES," "POLICIES/PROCEDURES," "or "GUIDANCE," rendering this definition overly broad, unduly burdensome, cumulative, duplicative, and not proportional to the needs of the case. State Farm objects to this definition to the extent that it cites the titles of or otherwise relies on proprietary, confidential, or trade secret documents such that their inclusion in this definition violates the protective orders in the matters in which those documents were produced. State Farm objects to this definition on the grounds that it is overly broad in scope—including things that have nothing to do with the performance review of the individuals involved in the claim, to the extent it is predicated by assumptions made by Plaintiffs' and/or Plaintiffs' counsel regarding the extent of terms included in this definition and/or how those might be used in application, including, for example, the inclusion of terms like "Exposure Management review," "Fire executive review," "Fire Leadership Tracker review," "Frequency Error percentage review," "Huddle Points," "Stewardship Team (all areas)," "Leadership Guide," "Quality Targets," "Leadership Action Plan, Leadership Action Plan & Communication Strategy," "Process Confirmations," "Quality Targets," "Quarterly Survey," or "Tactical Tracker," among others. State Farm objects to this definition on the grounds that it is overly broad in time (without temporal limitation). State

Farm objects to this definition to the extent it purports to define as relevant to the facts and circumstances of this case personal information of State Farm employees, including but not limited to information regarding the individuals who worked on Plaintiffs' claim, such that this definition may unduly invade the privacy rights of State Farm's employees. This definition goes beyond what is needed to address the claims and defenses at issue; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this definition because it unduly invades the privacy of its employees and is broad enough to potentially implicate information that is confidential, proprietary business information. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

16. State Farm objects to the definition of "POLICIES/PROCEDURES". State Farm restates and incorporates its objection to Plaintiffs' definition of "TRAINING OR GUIDELINES" and applies the same to Plaintiffs' definition of "POLICIES/PROCEDURES." State Farm objects to the definition of "POLICIES/PROCEDURES" as vague, ambiguous, overbroad and disproportionate to the needs of the case, including with regard to the use of the terms "bulletins," "operation manuals," "other written materials," "internal memoranda,"

directives," "executive communications," "town hall or all-hands presentation materials," "process maps" and "workflow documentation." State Farm objects to this definition on the grounds that it is overly broad due to the inclusion of "executive communications" which are by their plain meaning, neither "policies" nor "procedures". State Farm objects to the inclusion of "TRAINING OR GUIDELINES" in this request to the extent redundant or cumulative of the prior definition. State Farm objects to the terms "POLICIES/PROCEDURES" to the extent they purport to seek materials beyond formal resources available to the individuals handling Plaintiffs' claim from the date of loss through the end of claim handling. Finally, State Farm objects to the terms 'POLICIES/PROCEDURES" on

the grounds that they purport to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, an October 2025 water loss in Plaintiffs' home, by seeking information broadly related to "first party property Claims in California, but excluding auto claims" and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of losses or causes of loss that have no relevance to Plaintiffs' claim. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

17. State Farm objects to Plaintiffs' definition of "RELATE TO" or "RELATING TO", to the extent it would require State Farm to construe such terminology beyond its ordinary meaning. State Farm further objects to the extent this definition purports to seek information that bears no relevance to the claims and defenses of any party in this case or that is disproportionate to the needs of this litigation.

18. State Farm objects to the definition of "TRAINING OR [sic] GUIDELINES". State Farm repeats and incorporates by reference its objections to the terms "DOCUMENT" or DOCUMENTS" as if fully set forth herein. State Farm objects to the terms "TRAINING OR GUIDELINES" as vague, ambiguous, overbroad and disproportionate to the needs of the case. Among other things, it purports to include materials not reasonably characterized as training or guidelines. For example, it includes "Xactimate", which is a tool accessible to State Farm claims personnel; it is neither "training" nor a "guideline". Further, the definition is not limited to the type of claim or issues involved in this matter, including but not limited to the following: "Quality Claims Handling Experience, Quality Claims Handling Standards, Coverage Model, Coverage Analysis, Skills Review, In Role Skills Review, Skills Review Answer Keys, Skills Testing, Resources, Discussion Resources, Core Property Claims, Dollar One, ECHP, Basics, Coverage Analysis,

Support Guide, Claim Experience, Claim Experience Video Collaboration, Reference Guide". State Farm further objects to the extent this definition constitutes a compilation of information gleaned by Plaintiffs' counsel from the production of documents in other matters subject to protective orders in those matters. State Farm further objects to this definition to the extent that it purports to seek information without temporal limitation or information that is broader than a reasonable timeframe, to the extent it purports to seek information beyond formal training taken by the individuals who worked on Plaintiffs' claim, namely Claim Specialist Robin Dixon and Team Manager Ellen Redmond, or formal resources available to the individuals handling the claim from the date of loss through the end of claim handling. Finally, State Farm objects to the terms 'TRAINING OR GUIDELINES" on the grounds that they purport to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, a water loss by seeking information related to "first party property Claims in California, but excluding auto claims" and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of causes of loss (including, but not limited to terms including "Dollar One," "ECHP," or "Fire Focus""). As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

19. State Farm objects to the definition of "SEVERITY". State Farm repeats and incorporated by reference its objections to the term INDEMNITY, to the extent intended to be included in the definition of "SEVERITY," as if fully set forth herein. State Farm objects to the term "SEVERITY" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the term "SEVERITY" to the extent it purports to define as relevant to this action topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs'

home, by virtue of the inclusion of these terms in the definition of " SEVERITY -- "net paid indemnity divided by paid claim count, and/or paid versus reserved amounts, and/or trends of these over time." State Farm further objects to the definition of "SEVERITY" to the extent its inclusion purports to define as relevant the information included within this definition. Finally, State Farm objects to the term "SEVERITY" to the extent Plaintiffs purport to define "SEVERITY" in a manner that diverges from how such terms are used within the Property and Causality Claims department within State Farm. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

20. State Farm objects to the definition of "WATER INITIATIVE". State Farm repeats and incorporated by reference its objections to the terms "YOU," "DOCUMENT" or "DOCUMENTS," "RELATING TO," "YOUR, "WATER LOSS," and "CONSULTANT" as if fully set forth herein.

State Farm objects to the term "WATER INITIATIVE" as vague, ambiguous, and not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case. State Farm objects to the terms "modifications," "recommendations" and "systemic efforts" on the grounds that they are vague and ambiguous. This case is about a single water loss in October 2025 involving a pipe leak, and State Farm objects to this definition on the ground that it purports to define as relevant information related to other lawsuits and other claims wholly unrelated to the issues in this case. State Farm objects to this definition on the grounds that it is overly broad in scope (due to the overly broad definition of "WATER LOSS," and the use of the terms "any" and all"), time (due to the lack of temporal restrictions or any reasonable timeframe) and geography (not limited to the State of California).

State Farm objects to the definition of "WATER INITIATIVE" to the extent that Plaintiffs or Plaintiffs' counsel are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm further objects to the definition of "WATER INITIATIVE" on the grounds that it disputes Plaintiffs' adoption of a term to which State Farm specifically objected to Special Interrogatory Nos. 27 and 28 in *Jacobs et al. v. State Farm*, No. 22STCV23445, including in its Further Response to that Interrogatory. State Farm further objects to this definition in that it is overly broad in time and scope to the extent it attempts to define as relevant and responsive materials related to efforts that allegedly occurred 5 years prior to Plaintiffs' date of loss on October 11, 2025, and as such have absolutely no bearing on Plaintiffs' claim. State Farm further states that its responses to Further Responses to Special Interrogatory Nos. 27 and 28 in the aforementioned *Jacobs* matter speak for themselves as to their source and content.

In addition, State Farm objects to the definition of "WATER INITIATIVE" to the extent that it attempts to define as relevant and responsive materials related to efforts that allegedly occurred years prior to Plaintiffs' date of loss on October 7, 2025 that were produced in *Savas v. State Farm General Insurance Company, Los Angeles Superior Court*, No. 21STCV0286, and as such have absolutely no bearing on Plaintiffs' claim. State Farm further states that its response to Request for Production No. 74 in the aforementioned *Savas* matter speaks for itself as to its source and content, but notes that the version cited in this definition is not the operative version, which is subject to the protective order in that case.

State Farm further objects to this definition to the extent this is predicated on assumptions made by Plaintiffs or their counsel herein, and to the extent that Plaintiffs purport to suggest that it would be in any way problematic to have efforts "to improve quality, diligence, evaluation of facts, accurate application of coverage, accurate documentation of claim files, efficiency, consistency, accuracy, paying what is owed, and/or customer satisfaction" in connection with claim handling for water loss claims.

21. State Farm objects to the definition of "WATER LOSSES" as vague, ambiguous, overbroad and disproportionate to the needs of the case. This case is about a single water loss involving a pipe leak, and State Farm objects to this objection on the ground that it expressly seeks to purport to define as relevant information related to other types water loss claims wholly unrelated to the issues in this case—by the express inclusion of the following terms: "losses involving escape of water or steam from a heating, air conditioning or automatic fire protection system; household appliance; or plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture". State Farm further objects to this definition to the extent it diverges from how State Farm defines and/or catalogues claims involving water losses. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

22. State Farm objects to "definition" DD. State Farm repeats and incorporated by reference its objections to the definition of "DOCUMENT" or "DOCUMENTS," as if fully set forth herein. State Farm objects to "definition" DD on the grounds that it is not a definition, though styled as such, but rather an Instruction.

State Farm objects to Definition/Instruction DD as vague, ambiguous, overbroad and disproportionate to the needs of the case. This case is about a single

water loss involving a pipe leak, and State Farm objects to this objection on the ground that it expressly seeks to purport to define as relevant information related to other types water loss claims wholly unrelated to the issues in this case – by the express inclusion of the following terms: "materials applicable to California claims and/or policies whether or not applicable to claims/policies in other states." State Farm objects to this Definition/Instruction to the extent it purports to define as relevant information related to other, unrelated claims, and/or to seek to discover information related to other claims, which are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This Definition/Instruction is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Further, the policy contract at issue in this case speaks for itself and information related to other policies has no bearing in this action; as such, State Farm objects to this definition/instruction to the extent Plaintiffs purport to suggest that information related to other policies has any bearing on this case and/or Plaintiffs' claim. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

23. State Farm objects to "definition" EE on the grounds that it is not a definition, though styled as such, but rather an Instruction. State Farm objects to Plaintiffs' Definition/Instruction insofar as it directs State Farm to undertake efforts

that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information and describe the same in accordance with the Federal Rules of Civil Procedure and substantive law.

**RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS SET THREE(3)**

**REQUEST FOR PRODUCTION NO. 97:**

The complete CLAIM file, including but not limited to the CLAIM LOG, for the loss and claim referred to by Robin Dixon in her communication to Ellen Redmond on October 10, 2025, in which Ms. Dixon said the following: "I want to make sure I get this right because the last time I denied coverage for a slab leak and a plumbing reroute, it was overturned and we took care of the resulting damage." (Bates MYLEK00000025PROD) The request is for the documents redacted of all references to the insured(s), insured(s) address, or any other identifying information for the insured.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

State Farm incorporates by reference its objections to the term "CLAIM LOG" as if fully set forth herein. State Farm further objects to this request on the grounds that this case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual

merits. Any such unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the Plaintiffs herein with regard to their claim under the subject policy and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. *See*: *State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003).*State Farm objects to this request to the extent it seeks confidential business information. State Farm additionally objects because the requested information ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client privilege and work product doctrine. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. California Insurance Code section 791.13 restricts the disclosure of personal or privileged information concerning an individual that was collected or received in connection with an insurance transaction. Accordingly, State Farm objects to producing information concerning claim payments, property characteristics or valuations, or other personal or financial information relating to the nonparty policyholder.

Subject to and without waiving said objections, State Farm states that it will conduct a reasonable search and, to the extent it is able to identify the claim referenced in the document produced at page MYLEK00000025PROD, will produce by August 14, 2026, documents sufficient to reflect Ms. Dixon's involvement in the initial and subsequent coverage determinations for the referenced claim with private financial and personal identifying information redacted, as well redaction of any privileged material and any other information protected from disclosure by applicable federal or state law.

**REQUEST FOR PRODUCTION NO. 98:**

YOUR Operations Guide, or "OG", OG 70-140 – Claim File Management and Resources.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

State Farm objects to this request to the extent that Plaintiffs or their counsel are quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm objects to this request to the extent it purports to represent that the name of Operation Guide 70-140 is "Claim File Management and Resources." State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks

confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce, by August 14, 2026, a copy of the version(s) of OG 70-140 that were applicable and in effect during the relevant timeframe subject to the protective order that has been issued in this case.

**REQUEST FOR PRODUCTION NO. 99:**

YOUR TRAINING OR GUIDELINES video titled "Water Loss Coverage and Investigation"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99:**

State Farm objects to this request to the extent that Plaintiffs or their counsel are quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). State Farm objects to this request to the extent this request seeks the production of materials that were already produced subject to protective order in this action. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or

defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to said objections, State Farm states that it has already produced training materials with this title, which was identified on the training transcripts that were produced in this case, all subject to the protective order that was entered in this case. *See* MYLEK00000550PROD.

**REQUEST FOR PRODUCTION NO. 100:**

YOUR TRAINING OR GUIDELINES video titled "Intro/Introduction to Water Losses".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

State Farm objects to this request to the extent that Plaintiffs or their counsel are quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was as a

Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). State Farm objects to this request to the extent this request seeks the production of materials that were already produced subject to protective order in this action. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to said objections, State Farm states that it has already produced training materials with this title, subject to the protective order that was entered in this case. *See* MYLEK00000550PROD.

**<u>REQUEST FOR PRODUCTION NO. 101:</u>**

YOUR TRAINING OR GUIDELINES video titled Video - "Water Coverage - Plumbing".

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 101:</u>**

State Farm objects to this request to the extent that Plaintiffs or their counsel are quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such

that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). State Farm objects to this request to the extent this request seeks the production of materials that were already produced subject to protective order in this action. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to said objections, State Farm states that it has already produced training materials with this title, which was identified on the training transcripts that were produced in this case, all subject to the protective order that was entered in this case. *See* MYLEK00000530PROD.

**REQUEST FOR PRODUCTION NO. 102:**

YOUR TRAINING OR GUIDELINES video titled "Water Coverage - Plumbing - Pressurized Supply Line Burst".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

State Farm objects to this request to the extent that Plaintiffs or their counsel are quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant

training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and a course with this title does not appear on those transcripts. As such, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 103:**

YOUR TRAINING OR GUIDELINES titled "Water Coverage – Plumbing Video" which is referred to in YOUR production in Tong et al v. State Farm General Insurance Company, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004431.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

State Farm objects to this request on the grounds that Plaintiffs or their counsel are seeking information obtained by quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, despite the representations made by Plaintiffs' counsel that such documents were not retained after the conclusion of that matter, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). State Farm objects to this request to the

extent this request seeks the production of materials that were already produced subject to protective order in this action. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and included in its production is a course entitled "Water Coverage Plumbing." *See* MYLEK00000530PROD. To the extent that Plaintiffs seek other courses, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 104:**

YOUR TRAINING OR GUIDELINES titled "Residential Plumbing VOD" which is referred to in YOUR production in Tong et al v. State Farm General Insurance Company, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004431.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

State Farm objects to this request on the grounds that Plaintiffs or their counsel are seeking information obtained by quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by

State Farm in this case, despite the representations made by Plaintiffs' counsel that such documents were not retained after the conclusion of that matter, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and a course with this title does

not appear on those transcripts. As such, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 105:**

YOUR TRAINING OR GUIDELINES titled "Water Coverage – Plumbing Video" which is referred to in YOUR production in Tong et al v. State Farm General Insurance Company, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004431.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105:**

State Farm objects to this request on the grounds that it is duplicative of Request No. 103.

State Farm objects to this request on the grounds that Plaintiffs or their counsel are seeking information obtained by quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, despite the representations made by Plaintiffs' counsel that such documents were not retained after the conclusion of that matter, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). State Farm objects to this request to the

extent this request seeks the production of materials that were already produced subject to protective order in this action. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and included in its production is a course entitled "Water Coverage Plumbing." *See* MYLEK00000530PROD. To the extent that Plaintiffs seek other courses, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 106:**

YOUR TRAINING OR GUIDELINES titled "Water Coverage – Foundation Video" which is referred to in YOUR production in Tong et al v. State Farm General Insurance Company, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004431.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106:**

State Farm objects to this request on the grounds that it is duplicative of Request No. 103.

State Farm objects to this request on the grounds that Plaintiffs or their counsel are seeking information obtained by quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, despite the representations made by Plaintiffs' counsel that such documents were not retained after the conclusion of that matter, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work

product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and a course with this title does not appear on those transcripts. As such, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 107:**

YOUR TRAINING OR GUIDELINES titled "Water Coverage Investigation" which is referred to in YOUR production in Tong et al v. State Farm General Insurance Company, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004442.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

State Farm objects to this request on the grounds that Plaintiffs or their counsel are seeking information obtained by quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, despite the representations made by Plaintiffs' counsel that such documents were not retained after the conclusion of that matter, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as

a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). State Farm objects to this request to the extent this request seeks the production of materials that were already produced subject to protective order in this action. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and included in its production is a course entitled "Water Coverage Investigation." See MYLEK00000528PROD. To the extent that Plaintiffs seek other courses, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 108:**

YOUR TRAINING OR GUIDELINES titled "Water Coverage – Foundation Losses" which is referred to in YOUR production in Tong et al v. State Farm

General Insurance Company, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004442.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

State Farm objects to this request on the grounds that Plaintiffs or their counsel are seeking information obtained by quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, despite the representations made by Plaintiffs' counsel that such documents were not retained after the conclusion of that matter, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work

product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and a course with this title does not appear on those transcripts. As such, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 109:**

YOUR TRAINING OR GUIDELINES titled "Water Coverage – Plumbing" which is referred to in YOUR production in Tong et al v. State Farm General Insurance Company, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004442.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

State Farm objects to this request on the grounds that Plaintiffs or their counsel are seeking information obtained by quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, despite the representations made by Plaintiffs' counsel that such documents were not retained after the conclusion of that matter, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as

a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). State Farm objects to this request to the extent this request seeks the production of materials that were already produced subject to protective order in this action. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and included in its production is a course entitled "Water Coverage Plumbing." See MYLEK00000530PROD. To the extent that Plaintiffs seek other courses, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 110:**

YOUR TRAINING OR GUIDELINES titled "Water Operational Concepts Onboarding" which begins in YOUR production in Tong et al v. State Farm General Insurance Company, Central District of California, No. 2:24-cv-02219-DSF-MAR, Bates TONGW00004444.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

State Farm objects to this request on the grounds that Plaintiffs or their counsel are seeking information obtained by quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, despite the representations made by Plaintiffs' counsel that such documents were not retained after the conclusion of that matter, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses,

and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and a course with this title does not appear on those transcripts. As such, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**<u>REQUEST FOR PRODUCTION NO. 111:</u>**

DOCUMENTS YOU produced in the matter Pachall v. State Farm General Insurance Company, San Diego Superior Court, No. 37-2022-00044176-CU-IC-CTL, Bates Range PACHB00002480-2554, "HW-2100 – Losses Not Insured Module 2 of 2."

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 111:</u>**

State Farm objects to this request to the extent that Plaintiffs or their counsel are quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case. Regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as

a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). State Farm objects to this request to the extent this request seeks the production of materials that were already produced subject to protective order in this action. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and included in its production are the following courses: HW-2100 SECTION 1 - LOSSES NOT INSURED - MODULE 1," HW-2100 SECTION 1 - LOSSES NOT INSURED - MODULE 2" and "HW-2100 SECTION 1 - LOSSES NOT INSURED - MODULE 3"; *see* MYLEK00000544PROD- MYLEK00000546PROD. To the extent that Plaintiffs seek other courses, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 112:**

DOCUMENTS YOU produced in the matter Pachall v. State Farm General Insurance Company, San Diego Superior Court, No. 37-2022-00044176-CU-IC-CTL, Bates Range PACHB00003374-3431, Homeowners Policy Section I Losses Not Insured (Module 2)."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

State Farm objects to this request to the extent that Plaintiffs or their counsel are quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request to the extent it is duplicative or cumulative of Request No. 111, above. State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). State Farm objects to this request to the extent this request seeks the production of materials that were already produced subject to protective order in this action. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the

issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and included in its production is the following course: HW-2100 SECTION 1 - LOSSES NOT INSURED - MODULE 2"; *see* MYLEK00000545PROD. To the extent that Plaintiffs seek other courses, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 113:**

DOCUMENTS YOU produced in the matter Pachall v. State Farm General Insurance Company, San Diego Superior Court, No. 37-2022-00044176-CU-IC-CTL, Bates Range PACHB00003593-3595, policy slides.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

State Farm objects to this request on the grounds that Plaintiffs or their counsel are seeking information obtained by quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, regardless of whether any such documents containing the

words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and a course with this title does not appear on those transcripts. Moreover, to the extent Plaintiffs seek information related to the policy contract at issue in this litigation, that has already been produced in this matter (SF-POL0000001 – SF-POL0000059). As such, Plaintiffs

have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 114:**

DOCUMENTS YOU produced in the matter Pachall v. State Farm General Insurance Company, San Diego Superior Court, No. 37-2022-00044176-CU-IC-CTL, Bates Range PACHB00003912-3995,HW-2100 Policy Comparison Section I Module 2 of 2."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

State Farm objects to this request on the grounds that Plaintiffs or their counsel are seeking information obtained by quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own

merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets.

Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and a course with this title does not appear on those transcripts. As such, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm responds that it will not produce additional documents in response to this request.

**REQUEST FOR PRODUCTION NO. 115:**

DOCUMENTS YOU produced in the matter Pachall v. State Farm General Insurance Company, San Diego Superior Court, No. 37-2022-00044176-CU-IC-CTL, Bates Range PACHB00004447-4467, "Water Loss Skill Review Answer Key and Resources."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

State Farm objects to this request to the extent that Plaintiffs or their counsel are quoting confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case, regardless of whether any such documents containing the words used in this request were produced by State Farn pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders. State Farm further objects to the production of documents

responsive to this request to the extent that they seek information that was in existence prior to September 2023, when Claim Specialist Robin Dixon was hired as a Claim Specialist, and given that Team Manager Ellen Redmond was not hired until December 2024.

State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving said objections, State Farm states as follows: Consistent with its objections and State Farm's prior responses to discovery, State Farm states that it committed to producing—and has produced—the relevant training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon, and a course with this title does not appear on those transcripts. As such, Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and based on its objections, State Farm will not produce additional documents in response to this request.

Dated: August 5, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *Jennifer M. Hoffman*

JENNIFER M. HOFFMAN
MADALYN A. MACARR

Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of . My business address is 350 South Grand Avenue, 40th Floor, Los Angeles, California 90071-3460.

On August 5, 2026, I served true copies of the following document(s) described as **DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. THREE** on the interested parties in this action as follows:

| | |
|---|---|
| **J. Edward Kerley**<br>**Dylan L. Schaffer**<br>**Nicholas J. Peterson**<br>**Kerley Schaffer LLP**<br>**1939 Harrison Street, Suite 900**<br>**Oakland, CA 94612**<br>**edward@kslaw.us**<br>**dylan@kslaw.us**<br>**nicholas@kslaw.us**<br>**service@kslaw.us** | **Attorneys for Plaintiffs**<br>**Kathy Myles and Willie Daniels** |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address gpasquale@sheppard.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 5, 2026, at Los Angeles, California.

______________________________
Gino M. Pasquale

# EXHIBIT F

EXHIBIT F

Sandra E. Stone (SBN 161267)
sstone@plawp.com
Colin M. Adkins (SBN 184844)
cadkins@plawp.com
PACIFIC LAW PARTNERS, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
Tel: (510) 841-7777
Fax (510) 841-7776

Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E. VERRICK WISE, an individual, NOEL RUSSELL, an individual, and LAWRENCE MARKS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 10,<br><br>Defendants. | Case No.: 4:23-cv-00163-HSG<br><br>**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS FIRST AMENDED REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE** |

PROPOUNDING PARTY: E VERRICK WISE AND NOEL RUSSELL

RESPONDING PARTY: STATE FARM GENERAL INSURANCE CO.

SET NUMBER: ONE (AMENDED)

Defendant State Farm General Insurance Company ("State Farm") responds to Plaintiff E. Verrick Wise and Noel Russell's Request for Production of Documents, Set One (Amended) as follows:

/ / /

/ / /

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

## PRELIMINARY STATEMENT

Insofar as they are relevant and do not call for duplicative or privileged information, and subject to the stated objections, State Farm will answer these requests to the best of its ability.

As to all requests, State Farm objects and will provide no information disclosing attorney-client communication and/or attorney work product information, or materials protected by third parties' privacy rights.

Discovery in this matter has not yet been completed. The responses are based upon information that is currently in the possession of State Farm. The responses are offered without prejudice to State Farm's right to offer additional information that is subsequently discovered.

## OBJECTIONS TO INSTRUCTIONS

State Farm incorporates its objection to Plaintiffs' definition of the term "DOCUMENT" and/or "DOCUMENTS" stated below and applies the same to Plaintiffs' Instruction regarding the "possession, custody or control" of such document(s).

In addition, State Farm objects to Plaintiffs' Instruction insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is only obligated to produce discoverable "DOCUMENTS" within its possession, custody, or control.

