# EXHIBIT N

EXHIBIT N

**IN THE DISTRICT COURT OF COMANCHE COUNTY**
**STATE OF OKLAHOMA**

| | | |
|---|---|---|
| NEIL AND LACY WEST,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY; and NANCY HOLCOMB INS. AGENCY INC.,<br><br>Defendants. | ) | Case No. CJ-2025-135 |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS**

Defendant State Farm Fire & Casualty Company ("State Farm" or "Defendant") submits the following answers, responses, and objections to Plaintiffs' First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission.

**PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

State Farm's Responses are based on information and documentation presently available to State Farm and which State Farm believes, based on current information, to be relevant and reasonably responsive. State Farm anticipates that further investigation, research, and analysis will supply additional facts and documents, add meaning to known facts, and perhaps establish new factual conclusions, all of which may in turn lead to additions or changes to these Responses. Accordingly, State Farm reserves the right to amend these Responses as additional facts are ascertained, analyses are made, research is completed, and contentions become apparent. In addition, State Farm will fulfill its obligation to supplement these Responses pursuant to the Oklahoma Discovery Code.

Subject to and without waiving these objections and State Farm's Universal Objections, State Farm refers Plaintiffs to the Policy, including all declaration pages and notices, which are produced with these responses.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Produce color copies of all Documents related to either Plaintiff, Plaintiffs' Dwelling Policy, and/or the Claim in State Farm's Enterprise Claims System ("ECS"), including, but not limited to the Claim File.

**RESPONSE TO REQUEST NO. 1:** State Farm objects to Request for Production No. 1 because it is overly broad and seeks information that is not relevant or proportional to the needs of the case to the extent it seeks information from policy periods prior to or beyond the policy period relevant to the Claim at issue. State Farm further objects to the Request insofar as it seeks production of ESI in "color" on the grounds that color does not convey meaning, is not relevant to any party's claim or defense, and is not proportional to the needs of this case and may be unduly burdensome.

Additionally, State Farm objects to this Request on the grounds that it is overly broad in time (not limited by any reasonable period or to the timeframe for handling of the specific insurance claim at issue in this litigation) and scope (not limited to Plaintiffs' insurance claim at issue in this lawsuit) and due to the use of the term "all" with respect to the broad categories of documents requested. Further, due to the overly broad nature of this Request, it is a potential invasion of the attorney-client privilege and the work product doctrine.

Subject to these objections and State Farm's Universal Objections, State Farm will produce the Claim File for the claim at issue in this litigation in reasonably usable format as it is kept in the

ordinary course of business. State Farm will also produce the underwriting file for the Policy covering the property at issue herein.

**REQUEST FOR PRODUCTION NO. 2:** Produce all Documents related to any inspection You conducted or arranged to be conducted of Plaintiffs' Dwelling in relation to the Policy. This Request includes (but is not limited to) any inspection conducted by a third-party vendor at Your direction, instruction, or request.

**RESPONSE TO REQUEST NO. 2:** State Farm objects to Request for Production No. 2 because the condition, State Farm's knowledge of the condition, and inspections of Plaintiffs' house, in addition to any other information encompassed in the Request, presume obligations that do not exist and encompass information that is not relevant or proportional to the needs of the case. The scope and particularities of what is requested are also vague, and ambiguous as to what is meant by "inspection . . . in relation to the Policy." It is thus also overly broad and unduly burdensome as written. State Farm objects to producing underwriting information on the ground that it is neither relevant nor proportional, as there is no dispute that the applicable policy was in effect on the date of loss.

The Request also seeks documents which may be in the possession of persons other than State Farm, including, in some instances, Plaintiffs. To the extent the documents exist, they may also encompass confidential and proprietary information of State Farm or third parties and potentially information protected by the attorney-client privilege or work-product doctrine.

Subject to these objections and State Farm's Universal Objections, in addition to the Claim File being produced in response to Request No. 1, State Farm will produce inspections of the house by third-parties as part of an underwriting review, if any, which should be in the underwriting file, which is being produced contemporaneously herewith.

**REQUEST FOR PRODUCTION NO. 3:** Produce all Documents You identified, relied upon, referred to, or consulted in preparing Your response to any Discovery Request in this Action.

**RESPONSE TO REQUEST NO. 3:** State Farm objects to Request for Production No. 3 because it improperly asks it to marshal its evidence and amounts to at least a hundred separate Requests for Production because it requests documents relied upon in responding to "any" discovery request and is therefore unduly burdensome as well. State Farm further objects to the extent this Request is not limited to Plaintiffs' insurance claim at issue in this lawsuit, seeks information that is neither relevant nor proportional to the needs of the case, and seeks documents protected by the attorney-client privilege and/or work product doctrine. Moreover, State Farm objects to the Request as overly broad, vague, and lacking specificity and as an improper omnibus discovery request because it uses the terms, "all" and "relied upon, referred to, or consulted."

Subject to these objections and its Universal Objections, State Farm will produce documents identified as responsive to any request herein, subject to entry of an approved Protective Order where applicable.

**REQUEST FOR PRODUCTION NO. 4:** Produce all Documents containing any policies, procedures, guidelines, manuals and/or training materials, which You used to train any of the Claims Handling Personnel involved with the Claim in any way.

**RESPONSE TO REQUEST NO. 4:** State Farm objects to Request for Production No. 4 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. The request for "all Documents containing any policies, procedures, guidelines, manuals and/or training materials" and for any individual "involved with the Claim in any way" is vague, ambiguous, and overly broad and may be unduly

burdensome depending on its interpretation. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claims and/or coverages at issue in this litigation), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to Oklahoma). State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, training materials that were obsolete on the date of loss, pertain only to other losses, and/or pertain only to other areas of the country, are not relevant to the matters at issue in this case. State Farm additionally objects to this Request to the extent it seeks documents authored and/or copyrighted by entities that are not parties to this litigation, which State Farm is not at liberty to produce. Finally, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secret. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

Subject to these objections and State Farm's Universal Objections and upon execution of an approved protective order, State Farm will produce the relevant portions of the claim handling procedures that may have been used to adjust claims alleged to have arisen from the weather event that occurred on the date of loss. This includes the Estimatics and Claim Handling Practices ("ECHP")—a compilation of claim handling procedures that State Farm prepares in connection with weather events, such as the one here.

**REQUEST FOR PRODUCTION NO. 5:** Produce all underwriting guidelines, binding rules, contractual agreements, and training materials which were relied upon or utilized by State Farm, and/or its captive Agent(s) with respect to selling and issuing Plaintiffs' policy and for each renewal thereafter.

**<u>RESPONSE TO REQUEST NO. 5</u>:** State Farm objects to Request for Production No. 5 because it is vague and ambiguous with respect to the terms "underwriting guidelines, binding rules, contractual agreements, and training materials . . . relied upon or utilized . . . with respect to selling and issuing Plaintiffs' policy and for each renewal thereafter" and may be unduly burdensome depending on its interpretation. State Farm further objects to this Request on grounds the information sought is not relevant to any party's claim or defense or proportional to the needs of the case. There is no question that the house satisfied State Farm's underwriting guidelines because the policy issued. The Claim sued upon involves a dispute as to whether and to what extent the shingles on Plaintiffs' roof were damaged by the weather event at issue, and State Farm's underwriting requirements and sales training materials are not probative on that dispute. State Farm further objects to this Request as overly broad and to the extent it seeks privileged, confidential, proprietary, and/or trade secret information of State Farm. Subject to these objections and its Universal Objections, State Farm will produce the underwriting guidelines in effect on the date of issuance of Plaintiffs' Policy, subject to an approved Protective Order.

**<u>REQUEST FOR PRODUCTION NO. 6</u>:** Produce all documents You have utilized (whether internal or from an outside source like HAAG) to train Your Claims Handling Personnel on wind-and/or hailstorm claims.

**<u>RESPONSE TO REQUEST NO. 6</u>:** State Farm objects to Request for Production No. 6 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. The request for "any training materials You have utilized . . . to train Your Claims Handling Personnel on wind- and/or hailstorm claims" is vague, ambiguous, and overly broad and may be unduly burdensome depending on its interpretation. Specifically, the Request is overly broad in scope (not limited to materials

applicable to the specific insurance claims and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, training materials that were obsolete on the date of loss, pertain only to other losses, and/or pertain only to other areas of the country, are not relevant to the matters at issue in this case. State Farm additionally objects to this Request to the extent it seeks documents authored and/or copyrighted by entities that are not parties to this litigation, which State Farm is not at liberty to produce. Finally, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

Subject to and without waiving these objections and State Farm's Universal Objections and upon entry of an approved protective order, State Farm will produce the relevant provisions of the claim handling procedures that may have been used to adjust claims alleged to have arisen from the weather event that occurred on the date of loss.

**REQUEST FOR PRODUCTION NO. 7:** Produce all Documents from January 1, 2019 to the present relating to any review and/or tracking of percentages of total or full roof replacements by individual adjusters and managers adjusting or working on Oklahoma wind/hail claims, including recommendations, approvals, or similar type of review, tracking, or analysis related to total or full roof replacements on wind/hail claims.

**RESPONSE TO REQUEST NO. 7:** State Farm objects to Request for Production No. 7 because it improperly assumes facts, and is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically,

the Request is overly broad in scope (seeking "any" with respect to broadly defined categories of documents; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "review and/or tracking," "adjusting or working on," and "recommendations, approvals, or similar type of review, tracking or analysis" and may be unduly burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 8:** Produce all Documents related to any investigation, audit, and/or review You conducted or commissioned into HAAG following:

a. the jury's verdict in W*atkins v State Farm*;

b. the jury's verdict in *Nicolau vs State Farm*; and/or

c. the Mississippi Attorney General's Investigation and/or U.S Attorney's investigation into Your handling of claims arising from hurricanes Katrina and/or Rita.

**RESPONSE TO REQUEST NO. 8:** State Farm objects to Request for Production No. 8 because it seeks information that is neither relevant to the resolution of any party's claims or defenses nor proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue

in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time, given the events referenced in (a) — (c) above took place 18, 27, and 18 years ago, respectively, long before this action was filed; and geographic area (not limited to materials applicable to Oklahoma.). Moreover, Haag Engineering did not inspect or provide an engineering or other opinion on Plaintiffs' claim.

State Farm also objects to this Request as vague and ambiguous, especially as to the terms/phrases "any investigation, audit, and/or review You conducted or commissioned" and it may be unduly burdensome depending on its interpretation. Further, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 9:** Produce all Documents related to any investigation, audit, and/or review You conducted or commissioned into the following:

a. HAAG'S objectivity and/or bias

b. Your relationship with HAAG

c. Your continued use of HAAG

d. Your moratorium on Your use of HAAG

**RESPONSE TO REQUEST NO. 9:** State Farm objects to Request for Production No. 9 because it seeks information that is neither relevant to the resolution of the claims and defenses nor proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to information applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject

claim), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to Oklahoma). Moreover, Haag Engineering did not inspect or provide an engineering or other opinion on Plaintiffs' claim.

State Farm also objects to this Request as vague and ambiguous, especially as to the terms/phrases "any investigation, audit, and/or review You conducted or commissioned into . . . objectivity . . . relationship . . . continued use . . . [and] moratorium" and it may be unduly burdensome depending on its interpretation. Further, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 10:** Produce all Documents related to Your issuance of a moratorium on Your use of HAAG, dated June 5, 2006, following the jury verdict rendered in *Watkins v State Farm.*

**RESPONSE TO REQUEST NO. 10:** State Farm objects to Request for Production No. 10 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to information applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to Oklahoma). Moreover, Haag Engineering did not inspect or provide an engineering or other opinion on Plaintiffs' claim.

State Farm also objects to this Request because it impermissibly assumes facts and is vague and ambiguous with respect to the phrase "use of" and it may be unduly burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 11:** Produce all Communications You sent to or received from Haag Engineering, Haag Education, or any division, subsidiary, or parent thereof (including any representative thereof) from 2012 until Present relating to any payments You made or received from any such HAAG entity or representative pursuant to any Indemnity Agreement.

**RESPONSE TO REQUEST NO. 11:** State Farm objects to Request for Production No. 11 because it seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. The Request is also overly broad in scope (not limited to information applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to Oklahoma). Further, State Farm objects to this Request because it impermissibly assumes facts and is vague and ambiguous with respect to the terms "any division, subsidiary, or parent" and "any payments" and it may be unduly burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Moreover, Haag Engineering did

not inspect or provide an engineering or other opinion on Plaintiffs' claim. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 12:** Produce all Documents related to any Indemnity Agreement entered into between You and HAAG Engineering, HAAG Education, or any division, subsidiary, or parent thereof (including any representative thereof) from 2012 until Present.

**RESPONSE TO REQUEST NO. 12:** State Farm objects to Request for Production No. 12 because it seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. The Request is also overly broad in scope (not limited to information applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim), time (not limited to a reasonable period of time), and geographic area (not limited to materials applicable to Oklahoma). Further, State Farm objects to this Request because it impermissibly assumes facts and is vague and ambiguous with respect to the terms "any division, subsidiary, or parent" and it may be unduly burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. In addition, Haag Engineering did not inspect or provide an engineering or other opinion on Plaintiffs' claim. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 13</u>:** Produce all Documents related to any Cost/Benefit Analysis concerning Your adjustment and/or handling of wind- and/or hailstorm claims in Oklahoma since 2010.

**<u>RESPONSE TO REQUEST NO. 13</u>:** State Farm objects to Request for Production No. 13 because it improperly assumes facts and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. It is also vague and ambiguous and may be unduly burdensome depending on its interpretation. The Request is also overly broad in scope (seeking "*any* Cost/Benefit Analyses"; not limited to information applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim), and time (not limited to a reasonable period of time). Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 14</u>:** Produce all documents related to the Fire Model Enhancement on Wind/Hail from January 1, 2019 until the present, including any and all presentations, memos, documents, or plans of the FME Wind/Hail, whether in draft or final format.

**<u>RESPONSE TO REQUEST NO. 14</u>:** State Farm objects to Request for Production No. 14 because it impermissibly assumes facts, seeks information that is not relevant to any party's claims or defenses or proportional to the needs of the case, and because it encompasses confidential, proprietary, and trade secret information of State Farm. It is also unduly burdensome.

Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. State Farm also objects to the extent the Request seeks information protected by the attorney-client privilege or the work product doctrine. Plaintiffs have not established such information is probative of any issue in the case or, therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 15:** Produce all documents related to the implementation of any measures, program rules, tactics, claims handling procedures or policies related to the Fire Model Enhancement on Wind/Hail from January 1, 2019 until the present.

**RESPONSE TO REQUEST NO. 15:** State Farm objects to Request for Production No. 15 because it impermissibly assumes facts, seeks information that is not relevant to any party's claims or defenses or proportional to the needs of the case, and because it encompasses confidential, proprietary, and trade secret information of State Farm. It is also vague and ambiguous and thus unduly burdensome depending on its interpretation. Specifically, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. State Farm also objects to the extent the Request seeks information protected

by the attorney-client privilege or the work product doctrine. Plaintiffs have not established that such information is probative of any issue in the case or, therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 16:** Produce all documents related to the Wind and Hail Full Roof Replacement Percentage from January 1, 2019 to the present, including nationwide and state specific tracking of such percentages.

**RESPONSE TO REQUEST NO. 16:** State Farm objects to Request for Production No. 16 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, this case involves only Plaintiffs' insurance claim with State Farm, and other claims are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, endorsements, and individuals, in addition to different properties of different ages, in different conditions. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters, unrelated to the event that is the subject of this lawsuit, have no nexus to the harm Plaintiffs herein claim to have sustained under the subject policy and are irrelevant.

State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "Wind and Hail Full Roof Replacement Percentage" and because it is overly broad in scope (seeking "***all*** documents related to . . ."; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim); geographic area; and time (not limited to a reasonable period of time). It is also unduly burdensome depending on

its interpretation. Plaintiffs have not established that such information is probative of any issue in the case or, therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 17:** Produce all documents related to the Total or Full Roof Replacement to Partial Roof Replacement Ratio on Wind/Hail Claims from January 1, 2019 to the present, including nationwide and state specific tracking of such ratios.

**RESPONSE TO REQUEST NO. 17:** State Farm objects to Request No. 17 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery, which outweighs its likely benefit. As an initial matter, this case involves only Plaintiffs' insurance claim with State Farm, and other claims are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, endorsements, and individuals, in addition to different properties of different ages, in different conditions. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters, unrelated to the event that is the subject of this lawsuit, have no nexus to the harm Plaintiffs herein claim to have sustained under the subject policy and are irrelevant.

State Farm also objects to this Request as overly broad in scope (seeking "***all*** documents related to . . . ."; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim); geographic area; and time (not limited to a reasonable period of time). It

is also vague and ambiguous and thus unduly burdensome depending on its interpretation. Plaintiffs have not established that such information is probative of any issue in the case or, therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 18:** Produce all documents related to the Total Roof Payment volumes on Wind/Hail claims from January 1, 2019 to the present, including nationwide and state specific tracking of such ratios.

**RESPONSE TO REQUEST NO. 18:** State Farm objects to Request for Production No. 18 because it is overly broad, improperly assumes facts, and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery, which outweighs its likely benefit. As an initial matter, this case involves only Plaintiffs' insurance claim with State Farm, and other claims are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, endorsements, and individuals, in addition to different properties of different ages, in different conditions. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Any such matters, unrelated to the event that is the subject of this lawsuit, have no nexus to the harm Plaintiffs herein claim to have sustained under the subject policy and are irrelevant.

State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "Total Roof Payment volumes on Wind/Hail claims" and because it is overly broad in scope (seeking "***all*** documents related to . . ."; not limited to information applicable to the

specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). It is also unduly burdensome depending on its interpretation. Plaintiffs have not established that such information is probative of any issue in the case or, therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 19:** Produce all documents from January 1, 2019 until the present, relating to your review, monitoring, and/or tracking of the percentages of total or full roof replacements by individual adjusters and managers on wind/hail claims.

**RESPONSE TO REQUEST NO. 19:** State Farm objects to Request for Production No. 19 because it is overly broad, improperly assumes facts, and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Interrogatory is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim); geographic area; and time (not limited to a reasonable period of time). State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "review, monitoring, and or tracking." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. Depending on its interpretation, the Request may also be unduly burdensome. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 20</u>:** Produce any policies, procedures, and/or methods to review and/or track percentages of total or full roof replacements by individual adjusters and managers adjusting or working on Oklahoma wind/hail claims, including recommendations, approvals, or similar type of review, tracking, or analysis related to total or full roof replacements on wind/hail claims.

**<u>RESPONSE TO REQUEST NO. 20</u>:** State Farm objects to Request for Production No. 20 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Interrogatory is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). State Farm further objects to this Request because it is vague and ambiguous with respect to the use of the terms "recommendations, approvals, or similar type of review, tracking or analysis" and may be unduly burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, or information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 21</u>:** Produce all Documents related to the Fire Model Enhancement-Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiative for the kick off in Texas in 2020.

**RESPONSE TO REQUEST NO. 21:** State Farm objects to Request for Production No. 21 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Interrogatory is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). State Farm further objects to this Request because it is vague and ambiguous with respect to the use and conflation of the various references to teams and initiatives. It may also be burdensome depending on its interpretation.

In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 22:** Produce all Documents related to the Fire Model Enhancement-Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiative referencing Oklahoma from January 1, 2019 until the present, including plans to implement such initiatives or plans in

Oklahoma, implementation in Oklahoma, tracking of indemnity savings in Oklahoma, tracking of the total or full roof replacement to partial roof replacement ratio in Oklahoma, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims in Oklahoma.

**RESPONSE TO REQUEST NO. 22:** State Farm objects to Request for Production No. 22 because it improperly assumes facts, is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Interrogatory is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to information applicable to the specific insurance policy claim and/or coverages at issue in this litigation; not limited to information pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). State Farm further objects to this Request because it is vague and ambiguous with respect to the use and conflation of the various references to teams and initiatives. It may also be burdensome depending on its interpretation. This Request is also overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 23:** Produce all correspondence sent to or by Nicole Manduca from January 1, 2019 to the present referring or relating to the Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, the Hail Focus Initiative and/or Hail Initiative and/or other wind/hail quality focus initiatives.

**RESPONSE TO REQUEST NO. 23:** State Farm objects to Request for Production No. 23 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, Nicole Manduca was not involved in the adjustment or handling of Plaintiffs' claim. Moreover, the Request is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim) and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the use and conflation of the various references to teams and initiatives. It may also be burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client

or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 24:** Produce all Documents related to the Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, including any presentations, metrics, claim handling tactics or rules, tracking of results, and/or Cost/Benefit Analyses You performed regarding any such initiative or program.

**RESPONSE TO REQUEST NO. 24:** State Farm objects to Request for Production No. 24 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (seeking "all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim) and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the use and conflation of the various references to teams and initiatives. It may also be burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade

secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 25</u>:** Produce all Documents memorializing any enterprise-wide rule You have stated, implemented, or enforced regarding the need for any management approval of full roof replacements on wind/hail claims.

**<u>RESPONSE TO REQUEST NO. 25</u>:** State Farm objects to Request for Production No. 25 because it impermissibly assumes facts, is overly broad, and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). Further, State Farm objects to this Request as vague and ambiguous, especially as to the terms/phrases "enterprise-wide rule . . . stated, implemented, or enforced regarding the need" and may be overly broad depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, invades the privacy rights of policyholders who are not parties to this lawsuit, or seeks information containing attorney work product and/or that is protected by the attorney client or other legal privileges. State Farm further objects to the extent this Request purports to imply that State Farm implemented an enterprise-wide rule that required management approval of full roof replacements on all wind/hail claims. Rather, managerial approval for total roof replacements depends on the experience and level of authority of the adjuster and/or the nature of the weather event. Plaintiffs have not established that such

information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 26:** Your Quality plan(s), program(s), and/or initiative(s) to reduce or track indemnity payments, reduce or track the total or full roof replacement to partial roof ratio, reduce or track full roof replacement approval percentages, and reduce or track nationwide total roof payment volume on wind or hail claims from January 1, 2019 to the present.

**RESPONSE TO REQUEST NO. 26:** State Farm objects to Request for Production No. 26 because it impermissibly assumes facts and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). Further, State Farm objects to this Request because it is vague and ambiguous, especially as to the terms/phrases "Quality plan(s), program(s), and/or initiative(s)" and is unduly burdensome depending on its interpretation.

State Farm also objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

Subject to these and State Farm's Universal Objections, State Farm agrees to produce State Farm's Fire Property Claims Quality Plan that was in effect on the date of loss, upon entry of an approved protective order.

**REQUEST FOR PRODUCTION NO. 27:** Your Wind/Hail claims Focus Models, including the Fire Model Enhancement – Wind/Hail, pertaining to homeowners' claims from 2016 to present, including all presentations, internal memos, or related documents.

**RESPONSE TO REQUEST NO. 27:** State Farm objects to Request for Production No. 27 because it improperly assumes facts and is vague and ambiguous, especially as to the terms/phrases "Wind/Hail claims Focus Models" and "related documents" and is unduly burdensome depending on its interpretation. State Farm further objects because this Request is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is

protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 28:** The matrices which relate to or involve the tracking of Your financial savings (and future financial savings) tied to reduction in indemnity payments on wind/hail claims, reduction in the total or full roof replacement to partial roof ratio, nationwide total roof payment volume, and/or reduction of the full roof replacement percentage on wind or hail claims from January 1, 2019 to the present.

**RESPONSE TO REQUEST NO. 28:** State Farm objects to Request for Production No. 28 because it improperly assumes facts and is vague and ambiguous, especially as to the terms/phrases "matrices which involve the tracking of" and may be unduly burdensome depending on its interpretation. State Farm further objects to this Request because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma).

Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 29:** Produce all Documents related in any way to "enhanced emphasis on Claim Handling Hygiene."

**RESPONSE TO REQUEST NO. 29:** State Farm objects to Request for Production No. 29 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (seeking "***all*** Documents related in ***any way***"; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the terms/phrases "related in any way" and "enhanced emphasis on Claim Handling Hygiene" and therefore may be unduly burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 30</u>:** Produce all Documents related to the "Art of the Conversation."

**<u>RESPONSE TO REQUEST NO. 30</u>:** State Farm objects to Request for Production No. 30 because it improperly assumes facts and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (seeking "***all*** Documents related to . . . ."; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). It is also vague and ambiguous and therefore may be unduly burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 31</u>:** Produce all Documents related to the "HAAG Refresher."

**<u>RESPONSE TO REQUEST NO. 31</u>:** State Farm objects to Request for Production No. 31 because it seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (seeking "***all*** Documents related to . . . ."; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic

area (not limited to materials applicable to Oklahoma). State Farm further objects to this Request as vague, specifically with respect to the use of the term "HAAG Refresher" and therefore may be unduly burdensome depending on its interpretation.

State Farm further states that its procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, training materials that were obsolete on the date of loss, pertain only to other losses, and/or pertain only to other areas of the country, are not relevant to the matters at issue in this case. State Farm additionally objects to this Request to the extent it seeks information and/or documents authored and/or copyrighted by entities that are not parties to this litigation, which State Farm is not at liberty to produce. Finally, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 32:** Produce all Documents related to the "2021 Fire Property Claims Quality Plan."

**RESPONSE TO REQUEST NO. 32:** State Farm objects to Request for Production No. 32 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope and unduly burdensome (seeking "***all*** Documents related to . . . ."; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts,

circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

Subject to these and State Farm's Universal Objections, State Farm agrees to produce State Farm's 2021 Fire Property Claims Quality Plan upon entry of an approved protective order.

**REQUEST FOR PRODUCTION NO. 33:** Produce full and complete copies of all communications on "MyBlock" for the last ten (10) years related to wind/hail claims, total roof replacements, and/or the Fire Model Enhancement – Wind/Hail or related Team.

**RESPONSE TO REQUEST NO. 33:** State Farm objects to Request for Production No. 33 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope and unduly burdensome (seeking "***all*** communications"; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Moreover, State Farm objects to this

Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. It is also unduly burdensome to search for and/or produce such information. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 34:** Produce full and complete copies of all "HAAG Education Hail and Wind Assessment Video Series," including but not limited to: Chapter 1 – Hail and Wind Basics contains four segments and is 1 hour and 28 minutes; Chapter 2 – Composition Shingles contains nine segments and is 2 hours and 33 minutes long.

**RESPONSE TO REQUEST NO. 34:** State Farm objects to Request for Production No. 34 because, in requesting "*full and complete* copies of 'HAAG Education Hail Assessment Video Series," it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope because it is not limited to trainings applicable to the specific insurance claim and/or coverages at issue in this litigation.

State Farm further objects to this Request because Haag has taken the position that State Farm does not have the authority to produce these videos. According to Haag, the videos constitute its intellectual property, and State Farm's license to use the videos "does not confer upon State Farm any authority or sufficient control over the videos to reproduce, disclose, or otherwise produce Haag's proprietary materials in litigation." *See* Decl. of R. Holdhusen, attached hereto. As such, Plaintiffs' request should be directed to Haag. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 35:** Produce full and complete copies of all Documents or Communications pertaining to "Claims and Agency Weather Event Topic

Discussions" and any transcriptions of the following: "Claim managers will host calls with Agency leadership from mid-January 2021 through February 2021 to discuss wind/hail topics that were frequent points of discussion with Agency in 2020. These topics may include a review of 2020 claim wind/hail volume, additional inspections, matching, roofer inspections prior to a claim being submitted to State Farm, timelines for obtaining replacement cost benefits, Roof/Exterior Inspection Assist Program, SFPSP Roofing Services Program (RSP)/Contractor Services Program (CSP), Roof Surfaces Payment Schedule Endorsement, and Metal Roof Exclusion for Hail (Section 1 – Additional Coverage: Metal Roof Endorsement)."

**RESPONSE TO REQUEST NO. 35:** State Farm objects to Request for Production No. 35 because it is overly broad, improperly assumes facts, and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim) and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Additionally, in requesting "all" documents on the broadly described topics, the Request is vague and ambiguous and unduly burdensome.

Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 36:** Please produce any and all emails, letters, memos, or other correspondence or documents sent or received by Nicole Manduca from January 1, 2019 until the present time regarding or relating to (i) Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, (ii) implementation of Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Texas; (iii) implementation of Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Oklahoma; (iv) claims handling tactics or rules used related to such initiatives or plans; (v) Fire Model Enhancement Guidelines; and/or (vi) tracking of indemnity savings, tracking of the total or full roof replacement to partial roof replacement ratio, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims.

**RESPONSE TO REQUEST NO. 36:** State Farm objects to Request for Production No. 36 because it is duplicative of Request for Production No. 23. In addition, State Farm objects to this Request because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, Nicole Manduca was not involved in any way with the handling or adjustment of Plaintiffs' claim.

Moreover, the Request is overly broad in scope (seeking "any and all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable time period); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the conflation in the use and references to various teams and initiatives as well as "claims handling tactics or rules used related to such initiatives or plans"; therefore, it may be unduly burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 37:** Please produce any and all emails, letters, memos, or other correspondence or documents sent or received by Tom Moss from January 1, 2019 until the present time regarding or relating to (i) Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, (ii) implementation of Fire Model Enhancement -Wind/Hail, the

Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Texas; (iii) implementation of Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Oklahoma; (iv) claims handling tactics or rules used related to such initiatives or plans; (v) Fire Model Enhancement Guidelines; and/or (v) tracking of indemnity savings, tracking of the total or full roof replacement to partial roof replacement ratio, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims.

**RESPONSE TO REQUEST NO. 37:** State Farm objects to Request for Production No. 37 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, Tom Moss was not involved in the handling or adjustment of Plaintiffs' claim. Moreover, the Request is overly broad in scope (seeking "any and all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable time period); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, in the conflation

of the use and references to various claims and initiatives as well as "claims handling tactics or rules used related to such initiatives or plans"; therefore, it may be unduly burdensome depending on its interpretation, especially as to the terms/phrases "Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives" and "claims handling tactics or rules used related to such initiatives or plans." Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 38:** Please produce any and all emails, letters, memos, or other correspondence or documents sent or received by Susan Maynard from January 1, 2019 until the present time regarding or relating to (i) Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, (ii) implementation of Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Texas; (iii) implementation of Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Oklahoma; (iv) claims handling tactics or rules used related to such initiatives or plans; (v) Fire Model Enhancement Guidelines; and/or (v) tracking of indemnity savings, tracking of the total or full roof replacement to partial roof replacement ratio, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims.

**RESPONSE TO REQUEST NO. 38:** State Farm objects to Request for Production No. 38 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, Susan Maynard was not involved in the handling or adjustment of Plaintiffs' claim. Moreover, the Request is overly broad in scope (seeking "any and all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable time period); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, in the conflation of the use and references to various claims and initiatives as well as "claims handling tactics or rules used related to such initiatives or plans;" therefore, it may be unduly burdensome depending on its interpretation. Additionally, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 39</u>:** Produce all Fire Model Enhancement Guidelines for Wind/Hail.

**<u>RESPONSE TO REQUEST NO. 39</u>:** State Farm objects to Request for Production No. 39 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). It is also unduly burdensome. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**<u>REQUEST FOR PRODUCTION NO. 40</u>:** Produce any and all emails, letters, memos, or other correspondence or documents duties of State Farm and/or its captive Agent(s) to keep abreast of the condition of the properties State Farm insures upon renewal, including but not limited to reducing the risk of insuring the property, maintaining the exterior of the property, reducing the risk of additional damage to the roof, replacing the roof, replacing shingles with granular loss, eligible roofing material used, and how the insured gets this information to State Farm and/or its captive Agent(s).

**<u>RESPONSE TO REQUEST NO. 40</u>:** State Farm objects to Request for Production No. 40 because it improperly assumes facts and seeks information which is not relevant or proportional to the needs of the case. The Request is also vague and ambiguous with respect to the terms "duties,"

"keep abreast," and "how the insured gets this information to State Farm and/or its captive Agent(s)" and therefore may be unduly burdensome depending on the interpretation. State Farm additionally objects to this Interrogatory as invasive of the attorney-client privilege and/or work-product doctrine and because it improperly seeks a legal conclusion.

The Request is also objectionable because it is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 41:** Produce any Fire Property Claims Quality Plan from January 1, 2019 until the present time.

**RESPONSE TO REQUEST NO. 41:** State Farm objects to Request for Production No. 41 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly

broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable period of time); and geographic area (not limited to materials applicable to Oklahoma). Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable.

Subject to these objections and State Farm's Universal Objections, State Farm agrees to produce State Farm's Fire Property Claims Quality Plan that was in effect on the date of loss, upon entry of an approved protective order.

**REQUEST FOR PRODUCTION NO. 42:** Produce any Wind/Hail Claims Guidelines from January 1, 2019 until the present time.

**RESPONSE TO REQUEST NO. 42:** State Farm objects to Request for Production No. 42 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. Specifically, the Request is overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim) and time (not limited to a reasonable period of time). Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 43:** Please produce any and all emails, letters, memos, or other correspondence or documents sent or received by Sharon Arnold from January 1, 2019 until the present time regarding or relating to (i) Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, (ii) implementation of Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Texas; (iii) implementation of Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Oklahoma; (iv) claims handling tactics or rules used related to such initiatives or plans; (v) Fire Model Enhancement Guidelines; and/or (v) tracking of indemnity savings, tracking of the total or full roof replacement to partial roof replacement ratio, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims.

**RESPONSE TO REQUEST NO. 43:** State Farm objects to Request for Production No. 43 because it is overly broad and seeks information that is not relevant to the resolution of the claims and defenses or proportional to the needs of the case. As an initial matter, Sharon Arnold was not involved in the handling or adjustment of Plaintiffs' claim. Moreover, the Request is overly broad in scope (seeking "any and all" with respect to broadly defined categories of documents; not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; not limited to materials pertinent to the claims personnel who adjusted the subject claim); time (not limited to a reasonable time period); and geographic area (not limited to materials applicable to Oklahoma). In addition, the Request is overly broad and irrelevant to the extent it seeks documents and communications regarding the claims of other insureds, arising

under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it assumes facts and is vague and ambiguous, especially as to the terms/phrases "any hail quality focus initiatives," "claims handling tactics or rules used related to such initiatives or plans," "total or full roof replacement to partial roof replacement ratio," "full roof replacement approval percentages," and "total roof payment volume." Therefore, it may be unduly burdensome depending on its interpretation. Moreover, State Farm objects to this Request to the extent it seeks confidential, proprietary business information and/or trade secrets, information containing attorney work product and/or that is protected by the attorney client or other legal privileges. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

**REQUEST FOR PRODUCTION NO. 44:** Produce all documents previously produced and/or ordered by the respective court to be produced by You in the following cases:

- Nida v. State Farm, CJ-2020-4453 (Oklahoma County)
- Hosier v. State Farm, CJ-2021-1741 (Oklahoma County)
- Kyger v. State Farm, CJ-2022-3990 (Oklahoma County)
- McDow v. State Farm, CJ-2022-1857 (Oklahoma County)
- Barnett v. State Farm, CJ-2020-141 (Grady County)
- McNeil v. State Farm, CJ-2021-926 (Cleveland County)

**RESPONSE TO REQUEST NO. 44:** State Farm objects to Request for Production No. 44 as an improper attempt to circumvent the protective orders governing the disclosure of

Confidential information in other cases and the relevance requirements for each case. State Farm further objects because this Request is overly broad and seeks information that is not relevant to the resolution of any party's claims or defenses or proportional to the needs of the case, as each of the cases listed in this Request involves different insureds, policies, properties, weather events, and facts of loss. This Request is also overly broad in scope (not limited to materials applicable to the specific insurance claim and/or coverages at issue in this litigation; and not limited to materials pertinent to the claims personnel who adjusted the subject claim) and to the extent it seeks documents and communications regarding the claims of other insureds, arising under different facts, circumstances, policies, and dates and for insureds who have not placed their claims or the personal sensitive information pertaining to their homes and homeowner's claims at issue in this litigation. The investigation and evaluation of other claims will neither prove nor disprove any allegations in the case, as each claim is handled on its own individual facts. Further, State Farm objects to this Request because it is improper "cloned discovery" and to the extent it seeks confidential, proprietary business information and/or trade secrets or information. Plaintiffs have not established that such information is probative of any issue in the case, or therefore, discoverable. State Farm stands on its objections.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** Admit that Plaintiff notified State Farm Fire and Casualty Company of the loss pertinent to the present action as required under the Policy.

**RESPONSE TO REQUEST NO. 1:** Denied.

**REQUEST FOR ADMISSION NO. 2:** Admit that Plaintiff complied with all provisions of the policy with regard to filing a claim for loss.

**RESPONSE TO REQUEST NO. 2:** Denied.

**REQUEST FOR ADMISSION NO. 3:** Admit that it is standard practice in the insurance industry for claims departments to adjust claims in a manner that does not violate the provisions of the Oklahoma Unfair Claims Settlement Practices Act, 36 O.S. § 1201, et seq.

**RESPONSE TO REQUEST NO. 3:** State Farm objects to Request for Admission No. 3 because it is vague and ambiguous, harassing, and serves no legitimate purpose. It is improper to ask State Farm to admit or deny information as to what is or is not "standard practice" of other insurers, which is how the request is framed. For that reason and others, the admission request seeks information which is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and State Farm's Universal Objections, State Farm admits that it handles claims in accordance with the Unfair Claims Settlement Practices Act provisions that are applicable to the specific claim being handled and not prevented by circumstances outside of State Farm's control.

**REQUEST FOR ADMISSION NO. 4:** Admit that State Farm Fire and Casualty Company must conduct a reasonable and prompt investigation of Plaintiffs' insurance claim.

**RESPONSE TO REQUEST NO. 4:** State Farm objects to Request for Admission No. 4 because it is vague and ambiguous. What is "reasonable" and "prompt" is subject to interpretation and prevents State Farm from admitting or denying the request with precision as written. The request also improperly asks State Farm to admit or deny a legal conclusion. Subject to these objections and State Farm's Universal Objections, State Farm admits that it must conduct a reasonable and prompt investigation, the determination of which varies based upon the facts of each claim.

**REQUEST FOR ADMISSION NO. 5:** Admit that State Farm Fire and Casualty Company must promptly pay Plaintiffs all benefits owed under Plaintiffs' Policy.

**RESPONSE TO REQUEST NO. 5:** State Farm objects to Request for Admission No. 5 because it is vague and ambiguous. What constitutes "promptly" is subject to interpretation and prevents State Farm from admitting or denying the request with precision as written. The request also improperly asks State Farm to admit or deny a legal conclusion. Subject to these objections and State Farm's Universal Objections, State Farm admits that it must pay Plaintiffs benefits State Farm determines are owed under the Policy within a reasonable time of determining they are owed.

**REQUEST FOR ADMISSION NO. 6:** Admit that State Farm Fire and Casualty Company's claim file for Plaintiffs must contain contemporaneous and detailed documentation of each action taken and all work performed on Plaintiffs' claim.

**RESPONSE TO REQUEST NO. 6:** State Farm objects to Request for Admission No. 6 because it is vague and ambiguous. What is "contemporaneous" and "detailed" is subject to interpretation and prevents State Farm from admitting or denying the request with precision as written. The request also improperly asks State Farm to admit or deny a legal conclusion. Subject to these objections and State Farm's Universal Objections, State Farm denies the request as written. What the statute requires is that State Farm include notes and papers in the claim file "in such detail that pertinent events and the dates of such events can be reconstructed."

**REQUEST FOR ADMISSION NO. 7:** Admit that Plaintiffs' Policy afforded coverage to Plaintiffs for the structural damage to the Subject Property and that said Coverage was active at all times relevant to this lawsuit.

**RESPONSE TO REQUEST NO. 7:** State Farm objects to Request for Admission No. 7 because it is vague and ambiguous as to what is meant by "structural damage" and that "said Coverage was active." It also assumes facts—"structural damage"—that do not exist. Subject to these objections and State Farm's Universal Objections, the request for admission is denied

because there was no "structural damage" (as it is understood by State Farm) to the "Subject Property" from a June 15, 2023 date of loss (or otherwise based on the information known to State Farm). State Farm admits that the Policy was in force on the date of loss.

**REQUEST FOR ADMISSION NO. 8:** Admit that Plaintiffs have paid the premiums in full on the Policy.

**RESPONSE TO REQUEST NO. 8:** State Farm objects to Request for Admission No. 8 because it seeks information which is not relevant, likely to lead to the discovery of admissible evidence, or proportional to the needs of the case. State Farm is not urging any defense based on any non-payment or late-payment of premiums. State Farm admits that the policy was in force on the date of loss. State Farm stands on its objection as to any further response to this admission request.

**REQUEST FOR ADMISSION NO. 9:** Admit at the time of the inception of Plaintiffs' Policy, State Farm required its agents, including Agent, to inspect all new business, including rewrites to new locations.

**RESPONSE TO REQUEST NO. 9:** Denied.

**REQUEST FOR ADMISSION NO. 10:** Admit that State Farm utilized assumptive data regarding the characteristics of Plaintiffs' Dwelling in the calculation of Plaintiffs' replacement cost value.

**RESPONSE TO REQUEST NO. 10:** State Farm objects to this Request as it is vague and ambiguous as worded, does not define the "assumptive data" referenced, does not distinguish whether it relates to the underwriting process or the claims handling process, and appears to be overly broad in time and scope, an incomplete hypothetical irrelevant to the Plaintiffs' claim and/or policy, which is an improper request for admission. Subject to these objections and State Farm's

Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 11:** Admit the term "hail damage" is not defined in Plaintiffs' Policy.

**RESPONSE TO REQUEST NO. 11:** State Farm objects to this Request because the policy is a written document that speaks for itself and it improperly assumes that a policy form must define hail damage. Subject to these objections and State Farm's Universal Objections, State Farm's policy states that it "will pay for accidental direct physical loss" to covered property "unless the loss is excluded or limited" in the policy and thus includes hail damage. State Farm otherwise admits that "hail damage" is not a defined term in the policy.

**REQUEST FOR ADMISSION NO. 12:** Admit the term "functional damage" is not defined in Plaintiffs' Policy.

**RESPONSE TO REQUEST NO. 12:** State Farm objects to this Request because it is vague and ambiguous, and the policy is a written document that speaks for itself. State Farm also objects that this Request improperly assumes that functional damage applies and that a policy form must define functional damage. Subject to these objections and State Farm's Universal Objections, State Farm's policy states that it "will pay for accidental direct physical loss" to covered property "unless the loss is excluded or limited" in the policy and includes hail damage. State Farm admits that "functional damage" is not a defined term in the policy.

**REQUEST FOR ADMISSION NO. 13:** Admit that if there is an accidental direct physical loss sustained by Plaintiffs to the insured Dwelling under the Policy, then there must be a specific exclusion in the Policy to support any denial.

**RESPONSE TO REQUEST NO. 13:** State Farm objects to this Request as calling for a legal conclusion. It is also vague and ambiguous and an incomplete hypothetical. Subject to these

objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 14:** Admit You do not define hail damage in Plaintiffs' Policy.

**RESPONSE TO REQUEST NO. 14:** State Farm objects to Request for Admission No. 14 because it is duplicative of Request for Admission No. 11. State Farm further objects to this Request because the policy is a written document that speaks for itself. State Farm also objects that this Request improperly assumes that a policy form must define hail damage. Subject to these objections and State Farm's Universal Objections, State Farm's policy states that it "will pay for accidental direct physical loss" to covered property "unless the loss is excluded or limited" in the policy and includes hail damage. State Farm admits that "hail damage" is not a defined term in the policy.

**REQUEST FOR ADMISSION NO. 15:** Admit You do not define "accidental direct physical loss" in Plaintiffs' Policy.

**RESPONSE TO REQUEST NO. 15:** State Farm objects to this Request because the policy is a written document that speaks for itself. State Farm also objects that this Request improperly assumes that a policy form must define accidental direct physical loss. Subject to these objections and State Farm's Universal Objections, State Farm's policy states that it "will pay for accidental direct physical loss" to covered property "unless the loss is excluded or limited" in the policy, but admits that "accidental direct physical loss" is not otherwise a defined term in the policy.

**REQUEST FOR ADMISSION NO. 16:** Admit You train Your claims personnel that excessive granular loss to composition shingles caused by hail is not to be considered damage under the terms and conditions of State Farm's homeowners policies.

**RESPONSE TO REQUEST NO. 16:** State Farm objects to this Request because it is vague and ambiguous as to "excessive granular loss" and "not to be considered." Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 17:** Admit a home with construction defects to the roof does not qualify for a State Farm homeowners policy.

**RESPONSE TO REQUEST NO. 17:** State Farm objects to this Request as vague and ambiguous as to "construction defects." Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 18:** Admit You developed the Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, the Hail Focus Initiative and/or Hail Initiative and/or other initiatives or programs to apply on first-party claims to seek a reduction in the amount You spent each year on total roof replacements, lower the ratio of total or full roof replacements to partial roof replacements, lower the full roof replacement approval percentage, and/or lower nationwide total roof payment volume.

**RESPONSE TO REQUEST NO. 18:** State Farm objects to this Request because it is vague and ambiguous. State Farm further objects to this Request because it seeks information that is not relevant or proportional to the needs of the case. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 19:** Admit You tracked the results of the Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, the Hail Focus Initiative and/or Hail Initiative and/or other initiatives or programs in the amount You spent each year on total roof replacements, the ratio of total or full roof replacements to partial roof replacements, the full roof replacement approval percentage, and/or nationwide total roof payment

volume.

**RESPONSE TO REQUEST NO. 19:** State Farm objects to this Request because it is vague and ambiguous. State Farm further objects to this Request because it seeks information that is not relevant to the claims or defenses or proportional to the needs of the case. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 20:** Admit that You targeted Oklahoma certain States to implement the Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, the Hail Focus Initiative and/or Hail Initiative and/or other similarly named initiatives or programs.

**RESPONSE TO REQUEST NO. 20:** State Farm objects to this Request because it is vague and ambiguous. State Farm further objects to this Request because it seeks information that is not relevant to the claims or defenses or proportional to the needs of the case. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 21:** Admit that You started implementation of the Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, the Hail Focus Initiative and/or Hail Initiative and/or other similarly named initiatives or programs in Texas.

**RESPONSE TO REQUEST NO. 21:** State Farm objects to this Request because is vague and ambiguous. State Farm further objects to this Request because it seeks information that is not relevant to the claims or defenses or proportional to the needs of the case. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 22:** Admit that You targeted Oklahoma as a state to implement the Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model

Enhancement Team, the Hail Focus Initiative and/or Hail Initiative and/or other similarly named initiatives or programs after implementation in Texas.

**RESPONSE TO REQUEST NO. 22:** State Farm objects to this Request because it is vague and ambiguous. State Farm further objects to this Request because it seeks information that is not relevant to the claims or defenses or proportional to the needs of the case. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 23:** Admit that you have trained and/or made known the Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, the Hail Focus Initiative and/or Hail Initiative and/or other similarly named initiatives or programs to State Farm captive agents since January 1, 2019.

**RESPONSE TO REQUEST NO. 23:** State Farm objects to this Request because it is irrelevant, improperly assumes facts and is vague and ambiguous. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 24:** Admit You developed a team management approval system wherein adjusters who recommend a full roof replacement on a wind/ hail claim must get team manager approval for such full or total roof replacement.

**RESPONSE TO REQUEST NO. 24:** State Farm objects to this Request because it is irrelevant, improperly assumes facts and is vague and ambiguous. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 25:** Admit that You compared the industry standards on percentage of Full Roof Replacements to Your internal standard on percentage of Full Roof Replacements and identified an opportunity for internal quality improvement by seeking to lower Your percentage of approvals for full roof replacements to the industry standard and/or to

a related benchmark.

**RESPONSE TO REQUEST NO. 25:** State Farm objects to this Request because it is irrelevant, improperly assumes facts and is vague and ambiguous. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 26:** Admit that since January 1, 2019, You review and/or track the percentages of total or full roof replacements by individual adjusters and managers on wind/hail claims.

**RESPONSE TO REQUEST NO. 26:** State Farm objects to this Request because it is irrelevant, improperly assumes facts and is vague and ambiguous. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 27:** Admit that you have policies, procedures, and/or methods to review and/or track percentages of total or full roof replacements by individual adjusters and managers adjusting or working on Oklahoma wind/hail claims, including recommendations, approvals, or similar type of review, tracking, or analysis related to total or full roof replacements on wind/hail claims.

**RESPONSE TO REQUEST NO. 27:** State Farm objects to this Request because it is irrelevant, improperly assumes facts and is vague and ambiguous. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 28:** Admit that You believe "negotiation" is an element of accurate claim handling.

**RESPONSE TO REQUEST NO. 28:** State Farm objects to this Request because it is vague and ambiguous. Subject to these objections and the General Objections, denied.

**REQUEST FOR ADMISSION NO. 29:** Admit You acted in direct opposition to any

moratorium on the use of Haag.

**RESPONSE TO REQUEST NO. 29:** State Farm objects to this Request because it is irrelevant, improperly assumes facts and is vague and ambiguous. Subject to these objections and State Farm's Universal Objections, denied.

**REQUEST FOR ADMISSION NO. 30:** Admit that You created and/or implemented a claims handling Playbook and/or developed claims handling Tactics as part of the Fire Model Enhancement - Wind/Hail, the Wind and Hail Fire Model Enhancement Team, the Hail Focus Initiative and/or Hail Initiative and/or other initiatives or programs for adjusting, handling, and/or investigating wind/hail claims.

**RESPONSE TO REQUEST NO. 30:** State Farm objects to this Request because it is irrelevant, improperly assumes facts and is vague and ambiguous. Subject to these objections and State Farm's Universal Objections, denied.

Respectfully submitted,

Paige A. Masters

TIMILA S. ROTHER, OBA #14310
PAIGE A. MASTERS, OBA #31142
AMANDA M. FINCH, OBA #34650
**CROWE & DUNLEVY, PC**
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
timila.rother@crowedunlevy.com
paige.masters@crowedunlevy.com
amanda.finch@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY**

## CERTIFICATE OF SERVICE

This is to certify that on the 29th day of September, 2025, the undersigned caused a true and correct copy of the above and foregoing to be mailed to:

Reggie N. Whitten
Michael Burrage
Blake Sonne
Hannah Whitten
John S. Sanders
Jake Denne
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102

Brad Burgess
Colby Stephenson
**BURGESS & HIGHTOWER LAW FIRM**
21 NW 44th Street, Suite 201
Lawton, OK 73505

Paige A. Mattus



6077963

# VERIFICATION

I, Jason Taylor, a duly authorized representative of State Farm Fire and Casualty Company ("State Farm"), which is a defendant in *West v. State Farm Fire and Casualty Company*, verify that I have reviewed State Farm's Responses to Plaintiffs' Interrogatory Nos. 1, 2, and 8 in Plaintiffs' First Set of Discovery Requests to State Farm (the "Responses"). I am informed and believe that the facts stated therein are true and, on that ground, verify such matters as true to the best of my knowledge. The Responses were prepared with the assistance and advice of counsel for State Farm. The Responses were prepared with information available from other sources and not based entirely upon my personal knowledge. The Responses are limited by the information presently recollected and thus far discovered in the course of preparation of the Responses.

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct pursuant to 12 O.S. § 426.

[signature]

Signature

JASON TAYLOR

Name (typed or printed)

TEAM MANAGE

Title

NORMAN OK 9/29/25

Date and Place (City, State)

1410 Lakeside Pkwy., Ste. 100
Flower Mound, Texas 75028
HaagGlobal.com

800.527.0168
214.614.6500
214.614.6501 fax

# DECLARATION

My name is Ryan Holdhusen, Vice President of Haag Education Co. ("Haag") I am above the age of eighteen (18) years, and I am fully competent to make this declaration.

Haag is the provider of the "Hail and Wind Damage Assessment" seminar, which includes training videos developed exclusively by Haag for educational purposes.

State Farm holds a license to utilize Haag's training videos solely for internal training purposes. This license, however, is limited in scope and does not confer upon State Farm any authority or sufficient control over the videos to reproduce, disclose, or otherwise produce Haag's proprietary materials in litigation.

The videos remain the intellectual property of Haag and any production or dissemination beyond the scope of the license would violate Haag's proprietary rights.

Therefore, Haag maintains that State Farm's license does not authorize the production of the "Hail and Wind Damage Assessment" seminar videos and/or transcripts in this or any litigation.

Ryan Holdhusen
Vice President of Haag Education Co.

**JURAT**

My name is Ryan Holdhusen. I am Vice President of Haag Education Co. I declare under penalty of perjury that every statement in the foregoing Declaration is within my personal knowledge and is true and correct.

Executed in Denton County, State of Texas on the 17th day of December, 2024.

Ryan Holdhusen

**IN THE DISTRICT COURT OF COMANCHE COUNTY
STATE OF OKLAHOMA**

| | |
|---|---|
| NEIL and LACY WEST,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY and NANCY HOLCOMB INS. AGENCY, INC.,<br><br>Defendants. | Case No. CJ-2025-135 |

**PROTECTIVE ORDER**

The Parties have informed the Court that they have reached a compromised form of protective order and submit it to the Court for review and entry. Upon review, the Court finds Plaintiff and Defendants State Farm Fire & Casualty Company ("State Farm") and Nancy Holcomb Insurance Agency, Inc. (collectively, the "Parties"), are or will be producing potentially relevant Documents, records, and information that may contain Trade Secret; Confidential research, development, or commercial Information; or Personal Confidential Information as defined in Section II. This Protective Order shall govern the production of all such Confidential Documents and Testimony, as defined in Section II, in this case.

Nothing in this Protective Order purports to confer blanket protection on disclosures or responses to discovery that are not entitled to protection under its terms or presumptively entitle either Party to file Confidential Material, as defined in Section II, under seal.

As such, the Court finds good cause that the Parties' compromised Protective Order should be and hereby is entered.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** as follows:

## I. PURPOSE

1. In order to expedite the flow of discovery material, any party or non-party who (a)

produces Documents in this Action or (b) presents a witness, designee, or representative who proffers Testimony in this Action (the "Producing Party") may designate such Documents or Testimony as "Confidential."

2. The Producing Party shall only designate Documents or Testimony as "Confidential" after determining, in good faith, it constitutes Trade Secret; Confidential research, development, or commercial Information; or Personal Confidential Information as defined in Section II.

3. The Parties acknowledge "Confidential" designations made by a Producing Party are subject to good faith challenge, pursuant to Section IV herein, as to whether the designated Document or Testimony is, in fact, entitled to protection by this Protective Order.

## II. <u>DEFINITIONS</u>

4. As used herein, the terms set forth below shall have the following meanings:

a. "**Action**" means the above-styled and numbered litigation.

b. **"Confidential Material"** shall refer to Documents or Testimony containing Trade Secret; Confidential research, development, or commercial information; or Personal Confidential Information that the Producing Party has designated or will designate as Confidential in the Action.

c. "**Confidential research, development, or commercial information**" shall refer to proprietary information the Producing Party maintains in secrecy from third parties and in good faith believes would result in substantial competitive harm, or other commercial harm, if publicly disclosed, including certain underwriting information, claims handling information, financial information, and business strategy information. The following are illustrative of the types of documents containing such information: certain Jurisdictional Resources, Operation Guides, Standard Claim Processes, training materials, third-party claims files, third-party complaints, and communications reflecting such information.

d. "**Court**" means the Honorable Judge currently assigned to this Action or any other judge to which this Action may be assigned, including Court staff participating in such proceedings.

e. "**Document(s)**" shall have the same meaning assigned to it in 12 O.S. § 3234(A)(1) and shall include electronically stored information.

f. "**Information**" means the content of Documents or Testimony, as well as any matter derived therefrom or based thereon.

g. "**Personal Confidential Information**" shall include a person's home address, social security number, tax identification number, passwords, telephone number, medical records, confidential financial information, and confidential non-public tax information.

h. "**Producing Party**" means the Party or non-party that designates Documents, Testimony, or Information as Confidential.

i. "**Testimony**" means oral or written evidence proffered by a witness, designee, or representative while under oath, affidavit, or deposition.

j. "**Trade secret**" shall have the same meaning as in 78 O.S. § 86(4).

## III. CONFIDENTIAL DESIGNATIONS

5. Documents and testimony may be designated as "Confidential" within the meaning of this Protective Order only in the following ways:

a. Documents: Each Document or portion of a Document the Producing Party in good faith believes to contain confidential information shall be marked "Confidential." A Document marked "Confidential" shall be marked as such only in the footer of the Document or in a conspicuous area of any tangible object. In no event shall a "Confidential" designation obscure or otherwise be overlaid on any text of a Document, regardless of the readability of the underlying text of that Document. Additionally, watermarks shall not be utilized in any manner to designate any Document as Confidential. If a Document designated as "Confidential" is produced in native format, the "Confidential" designation and Bates Number shall be included in the file name of the produced Document. For each natively-produced document, the Producing Party shall also produce a corresponding Document in image format, endorsed with the Bates Number and Confidentiality designation, unless the only reasonably useable format is native format. If the only reasonably useable format of a Document is native, the Producing Party will instead produce a corresponding cover page in image format, specifying that the Document has been "produced in native format" and endorsing it with the Bates Number and Confidentiality Designation. Further, the Parties shall avoid, as much as possible, the inclusion of information designated as Confidential in briefs and other captioned Documents filed in court, in order to minimize potential sealing and designating as Confidential Material any such Documents.

b. Testimony: Portions of deposition transcripts (including exhibits, if any) taken in this matter may be designated by the Producing Party as "Confidential" so long as the Producing Party in good faith believes the Testimony contains Confidential Material. Designations to a deposition transcript can be made by stating on the record that the Producing Party is designating a portion of the deposition transcript (including exhibits, if any) "Confidential" or by advising the court reporter and counsel for all other Parties, in writing, within thirty (30) days of receiving the final deposition transcript from the court reporter, the page(s) and lines of the deposition that the party deems "Confidential." The entire deposition transcript (including exhibits) shall be treated as Confidential under this Protective Order until the expiration of the above-referenced thirty-day period for designation in writing, except that the deponent may review the transcript of his or her own deposition during this thirty-day period. Nothing within this Protective Order shall allow a Producing Party (or any Party or non-party) to designate an entire deposition transcript as "Confidential" without first obtaining an order from this Court allowing such designation.

6. Pursuant to 12 O.S. § 3226 (C), and as used in this Protective Order, "Confidential" designations shall only apply to Confidential Materials as defined in Section II.

## IV. CHALLENGES TO "CONFIDENTIAL" DESIGNATIONS

7. **Timing**. Any Party may, in good faith, challenge the Producing Party's "Confidential" designations at any time. A Party shall not be obligated to challenge the propriety of a "Confidential" designation at the time of production or designation, and failure to do so shall not preclude a subsequent challenge thereto.

8. **Notice of Objection and Response**. In the event any Party to this Action takes issue with any "Confidential" designation, such Party shall provide to the Producing Party written notice of its good faith disagreement (the "Notice of Objection"). The Producing Party shall respond in writing by stating whether it agrees or disagrees such designation(s) should be removed.

9. **Meet and Confer**. The Parties shall have fifteen days from the Notice of Objection to meet and confer in good faith to attempt to dispose of such dispute concerning such designations (the "Meet and Confer").

10. **Motion**. If, after the Meet and Confer, the Parties are unable to resolve the dispute, any Party may move for a determination by the Court as to the appropriateness of the confidentiality designation. Each Document or Testimony or portion thereof designated as "Confidential" shall retain that designation and shall remain subject to the terms of this Protective Order until such time, if ever, that a Court renders a decision that a particular Document or Testimony or portion thereof is not subject to this Protective Order and any and all proceedings and interlocutory appeals challenging such decision have been concluded.

11. **Burden**. The burden of establishing a Document or Testimony contains Confidential Material and is entitled to the protection of this Protective Order shall remain on the Producing Party. Further, and subject to the procedure outlined above, nothing herein precludes the objecting Party's right to submit a motion to this Court seeking de-designation of any Document or Testimony for good cause.

## V. DISCLOSURE OF CONFIDENTIAL MATERIALS

12. Documents and/or Testimony designated "Confidential" may be disclosed only to the following persons, unless prior written consent to further disclosure has been obtained from counsel for the Producing Party or permission for such disclosure has been given by the Court:

a. The Parties to this Action;

b. Counsel of record in this Action who are outside counsel to the Parties herein, including all regular employees of such counsel such as paralegals, legal assistants, secretaries, and other support staff, so long as (i) disclosure is necessary to the prosecution or defense of this Action and (ii) all persons are informed of this Protective Order and agree to abide by its terms;

c. The Court and Court personnel;

d. Court reporters, including deposition court reporters and their staffs;

e. Any person employed by a Party who is expressly retained by any attorney described in this Paragraph to assist in the prosecution or defense of this Action, including outside experts, consultants, and those consultant's employees, so long as (i) disclosure to those individuals is necessary to the prosecution or defense of this Action and (ii) all persons

are informed of this Protective Order and agree in writing to abide by its terms;

f. Actual and potential deposition or trial witnesses in this case, so long they are informed of this Protective Order and agree to abide by its terms;

g. Any mediator mutually agreed upon by the Parties, so long they are informed of this Protective Order and agree to abide by its terms; and

h. Any other Court or Judiciary with jurisdiction over this Action.

13. In the event any "Confidential Material is used in any deposition, filing, or court proceeding during the course of this Action, it shall not lose its "Confidential" status through such use.

## VI. NOTIFICATION OF PROTECTIVE ORDER

14. Confidential Material shall not be disclosed to a person described in Paragraph 12(e), (f), and (g), unless and until such person has executed an agreement of confidentiality in substantially the form of the Certification attached hereto as Exhibit "A." The originals of an executed Certification shall be maintained by counsel for the Party who obtained it until the final resolution of this Action and shall not be subject to discovery except upon motion on notice and a showing of good cause. The limitations on disclosure in this Paragraph include either direct or indirect disclosure, including but not limited to, any disclosure by counsel or experts. Moreover, at any deposition and absent the agreement of the Parties, prior to the disclosure of any Confidential Material, the deponent shall be provided a copy of the form attached hereto as Exhibit "B" and shall be asked to affirmatively state on the record that he or she has received the form and consents to the restrictions contained within this Protective Order, a copy of which shall be provided to the deponent.

15. Plaintiffs do not expect to designate any materials as "Confidential" in this Action. However, to the extent Plaintiffs do designate materials as "Confidential," nothing in this Protective Order shall be construed to prohibit, restrict, or require State Farm to obtain an authorization for

the retention, use, or disclosure of nonpublic Confidential Materials and records as authorized or as reasonably required by: State Farm's Information Retention Schedules; federal or state law or regulation; court order; rule, including, but not limited to, Medicare authorities; reporting to a third-party such as to LexisNexis C.L.U.E. (Comprehensive Loss Underwriting Exchange) for Auto & Property Reports or to ISO (Insurance Services Office) for analysis of records in anti-fraud efforts (using non-fraudulent data to benchmark); reporting for rate-making or otherwise; and permissible insurance functions in paperless Claim File through its Electronic Claims Systems. Nothing in this Protective Order shall prevent State Farm from retaining all Documents necessary for regulatory compliance activities, or from producing any Documents necessary for regulatory compliance activities.

## VII. FILING CONFIDENTIAL MATERIALS UNDER SEAL

16. Parties shall adhere to 12 O.S. § 3226(C)(2), 51 O.S. § 24A.29, and Local Rule 10.1(C) when seeking to seal materials entered into the judicial record, regardless of whether a Document is protected by this Protective Order. A Confidential designation alone is not sufficient to justify sealing a Document entered into the judicial record, and a Party must first seek and obtain permission from this Court before a Document may be entered into the judicial record under seal. Before entering Confidential Material of another Party into a judicial record or discussing or referencing such material in court filings, the filing Party shall confer with the Producing Party in accordance with this Protective Order and subject to the following Paragraph, to determine whether the Producing Party will remove the Confidential designation, whether the document can be redacted, or whether a motion to seal or stipulation and proposed order is warranted. If the Producing Party does not agree to remove the Confidential designation, it must identify the basis for sealing the specific Confidential Material at issue, and the filing Party shall include this basis in its motion to seal, along with any objection to sealing the information at issue. Local Rule

10.1(C) sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the Court to file material under seal. A Party who seeks to maintain the confidentiality of its information must satisfy the requirements of 12 O.S. § 3226(C)(2), 51 O.S. § 21A.29, and Local Rule 10.1(C) even if it is not the Party filing the motion to seal. Failure to satisfy these requirements may result in the Court denying the motion to seal without prejudice. Each Party shall use its best efforts to minimize filings that necessitate the filing of Documents and materials designated Confidential under seal.

17. If the filing Party does not dispute the Confidentiality designation of the Producing Party, it need not obtain the consent of the Producing Party to file, or move to file, any Confidential Material of the Producing Party under seal. A Producing Party may also move to file its own Confidential Material under seal without conferring with, or obtaining the consent of, any other Party. Nothing in this Protective Order shall prohibit a Party from objecting to another Party's sealing motion pursuant to the rules of this Court.

## VIII. PUBLICLY AVAILABLE MATERIALS

18. Nothing herein shall be deemed to restrict in any way a Party or its attorneys with respect to its own Documents. Nothing herein shall be deemed to prevent a party from using in this Action, or disclosing, Documents, Testimony, and/or information already (a) in the public domain; (b) provided to a Party, the Party's attorneys, or the Party's experts, by rightful means through a source independent of the Producing Party or their attorney and through no violation of any protective order or confidentiality obligation to any Producing Party; or (c) legally and properly obtained outside this Action and is not subject to any confidentiality obligation to any Producing Party or a protective order or confidentiality agreement from another prior litigation. If Confidential Material is made public through a violation of any such confidentiality obligation or protective order, it shall not lose its Confidential status or result in waiver of the Confidentiality designation.

19. Nothing herein shall be construed as a waiver of any rights by any Party to challenge the admissibility of any Document, Testimony, or other information based on relevance, proportionality, or any other legally cognizable basis, nor be deemed to modify a Party's existing rights and responsibilities under any protective order and/or confidentiality agreement that may exist between the Parties.

## IX. MIS-DESIGNATION OF CONFIDENTIAL MATERIALS

20. In the event the Producing Party fails to designate discovery material as "Confidential" pursuant to this Protective Order, the Producing Party shall be entitled to make a correction to its designation within fifteen days of discovery of such mis-designation. In such a case, the Producing Party shall (i) give notice of such mis-designation and make the desired correction in writing; and (ii) provide substitute copies of each item of discovery material, appropriately designated.

21. Those individuals who received the mis-designated discovery material prior to receiving the notice of mis-designation shall certify destruction or sequestration of, or return to the law firm representing the Producing Party, all copies of such mis-designated discovery material within five (5) business days of receipt of the substitute copies. Those individuals who reviewed the mis-designated discovery material prior to notice of the mis-designation by the Producing Party shall abide by the provisions of this Protective Order with respect to all future use and disclosure of any information contained in the mis-designated materials.

22. To the extent any dispute arises over any such designation, a Party may challenge in accordance with Section IV above.

23. Notwithstanding the foregoing, nothing within this Protective Order shall allow a Party to simply designate each and every Document produced in this Action as "Confidential" as a perfunctory measure to preclude use or disclosure of any Document that is not Confidential outside

of this Action. It is expressly acknowledged that this Paragraph is limited to Documents produced in this Action and does not include deposition Testimony, which is expressly governed by Paragraph 5(b) above.

24. It is further expressly acknowledged that this provision cannot be used in any way to claw back any Document produced or Testimony given in any other case (current or past) involving Plaintiffs' counsel where (a) such confidentiality designation was expressly waived, (b) the Document or Testimony is publicly available, (c) the Document or Testimony was admitted as evidence in any trial, and not under seal, or (d) the Documents or Testimony were legally or properly retained by Plaintiffs' counsel from past litigation, and not subject to any protective order or confidentiality obligation to the Producing Party.

25. In the event of a disclosure by a Party that receives Confidential Material to persons or entities not authorized by this Protective Order to receive such Confidential Material, the Party making the unauthorized disclosure shall, upon learning of the disclosure: (i) immediately notify the person or entity to whom the disclosure was made that the disclosure contains Confidential Material subject to this Protective Order; (ii) immediately make reasonable efforts to recover the disclosed Confidential Material and preclude further dissemination or use by the person or entity to whom the disclosure was made; and (iii) immediately notify the Producing Party of the identity of the person or entity to whom the disclosure was made, the circumstances surrounding the disclosure, and the steps taken to recover the Confidential Material and ensure against further dissemination or use thereof. Disclosure of Confidential Material other than in accordance with the terms of this Protective Order may subject the disclosing person to such sanctions and remedies as the Court may deem appropriate. Any material violation of this Protective Order by any Party or person to whom Confidential Material is disclosed pursuant to the terms of this Protective Order

shall constitute a violation of a court order and be punishable as such.

## X. REQUIRED TREATMENT OF CONFIDENTIAL MATERIALS

26. Any person with access to materials produced in this Action and designated as "Confidential" under this Protective Order shall, at all times during the litigation, maintain the materials (and any copies thereof) in the utmost confidence. Any person in possession of another Party's Confidential Material shall exercise the same care with regard to the storage, custody, or use of Confidential Material as they would apply to their own material of the same or comparable sensitivity and must take reasonable precautions to protect Confidential Material from loss or misuse.

27. If a Party intends to use a natively-produced Document designated "Confidential" at any hearing or deposition, in motion practice, or for any other purpose, the Party shall use the corresponding image file with the Bates Number and Confidentiality Designation, unless the only reasonably useable format for that Document is native, and request to file it under seal as necessary, pursuant to Section VII.

28. No person to whom Confidential Material is made available under the terms of this Protective Order shall make use of such material for any purpose other than the prosecution or defense of the Action, and in no event shall such information be used for any business, competitive, personal, private, public, or other purpose. No person to whom Confidential Material is made available under the terms of this Protective Order shall disclose the contents of such material to any other person or entity, except as permitted by this Protective Order. This Protective Order has no effect upon and shall not apply to a Party's use of its own Confidential Material for any purpose.

29. Upon conclusion of this Action, no such person shall disseminate materials produced in this Action and designated as "Confidential" under this Protective Order publicly or use them in a manner inconsistent with this Protective Order.

30. Once the case proceeds to trial, the outcome of "Confidential" designations of any Document or Testimony admitted at trial will be determined by the Court at the final pretrial conference and/or the time of trial. With respect to any Document or Testimony designated under this Protective Order as "Confidential" and **not** admitted at trial, or admitted at trial in a manner that preserves the "Confidential" designation, within thirty (30) days after the final disposition of this Action, including appeals, each person or Party who has received information designated "Confidential" pursuant to Paragraph 12 shall be obligated to (a) return to counsel of record for the Producing Party all information designated "Confidential" and all copies made thereof that are not in custody of the Court and certify to the Producing Party that such return has been done; or (b) destroy or see to the destruction of all such Confidential Materials and writings related thereto, and certify to the Producing Party that such destruction has been done. Counsel of record for a Party shall ensure that any person to whom they provided Confidential Material pursuant to Paragraph 12 abide by the return and destruction obligations of this Paragraph.

31. To the extent that this Protective Order requires the destruction or return of Documents or Testimony at the conclusion of this Action, this requirement is not intended to require State Farm to return or destroy any Documents or Testimony that it is otherwise required to maintain and as set forth in Paragraph 15 above.

32. As to those materials that contain or reflect Confidential information, but that constitute or reflect counsel's work product and/or attorney-client communications, counsel of record for the Parties shall be entitled to retain such work product and/or attorney-client communications in their files in accordance with the provisions of this Protective Order, so long as it is clearly marked to reflect that it contains information subject to this Protective Order. Such materials may not be used in connection with any other proceeding or action. Counsel shall be

entitled to retain pleadings, affidavits, motions, briefs, other papers filed with the Court, transcripts of any deposition testimony and sworn statements of witnesses, together with all exhibits thereto, and the trial record (including exhibits) even if such materials contain Confidential Material, so long as such materials are clearly marked to reflect that they contain information subject to this Protective Order and may not be used in connection with any other proceeding or action. Nothing in this provision shall apply to any Document or deposition transcript subject to Paragraph 18 above.

## XI. MODIFICATION

33. Any of the undersigned may request the Court to modify or otherwise grant relief from any provision of this Protective Order. Nothing in this Protective Order shall operate as an admission by any Party that any particular Document or Testimony is, or is not, relevant to any claim or defense or admissible in evidence at the trial of this Action.

## XII. NO WAIVER

34. Nothing in this Protective Order shall be construed as a waiver of any rights by any Party with respect to matters not specifically provided for herein.

## XIII. ORDER SURVIVES TERMINATION OF ACTION

35. This Court shall retain jurisdiction to enforce this Protective Order and decide any issues relating to or arising from it. If the terms of this Protective Order are violated, the Court may grant such relief to the Producing Party as is just and necessary.

36. The terms and conditions of this Protective Order shall remain in full force and effect and shall survive the final resolution of this litigation unless the Protective Order is terminated or modified in writing by the Parties or by further order of the Court.

## XIV. MISCELLANEOUS

37. Any person or entity in possession of Confidential Material who is served with a

subpoena or a court order issued in other litigation that would compel disclosure of any information or items designated in this Action as "Confidential" shall:

a. within three (3) business days of receiving such order or subpoena give written notice by electronic mail to counsel for the Producing Party, unless prohibited by law or court order from doing so. The written notice shall identify the materials sought and enclose a copy of the subpoena or other process, unless ordered otherwise by a court of competent jurisdiction;

b. within three (3) days of receiving such order or subpoena, notify in writing the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

c. cooperate with respect to all reasonable procedures sought to be pursued by the Producing Party whose Confidential Material may be affected.

If the Producing Party timely seeks a protective order, the party served with the subpoena or court order shall not produce any Confidential Material before a determination by the court from which the subpoena or order issued, unless the party has obtained the Producing Party's permission. The Producing Party shall bear the burden and expense of seeking protection in that court of its Confidential Material, and nothing in these provisions should be construed as authorizing or encouraging any party or person to disobey a lawful directive from another court or violate any applicable state or federal law, or any rules or regulations.

38. Nothing in this Protective Order shall prohibit the Producing Party from producing its own Documents, even if such materials contain Confidential Material, in any other case or proceeding.

39. This Protective Order governs the exchange and use of Documents and Testimony before trial. The Parties may request appropriate orders addressing the use of Confidential Material at trial.

IT IS SO ORDERED THIS _____ day of ______________, 2025.

______________________________
Judge of the District Court

**AGREED AS TO FORM:**

____________________________
Timila S. Rother, OBA #14310
Paige A. Masters, OBA #31142
Amanda M. Finch, OBA #34650
**CROWE & DUNLEVY, P.C.**
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, OK 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
timila.rother@crowedunlevy.com
paige.masters@crowedunlevy.com
amanda.finch@crowedunlevy.com

***Attorneys for Defendants State Farm Fire and Casualty Company and Nancy Holcomb Insurance Agency, Inc.***

____________________________
Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 20341
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
**WHITTENBURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com

***Attorneys for Plaintiffs***

**Exhibit A**

**IN THE DISTRICT COURT OF COMANCHE COUNTY**
**STATE OF OKLAHOMA**

| | | |
|---|---|---|
| NEIL and LACY WEST,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY and NANCY HOLCOMB INS. AGENCY, INC.,<br><br>Defendants. | ) | Case No. CJ-2025-135 |

**CERTIFICATION**

1. My name is ______________________________________________.

I live at ________________________________________________________.

I am employed as (state position) ____________________________________

by (state name and address of employer) ______________________________.

2. I have read the Protective Order governing Confidential Material that has been entered in this case, and a copy of it has been given to me. I understand the provisions of the Order and agree to comply with and to be bound by its provisions – specifically and not limited to the obligations set forth in Paragraph 30 regarding the return or destruction of Confidential Material.

3. I further agree to submit to the jurisdiction of this Court for the purpose of enforcing the terms of the Protective Order, even if such enforcement proceedings occur after termination of this Action.

4. I declare under penalty of perjury that the foregoing is true and correct.

Executed this _________ day of ______________, 20____.

by___________________________

**Exhibit B**

**IN THE DISTRICT COURT OF COMANCHE COUNTY**
**STATE OF OKLAHOMA**

| | |
|---|---|
| NEIL and LACY WEST,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY and NANCY HOLCOMB INS. AGENCY, INC.,<br><br>Defendants. | Case No. CJ-2025-135 |

**NOTICE TO DEPOSITION WITNESS**

You are being shown one or more documents which have been designated as "Confidential" pursuant to an Order of this Court. Except for providing testimony at this deposition, you may not disclose these documents or their contents to any person other than the attorney who represents you at this deposition. Further, neither these documents nor their contents may be used by you for any purpose except that you may use them for your testimony in connection with this litigation. In any event, you are prohibited from using them for any business, competitive, personal, private, public, or other non-litigation purpose. The improper disclosure or use of these documents or their contents may result in the imposition of sanctions upon you by the Court. If you wish a complete copy of the Court Order, a copy will be provided to you upon request.

# EXHIBIT O

EXHIBIT O

*1064830006*

IN THE DISTRICT COURT OF COMANCHE COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| NEIL & LACY WEST,<br>Plaintiffs.<br>v.<br><br>STATE FARM FIRE & CASUALTY,<br>& NANCY HOLCOMB INSURANCE<br>AGENCY, INC<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CJ-2025-135 |

STATE OF OKLAHOMA
Comanche County
FILED in the
Office of the Court Clerk

APR 22 2026

By ______ Deputy

**JOURNAL ENTRY ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**NOW** on this 16th day of April, 2026 the Court, after hearing argument from counsel on April 10th, 2026 and considering the relevant filings finds as follows:

-Defendant is ordered to answer Interrogatory (Rog) Numbers: 5, 10, 18 and 19 but only for the timeframe from January 1st, 2019 to January 1st, 2025.

-Defendant is ordered to answer Request for Production (RFP) Number 4.

-Court sustains Defendant's objection to RFP number 5.

-Defendant is ordered to answer RFP number 6 but limited to documents in existence for the timeframe from January 1st, 2019 to January 1st 2025.

-Court sustains Defendant's objections to RFP numbers 30 and 40 as they are vague and ambiguous.

-Defendant is ordered to respond to RFP number 42.

-Court sustains Defendant's objections to Rog numbers 15 and 16.

-Defendant is ordered to answer Rog number 17.

-Court sustains Defendant's objections to RFP numbers 8, 9, 10, 11, and 12 as they are overly broad and unduly burdensome as requested.

-Court sustains Defendant's objection to RFP number 31 as it is too vague and no potential relevance to this case has been established.

-Defendant ordered to answer RFP number 34 as requested.

-Defendant ordered to answer Rog numbers 6, 7, 9, 13, 28 and 29.

-Court sustains Defendant's objection to RFP numbers 14 and 15 as they are not narrowly tailored and are overbroad as requested.

-Defendant ordered to produce documents requested in RFP numbers 21 and 22 for timeframe from 1-1-2019 to 1-1-2025.

-Defendant ordered to produce documents as requested in RFP numbers 23 and 24.

-Court sustains Defendant's objection to RFP number 27 as is too vague and ambiguous.

-Court sustains Defendant's objection to RFP number 29 as there has been no showing of relevance to this specific case.

-Court sustains Defendant's objection to RFP number 33 as it is not narrowly tailored and is overly burdensome as requested.

-Defendant ordered to produce documents requested in RFP numbers 35, 36, 37, 38, 39 and 43 for the time period beginning 1-1-2019 to 1-1-2025.

-Defendant ordered to respond to Rog number 21 from 1-1-2015 to 1-1-2025 and ordered to respond to Rog numbers 28 and 29 as requested.

-Defendant ordered to answer RFP number 26 for time period from 1-1-2019 to 1-1-2025.

-Defendant ordered to respond to RFP numbers 36(vi), 38(vi), and 43(vi) from 1-1-2019 to 1-1-2025.

-Defendant ordered to respond to RFP number 25 by producing "Personal Rules" and "Program Rules" that were "created" and "triggered" in this case.

-Defendant ordered to produce documents requested in RFP number 32 for timeframe from 1-1-2019 to 1-1-2025 and that same timeframe for RFP number 41.

-Defendant is ordered to answer Rog number 11 but only for Oklahoma claims from 1-1-2015 to 1-1-2025.

-Defendant is ordered to answer Rog numbers 12, 14, 20 and 21 but limited to timeframe from 1-1-2015 to 1-1-2025.

-Defendant is ordered to answer Rog numbers 24, 25, 26 and 27 but for timeframe from 1-1-2019 to 1-1-2025.

-Defendant is ordered to answer RFP number 7 but limited to timeframe from 1-1-2019 to 1-1-2025.

-Defendant is ordered to answer RFP number 13 but limited to timeframe from 1-1-2015 to 1-1-2025.

-Court sustains Defendant's objections to RFP numbers 16, 17 and 18 as they are too broad and not narrowly tailored.

-Defendant is ordered to answer RFP numbers 19 and 20.

-Defendant is ordered to answer RFP number 28 from 1-1-2019 to 1-1-2025.

-Court sustains Defendant's objection to Rog number 3 as Plaintiff has not shown any relevance to this case.

-Court sustains Defendant's objections to Rog numbers 22 and 23 as they are overly broad and ambiguous as proposed.

-Defendant is ordered to produce the documents as requested in RFP number 44 and will be subject to the Court approved Protective Order.

In arriving at the results above the court based its decisions on the pleadings, arguments from counsel and aids to the court that were provided during argument. Further, the court considered the factors outlined in the ***Werner*** case cited by Defendant and based upon 12 O.S. § 3226(B)(1)(a).

Defendant is to respond to discovery, as ordered herein, no later than June 1st, 2026. Clerk to mail a copy of this order, with certificate of mailing, to the attorneys for the parties.

**IT IS SO ORDERED.**

[signature]

JUDGE OF THE DISTRICT COURT

# EXHIBIT P

EXHIBIT P

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

________________________________

JENNIFER MOJICA and JULIO ARANDA, Husband and Wife,

Plaintiffs,

v.

STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation,

Defendant.

Civil Action No. 3:22-cv-01997 L (DDLx)

________________________________

VIDEOTAPED DEPOSITION OF

SANDRA L. MORIARTY

DATE: Wednesday, April 24, 2024

TIME: 10:45 a.m.

LOCATION: Sheppard, Mullin, Richter & Hampton LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111

OFFICIATED BY: Chris Spievak

JOB NO.: 6646160

to it, then --

THE WITNESS: I've -- I've testified to it.

MR. DAWSON: Okay.

THE WITNESS: I've testified it to it in Stickney that the conversation was limited.

This is -- you got no documents in Stickney responsive to a request for production of documents on the water initiative documents, and I said I have thousands of documents on Mojica that are responsive to that same request.

Didn't share what they were, I didn't share the contents, I didn't -- I just said there was documents.

BY MS. HOFFMAN:

Q And you're aware there was no request for production of quote, water initiative documents, end quote, in Mojica?

MR. DAWSON: Object. Form, foundation, misstates facts.

A I am not necessarily aware. I saw -- I was shown a little piece of a -- some sort of filing that Mr. Townsend apparently -- it was represented to me that Mr. Townsend filed that was asking for documents. So I don't -- I don't know. I don't get involved in those.

asking in the way she's using it, or in the way that Mr. Townsend used it in the filing?

MS. HOFFMAN: I'm asking the way Ms. Moriarty uses it.

THE WITNESS: The way I have considered the water initiative and was documents and information relating to the change in the way that State Farm handles water -- non-weather related water losses.

It was State Farm's PMK that used the term water initiative, so that's where I got that. I got it straight out of his deposition. He -- he said water initiative.

So obviously in the beginning we have no idea what -- I still have no idea really what makes up all the documents in the -- in the water initiative, or if that's really what it's called or anything like that, but.

BY MS. HOFFMAN:

Q You referred to a change. What change are you referring to?

A State Farm clearly changed the -- the way it handles -- handles water claims. Suddenly the -- it became apparent to me when the questions about the coffee cup -- which I went round and round in trying to remember which attorney that was, that all of a sudden

adjusters all over the place started asking policyholders, "How long do you think it would take to fill a coffee cup with water from the lake?"

And that was nothing that we had seen before. That was nothing -- and obviously, training -- training and questions change over time, but it was a curious question, and it was a question that I didn't agree with because I think it's super subjective.

But when the questions about rate and flow started showing up and the -- the number of denials increased dramatically. The number of denials, from my perspective, increased.

Q And what time frame is this you're talking about?

A Well I didn't start being an expert until 2018, but obviously I handled cases that predated, you know, they came to litigation later.

And -- and I should -- I should qualify that by saying I don't actually know how many more they deny than they used to, because I don't have access to that information, but it appeared to me that losses that were historically covered under the State Farm policy were no longer being covered under the State Farm policy without a corresponding change in the policy language.

Q And I think you said earlier that a policy

Q There's no documentation of the referral to Kevin Morris. Right?

A Correct.

Q No documentation of the referral to ServiceMaster, the initial referral.

A Correct.

Q No documentation from Kevin Morris?

A Correct.

Q No documentation from Fili Rojas?

A Correct.

Q No documentation even acknowledging that Fili Rojas had been there and did an inspection prior to an assignment being made to ServiceMaster. You didn't see that acknowledged anywhere in the claim file. Did you? Well --

A Yeah. I'm not sure. I think that she -- I mean, when she went out on the 15th, I mean she, meaning Ms. Wood, she was told that he was there, so she knew. And I believe maybe she was told previously.

I think that the QFC -- again, it's a blind quiz, but I believe the QFC. I think the policyholder indicated to Mr. Bivens that ServiceMaster had been out there on the 11th. So I do think she knew that he had been out there.

Q All right. I'm almost done. I just wanted to

ask you real quick about some questions that you were asked by Ms. Hoffman regarding your opinions as to the lack of guidance for claims handlers in applying the seepage leakage exclusion.

So first of all, just to make sure that this is clear, you are not expressing an opinion as to whether or not the -- the terms of this policy are legally or contractually valid or not.

Your testimony is that there is a lack of objective criteria and guidance for adjusters to properly interpret and apply this exclusion. Did I get that right?

A Sort of. I would say more --

THE WITNESS: I'm sorry. Did you want to object? It's -- it's a lack of guidance on the investigation and how to gather the facts needed to determine whether coverage applies and the lack of objective -- and we haven't really talked about Gerald Newlin.

I mean, even Gerald Newlin testified that there's -- he couldn't explain, you know, at this point, this is a covered loss really, and at this point, it's not, you know, on the continuous -- on the continuous scale.

There's a lot of talk about inundation by

people at State Farm. You know, inundation of water, and the policy doesn't say we're only going to cover inundation of water. The policy doesn't say, you know, what -- how much water has to come out.

So there has to be some sort of interpretation of what continuous, you know --

Q So because the policy itself doesn't define the scope of this exclusion, it's important for an insurance company to provide written guidelines and objective criteria for their claims handlers to correctly apply it?

MS. HOFFMAN: Object to form, leading, calls for legal conclusion.

A How about the fact that I have spent thousands of hours looking at these claims, you know, this claim and other claims, and I still can't tell you what the criteria is to exclude a claim based on continuous and repeated seepage and leakage.

I mean, obviously there are outliers on both sides, so there's one's the losses where everything is clearly just, you know, sinking into a puddle of goo because it's gone on so long, and then there's ones where, you know, there's 3 feet of water that happened.

Q Well you haven't seen any State Farm objective criteria, written guidelines that would inform an

adjuster where on that scale does the exclusion apply or not apply?

A Exactly, exactly. And nor can -- have I seen any testimony that clarifies that for me.

Q But you have seen internal State Farm documents that make water loss claims and applying the seepage leakage exclusion one of their performance measures. Something that they are reviewed on?

MS. HOFFMAN: Objection, lacks foundation.

BY MR. DAWSON:

Q Yeah. Let me try that again. So the -- the water initiative documents that you touched on earlier, you recall seeing documents relating to consulting services directed re-inspections?

A Correct.

Q All right. And you recall seeing the -- I think they call it a survey or a worksheet that has three yes or no questions on it?

A Correct.

Q One, I believe it's the first one, asks was the loss is not insured -- was loss is not insured == sorry. Forgetting language. Did the -- did the adjuster fail to apply or misapply loss as not insured?

A I believe that's roughly what it says.

Q Okay.

A Roughly what it says. I think it's basically did they make the correct coverage determination.

And I think, you know, this is interesting going back to the authority thing and -- and taking authority while they're -- to make sure that they're doing the claims right.

If they're doing re-inspections and they're moving authority around, it -- it stands to reason that that's -- and it's very important that we have all these meetings and all these documents saying we want to get our investigations correct, that the adjusters would be measured on how they make their coverage determinations.

And we haven't seen any of the close of the loop on that. Of will you take the re-inspections, and you say, "Okay. Well here's how you did this wrong." Right? Or here's how you did this right even, you know?

And -- and based upon how we determine the claim should be handled, you -- we feel you misapplied this -- this exclusion, which reasonably is going to happen, right, with all these re-inspections.

But we didn't get to see any of that or how it's used in evaluating the performance of the adjusters and the team managers and things like that.

And it's so important that we've had this huge

initiative, but there's -- there's a big chunk -- there's a couple chunks missing.

Q And so on that point that we haven't seen how it's used in terms of rating performance, you've reviewed performance reviews for Rose Wood and Gerald Newlin. Right?

A And Mr. Bivens.

Q And Mr. Bivens?

A Correct.

Q And within those performance reviews, you've seen the -- in the monthly performance reviews, Rose Wood's team manager confirming, whoever it was at the time, reviewed I believe it was 15 -- cause of loss 37 claims for Ms. Wood this month.

A Non-weather related plumbing losses, yeah. And it fluctuated at different times. How many the team managers were tasked with reviewing. At one point, they were set to review them all, and at another point, they would spot check it.

I also performed performance reviews for many, many years. So, you know, these -- these types of performance reviews have always existed. Right?

So if I have an adjuster who based upon State Farm's interpretation of a policy doesn't get it right, that's a super appropriate time to knock down their

authority and to document their performance review, and to counsel them on the correct interpretation.

And the idea that they knocked everybody's authority way down gives us, I think, a reasonable assumption that corporate was feeling that perhaps the California adjuster's interpretation of -- or handling of water claims wasn't where they wanted it to be.

So I would -- I think we're also missing all of that information. And how did this whole thing start in the first place, and what did they identify as the issues.

We can see that a lot of money is spent in California, Los Angeles County specifically, on non-weather related water losses. That doesn't necessarily surprise me because it's a very densely populated area and, you know, so forth, but --

Q So you say assumption, but in your rebuttal slash supplemental report on page 3, you quote from a document Bates numbered Mojica 1916.

A Number nine, yes.

Q There's a screenshot here of a table. The title at the top is "California Water Non-Weather Total Personal and Commercial Non-Catastrophe October 2018." You see that?

A Yes.

Q And we don't have time to go into the weeds on all of these documents, but do you recall seeing an email relating to this table that is reporting on the success of efforts to control losses on cause of loss 37, non-weather related, non-freeze, non-catastrophe water loss claims?

A Different than the one I quoted with footnote seven? Because there -- there was more than one reference. This one says overall, we're paying fewer smaller dollar losses in California, and there are emails that talk about payments.

Yeah. The one with the graphs on it, is that the one you're talking about?

Q Yes.

A Sorry. It's very warm in here.

Q Yeah. Well before we all overheat, did you see within the emails that we're talking about some discussion about re-inspections were going to be used as a tool in part of these water initiative efforts?

A Yes. They're -- both re-inspection and those file surveys, file -- might be getting it wrong. They were --

THE OFFICER: A file?

THE WITNESS: A file. Sorry. I'm trying to remember what the exact term was. It -- was it a

file survey?

There were nine file surveys that had taken place prior to this email, and the -- the one that I believe you're referring to is the email from Joey -- is that his name? A lot to remember in here.

So from the corporate claim consultant to the section managers that had all the graphs showing the amount paid for different losses and how it had responded in -- how it had moved in response to the implementation of the water initiative.

And then factoring in some certain things that had happened on frequency and -- and different things like that.

It's clearly that they were monitoring the indemnity dollars associated with these types of claims, meaning non-weather related plumbing water losses.

In relation to the water initiative and the re-inspection program and the file surveys and the -- all of the different aspects of this that they put in place.

BY MR. DAWSON:

Q And the indemnity dollars that you mentioned, they were discussing both the severity of these claims and the frequency of them?

A Correct, correct. And so you factor in the paid claims and non-paid claims, loss frequency. Whether you have an upshoot in the number of claims coming and then how much the paid claims -- what they're paying on those paid claims.

Q And as part of these efforts, again, there was the sort of repurposing of the re-inspection department. And they were at one point doing a number of cause of loss 37 reviews. I believe it was 150 a month. Do you recall seeing that?

A Yes.

Q And there was also, as we discussed, the quotas for team managers to review these same types of claims every month in the performance reviews of claim specialists.

A Correct.

Q And in those performance reviews, do you recall seeing mentioned of the results of the re-inspections, whether or not there was a negative result or not?

A I want to look kind of again because it's a lot and it's the end of the day, but off the top of my head, I cannot recall seeing any sort of definitive measurements of the results of re-inspections on those individual claim handlers.

Q And the -- the use of authority, the decrease in authority and increases to claim specialist authority, that was used as a tool to help with these efforts. Right?

MS. HOFFMAN: Objection, vague.

A Well it uses a mechanism for, you know, a checkpoint. So it -- it assures that, you know, State Farm has an actual mechanism on their ACS system that you set it. You set what adjusters authority level is, and it stops them.

You can't -- you can't pay over your authority level. When I first started, you could -- I actually accidentally paid over my authority one time because there was -- there was no checkpoints. I had a checkbook, and I didn't add it up right.

So that used to happen, but it can't happen now. So it assures that if an adjuster wants to pay a claim and it goes over a certain amount, or a team manager wants to pay a claim and it goes over $50,000, it assures that the next set of eyes and -- gets on it.

Q In your experience looking at these claims, do you have a sense of what the average severity of a non-weather related run-of-the-mill water loss claim is?

MS. HOFFMAN: Objection, lacks foundation, calls for speculation.

A It's very unflattering that you think that I can remember those little charts. I cannot remember the charts. I would put it under $10,000 probably, but that is, at this point, a -- a pretty -- pretty wild guess.

Q Well yeah. I think that we have it in one of these charts.

A Do we? We probably do.

Q But we don't -- we don't need to --

A We probably do.

Q And just to clarify one point. The water initiative involved, from the documents reviewed, both of the teams involved in handling this claim, HCCS stewardship and California proximity.

A I'm sorry. What was the question about that?

Q That the water initiative documents you saw indicated that the initiative, these company policies applied to those teams, both of them.

MS. HOFFMAN: Objection. Vague as to time.

A It -- it is my understanding, I think there's a little bit different criteria for each of them, because based upon our job responsibilities, but --

Q Right. Yeah. I mean, there's -- there are a lot of differences and details that I'm not going to dive into right now, but --

A And I was off on the severity. It's right -- it's right here. Sorry.
Q And what does it say?
A It's -- well LA County is 25,936 in October of 2018, and it has -- it has the other counties, but the average it appears to be 18,862 for California for the year to date paid severity. So that's paid claims.
Q And how does that compare to the default authority levels that were set for LA County?
A I'd have to go back and -- and look at it because it's my recollection that at one point, they were dropped to 15,000, and then in another point they were 25,000.
Q As far as the use of authority, he said that that can be a useful tool to -- to make sure claims are being handled accurately and decided correctly. Right?
A Correct. Yeah. I don't have a --
Q But you'd agree that if it's instead being used as a way to drive claims decisions based on business goals, that that can result in some -- strike that.
Do you agree that -- that there is a way in which authority decreases or increases might be used in a way that sort of puts the thumb on the scale at the claims handler level so that it's impacting decisions in

favor of the company's financial interests?

A I think --

MS. HOFFMAN: Object to form, foundation, and speculation.

BY MR. DAWSON:

Q Well let me ask you this. If that's true, that would be bad. Right?

A I agree. I think it's clear from the charts and things that we were provided with that the overreaching goal, and remember that my 24 years with State Farm, I was there for a lot of different programs that came from corporate when I was both an adjuster and a team manager.

And usually when those -- especially when it's presented to managers, the goals and the reason for achieving the goals are usually pretty clearly spelled out to those managers.

And part of what my opinion is on lowering the authority is to -- to put the claim payment decisions in the hands of the -- of the team managers instead of the adjusters, and to sort of recalibrate how -- how that's done.

Q And you haven't seen any indication that the documents you reviewed, whether in this case or others relating to the -- the reason, sort of the inception of

the water initiative, that there was a determination that these claims were being overpaid or incorrectly paid. Have you seen anything like that?

A In the expert files that I have handled and the documents that I have received, I haven't seen that. I have seen deposition testimony from employees of State Farm corporate. It's in my documents that I produced.

And I can never -- I'm not going to remember the woman's name today, but she testified that she was the head of something that was called the contents material spend review in corporate headquarters, and that it identified five different work streams of losses.

That she -- she testified that those five different work streams were where State Farm had identified sort of excess.

Maybe -- maybe problems with too much -- I'm not speaking very clearly at this -- at this time of night, but the five different work streams where State Farm had identified that perhaps excess money was being paid out.

And one of those work streams was water, one was hail, one was, I believe, contents. There -- there were five of them, and water -- water was one of them. So water has certainly always been sort of one of the

focuses, and that was a while back.

And she testified, you know, that they had hired McKinsey & Company to come in and consult with State Farm over this issue and to, you know, come up with strategic plans to deal with these five work streams.

I've only seen an excerpt and it's -- it's all in there, and a filing that went along with the excerpt where the attorney wasn't getting what he needed from her, you know, in terms of a PMK deposition. But historically, that's how it's worked.

Q Other than that testimony, have you seen any evidence that State Farm did any kind of a study or looked into and concluded that they were overpaying COL 37 claims?

A I believe in my rebuttal report, I indicated that one of the things, one of the gaping holes in this -- these documents that we're getting are the basis for the whole program to begin with. So you don't -- a program doesn't just appear out of nowhere.

It doesn't -- someday somebody doesn't wake up and say, "I'm going to start this water initiative," and/or focus, or whatever they call it. So it -- it's based upon something, and we do not have any information.

We know corporates involved because we have the corporate claim consultants reporting to the section managers and so forth.

So -- so we know it's coming from them, and we don't have any information to say what it's relying on, but you're also not going to start this huge initiative just because for no reason.

Q And so tell me if I'm understanding correctly. Is that to say that an initiative like this should have some sort of a basis?

A Of course, and I will guarantee you that this initiative has a basis. It has -- it's based upon some study, some report, some identification that was either done.

Q And I don't want you to -- to speculate, but I just want -- I'm asking if an initiative like this, in your opinion, should be based on some legitimate finding of a need to correct claims handling or claims decisions? A problem.

A Sure, sure. And so first off, I don't really think it's speculation on my part to say that it's -- it's based on something coming out of corporate because I was certainly involved in -- I mean, I was there for the whole PP&R stuff, I was there for Campbell and Singh and all of that. So --

CONFIDENTIAL

THE OFFICER: I'm sorry. Campbell?

THE WITNESS: And Singh, S-I-N-G-H. So we know that that's where it comes from. We also know the testimony of the corporate employee who says that it's coming out of corporate and they're identifying these weak areas, but --

BY MR. DAWSON:

Q Just to clarify --

A Okay. It's okay to base it on a problem. You -- you're not going to have a program without a problem.

Q Okay. I'm just asking if we know -- regardless of where it comes from.

A Okay.

Q And the reason why, I'm just wondering if in your opinion, when an insurance company decides to implement an initiative that comes with tight controls, a sort of reshaping of claims handler behaviors and decisions, and there's going to be close monitoring all directed towards a specific type of claim, that shouldn't be done for the purpose of simply saving money. It shouldn't be arbitrary in other words?

MS. HOFFMAN: Object to form, lacks foundation, vague, calls for speculation.

A It -- it shouldn't be arbitrary, and it

wouldn't be arbitrary. It'd be a waste of time and resources in the insurance company.

I don't think that there's something inherently wrong with examining your claims operation and determining whether or not your adjusters are properly making claims interpretation, properly making claims, coverage decisions, paying what they owe.

The -- the part that concerns me on this is the part that we don't see because we're not seeing -- we don't see what the -- I mean, we -- we can see some indication that it's to tighten up their investigations to make sure their investigations are correct, but we don't really see where that came from.

So I -- I mean, maybe I'm misunderstanding your -- your question, but --

Q I think so, but that's okay. Let me just -- I'm going to wrap it up with this question.

A Okay. Sorry.

Q In terms of goals, like closure goals for claims, those are not inherently bad. Right? I think you testified earlier that --

A They're not -- they're not inherently bad.

Q Right? Okay. So if they are arbitrary or unrealistic closure goals, can there be a problem with that?

A Yes. And I also think incentivizing adjusters to do things very quickly can create a problem very quickly, so yes.

Q All right. Because the performance goals and the metrics that claims handlers are measured on will have an impact on their claim's decisions?

A Right. I'm sorry.

MS. HOFFMAN: Objection, calls for speculation.

THE WITNESS: I'm sorry. Yes. And let me just say this. If the purpose of the water initiative, or whatever it's called, was indeed to correct claim handling issues, investigation issues, make sure they're paying what they're owed, we would expect to see those measures on the performance reviews as drivers of the -- the performance evaluations of the adjusters and the team managers who are handling the claims.

So the -- the performance goals for these adjusters, if this is the importance of this program, and if we're saying we need to make sure we're investigating and paying what we owe for these claims, then it would stand to reason that that's what you would put on their performance reviews.

That's what you would grade them on when

it comes time to do their evaluations instead of grading them on how fast you can close the claim or how long you stay on the phone because those things can -- they can be counter to doing the other.

Q And just in terms of your qualifications for these opinions, you have experience as a claim supervisor or team manager at State Farm. Right?

A Yes.

Q At various levels at State Farm?

A Well I was an adjuster and then I was a team manager, so just the -- only one time did I do the evaluations, but during the whole time, I was a claim superintendent at the time. A team manager. I did performance evaluations on all my employees.

And they started out annually, then they went semi, and then they went quarter. Now they're doing it monthly. I'm glad I don't have to do this monthly.

MR. DAWSON: Okay. That's all I have.

MS. HOFFMAN: Okay. I do have just a few follow-up questions.

EXAMINATION

BY MS. HOFFMAN:

Q I just want to confirm. You would agree that ServiceMaster cannot perform any work in a home without the homeowner's approval; correct?

EXHIBIT Q

EXHIBIT Q

**ABIR COHEN TREYZON SALO, LLP**
KEVIN M. POLLACK (SBN 272786)
LINDSEY DOWNEY (SBN 296897)
16001 Ventura Blvd., Suite 200
Encino, CA 91436
Telephone: (833) 228-7529
Facsimile: (424) 288-4368
kpollack@actslaw.com
ldowney@actslaw.com

*Attorneys for Plaintiffs*
MARC SAVAS AND ALICIA SAVAS

**Electronically FILED by Superior Court of California, County of Los Angeles 2/18/2025 12:00 AM David W. Slayton, Executive Officer/Clerk of Court, By J. Tang, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

MARC SAVAS, an individual; and ALICIA SAVAS, an individual

Plaintiffs,

vs.

STATE FARM GENERAL INSURANCE COMPANY; and DOES 1-50 inclusive,

Defendants.

**CASE NO.: 21STCV03286**
Complaint Filed: 1/26/2021
Trial: 9/10/2025
Hon. Teresa A. Beaudet [Dept 50]

**NOTICE OF MOTION AND MOTION FOR ORDER TO COMPEL DEFENDANT TO PROVIDE FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS, SETS 2 AND 3; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR MONETARY SANCTIONS**

*[Filed concurrently with Separate Statement, Declaration of Lindsey Downey, and [PROPOSED] Order]*

Hearing Date: May 12, 2025
Time: 10:00 a.m.
Dept.: 50

**Reservation ID: 684450831040**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 12, 2025 at 10:00 a.m., or as soon thereafter as the matter can be heard in Department 50 of the above-entitled Court located at 111 N Hill St, Los Angeles, CA 90012, Plaintiffs MARC SAVAS and ALICI SAVAS ("Plaintiffs"), will and hereby do move for an Order to compel Defendant STATE FARM GENERAL INSURANCE COMPANY ("Defendant") to provide further responses to Plaintiffs' Requests for Production of Documents, Sets Two and Three, with respect to Request for Production ("RFP") Nos. 74, 75, 77, 80, 84, 86, 87, 90, 91, 92, 93, 94, 95, 98, 99, 100, 101, 108 and 109.

Plaintiff further requests the Court impose monetary sanctions against Defendant and its attorneys in the sum of $4,725 for the reasonable attorneys' fees and costs incurred in bringing this Motion.

This Motion is made pursuant to California Code of Civil Procedure Sections 2023.010, 2031.300 and 2031.310, on the following grounds:

**1.** State Farm improperly limiting the scope of its responses to only those materials provided to the claim adjusters in the instant action. This Court has already ruled that Plaintiffs are entitled to conduct discovery pertaining to State Farm's "Water Loss Initiative" "Water Loss Forum" and its policies, procedures, related documents and training concerning residential water loss claim handling. The information being requested by Plaintiffs in their requests for production of documents, sets two and three, all relate to State Farm's Water Loss Initiative and will assist Plaintiffs in examining State Farm's policies, procedures, and practices with respect to handling water damage claims before, during, and since the implementation of State Farm's Water Loss Initiative. This information is reasonably calculated to lead to the discovery of admissible evidence regarding the manner in which State Farm handles, investigates, and adjusts water damage claims, and how State Farm's handling of water damage claims has changed over time since the implementation of its water initiative in 2017 and how such affected Plaintiffs'

claim. This goes well beyond materials that were provided to claims adjusters in the instant action. Moreover, the mere fact that claims adjusters were not provided with certain Water Loss Initiative documents could be highly relevant to Plaintiffs' claims and burden of proof in pursuing claims against Defendant State Farm General Insurance Company, alleging State Farm failed to comply with its contractually-obligated coverage for the loss sustained under a first party residential policy, and for its bad faith investigation and adjustment of Plaintiffs' claims. Limiting the scope of this request to only those materials provided to the claims adjusters in the instant action would deprive Plaintiffs of this important and highly relevant and discoverable information.

2. State Farm continues to withholding documents that have been requested by Plaintiffs without a privilege log and proper disclosure as required by C.C.P. § 2031.240.

3. State Farm has failed to comply with the requirements of C.C.P. §§ 2031.210, et. seq. in that the responses to requests for production nos. 74 and 75 contain ambiguous and conflicting statements as to whether or not State Farm's search for requested documents has been completed, if certain documents will be produced, and/or when the requested documents will be produced after State Farm completes its search at some unknown point in time.

4. State Farm has failed to provide Plaintiffs with any explanation whatsoever as to why certain specifically identified documents have not been produced.

/ / /

/ / /

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying Separate Statement, the Declaration of Lindsey Downey, all pleadings and documents on record in this action, the oral argument of counsel to be made at and during the hearing on this application, and on such other evidence that may be offered at the hearing.

DATED: February 17, 2025

**ABIR COHEN TREYZON SALO, LLP**

By: ______________________________
KEVIN M. POLLACK
LINDSEY DOWNEY
Attorneys for Plaintiffs Marc & Alicia Savas

# TABLE OF CONTENTS

I. INTRODUCTION ..... 7
II. PROCEDURAL AND FACTUAL BACKGROUND RELEVANT TO THIS MOTION ..... 8
III. MOTION IS TIMELY ..... 10
IV. PLAINTIFFS HAVE MADE A GOOD FAITH EFFORT TO RESOLVE THE ISSUES ADDRESSED HEREIN ..... 10
V. LEGAL AUTHORITY TO GRANT MOTION TO COMPEL FURTHER RESPONSES ..... 11
VI. ARGUMENT ..... 11
A. State Farm Has Improperly Limited The Scope Of Its Responses To Only Those Materials Provided To The Claim Adjusters In This Case ..... 11
B. State Farm Has Failed To Disclose Documents Being Withheld As Required By Code Of Civil Procedure Section 2031.240 ..... 14
C. State Farm's Responses to Requests for Production Nos. 74 and 75 Include Inconsistent and Conflicting Statements ..... 15
D. State Farm Has Failed To Produce Responsive Documents That Are Identified, Discussed or Otherwise Referenced Within The Documents State Farm Has Produced ..... 16
VII. MONETARY SANCTIONS SHOULD BE AWARDED TO PLAINTIFFS ..... 18
VIII. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

Code Civ. Proc. § 1010.6 .......... 10

Code Civ. Proc. § 2016.040 .......... 10

Code Civ. Proc. § 2031.210 .......... 15

Code Civ. Proc. § 2031.220 .......... 15

Code Civ. Proc. § 2031.230 .......... 16

Code Civ. Proc. § 2031.240 .......... 14, 19

Code Civ Proc. § 2031.310 .......... 10, 11, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

After discovering State Farm had improperly concealed information and documents from Plaintiffs Marc and Alicia Savas, on June 11, 2024, the Court granted Plaintiffs' motion to reopen discovery for the limited purpose of investigating State Farm's "Water Loss Initiative" "Water Loss Forum" and its policies, procedures, related documents and training concerning residential water loss claim handling.

State Farm has improperly limited the scope of its responses to only those materials provided to the claim adjusters in the instant action. This Court has already ruled that Plaintiffs are entitled to conduct discovery pertaining to State Farm's "Water Loss Initiative" "Water Loss Forum" and its policies, procedures, related documents and training concerning residential water loss claim handling. The information being requested by Plaintiffs in their requests for production of documents, sets two and three, that are at issue in this motion all relate to State Farm's Water Loss Initiative and will assist Plaintiffs in examining State Farm's policies, procedures, and practices with respect to handling water damage claims before, during, and since the implementation of State Farm's Water Loss Initiative. This information is reasonably calculated to lead to the discovery of admissible evidence regarding the manner in which State Farm handles, investigates, and adjusts water damage claims, and how State Farm's handling of water damage claims has changed over time since the implementation of its water initiative in 2017 and how such affected Plaintiffs' claim. This goes well beyond materials that were provided to claims adjusters in the instant action. Moreover, the mere fact that claims adjusters were not provided with certain Water Loss Initiative documents could be highly relevant to Plaintiffs' claims and burden of proof in pursuing claims against Defendant State Farm General Insurance Company, alleging State Farm failed to comply with its contractually-obligated coverage for the loss sustained under a first party residential policy, and for its bad faith investigation and adjustment of Plaintiffs' claims.

Despite the Court granting Plaintiffs leave to conduct this limited discovery, and the Parties attending an informal discovery conference, State Farm continues to engage in gamesmanship and delay tactics in an effort to deny Plaintiffs a fair and reasonable opportunity to complete this limited

discovery in a timely manner before trial by (1) withholding documents that have been requested by Plaintiffs without a privilege log and proper disclosure as required by C.C.P. § 2031.240, (2) failing to remove inconsistent statements within its responses that leave Plaintiffs without a clear understanding as to whether or not certain documents will or will not be produced, and (3) failing to provide Plaintiffs with any explanation whatsoever as to why certain specifically identified documents have not been produced.

Plaintiffs have been forced to bring this motion to compel further responses and are requesting sanctions against State Farm and/or its attorneys of record at THARPE & HOWELL, LLP in the amount of $4,725.

## II. PROCEDURAL AND FACTUAL BACKGROUND RELEVANT TO THIS MOTION

This action arises out of an incident that occurred on or about September 5, 2020 wherein Plaintiffs' home sustained significant damage after a water pipe burst. (Declaration of Lindsey Downey ("Downey Decl.") at ¶ 2.) Plaintiffs are pursuing claims against Defendant State Farm General Insurance Company, alleging State Farm failed to comply with its contractually-obligated coverage for the loss sustained under a first party residential policy, and for its bad faith investigation and adjustment of Plaintiffs' claim. (Id.)

With the exception of two depositions and expert discovery, fact discovery in this action has been closed since July 31, 2023. (Downey Decl. at ¶ 4.) On April 16, 2024, Plaintiffs filed a motion to reopen discovery for a limited purpose based on the allegation that State Farm had improperly concealed information pertaining to its "Water Loss Initiative", "Water Loss Forum" and its polices, procedures, related documents and training concerning residential water loss claim handling during discovery efforts in this matter. (Downey Decl. at ¶ 5.) This motion was brought by Plaintiffs after becoming aware of a State Farm initiative, commonly referred to as the "Water Loss Initiative" that began sometime around 2017 as part of an effort by State Farm to ensure consistent handling of water loss claims throughout California. (Id.) It also came to light that there are a number of State Farm documents pertaining to this "Water Loss Initiative" a "Water Loss Forum" and specific claim handling policies, procedures, guidelines and training concerning the handling of residential water loss claims and that State Farm provided training to claims personnel on these topics. (Id.) Topics

included the quality first contact, gathering the facts of loss, plumbing issues, claims involving wood floors, additional investigation, determining coverage, estimates, and damage evaluation. (Id.) In 2020, the settlement authority of claims handlers on water loss claims was temporarily reduced. (Id.) During that period, team managers reviewed claims specialists' water loss claims for conformance with quality claim handling expectations. (Id.)

On June 11, 2024 the Court granted Plaintiffs' motion for leave to reopen discovery for the limited purpose of investigating Defendant State Farm's "Water Loss Initiative" "Water Loss Forum" and its policies, procedures, related documents and training concerning residential water loss claim handling. (Downey Decl. at ¶ 6, Ex. 1.) Plaintiffs promptly served State Farm with the following additional discovery in accordance with the Court's June 11, 2024 order: (a) request for production of documents (set two), served on June 14, 2024, and (b) request for production of documents (set three), served on July 3, 2024. (Downey Decl. at ¶¶ 7-9, Ex. 2 &3.) State Farm served responses to Plaintiffs' request for production of documents (sets 2 and 3). (Downey Decl. at ¶ 10.) Plaintiffs took issue with State Farm's discovery responses and after meet and confer efforts failed, the Parties appeared for an informal discovery conference ("IDC") on November 5, 2024. (Downey Decl. at ¶¶ 10, 11, Ex. 4.) Pursuant to the IDC discussions, on November 5, 2024, the Court ordered in relevant part as follows:[1]

> "On or before November 26, 2024, Defendant will serve verified further supplemental responses to request for production set 2 two numbers 75 through 77, 80 and 84 and set 3 regarding the removal of the privilege and work product objections adding any explanations as to the scope and time frame, and clarifying bates numbers and Defendant's interpretation of the documents requested (i.e., clarification of the document produced which may not match exactly the description provided by Plaintiff)."

At the IDC, the Parties also agreed to limit the time period for the production of documents to January 1, 2017 through 2021. (Downey Decl. at ¶¶ 13, 16, Ex. 5.)

In accordance with the Court's IDC Order, State Farm served supplemental responses to Plaintiffs' requests for production of documents ("RFP"), sets 2 and 3, on November 25, 2024 via

[1] A copy of the Court's November 5, 2024 IDC Order is attached as **Exhibit 5** to the supporting Declaration of Lindsey Downey filed concurrently herewith. (Downey Decl. at ¶¶ 12-16, Ex. 5.)

email. (Downey Decl. at ¶ 17.) On January 2, 2025, Plaintiffs' counsel sent a meet and confer communication to State Farm's counsel regarding its supplemental responses to Plaintiffs' RFP, sets 2 and 3. (Id.) State Farm served its further supplemental responses via email on January 31, 2025. (Downey Decl. at ¶ 18, Ex. 6.)

State Farm continues to (1) improperly limit the scope of its responses, (2) fail to provide a privilege log or otherwise identify documents being withheld as required by Code of Civil Procedure ("CCP") § 2031.240(b), (3) improperly take the position that certain documents may or may not be produced at some unknown point in time, and (4) fail to produce responsive documents that are identified, discussed or otherwise referenced within the documents State Farm has produced.

Plaintiffs have exhausted all efforts to resolve these discovery disputes informally and are now seeking court intervention through this motion to compel further responses.

## III. MOTION IS TIMELY

Pursuant to C.C.P. § 2031.310(c), a motion to compel must be brought "within 45 days of the service of the verified response, or any supplemental verified response, or on or before any specific later date to which the demanding party and the responding party have agreed in writing." This deadline is extended by two (2) court days if the discovery responses are served via email. (Cal. Code Civ. Proc. § 1010.6.)

The State Farm RFP responses at issue in this motion were served on Plaintiff via email on January 31, 2025. (Downey Decl. at ¶ 19, Ex. 7.) Thus, Plaintiffs' deadline to file a motion to compel is March 19, 2025.

## IV. PLAINTIFFS HAVE MADE A GOOD FAITH EFFORT TO RESOLVE THE ISSUES ADDRESSED HEREIN

Code of Civil Procedure section 2031.310(b)(2) provides that a motion to compel further responses "shall be accompanied by a meet and confer declaration under section 2016.040." A meet and confer declaration in support of a motion shall state facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion. (Code Civ. Proc. § 2016.040.)

As detailed above, Plaintiffs' counsel has meet and conferred with Defendant regarding the issues in this Motion to no avail. (Downey Decl. at ¶¶ 10-18, Exs. 4, 5 & 6.) Thus, judicial intervention is now necessary and proper.

## V. LEGAL AUTHORITY TO GRANT MOTION TO COMPEL FURTHER RESPONSES

The Court is authorized to grant a motion to compel further discovery responses to requests for production of documents pursuant to Code of Civil Procedure section 2031.310(a), which states in pertinent part:

> "On receipt of a response to a demand for inspection, copying, testing, or sampling, the demanding party may move for an order compelling further response to the demand if the demanding party deems that any of the following apply:
>
> (1) A statement of compliance with the demand is incomplete.
>
> (2) A representation of inability to comply is inadequate, incomplete, or evasive.
>
> (3) An objection in the response is without merit or too general."

As further explained herein, State Farm's responses to Request for Production of Documents, Set two and three, fall squarely within the purview of CCP section 2031.310(a)(3), and Plaintiffs have properly brought forth this motion to compel further responses.

## VI. ARGUMENT

### A. State Farm Has Improperly Limited The Scope Of Its Responses To Only Those Materials Provided To The Claim Adjusters In This Case

State Farm has limited the scope of its responses, "Based on the Court's agreement to limit the relevant timeframe and materials to those provided to the claim adjusters in this case, and with those limitations in place for the request, State Farm withdraws its objections on the grounds of the attorney-client privilege and work product privilege and no documents have been withheld on those grounds." (Downey Decl. at ¶ 19, Ex. 7.) **This is a blatant misrepresentation of the discussions that occurred at the 11/5/2024 IDC and the resulting Court order**. There has not been any agreement to limit the scope of State Farm's further responses to only those materials provided to the claim adjusters in this case. (Downey Decl. at ¶¶ 15-16, Ex. 5.)

On June 11, 2024 the Court granted Plaintiffs' motion for leave to reopen discovery for the limited purpose of investigating Defendant State Farm's "Water Loss Initiative" "Water Loss Forum" and its policies, procedures, related documents and training concerning residential water loss claim handling. (Downey Decl. at ¶ 4, Ex. 1.) This Court order did not limit the scope of Plaintiffs' discovery to documents and information provided to the claim adjusters in this case. (Downey Decl. at ¶ 6, Ex. 1.)

Furthermore, on November 5, 2025, the Parties attended an Informal Discovery Conference ("IDC") regarding State Farm's discovery responses at issue in this motion. The Court ordered in pertinent part as follows:

> "1. On or before November 26, 2024, Defendant will serve verified further supplemental responses to request for production set 2 two numbers 75 through 77, 80 and 84 and set 3 regarding **the removal of the privilege and work product objections adding any explanations as to the scope and time frame, and clarifying bates numbers and Defendant's interpretation of the documents requested (i.e., clarification of the document produced which may not match exactly the description provided by Plaintiff).**
>
> 2. The parties will meet and confer regarding whether they can agree to **defer some of the discovery, such as the deposition of Mr. Dawson, and documents after 2021 until a date later in the proceedings without waiving their right to seek such discovery.** If unsuccessful, Defendant may reset the motion for protective order on a date after January 1, 2025." (emphasis added, Downey Decl. at ¶¶ 12, 16, Ex. 5.)

In accordance with the above IDC order, Plaintiffs have deferred any production of documents by State Farm after 2021 at this time. (Downey Decl. at ¶ 13.) However, at no point time did Plaintiffs agree to limit the scope of their requests to only those materials provided to the claims adjusters in the instant case, nor has there been any court order suggesting such a limitation was agreed to. (Downey Decl. at ¶¶ 15, 16, Ex. 5.)

State Farm's limitation to only those materials provided to the claim adjusters in this case is highly problematic. Plaintiffs filed their motion to reopen discovery for a limited purpose after becoming aware of a State Farm initiative, commonly referred to as the "Water Loss Initiative" that began sometime around 2017 as part of an effort by State Farm to ensure consistent handling of water

loss claims throughout California. (Downey Decl. at ¶ 5.) It also came to light that there are a number of State Farm documents pertaining to this "Water Loss Initiative" a "Water Loss Forum" and specific claim handling policies, procedures, guidelines and training concerning the handling of residential water loss claims and that State Farm provided training to claims personnel on these topics. (Id.) Topics included the quality first contact, gathering the facts of loss, plumbing issues, claims involving wood floors, additional investigation, determining coverage, estimates, and damage evaluation. (Id.) In 2020, the settlement authority of claims handlers on water loss claims was temporarily reduced. (Id.) During that period, team managers reviewed claims specialists' water loss claims for conformance with quality claim handling expectations. (Id.) **This Court has already ruled that Plaintiffs are entitled to conduct discovery pertaining to State Farm's "Water Loss Initiative" "Water Loss Forum" and its policies, procedures, related documents and training concerning residential water loss claim handling.** (Downey Decl. at ¶ 6, Ex. 1.) **As explained herein, this goes well beyond materials that were provided to claims adjusters in the instant action.**

The information being requested by Plaintiffs in their requests for production of documents, sets two and three, all relate to State Farm's Water Loss Initiative and will assist Plaintiffs in examining State Farm's policies, procedures, and practices with respect to handling water damage claims before, during, and since the implementation of State Farm's Water Loss Initiative. (Downey Decl. at ¶¶ 8, 9, 20, Exs. 2 & 3.) This information is reasonably calculated to lead to the discovery of admissible evidence regarding the manner in which State Farm handles, investigates, and adjusts water damage claims, and how State Farm's handling of water damage claims has changed over time since the implementation of its water initiative in 2017 and how such affected Plaintiffs' claim.

Moreover, the mere fact that claims adjusters were not provided with certain Water Loss Initiative documents could be highly relevant to Plaintiffs' claims and burden of proof in pursuing claims against Defendant State Farm General Insurance Company, alleging State Farm failed to comply with its contractually-obligated coverage for the loss sustained under a first party residential policy, and for its bad faith investigation and adjustment of Plaintiffs' claims. Limiting the scope of

this request to only those materials provided to the claims adjusters in the instant action would deprive Plaintiffs of this important and highly relevant and discoverable information.

### B. State Farm Has Failed To Disclose Documents Being Withheld As Required By Code Of Civil Procedure Section 2031.240

On November 5, 2025, State Farm was ordered to serve further responses that "remov[ed] the privilege and work product objections adding any explanations as to the scope and time frame". (Downey Decl. at ¶¶ 12, 16, Ex. 5.) As explained above in Section VI.A. State Farm has improperly limited its withdrawal of the attorney-client and work product privileges to the relevant timeframe[1] and materials to those provided to the claim adjusters in this case.

Code of Civil Procedure section § 2031.240 states in pertinent part"

> "(c) (1) **If an objection is based on a claim of privilege or a claim that the information sought is protected work product, the response shall provide sufficient factual information for other parties to evaluate the merits of that claim, including, if necessary, a privilege log.**
>
> (2) It is the intent of the Legislature to codify the concept of a privilege log as that term is used in California case law. Nothing in this subdivision shall be construed to constitute a substantive change in case law." (emphasis added.)

Again, Plaintiffs dispute any representation by State Farm that there was an agreement to limit the scope of Plaintiffs requests for production to only those materials provided to the claims adjusters in the instant action. As such, if State Farm is withholding responsive documents pursuant to the attorney-client or work product privileges, C.C.P. § 2031.240 requires State Farm provide "sufficient factual information for other parties to evaluate the merits of that claim, including, if necessary, a privilege log." (Code Civ. Proc. § 2031.240.) State Farm has failed and refused to provide a privilege log or sufficient factual information in any form about documents being withheld.

State Farm must provide further response that remove the improper limitation of its withdrawal of the attorney-client and work product privileges and produce additional responsive documents or provide a privilege log in compliance with C.C.P. § 2031.240.

---

[1] Plaintiffs acknowledge an agreement to limit the time frame and production of responsive documents through 2021, with a reservation of rights to seek discovery of documents thereafter as deemed necessary, and do not dispute this time frame limitation. (Downey Decl. at ¶¶ 13, 16, Ex. 5.)

**C. State Farm's Responses to Requests for Production Nos. 74 and 75 Include Inconsistent and Conflicting Statements**

State Farm represents in response to RFP Nos. 74 and 75 that "If after a reasonable and diligent search" certain documents will be produced if located. At the same time, State Farm represents, "After a thorough and diligent search, State Farm has now concluded its search so that all responsive, relevant documents, as defined by the Court, have been produced." On one hand, State Farm admits it's still searching for documents, and on the other hand takes the position that its search is complete. Both cannot be true.

Furthermore, State Farm is required to conduct a diligent search and reasonable inquiry, and after doing so, respond to the requests for production accordingly in compliance with C.C.P. §§ 2031.210, et. seq. The Code of Civil Procedure states in pertinent part as follows:

C.C.P. § 2031.210:

> "(a) The party to whom a demand for inspection, copying, testing, or sampling has been directed shall respond separately to each item or category of item by any of the following:
>
> (1) A statement that the party will comply with the particular demand for inspection, copying, testing, or sampling by the date set for the inspection, copying, testing, or sampling pursuant to paragraph (2) of subdivision (c) of Section 2031.030 and any related activities.
>
> (2) A representation that the party lacks the ability to comply with the demand for inspection, copying, testing, or sampling of a particular item or category of item.
>
> (3) An objection to the particular demand for inspection, copying, testing, or sampling."

C.C.P. § 2031.220:

> "A statement that the party to whom a demand for inspection, copying, testing, or sampling has been directed will comply with the particular demand shall state that the production, inspection, copying, testing, or sampling, and related activity demanded, will be allowed either in whole or in part, and that all documents or things in the demanded category that are in the possession, custody, or control of that party and to which no objection is being made will be included in the production."

C.C.P. § 2031.230:

> "A representation of inability to comply with the particular demand for inspection, copying, testing, or sampling **shall affirm that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand**. This statement shall also specify whether the inability to comply is because the particular item or category has never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in the possession, custody, or control of the responding party. The statement shall set forth the name and address of any natural person or organization known or believed by that party to have possession, custody, or control of that item or category of item." (emphasis added).

It is entirely improper for State Farm to not provide a clear response to RFP Nos. 74 and 75 as to whether or not the search for requested documents has been completed, if certain documents will be produced, and/or when the requested documents will be produced after State Farm completes its search at some unknown point in time.

**D. <u>State Farm Has Failed To Produce Responsive Documents That Are Identified, Discussed or Otherwise Referenced Within The Documents State Farm Has Produced</u>**

The following table identifies various documents that are identified, discussed or otherwise referenced within the documents State Farm has produced and which are referenced in their responses to the requests for production at issue in this motion. It should be noted that this list has been significantly reduced by Plaintiffs in an attempt to focus on only those documents Plaintiffs believe are important and highly relevant to the claims they are pursuing in the subject action.

| BATES NO. | DOCUMENT IDENTIFICATION |
|---|---|
| SAVAS00000294 | 5/22/2017 CONSULTING SERVICES WOOD FLOOR JOB AID |
| SAVAS00000294 | AOR, COACHING & REVIEW GUIDELINES FOR LEADERSHIP |
| SAVAS00000483 | AUTO/FIRE CLAIMS TRAINING CATALOG |
| SAVAS00000557 | CABINET REPAIR VOD - 6 MIN 10 SEC |
| SAVAS00000312 | FILE REVIEW REPORTS FOR LOS ANGELES COUNTY COL 37 CLAIMS |

| BATES NO. | DOCUMENT IDENTIFICATION |
|---|---|
| RFP 74/75 | ITEL |
| SAVAS00000296 | LINK TO SFPSP - SEND AN ASSIGNMENT - MITIGATION VIDEO ON DEMAND |
| SAVAS00000557 | OG 70-94 USE OF THE INDEPENDENT NON ENGINEERING EXPERTS IN THE HANDLING OF FIRST PARTY CLAIMS |
| SAVAS00000566 | OG 71-43 STATE FARM PREMIER SERVICE PROGRAM (SPSP) FLOORING INSTALLATION PROGRAM |
| SAVAS00000376 | OG 71-44 STATE FARM PREMIER SERVICE PROGRAM (SFPSP) CONTRACTOR SERVICES PROGRAM |
| SAVAS00000515 | OG 71-46 STATE FARM PREMIER SERVICE PROGRAM (SPSP) ESTIMATE ONLY PROGRAM |
| SAVAS00000528 | OG 74-04 PAYMENTS AND CODING |
| SAVAS00000528 | OG 74-241 INTERNAL PAYMENT CONTROL MEASURES |
| SAVAS00000515 | OG 781-110 STATE FARM PREMIER SERVICE PROGRAM ECS ONLINE |
| SAVAS00000567 | OG 781-120 XACTANALYSIS |
| SAVAS00000376 | OG 782-400 INDEPENDENT TESTING AND EVALUATION LABORATORY (ITEL) |
| RFP 74 | Q4 2021 Water Estimate Writing and Reconciliation |
| SAVAS00001224 | QUALITY LARGE LOSS INTERVIEW |
| SAVAS00000557 | REPAIRABILITY OF SOLID WOOD FLOOR COVERINGS |
| RFP 74/75 | Reparability of Solid Wood Floor Coverings- Video on Demand |
| SAVAS00000530 | SFPSP CONTRACTOR SERVICES PROGRAM - REFERENCE GUIDE & SUMMARY POINTS OF THE EXPLANATION AND OFFER |
| SAVAS00000564 | WATER CLAIM HANDLING ESTIMATICS CONSIDERATIONS |
| RFP 75 | WATER MITIGATION - WATER CLASSES VOD |
| SAVAS00000287 | WATER MITIGATION JOB AID |
| SAVAS00000290 | WOOD FLOOR PRODUCT IDENTIFICATION TRAINING |
| SAVAS00000290 | XACTIMATE SPECIFIC WOOD FLOOR TRAINING |
| SAVAS00000294 | YTD WATER ESTIMATE VALUE INCREASE STATE FARM AND INDUSTRY |

Despite meeting and conferring, State Farm has failed to produce the above documents and has failed to provide any explanation as to why the documents are not being produced. (Downey Decl. at ¶¶ 21, 22.)

Plaintiffs' water loss claim involves, in part, water damage to the wood flooring and cabinets in their home. (Downey Decl. at ¶ 3.) Disputes arose during the handling of Plaintiffs' claim with respect to the scope of damages to Plaintiffs' home and the repairs required, particularly with respect

to the scope and ability to restore the wood flooring to its pre-loss condition and the need to remove and/or replace cabinets. (Id.)

Plaintiffs understand and believe the documents identified above will assist Plaintiffs in examining State Farm's policies, procedures, and practices with respect to handling water damage claims before, during, and since the implementation of State Farm's Water Loss Initiative. This information is reasonably calculated to lead to the discovery of admissible evidence regarding the manner in which State Farm handles, investigates, and adjusts water damage claims, and how State Farm's handling of water damage claims has changed over time since the implementation of its water initiative in 2017 and how such affected Plaintiffs' claim.

## VII. MONETARY SANCTIONS SHOULD BE AWARDED TO PLAINTIFFS

"The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a further response to a demand, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Code Civ. Proc. § 2031.310(h).)

State Farm and its attorneys have not acted with substantial justification nor does there exist circumstances in which it would be unjust to issue sanctions. On April 16, 2024, Plaintiffs were forced to file a motion to reopen discovery for a limited purpose based on the allegation that State Farm had improperly concealed information pertaining to its "Water Loss Initiative", "Water Loss Forum" and its polices, procedures, related documents and training concerning residential water loss claim handling during discovery efforts in this matter. (Downey Decl. at ¶ 5.) On June 11, 2024 the Court granted Plaintiffs' motion for leave to reopen discovery for the limited purpose of investigating Defendant State Farm's "Water Loss Initiative" "Water Loss Forum" and its policies, procedures, related documents and training concerning residential water loss claim handling. (Downey Decl. at ¶ 6, Ex. 1.) Plaintiffs promptly served State Farm with the requests for production at issue in this motion on June 14, 2024 and July 3, 2024. (Downey Decl. at ¶¶ 7-9, Exs. 2 & 3.) After meet and confer efforts failed, the Parties attended an IDC on November 5, 2025. (Downey Decl. at ¶¶ 10-11, Ex. 4.) At the IDC, State Farm's counsel made representations that State Farm was not withholding,

or otherwise failing to disclose the existence of documents that had been requested by Plaintiffs for the time frame of January 2017 through 2021 and that Plaintiffs were merely making an issue of form over substance. (Downey Decl. at ¶ 14.) Plaintiffs' counsel pointed out the inconsistent and conflicting statements contained within State Farm's responses at that time and took the position that further responses were necessary so as to remove the inconsistent and ambiguous statements by State Farm that, in part, left serious question and doubt as to what the scope of State Farm's responses and production of documents was, and whether or not documents were being withheld and not disclosed by State Farm. (Id.) The Court agreed with Plaintiffs on this issue and ordered State Farm to provide further responses to resolve these issues. (Downey Decl. at ¶¶ 14, 16, Ex. 5.)

Now, State Farm has provided further responses that do not align with the representations made at the IDC, and State Farm has instead limited the withdrawal of its attorney-client and work product privileges to (1) documents from the agreed upon timeframe of January 2017 through 2021, and (2) materials that were provided to the claims adjusters in the instant action; a limitation that was never agreed to or even discussed at the November 5, 2025 IDC. Not only was this limitation never agreed to or within the scope of the Court's orders in this matter, but for the reasons explained above herein, such a limitation is improper and unsubstantiated.

State Farm continues to engage in delay tactics and deprive Plaintiffs of information and documents that are well within the scope of discovery and that were previously concealed by State Farm; requiring Plaintiffs to bring a motion to reopen discovery for a limited purpose. Despite the Court's June 11, 2024 order allowing Plaintiffs to conduct discovery about State Farm's "Water Loss Initiative" "Water Loss Forum" and its policies, procedures, related documents and training concerning residential water loss claim handling, State Farm continues to engage in gamesmanship and deny Plaintiffs a fair and reasonable opportunity to complete this limited discovery in a timely manner before trial by (1) withholding documents that have been requested by Plaintiffs without a privilege log and proper disclosure as required by C.C.P. § 2031.240, (2) failing to remove inconsistent statements within its responses that leave Plaintiffs without a clear understanding as to whether or not certain documents will or will not be produced, and (3) failing to provide Plaintiffs

with any explanation whatsoever as to why certain specifically identified documents have not been produced.

As a result of State Farms' ongoing evasive conduct, Plaintiffs' have been forced to bring this motion to compel and are entitled to an award of reasonable attorney's fees of $4,725 against State Farm and/or its attorneys of record at THARPE & HOWELL, LLP as set forth in the accompanying Declaration of Lindsey Downey. (*See* Downey Decl. at ⁋ 23.)

## VIII. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant this motion to compel in its entirety and issue an Order compelling Defendant to provide further response to Plaintiffs' Requests for Production of Documents, Sets Two and Three, Nos. 74, 75, 77, 80, 84, 86, 87, 90, 91, 92, 93, 94, 95, 98, 99, 100, 101, 108 and 109, and award sanctions in the amount of $4,725 against Defendant and/or its attorney of record.

DATED: February 17, 2025

**ABIR COHEN TREYZON SALO, LLP**

By: ______________________

KEVIN M. POLLACK
LINDSEY DOWNEY
Attorneys for Plaintiffs Marc & Alicia Savas

**PROOF OF SERVICE**

*Marc Savas, et al. v. State Farm General Insurance*
*Case No. 21STCV03286*

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES ) ss:**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 16001 Ventura Blvd., Suite 200, Encino, California 91436. My email address is ldowney@actslaw.com.

On February 17, 2025, I served the following documents entitled **NOTICE OF MOTION AND MOTION FOR ORDER TO COMPEL DEFENDANT TO PROVIDE FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS, SETS 2 AND 3; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR MONETARY SANCTIONS** as follows:

| | |
|---|---|
| Heather McKeon, Esq<br>Sarah Reynolds, Esq<br>Lizzette Chirinos (Legal Assistant)<br>**THARPE & HOWELL, LLP**<br>15250 Ventura Blvd., 9th Floor<br>Sherman Oaks, Ca 91403<br>Tel: (818) 205-9955<br>Fax: (818) 205-9944<br>hmckeon@Tharpe-howell.com<br>sreynolds@tharpe-howell.com<br>lchirinos@Tharpe-howell.com | *Attorneys for Defendant*<br>**STATE FARM GENERAL INSURANCE** |

☒ **BY ELECTRONIC MAIL:** I transmitted said document(s) to the person(s) shown above by electronic mail to the email address shown above pursuant to CCP 1010.6.

☒ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 17, 2025 at Encino, California.

*//s// Lindsey Downey*
Lindsey Downey

Journal Technologies Court Portal

# Make a Reservation

MARC SAVAS, et al. vs STATE FARM GENERAL INSURANCE COMPANY, et al.

Case Number: 21STCV03286 Case Type: Civil Unlimited Category: Insurance Coverage (not complex)
Date Filed: 2021-01-26 Location: Stanley Mosk Courthouse - Department 50

## Reservation

Case Name:
MARC SAVAS, et al. vs STATE FARM GENERAL INSURANCE COMPANY, et al.

Case Number:
21STCV03286

Type:
Motion to Compel Further Discovery Responses

Status:
RESERVED

Filing Party:
Marc Savas (Plaintiff)

Location:
Stanley Mosk Courthouse - Department 50

Date/Time:
05/12/2025 10:00 AM

Number of Motions:
1

Reservation ID:
684450831040

Confirmation Code:
CR-MHXJDJ3FTYTBRDN4M

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Motion to Compel Further Discovery Responses | 0.00 | 1 | 0.00 |
| TOTAL | | | **$0.00** |

## Payment

Amount:
$0.00

Type:
NOFEE

Account Number:
n/a

Authorization:
n/a

Payment Date:
n/a

Print Receipt

Reserve Another Hearing

EXHIBIT R

EXHIBIT R

FILED
Superior Court of California
County of Los Angeles

MAY 12 2025

David W. Slayton, Executive Officer/Clerk of Court
By: L. Gomez, Deputy

***Superior Court of California***

***County of Los Angeles***

*Department 50*

| | |
|---|---|
| MARC SAVAS, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM GENERAL INSURANCE COMPANY,<br><br>Defendant. | Case No.: 21STCV03286<br><br>Hearing Date: May 12, 2025<br><br>Hearing Time: 10:00 a.m.<br><br>**[TENTATIVE] ORDER RE:**<br><br>PLAINTIFFS' MOTION FOR AN ORDER TO COMPEL DEFENDANT TO PROVIDE FURTHER RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SETS 2 AND 3 |

***Background***

Plaintiffs Marc Savas and Alicia Savas ("Plaintiffs") filed this action against Defendant State Farm General Insurance Company ("Defendant") on January 26, 2021. Plaintiffs allege Defendant, their insurer, breached the parties' insurance contract and its implied covenant of good faith and fair dealing.

Discovery in this action closed for most purposes on July 31, 2023. On June 11, 2024, the Court ordered discovery re-opened "for the limited purpose of investigating Defendant's 'Water Loss Initiative[,]' 'Water Loss Forum[,]' and its policies, procedures, related documents and training concerning residential water loss claim handling." (06-11-2024 Minute Order.)

Plaintiffs subsequently propounded Requests for Production of Documents ("RPDs"), Sets Two and Three, on June 14 and July 3, 2024, respectively. (Downey Decl., ¶¶ 8-9 and Exhs.

2-3.) Defendant responded; Plaintiffs contended the responses were insufficient. The parties attended an Informal Discovery Conference with the Court on November 5, 2024.

The Court's November 5, 2024 Minute Order records the parties' agreement on the subject discovery as follows, in relevant part:

> "On or before November 26, 2024, Defendant will serve verified further supplemental responses to request for production set 2 two numbers 75 through 77, 80 and 84 and set 3 regarding the removal of the privilege and work product objections adding any explanations as to the scope and time frame, and clarifying bates numbers and Defendant's interpretation of the documents requested (i.e., clarification of the document produced which may not match exactly the description provided by Plaintiff)."

(11-05-2024 Minute Order, p. 1.)

Defendant served supplemental responses on November 25, 2024. (Downey Decl., ¶ 17.) The parties met and conferred, and Defendant served another set of supplemental responses on January 31, 2025. (*Id.*, ¶ 19.)

On February 18, 2025, Plaintiffs filed their instant motion to compel further responses to their RPDs, Sets Two and Three. On April 29, 2025, Defendant filed its opposition. On May 5, 2025, Plaintiffs replied.

***Discussion***

Code of Civil Procedure section 2031.310, subdivision (a) permits a propounding party to move for an order compelling a further response to a demand for inspection if the propounding party deems that a statement of compliance is incomplete, a representation of inability to comply is inadequate, incomplete, or evasive, or an objection is without merit or too general. (Code Civ. Proc., § 2031.310(a).) A motion to compel further responses to a demand for inspection must set forth specific facts showing good cause for the discovery sought and must be accompanied by a meet and confer declaration. (Code Civ. Proc., § 2031.310(b).)

Plaintiffs helpfully group together the disputed discovery requests as follows:

| | Category | RFP Nos. |
|---|---|---|
| 1. | State Farm Water Loss Initiative Documents and Related Policies and Procedures Generally | 74, 80 and 84 |
| 2. | Training Materials and Guidelines Following The Implementation of State Farm's Water Loss Initiative | 75 and 77 |
| 3. | Analysis and Implementation of State Farm's Water Loss Initiative | 86, 87 and 90 |
| 4. | Side By Side & Ride Alongs Following The Implementation of State Farm's Water Loss Initiative | 91 and 92 |
| 5. | Reinspections of First-Party Residential Water Loss Claims Following Implementation of State Farm Water Loss Initiative | 93, 94 and 95 |
| 6. | Adjuster Claim Authority Determinations Following Implementation of State Farm Water Loss Initiative | 98, 99, 108 and 109 |
| 7. | Review, Analysis, Evaluation and Handling of Water Loss Claims Caused by Pinhole Leaks Following Implementation of State Farm Water Loss Initiative | 100 and 101 |

In their moving papers, Plaintiffs identify "various documents that are identified, discussed or otherwise referenced within the documents [Defendant] has produced and which are referenced in their responses to [other] requests for production", but which Defendant "has failed to produce . . . and has failed to provide any explanation as to why [they] are not being produced." (Mot., 16:17-17:25.)

Specifically, Plaintiff argues Defendant's responses are deficient for the following reasons:

53074251.20

1. Defendant insists the Court has ordered that it only needs to produce documents that it has otherwise provided to its claims adjusters;

2. Based on that purported Order, which limits disclosure to nonprivileged materials, Defendant has announced a meaningless withdrawal of privilege objections and refused to provide a privilege log; and

3. Defendant has improperly provided responses that fail to attest to diligent search, or promise diligent search at an unspecified future time, or reserve the right to produce further documents.

In opposition, Defendant states it provided a new supplemental response on May 2, 2025 which moots Plaintiffs' motion. In reply, Plaintiffs acknowledge some of their objections are resolved, but maintain that there are at least 12 documents Defendant continues to withhold without justification. (See Reply, 3:24-4:12, citing Downey Decl. iso Reply, ¶ 3.)

The Court agrees with Plaintiffs that Defendant's interpretation of the Court's order is incorrect; as a result, Defendant's position that no privileged documents are responsive may be incorrect; and that nothing relieves Defendant of its statutory obligation to conduct a reasonable inquiry and diligent search for documents responsive to Plaintiffs' requests.

As discussed in prior orders and conferences with the parties, Plaintiffs have demonstrated good cause to discover material related to Defendant's policies for handling claims like Plaintiffs', which involve water and flooring damage. All the disputed documents appear to relate to such claims.

***Order***

Based on the foregoing, the Court orders as follows:

(1) Defendant must produce the documents that remain in dispute, identified at paragraph 3 of Plaintiffs' counsel's declaration in support of their Reply.

(2) The Court's IDC Order did not limit production to materials provided to claims adjusters. To the extent Defendant has failed to produce documents based on that

erroneous interpretation, those responsive documents must be produced. If responsive documents are subject to privilege, Defendant must produce a privilege log.

(3) Any equivocation in Defendant's responses regarding its compliance with the Civil Discovery Act is improper. Defendant must verify its compliance for each response *using the language in* Code of Civil Procedure section 2031.220, 2031.230, or 2031.240, as appropriate.

***Sanctions***

A party unsuccessfully opposing a motion to compel further responses to requests for production is subject to mandatory monetary sanctions unless it demonstrates (1) substantial justification for failing to comply with its discovery obligations or (2) other circumstances that would make imposition of a sanction unjust. (Code Civ. Proc., § 2031.310(h).)

State Farm appears to have made a good-faith effort to comply with requests. Plaintiffs requested certain redundant documents in its demands for supplemental response, and State Farm thoroughly supplemented in January and again in May.

Sanctions are denied.

***Conclusion***

Based on the foregoing, the Court grants Plaintiffs' motion to compel further responses. The Court orders Defendant to serve complete, verified responses to Plaintiffs' Requests for Production, Sets 2 and 3, on the terms set forth above within 20 days of notice of this Order.

~~Plaintiffs are ordered to provide~~ Parties waived notice of this Order.

DATED: May 12, 2025

Teresa A. Beaudet

Hon. Teresa A. Beaudet
Judge, Los Angeles Superior Court

EXHIBIT S

EXHIBIT S

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
JENNIFER M. HOFFMAN, Cal. Bar No. 240600
jhoffman@sheppard.com
SARAH A.K. BLITZ, Cal. Bar No. 280118
sblitz@sheppard.com
MADALYN MACARR, Cal. Bar No. 301539
mmacarr@sheppard.com
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071
Telephone: 213.620.1780
Facsimile: 213.620.1398

Attorneys for Defendant
STATE FARM GENERAL
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY MYLES, an individual, and WILLIE DANIELS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 10,<br><br>Defendant. | Case No. 2:26-cv-00452-CAS (MBKx)<br><br>*Assigned to Hon. Christina A. Snyder*<br><br>**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. TWO (REQUESTS 17, 19-21 AND 23)**<br><br>Trial Date: October 12. 2027 |

**PROPOUNDING PARTY:** **PLAINTIFFS KATHY MYLES AND WILLIE DANIELS**

**RESPONDING PARTY:** **DEFENDANT STATE FARM GENERAL INSURANCE COMPANY**

**SET NO.:** **TWO (2)**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant State Farm General Insurance Company ("State Farm") hereby objects and responds to Plaintiffs Kathy Myles and Willie Daniels ("Plaintiffs") Second Set of Requests for Production of Documents (the "Requests") as set forth below.

**PRELIMINARY STATEMENT**

State Farm responds to the Requests solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, admissibility, privilege, privacy, proprietary information, trade secrets and the like, and any and all other objections on grounds that would require the exclusion of any response herein if such were offered in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

No incidental or implied admissions are intended in these responses. The fact that State Farm has responded to any part or all of any Request should not be taken as an admission that State Farm accepts or admits the existence of any facts set forth or assumed by such Request or that such response constitutes admissible evidence. The fact that State Farm has responded to any part or all of any Request is not intended to and shall not be construed to be a waiver by State Farm of all or any part of any objection to any Request.

State Farm has not completed its discovery in this action or preparation for the trial. State Farm reserves the right to supplement, modify or correct its responses to these Requests, or any part of them, as State Farm acquires additional information in the course of its investigation and discovery in this action.

This preliminary statement is incorporated by reference to each of the responses below as if stated in full.

**GENERAL OBJECTIONS**

1. State Farm objects to the Requests including the "Instructions" and "Definitions" sections, to the extent that they conflict with or attempt to enlarge any obligations that State Farm has under the applicable rules and procedures of the

Court. State Farm will ignore all such requests, definitions, and instructions to the extent that they conflict with the applicable rules and procedures.

2. State Farm also objects to the Requests to the extent that they seek to impose burdens or obligations beyond or inconsistent with those required by the Federal Rules of Civil Procedure ("FRCP") or other applicable law.

3. State Farm objects to the Requests to the extent that they seek information protected from disclosure by the attorney-client privilege, the work product doctrines, California Insurance Code section 791.13, and/or any other statutory or common law protection against disclosure.

4. State Farm objects to the extent that the Requests seek personal, private, confidential, trade secret and/or proprietary information of State Farm, and/or its affiliates, agents or partners.

5. State Farm objects to the extent that the Requests seek confidential, private personal or business information, including private information subject to an individual's right of privacy guaranteed by the United States Constitution, the California Constitution, and/or any other statutory or common law privacy protection. Plaintiffs have not established that such information is necessary to a fair adjudication of this case, or that the Requests for information outweighs the privacy interests involved.

6. State Farm objects to the Requests to the extent that they require a claim-by-claim review, seek information not proportionate to the needs of the case, or are otherwise overbroad or unduly burdensome and oppressive.

7. State Farm objects to the Requests to the extent they seek confidential, proprietary business information and/or trade secrets. To the extent that State Farm agrees to provide non-privileged information to these Requests, it will only provide confidential, proprietary business information and/or trade secret information subject to the entry of an acceptable protective order in this case.

8. The above General Objections are incorporated by reference in each of

the individual responses that follow, and the individual responses are provided subject to and without waiving the matters set forth therein. The term "objections" shall refer to all General Objections and any objection specifically made to a particular Request.

**INSTRUCTIONS AND OBJECTIONS**

**INSTRUCTION:**

Plaintiffs request that Defendant State Farm General Insurance Company produce the DOCUMENTS described below for inspection and copying and serve Plaintiffs the written response within thirty (30) days after service of this request. The place for inspection shall be at the office of Kerley Schaffer LLP, 1939 Harrison Street, Suite 900, Oakland, CA 94612.

In lieu of personal appearance and production on the above date, compliance with this Request for Production of DOCUMENTS may be accomplished by mailing to counsel at the above address, full, true and correct copies of the requested DOCUMENTS, verified by you as such, in a manner prescribed for written response to the demand for inspection of DOCUMENTS pursuant to Rule 34 of the Federal Rules of Civil Procedure, on or before thirty (30) days from the date of this demand.

YOUR WRITTEN RESPONSE TO THIS INSPECTION DEMAND must respond separately to each numbered demand for inspection below by:

1. A statement that you will comply with the particular demand;

2. A statement that you lack the ability to comply with the particular demand; or

3. Any objection to the particular demand. F.R.C.P. 34(b).

If your response to a particular demand is a statement that you will comply with that demand, you must state in your response whether the production will be allowed in whole or in part, and you must state that DOCUMENTS or things in the demanded category that are in your possession, custody or control and to which no objection is being made will be included in the production. F.R.C.P. 34(b).If your

response to a particular demand is a statement that you lack the ability to comply with that demand, you must affirm in your response that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand. This statement shall also specify whether the inability to comply is because the particular item or category never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody or control, in which case the name and address of any person or entity known or believed by you to have possession, custody or control of that document or category of documents should be identified. F.R.C.P. 34(b).

**OBJECTION:**

State Farm objects to this Instruction and inspection demand to the extent they purport to impose obligations on State Farm beyond or inconsistent with the requirements of the Federal Rules of Civil Procedure, including Rule 34(b), or any other applicable statute, rule, or court order.

State Farm further objects to the Instruction and inspection demand as unreasonable, unduly burdensome, and oppressive

State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' Instruction regarding "item[s]" or "categor[ies]" that have been "destroyed", "lost", "misplaced", "stolen", or which have "never been" or "[are] no longer" in State Farm's possession, custody or control.

In addition, State Farm objects to Plaintiffs' Instruction insofar as it seeks details regarding "item[s]" or "categor[ies]" that have been "destroyed", "lost", "misplaced", "stolen", or which have "never been" or "[are] no longer" in State Farm's possession, custody or control on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing

devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' Instruction is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

**INSTRUCTION:**

If your response to a particular demand is an objection, you must set forth in your response the extent of, and the specific ground for, the objection. In your response, you must also identify with particularity any document responsive to the particular demand that is being withheld from production based upon a claim of privilege or other protection and state the particular privilege or protection being invoked. (F.R.C.P. 34(b).) To identify with particularity documents withheld from production, you should provide, for each document withheld, the following information if known or available to you:

1. Title or subject matter of document;
2. The date composed or date appearing on the document;
3. Author and Addressee;
4. Number of Pages;
5. Identify of all persons or entities who saw or received a copy of such document, including the job titles of each such person;
6. The present location of the item;

7. The identity of the person or persons who have custody, control, or possession thereof.

8. The nature of the privilege claimed; and

9. Each fact upon which you base your claim of privilege.

**OBJECTION:**

State Farm objects to Plaintiffs' Instruction insofar as it directs State Farm to undertake efforts that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information and describe the same in accordance with the Federal Rules of Civil Procedure and substantive law.

**INSTRUCTION:**

Electronic media should be produced in its native format (e.g., Word documents and Excel spreadsheets produced with .doc and .xls extensions and email produced in .pst files if Outlook is the email client).

**OBJECTION:**

State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' Instruction to produce "Electronic media" in its "native format".

In addition, State Farm objects to Plaintiffs' Instruction regarding production of "Electronic media" in its "native format" to the extent it purports to seek production of ESI in "native format" both because it contradicts Plaintiffs' definition of the term "DOCUMENT" or "DOCUMENTS" below and because it exceeds the parameters of the Federal Rules of Civil Procedure. Pursuant to Fed. R. Civ. P. 34(b)(2)(E)(ii), State Farm may produce discoverable ESI in reasonably usable formats. Production of ESI in "native format" would be disproportionate to the needs of this case considering the value of the case and the importance of the discovery at issue and would be unduly burdensome to the extent such format is not

reasonably accessible to State Farm in the ordinary course of its business. Fed. R. Civ. P. 26(b)(2). In addition, State Farm frequently creates ESI in one format and, in the ordinary course of its business, stores it in another format in its system of record. State Farm further objects that it does not need to produce ESI in more than one form, and that the production of "Electronic media" in "native format" would be cumulative and duplicative of the alternative reasonably usable formats proffered. Fed. R. Civ. P. 34(b)(2)(E)(iii); 26(b)(2).

To the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

**INSTRUCTION:**

These requests for production include the original media and all copies that differ from the original in any respect, such as notations made on the copy. These requests are also intended to include all media of any nature that are now or have at any time been within your care, custody or control. If a document or media is no longer in your care, custody or control, identify its disposition.

**OBJECTION:**

State Farm objects to Plaintiffs' Instruction to produce "copies" on the grounds that copies are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. Fed. R. Civ. P. 26. To the extent that "copies" are not business records stored in a central repository in State Farm's ordinary course of business, the collection and production of "copies" would not be proportional to the needs of the case. Fed. R. Civ. P. 26.

In addition, State Farm objects to Plaintiffs' Instruction insofar as it seeks details regarding "document[s] or media" that "is no longer in [State Farm's] care, custody or control" on the grounds that it is overly broad, unduly burdensome, and

purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' Instruction is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

## OBJECTIONS TO DEFINITIONS

1. State Farm objects to the definition of "YOU" OR "YOUR". State Farm restates and incorporates its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" below and applies the same to Plaintiffs' definition of "YOU" or "YOUR." State Farm objects to the terms "YOU" or "YOUR" because as defined, the terms are overbroad and over-inclusive, such that they render any category or request that includes the terms vague, ambiguous, overbroad, and potentially in violation of the attorney-client privilege and/or work product doctrines. State Farm objects to the inclusion of the capitalized term "ADJUSTERS," on the grounds that this capitalized term is not a defined term. State Farm shall construe the terms "YOU" or "YOUR" to mean State Farm in and of itself as an entity only.

In addition, State Farm objects to Plaintiffs' definition insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is

only obligated to produce discoverable "DOCUMENTS" within its possession, custody, or control.

State Farm also objects to Plaintiffs' definition to the extent it may seek "DOCUMENTS" within the possession, custody, or control of State Farm's attorneys as this may require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

2. State Farm objects to the definition of "DOCUMENT" or "DOCUMENTS". State Farm incorporates by reference its objections to the terms "COMMUNICATIONS" and "ESI" as if fully set forth herein. State Farm objects to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that it is overly broad and disproportionate to the needs of the case. State Farm further object to the definition to the extent it implies State Farm has an obligation to provide discovery from sources that are not reasonably accessible. Electronically stored information ("ESI") is frequently duplicated and disbursed in the ordinary course of business and discovery regarding all identical copies of ESI would be cumulative and duplicative without any benefit to the adjudication of this action. Fed. R. Civ. P. 26(b)(2).

State Farm also object to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary computer files, log/history files, or file fragments, as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm objects to Plaintiffs' definition as overly broad, disproportionate to the needs of the case, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created by State Farm's users, such as caches, cookies, or logs, or otherwise seek to require State Farm to record and/or provide discovery regarding records and information that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. Fed. R. Civ. P. 26(b)(1).

State Farm objects to the inclusion of "DOCUMENTS" which are in the "possession, custody, or control" of "any third-party vendors" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is only obligated to produce discoverable "DOCUMENTS" within its possession, custody, or control.

State Farm also objects to Plaintiffs' definition to the extent it may include "DOCUMENTS" within the possession, custody, or control of State Farm's attorneys as production of "DOCUMENTS" within the possession, custody, or control of State Farm's attorneys would require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

State Farm objects to the inclusion of "draft[s]" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that drafts are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. To the extent that a draft is not a business record stored in a central repository in State Farm's ordinary course of business, discovery regarding "draft[s]" would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

State Farm objects to the inclusion of "COMMUNICATIONS," "chats", "instant messages", "texts," "personal digital assistants, handheld wireless devices, mobile telephones, smart phones, tablet computers, paging devices" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that State Farm has no obligation to collect, review, or produce text messages sent or received by devices that are not in State Farm's possession, custody, or control. Fed. R. Civ. P. 26(a), 34(a). State Farm further objects that text message data that exists on mobile devices within State Farm's possession, custody, or control is not relevant to any party's claim or defense, and discovery from such devices would not be proportional

to the needs of the case. Fed. R. Civ. P. 26(b)(1), (2). State Farm also objects because any text message data from such devices is unlikely to contain unique, relevant information that does not also exist in the relevant claim file(s) or another location that is less burdensome for collection, review, and production.

State Farm objects to the inclusion of "databases (including draft versions)", "database entries", "Internet usage files", Internet browser-created files including cookies and caches", "activity logs", and "network access information" in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" to the extent that Plaintiffs purport to seek information regarding State Farm technical systems and processes that are not relevant to the claims and defenses in this matter. State Farm further objects that production of a database would require production of vast amounts of irrelevant information regarding other claims, would likely result in improper alteration of relevant data, and would require production of privileged information that could not be redacted. In addition, State Farm objects that the resources that would be required to produce databases are significant and would not be proportional under Fed. R. Civ. P. 26. State Farm also objects on the grounds that databases may be proprietary to State Farm's business operations and/or may be confidential and trade secret information that need not be disclosed in order to obtain the fair adjudication of this case.

State Farm objects to Plaintiffs' definition insofar as it seeks details regarding "DOCUMENTS" that have been "deleted" on the grounds that it is overly broad, unduly burdensome, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible

discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the scope of the matter. Fed. R. Civ. P. 26(b)(2).

Furthermore, State Farm objects on the grounds that Plaintiffs' definition is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

State Farm objects to the inclusion of "DOCUMENTS. . . found on, archived in, or deleted from. . .on-site or off-site electronic data storage", "systems or data structures", "legacy systems (hardware and software)", "servers", "mainframes", "network servers", "cloud-based servers", "backup servers or systems", "archives", or "backup or disaster recovery systems or facilities" in Plaintiffs' definition to the extent that Plaintiffs seek discovery regarding ESI from sources that are not reasonably accessible, as it would require unreasonable efforts that are not proportional in light of the claims at issue, the value of the case, or the importance of the discovery at issue. Fed. R. Civ. P. 26(b)(1). State Farm also objects to the inclusion of information located on such systems in Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" on the grounds that data on backup media is likely to be duplicative and/or can be discovered from other sources that are more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2) There is no "routine right of direct access to a party's electronic information system[s]" and there has been no showing in this case sufficient to overcome this presumption. Fed. R. Civ. P. 34 (Advisory Committee Notes).

In addition, State Farm objects to the inclusion of "tapes", "discs", "DVDs", "CDROMs", "drives", "portable or removable drives", "cartridges", and "other storage media", "laptops", "personal computers", "internet data", "personal digital assistants", "handheld wireless devices", "mobile telephones", "smart phones", "tablet computers", "paging devices", and "audio systems (including voicemail)" in

Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" because such things are not "DOCUMENTS" but rather media on which "DOCUMENTS" and ESI are stored. State Farm further objects to the extent this definition purports to seek direct access to State Farm's electronic storage media. There is no "routine right of direct access to a party's electronic information system[s]" and there has been no showing in this case sufficient to overcome this presumption. Fed. R. Civ. P. 34 (Advisory Committee Notes).

Finally, State Farm objects to the definition of "DOCUMENT" or "DOCUMENTS" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges or privacy rights recognized by law.

Notwithstanding these objections, to the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

3. State Farm objects to Plaintiffs' definition of "ESI" on the grounds that it is overly broad and unduly burdensome. State Farm also objects to the extent it relies on the California Code of Civil Procedure or purports to impose obligations on State Farm beyond or inconsistent with the requirements of the Federal Rules of Civil Procedure, including Rule 34(a), or any other applicable statute, rule, or court order. State Farm further objects to the definition to the extent it implies State Farm has an obligation to provide discovery from sources that are not reasonably accessible. ESI is frequently duplicated and disbursed in the ordinary course of business and discovery regarding all identical copies of ESI would be cumulative, duplicative, and impose unnecessary burdens without any benefit to the adjudication of this action. Fed. R. Civ. P. 26(b)(2).

State Farm also objects to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary "data files", "file fragments",

computer files, or log/history files as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm objects to Plaintiffs' definition as overly broad, unduly burdensome, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created by State Farm users, such as caches, cookies, or logs, or otherwise seek to require State Farm to record and/or provide discovery regarding records and information that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. Fed. R. Civ. P. 26(b)(1), 34.

State Farm objects to the inclusion of "metadata" Plaintiffs' definition of "ESI" on the grounds that "metadata" can refer to any number of types of information, so the definition is overbroad, vague and ambiguous as to what specific information it seeks. State Farm further objects on the grounds that metadata is not relevant to the specific claims and defenses of any party, nor is discovery regarding metadata proportional to the needs of the case, and therefore the inclusion of "metadata" in Plaintiffs' definition is beyond the scope of permissible discovery. Fed. R. Civ. P. 26. In particular, the information pertinent to the claims and defenses in this case can be found in the text of discoverable "documents" and is not generally found in metadata. State Farm objects that discovery regarding metadata is not necessary to assure the fair and efficient adjudication of the claims and defenses in this matter.

Finally, State Farm objects to the definition of "ESI" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrines, or other privileges recognized by law.

Notwithstanding these objections, to the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

4. State Farm objects to the definition of "BELOW THE SURFACE OF THE GROUND EXCLUSION" on the grounds that it is overly broad in scope and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit. State Farm objects to this definition to the extent it purports to define as relevant – by virtue of the inclusion of "any provision in a property policy … insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase 'below the surface of the ground'" – insurance policies beyond the specific policy at issue in this litigation on the ground that it is overly broad in scope and time. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information and/or documentation that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. This definition goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The subject insurance contract/policy speaks for itself.

5. State Farm objects to the definition of "CLAIM LOG" or "FILE HISTORY". State Farm restates and incorporates its objections to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" and applies the same to Plaintiffs' definition of "CLAIM LOG" or "FILE HISTORY." In addition, State Farm objects to Plaintiffs' definition on the grounds that the terms "chronological notes, diary, log, or calendar" are vague and ambiguous. State Farm objects to this definition as overly broad and disproportionate to the needs of the case by the specific inclusion of the terms "every claim under a California property insurance policy issued by YOU," when this case involves only a claim involving Plaintiffs' October 2025 water loss, and further objects to this definition to the extent that Plaintiff purports to define as relevant information related to other, unrelated claims of individuals not party to this litigation who have a reasonable expectation of

privacy and whose information is safeguarded from disclosure by federal and state privacy laws. State Farm further objects on the grounds that the information sought may also be protected by the attorney-client privilege and work product doctrines. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. As such, to the extent that this definition purports to define as relevant information related to other such claims, State Farm objects to this definition.

6. State Farm objects to the definition of "CLAIM ADJUSTER(S)" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the definition of "CLAIMS ADJUSTER(S)" on the grounds that it is overly broad by virtue of the fact that it is unrestricted in scope and time, and on the basis that it specifically includes categories of individuals who did not work on Plaintiffs' claim – including but not limited to "any employee, supervisor, manager, agent, outside adjuster, independent adjuster, independent adjusting company, or other person or entity . . .employed, retained, or otherwise relied on to INVESTIGATE and/or ADJUST property claims." Information regarding the individuals who were engaged to assist with Plaintiffs' claim are identified in the Claim File and email correspondence produced by State Farm, and those are the only individuals relevant to the issues in this litigation, which stem from a single homeowner's claim relating to a fire to the Plaintiffs' home. State Farm further objects to this definition to the extent it purports to define "CLAIMS ADJUSTER(S)" in a way that diverges from the manner in which State Farm would employ that term. As such, State Farm objects to this definition on the grounds that

it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case. State Farm shall construe this term to mean Claim Specialists that State Farm employed or retained in and of itself to investigate or adjust a property claim, and the Team Managers who directly supervise those Claim Specialists.

7. State Farm objects to the definition of "COMMUNICATION". State Farm restates and incorporates in full by reference its objection to Plaintiffs' definition of "DOCUMENT" or "DOCUMENTS" and applies the same to Plaintiffs' definition of "COMMUNICATION".

In addition, State Farm objects to the inclusion of oral exchanges, including "personal meeting[s]", "conference[s]", and "conversation[s]" in Plaintiffs' definition of "COMMUNICATION" on the grounds that Fed. R. Civ. P. 34 does not require State Farm to produce "COMMUNICATION[S]" that do not already exist on a medium from which information can be obtained.

State Farm objects to Plaintiffs' definition [to the extent Plaintiff's/Plaintiffs' definition includes text messages] on the grounds that State Farm has no obligation to collect, review, or produce text messages sent or received by devices that are not in State Farm's possession, custody, or control. Fed. R. Civ. P. 26(a), 34(a). State Farm further objects that text message data that exists on mobile devices within State Farm's possession, custody, or control is not relevant to any party's claim or defense, and discovery from such devices would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1), (2). State Farm also objects because any text message data from such devices is unlikely to contain unique, relevant information that does not also exist in the relevant claim file(s) or another location that is less burdensome for collection, review, and production.

8. State Farm objects to the definitions of "CONSULTANT," "MCKINSEY & COMPANY," and "ACCENTURE" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the

definition of "CONSULTANT" on the grounds that it is overly broad by virtue of the fact that it is unrestricted in scope and time, on the basis that it purports to include both "internal" and "external" consultants in the definition, and due to the use of the term "including." Further, the definition of the term "CONSULTANT" is overly broad in scope due to the inclusion of the terms "internal or external consulting department or entity, firm, advisory firm, management consulting company, or individual consultant used or retained by YOU," "evaluate, assess, recommend changes to, or implement changes," "property claims operations," "claims handling systems," "quality assurance processes," "estimating practices," "vendor management programs," and "claims financial performance." State Farm objects to the inclusion of the terms "Office of Consulting Services" in the definition of the term "CONSULTANT" on the grounds that it is vague and ambiguous. State Farm objects to this definition to the extent it is predicated by assumptions made by Plaintiffs or Plaintiffs' counsel. State Farm objects to the terms "CONSULTANT," "MCKINSEY & COMPANY" and "ACCENTURE" to the extent they purport to define as relevant to this action the incredibly broad topics included within this definition -- topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, concepts like "changes in [State Farm's] property claims operations, claims handling systems, quality assurance processes, estimating practices, vendor management programs, or claims financial performance that have absolutely nothing to do with the handling of Plaintiffs' claim. State Farm further objects to the inclusion of "MCKINSEY & COMPANY" and "ACCENTURE" in the definition of "CONSULTANT" to the extent that Plaintiffs purport to suggest that either company is relevant to the issues in this litigation. Finally, State Farm objects to the term "CONSULTANT" to the extent Plaintiffs purport to seek as relevant information related to other, unrelated claims, by virtue of the use of the broad, undefined term "property claims." As such, State

Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

9. State Farm objects to the definition of "CONTINUOUS OR REPEATED SEEPAGE EXCLUSION" on the grounds that it is overly broad in scope and not reasonably tailored to include only matters relevant to the issues involved in this lawsuit. State Farm objects to this definition to the extent it purports to define as relevant – by virtue of the inclusion of "any provision in a property policy … insuring any building in California after 2015, which provision excludes coverage for property damage caused by water, and uses the phrase 'seepage or leakage'" – insurance policies beyond the specific policy at issue in this litigation on the ground that it is overly broad in scope and time. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information and/or documentation that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. State Farm further objects to this definition as vague and ambiguous as to the phrase "any building". This definition goes beyond what is needed to address the claims and defenses at issue in this litigation; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. The subject insurance contract/policy speaks for itself.

10. State Farm objects to the definitions of "DENY," "DENYING," "DENIED," or "DENIAL" on the grounds that it is overly broad in scope (not limited to the claim at issue in this case by seeking "any circumstance in which [State Farm] issued a written denial letter . . . following notice of a loss pursuant to a policy of insurance sold by [State Farm] covering real property in California") and time (unlimited in time). State Farm objects to this definition to the extent it purports to define as relevant information related to other, unrelated claims, and/or

to seek to discover information related to other claims, which are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This definition is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. As such, to the extent that this definition purports to define as relevant information related to other such claims, State Farm objects to this definition.

11. State Farm objects to the definition of "FINANCIAL IMPACT". State Farm incorporates by reference its objections to the term SEVERITY as fully set forth herein. State Farm objects to the terms "FINANCIAL IMPACT" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the terms "FINANCIAL IMPACT" and to the extent it purports to define as relevant to this action topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, by virtue of the inclusion of these terms in the definition of "FINANCIAL IMPACT" – "investigation expenses, indemnity obligations, administrative costs, SEVERITY . . . loss ratios, cost-per-claim, average estimate amounts, or any other measure of monetary effect." State Farm further objects to the definition of "FINANCIAL IMPACT" to the extent its inclusion purports to define as relevant or to the claims or defense of any party the information included within this definition. Finally, State Farm objects to the term "FINANCIAL IMPACT" to the extent Plaintiffs purport to define "FINANCIAL

IMPACT" in a manner that diverges from how such term is used within the Property and Casualty Claims department within State Farm. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

12. State Farm objects to the definition of "FIRE CLAIMS DEPARTMENT" to the extent that it purports to imply that information that was contained in State Farm's response to Request for Production No. 74 in the aforementioned *Savas* matter is relevant, responsive, or proportional to the needs of Plaintiffs' claim. State Farm further states that its response to Request for Production No. 74 in the aforementioned *Savas* matter speaks for itself as to its source and content, but notes that the version cited in this definition is not the operative version, which is subject to the protective order in that case.

13. State Farm objects to the definition of "GUIDANCE". State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENT" or "DOCUMENTS," "TRAINING OR GUIDELINES," "POLICIES/PROCEDURES," "COMMUNICATION" or "COMMUNICATIONS," and applies the same to Plaintiffs' definition of "GUIDANCE." State Farm objects to the term "GUIDANCE" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the inclusion of "TRAINING OR GUIDELINES" and "POLICIES/PROCEDURES" in this definition to the extent redundant or cumulative of the prior definitions. State Farm objects to the term "GUIDANCE" to the extent it purports to seek materials beyond formal resources available to the individuals handling the claim from the date of loss through the end of claim handling.

State Farm further objects to the term "GUIDANCE" on the grounds that it purports to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, a water loss to Plaintiffs' home in October 2025,

by seeking information "intended to communicate YOUR policies, views, directions, and/or changes to any policy, view or direction, to anyone, regarding the appropriate INVESTIGATION and/or ADJUSTING of property claims under insurance policies sold by YOU, generally, as opposed to any such policy, view, or direction expressed uniquely and solely as RELATES TO the INVESTIGATION and/or ADJUSTING of any particular claim," and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of causes of loss. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

14. State Farm objects to the definition of "INCENTIVE". State Farm restates and incorporates its objections to Plaintiffs' definition of "CLAIMS ADJUSTERS" and applies the same to Plaintiffs' definition of "INCENTIVE." State Farm objects to the term "INCENTIVE" as vague, ambiguous, overbroad and disproportionate to the needs of the case, especially as to use of the phrases "any system, program, process, promise by way of contract or otherwise," "financial benefits," and "for successful job and/or department and/or region and/or company performance according [sic] any metric set." State Farm further objects to the term "INCENTIVE" to the extent it purports to seek materials beyond those applicable to the individuals handling the claim from the date of loss up to the end of claim handling.

State Farm objects to this definition on the grounds that it is overly broad in scope—including things that have nothing to do with the performance of the individuals involved in the claim. State Farm also objects to the extent it is predicated by assumptions made by Plaintiffs' and/or Plaintiffs' counsel regarding "financial benefits."

State Farm objects to this definition to the extent it purports to define as relevant to the facts and circumstances of this case personal information of State Farm employees, including but not limited to information regarding the individuals who worked on Plaintiffs' claim, such that this definition may unduly invade the privacy rights of State Farm's employees. This definition goes beyond what is needed to address the claims and defenses at issue; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this definition because it unduly invades the privacy of its employees and is broad enough to potentially implicate information that is confidential, proprietary business information. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

15. State Farm objects to the definition of "PERFORMANCE REVIEW". State Farm restates and incorporates its objections to Plaintiffs' definitions of "DOCUMENT" or "DOCUMENTS," and "CLAIMS ADJUSTER," and applies the same to Plaintiffs' definition of "PERFORMANCE REVIEW" and included definition of "ASSESSMENT"." State Farm objects to this definition to the extent that it purports to include topics more appropriately covered in the definitions of "TRAINING OR GUIDELINES," "POLICIES/PROCEDURES," "or "GUIDANCE," rendering this definition overly broad, unduly burdensome, cumulative, duplicative, and not proportional to the needs of the case. State Farm objects to this definition to the extent that it cites the titles of or otherwise relies on proprietary, confidential, or trade secret documents such that their inclusion in this definition violates the protective orders in the matters in which those documents were produced. State Farm objects to this definition on the grounds that it is overly broad in scope—including things that have nothing to do with the performance review of the individuals involved in the claim, to the extent it is predicated by assumptions made by Plaintiffs' and/or Plaintiffs' counsel regarding the extent of

terms included in this definition and/or how those might be used in application, including, for example, the inclusion of terms like "Exposure Management review," "Fire executive review," "Fire Leadership Tracker review," "Frequency Error percentage review," "Huddle Points," "Stewardship Team (all areas)," "Leadership Guide," "Quality Targets," "Leadership Action Plan, Leadership Action Plan & Communication Strategy," "Process Confirmations," "Quality Targets," "Quarterly Survey," or "Tactical Tracker," among others. State Farm objects to this definition on the grounds that it is overly broad in time (without temporal limitation). State Farm objects to this definition to the extent it purports to define as relevant to the facts and circumstances of this case personal information of State Farm employees, including but not limited to information regarding the individuals who worked on Plaintiffs' claim, such that this definition may unduly invade the privacy rights of State Farm's employees. This definition goes beyond what is needed to address the claims and defenses at issue; it is not likely to assist in the resolution of this case, and therefore any burden to State Farm would be disproportionate to the scope of the matter. State Farm further objects to this definition because it unduly invades the privacy of its employees and is broad enough to potentially implicate information that is confidential, proprietary business information. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

16. State Farm objects to the definition of "POLICIES/PROCEDURES". State Farm restates and incorporates its objection to Plaintiffs' definition of "TRAINING OR GUIDELINES" and applies the same to Plaintiffs' definition of "POLICIES/PROCEDURES." State Farm objects to the definition of "POLICIES/PROCEDURES" as vague, ambiguous, overbroad and disproportionate to the needs of the case, including with regard to the use of the terms "bulletins," "operation manuals," "other written materials," "internal memoranda,"

directives," "executive communications," "town hall or all-hands presentation materials," "process maps" and "workflow documentation." State Farm objects to

this definition on the grounds that it is overly broad due to the inclusion of "executive communications" which are by their plain meaning, neither "policies" nor "procedures". State Farm objects to the inclusion of "TRAINING OR GUIDELINES" in this request to the extent redundant or cumulative of the prior definition. State Farm objects to the terms "POLICIES/PROCEDURES" to the extent they purport to seek materials beyond formal resources available to the individuals handling Plaintiffs' claim from the date of loss through the end of claim handling. Finally, State Farm objects to the terms 'POLICIES/PROCEDURES" on the grounds that they purport to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, an October 2025 water loss in Plaintiffs' home, by seeking information broadly related to "first party property Claims in California, but excluding auto claims" and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of losses or causes of loss that have no relevance to Plaintiffs' claim. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

17. State Farm objects to Plaintiffs' definition of "RELATE TO" or "RELATING TO", to the extent it would require State Farm to construe such terminology beyond its ordinary meaning. State Farm further objects to the extent this definition purports to seek information that bears no relevance to the claims and defenses of any party in this case or that is disproportionate to the needs of this litigation.

18. State Farm objects to the definition of "TRAINING OR [sic] GUIDELINES". State Farm repeats and incorporates by reference its objections to the terms "DOCUMENT" or DOCUMENTS" as if fully set forth herein. State Farm objects to the terms "TRAINING OR GUIDELINES" as vague, ambiguous, overbroad and disproportionate to the needs of the case. Among other things, it

purports to include materials not reasonably characterized as training or guidelines. For example, it includes "Xactimate", which is a tool accessible to State Farm claims personnel; it is neither "training" nor a "guideline". Further, the definition is not limited to the type of claim or issues involved in this matter, including but not limited to the following: "Quality Claims Handling Experience, Quality Claims Handling Standards, Coverage Model, Coverage Analysis, Skills Review, In Role Skills Review, Skills Review Answer Keys, Skills Testing, Resources, Discussion Resources, Core Property Claims, Dollar One, ECHP, Basics, Coverage Analysis, Support Guide, Claim Experience, Claim Experience Video Collaboration, Reference Guide". State Farm further objects to the extent this definition constitutes a compilation of information gleaned by Plaintiffs' counsel from the production of documents in other matters subject to protective orders in those matters. State Farm further objects to this definition to the extent that it purports to seek information without temporal limitation or information that is broader than a reasonable timeframe, to the extent it purports to seek information beyond formal training taken by the individuals who worked on Plaintiffs' claim, namely Claim Specialist Robin Dixon and Team Manager Ellen Redmond, or formal resources available to the individuals handling the claim from the date of loss through the end of claim handling. Finally, State Farm objects to the terms "TRAINING OR GUIDELINES" on the grounds that they purport to seek information on topics far beyond the scope of the narrow issues implicated in this lawsuit, namely, a water loss by seeking information related to "first party property Claims in California, but excluding auto claims" and to the extent this definition purports to seek and define as relevant information that facially appears to relate to other types of causes of loss (including, but not limited to terms including "Dollar One," "ECHP," or "Fire Focus""). As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

19. State Farm objects to the definition of "SEVERITY". State Farm repeats and incorporated by reference its objections to the term INDEMNITY, to the extent intended to be included in the definition of "SEVERITY," as if fully set forth herein. State Farm objects to the term "SEVERITY" as vague, ambiguous, overbroad and disproportionate to the needs of the case. State Farm objects to the term "SEVERITY" to the extent it purports to define as relevant to this action topics far beyond the scope of the narrow issues implicated in this lawsuit, relating to the single homeowner's claim relating to an October 2025 water loss to the Plaintiffs' home, by virtue of the inclusion of these terms in the definition of " SEVERITY -- "net paid indemnity divided by paid claim count, and/or paid versus reserved amounts, and/or trends of these over time." State Farm further objects to the definition of "SEVERITY" to the extent its inclusion purports to define as relevant the information included within this definition. Finally, State Farm objects to the term "SEVERITY" to the extent Plaintiffs purport to define "SEVERITY" in a manner that diverges from how such terms are used within the Property and Causality Claims department within State Farm. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

20. State Farm objects to the definition of "WATER INITIATIVE". State Farm repeats and incorporated by reference its objections to the terms "YOU," "DOCUMENT" or "DOCUMENTS," "RELATING TO," "YOUR, "WATER LOSS," and "CONSULTANT" as if fully set forth herein.

State Farm objects to the term "WATER INITIATIVE" as vague, ambiguous, and not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case. State Farm objects to the terms "modifications," "recommendations" and "systemic efforts" on the grounds that they are vague and ambiguous. This case is about a single water loss in October

2025 involving a pipe leak, and State Farm objects to this definition on the ground that it purports to define as relevant information related to other lawsuits and other claims wholly unrelated to the issues in this case. State Farm objects to this definition on the grounds that it is overly broad in scope (due to the overly broad definition of "WATER LOSS," and the use of the terms "any" and all"), time (due to the lack of temporal restrictions or any reasonable timeframe) and geography (not limited to the State of California).

State Farm objects to the definition of "WATER INITIATIVE" to the extent that Plaintiffs or Plaintiffs' counsel are citing information from confidential, proprietary and/or trade secret documents belonging to State Farm that have not been produced by State Farm in this case regardless of whether any such documents were produced by State Farm pursuant to protective orders in other, unrelated cases such that the possession of any such documents constitutes a breach of any other such protective orders.

State Farm further objects to the definition of "WATER INITIATIVE" on the grounds that it disputes Plaintiffs' adoption of a term to which State Farm specifically objected to Special Interrogatory Nos. 27 and 28 in *Jacobs et al. v. State Farm*, No. 22STCV23445, including in its Further Response to that Interrogatory. State Farm further objects to this definition in that it is overly broad in time and scope to the extent it attempts to define as relevant and responsive materials related to efforts that allegedly occurred 5 years prior to Plaintiffs' date of loss on October 11, 2025, and as such have absolutely no bearing on Plaintiffs' claim. State Farm further states that its responses to Further Responses to Special Interrogatory Nos. 27 and 28 in the aforementioned *Jacobs* matter speak for themselves as to their source and content.

In addition, State Farm objects to the definition of "WATER INITIATIVE" to the extent that it attempts to define as relevant and responsive materials related to efforts that allegedly occurred years prior to Plaintiffs' date of loss on October 7,

2025 that were produced in *Savas v. State Farm General Insurance Company, Los Angeles Superior Court*, No. 21STCV0286, and as such have absolutely no bearing on Plaintiffs' claim. State Farm further states that its response to Request for Production No. 74 in the aforementioned *Savas* matter speaks for itself as to its source and content, but notes that the version cited in this definition is not the operative version, which is subject to the protective order in that case.

State Farm further objects to this definition to the extent this is predicated on assumptions made by Plaintiffs or their counsel herein, and to the extent that Plaintiffs purport to suggest that it would be in any way problematic to have efforts "to improve quality, diligence, evaluation of facts, accurate application of coverage, accurate documentation of claim files, efficiency, consistency, accuracy, paying what is owed, and/or customer satisfaction" in connection with claim handling for water loss claims.

21. State Farm objects to the definition of "WATER LOSSES" as vague, ambiguous, overbroad and disproportionate to the needs of the case. This case is about a single water loss involving a pipe leak, and State Farm objects to this objection on the ground that it expressly seeks to purport to define as relevant information related to other types water loss claims wholly unrelated to the issues in this case—by the express inclusion of the following terms: "losses involving escape of water or steam from a heating, air conditioning or automatic fire protection system; household appliance; or plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture". State Farm further objects to this definition to the extent it diverges from how State Farm defines and/or catalogues claims involving water losses. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

22. State Farm objects to "definition" DD. State Farm repeats and incorporated by reference its objections to the definition of "DOCUMENT" or "DOCUMENTS," as if fully set forth herein. State Farm objects to "definition" DD on the grounds that it is not a definition, though styled as such, but rather an Instruction.

State Farm objects to Definition/Instruction DD as vague, ambiguous, overbroad and disproportionate to the needs of the case. This case is about a single water loss involving a pipe leak, and State Farm objects to this objection on the ground that it expressly seeks to purport to define as relevant information related to other types water loss claims wholly unrelated to the issues in this case – by the express inclusion of the following terms: "materials applicable to California claims and/or policies whether or not applicable to claims/policies in other states." State Farm objects to this Definition/Instruction to the extent it purports to define as relevant information related to other, unrelated claims, and/or to seek to discover information related to other claims, which are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This Definition/Instruction is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. The existence of other claims, and/or what may or may not have occurred with respect to another claim, will neither prove nor disprove any claims and/or defenses at issue in this litigation; each claim is handled on its own individual merits. Further, the policy contract at issue in this case speaks for itself and information related to other policies has no bearing in this action; as such, State Farm objects to this definition/instruction to the extent Plaintiffs purport to suggest that information related to other policies has any

bearing on this case and/or Plaintiffs' claim. As such, State Farm objects to this definition on the grounds that it purports to define as relevant information that is not relevant to the claims or defenses of any party, and as such, is disproportionate to the needs of this case.

23. State Farm objects to "definition" EE on the grounds that it is not a definition, though styled as such, but rather an Instruction. State Farm objects to Plaintiffs' Definition/Instruction insofar as it directs State Farm to undertake efforts that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information and describe the same in accordance with the Federal Rules of Civil Procedure and substantive law.

**FURTHER SUPPLEMENTAL RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO (2)**

**REQUEST FOR PRODUCTION NO. 17:**

YOUR GUIDANCE RELATED TO INVESTIGATION and/or ADJUSTING of WATER LOSSES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATED TO," and "WATER LOSSES," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and WATER LOSSES), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials

on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this

litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from

September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

**FURTHER SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through filing of this suit (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm refers to the updated transcript for the Claim Specialist dating back to September 2023 which has been produced (Bates numbers MYLEK000001554PROD-1565PROD). State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the filing of this suit. It expects to complete its search and agreed production, to the extent additional non-privileged documents are located during that search, by September 4, 2026.

**REQUEST FOR PRODUCTION NO. 19:**

YOUR GUIDANCE RELATING TO application of the CONTINUOUS OR REPEATED SEEPAGE EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATING TO," and "CONTINUOUS OR REPEATED LEAKAGE OR SEEPAGE," as if fully set forth herein. State Farm objects to this request on the

grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and CONTINUOUS OR REPEATED LEAKAGE OR SEEPAGE), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant

timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search

for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

**FURTHER SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm refers to the updated transcript for the Claim Specialist dating back to September 2023 which has been produced MYLEK000001554PROD-1565PROD. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the filing of this suit. It expects to complete its search and agreed production, to the extent additional non-privileged documents are located during that search, by September 4, 2026.

**REQUEST FOR PRODUCTION NO. 20:**

YOUR GUIDANCE RELATING TO application of the BELOW THE SURFACE OF THE GROUND EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATING TO," and "BELOW THE SURFACE OF THE GROUND EXCLUSION," as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of GUIDANCE and BELOW THE SURFACE OF THE GROUND EXCLUSION), time (not limited by the period of time when this claim was handled), and geographic area (not limited to California). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm

will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

**FURTHER SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm refers to the updated transcript for the Claim Specialist dating back to September 2023 which has been produced MYLEK000001554PROD-1565PROD. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the

underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the filing of this suit. It expects to complete its search and agreed production, to the extent additional non-privileged documents are located during that search, by September 4, 2026.

**REQUEST FOR PRODUCTION NO. 21:**

YOUR GUIDANCE, after the decision in *Varela v. State Farm General Insurance Company*, 555 F.Supp.3d 983 (E.D. Cal. 2021), RELATING TO application of the BELOW THE SURFACE OF THE GROUND EXCLUSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

State Farm repeats its objections to the terms “YOUR,” “GUIDANCE,” “RELATING TO,” and “BELOW THE SURFACE OF THE GROUND EXCLUSION,” as if fully set forth herein. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms GUIDANCE and BELOW THE SURFACE OF THE GROUND EXCLUSION) and time (not limited by the period of time when this claim was handled), and geographic area. This case involves only Plaintiffs’ insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different Policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm’s procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete

on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion

of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

**FURTHER SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm refers to the updated transcript for the Claim Specialist dating back to September 2023 which has been produced MYLEK000001554PROD-1565PROD. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guides, Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the filing of this suit. It expects to complete its search and agreed production, to the extent additional non-privileged documents are located during that search, by September 4, 2026.

**REQUEST FOR PRODUCTION NO. 23:**

YOUR GUIDANCE RELATING TO coding of WATER LOSSES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

State Farm repeats its objections to the terms "YOUR," "GUIDANCE," "RELATING TO," and "WATER LOSSES," as if fully set forth herein. State Farm objects to this request on the grounds that the term "coding" is vague, ambiguous and undefined. State Farm objects to this request on the grounds that it is overly broad in scope (due to the overly broad definitions of the terms GUIDANCE and WATER LOSSES), time (not limited by the period of time when this claim was

handled), and geographic area (not limited to California). This case involves only Plaintiffs' insurance claims with State Farm, and other claim files are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different properties of different ages, in different conditions, at different times, and where different individuals were involved. This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. Moreover, materials on which individuals were trained prior to the date of loss, and which were obsolete on the date of loss, which pertain only to other losses, and/or which pertain only to other areas of the country, are neither material nor relevant to the matters at issue in this case. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrines. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiffs have not established that such information is necessary to a fair adjudication of this case.

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm responds: State Farm will produce the relevant non-confidential and/or non-trade secret sections of the Operation Guide(s) for handling of the underlying claim that were applicable and in effect during the relevant timeframe. State Farm will produce the relevant confidential and/or trade secret sections upon execution of the protective order along with the applicable Standard Claim Processes and Jurisdictional References in effect on the date of loss and additional representative versions of the Standard Claim Processes and Jurisdictional References available for handling of the underlying claim following the execution of a protective order in

this case. State Farm will also produce, subject to protective order, additional resources relating to the issues in this case that were in effect during the relevant timeframe upon the execution of a protective order in this matter. Subject to the entry of a protective order, State Farm will also produce the training transcripts for Claim Specialist Robin Dixon and Team Manager Ellen Redmond who worked on Plaintiffs' claim for the period October 2023 through end of claim handling and will produce the training relevant to the issues in this litigation that are reflected on those transcripts.

For information reflecting the application of claims procedures to Plaintiffs' claim, see the non-privileged portions of the Claim File for the claim at issue in this litigation. "Claim File" has a distinct meaning to State Farm based upon the portion of its Operation Guide that provides instructions on what to retrieve from ECS to generate a Claim File for production outside the ECS environment. State Farm will produce the non-privileged and non-confidential portions of its Claim File (Bates numbers SF-CF0000001 to SF-CF0000812) as it does in the usual course of business pursuant to its Operation Guide. State Farm will produce the relevant confidential and/or trade secret sections subject to and upon entry of an appropriate protective order. State Farm expressly objects to this request to the extent it seeks information protected by the attorney client privilege and/or work product doctrines, and it is withholding portions of its Claim File that contain information protected by the attorney client privilege and/or is work product. State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on

Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm will search for and produce an updated transcript for the Claim Specialist dating back to September 2023, to the extent any such record exists. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guide(s), Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the end of claim handling and will produce additional non-privileged documents located during that search.

**FURTHER SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Subject to and without waiving the foregoing objections, State Farm's general objections, objections to Instructions, and objections to Definitions set forth above, State Farm further responds: State Farm refers to training transcripts as maintained by State Farm for the Claim Specialist and Team Manager who worked on Plaintiffs' claim for the period October 2023 through end of claim handling (Bates numbers MYLEK00000495PROD-516PROD). In addition, State Farm refers to the updated transcript for the Claim Specialist dating back to September 2023 which has been produced MYLEK000001554PROD-1565PROD. State Farm also refers to the aforementioned non-confidential and/or non-trade secret sections of the Operation Guide(s), Standard Claim Processes, and Jurisdictional References for handling of the underlying claim that were applicable and in effect during the relevant timeframe (Bates numbers MYLEK00000077PROD-494PROD). State Farm is completing an additional search for responsive training and resource materials in effect from September 2023 through the filing of this suit. It expects to complete its

search and agreed production, to the extent additional non-privileged documents are located during that search, by September 4, 2026.

Dated: August 21, 2026 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Jennifer M. Hoffman*
JENNIFER M. HOFFMAN
SARAH A.K. BLITZ
MADALYN A. MACARR

Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of . My business address is 350 South Grand Avenue, 40th Floor, Los Angeles, California 90071-3460.

On August 21, 2026, I served true copies of the following document(s) described as **DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. TWO (REQUESTS 17, 19-21 AND 23)** on the interested parties in this action as follows:

| | |
|---|---|
| **J. Edward Kerley**<br>**Dylan L. Schaffer**<br>**Nicholas J. Peterson**<br>**Kerley Schaffer LLP**<br>**1939 Harrison Street, Suite 900**<br>**Oakland, CA 94612**<br>**edward@kslaw.us**<br>**dylan@kslaw.us**<br>**nicholas@kslaw.us**<br>**service@kslaw.us** | **Attorneys for Plaintiffs**<br>**Kathy Myles and Willie Daniels** |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address gpasquale@sheppard.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 21, 2026, at Los Angeles, California.

Gino M. Pasquale

EXHIBIT T

EXHIBIT T

**IN THE DISTRICT COURT OF COMANCHE COUNTY**
**STATE OF OKLAHOMA**

STATE OF OKLAHOMA
Comanche County
FILED in the
Office of the Court Clerk
AUG 20 2026
By KM
Deputy

| | | |
|---|---|---|
| **NEIL & LACY WEST,**<br>**Plaintiffs.**<br>**v.**<br><br>**STATE FARM FIRE & CASUALTY, & NANCY HOLCOMB INSURANCE AGENCY, INC**<br>**Defendants.** | ) | **Case No. CJ-2025-135** |

**COURT ORDER ON PLAINTIFFS' VARIOUS MOTIONS FILED ON JULY 7th, 2026**

**NOW** on this 20th day of August, 2026 the Court, after hearing argument from counsel and reviewing all of the relevant pleadings **GRANTS IN PART** the Plaintiffs' Motion to Strike State Farm's blanket Confidentiality Assertion; **GRANTS IN PART** Plaintiffs' Motion to De-Designate Documents Produced and **DENIES** the Motion to Lift the Protective Order, subject to the conditions set forth below.

**FINDINGS OF FACT**

1. On May 21, 2026, the Court entered the Protective Order governing the treatment of confidential material produced in discovery in this action.

2. The Protective Order permits a party to designate material "Confidential" only "after a bona fide determination made in good faith that the material is in fact trade secret or other confidential information as defined in paragraph 3."

3. Paragraph 3 of the Protective Order limits "Confidential" information to three enumerated categories: (a) "trade secret," which "shall have the same meaning as in 78 O.S. §86(4)"; (b) "confidential research, development or commercial information," meaning "information that is maintained in secrecy from third parties and which a party in good faith believes would result in substantial competitive harm if publicly disclosed"; and (c)

"personal confidential information," meaning "a person's social security number, medical records, bank records, personnel records and tax information."

4. Paragraph 3(a)(ii) of the Protective Order expressly provides that "trade secret' shall explicitly not include any aspects of the handling of Plaintiffs' claim as first-party insureds, including but not limited to attempts to lower indemnity payments on Plaintiffs' claim, including the total roof replacement requested, and anything regarding denying or partially denying Plaintiffs' claim."

5. Paragraph 4 of the Protective Order establishes the procedure for challenging a designation and allocates the burden of proof. It provides that a designation shall not "create a presumption the document is, in fact, confidential or a trade secret entitled to protection," and that "[t]the burden of establishing that a document or testimony contains trade secret or personal confidential information and is entitled to the protection of this Protective Order shall remain on the party making the designation."

6. In response to the Court's order granting Plaintiffs' motion to compel, State Farm produced a large volume of documents. Plaintiffs represent that the production exceeds 800,000 pages and that State Farm designated every page "Confidential." State Farm represents that it produced "nearly 800,000 documents (millions of pages)," that it "has not designated all documents confidential," and that over 600,000 of the produced documents were reproduced from other litigation in which they are subject to confidentiality provisions of settlement agreements and/or protective orders entered by other courts. State Farm contends that not all documents turned over in discovery were labeled "confidential".

7. Plaintiffs objected to State Farm's designations, and State Farm declined to withdraw them. The parties disagree as to whether or not the "challenge" procedure outlined in paragraph 4 of the Protective Order has been complied with. Regardless, the parties have failed to resolve the dispute informally.

8. The documents Plaintiffs specifically identify as improperly designated concern State Farm's internal "FME" and "Wind/Hail" initiatives, tracking of roof replacements and indemnity savings, and managerial-approval requirements for full roof replacements.

## CONCLUSIONS OF LAW

### A. Governing standard and allocation of the burden

9. A protective order in Oklahoma issues under 12 O.S. §3226(C)(1), which authorizes the Court, "for good cause shown," to enter an order protecting a party "from annoyance, harassment, embarrassment, oppression or undue delay, burden or expense," including an order "that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way." (**Okla. Stat. Ann. tit. 12, § 3226**)

10. The Oklahoma Supreme Court has held that §3226(C) shifts the burden of showing 'good cause' to the party who opposes discovery. (**YWCA of Oklahoma City v. Melson, 1997 OK 81, 944 P.2d 304**) The burden of showing good cause "is statutorily placed on the party objecting to discovery and is part of that party's motion for a protective order." (**Crest Infiniti, II, LP v. Swinton, 2007 OK 77, 174 P.3d 996**) The Protective Order codifies this same allocation: designation creates no presumption of confidentiality, and

the burden of establishing that material is entitled to protection "shall remain on the party making the designation."

11. A party does not carry that burden with conclusory or blanket assertions. In (**Crest Infiniti, II, LP v. Swinton, 2007 OK 77, 174 P.3d 996**), the Oklahoma Supreme Court held that "blanket statements" were insufficient and that the party seeking protection "must show more than these blanket statements to satisfy their burden for a protective order." (**Crest Infiniti, II, LP v. Swinton, 2007 OK 77, 174 P.3d 996**)

**B. Blanket designations.**

12. Plaintiffs have raised the issue as to State Farm's blanket confidentiality designations. Under both Oklahoma law and Paragraph 4 of the Protective Order, the burden now rests on State Farm to justify, on a document or category basis, the confidentiality of the material it has designated. A designation applied uniformly to every page of the production, without regard to content, does not satisfy that burden.

**C. Trade secret and confidential commercial information**

13. The Protective Order adopts the statutory definition of "trade secret" in 78 O.S. §86(4): information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (**Okla. Stat. Ann. tit. 78, § 86** )

14. Under Oklahoma law, protectable trade secrets and confidential information "must be the particular secrets of the [proprietor] as distinguished from the general secrets of the

trade," must possess "a substantial element of secrecy," and must "contain elements which are unique and, not generally known or used in the trade." (**Cent. Plastics Co. v. Goodson, 1975 OK 71, 537 P.2d 330**) "Matters of public knowledge in an industry cannot be appropriated by one as [its] secret." (**Cent. Plastics Co. v. Goodson, 1975 OK 71, 537 P.2d 330**) Applying §86(4), the Tenth Circuit has confirmed that the proponent must show the information is not readily ascertainable and provide evidence that it "conferred some type of competitive advantage or economic value"; generalized and conclusory evidence will not suffice. (**Double Eagle Alloys, Inc. v. Hooper, 134 F.4th 1078 (10th Cir. 2025)**)

15. To restrict disclosure of trade secret or "other confidential research, development, or commercial information," the proponent "must 'first establish that the information sought is a trade secret [or other confidential research, development, or commercial information]' and then 'demonstrate that its disclosure might be harmful," by "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." (**Video Gaming Techs., Inc. v. Castle Hill Studios LLC, No. 17-CV-454-GKF-JFJ, 2019 WL 2514705 (N.D. Okla. June 18, 2019)**)

16. An insurer's internal claims-handling policies, procedures, and business strategies are not automatically protectable. Internal corporate documents do not automatically merit protective orders, and a protective order does not exist to prevent "negative publicity" or reputational injury; such material qualifies as confidential commercial information only when the proponent couples it with a particularized showing of competitive harm. (**Video Gaming Techs., Inc. v. Castle Hill Studios LLC, No. 17-CV-454-GKF-JFJ, 2019 WL 2514705 (N.D. Okla. June 18, 2019)**)

17. Independent of these authorities, Paragraph 3(a)(ii) of the Protective Order removes from the "trade secret" category any aspects of the handling of Plaintiffs' claim as first-party insureds, including attempts to lower indemnity payments on Plaintiffs' claim, the total roof replacement requested, and anything regarding denying or partially denying Plaintiffs' claim. Documents falling within Paragraph 3(a)(ii) are, by the terms the parties agreed to, not trade secrets and may not be designated Confidential on that basis.

**D. Confidentiality of discovery is distinct from sealing of court records.**

18. The Court agrees with State Farm that the standard governing confidentiality designations of discovery material differs from the standard governing the sealing of records filed with the Court. Under Oklahoma law, "discovery documents produced in private litigation are not public records and would not, under the Open Records Act, otherwise be available for public inspection and copying, unless the documents are filed of record or admitted into evidence." (**Good v. Farmers Ins. Co., 2023 OK CIV APP 28, 536 P.3d 961**)

19. When material is filed with the Court, however, it becomes subject to the presumption of public access, and sealing is governed by the Oklahoma Open Records Act. (**Mitchell v. Mitchell, 2021 OK CIV APP 17, 491 P.3d 759**) Court records are public unless a statute requires confidentiality, and the Court "may seal a record or portion of a record only if a compelling privacy interest exists which outweighs the public's interest in the record." A sealing order must be public and must (1) make findings of fact, (2) state conclusions of law specific enough to reveal the legal basis for sealing, (3) use "the least restrictive means for achieving confidentiality," and (4) be "narrowly tailored so that only the portions of the record subject to confidentiality are sealed and the remainder of the record

is kept open." (**Okla. Stat. Ann. tit. 51, § 24A.30** ) Any order removing material from the public record must also contain a statement that removal "is necessary in the interests of justice" and a "specific identification of the material" withheld. (**Okla. Stat. Ann. tit. 51, § 24A.29** ) Strict compliance with these requirements "is mandatory in all cases." (**Good v. Farmers Ins. Co., 2023 OK CIV APP 28, 536 P.3d 961**) The "interests of justice" finding is "a very high standard for good reason and is required in every case," and speculative harm will not support closure. (**Good v. Farmers Ins. Co., 2023 OK CIV APP 28, 536 P.3d 961**; **Nichols v. Jackson, 2001 OK CR 35, 38 P.3d 228**)

20. This distinction cuts both ways. It defeats Plaintiffs' contention that the presumption of public access to court records, standing alone, requires the wholesale de-designation of unfiled discovery. It equally defeats State Farm's suggestion that the good-faith designation standard excuses it from justifying challenged designations: the challenge procedure in Paragraph 4 and 12 O.S. §3226(C), not the sealing statutes, supply the standard, and under that standard the burden of justification remains on State Farm. (**YWCA of Oklahoma City v. Melson, 1997 OK 81, 944 P.2d 304**)

***IT IS THEREFORE ORDERED, ADJUDGED AND DECREED*** that State Farm's blanket designation of its entire production as "Confidential" is STRICKEN. A uniform, undifferentiated designation applied to every page of the production does not reflect the "bona fide determination made in good faith" that Paragraph 1 of the Protective Order requires, and it does not satisfy State Farm's burden under 12 O.S. §3226(C) and Paragraph 4 of the Protective Order. (**YWCA of Oklahoma City v. Melson, 1997 OK 81, 944 P.2d 304**; **State ex rel. Oklahoma State Bd. of Med. Licensure & Supervision v. Rivero, 2021 OK 31, 489 P.3d 36**.

Further, the Court finds that Exhibit numbers: **2-7, 9, 11, 12, 14-16, 24, 26-38, 40-42 and 44-45** identified in Plaintiff's Reply, filed on August 6th, 2026 shall be de-designated and removed from the protective order as the exhibits identified above do not contain any protected information as outlined in the protective order. Further, the exhibits listed above shall be treated like normal documents exchanged in the course of discovery.

**Re-designation on a particularized basis.** Within thirty (30) days of the date of this Order, State Farm shall review its production and re-designate as "Confidential" only those documents, or portions of documents, that it has determined in good faith fall within one of the three categories defined in Paragraph 3 of the Protective Order. For each document or reasonably defined category of documents it re-designates, State Farm shall identify the applicable Paragraph 3 category. Any document not re-designated within that period shall no longer be subject to the Protective Order and is DE-DESIGNATED, consistent with Paragraph 4 of the Protective Order.

**First-party claim-handling materials.** Consistent with Paragraph 3(a)(ii) of the Protective Order, any document concerning the handling of Plaintiffs' own claim as first-party insureds — including attempts to lower indemnity payments on Plaintiffs' claim, the total roof replacement requested, and the denial or partial denial of Plaintiffs' claim — may not be designated "Confidential" as a "trade secret" and is DE-DESIGNATED to the extent so designated on that basis.

**Burden on any maintained designation.** For any designation State Farm maintains and Plaintiffs continue to challenge, State Farm bears the burden of establishing, by a particular and specific demonstration of fact, that the material falls within a Paragraph 3 category and that its disclosure would cause a cognizable competitive or other legally protectable harm.

**Documents subject to other courts' orders.** In its re-designation, State Farm shall separately identify any documents it contends remain confidential solely by reason of a protective order or settlement agreement entered in other litigation. The de-designation directed by this Order does not, of its own force, disturb a confidentiality obligation independently imposed by another court; any dispute regarding such documents shall be addressed under the Paragraph 4 procedure with reference to the terms and jurisdiction of the order said to govern them.

**Meet and confer/further challenges.** The parties ***SHALL MEET AND CONFER IN PERSON AND IN GOOD FAITH*** regarding any designations that remain in dispute following State Farm's re-designation, in accordance with Paragraph 4 of the Protective Order. Any designation the parties cannot resolve shall be submitted to the Court for determination, at which time the burden of justifying the designation shall rest on State Farm. The Court further admonishes the parties that future discovery disputes could result in attorney fees, sanctions or the appointment of a discovery master.

**The Protective Order remains in effect.** Plaintiffs' request to lift or dissolve the Protective Order in its entirety is DENIED. The Protective Order was entered on the parties' agreement and provides an orderly mechanism, in Paragraph 4, for resolving the very dispute presented here; the appropriate remedy for over-designation is application of that mechanism and the de-designation directed above, not wholesale dissolution. Except as modified by this Order, the Protective Order remains in full force and effect.

**Sealing of court records.** Plaintiffs' request for a prospective order prohibiting all future under-seal filings absent a particularized showing of harm is DENIED. Nothing in this Order relieves any party of the obligation to satisfy 51 O.S. §§24A.29 and 24A.30 before any material is filed under seal or removed from the public record. Any request to seal a filed record shall be

made by motion, shall be evaluated on a case-by-case basis under the compelling-privacy-interest standard, and shall be granted only upon the findings of fact, conclusions of law, least-restrictive-means, and narrow-tailoring requirements those statutes impose. (**Good v. Farmers Ins. Co., 2023 OK CIV APP 28, 536 P.3d 961**)

**IT IS SO ORDERED** this 20th day of August, 2026.

Grant Shepard

JUDGE OF THE DISTRICT COURT

***CLERK TO MAIL A COPY OF THIS ORDER TO ALL PARTIES AND FILE A CERTIFICATE OF MAILING***



I, ROBERT MORALES, District Court Clerk in and for Comanche County, Oklahoma, hereby certify that the foregoing is a true, correct and complete copy of the instrument herewith set out as appears of record in the Court Clerk's office of Comanche County, Oklahoma, This 20 day of August 20 26
ROBERT MORALES, District Court Clerk
By ____ Deputy

# EXHIBIT U

EXHIBIT U

**From:** Nicole Manduca [/O=STATEFARM/OU=HOME/CN=RECIPIENTS/CN=LOK2]
**Sent:** 8/19/2021 12:57:44 AM
**To:** Gwen Hodgson [gwen.hodgson.lpb5@statefarm.com]
**BCC:** Nicole Manduca [nicole.manduca.lok2@statefarm.com]; Gwen Hodgson [gwen.hodgson.lpb5@statefarm.com]
**Subject:** RE: 35-B445-5P5: Agent Complaint: Claim concern

Perfect – thank you.

**From:** Gwen Hodgson
**Sent:** Wednesday, August 18, 2021 5:52 PM
**To:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** RE: 35-B445-5P5: Agent Complaint: Claim concern

Yes ma'am reviewed today and have on the calendar for next follow up Friday.

Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Date:** Wednesday, Aug 18, 2021, 6:57 PM
**To:** Gwen Hodgson <gwen.hodgson.lpb5@statefarm.com>
**Subject:** FW: 35-B445-5P5: Agent Complaint: Claim concern

Gwen – making sure this is on your radar for a response next Tuesday, 8/24.

---

**From:** Kathy Ress
**Sent:** Wednesday, August 11, 2021 7:28 PM
**To:** Gwen Hodgson <gwen.hodgson.lpb5@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** RE: 35-B445-5P5: Agent Complaint: Claim concern

Thanks Gwen. I'll calendar 2 weeks for an update.

---

**From:** Gwen Hodgson
**Sent:** Tuesday, August 10, 2021 7:28 PM
**To:** Kathy Ress <kathy.ress.he8j@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** RE: 35-B445-5P5: Agent Complaint: Claim concern

EXHIBIT
1

Kathy,

Since our last response Eberl ECR VM Brandon Becker has made multiple contact attempts with the contractor and kept the insured and agent's office apprised of our efforts to ensure the similar products recommended by Jeld-Wen (Jeld-Wen W-2500 series (Standard) in Brilliant White) has been utilized to achieve a reasonably consistent appearance. ECR

VM Becker and I have reviewed the claim and are committed to daily follow up to drive the claim to conclusion. I will maintain an SM calendar to ensure continuing action occurs.

The contractor at this time has not responded with what Jeld-Wen products they have used in the documentation provided contending a reasonably consistent appearance cannot be achieved.
Our efforts to obtain this information will continue and we will keep the insured and agent's office up to date on all communication.

Please let me know if you have any questions or would like any additional information.

---

**Gwen Hodgson**, CPCU, CLU, ChFC
Claim Section Manager
WCCS IO – Hail Reconciliation Unit
w: 972-657-1824
m: 309-532-4930
gwen.hodgson.lpb5@statefarm.com

<< OLE Object: Picture (Device Independent Bitmap) >>

---

**From:** Kathy Ress
**Sent:** Saturday, August 7, 2021 9:39 PM
**To:** Gwen Hodgson <gwen.hodgson.lpb5@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>; Kathy Ress <kathy.ress.he8j@statefarm.com>
**Subject:** 35-B445-5P5: Agent Complaint: Claim concern

Hi Gwen,

Would appreciate an update specific to resolution on Tuesday. I note we've left messages for the contractor and spoke to the insured, with a follow up date on Monday. A brief update on resolution with next steps and timeline is appreciate to ensure we monitor this claim to conclusion.

Thanks,

Kathy

---

**From:** Gwen Hodgson
**Sent:** Wednesday, August 4, 2021 8:08 PM
**To:** Kathy Ress <kathy.ress.he8j@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** RE: Agent Complaint: Claim concern

Kathy,

There was actually quite a bit of contact between August 2020 and July 2021 which I have captured below. There were definitely opportunities for follow up with the contractor, insured and agent throughout that timeframe. I have also updated the vendor name throughout the summary.



Confidential Produced Pursuant to Protective Order

Please let me know if there is any additional clarity I can provide or follow up.

Thank you and have a great evening.

---

**Gwen Hodgson**, CPCU, CLU, ChFC
Claim Section Manager
WCCS IO – Hail Reconciliation Unit
w: 972-657-1824
m: 309-532-4930
gwen.hodgson.lpb5@statefarm.com

<< OLE Object: Picture (Device Independent Bitmap) >>

---

**From:** Kathy Ress
**Sent:** Wednesday, August 4, 2021 5:46 PM
**To:** Gwen Hodgson <gwen.hodgson.lpb5@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>; Kathy Ress <kathy.ress.he8j@statefarm.com>
**Subject:** RE: Agent Complaint: Claim concern

Gwen,

Would you provide timeline when the service gaps occurred? What has our handling been in 2021, as appears no activity since Aug 2020 to July 2021. Trying to understand if these are recurring gaps or recent gaps with our Call to Action. When you update the summary please provide the name of the vendor.

A review of the claim file identified the following service gaps:

- Lack of verbal communication between State Farm Claims, the agent's office, and the insured. Status follow-ups to the insured after conversations with the contractor regarding sash and window replacement findings were needed. Follow up with agent's office to provide status and difficulty working with the contractor were needed.

Thanks!

Kathy

---

**From:** Gwen Hodgson
**Sent:** Wednesday, August 4, 2021 4:48 PM
**To:** Kathy Ress <kathy.ress.he8j@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** RE: Agent Complaint: Claim concern

Kathy,

Please find our response to the agent concerns:



Confidential Produced Pursuant to Protective Order 

**Outline Customer/Agent Concern and Resolution with the Customer/Agent**

- Contractor Feazel Inc. contacted State Farm and advised that the windows on the front and rear elevations of the Loeser's home have sustained damages. The original manufacturer of the windows is no longer in business and the contractor has advised that like kind and quality replacements do not exist. EBERL ECR Vendor Manager Brandon Becker had contacted the manufacturer that bought out the original window manufacturer and has determined the make and model of the windows to be replaced to provide for a uniform appearance. This was communicated to the Insured and Contractor.

- The original inspection of October 8, 2019 did not find damages to the windows and settlement was provided for the roof and gutters on the home. All repairs to the roof and gutters were completed and all RCB's were released per a certificate of completion dated November 7, 2019. On August 10, 2020 the contractor submitted photos of window damage. An additional inspection was completed on August 17, 2020 and no storm related damages were found to the windows. Additional communication with the contractor and insured disputing the determination on the windows throughout September 2020 resulted in the hiring of an engineer October 15, 2020 to evaluate the windows. The engineer inspection occurred November 10, 2020. The engineer's report, received December 3, 2020 identified six cosmetically damaged windows on the South and North elevations and replacement of the window sashes was recommended. The Engineer report provided manufacturer and installer information for the sashes. The State Farm estimate was updated to reflect 6 sash replacements per the Engineers report and evaluation of proper repair. These results were reviewed with the agent's office on December 7, 2020 and with the insured on December 9, 2020, due to the insured's availability.

On January 14, 2021 we received a contractor's estimate to replace all windows in the home due to unavailability of original or LKQ replacement. We contacted the contractor and left a message for the insured outlining the repair options and vendors identified within the engineer's report. On February 1st and February 9th we received calls from the contractor requesting status. We reiterated the repair options and vendors identified within the engineer's report and explained followed up with the insured again on February 9, 2020 to advise of same. The contractor submitted another follow up request on February 15, 2021, it was reviewed February 18, 2021 and while previous activity was referenced no additional action was taken to respond to this most recent request. The agent contacted HRU on February 19, 2021 and we reviewed our handling with him from the time the engineer was retained to current date. The contractor argued he would not warranty the repair or the quality of the work. After advising the contractor we owe to repair hail damage, he agreed to obtain quotes from the two companies identified within the engineer's report. The agent contacted HRU again on February 24, 2021 advising the contractor is telling the insured SF is difficult to get ahold of and is trying to make SF look bad. We reviewed our 2021 communications will the agent. On February 27, 2021 we received mail from the contractor indicating one vendor did not have NFRC certification, stating that is an Ohio code requirement. The contractor asked if we would like the insured to install windows that don't meet code. An email was sent to the agent and the insured that same day advising the documentation the contractor has provided addresses one of the companies referenced in the engineer's report but it does not appear availability from the other company has been researched. While awaiting additional information from the second company research of the code referenced by the contractor was conducted, including follow up with the Franklin County Building Department, that revealed that code applied to new construction only. We spoke with the insured on March 11, 2021 to advise of our findings related to the code issue. We had left a message for the contractor as well but at the insured's request we provided this information to the contractor in writing with a cc to the insured. On March 26, 2021 we reviewed correspondence from the contractor which once again indicated use of the recommended product did not meet code requirements. A response was emailed to the contractor again stating our research indicated that code applied to new construction only. The insured and agent were cc'd on that email.

On March 31, 2021 we received and email from the contractor disputing the applicability of the code, the was reviewed by a CNC ECR in WCCS Stewardship April 14, 2021. The prior activity was referenced in the file note but no action was taken to contact the contractor, insured or the agent. On April 16, 2021 the contractor called into HRU advising the window companies will not do the recommended repair and other window installers have also indicated they will not just replace the sashes. The contractor was asked to provide documentation as to why the sash repair was not possible. On April 20, 2021 the contractor sent in an email indicated the window manufacturer specifically states they do not attempt to match double hung dimensions and the contractor feels this would create a guaranteed mismatch. This email was reviewed on April 22, 2021, attempts to reach the contractor's office were unsuccessful and files notes indicate no voicemail option was available. The CS indicated a calendar was set for next day follow up but the next claim activity was not seen until a calendar review occurred on May 6, 2021. No action was taken at that time and the claim was reclosed in error. On May 14, 2021 the contractor called back in indicating the replacement sash would not match. The CS inquired as to whether the contractor was aware of what the replacement sash height would be to determine if there would be a matching issue. The contractor did not know that and advised he would proceed with repair of one window to see if it would match. The claim remained closed.
On June 24, 2021 the agent contacted HRU asking when we spoke to the insured last and requested a manager. That same day the agent was contacted by Eberl ECR VM Brandon Becker. The agent advised the sash repair would not provide a reasonably consistent appearance and the windows should be replaced. The contractor indicated one vendor would require a minimum purchase and the insured indicated when the second vendor came to the home they misidentified the windows as vinyl and stated they could not install the sashes. The agent requested Eberl ECR VM Becker review the file and join a conference call with the contractor and insured on June 28, 2021 to discuss the matter in more detail. During the call the contractor advised they received confirmation from the first vendor that they could not match double hung window sashes, Eberl ECR VM Becker was able to confirm this with the vendor and agreed to replace the six damaged windows. The contractor indicated the window glaze would likely not match the existing windows. The contractor then asked what window would be of like kind and quality. Eberl ECR VM Becker suggested Jeld-Wen as the manufacturer who bought out the original manufacturer but the insured and the contractor would need to research like kind and quality and appearance to go with the existing windows. The contractor expressed agreement and the conference ended. The SF estimate was revised and a supplemental payment for the window replacement was issued July 1, 2021. On July 8, 2021 Eberl ECR VM Becker spoke w/ the agent who advised the contractor and insured are stating the windows do not provide a reasonable appearance per OH code. Photos were requested for evaluation. On July 12, 2021 the agent and Eberl ECR VM Becker reviewed the photos which reflected an off white Jeld-Wen window with grid, next to the existing bright white non-grid window. Eberl ECR VM Becker contacted Jeld-Wen to find out if something similar to the original window was available in profile and color. The Jeld-Wen W-2500 series in Brilliant White was provided. Eberl ECR VM Becker sent an email to the insured contractor and agent on July 14, 2021 providing this information. The contractor then provided what appeared to be similar photographs of Jeld-Wen windows but are of a different profile and color to advise that a reasonably consistent appearance cannot be achieved.

- The agent's primary concern is the number of people involved in the handling of the claim. He felt it was confusing for the customer, conveyed a lack of authority and did not aid in moving the claim forward. He had very positive feedback on Eberl ECR VM Brandon Becker's intervention and involvement in the claim. SM Hodgson reviewed the agent's concerns and advised Eberl ECR VM Becker would shepherd the claim to conclusion. Eberl ECR VM Becker has made contact with the insured and the contractor and is actively working to confirm the recommended window has been used for replacement prior to reviewing for reasonably consistent appearance.

**Identify Leadership Findings and Service Gaps with our handling**

A review of the claim file identified the following service gaps:



Confidential Produced Pursuant to Protective Order

- Inaccurate information advising the Ph must provide a written request for an engineer inspection by Auto Assist handlers, Pilot and Alacrity ECRs no longer in HRU delayed retention of the engineer through the month of September 2020. A HRU TM reviewed the file October 9, 2020 and approved the hiring of an engineer.

- Lack of verbal communication between State Farm Claims, the agent's office, and the insured. Status follow-ups to the insured after conversations with the contractor regarding sash and window replacement findings were needed. Follow up with agent's office to provide status and difficulty working with the contractor were needed.

- HRU representative in August 2021 advised the insured that we did not have the contractor's contact information on file which caused an unsatisfactory reaction from the insured. The contractor information was readily available in the file notes and documents on file.

**Discuss Action Taken to Address Findings/Service Gaps and Prevent Future Occurrences**

- This claim example was handled by multiple in-office, deployed, and proximity handlers, specific specialists will be provided feedback on their handling of the claim. Further, HRU leadership will review this topic in this week's huddle to cascade to all HRU handlers.

- The claim handler who failed to locate the contractor contact information has been provided feedback and coaching on investigating claims and review of claim files. The specialist's manager has been provided feedback to continue the development of the specialist.

**Indicate any history of performance issues for involved claim handlers. If so, how are we addressing. If not, how are we addressing.**

- No history of performance issues for the immediate claim handlers. This claim example is being reviewed with those handlers.

- HRU leadership will continue our Call to Action plan and communicate the need for prompt and accurate customer contacts through EOM activities and individualized coaching as necessary.

---

**Gwen Hodgson**, CPCU, CLU, ChFC
Claim Section Manager
WCCS IO – Hail Reconciliation Unit
w: 972-657-1824
m: 309-532-4930
gwen.hodgson.ipb5@statefarm.com

<< OLE Object: Picture (Device Independent Bitmap) >>

---

**From:** Kathy Ress
**Sent:** Tuesday, August 3, 2021 11:50 AM
**To:** Gwen Hodgson <gwen.hodgson.lpb5@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>; Kathy Ress <kathy.ress.he8j@statefarm.com>
**Subject:** RE: Agent Complaint: Claim concern

Got a note from Wensley. We'll need you to call the agent first as comments he's been bounced around.

Ok good. I just talked to the agent. Please have Nicole call him first. He has background and has been bounced around a lot. He is heading on vacation so he said Cell is best. Here is the IM.
Keep me posted.,
Thanks
W

Thank you for the call. I am logging off. I have several other pre travel/vacation items to get to this afternoon. However, this claim remains a top priority for me - and seeing this gets the right level of attention and resolve. My cell: 614.769.1660. An unknown number calling will likely go straight to vm...but I will call whomever back. Welcome to initiate via text to me also. Thank you again for engaging.

---

**From:** Gwen Hodgson
**Sent:** Tuesday, August 3, 2021 11:46 AM
**To:** Kathy Ress <kathy.ress.he8j@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** RE: Agent Complaint: Claim concern

We will take care of it, thank you.

---

**Gwen Hodgson**, CPCU, CLU, ChFC
Claim Section Manager
WCCS IO – Hail Reconciliation Unit
w: 972-657-1824
m: 309-532-4930
gwen.hodgson.lpb5@statefarm.com

<< OLE Object: Picture (Device Independent Bitmap) >>

---

**From:** Kathy Ress
**Sent:** Tuesday, August 3, 2021 11:43 AM
**To:** Gwen Hodgson <gwen.hodgson.lpb5@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>; Kathy Ress <kathy.ress.he8j@statefarm.com>
**Subject:** Agent Complaint: Claim concern
**Importance:** High

Gwen,

Please see the executive complaint from the agent. Please have a leader reach out to the agent and customer to see what we need to resolve. I'd appreciate the summary in standard format by EOD Wed. It appears there has been some interaction with the agent.

Wensley is reaching out to the agent to let him know one of our leaders will be in contact in the next couple of hours.

Kathy

---

**From:** Kathy Ress
**Sent:** Tuesday, August 3, 2021 11:35 AM
**To:** Wensley J Herbert <wensley.j.herbert.c18b@statefarm.com>
**Subject:** RE: Claim concern

This is actively being handling in HRU under CM Nicole Manduca with the contractor. Appears "matching" windows yet just a brief review. Will get a summary back on our handling.

---

**From:** Wensley J Herbert
**Sent:** Tuesday, August 3, 2021 11:30 AM
**To:** Kathy Ress <kathy.ress.he8j@statefarm.com>
**Subject:** FW: Claim concern
**Importance:** High

Can you please look this one up? I will call him and let him know we are reviewing it and someone will reach out
Thanks
W

---

**From:** Robert Yi
**Sent:** Tuesday, August 3, 2021 11:27 AM
**To:** Wensley J Herbert <wensley.j.herbert.c18b@statefarm.com>
**Cc:** Beth Lamb <beth.lamb.amqr@statefarm.com>
**Subject:** FW: Claim concern
**Importance:** High

See Chris's request for an OVP to contact the agent. Beth is checking to see if we had a previous complaint on this claim. Beth will let you know.

Robert

---

**From:** Beth Lamb
**Sent:** Tuesday, August 3, 2021 11:22 AM
**To:** Robert Yi <robert.yi.caqa@statefarm.com>
**Cc:** Beth Lamb <beth.lamb.amqr@statefarm.com>



Confidential Produced Pursuant to Protective Order

**Subject:** I: Claim concern
**Importance:** High

NI: Edward A Loeser
CL#: 35-B445-5P5
DOL: 9-01-2019 (Cat)
VPO: K Ress

---

**From:** Chris Schell
**Sent:** Tuesday, August 3, 2021 12:18:05 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Robert Yi
**Subject:** FW: Claim concern

I think Chad sent this in some time ago. Could we get an OVP to call him and work to get back on the rails? Thanks

---

**From:** Chad Harris
**Sent:** Tuesday, August 3, 2021 11:15 AM
**To:** Chris Schell <chris.schell.gxn0@statefarm.com>
**Cc:** Chad Harris <chad.harris.le0x@statefarm.com>
**Subject:** Claim concern
**Importance:** High

Hi Chris,

I hope my memo finds you well. I wish I was emailing you under different circumstances. I am emailing you because I know you (and more importantly, I believe you to be a person who cares)...and based on your current position, I believe this is information a person in your position needs to know.

Re: Homeowner Claim number: 35B4455P5 Date of Loss: 9.1.2019 (Hail CAT claim) Inspection date: 8.17.2020 (this claim has been on-going for almost one year)

- This should be a Department of Insurance Complaint (due to the delays in resolving this claim)
- Perhaps a customer complaint to the Mike Tipsord (due to our dysfunctional processes, delays and poor communication with the insured)
- The insured is beyond frustrated with SF claims; their processes, lack of communication and personnel. Based on what I've personally witnessed and experienced, the insured has every right to be frustrated.
- I have been pulled into this claim by the insured and the contractor. I have attempted to talk with multiple leadership personnel to no avail.
- We have people handling claims that are not SF employees (outside contractors)...who apparently lack the authority to make a decision or solve problems when they occur. Deployed vs. employed processes do not communicate well.
- Finding and identifying a leadership person to talk with...and have them make decisions is almost impossible (to date, it has been impossible)
- Yesterday 8/2/21, I once again reached out to claims leadership due to more errors...only to watch as it was passed down from one person to another and to another.

This is terribly embarrassing for State Farm...and me, as the local agent. Our claims processes need to be reviewed...as they are not working for the customer or the agent. JD Power customer claims satisfaction scores have been telling us –



Confidential Produced Pursuant to Protective Order

what agents are experiencing with more and more regularity. Agents need to know who the appropriate leadership personnel are to make decisions. Right now – that is next to impossible. There appears to be zero accountability within the claims system. No ownership. No accountability. The team environment is failing us and the insured. People simply pass things down to a person who otherwise lacks the authority to make a decision...and the claim stalls, or a new person picks it up and the processes begins again...with no better result.

My ask: This claim needs leadership involvement (not passing it down, again). The leadership person needs to be someone with the authority to review the concerns and make a decision. I am also requesting to have a conversation with said claims leadership – as to avoid add'l mistakes. The claim file and notes appear to be incomplete.

My second ask: This claim should be put into the "process excellence" type file for process review. When we perform poorly – we should take the time to learn from our mistakes and improve our processes. This claim highlights all the current dysfunction within our SF claims operations and processes. Our insured deserves better service than what they are currently receiving from State Farm claims. This claim needs to be resolved without further delay.

Thank you for your time and attention to this matter.

P.S. I am leaving for vacation this afternoon. My cell is 614.769.1660. Thank you.

Respectfully,

*Chad Harris, Agent*

<< OLE Object: Picture (Device Independent Bitmap) >>
**Chad Harris State Farm Agency**
6151 Avery Rd. Ste A Dublin, Ohio 43016
P. 614.889.2778 | F. 614.212.4461
chad@chadharrisinsurance.com
www.chadharrisinsurance.com

NMLS # 2052343

If this communication is securities related, click here for additional disclosures.

# 2022 Fire & AWC Claims: Quality Pillar Strategy

StateFarm

**Where we go, we grow.** We are committed to achieving a culture of operational excellence where our actions lead to growing State Farm. Our excellence will be achieved as #oneteam. We are compelled by our customer-driven focus, with a contemporary leadership mindset that drives success today and positions us for tomorrow. Our team accelerates outcomes through innovative thinking and early adoption of technology. We build confidence in our ability and agility, and inspiring each other to continuously improve and have fun in our service to others.

**Context**
The State Farm mission is to help people manage the risks of everyday life, recover from the unexpected and realize their dreams. **State Farm will drive improvement in claim handling accuracy.** We will be the leader in claim handling accuracy while delivering a differentiated customer experience and competitive cost structure through our operation model transformation.

**Purpose**
What is the purpose of the Pillar Team?

**Outcomes**
- Execute on Quality Plans
- Enhance technical skills and align complexity of work to the skills
- Carry out Model Enhancement guidelines

**Monitoring and measuring**
How will we know the tactics are working?
- 85% All SM Surveys
- Fire Frequency Errors – Wind 6.1%, Hail 6.2%, Water 8.2%, Fire 7.7%
- XX% Auto Frequency Errors

**Potential Obstacles**
What barriers do you anticipate you'll need to overcome?

**Key Players**
- Claims Exec Sponsors
  - VPO Kathy Ress
  - VPO Tyrone Smith
- Pillar Leads
  - Dana Jokerst
  - David Chikahisa
  - Eric Daly
  - Nicole Manduca
- Pillar Workgroup
  - XX

EXHIBIT
2

# 2022 Fire & AWC Claims: Quality Pillar Strategy

State Farm

**Pillar Tactical Roadmap**

- Date – Period of the month planned to execute the tactic
- Outcome – Input one of the three outcomes from the Pillar Outcomes above
- Tactic – Include high level name of the tactic
- Tactic Definition/Deliverable – Briefly define the tactic/deliverable being executed
- Milestone – Outline the expected result of the tactic and by when will the result occur (Result may be quantitative or qualitative)

| QUARTER ONE | | | | |
|---|---|---|---|---|
| JANUARY | | | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |
| FEBRUARY | | | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |
| MARCH | | | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |
| QUARTER TWO | | | | |
| APRIL | | | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |
| MAY | | | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |
| JUNE | | | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |
| QUARTER THREE | | | | |
| JULY | | | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |
| AUGUST | | | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | SEPTEMBER | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |
| | | QUARTER FOUR | | |
| | | OCTOBER | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |
| | | NOVEMBER | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |
| | | DECEMBER | | |
| Date | Outcome | Tactic | Tactic Definition/Deliverable(s) | Milestone |
| | | | | |
| | | | | |
| | | | | |

[redacted]

# 2022 Fire & AWC Claims: Quality Pillar Strategy

State Farm

## APPENDIX

Communication Strategies and Key Messages

*Claims Focus, Tactics & Measures*

| Strategic Priority | Focus | Tactics | How will we measure? |
|---|---|---|---|
| <br>**Strategic Priority #3: Drive improvement** in claim handling accuracy and operational expense. | ✓ Reduce the volatility of our Claims loss trends and improve our error rates.<br>✓ Increase the focus on the internal drivers of our quality results.<br>✓ Effectively execute on budget goals and meet targets.<br>✓ Achieve and sustain productivity targets.<br>✓ Effectively manage absence rates. | 1. Focus on quality claim handling practices to reduce error rates.<br>2. Execute on CRT modernized survey approach, including coaching to improved quality performance.<br>3. Build proficiency in use of virtual capabilities with quality results.<br>4. Build proficiency in use of CCC platform. Ensure capabilities are maximized by Estimatics and Total Loss associates following implementation.<br>5. Positively impact ECR expense trends by meeting productivity targets and leveraging available enterprise resources and virtual capabilities.<br>6. Manage DCCE through proactive claim handling, driving eligible files to CLC, reviewing litigation expenses, and use of matter screens.<br>7. Identify and address absence trends early. | ✓ Reinspection Results<br>✓ Section Manager Survey Results<br>✓ Received to Closed Claim Ratio<br>✓ Reduced lead time (or additional productivity/SLO metrics we determine are needed)<br>✓ % of employees meeting or exceeding productivity goals<br>✓ Expense and Roadmap goals<br>✓ ECR Expense Trends<br>✓ DCCE Trends<br>✓ Absence Trends |

| | |
|---|---|
| From: | HOME SYS-MCT-LYNCARCH [/O=STATEFARM/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=A6FB63A0115C428C8D0BAD6604AE1CB1] |
| Sent: | 7/1/2020 6:31:03 PM |
| To: | Greg Robinson [greg.robinson.l420@statefarm.com]; Nicole Manduca [nicole.manduca.lok2@statefarm.com] |
| BCC: | greg.robinson.l420@statefarm.com; nicole.manduca.lok2@statefarm.com |
| Subject: | SendLyncArchivingDataToHadoop |

**Transcript for instant messaging (IM) session: Conversation between greg.robinson.l420@statefarm.com and nicole.manduca.lok2@statefarm.com**

**greg.robinson.l420@statefarm.com [2020-06-29 15:33:28 (UTC)]:**
So they will provide a claim listing?
**nicole.manduca.lok2@statefarm.com [2020-06-29 15:33:40 (UTC)]:**
Yes
**greg.robinson.l420@statefarm.com [2020-06-29 15:34:08 (UTC)]:**
Just need to understand that second piece around the opportunity
**nicole.manduca.lok2@statefarm.com [2020-06-29 15:34:46 (UTC)]:**
Here's where my head goes.....
**nicole.manduca.lok2@statefarm.com [2020-06-29 15:36:29 (UTC)]:**
If in fact Full Roof Replacements is our biggest bucket of opportunity, we think our best option is to first focus on small hail/light wind. With that focus, we would best benefit by having an easy way to track small hail/light wind and correspond to FRR. This gets to the data point we need to automate. Right now, we will have to use 'key word' searches in ECS to match the hail size/wind speed with the Payment Code of TR, PRR, etc.
**nicole.manduca.lok2@statefarm.com [2020-06-29 15:37:12 (UTC)]:**
Can you hop on a call with me briefly after this wraps?

EXHIBIT
3

Exhibit U - 015

**From:** home.sys-mct-lyncarch.883c00@statefarm.com [home.sys-mct-lyncarch.883c00@statefarm.com]
**Sent:** 12/4/2020 7:20:55 PM
**To:** nicole.manduca.lok2@statefarm.com; dana.jokerst.pmhi@statefarm.com
**Subject:** SendLyncArchivingDataToHadoop

**Transcript for instant messaging (IM) session: Conversation between nicole.manduca.lok2@statefarm.com and dana.jokerst.pmhi@statefarm.com**

**nicole.manduca.lok2@statefarm.com [2020-12-02 16:51:06 (UTC)]:**
The hypothesis helped us see our biggest buckets of opportunity (indemnity spend)
**dana.jokerst.pmhi@statefarm.com [2020-12-02 16:51:24 (UTC)]:**
That is great
**dana.jokerst.pmhi@statefarm.com [2020-12-02 16:51:41 (UTC)]:**
So Accenture reps will be on the workshop calls?
**nicole.manduca.lok2@statefarm.com [2020-12-02 16:53:04 (UTC)]:**
I have to get my head around what that will look like for Water, but essentially our analysis found that we (SF) replaced roofs at a far higher percentage for small hail/light wind compared to industry average. For example, we replaced 85% on small hail compared to industry average of 8-10%, followed by 65% on light wind compared to industry average of about 5%. When we ran the dollars, that narrowed our focus of opportunity.
**nicole.manduca.lok2@statefarm.com [2020-12-02 16:53:14 (UTC)]:**
I believe they will just not sure when that begins.
**dana.jokerst.pmhi@statefarm.com [2020-12-02 16:53:43 (UTC)]:**
Wow! That is significant!
**nicole.manduca.lok2@statefarm.com [2020-12-02 16:54:37 (UTC)]:**
Indeed. That also supported our need for data integrity (updating participants, additional inspections) so we could track if particular contracting firms drove these outcomes and/or where our skill opportunities resided.
**nicole.manduca.lok2@statefarm.com [2020-12-02 16:56:15 (UTC)]:**
You'll be provided the indemnity spend in the buckets of opportunity - it'll stay at your level and higher. That's how you'll engage Wendy and the O's on how you prioritize your focus and guidelines. For example, one of your buckets may be a $50M opportunity if our Accuracy improves in that space.
**dana.jokerst.pmhi@statefarm.com [2020-12-02 17:01:12 (UTC)]:**
That's incredible

EXHIBIT
4

# 2020 Fire Weather Leadership Business Plan

Accuracy Tactical Plan

StateFarm

Where we go, we grow.

We are committed to achieving a culture of operational excellence where our actions lead to growing State Farm®. Our excellence will be achieved as #oneteam. We are compelled by our customer-driven focus, with a contemporary leadership mindset that drives success today and positions us for tomorrow. Our team accelerates outcomes through innovative thinking and early adoption of technology. We build confidence in our ability and agility, and inspiring each other to continuously improve and have fun in our service to others.

**Accuracy*** Drive improvement in claim handling accuracy.

Outcomes

- Improved Wind/Hail Trends
- A minimum of 80% on 100% Section Manager Surveys

Priorities

Year-over-year trends indicate Wind/Hail and Non-Weather Water perils provide the greatest opportunity to impact enterprise results, accounting for 57% of Net Paid Indemnity (NPI) and 70% of claim counts. Wind/Hail losses are 40% of NPI and 49% of claim counts, with Incurred Frequency up 1.2% YOY. Water losses account for 17% of NPI and 21% of claim counts, with Incurred Frequency down 4.9% YOY.

Wind/Hail Macro View of Quality Insights and Approach

EXHIBIT
5

FOR INTERNAL STATE FARM USE ONLY — Contains CONFIDENTIAL information which may not be disclosed without express written authorization.




Confidential Produced Pursuant to Protective Order

# 2020 Fire Weather Leadership Business Plan

## Accuracy Tactical Plan

StateFarm

| Trends | Root Causes | Solution Tactics | Success Measures | Resource Needs |
|---|---|---|---|---|
| **Enterprise (as of Dec 2019)**<br>Trends / Wind/Hail<br>Overall NPI: 40% $4.4B<br>NPI Increase: 10% $400M<br>Overall Counts: 49%<br>Paid Severity: $10,090<br>PS Increase: 7.5% $760<br>Incurred Frequency: 1.2%<br><br>**2020 Five States of Focus Ranked Opportunity by Peril**<br>Wind/Hail: TX, FL, MI, NY, CA<br><br>**Top Five States Enterprise Ranked Opportunity by Peril**<br>Wind/Hail: TX, FL, GA, OH, PA | **Skills Set Gaps**<br>• Investigation & Coverage Analysis<br>  ○ Damage Identification<br>• Estimate Writing<br>  ○ Scoping & Documentation<br>• Estimate Reconciliation<br><br>**Leadership Gaps**<br>• Consistent coaching to quality, including CM to SM, SM to TM and TM to CH<br>• Proactive use of monitoring tools<br>• Accountability to outcomes | **Skills Set Tactics**<br>Applies to leaders and claim handlers<br>• MyBlock Performance Framework with Technical Skill Documentation<br>• Upskill in Office and Deployed workforce on Xactimate<br>• Modified settlement authority<br><br>Wind/Hail<br>• Haag Engineering Baseline Training<br>• Total Roof Overturn Authority<br>• Damage ID & Coverage Decision TM File Review and Coaching: 35 payments with Reason Code TR, PR or NR and 35 CWP to Paid status<br><br>**Leadership Tactics**<br>Applies to CM, SM and TM leaders<br>• MyBlock Performance Framework Validation<br>• Use XactAnalysis to monitor progress and reskill as identified<br>• Modified settlement authority<br>• EOM Coaching Activities with focus on technical instruction<br><br>Wind/Hail<br>• Total Roof Overturn and 35 Payment Monitoring | • Estimate Difference<br>• Average Reconciliation Payment<br>• R12 Paid Severity<br>• Wind/Hail<br>  ○ Total Roof Overturn Rate | • Haag Engineering Training<br>• Consulting Services<br>• Claims Training Support<br>• Reinspection Shared Services |

**Where we go, we grow.** But first, where do I need to lead my teams to grow.

- 2019 SM Survey Results indicates our opportunities are:
  1. Investigation - Damage Identification
  2. Estimate Writing – Scoping & Documentation
  3. Estimate Reconciliation
- Consider the opportunities and results below in our Fire Weather claim handling

FOR INTERNAL STATE FARM USE ONLY — Contains CONFIDENTIAL information which may not be disclosed without express written authorization.




Confidential Produced Pursuant to Protective Order

# 2020 Fire Weather Leadership Business Plan

## Accuracy Tactical Plan

StateFarm

| | | 2019 SM Survey Results | | | | Investigation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Investigation | Damage Evaluation | Resolution | Overall | Initial Contact | Diligent Investigation | Initial Loss of Use Established | Effective Mgmt of Loss of Use | Subrogation |
| STEW | Huffman | 65% | 80% | 73% | 72% | 59% | 87% | 33% | 57% | 67% |
| | Piha | 59% | 61% | 55% | 59% | 56% | 60% | 67% | 67% | 100% |
| | Short | 74% | 86% | 71% | 77% | 66% | 79% | 100% | 100% | 73% |
| | Speckman | 64% | 85% | 58% | 67% | 56% | 75% | 43% | 80% | 0% |
| | **Moore** | **62%** | **77%** | **64%** | **68%** | **56%** | **71%** | **45%** | **70%** | **43%** |
| HRU | Colbert | 89% | 93% | 63% | 73% | | 92% | | | |
| | McCardle | 82% | 87% | 62% | 70% | | 82% | | | |
| | **Manduca** | **85%** | **90%** | **61%** | **71%** | | **87%** | | | |
| LLRU | Hodgson | 66% | 68% | 47% | 61% | 56% | 71% | 57% | 57% | 88% |
| | **Manduca** | **66%** | **68%** | **47%** | **61%** | **56%** | **71%** | **57%** | **57%** | **88%** |
| Deployed | Rauschendorfer | 61% | 78% | 59% | 69% | 54% | 69% | 0% | | 57% |
| | Thoma | 82% | 81% | 78% | 81% | 80% | 85% | 0% | | |
| | Chikahisa | | | | | | | | | |
| | Frampton/Ellerman | 71% | 70% | 75% | 71% | 63% | 48% | 100% | 100% | |
| | Rentz | 64% | 64% | 77% | 66% | 65% | 63% | 0% | 0% | 100% |
| | Robinson | 63% | 65% | 82% | 68% | 64% | 66% | 0% | | 0% |
| | Tesoro | 71% | 78% | 73% | 74% | 73% | 77% | 0% | 60% | 0% |
| | Young | 72% | 70% | 63% | 72% | 75% | 70% | 100% | 33% | |
| | Gardner | | | | | | | | | |
| | Betz | 82% | 75% | 61% | 74% | 56% | 69% | | | 0% |
| | Escott | 75% | 77% | 73% | 76% | 89% | 60% | 100% | 100% | |
| | Galloway | 69% | 76% | 64% | 71% | 72% | 64% | 100% | 100% | |
| | Mack | 68% | 72% | 70% | 73% | 86% | 49% | | | |
| | Nasi | 83% | 83% | 82% | 83% | 82% | 75% | | | |
| | Parilo | | | | | | | | | |

| Damage Evaluation | | | | | Resolution | | |
|---|---|---|---|---|---|---|---|
| Thorough Scope of Cov A Loss | Estimate | Thorough Scope of Cov B Loss | Personal Property Inventories Verified | PP Settlement Supported by Documentation | Estimate Reconciliation | Management Involvement | Active Handling and Resolution |
| 71% | 67% | 85% | 59% | 79% | 56% | 78% | 75% |
| 50% | 33% | 62% | 86% | 57% | 37% | 20% | 69% |
| 82% | 86% | 86% | 95% | 78% | 59% | 64% | 76% |
| 58% | 43% | 89% | 95% | 82% | 28% | 50% | 69% |
| **65%** | **56%** | **81%** | **91%** | **76%** | **42%** | **52%** | **72%** |
| 96% | 75% | 100% | 67% | 67% | 79% | 81% | 38% |
| 88% | 100% | 67% | 67% | 100% | 76% | 77% | 45% |
| **92%** | **83%** | **83%** | **67%** | **80%** | **77%** | **79%** | **42%** |
| 82% | 88% | 54% | | | 33% | 59% | 38% |
| **82%** | **88%** | **54%** | | | **33%** | **59%** | **38%** |
| 54% | 69% | 0% | | 57% | 44% | 62% | 55% |
| 80% | 85% | 0% | | | 56% | 68% | 84% |
| | | | | | | | |
| 89% | 61% | 77% | 71% | 51% | 33% | 73% | 83% |
| 65% | 63% | 0% | 0% | 100% | 88% | 75% | 75% |
| 64% | 66% | 0% | | 0% | 60% | 62% | 89% |
| 71% | 77% | 0% | 60% | 0% | 40% | 73% | 69% |
| 75% | 70% | 100% | 33% | | 42% | 45% | 71% |
| | | | | | | | |
| 90% | 49% | 90% | 93% | 57% | 33% | 23% | 73% |
| 91% | 47% | 90% | 93% | 67% | 33% | 61% | 79% |
| 87% | 59% | 86% | 89% | 61% | 33% | 53% | 72% |
| 90% | 57% | 92% | 91% | 64% | 50% | 58% | 75% |
| 90% | 55% | 96% | 98% | 78% | 75% | 89% | 82% |
| | | | | | | | |

FOR INTERNAL STATE FARM USE ONLY — Contains CONFIDENTIAL information which may not be disclosed without express written authorization.


Exhibit U - 019

Confidential Produced Pursuant to Protective Order

# 2020 Fire Weather Leadership Business Plan

Accuracy Tactical Plan

State Farm

**Strategy Execution Exercise**

- Clear outcomes and common understanding
- Mutual commitment and cooperation
- Why, How, What execution

People

| Tactic | Success Measure by Role | Frequency of Success Measure | EOM Coaching Activity by Role |
|---|---|---|---|
| Execute on 2020 Fire Property Claims Plan with excellence<br><br>1.30.20 2020 Fire Claims Quality Plan I<br><br>• MyBlock5<br>• ORT Results<br>• Total Roof Authority and Monitoring<br>• Reconciliation Accuracy | MyBlock 5<br>VPO<br>CM<br>SM<br>TM<br>CH<br><br>ORT Results<br>VPO<br>CM<br>SM<br>TM<br>CH<br><br>Total Roof Authority and Monitoring<br>VPO<br>CM<br>SM<br>TM<br>CH<br><br>Reconciliation Accuracy<br>VPO<br>CM<br>SM<br>TM<br>CH | MyBlock 5<br>VPO<br>CM<br>SM<br>TM<br>CH<br><br>ORT Results<br>VPO<br>CM<br>SM<br>TM<br>CH<br><br>Total Roof Authority and Monitoring<br>VPO<br>CM<br>SM<br>TM<br>CH<br><br>Reconciliation Accuracy<br>VPO<br>CM<br>SM<br>TM<br>CH | MyBlock 5<br>VPO<br>CM<br>SM<br>TM<br>CH<br><br>ORT Results<br>VPO<br>CM<br>SM<br>TM<br>CH<br><br>Total Roof Authority and Monitoring<br>VPO<br>CM<br>SM<br>TM<br>CH<br><br>Reconciliation Accuracy<br>VPO<br>CM<br>SM<br>TM<br>CH |
| Conduct Hail Damage Identification training | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |
| Assess & adjust settlement authority based on quality claim handling; IO focus on Ordinance & Law, Deployed focus on Damage ID and Documentation | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |
| Refresh Coaching Activities with focus on technical instruction | VPO<br>CM<br>SM<br>TM | VPO<br>CM<br>SM<br>TM | VPO<br>CM<br>SM<br>TM |

FOR INTERNAL STATE FARM USE ONLY — Contains CONFIDENTIAL information which may not be disclosed without express written authorization.





Confidential Produced Pursuant to Protective Order

# 2020 Fire Weather Leadership Business Plan

Accuracy Tactical Plan

StateFarm

| | | | |
|---|---|---|---|
| | CH | CH | CH |
| Leaders maintain authority on overturns and monitor payment activity on CWP claims | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |
| Upskill claims workforce on Xactimate | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |
| Targeted use of XactAnalysis to coach to performance results | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |

FOR INTERNAL STATE FARM USE ONLY — Contains CONFIDENTIAL information which may not be disclosed without express written authorization.




Confidential Produced Pursuant to Protective Order

# 2020 Fire Weather Leadership Business Plan

StateFarm

Accuracy Tactical Plan

Process

| Tactic | Success Measure by Role | Frequency of Success Measure | EOM Coaching Activity by Role |
|---|---|---|---|
| Align Deployed workforce to damage areas based on skills sets | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |
| Implement IO Call Recording/Screen Capture to enable root cause identification | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |
| Update Xactimate with Wind/Hail enhancements and use effectively | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |
| Activate state model approach to Wind/Hail Peril in alignment with Claim Insights testing | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |

FOR INTERNAL STATE FARM USE ONLY — Contains CONFIDENTIAL information which may not be disclosed without express written authorization.




Confidential Produced Pursuant to Protective Order

# 2020 Fire Weather Leadership Business Plan

StateFarm

Accuracy Tactical Plan

Technology

| Tactic | Success Measure by Role | Frequency of Success Measure | EOM Coaching Activity by Role |
|---|---|---|---|
| Address contractor phone activity into IO operations | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |
| Explore real-time "Xactimate Estimate Check" prior to issuing settlement draft | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |
| Discover opportunity for advanced weather data beyond atmospheric data, including Geospatial Intelligence Model Testing | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |
| Test Claim Data Insights opportunities to prioritize new claims based on file markers, optimize timing of management review, and enhance inventory management for Wind/Hail claims | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH | VPO<br>CM<br>SM<br>TM<br>CH |

FOR INTERNAL STATE FARM USE ONLY — Contains CONFIDENTIAL information which may not be disclosed without express written authorization.




Confidential Produced Pursuant to Protective Order

**From:** Nicole Manduca [/O=STATEFARM/OU=HOME/CN=RECIPIENTS/CN=LOK2]
**Sent:** 1/16/2023 10:20:46 PM
**To:** Tammy Higa-Seaver [tammy.higa-seaver.c7sy@statefarm.com]
**BCC:** Nicole Manduca [nicole.manduca.lok2@statefarm.com]; Tammy Higa-Seaver [tammy.higa-seaver.c7sy@statefarm.com]
**Subject:** FW: Wind/Hail Peril Trends
**Attachments:** Total Homeowners Wind Hal - December 2022.pdf; Wind Hail 5 year trends.pdf

We can talk through this in a touch point but thought you may find the information interesting to see the year-over-year comparisons. We started the Wind/Hail FME work the summer of 2020 (pilot in one count in DFW) then scaled December 2020. Volume down while severity up quite a bit. About a $1.4B decrease in indemnity from 2020 to 2021 (Wind Hail 5 year trends attachment).

I also received additional data this morning on our Total Roof to Partial Roof Replacement ratio. When we started this work, we were replacing roofs at a rate of 5.6 to every 1 we repaired. In 2021 we landed at 2.0 for every 1 and 2022 increased to 2.2 to every 1.

**From:** Terrie Lemon <terrie.lemon.hhi1@statefarm.com>
**Sent:** Friday, January 13, 2023 11:30 AM
**To:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** Wind/Hail Peril Trends

Hi Nicole,
Attached are some views of the Enterprise wind/hail results over the prior 5-year period.

Please let me know if you have any questions, or require additional information, or wish to see them in a different format.

Thank you
Terrie

Terrie Lemon, CPCU
*Sr. Business Analyst*
*P&C Analytics - Claims*
E-Mail | terrie.lemon.hhi1@statefarm.com

re3markable™

**Every** Customer | **Every** Interaction | **Every** Day

*This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.*

EXHIBIT
6

From: HOME SYS-MCT-LYNCARCH [/O=STATEFARM/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=A6FB63A0115C428C8D0BAD6604AE1CB1]
Sent: 11/19/2021 12:46:55 AM
To: Tom Moss [tom.moss.c4sg@statefarm.com]; Nicole Manduca [nicole.manduca.lok2@statefarm.com]
BCC: tom.moss.c4sg@statefarm.com; nicole.manduca.lok2@statefarm.com
Subject: SendLyncArchivingDataToHadoop

**Transcript for instant messaging (IM) session: Conversation between tom.moss.c4sg@statefarm.com and nicole.manduca.lok2@statefarm.com**

**tom.moss.c4sg@statefarm.com [2021-11-16 21:50:24 (UTC)]:**
looks like we are off the hook today
**nicole.manduca.lok2@statefarm.com [2021-11-16 21:51:05 (UTC)]:**
We are - just traded notes w/ Dana and confirmed w/ KR that we'll cover in December call.
**nicole.manduca.lok2@statefarm.com [2021-11-16 21:51:19 (UTC)]:**
I think that time is better as we can show a 'year in review' for Water and Wind/Hail FME
**tom.moss.c4sg@statefarm.com [2021-11-16 21:51:21 (UTC)]:**
cool beans - we will have more info to share then
**nicole.manduca.lok2@statefarm.com [2021-11-16 21:51:31 (UTC)]:**
Yep
**nicole.manduca.lok2@statefarm.com [2021-11-16 21:51:40 (UTC)]:**
When did we introduce FED?
**tom.moss.c4sg@statefarm.com [2021-11-16 21:51:44 (UTC)]:**
do you have a minute to visit right after this call
**tom.moss.c4sg@statefarm.com [2021-11-16 21:51:51 (UTC)]:**
q3 2020
**nicole.manduca.lok2@statefarm.com [2021-11-16 21:52:00 (UTC)]:**
As long as it's before 4p C as have call w/ KR at that time
**tom.moss.c4sg@statefarm.com [2021-11-16 21:52:19 (UTC)]:**
she is very demanding of your time :)
**nicole.manduca.lok2@statefarm.com [2021-11-16 21:52:34 (UTC)]:**
Okay - would be interesting to see Q3-Q4 2020 Wind/Hail FED and compare to 2021. Concerned to see the larger % for Wind and Hail is flat.
**nicole.manduca.lok2@statefarm.com [2021-11-16 21:53:29 (UTC)]:**
I find all of that confusing when seeing the TR to PRR ratio .... feel similar on Severity trends. We have gotten better, right? Or am I just snowing myself
**tom.moss.c4sg@statefarm.com [2021-11-16 21:53:57 (UTC)]:**
we have definitely gotten better
**nicole.manduca.lok2@statefarm.com [2021-11-16 21:54:12 (UTC)]:**
But do the results (that matter) prove that? They have to right?
**tom.moss.c4sg@statefarm.com [2021-11-16 21:56:13 (UTC)]:**
one of the challenges in comparing q3/4 2020 to this year is that we switched where RIs make the finding for paying for an undamaged roof. It was under SC03 (scoping) in 2020. It is now in CA01 (coverage analysis).
**tom.moss.c4sg@statefarm.com [2021-11-16 21:56:26 (UTC)]:**
but yes, the results show it
**tom.moss.c4sg@statefarm.com [2021-11-16 21:57:03 (UTC)]:**
if we look at the reason code % of TR, PRR, and NR - the overall % shows improvement
**nicole.manduca.lok2@statefarm.com [2021-11-16 21:57:03 (UTC)]:**

EXHIBIT
7

Exhibit U - 025

Very good point
**nicole.manduca.lok2@statefarm.com [2021-11-16 21:57:12 (UTC)]:**
Also true
**tom.moss.c4sg@statefarm.com [2021-11-16 21:59:55 (UTC)]:**
each % point difference is about 5k claim, so if we didn't pay for 1% of claims that did not have damage and were not covered but would have been paid for before based on lack of skill/will, that is 5k claims at $15,769 avg severity or $78.8 million
**nicole.manduca.lok2@statefarm.com [2021-11-16 22:04:13 (UTC)]:**
Our call is pushed to 4:15 if you happen to be available
**nicole.manduca.lok2@statefarm.com [2021-11-16 22:04:15 (UTC)]:**
No worries if not
**tom.moss.c4sg@statefarm.com [2021-11-16 22:11:08 (UTC)]:**
So sorry, I stepped in to visit with Harris
**tom.moss.c4sg@statefarm.com [2021-11-16 22:12:59 (UTC)]:**
BTW, did Eric just tell me not to speak in the Dec meeting?
**nicole.manduca.lok2@statefarm.com [2021-11-16 22:14:45 (UTC)]:**
He may have - was it a joke?
**tom.moss.c4sg@statefarm.com [2021-11-16 22:21:29 (UTC)]:**
don
**tom.moss.c4sg@statefarm.com [2021-11-16 22:21:35 (UTC)]:**
don't think so
**nicole.manduca.lok2@statefarm.com [2021-11-16 22:21:41 (UTC)]:**
jerk move
**tom.moss.c4sg@statefarm.com [2021-11-16 22:22:08 (UTC)]:**
He's yelled at me a few times this year - doesn't like some of our direction but it's not his call
**nicole.manduca.lok2@statefarm.com [2021-11-16 22:25:21 (UTC)]:**
so not cool
**tom.moss.c4sg@statefarm.com [2021-11-16 22:26:22 (UTC)]:**
it's all good. I've worked with him for 13 years and if he doesn't get his way he bulls through things.



Confidential Produced Pursuant to Protective Order

**From:** home.sys-mct-lyncarch.883c00@statefarm.com [home.sys-mct-lyncarch.883c00@statefarm.com]
**Sent:** 3/5/2021 10:48:16 PM
**To:** kathy.ress.he8j@statefarm.com; nicole.manduca.lok2@statefarm.com
**Subject:** SendLyncArchivingDataToHadoop

**Transcript for instant messaging (IM) session: Conversation between kathy.ress.he8j@statefarm.com and nicole.manduca.lok2@statefarm.com**

**kathy.ress.he8j@statefarm.com [2021-03-03 20:21:27 (UTC)]:**
WIll you have W/Hdashboard ready for next month quality check in we could highlight in this call?
**nicole.manduca.lok2@statefarm.com [2021-03-03 20:21:44 (UTC)]:**
Would love to
**kathy.ress.he8j@statefarm.com [2021-03-03 20:22:19 (UTC)]:**
Very good. We're going to focus on Wind/Hail TX, IL and GA. and the FME dashboard
**kathy.ress.he8j@statefarm.com [2021-03-03 20:22:23 (UTC)]:**
Will that work for you?
**nicole.manduca.lok2@statefarm.com [2021-03-03 20:23:04 (UTC)]:**
i'm drooling :o3:o3:o3
**kathy.ress.he8j@statefarm.com [2021-03-03 20:23:34 (UTC)]:**
lol!
**nicole.manduca.lok2@statefarm.com [2021-03-03 20:24:19 (UTC)]:**
Passion project...I am so excited and optimistic (and I believe steeped in reality) that we WILL realize improvements in Wind/Hail trends in '21
**kathy.ress.he8j@statefarm.com [2021-03-03 20:29:57 (UTC)]:**
SIlver platter for you.
**nicole.manduca.lok2@statefarm.com [2021-03-03 20:30:11 (UTC)]:**
:P
**kathy.ress.he8j@statefarm.com [2021-03-03 20:30:19 (UTC)]:**
lol...

EXHIBIT
8

| | |
|---|---|
| **From:** | home.sys-mct-lyncarch.883c00@statefarm.com [home.sys-mct-lyncarch.883c00@statefarm.com] |
| **Sent:** | 9/28/2020 9:22:30 AM |
| **To:** | wendy.mazza.c9s2@statefarm.com; nicole.manduca.lok2@statefarm.com |
| **Subject:** | SendLyncArchivingDataToHadoop |

**Transcript for instant messaging (IM) session: Conversation between wendy.mazza.c9s2@statefarm.com and nicole.manduca.lok2@statefarm.com**

**wendy.mazza.c9s2@statefarm.com [2020-09-24 20:11:51 (UTC)]:**
Are we still moving forward with having the Insight for accuweather and ISO info?

**wendy.mazza.c9s2@statefarm.com [2020-09-24 20:11:58 (UTC)]:**
That might be a good call out for Fire.

**nicole.manduca.lok2@statefarm.com [2020-09-24 20:12:18 (UTC)]:**
Insight for ISO, yes. Potential Match Locator - however it is not in flight yet.

**nicole.manduca.lok2@statefarm.com [2020-09-24 20:12:29 (UTC)]:**
Additional approvals needed from P&C

**wendy.mazza.c9s2@statefarm.com [2020-09-24 20:12:37 (UTC)]:**
Got it. Thanks

**nicole.manduca.lok2@statefarm.com [2020-09-24 20:13:34 (UTC)]:**
My understanding is ET is working on an ECS enhancement (not sure where it's prioritized) to pull in Accuweather data at FNOL. Again, not in flight.

**wendy.mazza.c9s2@statefarm.com [2020-09-24 20:14:17 (UTC)]:**
But our work might help inform what the possibilities are with it, right?

**wendy.mazza.c9s2@statefarm.com [2020-09-24 20:14:29 (UTC)]:**
What would you highlight as the "hot" topic for Fire?

**nicole.manduca.lok2@statefarm.com [2020-09-24 20:14:33 (UTC)]:**
Take that thought further for me...

**nicole.manduca.lok2@statefarm.com [2020-09-24 20:15:04 (UTC)]:**
I think expanding/broadening management review on higher hail/wind severity threshold nets us the most gain from now until the end of the year.

**wendy.mazza.c9s2@statefarm.com [2020-09-24 20:15:09 (UTC)]:**
Since we are getting the acuweather data, and how we are using and its impact on claim outcomes. That will help push the ET work faster.

**wendy.mazza.c9s2@statefarm.com [2020-09-24 20:15:28 (UTC)]:**
If it shows positive outcomes.

**nicole.manduca.lok2@statefarm.com [2020-09-24 20:15:45 (UTC)]:**
Agree. We are having some learnings around Accuweather in/outside of the model. It's a helpful data point but it's not the end-all.

**wendy.mazza.c9s2@statefarm.com [2020-09-24 20:15:54 (UTC)]:**
Got it.

**nicole.manduca.lok2@statefarm.com [2020-09-24 20:17:19 (UTC)]:**
I think the Accuweather, Management Reviews and Roof Skills Review are the highlights. Art of the Conversation rounds it out in that with improved quality, inevitably we are engaging in tougher conversations. This training helps in having courteous and effective conversations when we are unable to extend coverage or only partial coverage.

**wendy.mazza.c9s2@statefarm.com [2020-09-24 20:17:56 (UTC)]:**
(y)

**nicole.manduca.lok2@statefarm.com [2020-09-24 20:22:46 (UTC)]:**
I am now seeing that I likely was not supposed to be invited to this call. Good grief

**wendy.mazza.c9s2@statefarm.com [2020-09-24 20:23:21 (UTC)]:**
Youre good.

EXHIBIT
9

**From:** Nicole Manduca [/O=STATEFARM/OU=HOME/CN=RECIPIENTS/CN=LOK2]
**Sent:** 10/20/2021 6:19:26 PM
**To:** Tom Moss [tom.moss.c4sg@statefarm.com]; Scott Welsh [scott.welsh.cx30@statefarm.com]
**BCC:** Nicole Manduca [nicole.manduca.lok2@statefarm.com]; Tom Moss [tom.moss.c4sg@statefarm.com]; Scott Welsh [scott.welsh.cx30@statefarm.com]
**Subject:** FW: Q3 TTR: PRR: SEO Update Wind/Hail and Fire End to End
**Attachments:** image005.jpg; image006.png; image007.jpg; image008.jpg; TR_PRR_SS.PNG

Hi friends –

Sharing the updated graph with data back to April 2020. Are you needing me to assist with the following or is this what Tom is compiling?

Also, what is our YTD % Total Roofs overall and how does that compare to a year ago, 2 years ago? (Not sure if we have 2 years data) How do we compare today against this statement?

- *Baseline:* Analysis of 3-year data validated Full Roof Replacements were paid at 63% frequency for Severity 3 Wind and 90% frequency for Severity 3 Hail.
- *Industry Best:* Industry Best FRR on light wind and small hail averages a 5-10% frequency, therefore an internal quality improvement opportunity of 53-58% for light wind and 80-85% for small hail (Source: Accenture Consulting Services).

Nicole

**From:** Zach Olson
**Sent:** Wednesday, October 20, 2021 11:11 AM
**To:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Cc:** Sean McCary <sean.mccary.nlzg@statefarm.com>
**Subject:** RE: Q3 TTR: PRR: SEO Update Wind/Hail and Fire End to End

Yep, just pulled:

**Zach Olson** CPCU®, ChFC®, CLU®, FLMI®, MBA
*Data Analyst – Advanced Analytics*
Bloomington, IL
zach.olson.tnmu@statefarm.com

**From:** Nicole Manduca
**Sent:** Wednesday, October 20, 2021 1:10 PM
**To:** Zach Olson <zach.olson.tnmu@statefarm.com>
**Cc:** Sean McCary <sean.mccary.nlzg@statefarm.com>
**Subject:** RE: Q3 TTR: PRR: SEO Update Wind/Hail and Fire End to End

EXHIBIT
10

Hi Zach –

I went through my folder and located the results for May and June 2020 which are attached below. I cannot recall if we ever had a view back to April 2020 but know that is what Kathy is hoping for if it exists. If it does not, we will just need to update the visual to include May and June of 2020. Kathy originally requested our summary be due yesterday and then obviously we received the follow up – is it possible to receive an updated graphic by EOD today?



Confidential Produced Pursuant to Protective Order

## Wind-Hail Quality Focus - Enterprise

- Trend line represents the ratio of payments for Total Roofs (TR) to Partial Roof Replacements (PRR) Enterprise-wide from May 2020 thru April 2021 for State Farm
- May 2020 resulted in an 4.5:1 ratio compared to April 2021 at a 1.6:1 ratio, an indicator of improved quality



- Trend line represents the ratio of payments for Total Roofs (TR) to Partial Roof Replacements (PRR) Enterprise-wide from May 2020 thru May 2021
- May 2020 resulted in an 8:1 ratio compared to May 2021 at a 2.5:1 ratio, an indicator of improved quality



**From:** Nicole Manduca
**Sent:** Tuesday, October 19, 2021 10:55 AM
**To:** Zach Olson <zach.olson.tnmu@statefarm.com>
**Cc:** Sean McCary <sean.mccary.nlzg@statefarm.com>
**Subject:** FW: Q3 TTR: PRR: SEO Update Wind/Hail and Fire End to End

Hi Zach –

Kathy is prepping Wensley for his Senior Executive Offsite meeting next week. You will note she is requesting the TR to PRR ratio graph to be populated from April 2020 through September 2021. Are you able to assist in providing this view? I may have snag-it's of earlier months in 2020 if for some reason the data is no longer available.



Confidential Produced Pursuant to Protective Order

Thank you in advance – please let me know if any questions.

Nicole

**From:** Kathy Ress
**Sent:** Tuesday, October 19, 2021 10:51 AM
**To:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>; Scott Welsh <scott.welsh.cx30@statefarm.com>; Tom Moss <tom.moss.c4sg@statefarm.com>
**Cc:** Gregory E Jones <gregory.e.jones.gzwh@statefarm.com>
**Subject:** RE: Q3 TTR: PRR: SEO Update Wind/Hail and Fire End to End

Thanks. Looking for the story so will be helpful to provide headlines from this. Appreciate the help.

**From:** Nicole Manduca
**Sent:** Tuesday, October 19, 2021 12:50 PM
**To:** Kathy Ress <kathy.ress.he8j@statefarm.com>; Scott Welsh <scott.welsh.cx30@statefarm.com>; Tom Moss <tom.moss.c4sg@statefarm.com>
**Cc:** Gregory E Jones <gregory.e.jones.gzwh@statefarm.com>
**Subject:** RE: Q3 TTR: PRR: SEO Update Wind/Hail and Fire End to End

Yes, I will get with Zach to get that populated. With the monthly updates, it shaves off prior months in 2020 but he should be able to update. Will return to you ASAP.

**From:** Kathy Ress
**Sent:** Tuesday, October 19, 2021 10:48 AM
**To:** Scott Welsh <scott.welsh.cx30@statefarm.com>; Tom Moss <tom.moss.c4sg@statefarm.com>; Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Cc:** Gregory E Jones <gregory.e.jones.gzwh@statefarm.com>; Kathy Ress <kathy.ress.he8j@statefarm.com>
**Subject:** Q3 TTR: PRR: SEO Update Wind/Hail and Fire End to End

Do we have a view of this that dates back further? I seems to recall we had one that dates back around April 2020.

**Total Roof Payment**
The following graph reflects the ratio of Total Roof (TR) Payment Reason Codes to Partial Roof Replacement (PRR) Payment Reason Codes. Results are reflective of improved quality claim handling behaviors in identifying wind and hail damage to roof surfaces.



Exhibit U - 031

**From:** Kathy Ress
**Sent:** Tuesday, October 19, 2021 12:17 PM
**To:** Scott Welsh <scott.welsh.cx30@statefarm.com>; Tom Moss <tom.moss.c4sg@statefarm.com>; Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Cc:** Kathy Ress <kathy.ress.he8j@statefarm.com>; Gregory E Jones <gregory.e.jones.gzwh@statefarm.com>
**Subject:** Q1& 2: SEO Update Wind/Hail and Fire End to End

Thank you!

As I work through adding other items and editing, I'll send you inquiries to help me frame:

First one on the statement below:

- The chart below does not provide at % - Could we provide a statement of what the % range is and the YTD average?

Also, what is our YTD % Total Roofs overall and how does that compare to a year ago, 2 years ago? (Not sure if we have 2 years data) How do we compare today against this statement?

- *Baseline:* Analysis of 3-year data validated Full Roof Replacements were paid at 63% frequency for Severity 3 Wind and 90% frequency for Severity 3 Hail.
- *Industry Best:* Industry Best FRR on light wind and small hail averages a 5-10% frequency, therefore an internal quality improvement opportunity of 53-58% for light wind and 80-85% for small hail (Source: Accenture Consulting Services).

**Call quality tracking**
One measure we track to identify the quality of our initial claim call is the number of claims that were previously Closed Without Payment (CWP) and were subsequently changed to a paid status of a Total Roof (TR). Many factors may impact why the loss moved from a CWP status to a Paid (TR) status, and the change in status may not indicate that the initial call was incorrect. A common cause of this change is a customer initially withdrew their claim and it was closed CWP but later resubmitted the claim and requested an inspection of the roof. As noted in the charts below, while there has been movement from month to month of this measure, the overall percent change (%) in movement has been minimal.




Exhibit U - 032

**From:** Scott Welsh
**Sent:** Tuesday, October 19, 2021 4:17 AM
**To:** Gregory E Jones <gregory.e.jones.gzwh@statefarm.com>; Kathy Ress <kathy.ress.he8j@statefarm.com>
**Cc:** Tom Moss <tom.moss.c4sg@statefarm.com>; Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** SEO Update Wind/Hail and Fire End to End

Good morning Kathy and Greg,

Attached is our initial draft of an overall summary of Wind/Hail Call to Action work and the Fire End to End work - Fire Segmentation and Staffing Analysis. Nicole, Tom and I worked from the resources provided and gathered additional data to outline the companies activity/response to the 2021 season. We also worked with Katie to get her review and feedback.

As we discussed, we will plan to update the document with the most current data at month's end for the November SEO.

We have included both requests (Overview of 2021 Wind/hail work and Fire Design Work) in a single document. For ease of use, we can make these two separate documents if that is preferable.

Please let us know if this format/content/level of detail meets the needs for the SEO or if you would like us to make some updates/edits.

If this document will be shared or used beyond talking points/notes for Wensley, I would recommend a legal review.

Thank you and please let us know.

Scott



Confidential Produced Pursuant to Protective Order

**From:** Nicole Manduca [/O=STATEFARM/OU=HOME/CN=RECIPIENTS/CN=LOK2]
**Sent:** 6/30/2021 1:09:47 PM
**To:** Lisa Clauson [lisa.clauson.hfnd@statefarm.com]
**BCC:** Nicole Manduca [nicole.manduca.lok2@statefarm.com]
**Subject:** FW: DocumentsFire WindHail Playbook 6.29.2021 DRAFT.pptx
**Attachments:** DocumentsFire WindHail Playbook 6.29.2021 DRAFT.pptx

Hi Lisa – wanted to provide a heads up that we'll have a communication w/ this week's Playbook linked ready to go likely this morning. I know Katie has already worked on the internal and ECR communications and may just need to touch up a few items now that the playbook is completed. I'll stay in touch.

---

**From:** Nicole Manduca
**Sent:** Wednesday, June 30, 2021 6:56 AM
**To:** Daphne Outerbridge Louie <daphne.o.louie.gryi@statefarm.com>; Scott Welsh <scott.welsh.cx30@statefarm.com>; Steve Meulemans <steve.meulemans.gorz@statefarm.com>; Tom Moss <tom.moss.c4sg@statefarm.com>; Katie Benes <katie.benes.p98b@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** DocumentsFire WindHail Playbook 6.29.2021 DRAFT.pptx

Good morning all –

Sharing the proposed Playbook DRAFT for distribution today, June 30. Katie will assist if there are any updates needed to the links to ensure the end user is able to easily access once communicated – we have found she needs to work her magic (and she's amazing) on the last two weeks of communications.

We are focused on the following for these plays:

- Ramp up use of Voicemail Monitoring, Call Recording/Screen Capture and EOM activities. Leaders will be expected to share specific observations and claim examples in huddles. (This is a 'repeat' play as we did not see adoption – KR requested it be included)
- Incorporate best practice of using the recently enhanced Evaluating Composition Roofing Brochure when explaining the results of our wind/hail roof inspections.
- Outline expectation that the Customer Service Survey will be extended for an additional two weeks in order to realize improved behaviors relative to Communication and Customer Expectations. (KR request to extend survey 2 weeks)

Please let me know if any questions or revisions needed. I've shared the Playbook with Kathy yesterday afternoon but know she's on PTO and traveling today – I do not expect to hear back from her before this needs to be distributed.

Thank you,

Nicole

EXHIBIT
11

Exhibit U - 034

**From:** Angela M Mitchell [/O=STATEFARM/OU=EAST/CN=RECIPIENTS/CN=SPNB]
**Sent:** 6/23/2021 1:41:41 PM
**To:** Nicole Manduca [nicole.manduca.lok2@statefarm.com]
**BCC:** Angela M Mitchell [angela.mmitchell.spnb@statefarm.com]; Nicole Manduca [nicole.manduca.lok2@statefarm.com]
**Subject:** FW: DocumentsFire WindHail Playbook 6.22.2021 DRAFT.pptx

Hi Nicole. I'd be happy to help, but I have a few questions...

- Just to clarify, is there a draft of the communication or is this something you need me to create?
- Is the communication to leadership separate from ECR?
- What's the context of the communication? Something along the lines of... Several updates have been made to the Wind Hail Playbook Playbook, including: REIAP Word Tracks, REIAP Infographic and Home Estimate Infographic. Please share with your teams the week of June 28?
- Who are the authors? Kathy, Tyrone, Wendy and Fire Property Claim Managers?

Thanks

---

**From:** Steve Meulemans
**Sent:** Wednesday, June 23, 2021 9:35 AM
**To:** Scott Welsh <scott.welsh.cx30@statefarm.com>; Nicole Manduca <nicole.manduca.lok2@statefarm.com>; Angela M Mitchell <angela.mmitchell.spnb@statefarm.com>
**Subject:** RE: DocumentsFire WindHail Playbook 6.22.2021 DRAFT.pptx

These look great!! Nice work.

---

**From:** Scott Welsh
**Sent:** Wednesday, June 23, 2021 8:06 AM
**To:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>; Steve Meulemans <steve.meulemans.gorz@statefarm.com>; Angela M Mitchell <angela.mmitchell.spnb@statefarm.com>
**Subject:** RE: DocumentsFire WindHail Playbook 6.22.2021 DRAFT.pptx

Hello Nicole,

This looks great.

I think the timing looks fine if the communication can be ready to go.

For the question on confirming the activity is occurring I think the added question to the CRT would be the most accurate way confirm the activity.

Nice work Nicole

Scott

---

**From:** Nicole Manduca

EXHIBIT
12

Exhibit U - 035

**Sent:** Wednesday, June 23, 2021 7:34 AM
**To:** Scott Welsh <scott.welsh.cx30@statefarm.com>; Steve Meulemans <steve.meulemans.gorz@statefarm.com>; Angela M Mitchell <angela.mmitchell.spnb@statefarm.com>
**Subject:** FW: DocumentsFire WindHail Playbook 6.22.2021 DRAFT.pptx

Good morning all –

Sharing Kathy's comments below and expectation of communications being ready to distribute today in alignment with our tactical plan. Our action items today include:

1. Prepare communications (Staff & ECR) to include the updated Playbook attached below – Playbook focuses on (3) topics:

<< Message: RE: Call to Action - Estimate Reconciliation IG Play >>

- REIAP Word Tracks
- REIAP Infographic
- Home Estimate Infographic

2. Confirm specific action by leaders & timing; in the Playbook, I referenced the Week of 6/28 as the timing to discuss during huddle – do you recommend different timing? Communications prepared by POST for the (3) deliverables above are pending our 'green light' on when to send (before or after this communication plan and Playbook)

<< File: DocumentsFire WindHail Playbook 6.22.2021 DRAFT.PPTX >> << Message: RE: REIAP Word Track and communication >> << Message: FW: Call to Action - Estimate Reconciliation IG Play >>

3. Monitoring activities are illustrated in the visual within the Playbook (similar to Call to Action PPT slide); the communication plan could outline those activities. What are your thoughts about adding a question to the CRT survey as Kathy suggests?

Please let me know if we need to huddle up or if we can tackle virtually via email – thank you in advance for your thoughts. Also, please let me know if any revisions are needed to the Playbook as understand you did not have an opportunity to review.

Nicole

---

**From:** Kathy Ress
**Sent:** Tuesday, June 22, 2021 8:11 PM
**To:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Cc:** Kathy Ress <kathy.ress.he8j@statefarm.com>
**Subject:** RE: DocumentsFire WindHail Playbook 6.22.2021 DRAFT.pptx

Nicole,

Yes, we are missing the communication plan. Please pull Scott, Steve and Angela together first thing as we don't appear to be ready to roll and we will release Wednesday per our tactical plan.

In the communication plan and playbook, we need to be specific on action by leaders (e.g. huddle and by when). How will leaders monitor we are sending the email that's prepped with the infographic as outlined in Jared's email. Does this become part of the CRT survey? What's ready for ECR vendors?

Jared has some good items to take as the email was tee'd up to send.



Confidential Produced Pursuant to Protective Order

**Action requested**
If the customer's opt-in preference for emails is "Yes," then claim handlers should email the Home Estimate Infographic to customers along with the Customer Final Copy of the State Farm structural estimate. This information will reduce inbound calls from customers with questions about the next steps after receiving the initial building settlement. Soon, this infographic will be an automated Forms & Correspondence letter. **This email should not be sent to customers in California.**

---

**From:** Nicole Manduca
**Sent:** Tuesday, June 22, 2021 8:53 PM
**To:** Kathy Ress <kathy.ress.he8j@statefarm.com>
**Subject:** RE: DocumentsFire WindHail Playbook 6.22.2021 DRAFT.pptx

I was thinking a similar follow up communication to last week's (that Angela prepared), and include reference/links to the REIAP word tracks along with REIAP and Home Estimate Infographics. We can then link to the Playbook on the SharePoint that Katie created – allows us to continue to iterate the Playbooks week/month over week/month and a one-stop shop for the end user. Thoughts?

---

**From:** Kathy Ress
**Sent:** Tuesday, June 22, 2021 7:23 PM
**To:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** RE: DocumentsFire WindHail Playbook 6.22.2021 DRAFT.pptx

How do we plan to communicate this?

---

**From:** Nicole Manduca
**Sent:** Tuesday, June 22, 2021 6:30 PM
**To:** Kathy Ress <kathy.ress.he8j@statefarm.com>
**Cc:** Daphne Outerbridge Louie <daphne.o.louie.gryi@statefarm.com>; Scott Welsh <scott.welsh.cx30@statefarm.com>; Steve Meulemans <steve.meulemans.gorz@statefarm.com>; Andrew Hill <andrew.hill.pwk4@statefarm.com>; Jared Starnes <jared.starnes.mm05@statefarm.com>; Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** DocumentsFire WindHail Playbook 6.22.2021 DRAFT.pptx

Please disregard previous email – attached is the updated DRAFT.



Confidential Produced Pursuant to Protective Order

|  |  |
|---|---|
| **From:** | John Christensen [/O=STATEFARM/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=BE2A7A05026B4D3B9CFBE63DD5AC5697] |
| **Sent:** | 9/20/2023 9:16:39 PM |
| **To:** | Tom Moss [tom.moss.c4sg@statefarm.com] |
| **BCC:** | John Christensen [john.christensen.ghu1@statefarm.com]; Tom Moss [tom.moss.c4sg@statefarm.com] |
| **Subject:** | RE: FIM HUB and Reviews |

Low key, check in with Nicole or Zach Olson or let me help.

In essence, I want to ensure the plays that worked in the past we are doing.

---

**From:** Tom Moss <tom.moss.c4sg@statefarm.com>
**Sent:** Wednesday, September 20, 2023 4:15 PM
**To:** John Christensen <john.christensen.ghu1@statefarm.com>
**Subject:** RE: FIM HUB and Reviews

Thank you. I am very surprised by the numbers. 98% approved does not seem to be consistent with prior year findings.

Tom Moss
309 660 2105
<< OLE Object: Picture (Device Independent Bitmap) >>

FOR INTERNAL STATE FARM USE ONLY
Contains information that may not be disclosed outside State Farm without authorization

---

**From:** John Christensen <john.christensen.ghu1@statefarm.com>
**Sent:** Wednesday, September 20, 2023 5:09 PM
**To:** Tom Moss <tom.moss.c4sg@statefarm.com>
**Subject:** FW: FIM HUB and Reviews

Likely the later.

---

**From:** Tom Moss <tom.moss.c4sg@statefarm.com>
**Sent:** Wednesday, September 20, 2023 4:08 PM
**To:** John Christensen <john.christensen.ghu1@statefarm.com>; Scott Welsh <scott.welsh.cx30@statefarm.com>
**Subject:** RE: FIM HUB and Reviews

Hello John. Is the data provided based on overturn calls? Or is it based on management structured phrases and when the hail was 1" or less/wind speed 50 mph or less?

Tom Moss
309 660 2105
<< OLE Object: Picture (Device Independent Bitmap) >>

FOR INTERNAL STATE FARM USE ONLY

EXHIBIT
13

Exhibit U - 038

Contains information that may not be disclosed outside State Farm without authorization

---

**From:** John Christensen <john.christensen.ghu1@statefarm.com>
**Sent:** Wednesday, September 20, 2023 4:48 PM
**To:** Scott Welsh <scott.welsh.cx30@statefarm.com>; Tom Moss <tom.moss.c4sg@statefarm.com>
**Subject:** FIM HUB and Reviews

Scott/Tom,

I need some help. I think Byron, Katie, and David could benefit from some help on how we act immediately to improve our accuracy on wind/hail and the TM role. I asked for this from Zach Olson to refresh this report through August to aggregate the TM approvals by State.

<< File: NEW_2023_TM_APPROVALS_YTD.xlsx >>

- We need CMs, Consultants, SM reviewing these reviews to ensure the front line leader is appropriately following the process on overturn reviews.
- We need to get very precise on when the coverage finding reinspection worksheet goes to the SM and TM.
- I am going to ask the quality pillar to execute on what has worked in the past.

We need to go back to what worked in the past to quickly make an impact.

JC

Exhibit U - 039

Confidential Produced Pursuant to Protective Order

**From:** Jordan Coad [/O=STATEFARM/OU=EAST/CN=RECIPIENTS/CN=P3DV]
**Sent:** 1/19/2024 3:29:05 PM
**To:** Nicole Manduca [nicole.manduca.lok2@statefarm.com]; Bryan McLaughlin [bryan.mclaughlin.he2g@statefarm.com]
**BCC:** Jordan Coad [jordan.coad.p3dv@statefarm.com]; Nicole Manduca [nicole.manduca.lok2@statefarm.com]; Bryan McLaughlin [bryan.mclaughlin.he2g@statefarm.com]
**Subject:** RE: Fix Profit Task Force - EOD draft for Tomorrow
**Attachments:** image001.png; image002.png; image003.png

Hey team – and quick additional point – I am not sure we know yet what output they are looking for. So to Bryan's point in his email – we may be able to hang tight until that call before we draft any sort of output, but we can at least start the brainstorming on the yellow highlights below.

JC

**From:** Jordan Coad
**Sent:** Friday, January 19, 2024 8:15 AM
**To:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>; Bryan McLaughlin <bryan.mclaughlin.he2g@statefarm.com>
**Subject:** FW: Fix Profit Task Force - EOD draft for Tomorrow

Hey Nicole – saw your note. Safe travels today! I am not sure on specific format – but sounds like the call this afternoon is pulling together content for the yellow highlight below based on JCs note.

- A concise story on our quality results for 2023
- Our focus for 2024
- How we plan to continue to build on our momentum.

On the first bullet – I think this existing slide directly below may be helpful and possible something to use. For bullet 2 and 3 – we may need to draft fresh summary slides. JC put some thought starters for the focus for 2024 – so maybe these can get dunked on a slide?

**2024**

- Continue focus on coverage for Water, Wind, and Hail.
- Narrow focus on estimatics based on areas of largest opportunity
- Strong focus on water mitigation and WRU expansion
- Improved vendor insights on performance

EXHIBIT
14

Exhibit U - 040

## Increasing Quality Accuracy* of Claim Handling Summary

**YTD November Water, Wind, and Fire accuracy results** increased **compared to 2022, while Hail decreased.**

- **Water:**
  - The number of errors decreased -6% and their size decreased -14%.
- **Fire:**
  - The number of errors decreased -12% and their size decreased -22%.
- **Wind:**
  - The number of errors increased +7% and their size decreased -9%.
- **Hail:**
  - The number of errors increased +8% and their size increased +4%.

*Whenever the term "accuracy" is used in this PowerPoint it is defined as: "Diligent investigation, evaluation and negotiatio

*Quality claim handling is defined as diligently investigating each claim, evaluating the facts, applying coverage, accuratelydocumenting the file, and paying what is owed. Each claim should be handled on its own merits in accordance with Our Commitment to Our Policyholders.*

DRAFT

For internal State Farm Use Only – Contains confidential information which may not be disclosed without express written authorization

**From:** John Christensen <john.christensen.ghu1@statefarm.com>
**Sent:** Thursday, January 18, 2024 12:47 PM
**To:** Phani Aytam <phani.aytam.qik2@statefarm.com>; Brad Babic <brad.babic.lytv@statefarm.com>; Kimberly Rose <kimberly.rose.nv8v@statefarm.com>; Jordan Coad <jordan.coad.p3dv@statefarm.com>; Nicole Manduca <nicole.manduca.lok2@statefarm.com>; Katie Magwire <katie.magwire.pwqx@statefarm.com>
**Cc:** Scott Welsh <scott.welsh.cx30@statefarm.com>; Bryan McLaughlin <bryan.mclaughlin.he2g@statefarm.com>; Byron Galloway <byron.galloway.g6kt@statefarm.com>; Beth Enchinton <beth.enchinton.g4m7@statefarm.com>
**Subject:** FW: Fix Profit Task Force - EOD draft for Tomorrow

Good afternoon. I spoke with Mike. If you scroll down, you will see a note he shared with Matt Schulkins. His request to P&A and the Quality Pillar is to pull together:

- A concise story on our quality results for 2023
- Our focus for 2024
- How we plan to continue to build on our momentum.

Here are a few ideas pulling from the full quality deck that was just updated. Slide five still shows November data, can we get December YE Data before Tuesday? I'd like a few slides by EOD Friday to share with Mike.

If we need to huddle today or first thing in the morning, let me know.

---

A starting point:
**2023**

- We increased quality/accuracy of claim handling in the perils of water, fire, and wind. Hail accuracy declined. (Slide 5)
  - Water finding size decreased 14%
  - Fire finding size decreased 22%
  - Wind finding decreased 9%
  - Hail did not improve YOY but substantial improvement the last six months of the year

Exhibit U - 041

- Water coverage improved from YE2022 (7.36%) to YE 2023 (6.1%). The team improved from 8.5% in January to 6.1% YTD. (Slide 7)
- Hail coverage improved significantly the second half of 2023 with more focus on front end and back end leadership engagement. Internal staff also improved as they gained experience demonstrated by April 2023 error rate of 10.41% to 7.78% year end. ECRs also improved from a high of 14.58% in April to 10.66% in December. It's important to know the large reduction in Q4 2023 lessons the overall impact of their FED. (Slide 8)
- Wind...

**2024**

- Continue focus on coverage for Water, Wind, and Hail.
- Narrow focus on estimatics based on areas of largest opportunity
- Strong focus on water mitigation and WRU expansion
- Improved vendor insights on performance

---

Some slides would likely help.

## Increasing Quality Accuracy* of Claim Handling Summary

**YTD November Water, Wind, and Fire accuracy results increased compared to 2022, while Hail decreased.**

- **Water:**
  - The number of errors decreased -6% and their size decreased -14%.
- **Fire:**
  - The number of errors decreased -12% and their size decreased -22%.
- **Wind:**
  - The number of errors increased +7% and their size decreased -9%.
- **Hail:**
  - The number of errors increased +8% and their size increased +4%.

*Whenever the term "accuracy" is used in this PowerPoint it is defined as: "Diligent investigation, evaluation and negotiatib

*Quality claim handling is defined as diligently investigating each claim, evaluating the facts, applying coverage, accuratelydocumenting the file, and paying what is owed. Each claim should be handled on its own merits in accordance with Our Commitment to Our Policyholders

DRAFT

## Water Claim Handling Quality*

### Water *Coverage* YTD Reinspection Results

Total P&C, Catastrophe and Non-Catastrophe Structure only







**YTD December 2023 result of 6.12% continues to be lower than full year 2022.**

**Strategy to address**
- Enhanced Routing
- Claim Intervention (Early Management Involvement)
- Coverage Execution

*Quality claim handling is defined as diligently investigating each claim, evaluating the facts, applying coverage, accurately documenting the file, and paying what is owed.

DRAFT

## Hail Claim Handling Quality*

### Hail *Coverage* YTD Reinspection Results – Staff and ECR

Total P&C, Catastrophe and Non-Catastrophe Structure only







**In 2023, the ECR Hail Coverage result was consistently higher than the Staff result.**
**YTD December 2023**
- Overall result is 9.44%, higher than full year 2022.
- ECR result is 10.66%, higher than full year 2022.
- Staff result is 7.78%, higher than full year 2022.

**Strategy to address**
- Accurate Damage Identification
- Repair vs. replace decisions
- Management Review and Intervention
- Vendor Accountability

*Quality claim handling is defined as diligently investigating each claim, evaluating the facts, applying coverage, accurately documenting the file, and paying what is owed.

DRAFT

**From:** Michael T Keating <michael.t.keating.ggrp@statefarm.com>
**Sent:** Thursday, January 18, 2024 8:54 AM
**To:** Matt Schulkins <matt.schulkins.m9e5@statefarm.com>
**Cc:** John Christensen <john.christensen.ghu1@statefarm.com>
**Subject:** FW: Fix Profit Task Force

Matt,

With next week's FPTF being "claims" focused, when do you think you will have this info ready for NTHO? Wensley wants me to provide a fire update after auto next week, so having this will help.

**From:** Wensley J Herbert <wensley.j.herbert.c18b@statefarm.com>
**Sent:** Wednesday, January 17, 2024 1:53 PM
**To:** Matthew Parola <matthew.parola.nzjn@statefarm.com>; Michael Arnold <michael.arnold.bjhs@statefarm.com>; Michael T Keating <michael.t.keating.ggrp@statefarm.com>; Brian Truttmann <brian.truttmann.g23f@statefarm.com>; Jennifer Megargell <jennifer.megargell.uoyh@statefarm.com>
**Subject:** FW: Fix Profit Task Force

FYI...updated with Dec info. Look at those BI pendings ☺

**From:** Matt Schulkins <matt.schulkins.m9e5@statefarm.com>
**Sent:** Wednesday, January 17, 2024 1:26 PM
**To:** Wensley J Herbert <wensley.j.herbert.c18b@statefarm.com>
**Cc:** Michael Roper <michael.roper.pxll@statefarm.com>
**Subject:** RE: Fix Profit Task Force

Yep we just got the data for those pieces today. Pages 12 & 13 here are the ones you're looking for I believe.

We'll include this full Monitoring Plan as part of pre-read for FPTF next week even though I hit some highlights already yesterday.

**From:** Wensley J Herbert <wensley.j.herbert.c18b@statefarm.com>
**Sent:** Tuesday, January 16, 2024 7:17 AM
**To:** Matt Schulkins <matt.schulkins.m9e5@statefarm.com>
**Subject:** RE: Fix Profit Task Force

Matt,
Can I get as much of pages 22 &23 of this updated for SEO next week?
Thanks
W

**From:** Michael Roper <michael.roper.pxll@statefarm.com>
**Sent:** Saturday, December 16, 2023 9:38 AM
**To:** Jon Farney <jon.farney.ga1s@statefarm.com>; Mark Schwamberger <mark.schwamberger.c095@statefarm.com>; Justin Tipsord <justin.tipsord.q064@statefarm.com>; Chris Schell <chris.schell.gxn0@statefarm.com>; Sara Frankowiak <sara.frankowiak.g4eb@statefarm.com>; Craig Isaacs <craig.isaacs.io8i@statefarm.com>; Wensley J Herbert <wensley.j.herbert.c18b@statefarm.com>; Michael Arnold <michael.arnold.bjhs@statefarm.com>; Kristyn Cook <kristyn.cook.itm0@statefarm.com>; Matthew Parola <matthew.parola.nzjn@statefarm.com>; Matt Schulkins <matt.schulkins.m9e5@statefarm.com>; Nicole Forziati <nicole.forziati.gvec@statefarm.com>; Brian Truttmann <brian.truttmann.g23f@statefarm.com>; Jennifer Megargell <jennifer.megargell.uoyh@statefarm.com>; Michael Tipsord <michael.tipsord.cdrf@statefarm.com>; Paul Smith <paul.smith.chtb@statefarm.com>
**Cc:** Becky Herald <becky.herald.a1da@statefarm.com>
**Subject:** RE: Fix Profit Task Force

Attached is the normal content to help support the conversation on Tuesday. Included starting on page 11 is the Claims Trends Monitoring Plan updated for November results. High level summary of November results is included below. The tentative approach for Tuesday is to briefly cover the November trends at a high level before spending the majority of the time focusing on Claims specific content.

Please let me know if there are any questions.

Exhibit U - 044

Summary Observations:

- The Physical Damage coverages all experienced a downward trend in pure premium with the rate of change on severity dropping about 1% for each coverage month over month. That put Property Damage below the YE severity selection and Coll/Comp both less than 1% away and on track relative to glide paths.
  - This translates to a **$100M+ favorable variance for the month** relative to the financial forecast estimates in December Guidance with most of that from Collision.
  - Note that the Property Damage CWP ratio was 39%, directly in line with estimates.
- The Major Liability coverages saw continued pressure on frequency for BI and UBI/WBI.
  - BI reported frequency R12 rate of change increased from +7% to +7.7%. For context on materiality, the 7.7% frequency increase translates to 434,400 more reported counts. If the increase was 7.0% it would have been an increase of 431,745. So these 2,700 incremental claims would translate to **roughly $60M in additional expected losses** vs if it had held flat at least month's result (after accounting for average severity and expected reported to incurred conversion)

Michael Roper
AVP – Planning & Analysis
P&C Analytics
Office: 309-735-3403
Cell: 309-846-7509

STATE FARM CONFIDENTIAL INFORMATION
Distribution on a Business Need to Know Basis Only

-----Original Appointment-----
**From:** Jon Farney <jon.farney.ga1s@statefarm.com>
**Sent:** Thursday, December 14, 2023 4:47 PM
**To:** Jon Farney; Michael Roper; Mark Schwamberger; Justin Tipsord; Chris Schell; Sara Frankowiak; Craig Isaacs; Wensley J Herbert; Michael Arnold; Kristyn Cook; Matthew Parola; Matt Schulkins; Nicole Forziati; Brian Truttmann; Jennifer Megargell; Michael Tipsord; Paul Smith
**Cc:** Becky Herald
**Subject:** Fix Profit Task Force
**When:** Tuesday, December 19, 2023 7:00 AM-8:00 AM (UTC-06:00) Central Time (US & Canada).
**Where:** E10 Room A | MS Teams (new link)

**UPDATE:** We're repurposing the **Dec. 19** FPTF meeting to discuss claims – attendees have been modified and a new Microsoft Teams link has been added. We'll return to the regularly scheduled FPTF meetings on Tuesday, Jan. 9. Thank you.

---

This invite is to secure time on calendars for the Fix Profit Task Force (FPTF) ***every Tuesday at 7 a.m. CT*** beginning Jan. 10 through year end 2023. E10 Room A has been reserved for those of you in the office.

**Attendees** – Jon Farney; Michael Roper; Mark Schwamberger; Justin Tipsord; Chris Schell; Sara Frankowiak; Craig Isaacs; Wensley Herbert; Mike Arnold; Kristyn Cook; Matt Parola; Matt Schulkins; Nicole Forziati; Brian Truttmann; Jennifer Megargell
**Guests (Dec. 19)** – Michael Tipsord; Paul Smith

**Microsoft Teams (new link)** – Click here to join the meeting

**Meeting ID** – 253 880 419 047
**Passcode** – tgnXZa

**Join by phone** – +1 872-215-6947,,402531624#
Meeting options

/km



Confidential Produced Pursuant to Protective Order

| | |
|---|---|
| **From:** | Kimberly Rose [/O=STATEFARM/OU=EAST/CN=RECIPIENTS/CN=NV8V] |
| **Sent:** | 10/10/2023 2:56:56 PM |
| **To:** | Jordan Coad [jordan.coad.p3dv@statefarm.com]; Nicole Manduca [nicole.manduca.lok2@statefarm.com]; Scott Welsh [scott.welsh.cx30@statefarm.com] |
| **CC:** | Bruce Aldrich [bruce.aldrich.coxm@statefarm.com]; Phani Aytam [phani.aytam.qik2@statefarm.com]; John Christensen [john.christensen.ghu1@statefarm.com]; Wendy Hopping [wendy.hopping.cw2l@statefarm.com]; Heather Burns [heather.burns.mbgy@statefarm.com]; HOME CLMS-CA-EXEC-FIRE-RPT [home.clms-ca-exec-fire-rpt.243o28@statefarm.com] |
| **BCC:** | Kimberly Rose [kimberly.rose.nv8v@statefarm.com]; Jordan Coad [jordan.coad.p3dv@statefarm.com]; Nicole Manduca [nicole.manduca.lok2@statefarm.com]; Scott Welsh [scott.welsh.cx30@statefarm.com]; Bruce Aldrich [bruce.aldrich.coxm@statefarm.com]; Phani Aytam [phani.aytam.qik2@statefarm.com]; John Christensen [john.christensen.ghu1@statefarm.com] |
| **Subject:** | 10/9/2023 Meeting Recap - Quality Slide Decks |
| **Attachments:** | FIx Profit Task Force Quality Claim Handling Draft.pptx; DRAFT Quality Early Monitoring Plan September 2023 Data FULL DECK_ 10.9 (002) - Read-Only.pptx |

Good morning!

Thank you for providing input to simplify the suite of Quality Slide Decks to align them with your current needs during our call yesterday. We accomplished a lot in a small amount of time.
As we wait for our Business Partners to provide data we need to finalize the decks (Reinspection Results and Financial data, Performance Teams NTHO PPTs), we have made the preliminary changes and attached draft versions below for any input.

HIGHLEVEL OVERVIEW:

- October will have 2 slide decks rather than the 5 we collectively created last month.
- The Quality Early Monitoring Plan Slide Deck was condensed from 21 slides to 8.
- The Sizing and Scoping has been deck paused for now.
- The "Simplified Deck", "Keating Quality Deck" and Average Estimate Value Deck were consolidated into one new deck named "Fix Profit Task Force Deck" that will serve several meetings by adding and deleting slides as needed.

**ACTION:**
We have listed the changes made to the slide decks below. If this is not what you recall or if there are any additional changes needed, please let us know by noon, Thursday, October 12th.

1. **Quality Early Monitoring Plan Slide Deck**

Kept 8/Deleted 13 slides.
Slide 1-2 Kept – NTHO Severity Slides with Mark Holcomb's comments in the notes.
Slide 3:

- Took off Execution level control section.
- Changed Target to Selection
- One line per Finding Frequency.
- Take off dash line but kept %s.
- Removed selection % where applicable.
- Take key strategies and match Fix Profit Task Force.

EXHIBIT
15

Exhibit U - 047

Slide 4: Keep. Removed glide path and baseline on graph.
Slide 5: Keep. Changed footer to advise which states are reflected in months.
Slide 6: Keep. Same modifications as slide 3. In the note section, added the % of Overturned calls to total Roof.
Slide 7 and 8: Kept. Added baseline to title for clarity. UPDATED WITH SEPTEMBER DATA

2. <u>**Sizing and Scoping Slide Deck**</u> - Pausing

3. <u>**Simplified Slide Deck**</u> – will combine with other decks to create the Fix Profit Task Force Slide Deck.

4. <u>**Keating Quality Slide Deck**</u> - will combine with other decks to create the Fix Profit Task Force Slide Deck.

5. <u>**Average Estimate Value Deck**</u> - will combine with other decks to create the Fix Profit Task Force Slide Deck.

<u>**Fix Profit Task Force Slide Desk (NEW)**</u>

- Moving 5 of 6 slides from the Simplified Slide Deck
- Moving 3 of 3 slides from the Keating Quality Slide Deck (Eventually replacing the first slide with a new
- Moving 3 of 3 slides from the Average Estimate Value deck.
- Slide 1: Placeholder for new slide focusing on opportunity - Estimatics opportunities – OSS will Partner
- Slide 2-3 unchanged from Keating Quality Slide Deck
- Slide 4-6 Quality Leads summaries. **When updated, Scott advised that any reference to "targets" need replaced with "selections".**
- Slide 7-8 NTHO Monitoring and Attribution Summary
- Slide 9-14 Appendix: NTHO Severity Monitoring and Average Estimate Value - UPDATED WITH SEPTEMBER DATA

Exhibit U - 048

**From:** John Christensen [/O=STATEFARM/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=BE2A7A05026B4D3B9CFBE63DD5AC5697]
**Sent:** 8/29/2023 1:24:47 PM
**To:** Nicole Manduca [nicole.manduca.lok2@statefarm.com]; Jordan Coad [jordan.coad.p3dv@statefarm.com]; Tyrone Smith [tyrone.smith.a57w@statefarm.com]
**Subject:** RE: Draft Quality Opportunity Sizing - 30 Day T Minus
**Attachments:** image001.png; image002.jpg

You guys are aces! This t-minus is perfect, and we should execute to it.

I would like the longer plan/visual so we can start to build out. I'll share this with Scott and see if he has any feedback. I may then ask you to work with Beth Enchinton to carry forward the remainder of the year.

I am all in to have check points to push our teams for accountability across all perils.

**From:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Sent:** Tuesday, August 29, 2023 8:22 AM
**To:** John Christensen <john.christensen.ghu1@statefarm.com>; Jordan Coad <jordan.coad.p3dv@statefarm.com>; Tyrone Smith <tyrone.smith.a57w@statefarm.com>
**Subject:** Re: Draft Quality Opportunity Sizing - 30 Day T Minus

Hi JC -

I think I'm tracking and that is on me with how the timeline is currently reflected - Jordan previously had the Monthly Quality meeting prep dates included (meeting with Wensley), but I asked him to separate so we would have standalone T-Minus for those meeting as the dates change every month for the Wensley meeting. The Profit Task Force meetings are not anything we've typically been involved in, at least I don't think so.

Nic

Get Outlook for iOS

---

**From:** John Christensen <john.christensen.ghu1@statefarm.com>
**Sent:** Tuesday, August 29, 2023 6:16:18 AM
**To:** Jordan Coad <jordan.coad.p3dv@statefarm.com>; Tyrone Smith <tyrone.smith.a57w@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** RE: Draft Quality Opportunity Sizing - 30 Day T Minus

Thank you to both of you. I would also like us to consider how we plot/integrate the fix profit task force dates as well (I am not sure I even have those on my calendar yet).

Scott Welsh reached out yesterday to help/inquire about setting up a meeting cadence and periodic check ins. I indicated we were developing a draft plan to do just that.

Tyrone, we can catch up on this now that you are back. If you all are OK with it, I would like to get Consulting Services' feedback, plot the task force dates, and build the meeting plan beyond this next quality meeting.

I love this four week approach. Just want to plot it out a bit further and set a regular meeting cadence. Thoughts?

**From:** Jordan Coad <jordan.coad.p3dv@statefarm.com>
**Sent:** Monday, August 28, 2023 8:23 PM

EXHIBIT
16



Confidential Produced Pursuant to Protective Order

**To:** John Christensen <john.christensen.ghu1@statefarm.com>; Tyrone Smith <tyrone.smith.a57w@statefarm.com>
**Cc:** Nicole Manduca <nicole.manduca.lok2@statefarm.com>
**Subject:** I: Draft Quality Opportunity Sizing - 30 Day T Minus

Hey JC and Tyrone –

As a follow up to our discussion last week – we tried to take a run at a T-Minus plan for the Quality Opportunity Sizing work being completed by each CM Peril Lead. In short, we hope the Quality Pillar CM crew can use this as a NorthStar to keep us on track as we work through this the next 4 weeks. This is also builds in a set framework with two built-in checkpoints along the way – and bite sizes the work into four (4) phases.

Please let us know if any questions or feedback. If no questions or feedback – Nicole and I can share with our peers and we will use as a roadmap. We then will have our first checkpoint next week on progress. Thanks!

StateFarm™

## Quality Pillar – Peril Opportunity Sizing and Review Framework - 30 Day T-Minus

| Objective | | |
|---|---|---|
| In August the Quality Pillar was refreshed to align CMs to specific perils. As part of this, each CM pillar was also asked to assess and size opportunities for the respective peril in partnership with P&C and Data Analytics. The below seeks to organize and outline the review timing, objectives, and defined outcomes for this Opportunity Sizing. | | |
| **Phase I – Assessment and Understanding – What are we doing now for the peril?** | **Target** | **Status** |
| • Each Quality Peril CM will review the current content being provided for Monthly Executive Quality Meetings. This material was previously attached within the 8/23 email from VPO Christensen. As we begin this Opportunity Sizing, each CM should seek to understand the metrics being reported out at Executive level. Additionally, each CM should review the Peril PPT forwarded from Data Analytics on 8/24. This also helps lay the foundation for the Opportunity Sizing each peril will need to complete.<br>• Also included within the 8/23 email from VPO Christensen were specific *action items* for each CM pillar lead. So at this juncture we are also asking CMs to form initial thoughts and a clear way forward/next steps as you follow up on these specific *action items.*<br>• For example – one action item for Water was the Market Area communication on PSP. So what is our specific next step on this and by who and by when? | 8/31/2023 | On-Track |
| **Phase II – Opportunity Sizing – Are we focused on the right areas with current tactics?** | **Target** | **Status** |

Exhibit U - 050

| | Target | Status |
|---|---|---|
| • So after completing the review in **Phase I** – CMs should have understanding of the current Quality material(s) above. So based on review, are we pursuing the right opportunities based on size/scale? Do we need to pivot our tactics? CM should also review the Glidepaths on the Peril PPT forwarded from Data Analytics on 8/24.<br>• At this stage you should also continue to progress your way forward on *action items* from 8/23 email from VPO Christensen (if not already being captured in bullet above).<br>• Using an example from our kick-off call – this is the Phase where something like XM audit rule may be identified as potential tool/technology to impact gaps for PNT.<br>• After this Phase – we will do a checkpoint with the full group to confirm completion and progress from **Phase I and Phase II** above (date/time below in yellow highlight). | 9/8/2023 | On-Track |
| **Check Point # 1 – Call with Quality Pillar and VPO Sponsor – 9/8 (12:30 pm CST)** | | |
| **Phase III – Taking Opportunity Sizing to → Solutions – What are we going to do?** | **Target** | **Status** |
| • So at this Phase each CM now knows what we are doing currently (Phase I). CM will have also completed Opportunity Sizing (Phase II). So now, what is our plan and which tactics will we use to address the peril opportunity we have sized?<br>• Each CM Pillar should begin forming solutions on the identified opportunity and finalizing the Glidepaths working with Data Analytics. This juncture is also pulling together the final outcomes on *action items* from the 8/23 email from VPO Christensen.<br>• Staying with the XM audit rule example from **Phase II** above – an action in this Phase may be clearly outlining how the XM audit rule will used – point forward by our leaders.<br>• After this Phase – we are going to do another full checkpoint with the group to check status (date/time below in yellow highlight). | 9/19/2023 | On-Track |
| **Check Point # 2 – Call with Quality Pillar and VPO Sponsor – 9/19 (12:30 pm CST)** | | |
| **Phase IV – Finalizing Material (Prior to September Executive Quality Meeting)** | **Target** | **Status** |
| • At this juncture – each CM/Peril has completed their Opportunity Sizing assessment and framed final recommendations on the Opportunities for the peril.<br>• CMs will have also progressed the *action items* from VPO Christensen's 8/23 email to the point of conclusion and/or progressed forward enough to have substantive update.<br>• CM will have also met with Data Analytics to finalize visuals for each peril.<br>• Quality Pillar CMs will work with VPOs for peril specific scrimmages in this final Phase. | 9/25/2023 | On-Track |

**Jordan J. Coad, CPCU®, CLU®**
Claims Manager – P&C Claims

Exhibit U - 051

State Farm Insurance Companies
100 YEARS


Confidential Produced Pursuant to Protective Order

West. Neil, et al. v. SFF&CC, et al.

Hosier, Gary, et al. v. SFF&CC, et al.

P&C Claims
June 24, 2021

# Fire Model Enhancement – Water & Wind/Hail

State Farm

CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER HOSIERGAR0074406PROD_Exh. 13

EXHIBIT
30

WEST-RFP44- Sub. Prod.000121

West. Neil, et al. v. SFF&CC, et al.

Hosier, Gary, et al. v. SFF&CC, et al.

## Water – Overview

**Enterprise Guidelines**

- Coverage
- Scope
- Estimatics
- Reconciliation

Began Dec.

**Water Specialized Team**

- Skill Development
- Front end handling
- Targeted Management Reviews
- Cabinet and Wood Flooring Focus

Initiated Jan.

**New Items Scaled**

- Skills Review and Development
- Updated QFC Template
- Estimatics Resource Guide

1st iteration Apr.

FOR INTERNAL STATE FARM USE ONLY. Contains information that may not be disclosed outside State Farm without authorization.



CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER HOSIERGAR0074406PROD.0001_Exh. 13

WEST-RFP44- Sub. Prod.000122

West. Neil, et al. v. SFF&CC, et al.

Hosier, Gary, et al. v. SFF&CC, et al.

## Water – Next Steps

**Lessons Learned**

- Coverage and Scope opportunities
- Timing of Management Reviews

**Additional Testing in Progress**

- SFPSP with HO-6 Claims
- Estimatics and Reconciliation strategies with Fire Proximity



**Future Updates/Deliverables**

- Florida Vendor Test
- Increase and Enhancements to Accelerated Management Reviews

FOR INTERNAL STATE FARM USE ONLY Contains information that may not be disclosed outside State Farm without authorization



CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER HOSIERGAR0074406PROD.0002_Exh. 13

WEST-RFP44- Sub. Prod.000123

West. Neil, et al. v. SFF&CC, et al.

Hosier, Gary, et al. v. SFF&CC, et al.

## Water – Measurements




**note, March and April 2021 figures approximate*

FOR INTERNAL STATE FARM USE ONLY. Contains information that may not be disclosed outside State Farm without authorization



CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER HOSIERGAR0074406PROD.0003_Exh. 13

WEST-RFP44- Sub. Prod.000124

West. Neil, et al. v. SFF&CC, et al.

Hosier, Gary, et al. v. SFF&CC, et al.

## Wind/Hail – Initial Analysis & Prioritized Tactics

- Claim Handling Hygiene
- Small Hail (≤ 1") & Light Wind (≥ 50 mph)
- Early Team Manager Involvement

| PERIL | HYPOTHESIS | METRIC | BASELINE | INDUSTRY BEST |
|---|---|---|---|---|
| Wind | Unnecessary roof replacement on minor wind damages (50 mph or less) | % Full Roof Replacement (FRR) on Severity 3 Wind | 63% | 5-10% |
| Hail | Unnecessary roof replacement on light hail damages (1" hail or smaller) | % Full Roof Replacement (FRR) on Severity 3 Hail | 90% | 5-10% |

- **Data Set Analysis:** Texas, All Wind/Hail Losses (Cat and Non-Cat), 2017-2019
- **Baseline:** Analysis of 3-year data validated FRRs were paid at 63% frequency for Severity 3 Wind and 90% frequency for Severity 3 Hail
- **Industry Best:** Industry Best FRR on light wind and small hail averages a 5-10% frequency, therefore an internal quality improvement opportunity of 53-58% for light wind and 80-85% for small hail
- **Quality Play:** Establish parameters to engage Team Manager review when claim handler recommends full slope replacement or full roof replacement for claims with light wind (50 mph or less) or small hail (1" or smaller)

Wind/Hail Kick Off in Dallas County, TX June 26, 2020

Expansion to Texas December 7, 2020

Expansion to all States December 17, 2020

FOR INTERNAL STATE FARM USE ONLY. Contains information that may not be disclosed outside State Farm without authorization.

CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER

West. Neil, et al. v. SFF&CC, et al.

Hosier, Gary, et al. v. SFF&CC, et al.

## Wind/Hail – Playbook

| Fundamentals | Live Plays | Calibration |
|---|---|---|
| • Roof Skills Review<br>• HAAG Refresher<br>• Wind Loss Overview<br>• Wind Evaluation Sheet<br>• Art of the Conversation<br>• Fire Data Accuracy Dashboard | • TM reviews on roof replacement recommendations (≤ 1", ≥ 50 mph, and Age & Condition)<br>• Enhanced emphasis on Claim Handling Hygiene<br>• Use of Structured Phrases to measure adoption<br>• Weekly Monitoring & Surveying<br>• Targeted Reinspections | • Age & Condition reviews in all states<br>• ITEL vendor solution for shingle identification / availability<br>• EagleView Connect Explorer<br>• Policy Endorsement |

FOR INTERNAL STATE FARM USE ONLY. Contains information that may not be disclosed outside State Farm without authorization.

CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER

HOSIERGAR0074406PROD.0005_Exh. 13

WEST-RFP44- Sub. Prod.000126

West. Neil, et al. v. SFF&CC, et al.

Hosier, Gary, et al. v. SFF&CC, et al.

## Wind/Hail – February 2021 vs June 2021




FOR INTERNAL STATE FARM USE ONLY. Contains information that may not be disclosed outside State Farm without authorization

CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER HOSIERGAR0074406PROD.0006_Exh. 13

West. Neil, et al. v. SFF&CC, et al.

Hosier, Gary, et al. v. SFF&CC, et al.

## Wind/Hail Total Roof to Partial Roof Replacement Ratio




FOR INTERNAL STATE FARM USE ONLY. Contains information that may not be disclosed outside State Farm without authorization.

CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER HOSIERGAR0074406PROD.0007_Exh. 13

WEST-RFP44- Sub. Prod.000128

West. Neil, et al. v. SFF&CC, et al.

Hosier, Gary, et al. v. SFF&CC, et al.

## Wind/Hail – Continuous Improvement

- **Wind/hail** peril NPI increased +$1.49B (+45.3%) YOY yet decreased -$74.0M (-1.5%) in the past three months. Jurisdictions with YOY increases greater than +$90M were Louisiana, Iowa, Alabama, Texas, and Georgia; Colorado experienced the largest decrease (-$110.9M). Pending counts decreased YOY (-16,108) yet increased in the past three months (+6,212).

*Our quality focus and claim handling are guided by and in support of ***Our Commitment to Our Policyholders***

### Total Homeowners Wind/Hail Peril (including Catastrophe) Trends by Jurisdiction

| Data as of May 2021 | % Net Paid Indemnity (sorted) | Net Paid Indemnity (Millions) | Net Paid Indemnity | | | Incurred Pure Premium | | Incurred Frequency | | Paid Severity | | Pending Counts | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | YOY Δ (Millions) | YOY Δ Percent | Vs. P5YR Avg* | YOY Δ Percent | Vs. P5YR Avg* | YOY Δ Percent | Vs. P5YR Avg* | YOY Δ Percent | Vs. P5YR Avg* | YOY Δ Percent | Vs. P5YR Avg* |
| Louisiana | 18.4% | $1,115.8 | +$979.3 | +717.8% | +1,139.8% | +593.9% | +1,128.5% | +237.4% | +414.8% | +106.7% | +138.6% | -18.8% | +135.3% |
| Texas | 9.6% | $581.3 | +$87.4 | +17.7% | -7.2% | -1.7% | -11.5% | +17.7% | -19.1% | -16.5% | +9.4% | -25.8% | +11.9% |
| Illinois | 8.7% | $530.1 | -$46.2 | -8.0% | +10.2% | -22.1% | -4.3% | -14.2% | -6.2% | -9.2% | +2.0% | -68.7% | -44.7% |
| Iowa | 6.3% | $380.0 | +$290.9 | +326.6% | +457.7% | +291.1% | +434.4% | +312.8% | +446.5% | -5.2% | -2.2% | -52.0% | -12.9% |
| Minnesota | 4.7% | $287.7 | +$28.5 | +11.0% | +27.7% | +10.7% | +27.3% | +4.0% | +10.8% | +6.4% | +14.9% | +70.4% | +84.6% |
| Georgia | 4.7% | $286.0 | +$96.6 | +61.0% | +24.5% | +38.2% | +18.8% | +21.8% | -10.2% | +13.6% | +32.2% | -17.1% | +60.2% |
| Alabama | 3.5% | $214.4 | +$131.1 | +157.4% | +131.2% | +128.3% | +118.4% | +110.1% | +106.8% | +8.7% | +5.6% | +18.4% | +192.2% |
| Ohio | 3.1% | $188.7 | -$12.9 | -6.4% | +62.1% | -11.9% | +47.6% | -16.6% | +12.7% | +5.7% | +31.0% | -49.9% | -19.4% |
| Oklahoma | 3.0% | $182.3 | +$6.7 | +3.8% | +36.0% | -11.7% | +19.6% | -10.8% | +14.2% | -1.0% | +4.8% | -60.0% | -13.6% |
| Missouri | 3.0% | $179.8 | -$12.4 | -6.5% | +12.0% | -27.3% | -8.2% | -39.0% | -28.0% | +19.3% | +27.5% | -82.2% | -69.3% |
| Colorado | 2.7% | $165.5 | -$114.4 | -40.9% | -40.3% | -44.0% | -44.6% | -52.9% | -65.4% | +18.8% | +60.2% | -18.6% | -57.6% |
| Tennessee | 2.6% | $160.4 | -$24.3 | -13.2% | +64.4% | -32.2% | +34.5% | -48.2% | -18.4% | +30.8% | +64.8% | -61.3% | -11.6% |
| Florida | 2.6% | $155.5 | +$16.0 | +11.5% | +8.4% | -3.1% | -7.7% | +16.5% | -33.2% | -16.8% | +38.1% | +13.9% | +122.6% |

FOR INTERNAL STATE FARM USE ONLY. Contains information that may not be disclosed outside State Farm without authorization

## Wind/Hail – Law of Recency

| PERIL | HYPOTHESIS | METRIC | BASELINE | INDUSTRY BEST |
|---|---|---|---|---|
| Wind | Unnecessary roof replacement on minor wind damages (50 mph or less) | % Full Roof Replacement (FRR) on Severity 3 Wind | 63% | 5-10% |
| Hail | Unnecessary roof replacement on light hail damages (1" hail or smaller) | % Full Roof Replacement (FRR) on Severity 3 Hail | 90% | 5-10% |

- **Data Set Analysis**: Texas, All Wind/Hail Losses (Cat and Non-Cat), 2017-2019
- **Baseline**: Analysis of 3-year data validated FRRs were paid at 63% frequency for Severity 3 Wind and 90% frequency for Severity 3 Hail
- **Industry Best**: Industry Best FRR on light wind and small hail averages a 5-10% frequency, therefore an internal quality improvement opportunity of 53-58% for light wind and 80-85% for small hail
- **Quality Play**: Establish parameters to engage Team Manager review when claim handler recommends full slope replacement or full roof replacement for claims with light wind (50 mph or less) or small hail (1" or smaller)

FOR INTERNAL STATE FARM USE ONLY. Contains information that may not be disclosed outside State Farm without authorization.

West. Neil, et al. v. SFF&CC, et al.

Hosier, Gary, et al. v. SFF&CC, et al.

# Questions?

11

CONFIDENTIAL - PRODUCED PURSUANT TO PROTECTIVE ORDER HOSIERGAR0074406PROD.0010_Exh. 13

WEST-RFP44- Sub. Prod.000131