SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
JENNIFER M. HOFFMAN, Cal. Bar No. 240600
jhoffman@sheppard.com
MADALYN MACARR, Cal. Bar No. 301539
mmacarr@sheppard.com
SARAH A. K. BLITZ, Cal. Bar No. 280118
sblitz@sheppard.com
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone: 213.620.1780
Facsimile: 213.620.1398

Attorneys for Defendant
STATE FARM GENERAL
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KATHY MYLES, an individual, and WILLIE DANIELS, an individual,

Plaintiffs,

v.

STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 10,

Defendant.

Case No. 2:26-cv-00452-CAS (MBKx)

*Assigned to Hon. Christina A. Snyder*

DISCOVERY MATTER
Magistrate Judge Michael B. Kaufman

**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, AND FOR SANCTIONS**

Hearing Date: September 30, 2026
Time: 9:00 a.m.
Courtroom: 550, 5th Floor
255 E. Temple Street
Los Angeles

Trial Date: October 12, 2027

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

A. The Loss and the Claim Investigation .......... 2

B. The Suit .......... 3

C. State Farm Produces Extensive Documents .......... 4

D. The August 17 IDC and Set Three .......... 5

E. The Motion Itself Reflects Its Own Weaknesses .......... 6

III. ARGUMENT .......... 7

A. Rule 26 Requires Relevance to This Claim, *Not* a Broader Agenda .......... 7

B. Plaintiffs Have Not Shown the Claim-Specific Nexus *Hangarter* Requires .......... 8

C. Counsel's Unsworn Declaration and Materials from Other Litigation Do Not Supply the Missing Nexus .......... 11

D. The Enterprise-Wide Requests Are Disproportionate .......... 13

E. Personnel and Incentive Requests Are Overbroad .......... 15

F. State Farm Has Produced the Training and Guidance Relevant to *Myles* .......... 17

G. Set Three Provides No Basis for Compelling Additional Production .......... 18

H. Prior Discovery Orders and Plaintiffs' Characterizations of Other Productions Do Not Establish Discoverability Here .......... 19

I. Sanctions Are Unwarranted .......... 21

J. If the Court Orders the Disputed Enterprise Discovery, Plaintiffs Should Bear the Incremental Costs .......... 23

IV. CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Bank Melli Iran v. Pahlavi*
58 F.3d 1406 (9th Cir. 1995) ........ 12

*Barten v. State Farm Mut. Auto. Ins. Co.*
No. CV-23-00267-TUC-CKJ (MSA), 2024 WL 2890246 (D. Ariz. June 10, 2024), *aff'd*, 2024 WL 6957687 (D. Ariz. Aug. 22, 2024) ........ 11

*Bilbrey v. Cingular Wireless, LLC*
2007 OK 54, 164 P.3d 131 (2007) ........ 15, 20

*Crawford-El v. Britton*
523 U.S. 574 (1998) ........ 7

*Express, LLC v. Fetish Group, Inc.*
464 F. Supp. 2d 965 (C.D. Cal. 2006) ........ 12

*Glenfed Development Corp. v. Superior Court*
53 Cal. App. 4th 1113 (1997) ........ 18

*Hangarter v. Provident Life & Accident Insurance Co.*
373 F.3d 998 (9th Cir. 2004) ........ 9, 10

*Maekeff v. Trump Univ., LLC*
2014 U.S. Dist. LEXIS 94732, 2014 WL 3490356 (S.D.Cal. 2014) ........ 15, 20

*Mailhoit v. Home Depot U.S.A., Inc.*
No. CV 11-03892 DOC, 2012 WL 12884129 (C.D. Cal. Sept. 4, 2012) ........ 17

*Merrick v. Paul Revere Life Insurance Co.*
594 F. Supp. 2d 1168 (D. Nev. 2008) ........ 11

*Mojica v. State Farm General Insurance Co.*
735 F. Supp. 3d 1247 (S.D. Cal. 2024) ........ 2, 13

*Nei v. Travelers Home & Marine Insurance Co.*
326 F.R.D. 652 (D. Mont. 2018) ........ 21, 22, 23

*Oppenheimer Fund, Inc. v. Sanders*
437 U.S. 340 (1978) ........ 24

*In re Outlaw Laboratories, LP Litigation*
No. 18CV840-GPC(BGS), Dkt. 314 (S.D. Cal. Oct. 22, 2020)........................... 14

*Pandora Media, LLC v. Spoken Giants, LLC*
No. 2:23-MC-00149-MCS-MAR, 2023 WL 9421132 (C.D. Cal. Dec. 6, 2023)........................................................................................................ 17

*Pebble Beach Co. v. Caddy*
453 F.3d 1151 (9th Cir. 2006) ...................................................................... 1

*Pizzuto v. Tewalt*
136 F.4th 855 (9th Cir. 2025)........................................................................ 8

*Reece v. Basi*
2014 U.S. Dist. LEXIS 78307, 2014 WL 2565986 (E.D.Cal. Jun. 6, 2014) ....... 20

*Ribera v. Nibco*
364 F.3d 1057 (9th Cir. 2004) ....................................................................... 1

*Ricotta v. Allstate Insurance Co.*
211 F.R.D. 622 (S.D. Cal. 2002) ................................................................. 14

*Scripps Health v. Nautilus Insurance Co.*
No. 21-cv-1634-AJB(WVG), 2022 WL 18781350 (S.D. Cal. Dec. 23, 2022)........................................................................................................ 16

*Security National Insurance Co. v. Construction Associates of Spokane, Inc.*
2021 WL 1823106 (E.D. Wash. May 6, 2021) ........................................... 8, 18

*Shoen v. Shoen*
5 F.3d 1289 (9th Cir. 1993) ........................................................................... 8

*State Farm Mutual Auto. Ins. Co. v. Campbell*
538 U.S. 408 (2003) ..................................................................................... 9

*Tong v. State Farm General Insurance Co.*
No. 2:24-cv-02219-DSF-MAR (C.D. Cal.), Dkt. 55, 2025 WL 1127849 (March 18, 2025)......................................................... 16, 18, 19, 20, 21

*Vandevert Construction, Inc. v. Allied World Specialty Insurance Co.*
No. C21-197, 2022 WL 18781103 (E.D. Wash. Feb. 14, 2022).......................... 18

*Williams v. Superior Court*
3 Cal. 5th 531 (2017).................................................................................. 16

