J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Nicholas J. Peterson (287902)
**Kerley Schaffer LLP**
1939 Harrison Street, #900
Oakland, California 94612
Telephone: (510) 379-5801

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY MYLES, an individual, and WILLIE DANIELS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 10,<br><br>Defendants. | Case No.: 2:26-cv-00452-CAS-MBK<br><br>**DISCOVERY MATTER**<br><br>Magistrate Judge Michael B. Kaufman<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, AND FOR SANCTIONS**<br><br>Hearing Date: September 30, 2026<br>Time: 9:00 a.m.<br>Courtroom: 255 E. Temple St., Los Angeles, Courtroom 550, 5th Floor<br><br>2nd Amended Complaint: 3/16/2026<br>Discovery Cutoff: 4/15/2027 |

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................4

THE INTIATIVES, REVISITED....................................................................7

THE DISPUTE, REVISITED.......................................................................10

ARGUMENT ............................................................................................12

I. The Court Should Impose Sanctions for State Farm's Months-Long, and Ongoing, Failure to Comply with its Discovery Obligations..............................12

II. Water Initiative Document Requests..........................................................18

A. *Tong* was Not an "Interlocutory" Ruling. ................................................19

B. The Relevance Threshold is Lower Where the Non-Moving Party Has Exclusive Access to the Documents at Issue. ..................................................19

C. The Initiatives Were Implemented at the Executive Level and Managed to Senior Claims Staff. ..........................................................................20

D. The Scope of Requested Performance and Incentive Requests is Appropriate. ......................................................................................22

E. State Farm Has No Proof Relating to Burden..........................................23

III. The Guidelines and Training Document Requests. ..................................24

CERTIFICATE OF COMPLIANCE...............................................................28

# TABLE OF AUTHORITIES

## Cases


*Bank Melli Iran v. Pahlavi*,
58 F.3d 1406 (9th Cir. 1995) .......... 10

*Express, LLC v. Fetish Group, Inc.*,
464 F.Supp.2d 965 (C.D. Cal. 2006) .......... 11

*Fantagraphics Books, Inc. v. Ferris*,
2022 WL 4120166 (W.D. Wash. Sept. 9, 2022) .......... 10

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) .......... 20, 22

*In re Williams-Sonoma, Inc.*,
947 F.3d 535 (9th Cir. 2020) .......... 18

*Kirschenman v. Auto-Owners Ins.*,
280 F.R.D. 474 (D.S.D. 2012) .......... 18, 22

*Nargizyan v. State Farm Gen. Ins. Co.,*
120 Cal.App.5th 581 (2026) .......... 12

*Nei v. Travelers Home & Marine Ins. Co.*,
326 F.R.D. 652 (D. Mont. 2018) .......... 11

*Tong, v. State Farm Gen. Ins. Co.*,
No. 2:24-cv-02219-DSF-MAR, 2024 WL 5472414, (C.D. Cal. Dec. 20, 2024) .......... Passim

*Tong, v. State Farm Gen. Ins. Co.*,
No. 2:24-cv-02219-DSF-MAR (C.D. Cal.), Dkt. 55, 2025 WL 1127849 (March 18, 2025) .......... 12, 13

*Williams v. Super. Ct.*,
3 Cal.5th 531(2017) .......... 23

**Rules**

Fed. R. Civ. P. 26(b)(1) .......... 20
Fed. R. Civ. P. 34 .......... 13, 17
Fed. R. Civ. P. 37 .......... 17

## INTRODUCTION

For the past decade State Farm's senior executives have undertaken a series of initiatives designed to "fix"—meaning *increase*—the company's profits. The multifarious programs included efforts to reduce property claims payments in California, like efforts to "improve" coverage outcomes—meaning driving up denial rates—in water claims. Unsurprisingly, these initiatives did not result in memoranda directing claims staff to "deny covered water loss claims."[1]

But still, State Farm found a way. With the goal of dramatically reducing paid water loss claims of the sort experienced by Plaintiffs, the insurer's senior management designed and implemented coverage-focused programs—for example, authority reductions, steering of claims, and paid-claim audits which spit out "findings" or errors which led to "coaching" of senior claim staff to reduce paid claims—which resulted in large percentage increases in denied claims and the addition of millions to State Farm's bottom line.[2]

While the parties here engaged in a months-long conferral process, plaintiffs in two cases pending in Oklahoma, with the same sort of single-claim bad faith cases as this one, obtained orders compelling production of a wide array of initiative-related documents in the same categories as are at issue here.

As detailed previously, and further explained in the accompanying

---

[1] *See* Redmond Declaration in Support of Opposition to Motion to Compel, Docket 53-2, ¶3; Dixon Declaration, Docket 53-4, ¶4; Manduca Declaration, Docket 53-5, ¶5 [each insisting State Farm has never "trained or instructed [its staff] to deny covered water-loss claims…."]

[2] Declaration of Mark Romano in Support of Motion to Compel and for Sanctions (Romano Decl.), ¶¶20-29.