State Farm also objects to Plaintiffs' Instruction to the extent that the inclusion of "DOCUMENTS" within the possession, custody, or control of State Farm's "attorneys" would require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrine, or other privileges recognized by law.

State Farm incorporates its objection to Plaintiffs' definition of "DOCUMENT" and/or "DOCUMENTS" stated below and applies the same to

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

Plaintiffs' Instruction regarding documents that were "lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody or control."

In addition, State Farm objects to Plaintiffs' Instruction insofar as it seeks details regarding "DOCUMENTS" that are "lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody or control" on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' Instruction is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

State Farm objects to Plaintiffs' Instruction insofar as it directs State Farm to undertake efforts that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information and describe the same in accordance with the Federal Rules of Civil Procedure and substantive law.

State Farm incorporates its objection to Plaintiffs' definitions of "DOCUMENTS" and/or "DOCUMENT(s)" stated below and applies each to Plaintiffs' instruction regarding production in "Native format."

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

In addition, State Farm objects to Plaintiffs' Instruction regarding production in "Native format" to the extent it purports to seek production of ESI in "Native File" format both because it contradicts Plaintiffs' previous definition of the term "DOCUMENTS" seeking production of ESI in "PDF format" and because it exceeds the parameters of the Federal Rules of Civil Procedure. Pursuant to Fed. R. Civ. P. 34(b)(2)(E)(ii), State Farm may produce discoverable ESI in reasonably usable formats. Production of ESI in "native format" format would be disproportionate to the needs of this case considering the value of the case and the importance of the discovery at issue and would be unduly burdensome to the extent such format is not reasonably accessible to State Farm in the ordinary course of its business. Fed. R. Civ. P. 26(b)(2). In addition, State Farm frequently creates ESI in one format and, in the ordinary course of its business, stores it in another format in its system of record. State Farm further objects that it does not need to produce ESI in more than one form, and that the production of "DOCUMENTS" in "native" format would be cumulative and duplicative of the alternative reasonably usable formats proffered. Fed. R. Civ. P. 34(b)(2)(E)(iii); 26(b)(2).

To the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

State Farm incorporates its objection to Plaintiffs' definition of the term "DOCUMENT" and/or "DOCUMENTS" below and applies the same to Plaintiffs' Instruction regarding the "custody or control" of such document(s).

In addition, State Farm objects to Plaintiffs' Instruction insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is only obligated to produce discoverable "DOCUMENTS" within its possession, custody, or control.

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

State Farm also objects to Plaintiffs' Instruction to the extent that the inclusion of "DOCUMENTS" within the possession, custody, or control of State Farm's "attorneys" would require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrine, or other privileges recognized by law.

Finally, State Farm objects to the inclusion of "copies" in Plaintiffs' Instruction on the grounds that copies are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. Fed. R. Civ. P. 26. To the extent that a "copy" or "draft" is not a business record stored in a central repository in State Farm's ordinary course of business, the collection and production of "copies" would not be proportional to the needs of the case. Fed. R. Civ. P. 26.

**OBJECTIONS TO DEFINITIONS**

State Farm objects to Plaintiffs' definition of "DOCUMENT" and/or "DOCUMENTS" on the grounds that it is overly broad and disproportionate to the needs of the case. State Farm further objects to the definition to the extent it implies State Farm has an obligation to provide discovery from sources that are not reasonably accessible. Electronically stored information ("ESI") is frequently duplicated and disbursed in the ordinary course of business and discovery regarding all identical copies of ESI would be cumulative and duplicative without any benefit to the adjudication of this action. Fed. R. Civ. P. 26(b)(2).

State Farm also objects to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary computer files, log/history files, or file fragments, as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm objects to Plaintiffs' definition as overly broad, disproportionate to the needs of the case, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created by State Farm's users, such as caches, cookies, or logs, or

otherwise seek to require State Farm to record and/or provide discovery regarding records and information that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. Fed. R. Civ. P. 26(b)(1).

State Farm further objects to the inclusion of documents which are in the possession, custody, or control of "any third-party vendors" in Plaintiffs' definition of "DOCUMENT" and/or "DOCUMENTS" to the extent it seeks documents that are beyond State Farm's possession, custody, or control on the grounds that such a request exceeds the parameters of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 34(a). State Farm further objects to the extent Plaintiffs' definition seeks discovery of information that is not reasonably accessible to State Farm on the grounds that such discovery would require extraordinary efforts that are not proportional to the scope of this matter. Fed. R. Civ. P. 26.

State Farm objects to the inclusion of "drafts" in Plaintiffs' definition of "DOCUMENT" and/or "DOCUMENTS" on the grounds that drafts are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. To the extent that a copy or draft is not a business record stored in a central repository in State Farm's ordinary course of business, discovery regarding "drafts" would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

State Farm objects to the inclusion of "instant messages" and "texts" in Plaintiffs' definition of "DOCUMENT" and/or "DOCUMENTS" on the grounds that it would be unduly burdensome to produce instant messages and/or text/SMS messages that are not captured by State Farm in its ordinary course of business. Fed. R. Civ. P. 26(b).

State Farm objects to the inclusion of "databases" in Plaintiffs' definition of "DOCUMENT" and/or "DOCUMENTS" to the extent that Plaintiffs purport to seek information regarding State Farm technical systems and processes that are not

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

relevant to the claims and defenses in this matter. State Farm further objects that production of a database would require production of vast amounts of irrelevant information regarding other claims, would likely result in improper alteration of relevant data, and would require production of privileged information that could not be redacted. In addition, State Farm objects that the resources that would be required to produce databases are significant and would not be proportional under Fed. R. Civ. P. 26. State Farm also objects on the grounds that databases may be proprietary to State Farm's business operations and/or may be confidential and trade secret information that need not be disclosed in order to obtain the fair adjudication of this case.

State Farm also objects to Plaintiffs' definition insofar as it seeks details regarding documents that have been "deleted," or are otherwise unavailable as active data on a device or system, on the grounds that such a definition is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26. There is no basis to demand that State Farm generally describe all information requested that may have existed at some time. State Farm further objects to the discovery propounded by Plaintiffs to the extent it purports to call for the forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer available as active data on that device or system as unduly burdensome and beyond the scope of permissible discovery. State Farm objects that ESI and/or documents that were deleted or no longer exist are not reasonably available and the production of the same would require undue burden and expenses not proportional to the scope of the matter. Fed. R. Civ. P. 26(b). Furthermore, State Farm objects on the grounds that Plaintiffs' definition is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

State Farm objects to the inclusion of "legacy systems," "backup servers or systems, archives, backup or disaster recovery systems or facilities" in Plaintiffs' definition on the grounds that the data on backup media is likely to be cumulative and duplicative and/or can be produced from some other source that is more convenient, less burdensome, and less expensive Fed. R. Civ. P. 26(b)(2)(B). Plaintiff seeks the production of ESI from sources that are not reasonably accessible, as it would require unreasonable efforts that are not proportional in light of the claims at issue, the value of the case, or the importance of the discovery at issue. Fed. R. Civ. P. 26(b)(1).

State Farm objects to the extent this definition purports to seek direct access to any of State Farm's "mobile telephones," "smart phones," or any other portable devices. There is no "routine right of direct access to a party's electronic information system[s]" and there is no showing in this case sufficient to overcome this presumption, Fed. R. Civ. P. 34 (Advisory Committee Notes).

Finally, State Farm objects to the definition of "DOCUMENT" and/or "DOCUMENTS" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrine, or other privileges recognized by law.

Notwithstanding these objections, to the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

State Farm objects to Plaintiffs' request for "METADATA" on the grounds that "METADATA" can refer to any number of types of information, so the request is overbroad, vague and ambiguous as to what specific information the request seeks. State Farm objects to the definition of "DOCUMENT" and/or "DOCUMENTS" insofar as it purports to require that metadata be produced, as metadata is not relevant to the specific claims and defenses of any party, the

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

request for metadata is not proportional to the needs of the case, and therefore the request for metadata is beyond the scope of permissible discovery. In particular, the information pertinent to the claims and defenses in this case can be found in the text of the documents and is not generally found in metadata. State Farm objects to the request for metadata because such information is not necessary to assure the fair and efficient adjudication of the claims and defenses in this matter. To the extent ESI is produced, State Farm will produce reasonably available, relevant, non-privileged information in reasonably usable formats.

State Farm objects to Plaintiffs' Instructions insofar as they direct State Farm to undertake efforts that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information and describe the same in accordance with the Federal Rules of Civil Procedure and substantive law.

**RESPONSES TO REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

The complete file for any claim made to YOU by Plaintiffs at any time other than the CLAIMS, including but not limited to a claim made on or around June 29, 2020.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

State Farm objects to this request as vague and ambiguous as to any other "claim" it references. It further objects that the request is overbroad in scope and time, unduly burdensome, oppressive, and seeks material that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. State Farm does not maintain a physical file with respect to most claims. Information regarding the claim at issue is created, stored, managed and accessed primarily in and through the Enterprise Claim System ("ECS"), a proprietary web-based system used by State Farm General claims associates. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. To the extent that the category defined by this request exceeds the parameters of the Claim File, State Farm further objects that the electronically stored information ("ESI") demanded is not reasonably accessible without undue burden and expense. State Farm also objects to the extent the request seeks material protected by the attorney-client or attorney work product privileges.

Subject to and without waiving those objections, State Farm responds as follows: State Farm is not aware of any other claims made to State Farm General Insurance Company by Plaintiffs. If Plaintiffs are aware of any responsive additional claims, State Farm asks that they provide the claim numbers and dates of loss.

**<u>REQUEST FOR PRODUCTION NO. 2:</u>**

The complete claim files for the CLAIMS.

**[NOTE on Request No. 2: State Farm has previously produced its "claim file" relating to both CLAIMS, however the production is incomplete and therefore Responding Party <u>must supplement</u> its prior production with the remaining documents in its claim file that have not been previously produced. For example, in State Farm's previously-produced claim notes at Bates No. Wise HO CF 42, Sylvia Lopez states that she viewed two images with labels "IMG_0794" and "Kitchen (IMG_6058) as part of State Farm's investigation of the claim. These images appear nowhere in State Farm's prior production. <u>State Farm must produce these photographs and all other documents previously withheld from production</u>.]**

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 2:</u>**

State Farm objects to this request as vague and ambiguous, particularly as to "complete claim-files". It further objects that the request is overbroad in scope and time, unduly burdensome, oppressive, and seeks material that is neither

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

relevant nor reasonably calculated to lead to the discovery of admissible evidence. State Farm does not maintain a physical file with respect to most claims. Information regarding the claim at issue is created, stored, managed and accessed primarily in and through the Enterprise Claim System ("ECS"), a proprietary web-based system used by State Farm General claims associates. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. To the extent that the category defined by this request exceeds the parameters of the Claim File, State Farm further objects that the electronically stored information ("ESI") demanded is not reasonably accessible without undue burden and expense. State Farm also objects to the extent the request seeks material protected by the attorney-client or attorney work product privileges.

Subject to and without waiving those objections, State Farm responds as follows: State Farm has already produced the non-privileged portions of the Claim File for Claim # 05-29P3-57N and Claim # 05-30F7-66H. It will produce an updated version of the non-privileged portions of the Claim File for Claim # 05-30F7-66H. Moreover, State Farm has provided copies of all photos referenced in both claim files. As to the two images referenced in the request, counsel has already been provided the corresponding bates number for those images.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS reflecting electronic communications between or among YOU, and anyone concerning the PLAINTIFFS, LOSS, PROPERTY, CLAIMS, or POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

State Farm objects to this request on the grounds that it is overly broad due to the use of the terms "all" with respect to the broad categories of documents potentially encompassed by this request. Further, the request is overly broad in

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

scope (not limited to documents pertinent to the specific insurance claims and/or coverages at issue in this litigation) and time (not limited by a reasonable period). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case . Further, due to the overly broad nature of this request, it is a potential invasion of the attorney-client privilege and the work product doctrine. To the extent that the category defined by this request exceeds the parameters of the Claim File, State Farm further objects that the electronically stored information ("ESI") demanded is not reasonably accessible without undue burden and expense.

Subject to and without waiving those objections, State Farm responds as follows: State Farm has produced the non-privileged portions of the Claim File for Claim # 05-29P3-57N and Claim # 05-30F7-66H. It will produce an updated version of the non-privileged portions of the Claim File for Claim # 05-30F7-66H.

**REQUEST FOR PRODUCTION NO. 4:**

All data, messages, reports, summaries, audits, printouts, reports and any other DOCUMENTS contained in Xactanalysis or any electronic system for claim management, relating to the PLAINTIFFS, LOSS, PROPERTY, CLAIMS, or POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

State Farm objects to this request as it is overly broad due to the use of the terms "data, messages, reports, summaries, audits, printouts, reports and any other DOCUMENTS " with respect to broad categories of information. State Farm objects to the use of the term "any electronic system for claim management" as vague and ambiguous, it is not clear what is being sought. As State Farm can understand this request, it is broad enough to appear to be seeking confidential, proprietary business information and trade secrets.

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

State Farm objects that this Request is overbroad and not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Limiting its response to the "LOSS, PROPERTY, CLAIMS or POLICY" as defined, State Farm states that Xactimate and Xactanalysis information is maintained by the vendor, Verisk, which stores Xactimate information in their proprietary format(s). Information regarding estimates reported out of Xactimate by State Farm in the ordinary course of the claims handling process is stored by State Farm in image format in its Enterprise Claims System (ECS) platform. Therefore, State Farm objects that the requested information can be obtained in a format that is more convenient and less burdensome. Fed. R. Civ. P. 26(b)(2).

As presently worded, this request is not relevant, nor is it reasonably calculated to lead to the discovery of admissible evidence. The Claim File speaks for itself as to how this claim was evaluated. To the extent that the category defined by this request exceeds the parameters of the Claim File, State Farm further objects that the electronically stored information ("ESI") demanded is not reasonably accessible without undue burden and expense.

Subject to and without waiving those objections, State Farm responds as follows: State Farm has produced the non-privileged portions of the Claim File for Claim # 05-29P3-57N and Claim # 05-30F7-66H in reasonably usable formats. It will produce an updated version of the non-privileged portions of the Claim File for Claim # 05-30F7-66H. Fed. R. Civ. P. 34(b)(2)(D).

**REQUEST FOR PRODUCTION NO. 5:**

Each electronic file reflecting or pertaining to any estimate created for the LOSS or CLAIM, including but not limited to .ESX files created in Xactimate estimating software.

/ / /

/ / /

/ / /

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

State Farm objects to this request as it is overly broad due to the use of the terms "each electronic file" with respect to broad categories of information. State Farm objects to the request as vague and ambiguous, it is not clear what is being sought. As State Farm can understand this request, it is broad enough to appear to be seeking confidential, proprietary business information and trade secrets.

State Farm objects that this Request is overbroad and not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Limiting its response to the "LOSS or CLAIM" as defined, State Farm states that Xactimate and Xactanalysis information is maintained by the vendor, Verisk, which stores Xactimate information in their proprietary format(s). Information regarding estimates reported out of Xactimate by State Farm in the ordinary course of the claims handling process is stored by State Farm in image format in its Enterprise Claims System (ECS) platform. Therefore, State Farm objects that the requested information can be obtained in a format that is more convenient and less burdensome. Fed. R. Civ. P. 26(b)(2).

As presently worded, this request is not relevant, nor is it reasonably calculated to lead to the discovery of admissible evidence. The Claim File speaks for itself as to how this claim was evaluated. To the extent that the category defined by this request exceeds the parameters of the Claim File, State Farm further objects that the electronically stored information ("ESI") demanded is not reasonably accessible without undue burden and expense.

Subject to and without waiving those objections, State Farm responds as follows: State Farm has produced the non-privileged portions of the Claim File for Claim # 05-29P3-57N in reasonably usable formats. Fed. R. Civ. P. 34(b)(2)(D).

/ / /

/ / /

/ / /

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

**REQUEST FOR PRODUCTION NO. 6:**

Each copy, transcription, or notes of any recording, including any recorded telephone calls, YOU possess relating to the PLAINTIFFS, PROPERTY, LOSS, or CLAIM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

State Farm objects to this request as overly broad and potentially burdensome. Further, due to the overly broad nature of this request, the question is also a potential invasion of the attorney-client privilege and the work product doctrine. Moreover, this request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, as any transcribed statements may be found within the records produced from the Enterprise Claim System.

Subject to and without waiving those objections, State Farm responds as follows: State Farm has produced the non-privileged portions of the Claim File for Claim # 05-29P3-57N and Claim # 05-30F7-66H. No recorded statements were taken in either of these claims.

**REQUEST FOR PRODUCTION NO. 7:**

Each photograph and/or video of the PROPERTY before or after the LOSS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

State Farm objects, particularly as to the term “photograph of the PROPERTY” because this request is vague and ambiguous. It further objects that the request is overbroad in scope and time, unduly burdensome, oppressive, and seeks material that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Because the term “photograph of the PROPERTY” is vague and ambiguous, State Farm objects that this request has the potential to be unduly burdensome and not proportional to the needs of this case to the extent that the ESI demanded is not reasonably accessible without undue burden and expense.

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

Subject to and without waiving those objections, State Farm responds as follows: State Farm has produced the non-privileged portions of the Claim File for Claim # 05-29P3-57N and Claim # 05-30F7-66H. It will produce an updated version of the non-privileged portions of the Claim File for Claim # 05-30F7-66H. Photographs related to the Plaintiffs' claims are contained in those documents. State Farm will also produce copies of the application, underwriting correspondence, and printouts of the electronically stored underwriting information for Homeowners policy number 57-CZ-G247-2. To the extent they exist, any pre-loss photographs of the 1657 Glenmore Drive, Fairfield property would be included in that scope.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS comprising the complete Special Investigation Unit ("SIU") file related to CLAIM-1.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

State Farm objects to this request as vague and ambiguous, particularly as to "complete Special Investigation Unit ("SIU") file". State Farm does not maintain a physical file with respect to most claims. Information regarding the claim at issue is created, stored, managed and accessed primarily in and through the Enterprise Claim System ("ECS"), a proprietary web-based system used by State Farm General claims associates. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. To the extent that the category defined by this request exceeds the parameters of the Claim File, State Farm further objects that the electronically stored information ("ESI") demanded is not reasonably accessible without undue burden and expense. To the extent that this request seeks production of information other than the "Claim File" as described above, State Farm objects to this request as overbroad, vague, ambiguous, unduly burdensome, and as seeking

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

information that is neither relevant to the claims or defenses of a party nor proportional to the needs of the case. State Farm also objects to the extent the request seeks material protected by the attorney-client or attorney work product privileges.

Subject to and without waiving those objections, State Farm responds as follows: State Farm has already produced the non-privileged portions of the Claim File for Claim # 05-29P3-57N and Claim # 05-30F7-66H. It will produce an updated version of the non-privileged portions of the Claim File for Claim # 05-30F7-66H. Documents related to the investigation done by the Special Investigation Unit are contained within these documents.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS comprising the complete Special Investigation Unit ("SIU") file related to CLAIM-2.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

State Farm objects to this request as vague and ambiguous, particularly as to "complete Special Investigation Unit ("SIU") file". State Farm does not maintain a physical file with respect to most claims. Information regarding the claim at issue is created, stored, managed and accessed primarily in and through the Enterprise Claim System ("ECS"), a proprietary web-based system used by State Farm General claims associates. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. To the extent that the category defined by this request exceeds the parameters of the Claim File, State Farm further objects that the electronically stored information ("ESI") demanded is not reasonably accessible without undue burden and expense. To the extent that this request seeks production of information other than the "Claim File" as described above, State Farm objects to this request as overbroad, vague, ambiguous, unduly burdensome, and as seeking

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

information that is neither relevant to the claims or defenses of a party nor proportional to the needs of the case. State Farm also objects to the extent the request seeks material protected by the attorney-client or attorney work product privileges.

Subject to and without waiving those objections, State Farm responds as follows: State Farm has already produced the non-privileged portions of the Claim File for Claim # 05-29P3-57N and Claim # 05-30F7-66H. It will produce an updated version of the non-privileged portions of the Claim File for Claim # 05-30F7-66H. Documents related to the investigation done by the Special Investigation Unit are contained within these documents.

**REQUEST FOR PRODUCTION NO. 10:**

YOUR claims adjusting manual(s), including but not limited to guidelines for INVESTIGATING and/or ADJUSTING first-party property claims applicable from January 2020 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard

Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 11:**

YOUR written standards for the prompt INVESTIGTION and ADJUSTING of claims pursuant to 10 CC section 2695.6(a).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage) and time (not limited by the period of time when this claim was handled). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 12:**

DOCUMENTS reflecting the California Fair Claims Settlement Practices Regulations YOU provided to YOUR employees or agents who INVESTIGATED and/or ADJUSTED the CLAIM.

/ / /

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage) and time (not limited by the period of time when this claim was handled). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS reflecting the standards and procedures governing the activities of YOUR agents/employees working with in the Special Investigation Unit ("SIU").

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 14:**

DOCUMENTS that reflect or pertain to any referral by YOU to the National Insurance Crime Bureau, any law enforcement agency, or the California Department of Insurance, relating to the Plaintiffs, LOSS, PROPERTY, CLAIM-1, CLAIM-2, or POLICY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

State Farm objects to this request on the grounds that it is vague and ambiguous, and overly broad in scope. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome.

Subject to and without waiving the aforementioned objections, State Farm did not make a referral to the National Insurance Crime Bureau, any law enforcement agency, or the California Department of Insurance, for either Claim # 05-29P3-57N or Claim # 05-30F7-66H.

**REQUEST FOR PRODUCTION NO. 15:**

DOCUMENTS reflecting or containing training YOU provided to YOUR employees or agents, including but not limited to INTEGRAL ANTI-FRAUD

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

PERSONNEL and SIU personnel, from January 1, 2020, to the present, pursuant to the requirements of 10 CCR § 2698)(3).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

State Farm objects to this request as vague, ambiguous, and overly broad with respect to the use of the terms "DOCUMENTS reflecting or containing training" and "including but not limited to INTEGRAL ANTI-FRAUD PERSONNEL and SIU personnel". State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time, and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 16:**

DOCUMENTS reflecting or containing YOUR written procedures, pursuant to the requirements of 10 CCR § 2698.35, "to be used by the integral anti-fraud personnel to detect, identify, document, and refer suspected insurance fraud to the SIU."

/ / /

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage) and time (not limited by the period of time when this claim was handled). State Farm further objects to this request on the grounds that the phrase "integral anti-fraud personnel" is vague and ambiguous. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS reflecting or containing YOUR written procedures, pursuant to the requirements of 10 CCR § 2698.35, which contain "a listing of the red flags to be used to detect suspected insurance fraud for the insurer" specific to YOUR insurance of property insurance, excluding automobiles.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage) and time (not limited by the period of time when this claim was handled). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS containing any list or collection of RED FLAGS provided by YOU to any of YOUR employees, supervisors, managers, representatives or agents, at any time for use in the period of January 1, 2020, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage and use) and time (not limited by the period of time when this claim was handled). State Farm further objects to this request on the grounds that the phrase "RED FLAGS," which is undefined in the requests, is vague and ambiguous. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. As worded this request would conceivably cover any notes of any State Farm employee or agent related to "RED FLAGS" whether having to do with the Plaintiffs' claims or not. Finally, State Farm objects to this request to the extent it seeks

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case. As worded, the request includes material protected by the attorney-client or attorney work product privileges.

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS reflecting or containing YOUR written procedures, pursuant to the requirements of 10 CCR § 2698.36, "for the investigation of possible suspected insurance fraud."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage) and time (not limited by the period of time when this claim was handled). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

/ / /

/ / /

/ / /

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS used by YOU to provide guidance to, or to train, your claims handlers, supervisors, managers, agents, vendors, and outside adjusters, relating to the INVESTIGATION and ADJUSTING of water losses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

State Farm objects to this request as vague, ambiguous, and overly broad with respect to the use of the terms "All DOCUMENTS used by YOU to provide guidance to, or to train" and "relating to the INVESTIGATION and ADJUSTING of water losses". State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case . State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS used by YOU to provide guidance to, or to train, YOUR claims handlers, supervisors, managers, agents, vendors, and outside adjusters, relating to the application of any exclusion in the POLICIES relating to water losses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

State Farm objects to this request as vague, ambiguous, and overly broad with respect to the use of the terms "All DOCUMENTS used by YOU to provide guidance to, or to train" and "relating to the to the application of any exclusion in the POLICIES relating to water losses". State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case . State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS used by YOU to provide guidance to, or to train, YOUR claims handlers, supervisors, managers, agents, vendors, and outside adjusters, relating to the application of any exclusion in the POLICIES relating to latent defect, wear, tear, deterioration, inherent vice, latent defect, or mechanical breakdown.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

State Farm objects to this request as vague, ambiguous, and overly broad with respect to the use of the terms “All DOCUMENTS used by YOU to provide guidance to, or to train” and “relating to the to the application of any exclusion in the POLICIES relating to latent defect, wear, tear, deterioration, inherent vice, latent defect, or mechanical breakdown”. State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case . State Farm’s procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS used by YOU to provide guidance to, or to train, YOUR claims handlers, supervisors, managers, agents vendors, and outside adjusters, relating to the meaning or application of the following as applied to water losses of the following words in the POLICIES: continuous, repeating, gradual, intermittent, slow, or trickling.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

State Farm objects to this request as vague, ambiguous, and overly broad with respect to the use of the terms “All DOCUMENTS used by YOU to provide guidance to, or to train”, and “relating to the meaning or application of the following as applied to water losses of the following words in the POLICIES: continuous, repeating, gradual, intermittent, slow, or trickling”. State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS used by YOU to provide guidance to, or train, YOUR claims handlers, supervisors, managers, agents vendors, and outside adjusters, relating to the meaning or application as applied to water losses of the following phrase in the POLICIES: "occurs or develops over a period of time."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

State Farm objects to this request as vague, ambiguous, and overly broad with respect to the use of the terms "All DOCUMENTS used by YOU to provide guidance to, or to train", and "relating to the meaning or application as applied to water losses of the following phrase in the POLICIES: 'occurs or develops over a period of time.'". State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation; not limited to materials pertinent

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case . State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Subject to and without waiving the aforementioned objections, State Farm will produce the relevant sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss. State Farm will produce any relevant confidential and/or trade secret sections upon execution of the protective order.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS identified in YOUR initial disclosures pursuant to Federal Rules of Civil Procedure 26(a).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

State Farm objects to this request to the extent it seeks documents outside of State Farm's possession, custody, or control.