*In re Williams-Sonoma, Inc.*
947 F.3d 535 (9th Cir. 2020) .......... 7, 8

Other Authorities

10 Cal. Code Regs. § 2695.6(a) .......... 17

Cal. Civ. Jury Instruction (CACI) No. 2337 .......... 17

Fed. R. Civ. P. 26 .......... 1, 7, 8, 11, 14, 17, 24

Fed. R. Civ. P. 26(b)(1) .......... 7, 8, 9, 15, 19, 23, 24

Fed. R. Civ. P. 26(b)(2)(C) .......... 9

Fed. R. Civ. P. 26(c)(1)(B) .......... 24

Fed. R. Civ. P. 26(g) .......... 23

Fed. R. Civ. P. 26(g)(1) .......... 23

Fed. R. Civ. P. 26(g)(3) .......... 23

Fed. R. Civ. P. 34 .......... 22

Fed. R. Civ. P. 34(b)(2)(B) .......... 22

Fed. R. Civ. P. 34(b)(2)(C) .......... 22

Fed. R. Civ. P. 37(a)(1) .......... 19

Fed. R. Civ. P. 37(a)(5) .......... 23

Fed. R. Civ. P. 37(a)(5)(A)(ii) .......... 23

Fed. R. Civ. P. 37(a)(5)(A)(iii) .......... 23

Fed. R. Civ. P. 37(b) .......... 23

Fed. R. Civ. P. 37(b)(2) .......... 23

Fed. R. Evid. 602 .......... 12

Fed. R. Evid. 701(a) .......... 12

Fed. R. Evid. 701(c) .......... 12

Okla. Sup. Ct. R. 1.200 ........................................................................................ 15

# I. INTRODUCTION

Plaintiffs' Motion does not present an ordinary discovery dispute. State Farm General Insurance Company ("State Farm") has produced Plaintiffs' claim-related materials and training, guidelines, job aids, and other company resources in effect when Plaintiffs' claim was handled, and even earlier. Plaintiffs instead seek years of *enterprise-wide* discovery based on an *alleged* corporate-practices theory fueled entirely by speculation. They allege that State Farm engaged in a "scheme" to "improperly" and "maliciously deny[] water loss claims it knows to be covered" in California. (Dkt. 18, p. 6:18, 24). They support that allegation with the declaration of their own counsel and hundreds of pages of documents counsel assembled from other lawsuits, principally in Oklahoma state court against a State Farm affiliate. Not one of those documents reflects a corporate scheme by State Farm or any affiliate to knowingly deny covered water loss claims, in California or anywhere else. And State Farm's affirmative evidence submitted with this Opposition negates that any such alleged "scheme" *ever* existed.

Plaintiffs' speculation not only conflicts with the factual record, it does *not* provide a factual basis to compel years of enterprise-wide discovery. Even before the recent amendments to Rule 26, the Ninth Circuit recognized that federal courts should not "condone the use of discovery to engage in 'fishing expeditions.'" *Ribera v. Nibco*, 364 F.3d 1057, 1072 (9th Cir. 2004) (internal citation and quotation omitted). Nor should courts compel discovery premised on speculation contradicted by actual evidence. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006). Rule 26 requires a factual nexus between the discovery sought and the claim at issue. Plaintiffs fail to demonstrate one.

The claim-specific record is already substantial. Plaintiffs ignore it. For example, they move to compel production of a specific training course, RPD 103, that State Farm had *already produced* and *identified by Bates number* in written responses served before Plaintiffs filed this Motion. That fact alone reveals the true

aim of the Motion: not to obtain discovery related to Plaintiffs' claim, but to launch a burdensome fishing expedition that, by Plaintiffs' own account, would encompass "hundreds of thousands of pages." The undue financial burden of such a production provides an independent basis for denial. The Court should deny the Motion or, at a minimum, shift the cost of any ordered production to Plaintiffs.

## II. STATEMENT OF FACTS

### A. The Loss and the Claim Investigation

This is a single-incident, first-party property claim arising from a plumbing leak in a pressurized hot water line at a Gardena residence. Plaintiffs state they discovered the leak on October 7, 2025. Dkt. 43-1 at 8:14-16; Dkt. 43-2 ¶ 8.

Plaintiffs contacted their plumber the same day; he instructed them to turn off the water. Hoffman Decl. ¶ 5, Ex. C. The documentary record reflects that they did not. Third-party discovery confirms the leak continued uninterrupted until October 10, when the plumber returned and mitigation began.[1]

Plaintiffs also spoke with assigned State Farm claim specialist Robin Dixon on October 10, and Ms. Dixon inspected the home on October 14[2]. (Dixon Decl. ¶

---

[1] Plaintiffs' gas utility produced hourly usage records reflecting continuous gas usage beginning on October 4, continuing uninterrupted until a one-hour time period that aligned with the plumber's first property visit, and then resumed continuously until October 10 when the plumber returned to reroute the plumbing. Hoffman Decl. ¶ 4, Ex. B (Gas Co. Usage Data (Myles Residence), entries for Oct. 5-10, 2025); ¶ 5, Ex. C (Exact Leak Detection invoice/estimate at SF-CF0000516–SF-CF0000517). The utility data shows the leak did not diminish over that multi-day time period; it increased. See Hoffman Decl. ¶ 4, Ex. B. *Compare Mojica v. State Farm General Insurance Co.*, 735 F. Supp. 3d 1247, 1260 (S.D. Cal. 2024) (finding a 5.8 day leak subject to policy exclusion for continuous seepage or leakage of water).

[2] Assuming the role of fact witness, Plaintiffs' counsel asserts that "State Farm inspected the home once on October 10". Schaffer Dec. ¶ 10. Counsel does not cite any documentary or factual foundation for that statement, which conflicts with

5). During her investigation, Ms. Dixon consulted: (1) Plaintiffs' policy; (2) an internal Operation Guide regarding water losses; and (3) her supervisor, Team Manager Ellen Redmond. Dixon Decl. ¶ 6; Hoffman Decl. ¶¶ 7, 9, Ex. F. The Policy excludes coverage for, among other things, "water or sewage below the surface of the ground…," and for "continuous" "seepage or leakage of water, steam, or sewage that occurs or develops over a period of time". Hoffman Decl. ¶ 8, Ex. E (Policy, Form HW-2105 at SF-POL0000033). While consulting the Operation Guide, Ms. Dixon also consulted Ms. Redmond, writing:

> "I want to make sure I get this right because the last time I denied coverage for a slab leak and a plumbing re-route, it was overturned and we took care of the resulting damage."

Hoffman Decl. ¶ 9, Ex. F. Ms. Dixon ultimately found, and Ms. Redmond agreed, that the policy did not afford coverage. (Redmond Decl. ¶ 6). No one else weighed in on the initial coverage determination, and no other resources beyond the policy, Operation Guide section and the facts of the claim were consulted in reaching it. (Redmond Decl. ¶ 6; Dixon Decl. ¶¶ 6, 8). Ms. Dixon sent a letter advising Plaintiffs of the determination in late October 2025. (Dixon Decl. ¶ 8; Hoffman Decl. ¶ 6, Ex. D).