Declaration of Mark Romano,[3] those documents prove a decade-long, systemic effort at State Farm to reduce payments and adjustment expenses by, among other things, driving up denial rates. The documents make plain that State Farm's wind and *water* initiatives were part of a single "Fix Profit" effort: they were initiated and developed together, involve the same executives, utilize the same tools, are tracked in tandem, and are routinely discussed together in single documents with limited distribution to a small number of senior State Farm executives.

At the IDC that preceded this motion, State Farm complained that Plaintiffs had "just that morning" sought *new* documents, namely, the *Oklahoma* documents. It repeats the argument here.[4] But as counsel explained at the IDC, the assertion was, and remains, unfounded.[5] The requests at issue here were served in April 2026; they have not been amended. What they sought is roughly the same *categories* of materials that were sought, compelled, and produced in Oklahoma.

But recent developments in Oklahoma bear heavily here, as the Court's directives at the IDC make clear. After State Farm's voluminous Oklahoma productions and the recent de-designation of documents in that case, which were discussed in detail in Plaintiffs' opening memorandum and supporting declaration,

---

[3] Mr. Romano's declaration is not being submitted to support arguments made for the first time in this Reply. Rather, it is submitted (a) to rebut statements in the three employee declarations cited in the foregoing footnote, and (b) to make up for the deficiency resulting from State Farm's failure to comply with the Court's order that it provide information in its Opposition regarding the scope and relevance of the Oklahoma productions.

[4] Opposition to Motion to Compel (Opposition), Docket 53, pp.5:17-6:2.

[5] Supplemental Dylan Schaffer Declaration in Support of Motion to Compel (Supp. Schaffer Decl.), Exhibit A, pp.19:24-20:20.

together with the accompanying declaration of Mark Romano:[6]

- State Farm must concede the water-related initiatives and related documents exist;
- among other "opportunities," these programs targeted water coverage outcomes;
- the water coverage programs run together with similar wind/hail initiatives; and
- State Farm can find and produce the initiative documents sought here.

At the end of the IDC, the Court said this: "I would like you to meet and confer further principally about whatever you've learned from this Oklahoma litigation… [A]s to the Oklahoma documents, learn what you can -- and, *Ms. Hoffman, I trust that you will as well* -- and to exchange information so that when it comes to the Court, which I suspect it will, that we know exactly what we're talking about here in terms of what those documents are and how they might relate to the claims here."[7] The Court continued: "*I trust that Ms. Hoffman will do her due diligence* as well and share what she can with you. I understand she's not counsel there, but it's her client so hopefully …. I think two weeks should be sufficient for the parties to at least figure out better what the universe is here and what might plausibly be relevant and what not…."[8]

The parties conferred three days later. State Farm's lawyer had no report

[6] Plaintiffs' Memorandum in Support of Motion to Compel (Plaintiffs' MPA), Docket 43-1, pp.17:11-24:7; Dylan Schaffer Declaration in Support of Motion to Compel (Schaffer Decl.), Docket 43-2, ¶¶83-153.

[7] Supp. Schaffer Decl., Exhibit A, p.21:8-18 (emphasis added).

[8] Supp. Schaffer Decl., Exhibit A, p.24:2-10 (emphasis added).

from her Oklahoma colleagues. And State Farm's Opposition contains nothing that would suggest compliance with the Court's order that counsel speak with her colleagues in Oklahoma so we "*know exactly what we're talking about here in terms of what those documents are and how they might relate to the claims here….*"[9]

Instead, State Farm's opposition rests solely on the argument that in a stand-alone insurance bad faith case in which an insured alleges a baseless denial, an insured may not discover evidence reflecting systemic efforts by an insurer to reduce claim costs and loss adjustment expenses, including but not limited to efforts to dramatically increase the volume of such denials.

*Four prior courts* in the past two years have rejected the argument. That includes this Court in *Tong* where, in a case involving essentially identical facts, and a loss that occurred the year prior to the Myles family's loss, this Court rejected State Farm's view and broadly compelled production of the documents at issue here back to 2016. This Court should do the same. It should also sanction State Farm for its months-long and ongoing violation of its discovery obligations.

**THE INITIATIVES, REVISITED**

In their opening memorandum and supporting declaration, Plaintiffs described the history and contours of the initiatives State Farm put in place to reduce its water loss liabilities—for both indemnity and loss adjustment expenses—in California from 2016 to present. (Plaintiffs' MPA, pp.17:10-24:7; Schaffer Decl., ¶¶83-153.) That discussion explains the scheme at a high level,

[9] Supp. Schaffer Decl., ¶¶8-12; Exhibit A, p.21:15-18 (emphasis added);

details the tools employed to carry it out, and provides documentary evidence of the same.[10] But the discussion was necessarily limited by Plaintiffs' lack of access to essentially *all* of the relevant documents.

State Farm has the documents. And its Opposition does not dispute any of these allegations. Instead, one sentence into its brief, the insurer makes clear it intends to proceed by way of a straw-person argument, asserting that none of Plaintiffs' evidence "reflects a corporate scheme by State Farm or any affiliate to knowingly deny covered water loss claims, in California or anywhere else." (Opposition, p.1:12-13.)