Subject to and without waiving those objections, State Farm responds as follows: State Farm has produced the non-privileged portions of the Claim File for Claim # 05-29P3-57N and Claim # 05-30F7-66H as well as a copy of the

Homeowners Policy in effect on the date of loss for Claim # 05-29P3-57N. State Farm will produce a copy of the Personal Articles Policy in effect on the date of loss for Claim # 05-30F7-66H. It will produce an updated version of the non-privileged portions of the Claim File for Claim # 05-30F7-66H.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS YOU intend to rely on or offer at trial in this case in support of any defense asserted by YOU.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

State Farm objects to this request as vague and ambiguous, particularly as to "intend to rely on or offer at trial in this case". Given the breath of the request it is unduly burdensome. By definition, this request seeks material protected by the attorney-client or attorney work product privileges.

Subject to and without waiving those objections, State Farm responds as follows: State Farm has produced the non-privileged portions of the Claim File for Claim # 05-29P3-57N and Claim # 05-30F7-66H as well as a copy of the Homeowners Policy in effect on the date of loss for Claim # 05-29P3-57N. State Farm will produce a copy of the Personal Articles Policy in effect on the date of loss for Claim # 05-30F7-66H. It will produce an updated version of the non-privileged portions of the Claim File for Claim # 05-30F7-66H.

**REQUEST FOR PRODUCTION NO. 27:**

DOCUMENTS sufficient to demonstrate YOUR financial condition and annual net profits for the years of 2020, 2021 and 2022.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

State Farm objects to this request as it is vague, and ambiguous, specifically with respect to the use of the term "financial condition". State Farm also objects on the grounds that this request is overbroad in scope and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; it seeks information that is neither relevant to the claims or defense of any party nor

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

proportional to the issues in this case. Given the breath of the request it is unduly burdensome.

Subject to and without waiving those objections, State Farm responds as follows: the requested documents are publicly available on the California Department of Insurance website at https://interactive.web.insurance.ca.gov/apex_extprd/f?p=144:6:25737418121875::NO:RP,6:P6_COMPANY_ID,P6_NAIC:3629,25151.

**REQUEST FOR PRODUCTION NO. 28:**

Each TRAINING TRANSCRIPT for YOUR employee Thiago K. Gloria de Souza reflecting training and knowledge check scores from January 1, 2017, through the date of production.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

State Farm objects to this request as vague, ambiguous, and overly broad with respect to the use of the term “reflecting training and knowledge check scores”. State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm’s procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets and invades the

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

privacy of its employees and associates. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Without waiving these objections, State Farm responds that Thiago K. Gloria de Souza was not a State Farm employee at the time of the CLAIMS, nor is he one currently.

**REQUEST FOR PRODUCTION NO. 29:**

Each MY BLOCK report for YOUR employee Thiago K. Gloria de Souza reflecting monthly or other periodic performance reviews and assessments conducted by their supervisor from January 1, 2017, through the date of production.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

State Farm objects to this request as vague and ambiguous as stated, specifically with respect to the use of the term "reflecting monthly or other periodic performance reviews and assessments conducted by their supervisor." Further, this request is also overbroad in time (not limited to a reasonable period of time). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm further objects to this request to the extent it calls for confidential, proprietary business information and invades the privacy of its employees and associates. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

Without waiving these objections, State Farm responds that Thiago K. Gloria de Souza was not a State Farm employee at the time of the CLAIMS, nor is he one currently.

/ / /

/ / /

/ / /

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

**REQUEST FOR PRODUCTION NO. 30:**

Each TRAINING TRANSCRIPT for YOUR employee Sylvia Lopez reflecting training and knowledge check scores from January 1, 2017, through the date of production.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

State Farm objects to this request as vague, ambiguous, and overly broad with respect to the use of the term "reflecting training and knowledge check scores". State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets and invades the privacy of its employees and associates. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 31:**

Each MY BLOCK report for YOUR employee Sylvia Lopez reflecting monthly or other periodic performance reviews and assessments conducted by their supervisor from January 1, 2017, through the date of production.

/ / /

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

State Farm objects to this request as vague and ambiguous as stated, specifically with respect to the use of the term "reflecting monthly or other periodic performance reviews and assessments conducted by their supervisor." Further, this request is also overbroad in time (not limited to a reasonable period of time). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm further objects to this request to the extent it calls for confidential, proprietary business information and invades the privacy of its employees and associates. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 32:**

Each TRAINING TRANSCRIPT for YOUR employee Vickie Temonia reflecting training and knowledge check scores from January 1, 2017, through the date of production.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

State Farm objects to this request as vague, ambiguous, and overly broad with respect to the use of the term "reflecting training and knowledge check scores". State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets and invades the privacy of its employees and associates. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 33:**

Each MY BLOCK report for YOUR employee Vickie Temonia reflecting monthly or other periodic performance reviews and assessments conducted by their supervisor from January 1, 2017, through the date of production.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

State Farm objects to this request as vague and ambiguous as stated, specifically with respect to the use of the term "reflecting monthly or other periodic performance reviews and assessments conducted by their supervisor." Further, this request is also overbroad in time (not limited to a reasonable period of time). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm further objects to this request to the extent it calls for confidential, proprietary business information and invades the privacy of its employees and associates. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 34:**

Each TRAINING TRANSCRIPT for YOUR employee Jerrell Campbell Mackey reflecting training and knowledge check scores from January 1, 2017, through the date of production.

/ / /

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

State Farm objects to this request as vague, ambiguous, and overly broad with respect to the use of the term "reflecting training and knowledge check scores". State Farm further objects to this request on the grounds that it is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets and invades the privacy of its employees and associates. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

**REQUEST FOR PRODUCTION NO. 35:**

Each MY BLOCK report for YOUR employee Jerrell Campbell Mackey reflecting monthly or other periodic performance reviews and assessments conducted by their supervisor from January 1, 2017, through the date of production.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

State Farm objects to this request as vague and ambiguous as stated, specifically with respect to the use of the term "reflecting monthly or other periodic performance reviews and assessments conducted by their supervisor." Further, this

request is also overbroad in time (not limited to a reasonable period of time). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm further objects to this request to the extent it calls for confidential, proprietary business information and invades the privacy of its employees and associates. Plaintiffs have not established that such information is necessary for a fair adjudication of this case.

DATED: October 30, 2023

PACIFIC LAW PARTNERS, LLP

By: /s/ Sandra E. Stone
SANDRA E. STONE
COLIN M. ADKINS
Attorneys for Defendant
STATE FARM GENERAL
INSURANCE COMPANY

Pacific Law Partners, LLP
15615 Alton Parkway, Suite 240
Irvine, CA 92618
(949) 242-2441 - Facsimile (949) 242-2446

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

**PROOF OF SERVICE**

At the time of service I was over the age of eighteen years and not a party to this action. My business address is Pacific Law Partners, LLP, 2000 Powell Street, Suite 950, Emeryville, California.

On the date specified below, I served the following:

DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS FIRST AMENDED REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

I served it on the following person(s):

J. Edward Kerley
Dylan L. Schaffer
Christopher Carling
Kerley Shaffer, LLP
1939 Harrison Street, Suite 500
Oakland, CA 94612
edward@kslaw.us
dylan@kslaw.us
chris@kslaw.us
service@kslaw.us
*Attorneys for Plaintiffs*

[X] **BY ELECTRONIC SERVICE:** By sending the above-described document(s) electronically as email attachment(s) in PDF format, to the email addresses set forth above.

I declare under penalty of perjury, under the laws of the State of California and the United States of America that the foregoing is true and correct.

DATED: October 30, 2023

Tina McCarthy

# EXHIBIT G

EXHIBIT G

KERLEY SCHAFFER LLP

1939 Harrison Street, Suite 900
Oakland, California 94612
t 510.379.5801 | f 510.228.0350

December 27, 2023

Honorable Alex G. Tse
United States Magistrate Judge
Oakland Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:** ***Wise et al. v. State Farm General Ins. Co.***
United States District Court Case No. 23-cv-00163-HSG-AGT

Dear Judge Tse:

The Parties submit the following joint letter regarding a discovery dispute.

**Plaintiffs' Position**

In January 2022, the Wise family suffered damage to the first floor of their home when a plumbing fixture below their kitchen sink failed, flooding the home. State Farm never inspected the house, or hired a plumber, contractor, engineer, or construction forensic expert to investigate. Instead, State Farm assigned a fraud investigator who had never investigated a water loss to conduct its coverage inquiry. After its brief investigation State Farm denied the loss, asserting it was excluded under the policy.

The Wise loss was denied based on two exclusions in the policy relating to (a) seepage and leakage of water over a period of time and (b) wear and tear of the plumbing fixture. That in mind, in September 2023, Plaintiff served requests for production which sought guidelines and training materials relating to the investigate and adjusting of water losses specifically aimed at understanding how State Farm investigates and decides coverage.[1]

Such documents are indisputably relevant and discoverable in an insurance bad faith case, without regard for whether the personnel at issue in any given claim reviewed or relied on the materials during the Wise claim.[2] Plaintiffs also sought training transcripts for the relevant claims handlers and supervisors.[3] On October 30, 2023, State Farm responded with boilerplate objections, but promised to produce "the relevant

[1] **Exhibit A** (requests 20-24); State Farm's responses are **Exhibit B.**
[2] *Miranda v. First Reliance Standard Life Ins. Co.*, 2011 WL 2441762, at *4 (N.D.Cal.,2011); *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 628 (N.D. Cal., 2010); *McCurdy v. Metropolitan Life Ins. Co.*, 2007 WL 915177, *4 (E.D. Cal. March 23, 2007); *Glenfed Development Corp. v. Superior Court*, 53 Cal.App.4th 1113, 1118 (1997).
[3] Exhibit A, Requests 28-35.

sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss."[4] State Farm gave Plaintiffs no reason to conclude that the documents described in the State Farm responses were not the sum of documents responsive to the requests.

State Farm waited until November 27, 2023, twenty-eight days, to produce portions of its Operation Guides, along with the training transcripts. The transcript for Mackey Campbell, the claim manager responsible for the denial, included a reference to a course called "Water Skill Review." State Farm did not produce any documents relating to the course itself.

We immediately sought production of documents relating to the "Skill Review" course. Over the next several weeks, through November and December, in multiple emails, we reminded State Farm of the request. State Farm's counsel never objected or argued that the "Skill Review" documents are not discoverable; rather, it sat on its hands.

Finally, with the key Rule 30(b)(6) depositions set for the last two days of the discovery period (December 28 and 29), ***on December 21, 2023***, State Farm produced a 10-page *Water Loss Skills Review*, a test given to participants in the Water Skill Review course. The next day, **Friday December 22, 2023**, in the late afternoon before the Christmas break, State Farm produced the study guide upon which the test relies, with the heading "Water Loss Skill Review Answer Key and Resources" (Answer Key).

The Answer Key contains myriad references to **other "resources"** available to claims staff to assist them to investigate and estimate water losses, analyze coverage, and apply the exclusions at issue, *i.e.*, precisely the training/guidelines Plaintiffs had sought months earlier. A list of the withheld materials is attached as **Exhibit C, Documents 1-30.**

Relatedly, but entirely distinct from the categories of documents described in the prior paragraph, in December we discovered that in very recent depositions in other suits, State Farm employees described the existence of what is known at State Farm as the "Water Loss Initiative." In one case, the carrier described the initiative as an "effort[] in California beginning in or around 2017 to help ensure consistency in the handling of water claims in California. Claims handling personnel were provided ***training that focused on reinforcing existing principles relating to proper investigation and documentation of water loss claims.*** Topics included the quality first contact, gathering the facts of loss, plumbing issues, additional investigation, determining coverage, estimates, and damage evaluation. In 2020, the settlement authority of claims handlers on water loss claims was temporarily reduced. During that period, team managers reviewed claims specialists' water loss claims for conformance with quality claim handling expectations."[5] In that case, State Farm also described a large number of

[4] Exhibit B, Responses to Requests 20-24.

[5] *Jacobs v. State Farm General Insurance Company*, Case No. 22STCV23445, Los Angeles Superior Court (responses to interrogatories).

documents relating to the Water Initiative and related training. A list of those documents, also withheld in this lawsuit, is attached as **Exhibit C, Documents 31-40.**

Although Plaintiffs' document requests nos. 20-24 plainly encompass the training materials related to the "Water Initiative," State Farm has produced nothing. Its counsel and witnesses have remained silent, never mentioning the Water Loss Initiative. Plaintiffs only became aware of the names and/or categories of documents relating to State Farm's "Water Initiative" in the last week through State Farm's own description of the documents in its responses to interrogatories in the *Jacobs* matter. Those are also listed in **Exhibit C**.

As appears, State Farm has been for months engaged in discovery abuse. In response to the requests for discoverable training and guidelines, State Farm agreed to a production which left Plaintiffs to conclude the carrier had searched for and would produce responsive documents. State Farm dragged its feet for weeks and finally made its initial production, which revealed the existence of the "Water Skills" course. Plaintiffs immediately sought production of the Skills course, and followed up multiple times over many weeks, but it was not until December 21 and 22, respectively, that State Farm produced the test and Answer Key.

But far more troubling, State Farm's delay in producing those documents now seem to have been intended to conceal the existence of myriad guidelines and training materials referenced in the Answer key. To be clear, none of these seem to be related to the Water Initiative. Of course, State Farm has also withheld all of the Water Initiative-related documents it identified in the Jacobs case (Exhibit C, Documents 31-40).

As a result of this concealment, Plaintiffs have been deprived of the opportunity to review and consider the documents, question multiple witnesses about the substance of the documents that bear on the primary issue in the case or to provide the documents to their experts. Plaintiffs have been deprived of the opportunity to examine company witnesses meaningfully and fully on topics in the concealed training, guidelines and the Water Loss Initiative documents.

Given State Farm's expansive and well-known obligations as relates to discovery requests, responses, and the production of documents, Plaintiffs request that the Court impose the following orders, or in the alternative set this matter for an evidentiary hearing after providing Plaintiffs an opportunity to question company witnesses about the search for and production of documents:

- Order production within ten days of documents on Exhibit C;
- Extend the discovery deadline for 60 days to permit Plaintiffs an opportunity to:
  - reopen three relevant depositions of claims personnel: Thiago Desouza, Mackey Campbell, and Tyria Veras;
  - after Plaintiffs have reviewed the documents, allow two additional depositions, including Rule 30(b)(6) witnesses on (a) the preservation,

search for, and production of documents responsive to the requests at issue here and (b) the substance of the documents themselves; and

- litigate further disputes relating to the foregoing issues considering State Farm's delay and concealment of the Exhibit C materials.

**State Farm's Position**

At a few minutes before 5 p.m. on the Friday before the Christmas Holiday, plaintiffs' counsel sent State Farm's counsel an email advising that they would be moving to reopen discovery and demanding production of an additional 42 groups of documents identified without dates or references. Counsel followed up this email with a joint discovery letter sent on Christmas Eve demanding State Farm's counsel respond by noon on Tuesday, December 26th. As requested, State Farm's counsel (who has been out of the office since Friday) has done so.

This appears to have been prompted by another State Farm litigation matter—not one this firm is handling. Nor were any specifics about the other suit provided—including when the loss occurred and what the time frame was for the handling of that claim. That is important because State Farm's homeowners policy for California was revised in 2020. Moreover, State Farm claim handling training is regularly updated.

Notably, the only time reference provided in Plaintiffs' discussion of the "water initiative" is to 2017—five years before the claim at issue here which occurred in January 2022. Moreover, the list attached as Exhibit C is not part of a discovery response. The list of 40 new categories of "documents" was compiled by Plaintiffs' counsel. The list contains no time references or explanations of why the purported documents are relevant. The scope of these documents is also extremely overbroad, including topics not connected to this claim in any way. (See #11, 17-19, 25 etc.). Many of the descriptions are also extremely vague and encompass a wide range of potentially responsive documents. (See #7, #17, 28). Most importantly, this last-minute request for additional documents deprives State Farm of the opportunity to object or even meet and confer regarding these newly requested documents.

In this matter, State Farm produced 2,736 pages of institutional documents on November 27, 2023. Those included various reference materials available to claims personnel as well as the training transcripts of the State Farm personnel involved in this claim.

From those transcripts, plaintiffs' counsel identified just <u>three</u> training courses for which they wanted documents. Those are the subject of Plaintiffs' Request for Production, Set Three—whose response is due on December 29th. (Attached as Exhibit D). Despite the still pending due date, State Farm has already provided the documents it located for those three courses.

Moreover, plaintiffs have had the opportunity to depose the individuals who handled this claim—including Mr. Jerrell Campbell Mackey; Mr. Thiago Glora Desouza, and Ms. Tyria Veras. Those depositions were not restricted in any way, and questions regarding handling of water claims—including training, claims approaches or other subjects were all topics that counsel did or could have covered.

Waiting until this late date to make a demand to retake depositions and for a large number of vaguely described documents without serving a request for documents is not consistent with the discovery rules. State Farm opposes plaintiffs' attempt to end-run the discovery requirements and asks that the Court decline plaintiffs' various proposed orders.[6]

Date: December 26, 2023

Kerley Schaffer LLP

________/S/______________
Dylan Schaffer
Counsel for Plaintiffs

Date: December 27, 2023

Pacific Law Partners, LLP

________/S/______________
Sandra E. Stone
Counsel for Defendant

[6] State Farm notes that Judge Tse has already made clear that he cannot extend the discovery cut-off.

# EXHIBIT C

EXHIBIT C

## EXHIBIT C

Each of the courses, videos, guidelines, and other related documents listed below are named by State Farm as resources for its claims staff in the "Answer Key" recently produced by State Farm (1-30), or were identified by State Farm in the Jacobs case, in response to interrogatories, as documents pertaining to the carrier's "Water Initiative" (30-40).

1. Water Damage Coverage Analysis (HW-2100 Series) Workday
2. Water Damage Coverage Analysis (HW-2100 Series) course in Workday
3. Water Coverage Introduction and QFC VOD
4. Water Coverage Investigation VOD
5. Introduction to Water Losses VOD
6. Water Coverage – Plumbing
7. TIPP
8. Water Loss Scenarios course in Workday
9. Fill-Up Water Loss VOD
10. Water Classes and Categories Job Aid
11. Quality First Contact Guide – Fire [Note: At State Farm, "Fire" is a reference to non-auto policies, including those like the policy at issue here which cover some water losses]
12. Water Mitigation- Xactimate Codes and Pricing VOD
13. Water Mitigation- Drying Equipment Calculations VOD
14. FAQs on Water Mitigation Summary Report Workflow
15. Fire Property Water Mitigation Training Support Guide – JA
16. Water Mitigation Estimate Review Job Aid
17. Estimating Topics - All
18. Xactimate- Changing a Component Price Job Aid
19. Reparability of Solid Wood Floor Coverings- Video on Demand
20. Water mitigation claim Handling Refresher
21. Water mitigation Job Aid
22. Water Category and Class
23. Wood Floor Damage Job Aid
24. Flooring Course in Workday
25. Masking Job Aid
26. Drywall/Paint/Insulation/Trim/Cabinets/Countertops in Workday
27. Water Claim Handling Estimatics Considerations
28. Xactimate – All Topics
29. Fire Property Water Mitigation Training Support Guide – JA
30. Residential Interior Floor Coverings course in Workday
31. "Water Initiative" Power Point(s) or other presentation materials.
32. California Fire Claims Discussion Resources
33. Claim Folder Claim Level – Claim Details – all topics
34. Quality Claim Handling Expectations – all topics
35. Plumbing System Fill-ups and Sewer Backups – Defined;
36. Homeowners Policy, Section I Property, Coverage Model;
37. California Fire Claims Discussion Agenda;
38. Q4 2021 Water Estimate Writing and Reconciliation;
39. Water Forum Coverage Mini Session;
40. Water Forum PowerPoint.

**PROOF OF SERVICE**
***Wise et al v. State Farm Gen. Ins. Co.***
**US District Court, California Northern District**
**Case No. 4:23-cv-00163-HSG**

I declare that I am over the age of 18 years and not a party to this action. My business address is 1939 Harrison Street, #900, Oakland, CA 94612. On November 29, 2023, I served the following on the interested parties in this action:

**PLAINTIFFS REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT STATE FARM, SET THREE**

Sandra E. Stone, Esq.
Colin M. Adkins, Esq.
Pacific Law Partners, LLP
20000 Powell Street, Suite 950
Emeryville, CA 94608
Phone (510) 841-7777
Fax (510) 841-7776
sstone@plawp.com
cadkins@plawp.com
tmccarthy@plawp.com

ATTORNEYS FOR DEFENDANT STATE FARM GENERAL INS. CO.

☐ **MAIL:** By placing such documents(s) in a sealed envelope, with postage prepaid for first class mail, for collection and mailing at Oakland California following ordinary business practice for deposit with United States Postal Service.

☐ **FAX**: By causing to be transmitted the documents by use of fax machine telephone number (510)228-0350 to the parties at the facsimile numbers listed on the service list above. The fax machine used complies with California Rule of Court 2.301. The transmission was reported as complete and no error was reported by the machine. I caused the transmitting machine to print a record of the transmission, a copy of which is attached to this declaration.

☒ **E-MAIL**: By electronic mail to the addresses noted above.

☐ **FEDEX:** By placing for overnight delivery such documents(s) in a facility or box that is regularly maintained by FedEx.

☐ **HAND DELIVERY:** Caused to be hand delivered.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true, and if called as a witness I could testify competently thereto. This declaration was executed November 29, 2023, at Oakland, California.

____________________________
Christopher Carling

EXHIBIT H

EXHIBIT H

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 10/11/2024 TIME: 9:30 AM DEPT: C-72

JUDICIAL OFFICER: MARCELLA O. MCLAUGHLIN
CLERK: Kristin Sorianosos
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT: O. Godoy

CASE NO: **37-2022-00044176-CU-IC-CTL** CASE INIT.DATE: 11/02/2022
CASE TITLE: **Pachall vs State Farm General Insurance Company [IMAGED]**
CASE CATEGORY: Civil CASE TYPE: (U)Insurance Coverage

**HEARING TYPE**: Discovery Hearing
MOVING PARTY: Bonita Pachall

**APPEARANCES**
E KENNETH PURVIANCE, Attorney for Defendant State Farm General Insurance Company, present in person.
Jacob B Pyle, Attorney for Plaintiff Bonita Pachall, present via remote video appearance.

The Court hears argument of counsel.

The Court modifies the tentative ruling as follows:

**PLAINTIFF'S MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

Plaintiff Bonita Pachall's Motion to Compel Defendant State Farm General Insurance Company's Further Responses to Requests for Production of Documents, Set Two, is GRANTED in part and DENIED in part.

Plaintiff's request for sanctions against Defendant is GRANTED in the amount of $4,520.00.

Under Sections 2017.010 and 2031.010 of the California Code of Civil Procedure, a party may obtain written discovery of documents or tangible materials which contain information relevant to the subject matter involved in the pending action.

Section 2031.210(a) of the Code of Civil Procedure provides:

> The party to whom a demand for inspection, copying, testing, or sampling has been directed shall respond separately to each item or category of item by any of the following:

(1) A statement that the party will comply with the particular demand for inspection, copying, testing, or sampling by the date set for the inspection, copying, testing, or sampling pursuant to paragraph (2) of subdivision (c) of Section 2031.030 and any related activities.

(2) A representation that the party lacks the ability to comply with the demand for inspection, copying, testing, or sampling of a particular item or category of item.

(3) An objection to the particular demand for inspection, copying, testing, or sampling.

If the responding party seeks to withhold documents based on a claim of attorney-client privilege or work-product protection, it must "provide sufficient factual information for other parties to evaluate the merits of that claim" in the form of a privilege log, if necessary. (Cal. Code Civ. Pro., § 2031.240(b)-(c).) Moreover, if only part of an item or category of a Request for Production is objectionable, the response shall contain a statement of compliance or representation of inability to comply with the remainder. (Id., § 2031.240(a).)

Here, the court finds that further responses are owed to many of Plaintiff's Request for Production of Documents, Set Two, but that Defendant's responses may be limited in scope and time to address Defendant's objections regarding the breadth of the requests. Moreover, some of Plaintiff's Requests are vague, ambiguous, and/or duplicate such that an order compelling responses to those requests is inappropriate. The specific categories of Requests are discussed below.