**B.** **<u>The Suit</u>**

Months later, Plaintiffs filed this action. Their operative complaint asserts a single cause of action for breach of the implied covenant of good faith and fair dealing arising from the handling of their claim. (Dkt. 18). More specifically, they allege that State Farm breached the implied covenant by: "misrepresenting and failing to explain coverage", "failing to conduct a thorough, fair and objective investigation", "failing to provide Plaintiffs with a detailed explanation" of its

---

documentary evidence, including State Farm's contemporaneous claim file record. Hoffman Dec. ¶ 2, Ex. A; Dixon Decl. ¶ 5.

coverage position, "failing to pay the reasonable amounts owed under the Policy" "failing to consider new evidence", and "requiring Plaintiffs to obtain counsel and file suit to obtain amounts owed to Plaintiffs under the Policy." (Dkt. 18, ¶ 39). They also assert a claim for punitive damages, identifying Dixon's and Redmond's "investigation and coverage determination" as the basis for that claim. (*Id.*, ¶ 44).

**C. <u>State Farm Produces Extensive Documents</u>**

State Farm has produced an extensive body of material bearing directly on the investigation and handling of Plaintiffs' claim. That production includes the complete claim file and applicable policy; the contemporaneous email and chat exchange between Dixon and Redmond discussing the exclusions and the specific Operation Guide provision they consulted; other Operation Guide sections; Standard Claim Processes and Jurisdictional References; complete training transcripts for Dixon and Redmond; and the water-loss-related training reflected on those transcripts. Hoffman Decl. ¶¶ 3–13, Exs. A–F (containing excerpts from State Farm's productions SF-CF000001-812, SF-POL0000001-59, SF-UW0000001-399, MYLEK00000001PROD-MYLKE00002466PROD).

The training production alone is substantial. It includes the water-loss courses identified in the handlers' training histories, including "Water Coverage – Plumbing.[3]" Hoffman Decl. ¶ 12 (Training Productions primarily included within productions MYLEK000000513PROD-MYLKE00002466PROD).

State Farm went beyond the ordinary claim file. It searched for emails and Teams messages that may have existed outside the file related to the claim and produced those too. That included Ms. Dixon's contemporaneous exchange with

[3] The last of those is the very course Plaintiffs separately demand in RPD 103. State Farm produced it at MYLEK00000530PROD and confirmed that production in its written responses. *Hoffman Decl.* ¶ 14, Ex. G (Supplemental Responses to RPD, Set Three) at 39:20–40:14. The same is true of other requests and responses in Set Three, which Plaintiffs nonetheless included in this Motion.

Ms. Redmond referencing a similar prior claim to "make sure I get this right." State Farm also located and produced the narrative portion of that prior claim file, with third-party information redacted. Hoffman Decl. ¶¶ 9, Ex. F (prior claim narrative, SF-CF4000001-11). It also subpoenaed and produced the utility records described above. Hoffman Decl. ¶ 4, Ex. B.

State Farm's supplemental and further supplemental responses to RPD Sets One, Two, and Three identified additional agreed searches and productions, confirmed completed productions, and supplied anticipated completion dates for the narrow categories still underway. Hoffman Decl. ¶¶ 14–16, Exs. G, I. For numerous requests, the further supplemental responses expressly state that State Farm had "completed its diligent search and reasonable inquiry for additional non-privileged documents responsive to this request and its production of documents as agreed herein." Hoffman Decl. ¶ 16, Ex. I (Further Supplemental Responses to RPD, Set One) at 18:3-4, 20:5-6, 24:8-9, 25:1-2, 27:3-4, 30:3-4. For an agreed search still underway, State Farm provided anticipated completion dates in September 2026. Hoffman Decl. ¶ 16, Ex. I.

### D. <u>The August 17 IDC and Set Three</u>

At the August 17 IDC, Plaintiffs' counsel told the Court that what he actually wanted was *not* the documents related to Plaintiffs' claim—which State Farm had already produced—but "the Oklahoma documents," something not referenced in the document requests or the IDC request. Hoffman Decl. ¶ 15, Ex. H. Counsel admitted he had never seen those materials; he learned of them from a blog post by a plaintiffs'-side law firm about Oklahoma litigation—not from any record in this case. Hoffman Decl. ¶ 15, Ex. H (Hr'g Tr. (Aug. 17, 2026)) at 9:11-12:2. Counsel nevertheless asserted that the blog post's reference to an Oklahoma wind/hail "quality plan" and the alleged "scheme" to deny covered water loss claims in this case were "one and the same," explaining: "they've got them in Oklahoma." *Id.* at 10:9-15. State Farm's counsel explained that the "Oklahoma documents" demand

was a new development first raised by Plaintiffs' counsel that morning. *Id.* at 14:5-10.

The Court did not decide the merits of the four categories presented in the IDC request (none of which referenced "the Oklahoma documents"). It directed further conferral and authorized a noticed motion by August 26 if the parties could not resolve their differences. *Id.* at 21:1-22:2. The Court also cautioned that if Plaintiffs sought "hundreds of thousands" of pages from State Farm, they would have "a high burden to demonstrate" why that material was warranted here. *Id.* at 23:6-17.

**E. <u>The Motion Itself Reflects Its Own Weaknesses</u>**

Plaintiffs filed their Motion on August 24. It rests on a forty-page declaration from their own counsel that misstates basic facts about the subject loss.[4] It also attaches approximately 500 pages of documents from Oklahoma litigation and other cases compiled over years.[5] Beyond the subject requests, the Motion does not attach a single document related to *this* case. Nor does it identify any particular request where State Farm failed to produce a document that would tend to prove or disprove any claim or defense in *this* action.

Plaintiffs also include State Farm's initial Responses to RPD Set Three despite failing to meet and confer on them before the IDC—and while omitting State Farm's supplemental responses, served before the Motion was filed. As those responses reflect, and as Plaintiffs ignore, State Farm's response to nearly every

---

[4] (Compare Schaffer Dec., ¶ 10 (asserting an inspection date of October 10) with Hoffman Dec., Ex. A (a portion of the claim file production reflecting an inspection on October 14) and Dixon Decl. ¶ 5.

[5] The attachments to the exhibits contain metadata that appears to reflect changes made to the exhibits by Plaintiffs' counsel dating back to 2024, more than a year before the subject loss in this case. (*See, e.g.*, Dkt. 43-2 at Exs. F, G, I).

request in that set identified the requested document among State Farm's prior productions in this case. Hoffman Decl. ¶ 14, Ex. G.

## III. ARGUMENT

### A. Rule 26 Requires Relevance to This Claim, *Not* a Broader Agenda

Rule 26 permits discovery only of nonprivileged matter that is both "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Those requirements are conjunctive. Modern Rule 26 is deliberately claim-focused: the 2000 amendment narrowed discovery from matter relevant to the general "subject matter" of the action to matter relevant to a claim or defense, and the 2015 amendment eliminated the residual subject-matter provision while restoring proportionality to the rule's text. *See* Fed. R. Civ. P. 26 advisory committee's notes to 2000 and 2015 amendments. The Ninth Circuit has emphasized that these changes were intended to "restrict, not broaden, the scope of discovery." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020).