State Farm uses that language throughout its brief and has submitted three employee declarations to make the same point—we do not train our employees to deny, and have never put in place any initiative aimed at denying, covered claims. (*See, e.g.,* Opposition, pp.5:26, 12:22-24, 13:13-14, 19:23-20:1; Declarations of Manduca, Redmond, Dixon, Docket 53-2, 53-4, 53-5.)

Having recast Plaintiffs' allegations, State Farm then insists that absent evidence of *that* scheme, the Myles family should be barred from discovering the initiative documents this Court (in *Tong*), and three others in the past two years,

---

[10] Given that State Farm has, but is loath to share, the relevant evidence, and aggressively pursues and enforces its protective orders across cases and courts, it would be a miracle if every assertion were exactly right. Perhaps Ms. Manduca is correct that Accenture was not the consultant who provided State Farm the means to reduce *water* claims payments, although her declaration indicates no involvement "in or after 2020" when, of course, the allegation is that the initiatives were commenced in 2016. (Manduca Declaration, Docket 53-5, ¶¶4-5.) That is why Plaintiffs' related document requests seek a much broader range of responsive documents. (*See, e.g.,* Schaffer Decl., Exhibit A, pp.6:15-25 (defining CONSULTANT) and 15:3-6 (a related request for documents).)

have ordered the insurer to produce.

But the Court will search State Farm's opposition in vain for any discussion of the actual allegations in the operative complaint, or detailed discussion in their moving papers, based on *evidence*—namely, that beginning approximately in 2016, and continuing through their 2025 claim, State Farm designed and implemented various systems and tools to systematically drive down its loss adjustment expenses and indemnity obligations in California water losses, including by increasing coverage denials. (Plaintiffs' MPA, p.17:14-19, citing Schaffer Decl., ¶¶83-153, describing history of discovery of the initiatives and elements of the initiatives; Second Amended Complaint, Docket 18, ¶¶33-37.)

To rebut State Farm's employee declarations, and to make up for State Farm's failure to comply with the Court's order that it provide the Court information regarding the scope and relevance of the Oklahoma productions, Plaintiffs have submitted the declaration of Mark Romano, a claims-handling expert with more than four decades in the property insurance industry who has been retained as a consultant in the Oklahoma matters,[11] and here. Mr. Romano makes the following points relevant to this proceeding:

- The water initiatives detailed in Plaintiffs' moving papers exist, and include programs focused on reducing coverage of water claims in California;
- The wind/hail and water programs at State Farm run side-by-side and are commonly discussed in the same documents;
- The water coverage initiatives resulted in large percentage increases in

[11] Romano Decl., ¶¶2-8.

denied claims with a resulting large benefit to State Farm's profits;

- State Farm's Oklahoma productions include documents bearing on the water initiatives which are relevant to the allegations in the complaint here;
- The initiative evidence bears directly on the question whether State Farm's conduct fell below the industry standard that applies to the investigation and adjusting of property claims in California; and
- A foundational element of State Farm's initiatives is their secrecy.

(Romano Decl., ¶¶20-34.)

None of this is speculation. All of it is apparent from even the sliver of now publicly available materials from the Oklahoma cases. All of it is confirmed by Mr. Romano's declaration. None of it is even disputed by State Farm.

**THE DISPUTE, REVISITED**

State Farm's statement of the claim facts is misleading and incomplete, both as to the law and facts.[12] As to the former, State Farm insists that because Plaintiffs' assertions relating to the underlying claim rely on a declaration of counsel[13] and allegations in the complaint, they are not cognizable here. (Opposition, pp.11:5-13:2, citing *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412-

---

[12] One criticism by State Farm is fair but does not move the dial here: the inspection by State Farm was on October 14, not October 10, 2025.

[13] State Farm relatedly argues the declaration was improperly sworn and therefore that the Court can ignore it. The assertion is contrary to the law. Per 28 U.S.C. §1746, declarations need only "substantially" comply with the statute's phrasing. (*See also Fantagraphics Books, Inc. v. Ferris*, 2022 WL 4120166 (W.D. Wash. Sept. 9, 2022), *5 [declaration satisfied §1746 where "under penalty of perjury" statement was only at beginning]). Even if the Court were to accept the argument, the assertions in the original declaration are further sworn by the accompanying Supplemental Declaration of Dylan Schaffer, paragraphs two to seven.

13 (9th Cir. 1995) and *Express, LLC v. Fetish Group, Inc.*, 464 F.Supp.2d 965, 976-77 (C.D. Cal. 2006).)

The law is otherwise. State Farm cites summary judgment cases. In a discovery proceeding, the movant need not produce extrinsic evidence in the form of admissible declarations or documents to establish that the requested discovery is relevant; they can use allegations in their pleading and a declaration of counsel to establish the nexus between the requested documents and the litigation. *See Nei v. Travelers Home & Marine Ins. Co.*, 326 F.R.D. 652 (D. Mont. 2018) [court relies on allegations in complaint].