To the extent that Defendant objects based on privacy and/or trade secret concerns, these concerns can be adequately addressed by the Stipulated Protective Order entered in this case on on July 19, 2023, (ROA # 23,) and redactions of personally-identifying information for individual State Farm employees. To the extent that Defendant withholds certain responsive documents based on a claim of privilege or work-product protection, Defendant must produce a privilege log in accordance with Section 2031.240(b)-(c) of the Code of Civil Procedure.

*Request No. 1*

Request No. 1 seeks all of Defendant's internal e-mails relating to Plaintiff, her insurance claim, and her property. While Defendant argues that it has produced responsive documents in the "Claim File," its response also includes the statement that "any additional responsive, non-privileged material related to the subject claim that is not considered part of the 'Claim File' will be produced." (ROA # 109, pg. 3.)

As such, Defendant must produce any additional responsive material and provide a further response identifying such responsive material, or, if applicable, stating that it is incapable of producing further responsive material in compliance with Section 2031.210(a)(2). Defendant's production may be limited to e-mails between the date of December 10, 2021, to November 2, 2022.

Therefore, Plaintiff's motion is GRANTED with respect to Request No. 1.

*Requests Nos. 2-9, 22-25, 28-32, 34-44, 46-49, 50-57, 60*

Requests Nos. 2-9, 22-25, 28-32, 34-44, 46-49, 50-57, and 60 request policy and training documents regarding the handling of water damage claims.

Defendant objects based on breadth with respect to time and location. The address Defendant's objection, the court limits Defendant's obligation to respond to those policies and training materials in effect at the time that Plaintiff's insurance claim was under review, applicable to the region in which Plaintiff's property is located.

While Defendant contends that it has produced responsive documents in the form of its Operations Guide and Claim File, it only includes this statement as a response to Requests Nos. 2-9. In response to Plaintiff's other Requests, Defendant asserts only objections. Moreover, Requests Nos. 22-25, 28-32, 34-44, 46-48, 50-57, and 60 request specific training modules and documents referenced in Defendant's previous production(s).

At oral argument, Plaintiff clarified that the term "Water Scenarios" in Request No. 49 referred to a particular term referenced in a sealed exhibit, PACHB00001066PROD, which may include a hyperlink. Defendant argues that "Water Scenarios" is merely a general term used to describe various kinds of situations where an insured suffers a loss due to water. However, to the extent that the term "Water Scenarios" as referenced in PACHB00001066PROD links or refers to specific policy or training materials/modules, Defendant must produce these.

If Defendant contends that it has previously produced responsive documents, it must identify the documents in its verified responses in accordance with Section 2031.280. Otherwise, it must either identify and produce responsive documents or provide a statement of its inability to do so.

Therefore, Plaintiff's motion is GRANTED with respect to Requests Nos. 2-9, 22-25, 28-32, 34-44, 46-49, 50-57, and 60, subject to the limitation that Defendant need only produce policies and training materials in effect at the time that Plaintiff's insurance claim was under review, applicable to the region in which Plaintiff's property is located. This includes older written policy and/or training materials which Defendant had implemented in years prior to Plaintiff's insurance claim, but were still effective at the time of her claim.

*Requests Nos. 13-21*

Requests Nos. 13-21 request the training transcripts and performance reviews of particular State Farm employees. Plaintiff argues that the requested documents are necessary to demonstrate how the specific employees who handled Plaintiff's claim were trained, and to demonstrate how they were incentivized or disincentivized to handle customer claims. Defendant objects based on privacy concerns, and breadth, and argues that the policy documents it has already provided Plaintiff are sufficient.

The manner in which these specific employees were trained and incentivized is relevant to Plaintiff's claims, and the production of general policies do not relieve Defendant of the duty to respond to Requests Nos. 13-21, as responsive documents may show the ways in which these policies may have deviated or were applied to specific employees in specific situations. While Defendant's privacy concerns are legitimate, these can be addressed by redacting the names and other personally-identifiable information in the records sought.

Therefore, Plaintiff's motion is GRANTED with respect to Requests Nos. 13-21.

*Requests Nos. 27, 45, 49, 58, 61, 68*

Requests No. 27 is duplicative of Requests Nos. 26.

Defendant argues that Requests Nos. 45 and 58 seek information not relevant to this case and Plaintiff does not adequately explain why "Job Aids, Processes, and Workflows" or the policies and procedures of remote inspections are relevant to her claims if Defendant's employees inspected her property in person, as Defendant contends.

The court finds Requests Nos. 61 and 68 vague and ambiguous as they seek all documents related to "totality of circumstances" and "totality of evidence" which Defendant argues may refer to any number of things, including the general practice of looking at the entire situation. Plaintiff has not provided any narrower or more particularized definitions in her moving or reply papers.

Therefore, Plaintiff's motion is DENIED with respect to the Requests Nos. 27, 45, 58, 61, and 68.

**CONCLUSION**

As described above, Plaintiff's motion to compel further responses is GRANTED in part and DENIED in part.

Plaintiff's request for sanctions is GRANTED in the amount of $4,520.00.

Defendant is to provide responses by 12/02/2024 and remit payment of sanctions by 11/12/2024.

Marcella O. McLaughlin

Judge Marcella O. McLaughlin

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
Central
330 W. Broadway
San Diego CA 92101

**SHORT TITLE:** PACHALL VS STATE FARM GENERAL INSURANCE COMPANY [IMAGED]

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER: **37-2022-00044176-CU-IC-CTL** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of Minute Order dated 10/11/2024 was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California on 10/30/2024.

Clerk of the Court, by: K. Sorianosos, Deputy

JACOB B PYLE
LAW EAGLES, PC
5638 LAKE MURRAY BLVD SUITE 381
LA MESA, CA 91942

E KENNETH PURVIANCE
HUGHES & NUNN LLP
350 TENTH AVE STE.1000
SAN DIEGO, CA 92101

# EXHIBIT I

EXHIBIT I

HELEN M. LUETTO, State Bar No. 119478
hluetto@wfbm.com
SHEILA K. McDONALD, State Bar No. 232863
smcdonald@wfbm.com
MARLENE K. FLORES, State Bar No. 304302
mflores@wfbm.com
WFBM, LLP
Attorneys at Law
19900 MacArthur Blvd., Suite 1150
Irvine, California 92612-2445
Telephone: (714) 634-2522
Facsimile: (714) 634-0686

Attorneys for Defendant, STATE FARM GENERAL INSURANCE COMPANY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

SCOTT JACOBS and LAUREN JACOBS,

Plaintiffs,

v.

STATE FARM GENERAL INSURANCE COMPANY,

Defendant.

Case No. 22STCV23445

Assigned for All Purposes to:
Hon.: Michael P. Linfield
Dept.: 34

**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S FURTHER RESPONSE TO SPECIAL INTERROGATORIES 27, 28, AND 29 IN PLAINTIFFS' SECOND SET OF SPECIAL INTERROGATORIES**

Action Filed: July 20, 2022
FSC Date: December 5, 2023
Trial Date: December 18, 2023

PROPOUNDING PARTY: PLAINTIFFS SCOTT JACOBS AND LAUREN JACOBS

RESPONDING PARTY: DEFENDANT STATE FARM GENERAL INSURANCE COMPANY

SET NO.: Two

Defendant STATE FARM GENERAL INSURANCE COMPANY ("State Farm") hereby provides further responses to plaintiffs SCOTT JACOBS and LAUREN JACOBS' ("Plaintiffs" or "Propounding Party") Special Interrogatories, Set Two, subject to the following.

## PRELIMINARY STATEMENT

State Farm and its attorneys have not yet completed their preparation for trial, nor have they concluded their analysis of information gathered to date. These responses are based upon information and records presently available to State Farm and its attorneys. Further discovery and independent investigation may supply additional facts or information, add meaning to known facts, and may establish entirely new factual conclusions and contentions, all of which may lead to additions to, changes in, and variations from the responses set forth herein. State Farm reserves the right to produce and refer to at trial or any other hearing, any evidence, facts, documents or other information not yet discovered, or the relevance of which has not yet been determined by State Farm or its counsel.

## GENERAL OBJECTIONS/OBJECTIONS TO DEFINED TERMS

1. State Farm objects to Plaintiffs' definition of "IDENTIFY" as to a "PERSON" to the extent it seeks personally identifiable information about natural persons in violation of those individuals' constitutional right to privacy. To the extent required to address the claims and defenses at issue in this case, the business addresses and telephone numbers of natural persons will be sufficient to identify and contact potential witnesses.

2. State Farm objects to Plaintiffs' definition of "IDENTIFY" when used in reference to a "business, firm, partnership, joint venture, company or corporation" to the extent it purports to impose obligations that exceed those set forth in Code of Civil Procedure sections 2017.010 and 2017.020. State Farm further objects to this definition to the extent it seeks information that is not relevant to the claims and defenses in this case or that is not reasonably accessible or would be unduly burdensome to provide. (Code Civ. Proc. § 2017.020(a).)

3. State Farm objects to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that it is overly broad and disproportionate to the needs of the case. State Farm further objects to the definition to the extent it implies that State Farm has an obligation to provide discovery from sources that are not reasonably accessible. Electronically stored information ("ESI") is frequently duplicated and disbursed in the ordinary course of business and discovery

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

regarding all identical copies of ESI would be cumulative and duplicative any benefit to the adjudication of this action. (Code Civ. Proc. § 2017.020(a).)

State Farm also objects to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary computer files, log/history files, or file fragments, as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm objects to Plaintiffs' definition as overly broad, disproportionate to the needs of the case, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created by State Farm's users, such as caches, cookies, or logs, or otherwise seek to require State Farm to record and/or provide discovery regarding records and information that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. (Code Civ. Proc. § 2017.020(a).)

State Farm objects to the inclusion of "cop[ies]" and "drafts" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that copies and drafts are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. To the extent that a copy or draft is not a business record stored in a central repository in State Farm's ordinary course of business, discovery regarding "cop[ies]" and/or "drafts" would not be proportional to the needs of the case. (Code Civ. Proc. § 2017.020(a).)

State Farm objects to the inclusion of "[a]ny medium upon which intelligence or information can be recorded or retrieved," "computerized data, storage and communications, online databases, computer readable media or other electronically stored data" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" to the extent such things refer, not to "DOCUMENTS," but rather to media on which "DOCUMENTS" and ESI are stored. State Farm further objects to the extent this definition seeks direct access to State Farm's electronic storage media. There is no routine right of direct access to a party's electronic information systems and there has been no showing in this case sufficient to overcome this presumption.

State Farm objects to the inclusion of "text messages" and "all correspondence" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that it would be disproportionate to the needs of the case to provide discovery regarding instant messages and/or

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

text/SMS messages that are not captured by State Farm in their ordinary course of business. (Code Civ. Proc. § 2017.020(a).)

State Farm objects to the instruction insofar as it mandates production of ESI in "native format." To the extent State Farm elects to produce ESI in response to Plaintiffs' Interrogatories, it will comply with Code of Civil Procedure section 2031.280(d)(1), which allows for the production of discoverable ESI in reasonably usable formats. Production in "native format" would be disproportionate to the needs of this case considering the value of the case and the importance of the discovery at issue. In particular, the information pertinent to the claims and defenses in this case can be found in the text of discoverable "documents" and "native format" are not necessary to assure the production of relevant information for the fair and efficient adjudication of the claims and defenses in this litigation. In addition, in the ordinary course of its business State Farm frequently creates ESI in one format and stores it in its system of record in another format and as such it would be unduly burdensome to produce the original "native format" in contravention of Code of Civil Procedure section 2017.020(a). Moreover, production of "native format" is disproportionate to the extent such formats are not reasonably accessible to State Farm. State Farm further objects that it does not need to produce ESI in more than one form, and that the relevant information in "native format" would be cumulative and duplicative of the alternate reasonably usable formats proffered. (Code Civ. Pro. § 2031.280(d)(1).)

Finally, State Farm objects to the definition of "DOCUMENT" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrine, or other privileges recognized by law.

4. State Farm restates and incorporates its objections Plaintiffs' definitions of "DOCUMENT" or "DOCUMENTS" and applies them to Plaintiffs' definition of "CLAIM FILE."

In addition, State Farm objects to Plaintiffs' definition on the grounds that the term "CLAIM FILE" is vague and ambiguous. State Farm uses a distinct meaning of "CLAIM FILE" in its ordinary course of business, which is based on its Operation Guide that provides instructions on what to retrieve from Enterprise Claims System ("ECS"). State Farm's ECS is a relational database used to store information created, sent, or received in the ordinary course of claims

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

handling. State Farm has developed a standard report to generate a "CLAIM FILE" for production of discoverable information in a reasonably usable format outside the ECS environment.

State Farm objects to Plaintiffs' interrogatories insofar as they seek discovery on or the production of "file folders" and "file jackets" on the grounds that such terms are vague and ambiguous, particularly with regard to ESI, and the information requested is not relevant to the resolution of the claims and defenses in this case. There are multiple ways that ESI may be held, stored, or used together, such as on a hard drive, in a container file, or in a database, and State Farm cannot reasonably catalogue and describe the information regarding any myriad ways ESI may be held, stored, or used together without undue burden. (Code Civ. Proc. § 2017.020(a).)

State Farm further objects to the definition to the extent it implies State Farm has an obligation to produce information subject to discovery under Code of Civil Procedure sections 2017.010, 2031.030, 2031.210 and 2031.280, that is not reasonably accessible, in more than one form, or in a manner that is different than the reasonably usable forms in which State Farm agrees to produce.

Finally, State Farm uses a distinct meaning of "CLAIM FILE" in its ordinary course of business, which is based on its Claims Process Guide that provides instructions on what to retrieve from Enterprise Claims System (ECS). State Farm's ECS is a relational database used to store information created, sent, or received in the ordinary course of claims handling. State Farm has developed a standard report to generate a "CLAIM FILE" for production of discoverable information in a reasonably usable format outside the ECS environment.

Subject to its foregoing objections, State Farm will furnish information and/or produce reasonably available, relevant, non-privileged information from ECS in reasonably usable standard report formats. Documents that contain redactions will be produced in static image format with optical character recognition.

**RESPONSE TO SPECIAL INTERROGATORIES**

**SPECIAL INTERROGATORY NO. 27:**

Describe in detail YOUR Water Initiative instituted in relation to the adjustment of water loss or water damage claims under YOUR homeowner policies.

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

**RESPONSE TO SPECIAL INTERROGATORY NO. 27:**

State Farm objects that this interrogatory violates Code of Civil Procedure section 2030.060(f), in that it is improperly compound. This interrogatory is vague, ambiguous, overbroad, burdensome and calls for a narrative. State Farm objects that this interrogatory is not relevant or likely to lead to the discovery of admissible evidence to the extent it applies to homeowners' policy forms other than that issued to Plaintiffs.

State Farm objects to this request as vague and ambiguous (including as to the term "YOUR Water Initiative"), and overly broad in scope (not limited in time or geography), as the request is not reasonably tailored to include only those matters relevant to the adjustment of the insurance claim made the basis of this suit. As State Farm can understand this request, it appears to be seeking confidential, proprietary business information and trade secrets. Moreover, due to the overly broad nature, this request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, as State Farm's procedures are intended to provide guidance but each claim is handled on its own merits.

Responding to this interrogatory will require the preparation of a compilation, abstract, audit or summary, the burden or expense of which is substantially similar to propounding party. Pursuant to Code of Civil Procedure section 2030.230,State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide applicable and in effect during the relevant timeframe along with the Standard Claim Processes and Jurisdictional References applicable and in effect on the date of loss and additional materials representative of resources available during the relevant timeframe for handling of the underlying claim. [*See* documents Bates numbered JACOBS00000112PROD-JACOBS00000549PROD.] State Farm previously produced the relevant confidential and/or trade secret sections subject to the Stipulated Protective Order that was entered by the Court.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the Claim File for the claim at issue. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm has produced its

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

Claim File (Bates numbers SFJACOBSS_000001 to SFJACOBSS_002658) in reasonably usable format as it does in the ordinary course of business pursuant to its Operation Guide. State Farm is withholding information protected by the attorney client privilege and/or that is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

Discovery and investigation are ongoing and State Farm reserves the right to amend and/or supplement this response as additional information becomes available.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 27:**

State Farm objects that this interrogatory violates Code of Civil Procedure section 2030.060(f), in that it is improperly compound. This interrogatory is vague, ambiguous, overbroad, burdensome and calls for a narrative. State Farm objects that this interrogatory is not relevant or likely to lead to the discovery of admissible evidence to the extent it applies to homeowners' policy forms other than that issued to Plaintiffs.

State Farm objects to this request as vague and ambiguous (including as to the term "YOUR Water Initiative"), and overly broad in scope (not limited in time or geography), as the request is not reasonably tailored to include only those matters relevant to the adjustment of the insurance claim made the basis of this suit. As State Farm can understand this request, it appears to be seeking confidential, proprietary business information and trade secrets. Moreover, due to the overly broad nature, this request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, as State Farm's procedures are intended to provide guidance but each claim is handled on its own merits.

Responding to this interrogatory will require the preparation of a compilation, abstract, audit or summary, the burden or expense of which is substantially similar to propounding party. Pursuant to Code of Civil Procedure section 2030.230,State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide applicable and in effect during the relevant timeframe along with the Standard Claim Processes and Jurisdictional References applicable and in effect on the date of loss and additional materials representative of resources available during the relevant timeframe for handling of the underlying claim. [*See*

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

documents Bates numbered JACOBS00000112PROD-JACOBS00000549PROD.] State Farm previously produced the relevant confidential and/or trade secret sections subject to the Stipulated Protective Order that was entered by the Court.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the Claim File for the claim at issue. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm has produced its Claim File (Bates numbers SFJACOBSS_000001 to SFJACOBSS_002658) in reasonably usable format as it does in the ordinary course of business pursuant to its Operation Guide. State Farm is withholding information protected by the attorney client privilege and/or that is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

Subject to and without waiving its objections, and in addition to the foregoing, State Farm responds as follows: The "water initiative" may refer to one or more efforts in California beginning in or around 2017 to help ensure consistency in the handling of water claims in California. Claims handling personnel were provided training that focused on reinforcing existing principles relating to proper investigation and documentation of water loss claims. Topics included the quality first contact, gathering the facts of loss, plumbing issues, additional investigation, determining coverage, estimatics, and damage evaluation. In 2020, the settlement authority of claims handlers on water loss claims was temporarily reduced. During that period, team managers reviewed claims specialists' water loss claims for conformance with quality claim handling expectations.

The "water initiative" may also refer to an effort beginning in October 2019, when two teams of claims personnel were brought to California to support and assist with a high volume of water claims. That work was completed by February 2020, although a team continued to assist with primarily slab leak claims for another several months.

Discovery and investigation are ongoing and State Farm reserves the right to amend and/or supplement this response as additional information becomes available.

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

**SPECIAL INTERROGATORY NO. 28:**

Provide the titles of all DOCUMENTS that contain the details of the Water Initiative instituted in relation to the adjustment of water loss or water damage claims under YOUR homeowner policies.

**RESPONSE TO SPECIAL INTERROGATORY NO. 28:**

State Farm objects that this interrogatory violates Code of Civil Procedure section 2030.060(f), in that it is improperly compound. State Farm objects that this interrogatory is not relevant or likely to lead to the discovery of admissible evidence to the extent it applies to homeowners' policy forms other than that issued to Plaintiffs.

State Farm objects to this request as vague and ambiguous (including as to the term "the Water Initiative"), and overly broad in scope (not limited in time or geography), as the request is not reasonably tailored to include only those matters relevant to the adjustment of the insurance claim made the basis of this suit. As State Farm can understand this request, it appears to be seeking confidential, proprietary business information and trade secrets. Moreover, due to the overly broad nature, this request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence as State Farm's procedures are intended to provide guidance but each claim is handled on its own merits.

Responding to this interrogatory will require the preparation of a compilation, abstract, audit or summary, the burden or expense of which is substantially similar to propounding party. Pursuant to Code of Civil Procedure section 2030.230, State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide applicable and in effect during the relevant timeframe along with the Standard Claim Processes and Jurisdictional References applicable and in effect on the date of loss and additional materials representative of resources available during the relevant timeframe for handling of the underlying claim. [*See* documents Bates numbered JACOBS00000112PROD-JACOBS00000549PROD.] State Farm previously produced the relevant confidential and/or trade secret sections subject to the Stipulated Protective Order that was entered by the Court.

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

For information reflecting the application of claims procedures to Plaintiffs' claim, see the Claim File for the claim at issue. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm has produced its Claim File (Bates numbers SFJACOBSS_000001 to SFJACOBSS_002658) in reasonably usable format as it does in the ordinary course of business pursuant to its Operation Guide. State Farm is withholding information protected by the attorney client privilege and/or that is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

Discovery and investigation are ongoing and State Farm reserves the right to amend and/or supplement this response as additional information becomes available.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 28:**

State Farm objects that this interrogatory violates Code of Civil Procedure section 2030.060(f), in that it is improperly compound. State Farm objects that this interrogatory is not relevant or likely to lead to the discovery of admissible evidence to the extent it applies to homeowners' policy forms other than that issued to Plaintiffs.

State Farm objects to this request as vague and ambiguous (including as to the term "the Water Initiative"), and overly broad in scope (not limited in time or geography), as the request is not reasonably tailored to include only those matters relevant to the adjustment of the insurance claim made the basis of this suit. As State Farm can understand this request, it appears to be seeking confidential, proprietary business information and trade secrets. Moreover, due to the overly broad nature, this request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence as State Farm's procedures are intended to provide guidance but each claim is handled on its own merits.

Responding to this interrogatory will require the preparation of a compilation, abstract, audit or summary, the burden or expense of which is substantially similar to propounding party. Pursuant to Code of Civil Procedure section 2030.230, State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide applicable and in effect

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

during the relevant timeframe along with the Standard Claim Processes and Jurisdictional References applicable and in effect on the date of loss and additional materials representative of resources available during the relevant timeframe for handling of the underlying claim. [*See* documents Bates numbered JACOBS00000112PROD-JACOBS00000549PROD.] State Farm previously produced the relevant confidential and/or trade secret sections subject to the Stipulated Protective Order that was entered by the Court.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the Claim File for the claim at issue. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm has produced its Claim File (Bates numbers SFJACOBSS_000001 to SFJACOBSS_002658) in reasonably usable format as it does in the ordinary course of business pursuant to its Operation Guide. State Farm is withholding information protected by the attorney client privilege and/or that is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

Subject to and without waiving its objections, and in addition to the foregoing, State Farm responds as follows: The "water initiative" may refer to one or more efforts in California beginning in or around 2017 to help ensure consistency in the handling of water claims in California. Claims handling personnel were provided training that focused on reinforcing existing principles relating to proper investigation and documentation of water loss claims. Topics included the quality first contact, gathering the facts of loss, plumbing issues, additional investigation, determining coverage, estimatics, and damage evaluation. In 2020, the settlement authority of claims handlers on water loss claims was temporarily reduced. During that period, team managers reviewed claims specialists' water loss claims for conformance with quality claim handling expectations. Training materials identified to date related to such efforts include the following: California Fire Claims Discussion Resources; Claim Folder Claim Level – Claim Details – Fire; Xactimate 28 Help, Sketch Quick Reference; Differences Report in Xactimate; Converting Non-PSP Contractor (.ESX) Estimates; Estimate Writing – Reconciliation; File Notes

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

Category Usage – Fire; Quality Claim Handling Expectations; Photographs; PowerPoint with Discussion Examples; Plumbing System Fill-ups and Sewer Backups – Defined; Homeowners Policy, Section I Property, Coverage Model; California Fire Claims Discussion Agenda; Q4 2021 Water Estimate Writing and Reconciliation; Estimatics & Reconciliation PowerPoint; Water Forum Coverage Mini Session; Water Forum PowerPoint. State Farm is continuing its efforts to identify additional responsive documents.

The "water initiative" may also refer to an effort beginning in October 2019, when two teams of claims personnel were brought to California to support and assist with a high volume of water claims. That work was completed by February 2020, although a team continued to assist with primarily slab leak claims for another several months. To the extent that Plaintiffs are seeking the identification of documents relating to those claims, this interrogatory invades the privacy rights of policyholders who are not parties to this lawsuit in violation of various authorities including, but not limited to Article I, section 1 of the California Constitution and Insurance Code section 791.13.

Discovery and investigation are ongoing and State Farm reserves the right to amend and/or supplement this response as additional information becomes available.

**SPECIAL INTERROGATORY NO. 29:**

On what date did YOUR Water Initiative first become effective?

**RESPONSE TO SPECIAL INTERROGATORY NO. 29:**

State Farm objects to this request as vague and ambiguous (including as to the term "the Water Initiative"), and overly broad in scope (not limited in time or geography), as the request is not reasonably tailored to include only those matters relevant to the adjustment of the insurance claim made the basis of this suit. As State Farm can understand this request, it appears to be seeking confidential, proprietary business information and trade secrets. Moreover, due to the overly broad nature, this request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence as State Farm's procedures are intended to provide guidance but each claim is handled on its own merits.