*Williams-Sonoma* makes the limitation concrete. There, counsel sought customer information to locate a new plaintiff who could pursue claims counsel wished to litigate. The Ninth Circuit held the discovery impermissible and issued mandamus because the district court had "clearly erred as a matter of law." *Id.* at 539-40. The significance is not *Williams-Sonoma*'s class-action posture; it is the principle that discovery cannot be justified merely because it concerns a broader subject a party wishes to investigate.

The Supreme Court likewise recognizes the district court's broad discretion to "tailor discovery narrowly" and prevent unnecessary burden. *Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998) (Rule 26 authorizes courts to limit and sequence discovery to facilitate the "prompt and efficient resolution of the lawsuit").

Plaintiffs' reliance on *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993), for "broad and liberal" discovery does not carry the Motion. *Shoen* predates both the 2000 narrowing and the 2015 proportionality amendment. Nothing in *Shoen*

authorizes discovery divorced from an actual claim or defense, or excuses the proportionality analysis Rule 26 now expressly requires. *See In re Williams-Sonoma*, 947 F.3d at 539–40.

Nor does *Pizzuto v. Tewalt*, 136 F.4th 855 (9th Cir. 2025), eliminate the nexus requirement merely because it describes relevance as a "low bar." *Id.* at 868. In *Pizzuto*, discovery concerning the date, origin, and source of execution drugs bore directly on the reliability and efficacy of the very drugs the State intended to use against the plaintiff—a concrete, not abstract, connection to the pleaded injury. *Id.* at 868-69. And *Pizzuto* separately sustained the discovery in part because defendants failed to substantiate the burden they asserted. *Id.* at 868 n.6, 869-71. A low bar is not no bar.

Rule 26(b)(2)(C) likewise directs that the Court "must limit" discovery that is cumulative, obtainable from a more convenient source, or outside Rule 26(b)(1). The training and resources available to Dixon and Redmond when they made their coverage determination present one relevance question—already answered by State Farm's production. A decade of alleged enterprise severity targets, historical audits, predictive analytics, and "the Oklahoma documents" present an entirely different one, unconnected to this claim. Counsel's argumentative declaration labels disparate materials—wind/hail programs, Oklahoma initiatives, financial metrics—as "claims practices." Calling dissimilar programs by a shared label does not make them discoverable in this case.

## B. Plaintiffs Have Not Shown the Claim-Specific Nexus *Hangarter* Requires

Plaintiffs rely principally on *Hangarter v. Provident Life & Accident Insurance Co.*, 373 F.3d 998 (9th Cir. 2004), for the proposition that an insurer's corporate claims practices may be relevant to bad faith and punitive damages. But *Hangarter* illustrates precisely the concrete factual connection that is missing here.

In *Hangarter*, the challenged practices had been adopted by the entity administering the plaintiff's policy; affiliated companies implemented them

together; Hangarter's own claim underwent the challenged "round table review"; and her adjuster testified the review was used to "explore[] termination options." 373 F.3d at 1014 (finding a "sufficient nexus to Hangarter's claim"). The Ninth Circuit distinguished *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), because a "legally sufficient nexus" connected the allegedly widespread policies to the termination of Hangarter's benefits.[6] *Hangarter*, 373 F.3d at 1017.

Plaintiffs have made no comparable showing. They propound more than sixty requests spanning alleged water initiatives, consultant-driven programs, financial metrics, performance targets, audits, personnel evaluations, incentives, and management practices extending years before this loss—without offering any factual nexus to their claim. *See* Dkt. 43-2, Ex. A, RPD-2 Nos. 18, 24-94. RPD 53 seeks water-loss severity goals for every year from 2015 through 2025. RPD 75 seeks "all documents containing or describing" audits of water-loss claims, with no temporal or geographic limit. RPD 86 extends performance-metric discovery to every manager in an indirect reporting chain, however many layers removed from this claim. Plaintiffs speculate that alleged senior-management initiatives "trickle down" to line-level claims personnel. Dkt. 43-1 at 17:10-24; *see also* Dkt. 43-2 ¶¶ 152-53. That generalized organizational theory is not the claim-specific evidence *Hangarter* found sufficient.

The evidentiary record makes the absence of a bridge especially stark. Plaintiffs possess thousands of pages of claim file documents, emails, internal guidelines, training histories for Dixon and Redmond, and relevant training materials. *See* Hoffman Decl. ¶ 3, Ex. A; ¶¶ 12-13. Yet Plaintiffs identify no evidence that Dixon or Redmond were evaluated under the purported financial metrics sought; that any consultant-supplied standards actually applied to Plaintiffs'

---

[6] *Campbell* itself requires "a nexus to the specific harm suffered by the plaintiff" and cautions that dissimilar acts independent of the conduct giving rise to liability may not support punitive damages. 538 U.S. at 422-23.

claim or California water-loss claim handling generally; that this claim was selected for any alleged predictive-model or AI audit; that any alleged "Fix Profit" or comparable directive governed the coverage decision; or that purported historical programs remained operative in October 2025. Notably, not a single document Plaintiffs offer in support of their Motion comes from the claim file or State Farm's production in this case. Nothing Plaintiffs identify supplies the missing factual connection.

Plaintiffs' own historical evidence underscores the gap. Counsel relies on a State Farm discovery response in *Jacobs v. State Farm General Insurance Co.*, No. 22STCV23446 (Los Angeles Super. Ct.), describing California water efforts beginning around 2017 and a "temporar[y]" reduction in water-loss settlement authority in 2020—meaning payments towards a covered claim above a certain amount required supervisor sign-off. Dkt. 43-2 ¶¶ 83-89, Ex. I at 8:13-26. Nothing in that description reflects that adjusters were ever instructed to knowingly deny covered claims—the theory Plaintiffs plead. See SAC ¶ 36. And Plaintiffs identify no evidence that the temporary 2020 authority reduction remained effective five years later. Historical existence is not present-day nexus.