As to the facts, a jury will ultimately decide if there is coverage. The question here is whether Plaintiffs' allegations render the initiative evidence relevant. They do. State Farm's adjuster did not inspect the house for a week after notice was provided. Setting aside weekends and the week-long vacation the adjuster took during the claim, the denial issued eight days after the inspection. The adjuster never saw the failed line, and never established the cause of the failure, the duration of the loss, the volume of water released, or the scope of damage to the house, all elements State Farm itself trains its adjusters to investigate before undertaking the coverage opinion. State Farm hired no expert to inspect or render an opinion. The insurer now says the denial in October 2025 was correct because of gas records obtained in August 2026, but it has no expert declaration to explain the meaning of the records and, as the Court will eventually learn, State Farm's understanding of the records is wrong.

As Plaintiffs have alleged, having failed to obtain evidence of cause, duration, or volume, State Farm's investigation was a bust, and its denial was

unsupported. Rather, the investigation and denial were a product of State Farm's systemic initiative to drive up the volume of denied slab claims in California. *Compare Nargizyan v. State Farm Gen. Ins. Co.,* 120 Cal.App.5th 581 (2026) [State Farm's failure to obtain proof those elements required jury trial on the issue of coverage]. Plaintiffs should be permitted to discover the relevant facts, precisely as the *Tong* Court, and three others in the past two years, have held.

## ARGUMENT

### I. The Court Should Impose Sanctions for State Farm's Months-Long, and Ongoing, Failure to Comply with its Discovery Obligations.

In their opening memorandum and supporting declaration, Plaintiffs described in detail State Farm's now six-month-long failure to comply with its discovery obligations in this case, along with similar conduct in prior cases. They pointed, as well, to factual findings by the *Tong* Court which make clear the conduct is a well-worn strategy designed to drive up litigation costs, obstruct discovery, and delay. (Plaintiffs' MPA, pp.12:11-15:13; Schaffer Decl., ¶¶32-82, and ¶46, citing *Tong v. State Farm,* No. 2:24-cv-02219-DSF-MAR, 2024 WL 5472414, *12-13 (C.D. Cal. Dec. 20, 2024).)

State Farm's Opposition is misleading.

First, ignoring the *Tong* Court's December 2024 findings, it points to a later decision by the Court. (Opposition, p.21:18-20, citing *Tong, v. State Farm Gen. Ins. Co.*, No. 2:24-cv-02219-DSF-MAR (C.D. Cal.), Dkt. 55, 2025 WL 1127849 at *3 (March 18, 2025).) The citation suggests Plaintiffs' reliance on the *Tong* Court's findings relating to State Farm's discovery abuses is misplaced.

But the latter order decided a *subsequent* motion relating to the *timing* of

State Farm's compliance with the December 2024 order compelling production. The Court rejected sanctions, but only because *it* had not provided production deadlines in its prior order. *Tong*, 2025 WL 1127849, at *4. Aware of the long delays, the Court put State Farm on a short leash, requiring production in 30 days.

Second, State Farm argues that its responses are Rule 34 compliant. It focuses on Request 18. (Schaffer Decl., Docket 43-2, Exhibit A, p.12:4-6.) Plaintiffs have detailed Rule 34 and other violations that go far beyond that request. State Farm ignores those circumstances. But addressing State Farm's example, the request sought "GUIDANCE YOU received from any CONSULTANT RELATED TO the INVESTIGATION and/or ADJUSTING of WATER LOSSES." Each of the terms was defined to limit the requests to California claims. (Schaffer Decl., Docket 43-2, Exhibit A, p.10:19-24.)

In its original response, State Farm failed to state it had completed a diligent search and would provide responsive documents. Rather, ignoring the actual request, which seeks documents containing guidance from internal and external *consultants,* a term Plaintiffs broadly defined, State Farm used its familiar template language, insisting that it would produce the triad of generic guidelines it always say it will produce: Operation Guides, Jurisdictional Resources, and Standard Claims Practices, along with unspecified "additional resources relating to the issues in this case that were in effect during the relevant timeframe." (Schaffer Decl., Docket 43-2, Exhibit B, p.33:2-14.)

After forcing a time-consuming conferral, and after the protective order was in place, State Farm supplemented its response in *July*. The supplement to Request 18 continued to ignore the substance of the request: State Farm promised to

produce training transcripts, referred again to its agreement to produce Operation Guides, Standard Claim Processes, and Jurisdictional References, and indicated it was "completing an additional search for responsive training and resource materials in effect from September 2023 through the end of claim handling and will produce additional nonprivileged documents located during that search." (Schaffer Decl., Docket 43-2, Exhibit C, p.37:7-19.)

The response was triply non-compliant: (a) it failed to respond to the request which, again, is for input from external and internal consultants; (b) it contains no concurrent production or future production date; and (c) it hints at an ongoing search and rolling production, neither of which is permitted by the Federal Rules.