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

Responding to this interrogatory will require the preparation of a compilation, abstract, audit or summary, the burden or expense of which is substantially similar to propounding party. Pursuant to Code of Civil Procedure section 2030.230, State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide applicable and in effect during the relevant timeframe along with the Standard Claim Processes and Jurisdictional References applicable and in effect on the date of loss and additional materials representative of resources available during the relevant timeframe for handling of the underlying claim. [*See* documents Bates numbered JACOBS00000112PROD-JACOBS00000549PROD.] State Farm previously produced the relevant confidential and/or trade secret sections subject to the Stipulated Protective Order that was entered by the Court.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the Claim File for the claim at issue. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm has produced its Claim File (Bates numbers SFJACOBSS_000001 to SFJACOBSS_002658) in reasonably usable format as it does in the ordinary course of business pursuant to its Operation Guide. State Farm is withholding information protected by the attorney client privilege and/or that is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

Discovery and investigation are ongoing and State Farm reserves the right to amend and/or supplement this response as additional information becomes available.

**FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 29:**

State Farm objects to this request as vague and ambiguous (including as to the term "the Water Initiative"), and overly broad in scope (not limited in time or geography), as the request is not reasonably tailored to include only those matters relevant to the adjustment of the insurance claim made the basis of this suit. As State Farm can understand this request, it appears to be seeking confidential, proprietary business information and trade secrets. Moreover, due to the overly broad nature, this request seeks information that is neither relevant nor reasonably

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

calculated to lead to the discovery of admissible evidence as State Farm's procedures are intended to provide guidance but each claim is handled on its own merits.

Responding to this interrogatory will require the preparation of a compilation, abstract, audit or summary, the burden or expense of which is substantially similar to propounding party. Pursuant to Code of Civil Procedure section 2030.230, State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide applicable and in effect during the relevant timeframe along with the Standard Claim Processes and Jurisdictional References applicable and in effect on the date of loss and additional materials representative of resources available during the relevant timeframe for handling of the underlying claim. [*See* documents Bates numbered JACOBS00000112PROD-JACOBS00000549PROD.] State Farm previously produced the relevant confidential and/or trade secret sections subject to the Stipulated Protective Order that was entered by the Court.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the Claim File for the claim at issue. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm has produced its Claim File (Bates numbers SFJACOBSS_000001 to SFJACOBSS_002658) in reasonably usable format as it does in the ordinary course of business pursuant to its Operation Guide. State Farm is withholding information protected by the attorney client privilege and/or that is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

Subject to and without waiving its objections, and in addition to the foregoing, State Farm responds as follows: The "water initiative" may refer to one or more efforts in California beginning in or around 2017 to help ensure consistency in the handling of water claims in California.

/ / /

/ / /

/ / /

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

Discovery and investigation are ongoing and State Farm reserves the right to amend and/or supplement this response as additional information becomes available.

Dated: October 30, 2023 WFBM, LLP

By: [signature]
HELEN M. LUETTO
SHEILA K. McDONALD
MARLENE K. FLORES
Attorneys for Defendant, STATE FARM GENERAL INSURANCE COMPANY

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

**VERIFICATION TO FOLLOW**

**PROOF OF SERVICE**

**Scott Jacobs and Lauren Jacobs v. State Farm General Insurance Company**
**Case No. 22STCV23445**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 19900 MacArthur Blvd., Suite 1150, Irvine, CA 92612-2445.

On October 30, 2023, I served true copies of the following document(s) described as **DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S FURTHER RESPONSE TO SPECIAL INTERROGATORIES 27, 28, AND 29 IN PLAINTIFFS' SECOND SET OF SPECIAL INTERROGATORIES** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I electronically served a copy of the documents described above from the email address lbreeding@wfbm.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 30, 2023, at San Jacinto, California.

*/s/ Linda Breeding*
Linda Breeding

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

**SERVICE LIST**
**Scott Jacobs and Lauren Jacobs v. State Farm General Insurance Company**
**Case No. 22STCV23445**

Jaclyn D. Conover, Esq.
**KANTOR & KANTOR, LLP**
19839 Nordhoff Street
Northridge, CA 91324
Tel: (818) 886-2525
Fax: (818) 350-6272
E-Mail: jconover@kantorlaw.net
cmormann@kantorlaw.net

Attorneys for Plaintiffs **SCOTT JACOBS and LAUREN JACOBS**

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

# EXHIBIT J

EXHIBIT J

J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Kerley Schaffer LLP
1939 Harrison Street, #900
Oakland, California 94612
Telephone: (510) 379-5801
Facsimile: (510) 228-0350

Attorneys for Plaintiff/Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

**WILLIAM TONG,** an individual, and **MALINEE DIBBAYAWAN**, an individual,

Plaintiffs,

v.

**STATE FARM GENERAL INSURANCE COMPANY,** an Illinois corporation, and **DOES 1 through 10**,

Defendants.

Case No. 2:24−cv−02219−DSF−MAR

**PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO STATE FARM GENERAL INSURANCE COMPANY, SET FOUR**

PROPOUNDING PARTY: Plaintiffs William Tong and Malinee Dibbayawan

RESPONDING PARTY: Defendant State Farm General Insurance Company

SET NUMBER: Four (4)

# INSTRUCTIONS

Plaintiffs request that Defendant State Farm General Insurance Company produce the documents described below for inspection and copying and serve Plaintiffs the written response within thirty (30) days after service of this request. The place for inspection shall be at the office Kerley Schaffer LLP), 1939 Harrison Street, Suite 900, Oakland, CA 94612.

In lieu of personal appearance and production on the above date, compliance with this Request for Production of Documents may be accomplished by mailing to counsel at the above address, full, true and correct copies of the requested documents, verified by you as such, in a manner prescribed for written response to the demand for inspection of documents pursuant to Rule 34 of the Federal Rules of Civil Procedure, on or before thirty (30) days from the date of this demand.

YOUR WRITTEN RESPONSE TO THIS INSPECTION DEMAND must respond (F.R.C.P. 34(b)) separately to each numbered demand for inspection below by:

1. A statement that you will comply with the particular demand;
2. A statement that you lack the ability to comply with the particular demand; or
3. Any objection to the particular demand.

If your response to a particular demand is **a statement that you will comply** with that demand, you must state in your response whether the production will be allowed in whole or in part, and you must state that all documents or things in the demanded category that are in your possession, custody or control and to which no objection is being made will be included in the production. (F.R.C.P. 34(b).)

If your response to a particular demand is **a statement that you lack the ability to comply** with that demand, you must affirm in your response that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand. This statement shall also specify whether the inability to comply is because the particular item or category never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody or control, in which case the name and address of any person or entity known or believed by you to have possession, custody or control of that document or

category of documents should be identified. (F.R.C.P. 34(b).)

If your response to a particular demand is an objection, you must set forth in your response the extent of, and the specific ground for, the objection. In your response, you must also identify with particularity any document responsive to the particular demand that is being withheld from production based upon a claim of privilege or other protection and state the particular privilege or protection being invoked. (F.R.C.P. 34(b**).) To identify with particularity documents withheld from production**, you should provide, for each document withheld, the following information if known or available to you:

1. Title or subject matter of document;
2. The date composed or date appearing on the document;
3. Author and Addressee;
4. Number of Pages;
5. Identify of all persons or entities who saw or received a copy of such document, including the job titles of each such person;
6. The present location of the item;
7. The identity of the person or persons who have custody, control, or possession thereof.
8. The nature of the privilege claimed; and
9. Each fact upon which you base your claim of privilege.

This request requires the production of documents as they are kept in the usual course of business or organized and labeled to correspond with the particular demands set forth below. If you choose the former method, the documents are to be produced in the boxes, file folders, bindings or other containers in which the documents are found. The titles, labels, or other descriptions on the boxes, file folders, bindings or other containers are to be left intact.

Electronic media should be produced in its native format (e.g., Word documents and Excel spreadsheets produced with .doc and .xls extensions and email produced in .pst files if Outlook is the email client).

These requests for production include the original media and all copies that differ from

the original in any respect, such as notations made on the copy. These requests are also intended to include all media of any nature that are now or have at any time been within your care, custody or control. If a document or media is no longer in your care, custody or control, identify its disposition.

## DEFINITIONS

The following definitions and instructions shall apply to this demand for production:

A. "YOU" or "YOUR" means the defendant in this lawsuit and any related entity that has possession and/or control of the DOCUMENTS described requested or items which are sought to be inspected, including but not limited to the defendant's agents, officers, directors, ADJUSTERS independent contractors, and/or others acting on YOUR behalf.

B. "DOCUMENT" or "DOCUMENTS" means the same as "writing" as defined in Section 250 of the California Evidence code, and any other tangible thing in the custody, possession or control or known to the responding party, whether printed, recorded, reproduced by any process, or written or produced by hand. "DOCUMENT" and "DOCUMENTS" include but are not limited to the following which are in YOUR possession, custody, or control: electronic communications of any kind, including chats, instant messages, texts, and voicemails, videos, Power Point or similar presentations, cloud or intra-net presentations, word processing documents, spreadsheets, and databases (including draft versions), database entries, Internet usage files, Internet browser-created files including cookies and caches, activity logs, calendars, telephone logs, contact manager information, network access information.

"DOCUMENT" and "DOCUMENTS" include those to be found on, archived in, or deleted from the following: any on-site or off-site electronic data storage systems or data structures, including but not limited to databases, networks, computer systems, legacy systems (hardware and software), servers, mainframes, network servers, cloud-based servers and backup servers or systems, archives, backup or disaster recovery systems or facilities, tapes, discs, DVDs, CDROMs, drives, portable or removable drives, cartridges and other storage media, laptops, personal computers, internet data, personal digital

assistants, handheld wireless devices, mobile telephones, smart phones, tablet computers, paging devices, and audio systems (including voicemail).

Requests for "DOCUMENTS" is intended to include all "COMMUNICATIONS" and "ESI".

C. "ESI" shall be construed in the broadest sense possible given the definition under California Code of Civil Procedure §2016.020(d) and (e), and shall include, but not be limited to:

a. All electronic mail and information about electronic mail sent or received by YOU;

b. All databases containing any reference and/or information;

c. All activity logs on any computer system which may have been used to process or store electronic data containing information;

d. All word processing files and file fragments, including metadata, containing information;

e. All electronic data files and file fragments created by application programs that process financial, accounting and billing information;

f. All electronic data files and file fragments from electronic calendars and scheduling programs that contain information about the above-listed subjects

g. All electronic data files and file fragments from electronic calendars and scheduling programs that contain information about the above-listed subjects; and

h. All electronic or automated insurance systems or software.

D. "COMMUNICATION" means any and all transmission of information from one person or entity to another, including (without limitation) by personal meeting, conference, conversation, telephone, radio, telegraph, electronic mail, teleconference, or any other method of communication or by any medium.

E. "PROPERTY" means the real and personal property located at 26103 Carroll Lane, Santa Clarita, California.

F. "LOSS" means all damage resulting from the release of water on or about March 3, 2024,

at the PROPERTY.

G. "POLICY" means the policy of insurance issued by YOU under the number 71-B7-M624-4, including all endorsements and amendments thereto.

H. "CLAIM" means the claim for policy benefits resulting from the LOSS handled by YOU under Claim No. 75-64C3-65Q.

I. "INVESTIGATE", "INVESTIGATED" or "INVESTIGATION" means the same as is set forth in 10 CCR §2695.2, including "all activities of an insurer or its claims agent related to the determination of coverage, liabilities or nature and extent of loss or damage for which benefits are afforded by an insurance policy . . . and other obligations or duties arising from an insurance policy . . ."

J. "ADJUST", "ADJUSTED", "ADJUSTMENT" or "ADJUSTING" mean to pay or deny a claim under any policy of insurance issued by YOU.

K. "PLAINTIFFS" means either or both Plaintiffs.

L. "BELOW THE SURFACE OF THE GROUND EXCLUSION" means any provision in a property policy issued by YOU insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase "below the surface of the ground".

M. "CONTINUOUS OR REPEATED SEEPAGE EXCLUSION" means any provision in a property policy issued by YOU insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase "seepage or leakage".

N. "ADJUSTERS" means any employee or contractor, or group of employees or contractors, including but not limited to claim specialists, team managers, and section managers, who INVESTIGATE, ADJUST, and/or supervise the INVESTIGATION and/or ADJUSTMENT of claims under any property policy issued by YOU insuring any building in California after 2015.

O. "TRAINING OR GUIDELINES" means any written or digital means by which YOU provide information to YOUR ADJUSTERS regarding how to INVESTIGATE and/or

ADJUST first party water loss claims in California.

"TRAINING OR GUIDELINES" includes, but is not limited to, DOCUMENTS in the following formats or resource types, or which are referred to YOU and/or YOUR ADJUSTERS as follows: Electronic Claim System or ECS, State Farm Net or SF Net, State Farm University, Operation Guides, Jurisdictional Resource, Video on Demand, Job Aids, Refreshers, Workday, FAQs, Quality First Contact Guide, Estimating Topics, FAQs, SF Net, Xactimate, ITEL, Scenarios Courses, Jurisdictional Resources, Standard Claims Practices or SCP, Workflow, Scenarios, Claim Scenarios, 360 Claim Scenarios, Coverage Investigation, Dashboard, Quality Claims Handling Expectations, Quality Claims Handling Experience, Quality Claims Handling Standards, Coverage Model, Coverage Analysis, Skills Review, In Role Skills Review, Skills Review Answer Keys, Skills Testing, Resources, Discussion Resources, Core Property Claims, Dollar One, ECHP, Basics, Coverage Analysis, Support Guide, Claim Experience, Claim Experience Video Collaboration, Reference Guide, Water Plan, Water Forum, Water Initiative, Focus or Fire Focus.

P. "POLICIES/PROCEDURES" means, without limitation, any and all policies, procedures, manuals, TRAINING OR GUIDELINES, bulletins, operation manuals, and other written materials.

Q. "WATER INITIATIVE" is used herein as YOU described it in YOUR Further Responses to Special Interrogatories in the case of *Jacobs et al. v. State Farm,* 22STCV23445, Los Angeles Superior Court, "one or more efforts in California beginning in or around 2017 to help ensure consistency in the handling of water claims in California. Claims handling personnel were provided training that focused on reinforcing existing principles relating to proper investigation and documentation of water loss claims. Topics included the quality first contact, gathering the facts of loss, plumbing issues, additional investigation, determining coverage, estimatics, and damage evaluation. In 2020, the settlement authority of claims handlers on water loss claims was temporarily reduced. During that period, team managers reviewed claims specialists' water loss claims for conformance

with quality claim handling expectations."

"WATER INITIATIVE" additionally includes YOUR "efforts" described in YOUR Response to Request for Production 74, p.12:5-17, in the matter *Savas v. State Farm General Insurance Company*, Los Angeles Superior Court, No. 21STCV0286.

R. "FIRE CLAIMS DEPARTMENT" means the department, group, or entity, YOU described in YOUR Response to Request for Production 74, p.11:23-25, in the matter *Savas v. State Farm General Insurance Company*, Los Angeles Superior Court, No. 21STCV0286.

S. "MCKINSEY & COMPANY" means the private corporation Mckinsey & Company and any related entity or subsidiary.

If you claim that any document otherwise required to be produced by this request for production of documents is privileged, for each such document provide the following information.

a. The document's title and general subject matter;

b. The date of the document;

c. The author of the document;

d. The person for whom the document was prepared or to whom it was sent, including all persons who received copies of the document;

e. The nature of the privilege claimed; and

f. Each fact upon which you base your claim of privilege.

**DOCUMENTS TO BE PRODUCED**

92. YOUR TRAINING of YOUR ADJUSTERS regarding how to apply the BELOW THE SURFACE OF THE GROUND EXCLUSION.

93. YOUR TRAINING of YOUR ADJUSTERS regarding how to apply the CONTINUOUS OR REPEATED SEEPAGE EXCLUSION.

94. All DOCUMENTS created by or in the possession of the FIRE CLAIMS DEPARTMENT relating to the WATER INITIATIVE.

95. All DOCUMENTS created by or in the possession of the FIRE CLAIMS DEPARTMENT relating to investigations of water losses in California pursuant to property policies issued by YOU insuring any building in California after 2015.

96. All DOCUMENTS reflecting or pertaining to meetings (in-person or virtual) between the FIRE CLAIMS DEPARTMENT and ADJUSTERS regarding the INVESTIGATION and/or ADJUSTING of water losses, as described YOUR Response to Request for Production 74, p.12:8-11, in the matter *Savas v. State Farm General Insurance Company*, Los Angeles Superior Court, No. 21STCV0286.

97. All DOCUMENTS containing “huddle message” the FIRE CLAIMS DEPARTMENT provided to ADJUSTERS regarding the INVESTIGATION and/or ADJUSTING of water losses, as described YOUR Response to Request for Production 74, p.12:11-13, in the matter *Savas v. State Farm General Insurance Company*, Los Angeles Superior Court, No. 21STCV0286.

98. All DOCUMENTS containing “talking points” the FIRE CLAIMS DEPARTMENT provided to ADJUSTERS regarding the INVESTIGATION and/or ADJUSTING of water losses, as described YOUR Response to Request for Production 74, p.12:11-13, in the matter *Savas v. State Farm General Insurance Company*, Los Angeles Superior Court, No. 21STCV0286.

99. All DOCUMENTS created by or in the possession of the FIRE CLAIMS DEPARTMENT relating to the BELOW THE SURFACE OF THE GROUND EXCLUSION.

100. All DOCUMENTS created by or in the possession of the FIRE CLAIMS DEPARTMENT relating to the CONTINUOUS OR REPEATED SEEPAGE EXCLUSION.

101. All DOCUMENTS containing YOUR Operations Guide 70-140, Claim File Management Guideline and Resources.

102. All DOCUMENTS containing or identified as “QualityClaimsHandlingStandards.pdf”, Bates STICJ1895.[1]

---

[1] In some instances DOCUMENTS requested herein refer to or reference file names from materials produced by YOU as Bates STICJ00001895PROD-STICJ00001983PROD (referred to

103. All DOCUMENTS containing or identified as "filenotescategoryusage.pdf", Bates STICJ1895.

104. All DOCUMENTS containing or identified as "claimdetailsecsguidelines.pdf", Bates STICJ1896.

105. All DOCUMENTS containing or identified as "homeowners HW-2100 resources," Bates STICJ1898.

106. All DOCUMENTS containing or identified as "fire claims information channel," Bates STICJ1980.

107. All DOCUMENTS containing or identified as "Fire Focus – water," Bates STICJ1974. STICJ1980.

108. All DOCUMENTS containing or identified as "Waterplan_5192019", Bates STICJ1982

109. All DOCUMENTS containing or identified as "PLRB Constant or Repeated Seepage or Leakage – All States," Bates STICJ1967.

110. All DOCUMENTS containing or identified as "Water scenarios," Bates STICJ1970.

111. All DOCUMENTS containing or identified as "JA_CovModel_prop.pdf," Bates STICJ1972.

112. All DOCUMENTS containing or identified as "Coverage Model Job Aids," Bates STICJ1972.

113. All DOCUMENTS containing or identified as "ESC File Note Template 304," Bates STICJ1974.

114. All DOCUMENTS containing or identified as "ESC File Note Template 306," Bates STICJ1974.

115. All DOCUMENTS containing or identified as "360 Claim Scenario," Bates STICJ1983.

116. DOCUMENTS containing or identified as "Water Damage Coverage Analysis (HW-21 00 Series)" in Workday.

---

for ease of use as "STICJ"), in the matter *Stickney v. State Farm General Insurance Company et al,* Orange County Superior Court, No.30-2021-01231896. All Bates references herein are for responding party's guidance and assistance in identifying the requested DOCUMENTS and avoiding any objections based on vagueness and ambiguity.

117. All DOCUMENTS containing or identified as "Water Coverage Introduction and QFC VOD".

118. All DOCUMENTS containing or identified as "Water Coverage Investigation VOD".

119. All DOCUMENTS containing or identified as "Water Coverage – Plumbing".

120. All DOCUMENTS containing or identified as "Water Loss Skills Review".

121. All DOCUMENTS containing or identified as "Water Loss Scenarios" course in Workday.

122. All DOCUMENTS containing or identified as "Answer Key" and/or "Resources" relating to any "Water Loss Skills Review."

123. All DOCUMENTS containing or identified as "Water Loss Skills Review".

124. All DOCUMENTS containing or identified as "In Role Water Loss Skills Review".

125. All DOCUMENTS containing or identified as "Side by Side & Ride Along Coaching Template."

126. All DOCUMENTS reflecting or pertaining to the WATER INITIATIVE, including but not limited to the following:

   a. Water Initiative Power Point(s) or other presentation materials
   b. Water Forum Power Point(s) or other presentation materials
   c. California Fire Claims Discussion Resources
   d. Claim Folder Claim Level – Claim Details – all topics
   e. Quality Claim Handling Expectations – all topics
   f. Homeowners Policy, Section I Property, Coverage Model;
   g. California Fire Claims Discussion Agenda;
   h. Q4 2021 Water Estimate Writing and Reconciliation;
   i. Water Forum Coverage Mini Session;

127. All DOCUMENTS relating to YOUR water forum review from 2015 to the present, Bates STICJ1951.

128. All DOCUMENTS YOU agreed to produce in YOUR Response to Request for Production 79, p.19:13-16, in the matter *Savas v. State Farm General Insurance Company*,

Los Angeles Superior Court, No. 21STCV0286, in which YOU stated "State Farm will produce documents representative of its efforts to promote quality claim handling on water loss claims in California during the relevant time frame, including documents referencing the term "Water Forum," subject to the protective order that has been entered in this matter."

129. All DOCUMENTS used in any presentation, or distributed to any participants before, during or after, YOUR "California Fire Claims Discussion" sessions as set forth on Bates STICJ1951.

130. All DOCUMENTS reflecting the contents of YOUR "California Fire Claims Discussion" sessions as set forth on Bates STICJ1951.

131. All DOCUMENTS used in any presentation, or distributed to any participants before, during or after, YOUR "California Fire Claims Discussion" sessions held from January 1, 2015, to present.

132. All DOCUMENTS reflecting the contents of YOUR "California Fire Claims Discussion" sessions held from January 1, 2015, to present.

133. All DOCUMENTS provided to YOU by the "consultant" referred to at Bates STICJ1951, relating to YOUR investigation and/or adjusting of water losses in California.

134. COMMUNICATIONS, from January 2015 to the present, pertaining or relating to an analysis, in the context of the implementation of YOUR WATER LOSS INITIATIVE, of YOUR indemnity obligations for first-party residential water loss claims, pending, paid, or otherwise reported, including any and all attachments to said COMMUNICATIONS

135. All DOCUMENTS from 2015 to the present, pertaining or relating to an analysis, in the context of the implementation of YOUR WATER LOSS INITIATIVE, of YOUR first-party residential water loss claims, pending, paid, or otherwise reported, including but not limited to reports, graphs and charts.

136. All DOCUMENTS from 2015 to the present that concern, relate, or pertain to evaluations of water loss claims, water loss claims handling, and the effects of YOUR WATER LOSS INITIATIVE contained in YOUR Western Market Proximity Fire Claims Quality Plan.

137. All DOCUMENTS from 2015 to the present pertaining or relating to discussions about, reviews and/or analyses of, and/or the effects/impacts of the implementation of YOUR WATER LOSS INITIATIVE on the handling of first-party residential water loss claims in California.

138. YOUR POLICIES/PROCEDURES pertaining or relating to reinspections, reinspection surveys, reinspection results of first-party residential water loss claims in California.

139. All DOCUMENTS pertaining or relating to YOUR audits of first-party residential water loss claims in California, from 2015 to the present.

140. All DOCUMENTS pertaining or relating to adjuster claim authority determination reviews in residential water loss claims in California, from 2015 to the present.

141. All DOCUMENTS pertaining or relating to the claim authority levels for YOUR ADJUSTERS handling first-party residential water loss claims in California from 2015 to the present.

142. All DOCUMENTS pertaining or relating to pinhole leaks, including but not limited to, reviews, analysis, evaluations, or summaries of pin-hole leaks and how YOU intend to address them from a coverage and claim perspective in the context of water loss claims, from 2015, including but not limited to YOUR related POLICIES & PROCEDURES.

143. All DOCUMENTS pertaining or relating to claim handling overviews of first-party residential water loss claims in California, from 2015 to the present.

144. All DOCUMENTS pertaining or relating to YOUR inspection templates for first-party residential water loss claims in California, 2015 to the present.

145. All DOCUMENTS containing any report or presentation from 2010 to present, from any person or entity employed by YOU, or any person or entity retained by YOU, relating in whole or in part to YOUR INVESTIGATION and/or ADJUSTING of water losses.

146. All DOCUMENTS containing any report or presentation from MCKINSEY & COMPANY from 2010 to present relating in whole or in part to YOUR INVESTIGATION and/or ADJUSTING of water losses.

Date: September 6, 2024

Kerley Schaffer LLP

Dylan L. Schaffer
Attorneys for Plaintiffs

**PROOF OF SERVICE**
***William Tong and Malinee Dibbayawan v. State Farm General Insurance Company, et al.***
**U.S. District Court for the Central District of California**
**Case No. 2:24−cv−02219−DSF−MAR**

I declare that I am over the age of 18 years and not a party to this action. My business address is 1939 Harrison Street, #900, Oakland, CA 94612. On September 6, 2024, I served the following on the interested parties in this action:

**PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO STATE FARM GENERAL INSURANCE COMPANY, SET FOUR**

Matthew F. Batezel
Daniel T. Balmat
Linda Avalos
**Pacific Law Partners, LLP**
15615 Alton Parkway, Suite 240
Irvine, CA 92618
Telephone: (949) 242-2441
mbatezel@plawp.com
dbalmat@plawp.com
lavalos@plawp.com

*Attorneys for Defendant State Farm General Insurance Company*

☐ **MAIL:** By placing such documents(s) in a sealed envelope, with postage prepaid for first class mail, for collection and mailing at Oakland California following ordinary business practice for deposit with United States Postal Service.