Plaintiffs' reliance on *Barten v. State Farm Mutual Auto. Ins. Co.* does not eliminate the nexus requirement. See Dkt. 43-1 at 16:28-17:11. *Barten* arose from a long-running automobile no-fault benefits dispute with a factual record specific to that plaintiff's own claim history. *Barten v. State Farm Mut. Auto. Ins. Co.*, No. CV-23-00267-TUC-CKJ (MSA), 2024 WL 2890246, at *2-4, 11-12 (D. Ariz. June 10, 2024), *aff'd*, 2024 WL 6957687 (D. Ariz. Aug. 22, 2024). Even there, the court rejected the plaintiff's broader temporal demand and required further conferral over whether the requests targeted the appropriate personnel. *Id.* at *4, 11-12. *Barten* illustrates Rule 26 tailoring to a claim's own facts; it does not establish that a decade of metrics, audits, consultant materials, and indirect-management

records is discoverable here absent evidence tying those documents to Plaintiffs' claim.[7]

## C. Counsel's Unsworn Declaration and Materials from Other Litigation Do Not Supply the Missing Nexus

Plaintiffs attempt to fill that evidentiary gap through their own counsel's forty-page declaration. *See* Dkt. 43-2. Counsel may competently describe matters he personally handled—service of discovery, conferences, materials he received, and litigation in which he participated. *See id.* ¶¶ 3-4, 24-30. But the declaration goes far beyond those bounds, offering conclusions about State Farm's motives, internal operations, analytics, terminology, and purported corporate programs drawn from counsel's "prior experience," pleadings, transcripts, and materials obtained in other lawsuits.[8] *See id.* ¶¶ 80, 85, 129, 149, 151–53.

The declaration itself exposes the line between percipient fact and advocacy. Counsel notably does not declare personal knowledge of the statements it contains, nor sign it under penalty of perjury. Yet counsel pronounces that State Farm's naming conventions "seem[] intended to avoid scrutiny," *id.* ¶ 85; that other productions "strongly suggest" a deliberate "well-worn plan," *id.* ¶ 80; and that documents "will eventually show" that purported reinspection processes involve consultant-created predictive models and AI, *id.* ¶ 149. Counsel expressly predicates these assertions on "prior experience," reviewed pleadings and transcripts, and documents obtained elsewhere. *Id.* ¶ 151. Those are *inferences* about what other evidence supposedly means—not personal knowledge that any alleged program

---

[7] *Merrick v. Paul Revere Life Insurance Co.*, 594 F. Supp. 2d 1168, 1171 (D. Nev. 2008), is further afield. *See* Dkt. 43-1 at 17:11-13. *Merrick* was a post-trial decision on a motion for new trial, remittitur, or reduction of punitive damages after a jury verdict; the court assessed an evidentiary record already developed at trial. *Id.* at 1169–71.

[8] As mentioned above, the declaration also misstates basic facts regarding the subject claim. *Supra*, II. E.

governed Plaintiffs' claim.

That distinction has evidentiary consequences. *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412-13 (9th Cir. 1995), afforded attorney declarations "no weight" where counsel lacked personal knowledge of the substantive facts asserted. Likewise, *Express, LLC v. Fetish Group, Inc.*, 464 F. Supp. 2d 965, 976-77 (C.D. Cal. 2006), rejected an attorney declaration where the asserted personal-knowledge foundation did not explain how counsel knew the substantive facts. *See also* Fed. R. Evid. 602 (personal knowledge required); Fed. R. Evid. 701(a), (c) (lay opinion must rest on the witness's perception, not specialized knowledge).

The reasoning is also circular. Counsel describes discovery he sought in *Wise* because he "believed [it] would begin to show" an alleged systemic plan; *Wise* settled without production of such materials. Dkt. 43-2 ¶¶ 90-91. He then catalogues "myriad disputes and lawsuits" asserting similar theories, *id.* ¶¶ 92–95, and uses his synthesis of pleadings, transcripts, and productions from those cases to construct a broader hypothesis, *id.* ¶¶ 129, 149, 151–53. Plaintiffs now invoke that hypothesis to justify still more discovery in *Myles*. Speculation accumulated across lawsuits does not become proof by repetition.[9]

Those materials may explain how counsel developed a litigation theory. They do not establish that the theory is true, much less that any alleged consultant

---

[9] Plaintiffs reliance on the *Mojica* deposition transcript omits that the witness confirmed nothing she had seen as a State Farm employee or expert witness across numerous cases reflected a wrongful scheme to deny covered water-loss claims, and omits her opinion that the loss was covered — an opinion the district court rejected, finding the loss uncovered as a matter of law, affirmed by the Ninth Circuit. Hoffman Decl. ¶ 19, Ex. L, pp. 173:5-179:13; *Mojica v. State Farm General Insurance Co.*, 735 F. Supp. 3d 1247, 1257–58 (S.D. Cal. 2024) (granting summary judgment for State Farm finding no coverage as a matter of law for continuous water leak that lasted at least 5.8 days), *aff'd*, No. 24-5597, 2025 WL 3553034, at *1 (9th Cir. Dec. 11, 2025).

initiative, financial metric, predictive model, or other enterprise program existed or impacted Plaintiffs' claim.[10]

**D. <u>The Enterprise-Wide Requests Are Disproportionate</u>**

The requests themselves demonstrate the scale of the problem. RPD 18 seeks guidance from any consultant concerning the investigation or adjustment of water losses, with no temporal or geographic limit. Dkt. 43-2, Ex. A at 12:4-5. RPDs 24-43 seek documents concerning numerous alleged initiatives and programs dating to 2015—ten years of records for a coverage determination reached within weeks. *Id.* at 13:1-14:9. RPDs 44–75 comprise thirty-two requests for years of claim counts, denial data, severity and loss-ratio goals, trend analyses, audits, and management materials.[11] *Id.* at 15:1-18:7.

Plaintiffs call the metrics and financial-outcome materials "at the heart of the matter." Dkt. 43-1 at 26:1-5. That conclusion assumes a premise they have not established: a scheme to knowingly deny covered California water loss claims. *See* SAC ¶¶ 35-36. The Motion instead spends its argument on Oklahoma wind and hail materials produced in Oklahoma litigation. The pivot from the pleaded California water theory to an unpleaded Oklahoma wind/hail theory is itself telling. What is actually at the heart of this case is the coverage decision Dixon and Redmond made on this claim. Rule 26 requires proportionality request by request; an asserted corporate-practices theory does not make every historical measure associated with it

---

[10] Counsel's declarations in other cases show the same pattern: broad institutional discovery requests supported by speculation, with Counsel describing himself as a "leading expert[]" on "the issue of State Farm water loss denials" who "routinely consult[s] with … many other lawyers in California on State Farm matters." Hoffman Decl. ¶ 17, Ex. J, ¶¶ 53-54 (*Pachall* Decl.).

[11] RPD 53 alone seeks water-loss severity goals and targets for every year from 2015 through 2025, including weekly or monthly analyses; RPD 75 seeks "[a]ll DOCUMENTS containing or describing" audits of water-loss claims without tying the request to Plaintiffs, Dixon, Redmond, or any relevant time period. *Id.* at 15:13-16:2, 18:6-7.

discoverable.