As State Farm notes, it supplemented its responses to our Requests for Production, Set Two, *again* after the IDC. (Schaffer Decl., Docket 43-3, Exhibit S). But in that additional supplement, the insurer (a) did not further supplement its response to Request 18, and (b) otherwise granted itself various leeway unsupported by the Rules, a point Plaintiffs made in their opening memorandum, but which State Farm ignores. (Plaintiffs' MPA, Docket 43-1, pp.14:21-15:2.)

Third, State Farm *twice* faults Plaintiffs for failing to acknowledge its further responses to Request for Production, Set One, noting that those responses "expressly state that State Farm 'completed its diligent search and reasonable inquiry for additional non-privileged documents responsive to this request and its production of documents as agreed herein.'" (Opposition, Docket 53, pp.5:10-13, 22:5-8.) But the argument is both a deflection and an admission.

It is a deflection because this motion has nothing to do with Requests for Production, Set One, which is why (a) Plaintiffs' motion did not discuss State

Farm's supplemental responses on August 21, 2026 (Hoffman Declaration, Docket 53-1, Exhibit I), and (b) State Farm's compliance with the Rules as relates to *those* requests has no relevance here.

It is an admission because by pointing to valid responses that have nothing to do with this motion, State Farm shines a light on its litigation strategy, which involves serial and deliberate violations of the Federal Rules. *None* of the myriad responses actually at issue here—initial, or supplemental—include the Rule-compliant language State Farm points to.

Fourth, State Farm correctly points out that the Rules allow it *either* to produce the documents together with its responses, or to state "another reasonable time" in the response. (Opposition, Docket 53, p.22:12-13.) But its responses satisfy neither approach. State Farm then informs the Court that the Advisory Committee Notes contemplate the possibility of "staged productions." That is true. It is also misleading. The Note states: "When it is necessary to make the production in stages *the response should specify the beginning and end dates of the production.*" State Farm's responses contain no such specification.

Fifth, State Farm defends its thousands of pages of non-responsive productions—an essential part of its pattern of discovery abuse—by ignoring 17 of the 18 categories of non-responsive documents identified in a sworn declaration by Plaintiffs' counsel (Opposition, Docket 53, pp.20:20-21:5, *not* discussing Schaffer Declaration, Docket 43-2, ¶77.) Rather, State Farm insists its production of guidelines relating to broker communications was justified because of a document request by Plaintiffs. (Opposition, Docket 53, pp.20:26-21:3.)

The argument is more misdirection. Plaintiffs have never requested

*guidelines* relating to broker communications. As State Farm's brief makes plain, the request was for claim-related communications between State Farm and any insurance broker relating to the property, loss, claim, or Plaintiffs—in other words, *claim-related communications*. The produced *broker guidelines* were never sought and have no bearing on this case. Like the other 17 categories, amounting to thousands of produced pages, the documents were produced (as is State Farm's practice in bad faith cases) to bury Plaintiffs in documents requiring hours of unnecessary lawyer time to review. The conduct is abusive and, particularly given (a) the *Tong* rulings, and (b) the other misconduct here, is sanctionable.

Finally, and remarkably, but perhaps *not* incredibly, on September 11, 2026, approaching six months overdue, with this motion for sanctions pending, after six p.m. on Friday, September 11, State Farm wrote to Plaintiffs' counsel as follows: "[P]lease be advised that State Farm's production of resources, which we anticipated completing by September 4, is not yet complete. In particular, in preparing that production, we found that the version of a responsive document effective during a portion of the agreed time frame was inadvertently omitted. That document will be produced shortly. *We are currently confirming whether there are any other outstanding resources within the scope of our agreed production and will supplement any production and State Farm's written responses once complete as previously agreed.*" (Supp. Schaffer Decl., ¶15, Exhibit B (emphasis added).)

The communication is remarkable because:

- it admits State Farm has yet to produce even the narrow categories of documents it promised to obtain and produce, now six months overdue;
- notwithstanding this motion for sanctions, and after filing its

Opposition insisting that it has not violated Rule 34, State Farm's communication unapologetically states that it has not, half a year in, concluded its search for documents, even as to its self-narrowed scope of its "agreed production", or identified a date of completion; and

- State Farm suggests the existence of *an agreement* between the parties as relates to its supplemental productions, written discovery responses, and timeline, an agreement which is pure fiction. (Supp. Schaffer Decl., ¶15.)

State Farm is not a corner bodega with resource challenges; it is the largest insurance company in the country. It has highly competent retained and in-house lawyers who know the Federal Rules and can understand and comply with a court directive. The carrier has demonstrated an indifference to both. It has continued without apology the misconduct cited by the *Tong* Court. It has thumbed its nose at this Court's clear directives by failing to confer with its Oklahoma attorneys, to thereafter confer with Plaintiffs' lawyers, and to explain in its Opposition "what the universe is here [referring to the Oklahoma productions] and what might plausibly be relevant and what not…."[14] State Farm has made plain its willingness to disobey the Court's orders in support of its abusive discovery strategy.