☐ **FAX**: By causing to be transmitted the documents by use of fax machine telephone number (510) 228-0350 to the parties at the facsimile numbers listed on the service list above. The fax machine used complies with California Rule of Court 2.301. The transmission was reported as complete and no error was reported by the machine. I caused the transmitting machine to print a record of the transmission, a copy of which is attached to this declaration.

☒ **E-MAIL**: By electronic mail to the addresses noted above.

☐ **FEDEX:** By placing for overnight delivery such documents(s) in a facility or box that is regularly maintained by FedEx.

☐ **HAND DELIVERY:** Caused to be hand delivered.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true, and if called as a witness I could testify competently thereto. This declaration was executed September 6, 2024, at Oakland, California.

/s/ Ronan Morrill
Ronan Morrill

**PROOF OF SERVICE**
***William Tong and Malinee Dibbayawan v. State Farm General Insurance Company, et al.***
**U.S. District Court for the Central District of California**
**Case No. 2:24−cv−02219−DSF−MAR**

I declare that I am over the age of 18 years and not a party to this action. My business address is 1939 Harrison Street, #900, Oakland, CA 94612. On September 6, 2024, I served the following on the interested parties in this action:

**PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO STATE FARM GENERAL INSURANCE COMPANY, SET FOUR**

Matthew F. Batezel
Daniel T. Balmat
Linda Avalos
**Pacific Law Partners, LLP**
15615 Alton Parkway, Suite 240
Irvine, CA 92618
Telephone: (949) 242-2441
mbatezel@plawp.com
dbalmat@plawp.com
lavalos@plawp.com

*Attorneys for Defendant State Farm General Insurance Company*

☐ **MAIL:** By placing such documents(s) in a sealed envelope, with postage prepaid for first class mail, for collection and mailing at Oakland California following ordinary business practice for deposit with United States Postal Service.

☐ **FAX**: By causing to be transmitted the documents by use of fax machine telephone number (510) 228-0350 to the parties at the facsimile numbers listed on the service list above. The fax machine used complies with California Rule of Court 2.301. The transmission was reported as complete and no error was reported by the machine. I caused the transmitting machine to print a record of the transmission, a copy of which is attached to this declaration.

☒ **E-MAIL**: By electronic mail to the addresses noted above.

☐ **FEDEX:** By placing for overnight delivery such documents(s) in a facility or box that is regularly maintained by FedEx.

☐ **HAND DELIVERY:** Caused to be hand delivered.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true, and if called as a witness I could testify competently thereto. This declaration was executed September 6, 2024, at Oakland, California.

/s/ Ronan Morrill
Ronan Morrill

EXHIBIT K

EXHIBIT K

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

| | | |
|---|---|---|
| BILLY & LACY HURSH,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, MARK D. WELTY, and MARK D. WELTY INSURANCE AGENCY, INC.,<br><br>Defendants. | ) | Case No. CJ-2025-2626 |

**DEFENDANT STATE FARM'S RESPONSES TO**
**PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS**

Defendant State Farm Fire & Casualty Company ("State Farm" or "Defendant") submits the following answers and responses to Plaintiffs' First Set of Discovery Requests.

**PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

State Farm's Responses are based on information and documentation presently available to State Farm, and include only that information which State Farm currently understands to be material. State Farm anticipates that further investigation, research, and analysis will supply additional facts and documents, add meaning to known facts, and perhaps establish new factual conclusions, all of which may in turn lead to additions or changes to these Responses. Accordingly, State Farm reserves the right to amend these Responses as additional facts are ascertained, analyses are made, research is completed, and contentions become apparent. In addition, State Farm will fulfill its obligation to supplement these Responses pursuant to the Oklahoma Discovery Code.

**OBJECTIONS TO PLAINTIFFS' DEFINITIONS**

**Objection to Plaintiffs' Definition—"Address/Telephone Number."** State Farm objects to Plaintiffs' request for "both the current business and residential address and telephone number" of natural persons on the grounds that such information constitutes personally identifiable

assumes facts and is vague and ambiguous with respect to the terms "any division, subsidiary, or parent." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Moreover, Haag Engineering did not inspect or provide an engineering or other opinion on Plaintiffs' claims. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 13:** Produce all Documents related to any Cost/Benefit Analysis concerning Your adjustment and/or handling of wind- and/or hailstorm claims in Oklahoma since 2010.

**RESPONSE TO REQUEST NO. 13:** State Farm objects to Request for Production No. 13 because it improperly assumes facts and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. The Request is also overly broad in scope (seeking "*any* Cost/Benefit Analyses;" not limited to information applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim), and time (not limited to a reasonable period of time). Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 14:** Produce all documents related to the Fire Model Enhancement on Wind/Hail from January 1, 2019 until the present, including any

and all presentations, memos, documents, or plans of the FME Wind/Hail, whether in draft for final format.

**RESPONSE TO REQUEST NO. 14:** State Farm objects to Request for Production No. 14 because it impermissibly assumes facts, seeks information that is not relevant to any party's claims or defenses or proportional to the needs of the case, and because it encompasses confidential, proprietary, and trade secret information of State Farm. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrine. Plaintiffs have not established such information is probative of any issue in the case or, therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 15:** Produce all documents related to the implementation of any measures, program rules, tactics, claims handling procedures or policies related to the Fire Model Enhancement on Wind/Hail from January 1, 2019 until the present.

**RESPONSE TO REQUEST NO. 15:** State Farm objects to Request for Production No. 15 because it impermissibly assumes facts, seeks information that is not relevant to any party's claims or defenses or proportional to the needs of the case, and because it encompasses confidential, proprietary, and trade secret information of State Farm. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the

claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrine. Plaintiffs have not established that such information is probative of any issue in the case or, therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 16:** Produce all documents related to the Wind and Hail Full Roof Replacement Percentage from January 1, 2019 to the present, including nationwide and state specific tracking of such percentages.

**RESPONSE TO REQUEST NO. 16:** State Farm objects to Request for Production No. 16 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, this case involves only Plaintiffs' insurance claims with State Farm, and other claims are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, endorsements, and individuals, in addition to different properties of different ages, in different conditions. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters, unrelated to the event that is the subject of this lawsuit, have no nexus to the harm Plaintiffs herein claim to have sustained under the subject policy and are irrelevant.

State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "Wind and Hail Full Roof Replacement Percentage" and because it is overly broad in scope (seeking "***all*** documents related to . . ."; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim); geographic area; and time (not limited to a reasonable period of time). Plaintiffs have not established that such information is probative of any issue in the case or, therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 17:** Produce all documents related to the Total or Full Roof Replacement to Partial Roof Replacement Ratio on Wind/Hail Claims from January 1, 2019 to the present, including nationwide and state specific tracking of such ratios.

**RESPONSE TO REQUEST NO. 17:** State Farm objects to Request No. 17 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery, which outweighs its likely benefit.. As an initial matter, this case involves only Plaintiffs' insurance claims with State Farm, and other claims are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, endorsements, and individuals, in addition to different properties of different ages, in different conditions. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters, unrelated to the event that is

the subject of this lawsuit, have no nexus to the harm Plaintiffs herein claim to have sustained under the subject policy and are irrelevant.

State Farm also objects to this Request as overly broad in scope (seeking "***all*** documents related to . . . .;" not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim); geographic area; and time (not limited to a reasonable period of time). Plaintiffs have not established that such information is probative of any issue in the case or, therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 18:** Produce all documents related to the Total Roof Payment volumes on Wind/Hail claims from January 1, 2019 to the present, including nationwide and state specific tracking of such ratios.

**RESPONSE TO REQUEST NO. 18:** State Farm objects to Request for Production No. 18 because it is overly broad, improperly assumes facts, and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery, which outweighs its likely benefit. As an initial matter, this case involves only Plaintiffs' insurance claims with State Farm, and other claims are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, endorsements, and individuals, in addition to different properties of different ages, in different conditions. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual

merits. Any such matters, unrelated to the event that is the subject of this lawsuit, have no nexus to the harm Plaintiffs herein claim to have sustained under the subject policy and are irrelevant.

State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "Total Roof Payment volumes on Wind/Hail claims" and because it is overly broad in scope (seeking "***all*** documents related to . . ."; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). Plaintiffs have not established that such information is probative of any issue in the case or, therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 19:** Produce all documents from January 1, 2019 until the present, relating to your review, monitoring, and/or tracking of the percentages of total or full roof replacements by individual adjusters and managers on wind/hail claims.

**RESPONSE TO REQUEST NO. 19:** State Farm objects to Request for Production No. 19 because it is overly broad, improperly assumes facts, and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Interrogatory is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim); geographic area; and time (not limited to a reasonable period of time). State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "review, monitoring, and or tracking." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal

privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

**REQUEST FOR PRODUCTION NO. 20:** Produce any policies, procedures, and/or methods to review and/or track percentages of total or full roof replacements by individual adjusters and managers adjusting or working on Oklahoma wind/hail claims, including recommendations, approvals, or similar type of review, tracking, or analysis related to total or full roof replacements on wind/hail claims.

**RESPONSE TO REQUEST NO. 20:** State Farm objects to Request for Production No. 20 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Interrogatory is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "recommendations, approvals, or similar type of review, tracking or analysis." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 21:** Produce all Documents related to the Fire Model Enhancement-Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus

Initiative and/or Hail Initiative and/or any hail quality focus initiative for the kick off in Texas in 2020.

**RESPONSE TO REQUEST NO. 21:** State Farm objects to Request for Production No. 21 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Interrogatory is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiative."

In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 22:** Produce all Documents related to the Fire Model Enhancement-Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus

Initiative and/or Hail Initiative and/or any hail quality focus initiative referencing Oklahoma from January 1, 2019 until the present, including plans to implement such initiatives or plans in Oklahoma, implementation in Oklahoma, tracking of indemnity savings in Oklahoma, tracking of the total or full roof replacement to partial roof replacement ratio in Oklahoma, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims in Oklahoma.

**RESPONSE TO REQUEST NO. 22:** State Farm objects to Request for Production No. 22 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Interrogatory is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiative."

This Request is also overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or

other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 23:** Produce all correspondence sent to or by Nicole Manduca from January 1, 2019 to the present referring or relating to the Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, the Hail Focus Initiative and/or Hail Initiative and/or other wind/hail quality focus initiatives.

**RESPONSE TO REQUEST NO. 23:** State Farm objects to Request for Production No. 23 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, Nicole Manduca was not involved in the adjustment or handling of Plaintiffs' claim. Moreover, the Request is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim) and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the terms/phrases "Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiative." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information

containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 24:** Produce all Documents related to the Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, including any presentations, metrics, claim handling tactics or rules, tracking of results, and/or Cost/Benefit Analyses You performed regarding any such initiative or program.

**RESPONSE TO REQUEST NO. 24:** State Farm objects to Request for Production No. 24 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim) and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the terms/phrases "initiatives, including any presentations, metrics, claim handling tactics or rules, tracking of results;" "Hail Focus Initiative and/or Hail

Initiative and/or any hail quality focus initiative;" and "any such initiative or program." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 25:** Produce all Documents memorializing any enterprise-wide rule You have stated, implemented, or enforced regarding the need for any management approval of full roof replacements on wind/hail claims.

**RESPONSE TO REQUEST NO. 25:** State Farm objects to Request for Production No. 25 because it impermissibly assumes facts, is overly broad, and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). Further, State Farm objects to this Request as vague and ambiguous, especially as to the terms/phrases "enterprise-wide rule . . . stated, implemented, or enforced regarding the need." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, invades the privacy rights of policyholders who are not parties to this lawsuit, or seeks information containing attorney work product and/or that is protected by the attorney client or other legal privileges. State Farm further objects to the extent this Request purports to imply that State Farm implemented an enterprise-wide rule that required management approval of full roof replacements

on all wind/hail claims. Rather, managerial approval for total roof replacements is only applicable to certain claims, including those with light wind (less than 50 mph) or small hail (less than 1 inch). Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 26:** Your Quality plan(s), program(s), and/or initiative(s) to reduce or track indemnity payments, reduce or track the total or full roof replacement to partial roof ratio, reduce or track full roof replacement approval percentages, and reduce or track nationwide total roof payment volume on wind or hail claims from January 1, 2019 to the present.

**RESPONSE TO REQUEST NO. 26:** State Farm objects to Request for Production No. 26 because it impermissibly assumes facts and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). Further, State Farm objects to this Request because it is vague and ambiguous, especially as to the terms/phrases "Quality plan(s), program(s), and/or initative(s)."

State Farm also objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

Subject to these and State Farm's Universal Objections, State Farm agrees to produce State Farm's Fire Property Claims Quality Plan that was in effect on the dates of loss, upon entry of an approved protective order.

**REQUEST FOR PRODUCTION NO. 27:** Your Wind/Hail claims Focus Models, including the Fire Model Enhancement – Wind/Hail, pertaining to homeowners' claims from 2016 to present, including all presentations, internal memos, or related documents.

**RESPONSE TO REQUEST NO. 27:** State Farm objects to Request for Production No. 27 because it improperly assumes facts and is vague and ambiguous, especially as to the terms/phrases "Wind/Hail claims Focus Models" and related documents." State Farm further objects because this Request is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not

established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 28:** The matrices which relate to or involve the tracking of Your financial savings (and future financial savings) tied to reduction in indemnity payments on wind/hail claims, reduction in the total or full roof replacement to partial roof ratio, nationwide total roof payment volume, and/or reduction of the full roof replacement percentage on wind or hail claims from January 1, 2019 to the present.

**RESPONSE TO REQUEST NO. 28:** State Farm objects to Request for Production No. 28 because it improperly assumes facts and is vague and ambiguous, especially as to the terms/phrases "matrices which involve the tracking of." State Farm further objects to this Request because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous.

Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 29:</u>** Produce all Documents related in any way to "enhanced emphasis on Claim Handling Hygiene."

**<u>RESPONSE TO REQUEST NO. 29:</u>** State Farm objects to Request for Production No. 29 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (seeking "***all*** Documents related in ***any way***"; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the terms/phrases "related in any way" and "enhanced emphasis on Claim Handling Hygiene." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 30:</u>** Produce all Documents related to the "Art of the Conversation."

**RESPONSE TO REQUEST NO. 30:** State Farm objects to Request for Production No. 30 because it improperly assumes facts and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (seeking "***all*** Documents related to . . . ."; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 31:** Produce all Documents related to the "HAAG Refresher."

**RESPONSE TO REQUEST NO. 31:** State Farm objects to Request for Production No. 31 because it seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (seeking "***all*** Documents related to . . . ."; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). State Farm further objects to this Request as vague, specifically with respect to the use of the term "HAAG Refresher."

State Farm further states that its procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, training materials that were obsolete on the dates of loss, pertain only to other losses, and/or pertain only to other areas of the country, are not relevant to the matters at issue in this case. State Farm additionally objects to this Request to the extent it seeks information and/or documents authored and/or copyrighted by entities that are not parties to this litigation, which State Farm is not at liberty to produce. Finally, State Farm objects to this Interrogatory to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

**REQUEST FOR PRODUCTION NO. 32:** Produce all Documents related to the "2021 Fire Property Claims Quality Plan."

**RESPONSE TO REQUEST NO. 32:** State Farm objects to Request for Production No. 32 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (seeking "***all*** Documents related to . . . ."; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim

is handled on its own individual facts. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

Subject to these and State Farm's Universal Objections, State Farm agrees to produce State Farm's 2021 Fire Property Claims Quality Plan upon entry of an approved protective order.

**REQUEST FOR PRODUCTION NO. 33:** Produce full and complete copies of all communications on "MyBlock" for the last ten (10) years related to wind/hail claims, total roof replacements, and/or the Fire Model Enhancement – Wind/Hail or related Team.

**RESPONSE TO REQUEST NO. 33:** State Farm objects to Request for Production No. 33 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (seeking "***all*** communications"; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. It is also unduly burdensome to search for and/or produce such information. Plaintiffs have not

established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 34:** Produce full and complete copies of all "HAAG Education Hail and Wind Assessment Video Series," including but not limited to: Chapter 1 – Hail and Wind Basics contains four segments and is 1 hour and 28 minutes; Chapter 2 – Composition Shingles contains nine segments and is 2 hours and 33 minutes long.

**RESPONSE TO REQUEST NO. 34:** State Farm objects to Request for Production No. 34 because, in requesting "*full and complete* copies of 'HAAG Education Hail Assessment Video Series," it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope because it is not limited to trainings applicable to the specific insurance claim and/or coverages at issue in this litigation.

State Farm further objects to this Request because Haag has taken the position that State Farm does not have the authority to produce these videos. According to Haag, the videos constitute its intellectual property, and State Farm's license to use the videos "does not confer upon State Farm any authority or sufficient control over the videos to reproduce, disclose, or otherwise produce Haag's proprietary materials in litigation." *See* Exhibit B, Decl. of R. Holdhusen. As such, Plaintiffs' request should be directed to Haag.

**REQUEST FOR PRODUCTION NO. 35:** Produce full and complete copies of all Documents or Communications pertaining to "Claims and Agency Weather Event Topic Discussions" and any transcriptions of the following: "Claim managers will host calls with Agency leadership from mid-January 2021 through February 2021 to discuss wind/hail topics that were frequent points of discussion with Agency in 2020. These topics may include a review of 2020

claim wind/hail volume, additional inspections, matching, roofer inspections prior to a claim being submitted to State Farm, timelines for obtaining replacement cost benefits, Roof/Exterior Inspection Assist Program, SFPSP Roofing Services Program (RSP)/Contractor Services Program (CSP), Roof Surfaces Payment Schedule Endorsement, and Metal Roof Exclusion for Hail (Section 1 – Additional Coverage: Metal Roof Endorsement)."

**RESPONSE TO REQUEST NO. 35:** State Farm objects to Request for Production No. 35 because it is overly broad, improperly assumes facts, and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim) and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts.

Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 36:** Please produce any and all emails, letters, memos, or other correspondence or documents sent or received by Nicole Manduca from January 1, 2019 until the present time regarding or relating to (i) Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, (ii) implementation of Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Texas; (iii) implementation of Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Oklahoma; (iv) claims handling tactics or rules used related to such initiatives or plans; (v) Fire Model Enhancement Guidelines; and/or (vi) tracking of indemnity savings, tracking of the total or full roof replacement to partial roof replacement ratio, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims.

**RESPONSE TO REQUEST NO. 36:** State Farm objects to Request for Production No. 36 because it is duplicative of Request for Production No. 23. In addition, State Farm objects to this Request because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, Nicole Manduca was not involved in any way with the handling or adjustment of Plaintiffs' claims. Moreover, the Request is overly broad in scope (seeking "any and all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable time period); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad

and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the terms/phrases "Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives" and "claims handling tactics or rules used related to such initiatives or plans." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

**REQUEST FOR PRODUCTION NO. 37:** Please produce any and all emails, letters, memos, or other correspondence or documents sent or received by Tom Moss from January 1, 2019 until the present time regarding or relating to (i) Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, (ii) implementation of Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Texas; (iii) implementation of Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Oklahoma; (iv) claims handling tactics or rules used related to such initiatives or plans; (v) Fire Model Enhancement Guidelines; and/or (v)

tracking of indemnity savings, tracking of the total or full roof replacement to partial roof replacement ratio, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims.

**RESPONSE TO REQUEST NO. 37:** State Farm objects to Request for Production No. 37 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, Tom Moss was not involved in the handling or adjustment of Plaintiffs' claims. Moreover, the Request is overly broad in scope (seeking "any and all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable time period); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the terms/phrases "Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives" and "claims handling tactics or rules used related to such initiatives or plans." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or

that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

**REQUEST FOR PRODUCTION NO. 38:** Please produce any and all emails, letters, memos, or other correspondence or documents sent or received by Susan Maynard from January 1, 2019 until the present time regarding or relating to (i) Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, (ii) implementation of Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Texas; (iii) implementation of Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Oklahoma; (iv) claims handling tactics or rules used related to such initiatives or plans; (v) Fire Model Enhancement Guidelines; and/or (v) tracking of indemnity savings, tracking of the total or full roof replacement to partial roof replacement ratio, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims.

**RESPONSE TO REQUEST NO. 38:** State Farm objects to Request for Production No. 38 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, Susan Maynard was not involved in the handling or adjustment of Plaintiffs' claims. Specifically, the Request is overly broad in scope (seeking "any and all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable time period); and geographic area (not limited to

materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the terms/phrases "Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives" and "claims handling tactics or rules used related to such initiatives or plans." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 39:** Produce all Fire Model Enhancement Guidelines for Wind/Hail.

**RESPONSE TO REQUEST NO. 39:** State Farm objects to Request for Production No. 39 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). Moreover, State Farm objects to this Request to the

extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

**REQUEST FOR PRODUCTION NO. 40:** Produce any and all emails, letters, memos, or other correspondence or documents duties of State Farm and/or its captive Agent(s) to keep abreast of the condition of the properties State Farm insures upon renewal, including but not limited to reducing the risk of insuring the property, maintaining the exterior of the property, reducing the risk of additional damage to the roof, replacing the roof, replacing shingles with granular loss, eligible roofing material used, and how the insured gets this information to State Farm and/or its captive Agent(s).

**RESPONSE TO REQUEST NO. 40:** State Farm objects to Request for Production No. 40 because it seeks information which is not relevant or proportional to the needs of the case. The Request is also vague and ambiguous with respect to the terms "duties," "keep abreast," and "how the insured gets this information to State Farm and/or its captive Agent(s)." State Farm additionally objects to this Interrogatory as invasive of the attorney-client privilege and/or work-product doctrine and because it improperly seeks a legal conclusion.

The Request is also objectionable because it is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts,

circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 41:** Produce any Fire Property Claims Quality Plan from January 1, 2019 until the present time.

**RESPONSE TO REQUEST NO. 41:** State Farm objects to Request for Production No. 41 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

State Farm agrees to produce State Farm's Fire Property Claims Quality Plan that was in effect on the dates of loss, upon entry of an approved protective order.

**REQUEST FOR PRODUCTION NO. 42:** Produce any Wind/Hail Claims Guidelines from January 1, 2019 until the present time.

**RESPONSE TO REQUEST NO. 42:** State Farm objects to Request for Production No. 42 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

**REQUEST FOR PRODUCTION NO. 43:** Please produce any and all emails, letters, memos, or other correspondence or documents sent or received by Sharon Arnold from January 1, 2019 until the present time regarding or relating to (i) Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, (ii) implementation of Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Texas; (iii) implementation of Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Oklahoma; (iv) claims handling tactics or rules used related to such initiatives or plans; (v) Fire Model Enhancement Guidelines; and/or (v) tracking of indemnity savings, tracking of the total or full roof replacement to partial roof

replacement ratio, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims.

**RESPONSE TO REQUEST NO. 43:** State Farm objects to Request for Production No. 43 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, Sharon Arnold was not involved in the handling or adjustment of Plaintiffs' claims. Moreover, the Request is overly broad in scope (seeking "any and all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable time period); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the terms/phrases "any hail quality focus initiatives," "claims handling tactics or rules used related to such initiatives or plans," "total or full roof replacement to partial roof replacement ratio," "full roof replacement approval percentages ", and "total roof payment volume." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such

information is probative of any issue in the case, or therefore, discoverable.