*Ricotta v. Allstate Insurance Co.*, 211 F.R.D. 622 (S.D. Cal. 2002), is on point. There, potential expert bias could be relevant to a first-party property bad-faith claim, but the court rejected a demand for essentially every report the expert had prepared for Allstate because the plaintiff offered "absolutely no factual support" beyond "mere speculation" for the asserted bias theory. *Id.* at 625-26. The same deficiency exists here: whatever those materials may show about wind and hail programs in other jurisdictions years before this loss, Plaintiffs identify no evidence that any such materials governed the adjustment of this California non-weather water loss.

*In re Outlaw Laboratories, LP Litigation*, No. 18CV840-GPC(BGS), Dkt. 314 at 6–9 (S.D. Cal. Oct. 22, 2020), enforced temporal and claim-specific limits notwithstanding possible relevance, describing even a four-year request as "vastly overbroad" where only a narrower period could plausibly bear on the claims. Plaintiffs seek roughly a decade and, by their own account, "hundreds of thousands" of pages. Unlike a case where enterprise records are the only source of evidence concerning the challenged conduct, Plaintiffs already possess the contemporaneous claim record, guidance, training, and third-party evidence bearing on this loss.

Moreover, an Oklahoma state trial court production order also does not carry precedential or persuasive value here—or anywhere. Okla. Sup. Ct. R. 1.200; *Bilbrey v. Cingular Wireless, LLC*, 2007 OK 54, 164 P.3d 131, 136 fn. 7 (2007) ("Oklahoma decisions that are not published in permanent law reports have neither persuasive nor precedential value.").

Requests of the breadth at issue here are not close calls at the margin of Rule 26(b)(1).[12] Courts in the Ninth Circuit need not rewrite an overbroad request into a

[12] The requests themselves illustrate why. For instance, RPD 18 seeks guidance from any consultant related to water-loss investigation or adjusting, with no

narrower one they might have accepted; they properly deny motions to compel responses to overbroad requests as drafted and leave the burden of propounding a proper request where it belongs, with the requesting party. *See, e.g.,Makaeff v. Trump Univ., LLC*, 2014 U.S. Dist. LEXIS 94732, *25. Requests 18 and 24-75 should be denied to the extent they seek consultant, initiative, financial, audit, and management materials with no demonstrated connection to the handling of Plaintiffs' claim.

**E. Personnel and Incentive Requests Are Overbroad**

Plaintiffs represented at the IDC that they are not seeking complete personnel files or matters such as health information or harassment complaints. Hoffman Decl. ¶ 15, Ex. H (Hr'g Tr. (Aug. 17, 2026)) at 13:13-16. Their actual requests (and Motion) sweep far beyond that limitation, and beyond Dixon and Redmond. Eight requests—RPDs 85, 86, 87, 88, 89, 90, 92, and 94—each extend to "any Team Manager, Section Manager, Claim Manager, and/or Claim Consultant to whom either Robin Dixon or Ellen Redmond reported directly or indirectly from January 1, 2024, to present," with no limit on how many layers removed from this claim the chain extends[13].

---

temporal or geographic limit, Dkt. 43-2, Ex. A at 12:4-5; RPD 24 seeks all documents related to an alleged "Water Initiative" across ten open-ended subcategories dating to 2015, years before either handler was hired, *id*. at 15:2-16:9; and RPD 75 seeks all documents describing State Farm's audits of water-loss claims, unrestricted by subject, geography, or time, *id*. at 41:3-4. RPD 53 and RPD 60 are equally unbounded, seeking severity goals and initiative-level metrics with no tie to Myles or its handlers. *Id*. at 24:24-27, 31:1-11.

[13] Dkt. 43-2, Ex. A at RPD 86, for example, seeks documents describing performance metrics not just for Dixon and Redmond, but for every manager above them in the indirect chain; RPD 92 and RPD 94 do the same for incentives "available" and "paid." Dkt. 43-2, Ex. A at 137:6-8 (RPD 85), 138:6-8 (RPD 86), 139:5-7 (RPD 87), 140:6-8 (RPD 88), 141:5-7 (RPD 89), 142:5-6 (RPD 90), 145:3-5 (RPD 92), 146:6-8 (RPD 94). RPD 91 compounds this, seeking granular "QlikSense" productivity data (*e.g.*, "Closed in Field," "Team Barometer") for the

Plaintiffs cite *Tong* and *Scripps Health v. Nautilus Insurance Co.*, No. 21-cv-1634-AJB(WVG), 2022 WL 18781350, at 5–6 (S.D. Cal. Dec. 23, 2022), for the proposition that performance reviews and incentive information may be discoverable in bad-faith litigation. Dkt. 43-1 at 27:1-15. Neither case establishes the breadth sought here. *Scripps Health* involved specific employee records and compensation information alleged to bear on whether employees had incentives affecting their handling of the claim; it did not hold that the personnel records of every indirect manager are discoverable regardless of connection to the claim. *See id*. at 3, *5–6 (treating personnel discovery as appropriate where the documents sought were specific and narrowly tailored rather than the employee's entire file).

The requests also implicate privacy interests that reinforce the need for tailoring. *Williams v. Superior Court*, 3 Cal. 5th 531, 552, 556 (2017) (requiring courts to identify legally protected privacy interests and balance them against the legitimate interests served by disclosure). Plaintiffs identify no evidence that any purported performance metric, incentive, audit result, or coaching directive actually influenced Dixon's or Redmond's handling of this claim, much less that such a connection extends through every indirect level above them. A protective order protects confidentiality; it does not create relevance. RPDs 86–94 should be denied as drafted. A court is not required to rewrite an overbroad discovery request to render it proper. *Mailhoit v. Home Depot U.S.A., Inc.,* No. CV 11-03892 DOC (SSx), 2012 WL 12884129, at *2 (C.D. Cal. Sept. 4, 2012) ("[T]he court is not obligated to impose limiting constructions on interrogatories that are overbroad, vague, or seek irrelevant information, but may simply deny the request to compel further responses."); *see also Pandora Media, LLC v. Spoken Giants, LLC*, No.

---

same undefined universe of managers, *id*. at 143:4-144:2, while RPD 93 seeks incentive metrics for claims adjusters enterprise-wide with no reference to Dixon, Redmond, or Myles at all, *id*. at 146:1-3.

2:23-MC-00149-MCS-MAR, 2023 WL 9421132, at *5 (C.D. Cal. Dec. 6, 2023) ("it is not the responsibility of a court to rewrite overbroad discovery requests.").

### F. State Farm Has Produced the Training and Guidance Relevant to *Myles*

Plaintiffs' training-and-guidelines authorities establish a proposition State Farm does not contest: claims-handling standards may be discoverable when they bear on the claim at issue. Dkt. 43-1 at 27:17-28:17. State Farm produced those documents here. Plaintiffs' authorities do not support the broader proposition that *every* historical training or guideline document touching California water loss claims over a decade falls within scope.