Sanctions should be awarded sparingly, of course. But the misconduct proven here, State Farm's misleading defense of its conduct, and especially the renewed manifestation of its abusive discovery strategy, even while this motion pends, strongly support such an award here under FRCP 37.

[14] Supp. Schaffer Decl., Exhibit A, p.24:8-10.

## II. Water Initiative Document Requests.

Plaintiffs believe the core dispute here relating to production of initiative documents described in their moving papers[15] is primarily informed by, though obviously not controlled by, *Tong*. Given the near identicality of the claims and discovery disputes in both substance and time, it would be illogical to focus on other cases; here, we have an essentially identical dispute, involving the same type of loss, same insurer, and a ruling directly on point in essentially every meaningful element. *Tong,* 2024 WL 5472414, at *1.

In *Tong,* this Court heard and rejected the identical relevance and proportionality arguments State Farm asserts here. *Id.* at 2024 WL 5472414, at *9 et seq. Add to that the rulings in *Hursh, West,* and *Savas,*[16] where in each case courts ordered production of the same categories of documents relating to State Farm initiatives at issue here, and it would seem this Court would have what it requires to rule.[17] Having already briefed these issues extensively upon a detailed

[15] Plaintiffs' MPA, pp.11:1-12:4; Schaffer Decl., ¶¶13-30.

[16] Schaffer Decl., Docket 43-2, ¶¶108-127, describing the three cases and related rulings. *See also Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474 (D.S.D. 2012) [in stand-alone insurance bad faith case, court orders production of documents related to the insurer's cost containment programs, profitability initiatives, and loss adjustment expense goals, finding that these documents would tie the insurer's actions in handling the specific claim to a larger company pattern aimed at reducing expenses and increasing profits].

[17] State Farm's heavy reliance on *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020), is particularly misplaced. That case involved discovery to identify a new plaintiff to prosecute a claim absent a viable class representative, a search for parties, not evidence bearing on an already-pleaded claim. Here, the initiative documents go directly to the merits of Plaintiffs' bad-faith and punitive-damages pleaded allegations—textbook "claim or defense" discovery—not the subject-matter fishing that the 2000 amendment eliminated.

factual and procedural showing, Plaintiffs therefore will make only a few additional points in response to State Farm's Opposition:

**A. *Tong* was Not an "Interlocutory" Ruling.**

State Farm never argues *Tong* is wrong.

Given the identicality of the claims and the discovery dispute, it would seem to be incumbent upon State Farm to explain why this Court should take a contrary view to *Tong*. It never does. Instead, it says the decision was "interlocutory", suggesting the order was not final and should thus be ignored. (Opposition, p.19:21.)

The assertion is false. State Farm sought review of one holding in the Magistrate's December 2024 order, made in light of State Farm's proven discovery abuses, which allowed for a hands-on inspection of the carrier's claim system to ensure compliance with the Court's production orders. But State Farm never sought review of the Magistrate's rulings compelling production of the guidelines, initiative, and personnel documents. The *Tong* order is final, citable, and should be strongly persuasive.

**B. The Relevance Threshold is Lower Where the Non-Moving Party Has Exclusive Access to the Documents at Issue.**

State Farm's primary argument is the requested documents are not relevant because there is an insufficient nexus between Plaintiffs' claim, and the systemic programs State Farm put in place to reduce its water loss exposure in California, including by driving up the volume of denials. *Tong* rejected the argument. We believe the showing in Plaintiffs' moving papers is sufficient.

But it is worth pointing out that State Farm omits from its discussion another

key Rule 26(b)(1) factor, that is, "information asymmetry," a circumstance acknowledged by the Rule and Advisory Committee. The Rule provides that the relevance and proportionality analysis must consider "the parties' relative access to relevant information…." The Advisory Committee note following the 2015 amendments acknowledged that a defendant with exclusive access "may appropriately bear a disproportionately heavier discovery burden."

State Farm cannot depend in its Opposition on factual assertions and declarations that its conduct was blameless, assert that Plaintiffs have no contrary proof, and then argue there is an insufficient nexus, while jealously refusing access to the very documents that will prove otherwise. Indeed, as Mr. Romano has alleged, *secrecy* is an essential element of State Farm's initiatives. (Romano Decl., ¶30.)

Considering the Rule 26(b)(1), which acknowledges the relevance of access, and the burden-shifting framework under which Plaintiffs need only clear a low relevance hurdle after which the burden is State Farm's to establish irrelevance and disproportionality,[18] it should be clear that Plaintiffs have demonstrated the appropriateness of the requested productions.

### C. The Initiatives Were Implemented at the Executive Level and Managed to Senior Claims Staff.

Steering clear of *Tong,* or the Oklahoma and California state court rulings, State Farm focuses on *Hangarter v. Provident Life & Accident Insurance Company*, 373 F.3d 998 (9th Cir. 2004). There the court allowed the institutional discovery, finding a nexus because the challenged "round table review" was

[18] *Tong*, 2024 WL 5472414, at *2, citing cases.

applied to the insured's claim. State Farm's argument here is that as there is no evidence the adjuster or supervisor in the Myles claim was involved in any State Farm water-related initiative, the discovery should be barred.