**REQUEST FOR PRODUCTION NO. 44:** Produce all documents previously produced and/or ordered by the respective court to be produced by You in the following cases:

- Nida v. State Farm, CJ-2020-4453 (Oklahoma County)
- Hosier v. State Farm, CJ-2021-1741 (Oklahoma County)
- Kyger v. State Farm, CJ-2022-3990 (Oklahoma County)
- McDow v. State Farm, CJ-2022-1857 (Oklahoma County)
- Barnett v. State Farm, CJ-2020-141 (Grady County)
- McNeil v. State Farm, CJ-2021-926 (Cleveland County)

**RESPONSE TO REQUEST NO. 44:** State Farm objects to Request for Production No. 44 as an improper attempt to circumvent the protective orders governing the disclosure of Confidential information in other cases and the relevance requirements for each case. State Farm further objects because this Request is overly broad and seeks information that is not relevant to the resolution of any party's claims or defenses or proportional to the needs of the case, as each of the cases listed in this Request involves different insureds, policies, properties, weather events, and facts of loss. This Request is also overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; and not limited to materials pertinent to the claims personnel who adjusted the subject claim) and to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State

EXHIBIT L

EXHIBIT L

*1062579485*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

OCT -8 2025

RICK WARREN
COURT CLERK

109 ______

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

**BILLY HURSH**

*and*

**LACY HURSH,**

*Plaintiffs,*

*v.*

**STATE FARM FIRE AND CASUALTY COMPANY;**

**MARK D. WELTY;** *and*

**MARK D. WELTY INSURANCE AGENCY, INC.,**

*Defendants.*

**CASE NO. CJ-2025-2626**
**Hon. Amy Palumbo**

*Removed as No. CIV-25-00442-SLP*

*Remanded August 21, 2025*
*Willard v. State Farm,*
*No. CIV-25-337-SLP*

**PLAINTIFFS' FIRST MOTION TO COMPEL**

## CONTENTS

**I. GOOD FAITH CERTIFICATION ........ 1**

**II. LEGAL STANDARD ........ 1**

**III. ARGUMENT AND AUTHORITIES ........ 8**

B. Plaintiffs' Specific Requests (by Topic) Are Relevant ........ 8

1. Plaintiffs' Requests Targeting State Farm's Training for Claims Handling Personnel and Captive Agency Personnel ........ 8
2. Plaintiffs' Requests Targeting State Farm's Reliance on HAAG for Training and Protocol ........ 10
3. Plaintiffs' Requests Targeting State Farm's Wind-Hail Fire Model Enhancement Team ........ 12
4. Plaintiffs' Requests Targeting State Farm's Enterprise Rules ........ 13
5. Plaintiffs' Requests Targeting State Farm's Quality Plans ........ 14
6. Plaintiffs' Requests Targeting State Farm's Cost/Benefit and Return-on-Investment Analyses, Studies, and Assessments ........ 15
7. Plaintiffs' Requests Targeting State Farm's Claims Data ........ 16
8. Requests Targeting Prior Productions in other "Scheme" Cases ........ 16

C. State Farm's Objections Are Improper ........ 19

1. Relevance ........ 19
2. Clarity ........ 20
3. Tailoring ........ 21
4. Proportionality ........ 21
5. Time Period ........ 22
6. "Each Claim Is Unique" ........ 22
7. State Farm's Reliance on *Werner* ........ 22
8. Confidentiality and Trade Secrets ........ 23

**IV. CONCLUSION AND REQUEST FOR RELIEF ........ 23**

Plaintiffs Billy Hursh and Lacy Hursh, pursuant to 12 O.S. § 3237(A)(2), move the Court for an order compelling Defendant State Farm Fire and Casualty Co. ("Defendant" or "State Farm") to (1) provide full and complete answers to Plaintiffs' Interrogatories and (2) produce all documents responsive to Plaintiffs' Request for Production regarding same. *See* Exhibit 1 (summary of exhibits), and Exhibit 2 (all Requests and Responses). Plaintiffs have also attached other orders on Motions to Compel which support the scope and breadth of Plaintiffs' discovery. *See* Exhibits 4-7.

The Court should grant Plaintiffs' Motion because the discovery at issue is relevant to this action and State Farm's arbitrary limitations are improper and contrary to the Oklahoma Discovery Code. In support thereof, Plaintiffs show the Court as follows:

## I. GOOD FAITH CERTIFICATION

Pursuant to 12 O.S. § 3237(A)(2), Plaintiffs' counsel certifies that it has, in good faith, conferred with State Farm's counsel in an effort to obtain the discovery at issue without court action. Despite counsel's good faith efforts, State Farm has failed to answer the Interrogatories at issue or produce all responsive documents, thereby necessitating the filing of this Motion.

## II. LEGAL STANDARD

"[T]he essence [of a bad faith cause of action] is the failure to deal fairly and in good faith with an insured as such, the jury may be shown the *entire course of contact* between the parties." *Timmons v. World Globe*, 1982 OK 97, 653 P.2d 907, 917 (emphasis added). To this end, the unwavering purpose of modern discovery practice and procedure is to discover the true facts and circumstances of the controversy—not aid in their concealment. *See City of Edmond v. Parr*, 1978 OK 70, ¶ 7,587 P.2d 56; *Davis v. Davis*, 1975 OK 83, 536 P.2d 915; *Osborne v. Mollman Water Conditioning, Inc.*, 2003 OK CIV APP 20, ¶ 22, 65 P.3d 632, 638.

The Oklahoma Supreme Court describes the purpose of modern discovery:

> The purpose of modern discovery practice and procedure is to promote the discovery of the true facts and circumstances of the controversy, rather than to aid in their concealment. In *State ex rel. Remington Arms Co., Inc. v. Powers,* 1976 OK 103, ¶ 4, 552 P.2d 1150, the Court recognized that rules and statutory enactments dealing with discovery are to be given liberal construction, stating:
>
> The purposes of the discovery statutes are to facilitate and simplify identification of the issues by limiting the matters in controversy, avoid unnecessary testimony, promote justice, provide a more efficient and speedy disposition of cases, *eliminate secrets and surprise*, prevent the trial of a lawsuit from becoming a guessing game, and lead to fair and just settlements without the necessity of trial. Discovery statutes permit obtaining of evidence in the sole possession of one party which is unavailable to opposing counsel through the utilization of independent means. For these reasons, the rules dealing with discovery, production, and inspection are to be liberally construed. **The intent of the Oklahoma discovery statutes is to attempt to provide procedures which promote accurate information in advance of trial concerning the actual facts and circumstances of a controversy, rather than to aid in its concealment.** The utilization of discovery enables attorneys to better prepare and evaluate their cases. **Ascertainment of truth and the ultimate disposition of lawsuit is better accomplished when parties are well educated through discovery as to their respective claims in advance of trial. Pretrial discovery procedures are intended to enhance truth-seeking process, and good faith compliance with such procedures is both desirable and necessary.** (Citations omitted.)

*Boswell v. Schultz*, 2007 OK 94, ¶ 14, 175 P.3d 390, 395 (bold and italic emphasis added).

Evidence need not be admissible to be relevant and discoverable. *See* 12 O.S. §3226(B)(l)(a); *see also Scott v. Peterson*, 2005 OK 84, 126 P.3d 1232, 1234; *Reibert v. CSAA Fire & Cas. Ins. Co*, 2018 WL 279348, at * 3, 6 (N.D. Okla. Jan. 3, 2018). It has been the resounding opinion of the Oklahoma Supreme Court that liberal discovery will minimize the possibility of bad faith litigation, stating "the strongest argument against discovery is more one of tactics, than of actual prejudice." *Tuller v. Shallcross*, 1994 OK 133, 886 P.2d 481,484.

Courts commonly look unfavorably upon significant restrictions placed upon the discovery process; provided the information sought meets the foregoing standard of relevance, the burden rests upon the objecting party to show why a particular discovery request is improper. *Crest*

*Infiniti, II, LP v. Swinton*, 2007 OK 77, ¶¶16-17, 174 P.3d 996, 1004 ("In Oklahoma the burden of showing 'good cause' is statutorily placed on the party objecting to discovery and is part of that party's motion for a protective order."). Notably, "irrelevancy" is not an enumerated ground for a protective order under § 3226(C), and it is insufficient to simply recite boilerplate objections such as overbroad, burdensome, oppressive or irrelevant. *Reibert, supra*. Rather, specific facts must be demonstrated to warrant a protective order. *Crest Infiniti*, 174 P.3d at 998; *YWCA of Oklahoma City v. Melson*, 1997 OK 81, ¶ 15, 944 P.2d 304, 308-309. Accordingly, "[i]f the basis for an objection is lack of relevance, 'the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.' " *Fed. Ins. Co. v. Indeck Power Equip. Co.*, 2016 WL 5173402, at *2 (W.D. Okla. Sept. 21, 2016) (citation omitted).[1]

State Farm may not withhold or limit relevant discovery on unsubstantiated claims of burden. *See Touhy v. Walgreen Co.*, 2006 WL 1716646, at* 1 (W.D. Okla. June 21, 2006), *aff'd sub nom.*, 526 F .3d 641 (10th Cir. 2008) ("in opposing discovery on the grounds of burdensomeness, a party ... [must] show facts ... demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome"); *see also Haukaas v. Liberty Mut. Ins. Co.*, 2022 WL 1719412, at *2 (D.S.D. May 27, 2022) ("conclusory objections ... [are] insufficient"). "[C]ommon sense tells us that discovery costs time and money, ... [but] that is not an adequate basis to seek a Court order." *Breen v. State Farm Mut. Auto. Ins. Co.*, 2012 WL

[1] Moreover, bald complaints of effort or expense are not substitutes for proper burdensome or proportionality objections. *See id.* ("The objecting party must do more than simply recite boilerplate objections such as overbroad, burdensome, oppressive or irrelevant. . . . [T]he party resisting the discovery has the burden to establish the lack of relevance.").

13020744, at *1-2 (N.D. Okla. Apr. 23, 2012) (denying State Farm's motion "based on burden/expense," because "State Farm has not substantiated the economic basis for its motion").

## III. STATE FARM'S SCHEME & PATTERN AND PRACTICE

Plaintiffs have institutional knowledge of State Farm's pattern and practice Scheme, of which Plaintiffs have been victims. State Farm's Property and Casualty Claims Department ("P&CCD") is State Farm's homeowners insurance coverage division, which identified roof indemnity as State Farm's largest source of indemnity losses. P&CCD issued a memorandum identifying that State Farm was overpaying "roof spend" (*i.e.*, indemnity payments under homeowners insurance policies for damage to roofs).

> P&C Claims is focusing on what we can do ***to lower our indemnity payments related to Roofs***. Last year we had an indemnity over $3.5 Billion dollars and a total of $16.6 Billion over the last 7 years for the Enterprise on roofing. Xactware has enhanced their Aerial Sketch tool to help our Claim partners in writing estimates for roofs. Listed below are some facts in supporting the 27.5 Service Pack.

*See* Plaintiff's Motion to Enforce Discovery Order of November 23, 2021 and Motion for Sanctions, *Barnett v. State Farm*, CJ-2020-141 (Grady Co. Okla. April 8, 2024) (Ex. 8) (citing Aug. 2, 2022 Hrg. Tr. at 108:25-109.4, at which Judge Kirkland ordered production of Personnel Rules derived from the Scheme). *Barnett* addressed the same Scheme at issue here. This was produced (unprotected) in *Misner v. State Farm*, CJ-2013-1050 (Cleveland County).

State Farm's P&CCD followed with an investigation into initiatives to reduce indemnity payments on roof claims to lower State Farm's roof spend and pad its bottom line. State Farm employed Accenture (formerly Andersen Consulting), a Fortune Global 500 international consulting firm with a market capitalization of over $150 billion, to develop ways to achieve this indemnity reduction.

State Farm created its Wind & Hail Fire Model Enhancement Team ("WHMET") to develop, implement, monitor, and assess the Scheme. The WHMET is a star chamber consisting of approximately ten internal State Farm property claims experts charged with executing the Wind/Hail Initiative. Nicole Manduca was the leader of the WHMET.[2]

The WHMET worked with Accenture at length. Incredibly, Accenture provided State Farm with alleged "industry standards" on full roof replacements on Wind/Hail insurance claims nationwide, purporting to show that State Farm was paying for full or total roof replacements at a much higher percentage than the nationwide average. Such an arbitrary endeavor is either a complete fabrication, or some unsubstantiated and possibly illegal analysis to reach an improper and generalized notion that wind/hail claims and corresponding replacement of a particular roof in question can be evaluated on a uniform basis. Regardless, State Farm and the WHMET acted upon Accenture's consulting and worked with Accenture to develop its Wind/Hail Scheme to reduce its internal performance measures on percentages of full roof replacements to the alleged much lower industry standards. State Farm found its golden opportunity and determined (before claims occurred) it could substantially reduce its indemnity payouts by lowering its percentage of approval for full roof replacements on Wind/Hail claims. Thus, unnecessary roof replacements and meeting some arbitrary and capricious industry standard became the main target of the WHMET in order to achieve its desired goal of lowering indemnity related to roofs.

State Farm implemented a Wind/Hail Playbook and developed certain tactics to drastically reduce the number of approved full roof replacements, instead adjusting Wind/Hail claims by

---

[2] A copy of Manduca's deposition taken in April 2024 along with exhibits was recently ordered to be produced by Judge Virgin in Cleveland County, State of Oklahoma, Case No. CJ-2024-183, *Lyle v. State Farm*. In *Nida v. State Farm*, CJ-2020-4453, State Farm produced a privilege log with multiple emails involving Manduca and the draft of the Wind/Hail playbook with in-house counsel. *See Nida Plaintiffs' Challenge to State Farm's Privilege Log and Request for In Camera Review filed June 21, 2024.*

offering insureds much lower amounts for "repairs" to the roof, very often right below or above the policy deductible. State Farm primarily uses "age/condition" of the roof and alleged preexisting damage, wear and tear, and deterioration along with definitions of hail damage not located in the Policy to deny a full roof replacement. A primary Tactic used by State Farm to achieve this lowered metric of full roof replacements was taking away a field adjuster's ability to total a roof on a wind/hail claim. **State Farm implemented a policy that claims adjusters could not issue a full roof replacement without Team Manager approval.**

Thus, the same adjusters who had previous authority to approve a roof replacement for decades were now robbed of their ability to approve a full roof replacement. The obvious practical and psychological ramifications of this tactic achieved immediate and significant results for State Farm. Plaintiffs have requested discovery into tracking the percentages employed by State Farm's Team Managers on full roof replacements, performance data and metrics, evaluation data, and similar measurements.

Another significant tactic used by State Farm is including hidden definitions crafted by an engineering firm State Farm promised years ago it would not use, Haag Engineering. State Farm regularly denies roof damage via hidden definitions crafted by Haag for terms undefined in the policy, such as "cosmetic damage." There are several hidden definitions crafted by Haag that State Farm uses daily in secret to deny Oklahoma insureds policy benefits for storm claims. Each of these tactics were employed with the goal of having tough conversations with first-party insureds to try and keep customers happy while knowing State Farm was arbitrarily cutting coverage without revising its policy terms or informing insureds consistent with the duty of disclosure it owes.

State Farm used Texas as a pilot program and rolled out its Scheme in Dallas County, Texas in June 2020. State Farm used what it learned on indemnity loss reduction in Texas and then implemented in other hail states, including Oklahoma, and then to all states by December 2020 due to the improved quality and success of the Scheme in Texas. The implementation of the Playbook with State Farm Tactics, including removal of adjuster authority to approve a full roof replacement (and the calibration of State Farm's claims handling personnel to the Scheme), resulted in a substantial reduction in full roof replacements for State Farm insureds.

In fact, State Farm tracked and reported its success. State Farm achieved incredible results via its Wind/Hail Scheme and implementation of claims handling rules, playbooks, and tactics that exist today. Plaintiffs have sought discovery on all cost/benefit reports, analyses, financial reports, and indemnity savings by State Farm in implementing this Scheme. Plaintiffs have requested all documents outlining State Farm's reduction in the total roof to partial roof payment ratio, full roof replacement percentage, and total roof payment volumes and all documents correlating to the financial savings and indemnity reduction it set out to achieve through the current timeframe. State Farm does not argue these documents do not exist. Rather, State Farm does NOT want the Oklahoma or national public to see these documents.

Indeed, WHMET Team Leader Nicole Manduca still brags on her personal LinkedIn page that she "*led enterprise (Name for State Farm) effort in Fortune 500 company **improving quality results by over 50%**.*" To State Farm, improving quality equals reduction in indemnity payouts on roofs. Recall State Farm presented the problem very clearly: "*P&C Claims is focusing on what we can do **to lower our indemnity payments related to Roofs**. Last year we had an indemnity over $3.5 Billion dollars and a total of $16.6 Billion over the last 7 years for the Enterprise on roofing.*"

In reducing indemnity payouts on full roof replacements and adjudicating insurance claims before they occurred, State Farm's conduct (1) breached its contract with its insureds, (2) breached its duty of good faith and fair dealing owed to its insureds, and (3) committed fraud upon its insureds. State Farm's conduct represents a pattern and practice of unlawful claims handling throughout the State (and the nation) that has deprived Oklahoma insureds hundreds of millions of dollars in premiums and indemnity payments for full replacement cost coverage, including improperly withheld claim benefits for full roof replacements from Wind/Hail. Surely, Plaintiffs are entitled to discovery all of the documents and details of this Scheme.

## IV. ARGUMENT AND AUTHORITIES

### A. Plaintiffs' Specific Requests (by Topic) Are Relevant

These following topics are all relevant to Plaintiffs' Discovery Requests and this Motion.

#### 1. Plaintiffs' Requests Targeting State Farm's Training for Claims Handling Personnel and Captive Agency Personnel

Plaintiffs' **Interrogatory ("Rog.") Nos. 5, 10, 18, and 19**, and **Request for Production ("RFP") Nos. 4,5,6, 30, 40, and 42** (Exhibit 2) ask State Farm to identify or produce an aspect of its training for claims handling or captive agency personnel.[3] The Petition places at issue State Farm's claims handling and asserts that the handling of Plaintiffs' Claim is part and parcel of State Farm's broad-reaching Scheme. Therefore, the training State Farm provides its claims handling

[3] Plaintiffs invoke State Farm's underwriting as a core step in the Scheme. *See* Pet. ¶¶ 15, 18-24, 26(c)-(e), 55, 73. This includes the Agent's use of Verisk software to calculate the replacement cost value of the Insured Property, which is represented to be 100% of the property's value. *See* Pet ¶¶ 25(c)-(e), 26 (g)-(h), 73. The falsity of this was made clear only upon State Farm's pre-ordained denial of Plaintiffs' Claim. It also includes State Farm's agents' duty of reasonable care, skill, and diligence, which Plaintiff alleges necessitates a physical inspection of the Insured Property to ascertain whether any conditions are present that may negate coverage—otherwise, the insurance-to-value representation is made blindly and recklessly. *See* Pet. ¶¶ 18-24.

personnel who handled the Claim is directly relevant to both Plaintiffs' claims and Defendants' defenses thereto. They manner in which State Farm trains its claims handlers is directly relevant to the reasonableness of State Farm's conduct in handling Plaintiffs' Claim, State Farm's internal standards of care, and the timeliness of State Farm's conduct.

Each Discovery Request is narrowly tailored to seek training information State Farm provided to its employees and/or captive agents. In *Hosier*, State Farm Team Manager Jacqueline Draper testified that the Hosiers' State Farm homeowners' replacement cost policy only covers "bruising and fracturing of a [shingle] mat from hail" (i.e., "functional damage"), whereas all other damage-including granular loss caused by rain, hail, or any other accidental direct loss-is not covered. *Plaintiffs' Fourth Motion to Compel State Farm Fire & Casualty Co., Hosier v. State Farm*, CJ-2021-17416-7 (Okla. Cty., Okla. Sept. 1, 2023) (Ex. 11) at 6-8 (deposition citations omitted). Ms. Draper further confirmed neither "hail damage" nor "accidental direct loss" are defined in the policy. *Id.* The definition State Farm does employ in its internal guidelines reiterates State Farm has borrowed its definition of "hail damage" ***verbatim*** from Haag Engineering Company's definition of "functional damage." *Id.* State Farm withholds this narrowed definition from its policyholders-who do not realize the limited scope of their policy until the damage occurs.

Ms. Draper's testimony additionally explained State Farm has engaged in widespread conversations amongst management and claims personnel to ensure it is "calling hail correctly." *Id.* In *Hosier*, and for other members of Ms. Draper's team, the initiative to "correctly" identify hail damage resulted in Ms. Draper "coaching" and "upskilling" her team members to attribute less damage to hail and more damage to wear and tear-a cause of loss not covered under State Farm's policy. *Id.* Most astonishingly, Ms. Draper forbid her adjusters from issuing a total loss payment for hail damaged roofs without first seeking Ms. Draper's personal approval. This

requirement applied equally to the Hosier's claims handler, Kelly Weinstroer. *Id.* If Ms. Weinstroer or any other member of Ms. Draper's team wished to deny a roof claim, however, they were free to do so-no managerial blessing required. *Id.* Ms. Weinstroer complied with her "up-skilling" and denied Plaintiffs' claim, attributing Plaintiffs' roof damage to wear and tear. *Id.* State Farm's hail claims training and approach then can be succinctly distilled: the "up-skilling" (derived from the Haag gold standard on what is and isn't hail damage) will continue until the claim denials increase. *Id.*

State Farm's attempts to add wording or change how hail is defined to a policy after a loss occurs suffices as evidence of bad faith. *See Brown v. State Farm*, 2022 WL 875648, at *4 (N.D. Okla. March 23, 2022). Training materials are thus directly relevant and admissible in insurance bad faith cases to establish the insurer's internal guidelines and any violation thereof, as numerous courts have routinely held. The Court should order State Farm to identify and produce all requested training-related documents to Plaintiff.[4]

### 2. Plaintiffs' Requests Targeting State Farm's Reliance on HAAG for Training and Protocol

Plaintiffs' **Interrogatory Nos. 15, 16, and 17**, as well as **Request for Production Nos. 8, 9, 10, 11, 12, 31, and 34** (Exhibit 2) target Documents and information related to State Farm's relationship with HAAG and HAAG's involvement in the Scheme. The Scheme turns on State

---

[4] *See Thomas v. Farmers Ins. Co., Inc.*, 2018 WL 2323794, at *2 (N.D. Okla. Feb. 16, 2018) (Defendant's claims guidelines and training materials may be relevant in other ways to bad faith; for example, they may be probative of whether Defendant's employee was qualified to assess and evaluate the damage to the Plaintiffs house); *Morrison v. Chartis Prop. Cas. Co.*, 2014 WL 840597, at *4 (N.D. Okla. March 4, 2014) (training procedures and materials for its employees in handling claims is relevant for discovery purposes); *Shotts v. Geico Gen. Ins. Co.*, 2017 WL 4681797, at *1 (W.D. Okla. Oct. 17, 2017) (rejecting defendant's argument that rules, regulations or standards relative to claims handling was not relevant to bad faith because case was not about whether defendant violated its own policies and procedures); *Massey v. Farmers Inc. Grp.*, 986 F.2d 1428 (10th Cir. 1993) (unpublished) (evidence insurer acted contrary to its training manual is relevant to bad faith).

Farm's relationship with HAAG. State Farm employed a series of false justifications and bad faith claims handling tactics to achieve this end, including hidden definitions of what constitutes hail damage that cannot be found in the insured's policy, which come from HAAG. State Farm uses HAAG to train its Claims Handling Personnel and its captive agents to perpetuate its Scheme. To that end, State Farm's relationship with HAAG is (and always has been) a joint venture in fraud.

Initially, State Farm relied on HAAG to provide engineering reports on individual claims, which in turn provided State Farm with facially reasonable grounds to deny or underpay claims. But on the heels of a Texas jury finding HAAG lacked objectivity and "State Farm's reliance on [HAAG's] reports was merely pretextual" (*State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997))—and in the wake of investigations by the Mississippi and Louisiana Attorney Generals regarding the handling of claims from hurricanes Katrina and Rita—an Oklahoma jury found State Farm used HAAG to defraud policyholders on a class-wide basis, awarding one plaintiff $13.1 million. State Farm realized it could not continue its relationship with HAAG publicly. (Cite Watkins case here)

Following the *Watkins* verdict, State Farm issued a moratorium in 2006 on its use of HAAG *engineering* services on individual claims. That moratorium ostensibly remains in effect today. Unfortunately for policyholders, the use of HAAG training is part of the WHMET Playbook and overall Scheme. The public record reflects the patent relevancy of Plaintiffs' inquiry into State Farm's relationship with HAAG. State Farm's counsel told the *Hosier* court as follows:

> On June 19th of 2020, that's when [State Farm] investigated this loss .... State Farm began utilizing HAAG education training materials in March of 2020. And it's important to recognize that the moratorium on using HAAG Engineering services for like claim reviews, forensic engineering, investigative engineering, that has never been lifted. So, the only thing that changed in March of 2020 is State Farm decided that HAAG provides these, you know, industry trainings on roofing products, roofing construction, . . . and these types of roofs that you may encounter in the field and the ways that those types of roofing surfaces could be damaged by

> hail. ... [I]t was [] about April of 2020 that the mandate sort of rolled out to the various ... zones[] where it was now required that these individuals that handle these types of claims are going to be looking at that training . ... That was something that came out of a recommendation of a group that was reviewing this information, and they recommended, as part of that group in those Quality Plans, that people take this training.

*See* Plaintiffs' Response to Defendant State Farm's Objection to and Motion to Modify Discovery Master's December 27, 2023 Order, *Hosier v. State Farm*, CJ-2021-1741 (Okla. Co. Okla. Feb. 9, 2024) (citing Hrg. Nov. 16, 2023 at 11:6-13:8) (Ex. 9). State Farm's counsel acknowledged:

1) HAAG was banned from servicing individual claims due to public backlash from the *Watkins* jury verdict that found State Farm knew HAAG provided biased engineering reports (*see id.* at 10: 19-25);

2) that moratorium has never been lifted (*see id.* at 11: 17-20); but

3) State Farm nevertheless mandated that claims adjusters handling wind/hail claims undergo HAAG training to determine when "roofing surfaces [were] damaged by hail" (*see id.* at 12:2-5).

Thus, the question raised in *Hosier* remains operative here: why is an engineering firm who is banned from providing engineering reports on individual claims training State Farm's entire adjuster-force on how to identify hail damage? Plaintiffs are entitled to explore this in discovery, yet State Farm has failed to meaningfully respond to Plaintiffs discovery requests.