The regulation and jury instruction Plaintiffs cite do not expand Rule 26. California regulations require insurers to "adopt and communicate" written standards for prompt claim investigation, 10 Cal. Code Regs. § 2695.6(a), and CACI No. 2337 identifies failure to adopt reasonable standards as one circumstance a jury may consider in evaluating bad faith. *See* Dkt. 43-1 at 27:17-28:1. Those authorities concern the standards applicable to claim handling—*which State Farm produced*. Hoffman Decl. ¶¶ 6, 10. They do not render every alleged corporate initiative, metric, consultant project, or superseded training document discoverable.

Plaintiffs' own cases support claim-focused discovery. *Security National*, 2021 WL 1823106, at 4, recognized the relevance of claims manuals applicable to the same types of claims at issue. *Glenfed Development Corp. v. Superior Court,* 53 Cal. App. 4th 1113, 1117-20 (1997), compelled a claims manual only after a fact-specific showing of relevance to the coverage issues in that case. *Vandevert Construction, Inc. v. Allied World Specialty Insurance Co.,* No. C21-197, 2022 WL 18781103, at 5 (E.D. Wash. Feb. 14, 2022), ordered production of claims manuals, directives, and communications "in effect at the time" the claim was evaluated and that "governed the handling and determination of the claim at issue." Those authorities support production of guidelines effective at the time of the claim, which

State Farm already produced, not a decade of historical materials untethered to Plaintiffs' claim.

Plaintiffs already have the relevant Operation Guides, Standard Claim Processes and Jurisdictional References; complete Dixon and Redmond training histories; and the water loss training reflected on those histories, along with other resources for handling water-loss claims during the relevant time frame. Hoffman Decl. ¶¶ 6, 10–13.

Plaintiffs characterize *Tong* and *Pachall* as rejecting a "reviewed-or-relied-upon" limitation. Dkt. 43-1 at 28:1-16. That is not the limitation State Farm asks this Court to apply. State Farm has not conditioned production on proof that Dixon or Redmond opened each page of an applicable manual. The limitation State Farm invokes is relevance and temporal applicability: whether a resource informed California water loss handling during the pertinent period—and even extending two years before it—not whether a historical document happened to be produced in another lawsuit involving a different claim, different time, and different employees.

**G. <u>Set Three Provides No Basis for Compelling Additional Production</u>**

Set Three presents both a procedural and a substantive problem. The parties did not meet and confer on Set Three until August 20—days *after* the IDC—and State Farm then served supplemental responses. Hoffman Decl. ¶ 20. The Court's authorization from the August 17 IDC should not be enlarged after the fact to encompass an unaddressed dispute. *See* Fed. R. Civ. P. 37(a)(1).

On the merits, RPD 103 demonstrates why blanket Set Three relief is unwarranted. It seeks the "Water Coverage – Plumbing" material by reference to a *Tong* Bates number. State Farm had *already produced* that course at MYLEK00000530PROD—it appears in the training histories for both Dixon and Redmond—and its written response confirmed the production. Hoffman Decl. ¶ 14, Ex. G (Supplemental Responses to RPD, Set Three) at 39:20-40:14. It is unclear whether Plaintiffs reviewed State Farm's production before filing this Motion.

Other Set Three requests rest on the incorrect assumption that production in another case establishes relevance here. RPD 114 seeks a document by Bates range from *Pachall*. Hoffman Decl. ¶ 14, Ex. G (RPD Set 3 at 56-57). That a document existed and was produced elsewhere does not establish that it remained operative in October 2025 or informed the handling of Plaintiffs' claim.

Set Three supplies neither a proper procedural basis for the relief sought nor evidence of any unfilled claim-specific discovery gap.

### H. Prior Discovery Orders and Plaintiffs' Characterizations of Other Productions Do Not Establish Discoverability Here

Plaintiffs repeatedly invoke *Tong*, *Savas v. State Farm General Insurance Co.*, Los Angeles Superior Court No. 21STCV03286, *Hursh v. State Farm Fire & Casualty Co.*, Oklahoma County District Court No. CJ-2025-2626, *West v. State Farm Fire & Casualty Co.*, Comanche County District Court No. CJ-2025-135, and *Pachall v. State Farm General Insurance Co.*, San Diego Superior Court No. 37-2022-00044176-CU-IC-CTL. *See* Dkt. 43-2, Exs. H, K-O, Q-R, T-U. Those are nonbinding, case-specific discovery rulings involving different claimants, different losses, different coverage investigations, different complaints, and different jurisdictions with different discovery standards. None relieves Plaintiffs of Rule 26(b)(1)'s requirement to show that the particular discovery sought is relevant and proportional on *this* record, before *this* Court, for *this* claim.

*Tong* illustrates the problem. An interlocutory discovery order from a settled case is not evidence that the same material, never even produced in *Tong*, is relevant and discoverable here, nor evidence that the material ever existed.[14] The record here affirmatively negates that any scheme to deny covered water loss claims in

[14] The *Tong* court was unpersuaded by counsel's request for issue sanctions with broad factual findings against State Farm related to non-weather water loss claims. *Tong,* No. 2:24-cv-02219-DSF-MAR (C.D. Cal.), Dkt. 55, 2025 WL 1127849 at *3 (March 18, 2025).

California ever existed, or that third-party consultant Accenture was hired to perform work regarding California water loss claims in 2020 or later. Manduca Decl. ¶¶ 4-5; Dixon Decl. ¶¶ 3-4; Redmond Decl. ¶¶ 3-4. Courts decline to compel discovery that, as framed, would require the responding party to prove a negative and thereby impose an undue burden. *See Makaeff v. Trump University, LLC*, 2014 U.S. Dist. LEXIS 94732 at *25, 2014 WL 3490356 (S.D.Cal. 2014) (collecting cases rejecting discovery requests that require responding party to prove a negative); *accord Reece v. Basi*, 2014 U.S. Dist. LEXIS 78307, 2014 WL 2565986, at 5 (E.D.Cal. Jun. 6, 2014) (noting that the plaintiff's RFP would require the defendant to prove a negative, the court stated, "discovery cannot be compelled with respect to these requests as framed").

The same is true of *Savas*, *Hursh*, *West*, and *Pachall*. Each involved different claims, personnel, time periods, requests, and evidentiary records. Plaintiffs' own Motion underscores the differences by relying on Oklahoma wind/hail materials dating to 2023 to support discovery concerning a California plumbing loss reported in October 2025. Dkt. 43-1 at 18:1-23:28. That other courts in another jurisdiction compelled production of different documents on a different record in non-reviewed, non-persuasive, non-precedential out-of-state orders does not establish a sufficient nexus here. *Bilbrey*, *supra* 164 P.3d at 136 fn. 7.