Lacking the productions, Plaintiffs are in no position to test State Farm's factual assertion that the Redmond and Dixon files contain no coaching that derives from the initiatives, a circumstance that itself supports production here. But it may be that the Dixon (adjuster) and Redmond (supervisor) personnel files do not contain direct evidence of the coverage reduction initiatives.

If that is the case, it would be true for two reasons:

First, coaching at the lower adjuster and supervisory levels at State Farm is routinely done orally, or if written, appears in individual claim files as opposed to personnel files. Second, as Plaintiffs have alleged, State Farm's water coverage programs were focused not only or even primarily on first level claim adjusters or their immediate supervisors, the sort of claims staff who appear in claim files that are routinely discovered in bad faith litigation. Rather, the programs aimed higher—AI-driven audits found errors or "findings" in water claims coverage decisions but attributed those "findings" to claims staff levels three and four (section leaders and claims managers) rather than one and two (adjusters and team managers), which levels almost *never* show up in claim files, and thus avoid production of their personnel files, precisely as State Farm urges here.

The company achieved two parallel salutary goals in taking that approach—by management to audit results at the *senior* claims level, it (a) achieved massive increases in water claim denials in California, while at the same time (b) keeping the interventions above the claims level and thus away from discovery in bad faith

litigation.

*Hangarter* acknowledges that corporate initiatives are relevant and discoverable. Cases like *Tong, Kirschenman v. Auto-Owners Insurance, Savas,* and the Oklahoma cases, as well as *logic,* support the foundational argument here: the absence of an immediate connection between corporate programs aimed at increasing profits by "improving" coverage "quality", and an individual line adjuster's handling of a specific claim, does not mean there is no causal chain linking corporate initiatives, to claim outcomes, to an insurer's bottom line. Indeed, even the tiny sliver of evidence revealed by way of litigation over the past few years, which Plaintiffs have detailed and explained previously, together with the Romano Declaration being filed together with this reply, makes clear *State Farm*, *itself*, has concluded these coverage and related initiatives result in large improvements in its bottom line.

**D. The Scope of Requested Performance and Incentive Requests is Appropriate.**[19]

Plaintiffs have explained the relevance and necessity of the requested performance and incentive evidence. (Plaintiffs' MPA, pp.26:7-27:13.) They have explained previously, and here, why limiting discovery to the adjuster and manager who show up in the claim file would deprive them of essential evidence. They have likewise explained here that such a limitation is precisely the outcome State Farm sought by managing, with great success, to more senior claims staff who rarely show up in claim files.

[19] This relates to Requests for Production, Set 2, requests 86-94. (Schaffer Decl., Exhibit A, pp.20:16-22:26.)

State Farm acknowledges the relevant authorities, even including *Tong,* but (a) exaggerates the scope of the requests, and then (b) argues the requests are overbroad—in other words, it seeks to limit production to the claims staff who appear in the file, avoiding revelation of documents relating to the two levels (section manager and claims manager) above adjuster and supervisor who were the primary focus of the initiatives.

The requests[20] are appropriate. They seek metrics (request 86), goals (request 87), reviews (request 88), audits/audit procedures (requests 89-91), and incentives (requests 92-94), relating to the two claims staff involved in this claim, and any claim staff or consultants *directly in their line of supervision at the time of the claim*. Those requests are not overbroad; they are consistent with the allegations in Plaintiffs' complaint and detailed explanation of how State Farm's water coverage initiatives resulted in a massive increase in California water loss denials, resulting in the failed investigation and baseless denial of their claim in 2025.[21]

**E. State Farm Has No Proof Relating to Burden.**

Plaintiff Willie Daniels, age 69, works at night stocking grocery store shelves. Plaintiff Kathy Myles, also a senior, is a retired DMV worker. Their home remains unrepaired with holes in the walls and damaged flooring and drywall. Their lawyer works on contingency and advances costs on their behalf due to their

[20] Schaffer Decl., Exhibit A, pp.20:16-22:26 (Requests for Production, Set 2, requests 86-94.)

[21] State Farm also objects on the basis of privacy concerns. (Opposition, Docket 53, pp.16:11-17:2.) There is a protective order in place, the standard mechanism courts use to satisfy the balancing test in *Williams v. Superior Court*, 3 Cal.5th 531, 552, 556 (2017). Also, as we pointed out at the IDC, Plaintiffs do not seek full personnel files, for instance regarding health information.

relative indigency. (Supp. Schaffer Decl., ¶¶17-20.) But in the event of an order compelling production here, State Farm seeks to shift costs to Plaintiffs. (Opposition, pp.23:11-24:2.)

Its evidence for that request is a declaration from a third-party vendor which has provided services in a 2023 case involving 18,717,153 documents. (Siff Declaration, Docket 53-3.) While the case is from Oklahoma, it is not one of the matters—*Hursh* and *West*—discussed here, and State Farm provides no information about the nature of the litigation, the nature of the document requests, or the contents of the documents. State Farm never asserts here that, were the Court to grant this motion, the scope of the production would be 18,717,153 documents, or the cost would be $4.3 million. Its declaration is valueless here.