### 3. Plaintiffs' Requests Targeting State Farm's Wind-Hail Fire Model Enhancement Team

Plaintiffs' **Interrogatory Nos. 6, 7, 9, 13, 28, and 29**, as well as **Request for Production Nos. 14, 15, 21, 22, 23, 24, 27, 29, 33, 35, 36, 37, 38, 39, and 43** (Exhibit 2) target Documents and information related to State Farm's Wind-Hail Fire Model Enhancement Team, its recommendations, and its reporting. In fact, State Farm's corporate representative, Tom Moss, specifically testified that any WHMET recommendations that were implemented would have been communicated to State Farm Claims Handling Personnel through a guideline document available at that time on the State Farm intranet. These recommendations were codified as State Farm's

"Wind/Hail Playbook." *See* Plaintiffs' Motion to Enforce Discovery Order of November 23, 2021 and Motion for Sanctions, *Barnett v. State Farm*, CJ-2020-141 (Grady Cty., Okla. April 8. 2024) (Ex. 3) at 10.

All of these documents related to the WHMET are relevant to State Farm's claim handling involving Wind/Hail and how the WHMET's Scheme started, how it implemented its Playbook and tactics, and how it achieved its desired reduction in indemnity on wind/hail claims by significantly reducing the number of full or total roof replacements. Source documents from Accenture, including the basis, analysis, and reports used to trigger State Farm's efforts to achieve some arbitrary industry standard are also clearly relevant. Many of these documents have been ordered to be produced by previous courts within Oklahoma. State Farm cannot say such document do not exist. Rather, State Farm argues such documents are only quality control initiatives to "pay what we owe." But to State Farm, quality improvement equals indemnity reduction by lowering payouts for full or total roof replacements.

**4. Plaintiffs' Requests Targeting State Farm's Enterprise Rules**

Plaintiffs' **Request for Production No. 25** (Exhibit 2) targets Document and information related to State Farm's enterprise-wide rules.

Briefing in *Hosier v. State Farm* established the relevance and existence of these rules:

> For context, "the [software] tool that State Farm uses to complete building estimates [i.e., damage estimates] is Xactimate." .... **As an example, State Farm implemented a policy that claims adjusters could not issue a full roof replacement without managerial approval.** *See, e.g.*, Ex. 14 (Excerpt from K. Wienstroer Depo., *Hosier v. State Farm*, et al., CJ-2021-1741 (Dist. Ct. Okla. Cnty. Apr. 26, 2023)) at 70:12-22.3 .... But if these rules have the intended effect, individual adjusters will trigger them less over time. Their existence alone speaks to State Farm's attempts to coerce adjusters into improperly lowering indemnity.
>
> Program rules, on the other hand, are not controlled by the user, but operate as part of the software itself. *See* [Moss Depo] at 76: 15-19, 78:19-79:15, 128:25-129:23 (describing the program rules as "settings within Xactimate" that are selected in

State Farm's company-wide "user profile" and "allow [State Farm] to complete estimates that align with ... our Operation Guides").

Plaintiffs' Motion to Enforce Discovery Order of November 23, 2021 and Motion for Sanctions, *Barnett v. State Farm*, CJ-2020-141 (Grady Cty., Okla. April 8. 2024) (Ex. 8) at 8-9 (citing the Deposition of Tom Moss unless otherwise noted).

These rules exist: Judge Kirkland in Grady County stated in an August 2, 2022 hearing "*I think the plaintiff has certainly demonstrated today that there are Personnel Rules ... that are discoverable, that are in existence, that have not been turned over.*" *See* Plaintiffs' Motion to Enforce Discovery Order of November 23, 2021 and Motion for Sanctions, *Barnett v. State Farm*, CJ-2020-141 (Grady Cty., Okla. April 8. 2024) (Ex. 8), at 2-3. The Court ordered production of a "drop-down" index from State Farm's intranet ("SFNet") to use as a rubric for compliance. Id. at 3. This drop-down index revealed State Farm maintains a specific tab titled "Personal Rules" (*Id.* at 3; see also *Id.* at Ex. 5) despite defense counsel Lance Leffel maintaining "State Farm does not maintain a list of 'personal rules'…" *Id.* at 2.

State Farm's corporate representative, Tom Moss, testified at length about State Farm's personal and program rules. *Id.* at 5, 8-11. Moss testified the WHMET worked with State Farm's Enterprise Technology division to create rules within State Farm's Xactware software deployments. *Id.* at 10. These enterprise-wide rules apply to all State Farm estimates from all State Farm Claims Handling Personnel. These rules act as triggers within the software which notify the claim handler when certain actions are taken or recommended—*e.g.*, the attempted indemnification of an insured for a total roof replacement. *Id.*

**5. Plaintiffs' Requests Targeting State Farm's Quality Plans**

Plaintiffs' **Request for Production Nos. 26, 32, and 41** (Exhibit 2) targets Document and information related to State Farm's Quality Plans. Moss testified as to the existence of State Farm's

"quality plans," which State Farm's Claim Consultants develop to help Claims Handling Personnel operate in commitment with State Farm's expectations. *See id.* Moss confirmed State Farm's Consultants work with other Claims Handling Personnel within their respective divisions to develop and share these plans and that, typically, the plans are prepared annually. *See id.* In his experience, Moss first recalled working to develop a quality plan in 2018. *See id.* State Farm's quality plans are published and made available to its claims personnel via its internal intranet. *See id.* Among other things, State Farm's quality plan for wind and hail claims outlines the training requirements for relevant Claims Handling Personnel. *See id.*

### 6. Plaintiffs' Requests Targeting State Farm's Cost/Benefit and Return-on-Investment Analyses, Studies, and Assessments

Plaintiffs' **Interrogatory Nos. 11, 12, 14, 20, 21, 24, 25, 26, 27** and **Request for Production Nos. 7, 13, 16, 17, 18, 19, 20, 28** (Exhibit 2) target Documents and information related to State Farm's tracking of data, analysis, and assessment related to the Initiative and the Scheme, including the many tactics State Farm uses to implement them. Plaintiffs have requested all documents outlining State Farm's reduction in the total roof to partial roof payment ratio, full roof replacement percentage, and total roof payment volumes and all documents correlating to the financial savings and indemnity reduction it set out to achieve through the current timeframe.

State Farm focused heavily on the Scheme's success—that is, it has studied the Scheme's effectiveness in achieving its goal of reducing State Farm's annual spend vis-à-vis roof claims. The specific and more broad requests attempt to obtain State Farm documents outlining how much indemnity on roofs State Farm achieved via its Scheme. This includes an array of cost/benefit analyses, return on investment studies, and evaluations of the Scheme's effectiveness in achieving the goals established by the Initiative.

### 7. Plaintiffs' Requests Targeting State Farm's Claims Data

Plaintiffs' **Interrogatory Nos. 3, 22, and 23** (Exhibit 2) ask State Farm to identity subsets of its Oklahoma claims data that would indicate the Scheme:

- Rog No. 3: Identify all Wind/Hail Claims and corresponding civil cases in Oklahoma since January 1, 2019 wherein a Total or Full Roof Replacement was denied prior to a lawsuit being filed, but was subsequently approved and/or paid to an insured after the insured filed a civil lawsuit against State Farm.

- Rog. No. 22: Identify the total number of homeowners' wind/hail claims from 2019-present in Oklahoma in which State Farm found damage the insured roof's soft metals (vent cap, guttering, etc.) but found the roof material itself (asphalt shingles, shake shingles, etc.) did not suffer enough damage to exceed the policy's deductible.

- Rog. No. 23: Identify the total number of homeowners' wind/hail claims from 2019-present in Oklahoma in which State Farm found damage the insured roof's soft metals (vent cap, guttering, etc.) but found the roof material itself (asphalt shingles, shake shingles, etc.) did not suffer enough damage to warrant a Full or Total Roof Replacement.

Plaintiffs' pled a wide-reaching Scheme targeting insureds across the state. Discovery into the extend of State Farm's bad faith practices is relevant, especially to the nature of its pattern and practice. This further informs Plaintiffs' claims for punitive damages. *See id.*

### 8. Requests Targeting Prior Productions in other "Scheme" Cases

Request for Production No. 44 (*see* Exhibit 2) seeks State Farm's production of all Documents produced and/or ordered to be produced in the following cases:

- *Hosier v. State Farm*, CJ-2021-1741 (Oklahoma County)
- *Barnett v. State Farm*, CJ-2020-141 (Grady County)
- *Nida v. State Farm*, CJ-2020-4453 (Oklahoma County)
- *Kyger v. State Farm*, CJ-2022-3990 (Oklahoma County)
- *McDow v. State Farm*, CJ-2022-1857 (Oklahoma County)
- *McNeil v. State Farm*, CJ-2021-926 (Cleveland County)

Each of the forgoing cases against State Farm alleged the same Scheme at issue here. In each action, State Farm produced (and/or was ordered to produce) Documents evidencing its Scheme.

The issues addressed in this Motion are neither novel nor unique. Tellingly, the Hon. Linda Morrissey, serving as the *Hosier* Discovery Master, ordered State Farm's production of the following training documents and information:

- "all reports and administrative tools which State Farm requested and are available to State Farm from Xactware through XactAnalysis" from 2010 until present (*Hosier* Rog. 17);
- "all **Hail Quality Plans** in place at State Farm from 2010 until present" (*Hosier* RFP 56)[5];
- All "documents memorializing any **'enterprise-wide rule'** in place at State Farm regarding the need for management approval of total roof loss claims" (*Hosier* RFP 59);
- All "XactAnalysis **rules** implemented or applied by Jacqueline Draper in her role as a State Farm Team Manager in Oklahoma" (*Hosier* RFP 61);
- All documents discussing any requirement for State Farm personnel to complete **training** offered through **HAAG Engineering** (*Hosier* RFP 62);
- All "**cost benefit analysis** (CBA)/**return on investment** (ROI) analysis or any other review/study/analysis associated with State Farm's utilization of Accuweather services." (*Hosier* RFP 65)[6];
- All memos, bulletins, directives, guidelines, etc. communicating State Farm's **definition of hail damage** to its **agency sales force** (*Hosier* RFP 68);
- All "**claim files in Oklahoma** wherein hail damage was found but determined by State Farm to be more than one (1) year old and therefore not covered." (*Hosier* RFP 69);
- All **training materials** instructing State Farm claim personnel that hail or other damage more than one (1) year old is not covered (*Hosier* RFP 70);
- All file reviews, or other documentary means utilized by State Farm, **to ensure compliance with the training** referenced in Request for Production No. 69 above (*Hosier* RFP 71);

---

[5] In response State Farm identified responsive "Fire Quality Plans from 2020 until 2022". The Court instructed State Farm that "if documents of a different name by of the very same kind equally response to a request for 'Hail Quality Plans' existed prior to 2020, then they should be considered responsive and also produced in response to the request" *Id.* p. 2.

[6] Tellingly, State Farm " agree[ed] to produce any evidence in existence response to the request", which should belie the credibility of State Farm's objections to the clarity of these terms.

- The "Enterprise Business Continuity Management (BCM) Program Guidelines" which Team Manager Jaqueline Draper was responsible for adhering to for 2018, 2019, 2020, 2021, and 2022" *(Hosier* RFP 72);
- "Any documentary evidence related to any ride alongs conducted by **Jaqueline Draper** while a Team Manager in Oklahoma" (*Hosier* RFP 81)[7];
- All "**targeted training**" delivered by Jacqueline Draper while a Team Manager in Oklahoma (*Hosier* RFP 83);
- All "meeting notes, initiatives, plans or documents from **P&C Claims relating to roof claims in Oklahoma**, including but not limited to wind/hail" for the period 5 years before the date of loss at issue to present (*Hosier* RFP 86); "meeting notes, initiatives, plans or documents from **P&C Claims** relating to **reducing indemnity payments on roof claims in Oklahoma** or elsewhere" for the period 5 years before the date of loss at issue to present (*Hosier* RFP 87); and "meeting notes, initiatives, plans or documents from **P&C Claims relating to the definition of 'hail** damage' as set forth in OG-75-160" for the period 5 years before the date of loss at issue to present (*Hosier* RFP 88);
- All "**Hail Focus Reports** from 2010 to the present" (*Hosier* RFP 89).

*See* Decision of Discovery Master on Plaintiffs' Fourth Motion to Compel, *Hosier v. State Farm*, CJ-2021-17416-7 (Okla. Cty., Okla., Sept. 1, 2023) (Ex. 11) at 3-8 (emphasis added). Judge Morrissey further ordered production of "all **Wind/Hail Claims Focus Models** in place at State Farm pertaining to homeowners' claims **from 2010 to present**" and "all Fire Property Claims Plans in place at State Farm pertaining to homeowners' claims from 2010 to present" in her August 22, 2023 order. *See* Decision of Discovery Master on Plaintiffs' Third Motion to Compel, *Hosier v. State Farm*, CJ-2021-1741 (Okla. Cty. Okla. Aug. 22, 2023) (Ex. 10), at 2-3 (RFP 51) (emphasis added). Judge Morrissey found:

> With respect to the issue of **relevance** [...] at a minimum, ***the requested information may reasonably lead to the discovery of admissible evidence pertinent to Plaintiffs' claim of bad faith***, and that Plaintiffs have thus met the burden of establishing the relevance of these requests.

*Id.* at 3 (emphasis added).

[7] Judge Morrissey further othered production related to Jacqueline Draper in RFPs 58-61, 72-84, and 93-94.

Nor is State Farm's discovery gamesmanship a matter of first impression. Plaintiffs reminded State Farm of the *Barnett* Court's admonition: "*I know that I have seen in this case evidence of inconsistent discovery results that in one case, in this case, there has been denials that things exist, that appear in other cases. That is – that is odious to my sense of justice.*" *See* Plaintiff's Motion to Enforce Discovery Order of November 23, 2021 and Motion for Sanctions, *Barnett v. State Farm*, CJ-2020-141 (Grady Cnty. Okla.) April 8, 2024 (Ex. 8) (citing Aug. 2, 2022 Hrg. Tr. at 108:25-109.4, at which Judge Kirkland ordering production of Personnel Rules derived from the Scheme).

**B. State Farm's Objections Are Improper**

State Farm's Response ***entirely*** consists of boilerplate objections. It is State Farm's intent to stymie meaningful discovery in this matter by forcing Plaintiffs to resort to motion practice and judicial review to obtain all responsive discovery herein. The fact that most of the requested material has been produced in other matters, where the plaintiff(s) alleged the same or substantially similar wrongdoings against State Farm and its captive agents, by State Farm and its undersigned counsel, would logically reduce the unnecessary barriers to meaningful discovery.

**1. Relevance**

Plaintiffs have plainly alleged State Farm's broad-reaching Scheme to defraud its insureds through a pattern and practice of systematic bad faith conduct. *See, e.g.*, Pet. ¶¶ 1, 3-4, 10-11, 29, 42-43. These allegations support Plaintiffs' bad faith claim and, as such, Plaintiffs' Requests are therefore relevant to (at least) the second and third elements of their individual "Bad Faith" claim against State Farm under Oklahoma law. In addition, Plaintiffs have further shown relevance to a "pattern" theory of bad-faith conduct, which is generally permitted under Oklahoma law.[8]

[8] *See Reibert*, 2018 WL 279348, at *6; *Vining v. Enter. Fin. Group*, 148 F.3d 1206, 1218 (10th Cir. 1998)

Plaintiffs have also requested punitive damages in light of State Farm's bad-faith conduct and several factors pursuant to 23 O.S. § 9.1, are relevant to that inquiry including the profitability of the misconduct, the duration and concealment, and the number and level of employees involved. 23 O.S. § 9.1 (emphasis added). Moreover, punitive damages are available when "an insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured." *Id.*

**2. Clarity**

State Farm's objections to vagueness or ambiguity of certain plainly stated or defined terms fall flat. For example, State Farm's objection to the words "conducted", "commissioned", and "use of" is laughable. The terms are commonly used and readily understood by their plain, ordinary meaning and especially within the context of an analysis, study, or investigation (as targeted in the requests addressed herein). The same is true for "use of"—State Farm's "use of" a software program or suite of programs is readily understood. The term "You" is well defined for the purposes of these requests. And "return on investment metrics" clearly demarks State Farm's method of measuring something—in this case, its "return on investment." With regard to the HAAG moratorium, State Farm's position that the terms "lifted, terminated, modified, or

---

(finding that, where plaintiff sought to prove a pattern and practice of bad-faith conduct by insured, evidence regarding other insureds was relevant to show defendant "acted in this case under Federal Rule of Evidence 406 (habit)" and that prejudice of evidence did not outweigh relevance of inquiry into defendant's "general business practices"); *Metzger v. Am. Fid. Assur. Co.*, 2007 WL 4342082, at *1 (W.D. Okla. Dec. 7, 2007) (same). For the same reasons explained above, the requested numerical claims data is relevant to the specific theory that State Farm engaged in a state-wide pattern of denying claims in bad faith based on the Scheme. Oklahoma courts have granted similar discovery regarding an alleged "pattern" of bad-faith conduct. *See, e.g.*, *Magellan v. Zurich Am. Ins.* Co., 2017 WL 3579209, at *2 (N.D Okla. Aug. 18, 2017) (compelling request for production of 85 other claim files where claimant was an employee of named insured and claimant's policy had similar language to plaintiffs' policy based on relevance to pattern and practice theory and punitive damages); *Jones v. Farmers Ins. Co.*, 2012 WL 12863976, at *2–3 (W.D. Okla. Feb. 29, 2012) (compelling interrogatory answer regarding number of times in past five years Farmers did not pay for roof damages under a specific circumstance similar to Plaintiffs' denial, as relevant to whether Farmers engaged in pattern or practice of denying such claims and to punitive damages); *Providence Church, Inc. v. Guideone Ins.*, 2008 WL 11338501, at *4 (W.D. Okla. Jan. 18, 2008) (granting discovery requests regarding "code upgrade" claims of other insureds as relevant to whether defendant engaged in pattern and practice of categorically refusing certain claims and as relevant to punitive damage considerations).

cancelled" are ambiguous is equally laughable. The same is true with its objection to the word "refused." These objections to clarity are readily resolved by use of a dictionary.

**3. Tailoring**

Plaintiffs' Requests are not overly broad simply because they address matters that exceed the scope of Plaintiffs' Claim for indemnity. Plaintiffs have pled a pattern and practice of bad faith, fraudulent behavior on State Farm's part. Courts routinely allow discovery with respect to a "pattern" theory of bad faith conduct. *See, e.g.*, *Vining Enter. Fin. Grp.*, 148 F.3d 1206, 1218 (10th Cir. 1998) (finding that, where plaintiff sought to prove a pattern and practice of bad faith conduct by insured, evidence regarding other insureds was relevant to show defendant "acted in this case under Federal Rule of Evidence 406 (habit)" and prejudice of evidence did not outweigh relevance of inquiry under defendant's "general business practices"). This further establishes the relevancy of Plaintiffs' requested time period, since the Scheme existed before Plaintiffs' Claim via its implementation in Texas and then all states by December 2020.

**4. Proportionality**

To the extent State Farm complains of an alleged "undue burden" due to the hours that will be spent reviewing individual claim files, State Farm's "unilateral decision on how it stores information cannot, by itself, be a sufficient reason for placing discoverable matter outside the scope of discovery." *Farmers Ins. Co. v. Peterson*, 2003 OK 99, ¶ 3, 81 P.3d 659, 660 ("Plaintiffs should not suffer if the information is not easily accessible because defendants have an inefficient filing system.") (citing *Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991)(citation omitted). Defendant has produced a significant amount (but certainly not all) of responsive documents in the previous cases outlined in Request No. 44. State Farm has not shown why it cannot reproduce such production.

5. **Time Period**

State Farm's objections to the relevant time period similarly fails. Oklahoma courts have routinely supported such a relevant time for requests targeting a long-running pattern and practice. *See Vining*, 148 F.3d at 1218-19. Plaintiffs maintain a good faith belief that this time period approximates the development and implementation of State Farm's Wind/Hail Focus Initiative, through which State Farm (a) identified and targeted total roof replacements as its best opportunity to reduce indemnity losses and (b) hatched the Scheme to reduce its total roof replacement spending. On information and belief, the Scheme was tested in Texas in approximately 2020 and launched in several hail-prone states (like Oklahoma) shortly after. Therefore, claim files from 2019 forward are directly relevant to State Farm's pattern and practice of misconduct.

6. **"Each Claim Is Unique"**

State Farm proffers a flawed contention that each claim is unique and that there could be no meaningful or relevant use of the requested data. This is a challenge to *admissibility*, not *discoverability*, and is therefore premature—as stated *supra*, requested information need not be admissible to be discoverable, and discovery regarding other incidents of the same misconduct may be permissible if relevant to a claim or defense and otherwise proportional to the needs of the case. *See* 12 O.S. § 3226(B); *see also* Fed. R. Civ. P. 26. In this case, the requested statistics and documents are relevant to proving specific elements of Plaintiffs' claim and refuting State Farm's defenses.

7. **State Farm's Reliance on *Werner***

State Farm's reliance on *Werner* is misplaced. *Werner Enter. Inc. v. Kirkland*, No. 122,385 (Okla. Sept. 24, 2024). *Werner* is an order from the Supreme Court of Oklahoma in which the Court assumed original jurisdiction. The Court ordered respondent, Judge Kirkland, or any other relevant jurist, to apply the proper proportionality test set forth in § 3226. *Werner* does not afford

State Farm a blanket pass to decline to participate meaningfully in discovery. Indeed, State Farm appears to use *Werner* to avoid production of **any** documents not contained in the "Claim File" or the limited underwriting materials State Farm has produced in this case.

**8. Confidentiality and Trade Secrets**

State Farm's objections to confidentiality, proprietary, or trade secret information should not stand. It has not demonstrated why the Court should afford such protections to artifices of bad faith and fraud.

## V. CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court grant this Motion to Compel and (1) direct State Farm to fully answer the forgoing Interrogatories and Requests for Production as set forth herein and (2) award such further relief deemed equitable and just.

Respectfully submitted,

Hannah Whitten

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
**Whitten Burrage**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Office: 405.516.7800
Facsimile: 405.516.7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2025, a true and correct copy of the foregoing document was delivered, via first class mail and electronic mail, to the following interested parties:

Hannah Whitton

# EXHIBIT M

EXHIBIT M

* 1 0 6 1 2 1 7 1 6 1 *

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA**

| | |
|---|---|
| **BILL and LACY HURSH,**<br>*Plaintiffs,*<br>v.<br>**STATE FARM FIRE & CASUALTY COMPANY; MARK D. WELTY;** and **MARK D. WELTY INSURANCE AGENCY, INC.,**<br>*Defendants.* | **CASE NO. CJ-2025-2626**<br>**Hon. Amy Palumbo**<br><br>FILED IN DISTRICT COURT<br>OKLAHOMA COUNTY<br>NOV 25 2025<br>RICK WARREN<br>COURT CLERK<br>78________ |

**JOURNAL ENTRY**

COMES ON for hearing before this Court on the 14th day of November 2025, Plaintiffs Bill and Lacy Hursh's ("Plaintiffs") Motion to Compel Discovery from Defendant State Farm Fire & Casualty Company ("State Farm"). The Court, having reviewed the parties' briefs, hearing arguments of counsel, and consideration of additional materials provided at the hearing, finds and orders that Plaintiffs' Motion is **SUSTAINED**, as follows:

1. The Court has considered the arguments set forth in the parties' extensive briefing on these discovery issues, as well as arguments made by counsel at the hearings, and consideration of additional materials provided at the hearing.
2. The Court has carefully considered and weighed each of the proportionality factors set forth in 12 O.S. § 3226(B) in conjunction with making its rulings as to the relevance and proportionality of each category of discovery requested in Plaintiffs' Motion to Compel, including the importance of the issues at stake in this action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

3. 3. Having considered these factors, the Court finds Plaintiffs have met their burden of establishing the discovery sought herein is relevant to their claims, including allegations of pattern and practice and the evidence at issue is reasonably calculated to lead to the discovery of admissible evidence and proportional to the needs of the case .

In so finding, the Court considered that this matter involves claims where the amount in controversy is in excess of $75,000;

4. The Court further finds that there is a disparity in the parties' relative access to the requested information in that most of the information is only accessible by State Farm and not by Plaintiffs;

5. That in considering the importance of the issues at stake, the Court finds that without this discovery, it may be impossible to resolve the pertinent issues in this case and that this discovery will allow both parties to proceed in presenting relevant evidence at trial.

6. The Court also takes into consideration the objections and arguments made by counsel for State Farm regarding the potential burden or expense the requested discovery may impose in relation to its likely benefits.

7. The Court further finds that the relevant time frame for the production of responsive material and information is January 1, 2015 to present, unless a shorter time frame is stated in the specific discovery request.

8. The Court hereby SUSTAINS Plaintiffs' Motion to Compel and orders production of such materials within ~~sixty (90) days~~ 120 days, except previous production to be ordered produced within 30 days.

[signature] 11-25-26

It is THEREFORE ORDERED, ADJUDGED, AND DECREED.

THE HONORABLE AMY PALUMBO

APPROVED AS TO FORM:

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
**Whitten Burrage**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Office: 405.516.7800
Facsimile: 405.516.7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com

***Attorneys for Plaintiffs***

Lance E. Leffel
Ashlyn M. Smith
GABLE GOTWALS
BOK Park Plaza
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
lleffel@gablelaw.com
asmith@gablelaw.com

Carrie B. McNeer
Grant A. Fitz

GABLE GOTW ALS
110 N. Elgin Avenue
Suite 200
Tulsa, OK 74120-1490
cmcneer@gablelaw.com
gfitz@gablelaw.com

***Attorneys for Defendants State Farm and Defendants Mark D. Welty and Mark D. Welty Insurance Agency, Inc.***