Plaintiffs' criticism of State Farm's production of purportedly irrelevant materials confirms the same principle. Counsel accuses State Farm of producing "thousands of duplicative and non-responsive documents," including materials concerning broker communications, returned mail, and washing-machine losses, and characterizes that production as "worthless." Dkt. 43-2 ¶¶ 78–80; *see also* Dkt. 43-1 at 15:3–13. The declaration identifies no Bates ranges or exhibits substantiating many of those accusations. And the broker example is particularly telling: Plaintiffs themselves requested "[a]ny communications between YOU and any sales agent or broker concerning the PLAINTIFFS, PROPERTY, CLAIM, or LOSS." RPD Set

One, No. 3. Hoffman Decl. ¶ 16, Ex. I. They cannot request broker communications and then cite production of those very communications as evidence of irrelevant padding. Nor can they request broad productions of institutional documents touching on numerous subjects, and complain that some portions of the documents are irrelevant to their claim.

More fundamentally, Plaintiffs' premise underscores the overbreadth of the discovery they now seek. If material lacking a meaningful factual connection to their claim is not useful discovery, the same principle applies with equal force to wind/hail programs, roof-replacement metrics, Oklahoma materials, nationwide financial analyses, and alleged historical initiatives that Plaintiffs have not connected to this claim with competent evidence.

## I. <u>Sanctions Are Unwarranted</u>

Plaintiffs separately contend that State Farm's responses do not clearly identify whether documents are withheld on an objection and that rolling productions lacked definite completion dates. Dkt. 43-1 at 13:1-15:5, 25:24-26:5; Dkt. 43-2 ¶¶ 53-69. They rely on *Nei v. Travelers Home & Marine Insurance Co.*, 326 F.R.D. 652, 657, 664 (D. Mont. 2018), and request monetary and even issue sanctions. Dkt. 43-1 at 16:3-15. The record supports neither. *Tong v. State Farm General Insurance Co.*, No. 2:24-cv-02219-DSF-MAR (C.D. Cal.), Dkt. 55, 2025 WL 1127849 at *3 (March 18, 2025).

First, Plaintiffs' assertion that RPD 18 never identifies whether responsive material is withheld is contradicted by the response itself: "State Farm is producing the non-privileged documents described above and withholding other potentially responsive documents based on the stated objections." Hoffman Decl. ¶ 18, Ex. K (State Farm's Response to RPD, Set Two) at 36:24-37:2. That is the disclosure Rule 34(b)(2)(C) requires. *See* Fed. R. Civ. P. 34(b)(2)(C); Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment (the response need not provide a detailed description of withheld material but must alert the requesting party that material is

being withheld). State Farm also produced a privilege log. Hoffman Decl., ¶ 10. The omission Plaintiffs invoke *Nei* for does not exist.

Second, Plaintiffs' rolling-production argument overlooks the further supplemental responses State Farm served on August 21—three days before the Motion. For numerous requests, those responses state that State Farm "has completed its diligent search and reasonable inquiry for additional non-privileged documents responsive to this request and its production of documents as agreed herein." Hoffman Decl. ¶ 16, Ex. I (Further Supplemental Responses to RPD, Set One) at 18:3-4, 20:5-6, 24:8-9, 25:1-2, 27:3-4, 30:3-4. For others, State Farm provides anticipated production completion dates in September 2026. *Id.* Plaintiffs' Motion does not acknowledge those pre-Motion responses.

Rule 34 expressly permits production at "another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). The 2015 Advisory Committee likewise recognizes staged production. Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment. To the extent any individual response still requires clarification, that is a curable response-language issue—not a basis to deem every objection waived or to establish that the disputed enterprise material falls within Rule 26(b)(1).

*Nei* does not change that result. Even *Nei* recognizes that a court must examine the requests themselves rather than mechanically compel facially improper discovery because an objection was deficient. 326 F.R.D. at 657. Here, the responses were supplemented, RPD 18 expressly disclosed withholding, and State Farm supplied completion information before Plaintiffs filed the Motion. A technical dispute over earlier response wording does not entitle Plaintiffs to ten years of enterprise discovery. The sheer breadth of Plaintiffs' requests, not the pace of State Farm's production, is the source of any remaining dispute.

Nor is there a basis for issue sanctions under Rule 26(g). Rule 26(g)(3) addresses certifications that violate Rule 26(g)(1) without substantial justification. Plaintiffs point to no specific certification made for an improper purpose or without

reasonable inquiry; they simply repackage their disagreement with State Farm's relevance and proportionality objections as misconduct. That does not suffice.

Finally, State Farm has not violated a discovery order in this action; Rule 37(b)'s sanctions for disobedience of an order do not apply. Fed. R. Civ. P. 37(b)(2). And although Rule 37(a)(5) permits an expense award when a motion to compel is granted, no award is appropriate where the opposing position was "substantially justified" or other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). The disputes here concern substantial questions of relevance, proportionality, temporal scope, and the permissible reach of enterprise discovery, not sanctionable defiance.

**J. If the Court Orders the Disputed Enterprise Discovery, Plaintiffs Should Bear the Incremental Costs**

State Farm maintains that the disputed enterprise discovery is irrelevant, disproportionate, and should not be compelled. If the Court nevertheless orders any of it, Plaintiffs should bear the reasonable incremental costs of the compelled search, collection, processing, review, and production.

Rule 26 expressly authorizes that relief. A protective order may prescribe terms for discovery, including "the allocation of expenses." Fed. R. Civ. P. 26(c)(1)(B). The Supreme Court recognizes that courts may condition burdensome discovery on payment by the requesting party. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). Rule 26(b)(1) also requires consideration of whether "the burden or expense of the proposed discovery outweighs its likely benefit." The burden here is not speculative: in a single Oklahoma case, the document review vendor's costs for the volume of materials Plaintiffs now claim to seek were expected to exceed $4.3 million. *See* Declaration of Laura Siff ¶ 3.

Accordingly, if any disputed discovery is ordered, State Farm requests leave to submit evidence of the reasonable incremental costs and that payment or advancement of those costs be a condition of any compelled production. This relief

is requested strictly in the alternative; State Farm maintains that the disputed discovery should not be compelled.[15]

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion and request for sanctions. In the alternative, if the Court orders any disputed enterprise discovery, Plaintiffs should bear the reasonable incremental costs pursuant to Rule 26(c)(1)(B).

Dated: September 9, 2026 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *Jennifer M. Hoffman*
JENNIFER M. HOFFMAN
SARAH A.K. BLITZ
MADALYN A. MACARR
Attorneys for Defendant STATE FARM GENERAL INSURANCE COMPANY

[15] Plaintiffs' proposed order compounds this: it would compel withdrawal of all non-privilege objections and production of every disputed category, with blanks for deadlines and sanctions, sweep in Set Three despite the IDC sequence, and compel already-produced materials like the RPD 103 training. Dkt. 43-4 at 2:6-3:9. That blanket relief bears no relationship to Rule 26's request-specific inquiry; relief should be limited to requests satisfying Rule 26(b)(1), with expanded enterprise production subject to the cost-allocation relief above.