Indeed, considering that production of the Oklahoma documents here would go at least partway toward satisfying Plaintiffs' document requests at issue here, and could be accomplished by simple agreement, immediately, costing State Farm nothing, together with State Farm's silence in response to the Court's orders regarding conferral with its colleagues in the Oklahoma cases, the Court may gather that, in fact, the burden on State Farm of any order compelling production here would be nothing like $4.3 million. There is no basis to shift costs here and strong reason *not* to do so.

## III. The Guidelines and Training Document Requests.[22]

As Plaintiffs set forth in their moving papers,[23] State Farm's responses to

---

[22] Schaffer Decl., Docket 43-2, Exhibit A, Requests for Production, Set 2, requests 17, 19-23; 82-85; Exhibit D, Requests for Production, Set 3, requests 103-114.

[23] Plaintiffs' MPA, pp.27:14-30:22; Schaffer Decl., ¶¶154-161.

requests for guidelines and training documents, and its productions, have followed the usual pattern: they ignored the requests, promised documents not requested, produced thousands of pages of irrelevant documents, and slow-rolled delivery of responsive materials. Indeed, the latest delivery was on September 11, 2026, and was preceded by an email from counsel in which, six months overdue, State Farm indicated it was still "*confirming whether there are any other outstanding resources within the scope of our agreed production and will supplement any production and State Farm's written responses once complete….*" (Supp. Schaffer Decl., ¶15, Exhibit B.)

State Farm's Opposition is misleading. It agrees guidelines and training are relevant and discoverable. It then says this: "Plaintiffs already have the relevant Operation Guides, Standard Claim Processes and Jurisdictional References; complete Dixon and Redmond training histories; and the water loss training reflected on those histories, *along with other resources for handling water-loss claims during the relevant time frame*." (Opposition, 18:3-7 (emphasis added).)

This is just the sort of fudge language State Farm employs throughout its discovery responses—*we are giving you identified documents, and **other stuff.*** The assertion is as obfuscatory here as it is Rule non-compliant when employed in discovery responses. Six months in, State Farm has yet to serve responses to each of the ten requests at issue indicating that it has searched for and produced all responsive documents in its possession or control.

Instead, State Farm limits its productions by reliance on language such as: "Consistent with its objections and State Farm's prior responses to discovery, *State Farm states that it committed to producing—and has produced—the relevant*

*training that was included in the training transcripts for Team Manager Ellen Redmond and Claim Specialist Robin Dixon….*" (Hoffman Decl., Docket 53-1, Exhibit G, pp.40:16-19, 55:24-28, 57:10-13, 58:23-27 (emphasis added).) State Farm again and again limits its productions to training or guidelines actually given to the adjuster.

Here is what State Farm does not say, on purpose, as part of the same strategic obstruction the *Tong* Court found: *we have searched for and produced all non-privileged, responsive documents.* Most troubling, State Farm never says it has produced powerfully relevant documents responsive to requests which identify with great specificity the documents at issue, by referring to documents produced or referenced in *Tong*, and which it knows exist and knows where to find. That pertains with greatest force to two requests: Set Three, Requests 106 ("Water Coverage – Foundation Video") and 108 ("Water Coverage – Foundation Losses"). (Schaffer Decl., Docket 43-2, Exhibit D, pp.8:25-9:3, 9:7-10.)

State Farm's Opposition is similarly obfuscating. On the one hand, it informs the Court that the "limitation [it] invokes is relevance and temporal applicability…." (Opposition, p.18:11-12.) It assures the Court that at least as to Set Three (Requests 103-114), it "identified the requested document among State Farm's earlier productions in this case." (Opposition, p.7:1-2.)

But on the other hand, as set forth, its discovery responses are expressly limited to documents reviewed by the adjusters here, and its Opposition refers vaguely to its production of *other resources for handling water-loss claims during the relevant time frame*." (Opposition, p.18:3-7 (emphasis added).)

As State Farm now appears to concede production should not be limited to

training and/or guidelines relied on, or reviewed by, the adjuster or supervisor in the claim, the Court may easily resolve the dispute. State Farm should be required to amend its discovery responses to Requests 17, 19-23; 82-85 (RPD-Set Two); and Requests 103-114 (RPD-Set Three) to indicate it has searched for and produced all responsive documents.[24]

Date: September 16, 2026

/s/Dylan Schaffer
Dylan Schaffer
Counsel for Plaintiffs

[24] Training and guidelines in place at the time of the water initiatives (2016 to present) are relevant and discoverable. That was the timeline the *Tong* Court adopted. But in the spirit of compromise, Plaintiffs will agree to limit the training/guidelines requests to 2020 to present.

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this brief contains 6324 words, which complies with the word limit of L.R. 11-6.1.

Date: September 16, 2026

/s/Dylan Schaffer
Dylan Schaffer
Counsel for Plaintiffs