J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Nicholas J. Peterson (287902)
**Kerley Schaffer LLP**
1939 Harrison Street, #900
Oakland, California 94612
Telephone: (510) 379-5801

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

KATHY MYLES, an individual, and WILLIE DANIELS, an individual,

Plaintiffs,

v.

STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 10,

Defendants.

Case No.: 2:26-cv-00452-CAS-MBK

**DISCOVERY MATTER**

Magistrate Judge Michael B. Kaufman

**SUPPLEMENTAL DECLARATION OF DYLAN SCHAFFER IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, AND FOR SANCTIONS**

Hearing Date: September 30, 2026
Time: 9:00 a.m.
Courtroom: 255 E. Temple St., Los Angeles, Courtroom 550, 5th Floor

2nd Amended Complaint: 3/16/2026
Discovery Cutoff: 4/15/2027

I, Dylan Schaffer, declare under penalty of perjury as follows:

1. I am an attorney licensed to practice in California and before this Court. If called to testify I would do so under penalty of perjury as follows:
2. I filed a sworn declaration in support of the pending motion to compel and for sanctions on August 24, 2026. (Docket 43-2.)
3. I have submitted hundreds of declarations, including in many cases against State Farm General Insurance Company, employing the identical language relating to the statements being made under penalty of perjury that were used in that declaration.
4. No lawyer or court has ever suggested the declaration form I employed was not properly sworn or did not sufficiently assert the truth of the statements therein. I believed at the time I filed it that the declaration (Docket 43-2) was properly sworn, and I have no reason to have a different view now.
5. But given the importance of the issues being litigation in this motion, in an abundance of caution, the prior declaration (Docket 43-2) is incorporated herein in its entirety.
6. I herewith testify that the contents of that declaration (Docket 43-2) were true and correct when it was made.
7. To the extent the Court were to conclude any assertion in that declaration was not properly sworn, or that I failed in some matter to swear to the truth of the assertions contained therein, having incorporated the declaration in its entirety, I hereby adopt each assertion and swear to its accuracy by way of

this additional sworn declaration.

8. A full copy of the transcript of the IDC proceedings on August 17, 2026, is attached as **Exhibit A.**

9. Following the Court's order at the IDC to both sides to discuss the scope and relevance of the productions in the *West* and *Hursh* cases in Oklahoma, the parties conferred. State Farm's counsel did not provide any information about her having any contact with her colleagues representing State Farm in the Oklahoma cases, *West* and *Hursh* cases, or provide any further information about the document productions in those cases.

10. In its Opposition, State Farm did not provide any response to or evidence any compliance with the Court's orders relating to the Oklahoma productions.

11. At no time since the August 17, 2026, IDC, has State Farm's counsel provided any information about its productions in the *West* and *Hursh* cases in Oklahoma.

12. Since the August 17, 2026, IDC, State Farm's counsel have never provided any information regarding any discussions they may have had with their Oklahoma colleagues regarding the scope and relevance here of the Oklahoma productions.

13. In compliance with the Court's order, in my original declaration (Docket 43-2, pp.27:20-38:16) I provided information regarding the Oklahoma cases, productions, recently de-designated materials, and what all of it proves about

the scope and relevance of those materials.

14. Given State Farm's failure to provide any information of the sort the Court sought in its directives at the IDC, together with our reply I am filing a supporting declaration from Mark Romano, a consultant both in the Oklahoma cases and in this matter, which shed further light on the Oklahoma productions.

15. On September 11, 2026, State Farm's counsel wrote the following to me in an email: "[P]lease be advised that State Farm's production of resources, which we anticipated completing by September 4, is not yet complete. In particular, in preparing that production, we found that the version of a responsive document effective during a portion of the agreed time frame was inadvertently omitted. That document will be produced shortly. [It produced a 14-page generic training document hours later.] *We are currently confirming whether there are any other outstanding resources within the scope of our agreed production and will supplement any production and State Farm's written responses once complete as previously agreed.*" (Emphasis added.) **Exhibit B** is a true and correct copy of the email received.

16. At no time did I enter into any agreement with State Farm of the nature described in the comments in the prior paragraph. Rather, as this motion suggests, at all times I have insisted on compliance with the requirements of Rule 34.

17. Plaintiff Willie Daniels, age 69, works at night stocking grocery store shelves.
18. Plaintiff Kathy Myles, also a senior, is a retired California DMV employee.
19. Since the 2025 water loss, their home remains unrepaired with damaged walls, floors, and cabinets.
20. My firm works on contingency and advances costs on their behalf due to the Plaintiffs' indigency.

I declare under penalty of perjury this 16th day of September, 2026, at Oakland, California, that the foregoing is true and correct.

/s/ Dylan Schaffer
Dylan Schaffer
Counsel for Plaintiffs

EXHIBIT A

EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| KATHY MYLES,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. CV 26-452-CAS (MBKx)<br><br>Los Angeles, California<br>Monday, August 17, 2026<br>1:41 P.M. to 2:13 P.M.<br><br>VIDEOCONFERENCE |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

Appearances: See Page 2

Deputy Clerk: James Muñoz

Court Reporter: Recorded; CourtSmart

Transcription Service: JAMS Certified Transcription
16000 Ventura Boulevard #1010
Encino, California 91436
(661) 609-4528

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

For the Plaintiff: Kerley Schaffer LLP
By: DYLAN L. SCHAFFER
NICHOLAS J. PETERSON
1939 Harrison Street, Suite 900
Oakland, California 94612
(510) 379-5801
dylan@kslaw.us
nicholas@kslaw.us

For the Defendants: Sheppard Mullin Richter and Hampton LLP
By: JENNIFER M. HOFFMAN
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071
(213) 620-1780
jhoffman@sheppard.com

Sheppard Mullin Richter and Hampton LLP
By: SARAH A. BLITZ
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071
(213) 617-5521
jhoffman@sheppard.com
sblitz@sheppard.com

LOS ANGELES, CALIFORNIA, MONDAY, AUGUST 17, 2026, 1:41 P.M.

THE CLERK: Calling case CV 26-452, *Kathy Myles v. State Farm General Insurance Company*.

Appearances, please?

DYLAN L. SCHAFFER: Good afternoon, Your Honor. Dylan Schaffer for the plaintiffs.

THE COURT: Good afternoon, Mr. Schaffer.

NICHOLAS J. PETERSON: Nicholas Peterson also for the plaintiffs. Good afternoon, Your Honor.

THE COURT: Good afternoon.

JENNIFER M. HOFFMAN: Good afternoon, Your Honor. Jennifer Hoffman of Sheppard Mullin Richter and Hampton on behalf of State Farm General Insurance Company.

THE COURT: And good afternoon, Ms. Hoffman.

SARAH A. BLITZ: And good afternoon, Your Honor. Sarah Blitz, also of Sheppard Mullin, on behalf of State Farm.

THE COURT: All right. Good afternoon.

I think that should account everybody; is that right?

MR. SCHAFFER: Yes, Your Honor.

THE COURT: All right. Well, it's good to see everyone again. I'd hoped to not see you all soon, but that's the way things go sometimes.

I had a chance to read over the disputes here. I guess the first thing I wanted to start with is it seems --

maybe I could ask Ms. Hoffman -- is that I know you were in the process of making some productions here and wasn't clear if you were reevaluating your position on certain issues or just figuring out what responsive documents you have. Do you have any updates just in terms of production or your position that changes any of the principal issues before us here today?

MS. HOFFMAN: Thank you, Your Honor.

Yes, we were going back over our productions and confirming that we completed searches on issues and produced as agreed. We produced most recently on Friday. I think this week we expect to confirm that we've produced other categories and served those amended responses.

The issues that has been holding up the amended responses is that there were some further claim-handling done on the claim that Mr. Schaffer and Mr. Peterson are aware of based on the production of the subpoena records, I understand. I do believe that we will be able to produce an updated claim file by the end of this week. That is our goal. We had raised the issue proactively with counsel, as the claim specialist who was assigned to this claim -- her deposition is currently set for Monday. We had suggested pushing it out so that we can get that production complete and to them. They refused.

So we're doing our best to get that to them before

the deposition because we would object to any claim for a second deposition of her given those facts and given where we are in discovery and that we've been working things out. We've produced another witness for deposition already. We've completed the inspection. I believe we have dates in September for the plaintiff's depositions. So things are moving forward.

THE COURT: Okay. And I take it when you say you -- your amended responses are with a more complete claims file, those are -- that's information specific to these plaintiffs. It doesn't get at the policy, initiative -- whatever term we're using -- that these discovery requests are directed at; is that right?

MS. HOFFMAN: Well, our -- we've agreed to produce -- and we've agreed to produce the -- we've produced the training transcripts for those -- the claim handler and team manager on the claim. We've produced the training listed on those transcripts related to the handling of water loss claims. We've produced the operation guides and policy and procedure documents that were in effect at the time, and we even agreed to go back two years prior. We've produced other resources or job aids that were also around two years prior. And these claim specialists -- the claim specialist and the T.M. joined State Farm about two years prior. I believe their hiring dates were in 2023 and 2024.

And we've also produced the email -- we've produced the claim file. We've produced an email -- if I can share a screen, it's a real-time email that was exchanged between the claim specialist and the team manager as they were considering the coverage issue on this claim, and it shows exactly what they were looking at. It was the Operation Guide 7520, and we've produced that as well. And if I can share the screen, I'm happy to do that to show this is what they were looking at for this claim.

And in fact, in that email Ms. Dixon (phonetic), the claim specialist, says, "I want to make sure I get this right because the last time I had a similar claim, I didn't get it right, and I was" -- "the coverage position was changed, and we accepted coverage on that." And we even went and have looked for and found that other claim file and produced the narrative part of that claim file with personal information redacted of the other third-party who's not a party to this suit.

So we have provided them with the information that shows what these folks on this claim were looking at and we -- what they are asking for beyond -- they've made no offer of proof that it has anything to do with this claim.

THE COURT: Okay. All right. Thank you, Ms. Hoffman. I think I understand your position here.

Mr. Schaffer, so let me ask you: The documents

you're not getting that you're seeking here, are these all documents you've gotten in other cases against State Farm?

MR. SCHAFFER: No, Your Honor.

THE COURT: Okay.

MR. SCHAFFER: So I'm happy to go through what Ms. Hoffman just said, or I can address sort of the higher-level thing, really however you'd like us to proceed.

THE COURT: I think the higher-level thing here just --

MR. SCHAFFER: Yeah.

THE COURT: I take it that these issues may not be resolved without some motions practice, but it would be helpful for me just to get a sense of --

MR. SCHAFFER: Of course.

THE COURT: -- which the --

MR. SCHAFFER: Yeah.

THE COURT: -- the email does lay out. I just get a sense from each side what the categories are and where the disputes really are here so --

MR. SCHAFFER: There is one category which we would, you know, likely want to litigate, and that sort of -- it was a little bit hidden within the Rule 34 allegations.

Ms. Hoffman's basically said -- and this is the same position they took in *Tong*. It's, like, "What you get is you get training documents that were trainings that these"

-- "this examiner" -- you know, like, you don't get any of the other training documents that are available, and we've asked them for -- you know, just to give you one example, there is a series of training documents relating to the investigation and coverage application of foundation losses. We don't have those. I mean, how those would not be produceable in a case in which State Farm denied a foundation water loss is beyond me. But their position is "You get what's on the training transcripts and not" -- so I think, again, relying on the order in *Tong*, I think, you know, what we entitled to is what as available, you know, in a reasonable time frame but -- so that's the training, and that's, you know, one of sort of the five categories.

But the four categories that I listed "A" through "D" in the email all relate to a sort of higher-level question, which is, you know, since 2016 but especially since 2020, you know, is this the result of a, you know, plan, scheme, agreement at State Farm to essentially dramatically reduce their water loss indemnity and loss adjustment expenses in California, or is this a case about, you know, a single water loss?

And, you know, I’m here to -- I'm here to -- you know, preliminarily at least -- or, you know, maybe through motions practice -- get an answer to that question. Because, if the answer is, you know, this -- "You are absolutely" --

in contrary to Tong and, I think, contrary to the law, "You're absolutely just entitled to know and litigate what happened in this claim," you know, I -- okay. But if not, we're not talking about documents that I've seen. We're not talking about documents that, you know, I can describe with any specificity. We're talking about terabytes' worth of material.

I mean, this is the largest insurance company in the United States and they -- I believe that they set out in 2020 to save billions of dollars on the backs of their customers and we -- and the interesting thing is that this morning a very, very substantial news article came out in Oklahoma relating to the exact same scheme as relates to wind losses in Oklahoma, Texas, and New Mexico. The "State Farm Quality Plan," which is a 2020 -- one of the names they use to these initiatives in 2020, relates to nonweather water losses -- us; wind -- us -- or them, Oklahoma, and; fire losses. I mean, it's the same scheme. And I can tell you --

THE COURT: So let me ask you.

MR. SCHAFFER: Yeah.

THE COURT: So you haven't seen documents that would substantiate the water -- that there was this change in policy or you have?

MR. SCHAFFER: No. I absolutely have seen documents that describe the water plan, that describe the

water initiative, that explain the essential scheme, which is a --

THE COURT: But is that -- but I just want to -- just a pure factual matter what --

MR. SCHAFFER: Sure.

THE COURT: Are you seeking the same documents you've seen previously here?

MR. SCHAFFER: Those and hundreds of thousands of pages in addition to that.

THE COURT: And what makes you think those exist and what --

MR. SCHAFFER: Because they've got them in Oklahoma.

THE COURT: Okay.

MR. SCHAFFER: And the --

THE COURT: So you're --

MR. SCHAFFER: And the -- just so we're clear, the "wind initiative" and the "water initiative" or "wind quality plan" or "water quality plan" are one and the same. They are -- it's the same thing and the same -- we now -- know based on these articles, we know the name of the -- we confirmed what we kind of knew already, which is the name of the consultant involved. We understand that the CEO of the company was -- the now CEO was the head of a task force which was managing this. We have C-level executives who are

running these quality plans. And, you know, there's a lot of materials. I mean, I understand --

THE COURT: So -- I'm sorry. I'm sorry I keep -- I'm just -- so --

MR. SCHAFFER: No problem. No problem.

THE COURT: The Oklahoma thing, sounds like, is a recent development; right?

MR. SCHAFFER: The litigation there has been ongoing for about six months, but in the last six weeks, orders have been entered directing State Farm to produce the documents. So we now know -- I don't have the document, but I know the volume, and I know -- because I understand the way wind and water are so closely connected, I know that those documents are going to bear very, very heavily on the discovery requests that we're targeting.

THE COURT: Okay. So let's just put aside the Oklahoma documents --

MR. SCHAFFER: Yeah.

THE COURT: When you submitted these discovery requests, what were you looking for?

MR. SCHAFFER: The Oklahoma documents.

THE COURT: Oh, you already knew the Oklahoma documents were out there?

MR. SCHAFFER: Because -- so there's sort of two questions in your question. One is: Do you know the

specifics? And one is: Do you understand the nature of the scheme, the nature of the types of documents we're talking about? So I didn't know the former, but I knew the latter. Now I know both.

THE COURT: Okay. Okay. And this -- the Oklahoma documents, as we're using it as shorthand, are those -- those encompass all the four categories that are set out in your email?

MR. SCHAFFER: They -- no. They encompass the -- well, I'm sure they're not complete on water because they were focused on wind, but they include water by necessity. They're going to basically include "A" and "B." They're not going to include the personnel files for our adjustors -- and I can explain to you why that's essential -- and they're not going to include the pattern evidence because they're talking about wind, not water, but they're going to include the same types of evidence that we're seeking in "D" for wind.

THE COURT: Okay. Okay.

MR. SCHAFFER: And let me just -- if I can one thing, Your Honor, because I think it's essential.

THE COURT: (Indecipherable.)

MR. SCHAFFER: The reason we sought the personnel files in *Tong* and the reason we're seeking them here is that this -- the plan consists of -- it's managing to claims data. So what they do is they figure out the ways in which they're

losing money, they educate very, very senior people who educate down the thing, and then they manage to that. So it's essential that we understand what was happening with team manager and with examiner specifically as relates to this period and water losses because the -- this is part of the plan. So we wouldn't have those personnel files -- they wouldn't have personnel files in Oklahoma.

THE COURT: Okay. And the personnel files -- you're just seeking any information that would be related to their processing of water loss claims, I assume, not just an entire personnel file; right?

MR. SCHAFFER: No, of course not. I mean, I'm not interested in, you know, sexual harassment claims or anything like that.

THE COURT: Okay.

MR. SCHAFFER: What I'm looking at is essentially coaching. And sure, I mean, we could limit it to water loss claims. I mean, we can limit everything to water loss claims. I think it's going to be very challenging for them to separate out kind of general coaching and water loss. But sure. I'm focusing on the ways in which this kind of senior -- you know, C-level plan filtered down. And, you know, one of the things the witness testified to in the one deposition that we've done is that there is a -- this department at State Farm, which we've known about for years, called the

"Reinspection Department," which is essentially part of this sort of, you know, audit process they have for understanding, you know, the money they were losing on water loss claims and how they manage to that. So yeah, water loss claims.

THE COURT: Okay. Okay. That's helpful.

So, Ms. Hoffman, let me just ask you: So I initially thought, when I got the email, that you -- the parties here were just fighting over -- relitigating battles you've already fought. It sounds like this is involving substantially more different documents than previously. I'm not prepared to rule on anything today, but if you want to just quickly respond to what you understand --

MS. HOFFMAN: I'd like to --

THE COURT: Yeah. Yeah.

MS. HOFFMAN: Apologies, Your Honor. I would like to respond.

Mr. Schaffer this morning emailed and said, "This case is Oklahoma, and I want everything from Oklahoma." So this is a --

THE COURT: Okay.

MS. HOFFMAN: -- new development from today.

THE COURT: Yeah.

MS. HOFFMAN: As he mentioned, he provided us with an -- a plaintiff's bar blog post about this and about not being specific to time frame or request or what's involved in

the litigation. I'm not counsel in Oklahoma. I'm not licensed in Oklahoma. I have no awareness of any of that. But I do know that Mr. Schaffer is acknowledging that those documents relate to some wind claim and wind discovery, and we have a nonweather water loss here in California, and we are looking at the claim that they presented.

Regarding the performance files, they were certainly far broader than claim reviews, and I appreciate Mr. Schaffer now saying he's focused on water loss claims. So, if we are looking at a performance review related to a water loss claim, that's another issue. There is still, however, the concern of personnel --

THE COURT: I think I might have volunteered that --

MS. HOFFMAN: Yeah.

THE COURT: But as long as I --

MS. HOFFMAN: Yeah.

THE COURT: I take the general point that it should be somehow related to the claims here, not every -- not a complete performance file --

MS. HOFFMAN: Of course. And this is an individual water loss claim that we now know through subpoenas that we served in discovery that this leak lasted for days, and it even lasted days after it was discovered. The water was left on, and only days later was the loss reported to State Farm.

So that's what we have here. This is not -- there's no indication that there's hundreds of thousands of pages of Oklahoma documents that have any relation to this claim and this case.

Regarding the foundation losses' request, I see that that was included in a Request for Production Set 3, and it was reference to training produced in *Tong* by Bates range. I'm assuming -- and I haven't confirmed, but I'm assuming that that's because the *Tong* time frame involved a different time frame and different training that was effective and provided because State Farm's practices -- when there's a litigation, they will produce the training that relates to -- the training that the folks involved in the claim took for the relevant time frame.

So we have requests here that are not limited in time, that are not limited in subject matter, as discussed previously, and we are challenged with saying, "Here's what would be within the scope of discovery and proportional to this case based on what we see, based on what we know," and again, we know what they were looking at because there's a real-time email exchange between the claims specialist and the T.M. talking about the Operation Guide section that has also been produced.

So our position is that the asks beyond this -- and if I can back up to: This discovery started where we

received, I think, nearly a hundred requests for production before the claim file was even produced. They have taken one deposition. They have not deposed the claim specialist. They have not deposed the team manager. If they are looking for broad discovery like this, the less-burdensome way of asking for it is to serve an interrogatory or to have a 30(b)(6) deposition, but it's basically sending us on a goose chase without limitation to time to prove a negative, and it's -- it places us in an impossible position.

So we've responded in good faith, we've specified the search we've done, we've specified what we've produced, and we've produced the claim file, the Operation Guide sections, the training materials for these folks and this time frame.

THE COURT: Okay.

MR. SCHAFFER: Your Honor, if I could just add one point because I think it's essential.

So, when lawyers write these requests, they don't know what's there because I'm not at State Farm. So what we did in April of 2026 was I sent a large number but very, I think, clear discovery requests for document categories. So, when Ms. Hoffman says that this morning I asked for all this new material, it's not true. What's true is that now I can point to other lawyers in a state who have got the materials. I asked for these materials in April with great clarity, and

what I got was "You get nothing."

And one thing that I want to say now very loudly and very clearly is I am extremely concerned because this process has gone on four months, and this is exactly what happened in *Tong*. We are now almost halfway through our discovery period, and I don't have a page of documents that they were ordered to produce in *Tong*, they've been ordered to produce in Oklahoma, they've been ordered to produce in other cases. I don't have a page. So Ms. Hoffman can say it's all new. It's not new. It's been -- they've been sitting on these requests since April with great specificity --

THE COURT: Sorry, Mr. Schaffer. Well, you don't have -- you have some discovery that's been produced; right?

MR. SCHAFFER: I have -- as to the categories at issue in this -- today --

THE COURT: Yes. Okay.

MR. SCHAFFER: -- I don't have a page.

THE COURT: And when you say "what's been produced in *Tong*," do you just mean the personnel files?

MR. SCHAFFER: Well, we actually didn't get anything in *Tong* because the case resolved. They --

THE COURT: Oh --

MR. SCHAFFER: What they were ordered to produce --

THE COURT: Well, you -- what was ordered in *Tong*?

MR. SCHAFFER: These exact categories: the water

initiative documents, the metrics, the personnel files.

THE COURT: Okay. But you didn't end up getting them?

MR. SCHAFFER: No. I got nothing because State Farm's pattern in these case is that, when they're ordered to produce these materials, they come to the table with a lot of money. And frankly, I'm very concerned that in this case now they have some new denial theory that we're now four months in, I don't have a page, and now we're going to get a new denial letter based on documents that Ms. Hoffman subpoenaed.

So, you know, I appreciate the Court's process, I think that the meeting and conferring is -- can be useful, but I served highly specified document requests based on my long knowledge of these issues, and all that's happened in the period since April to now is Oklahoma has blown up. And so what we know from there is that the documents exist. They've produced hundreds of thousands of pages responsive because the courts there have been very aggressive about enforcing -- requiring State Farm to show its hand with regard to these schemes.

If Your Honor -- you know, if your order is "Look. You get to litigate the *Myles* case" -- or "the claim," and that's it, you know, okay. But I believe that what's happened here -- and I think we can prove it if I'm given the

documents -- is that State Farm decided to stop paying California water losses in 2020 and has saved billions of dollars on the backs of folks like the Myles. And, you know, I've done these cases for a long time. I've watched this happen. So I know it's there, I know the Oklahoma documents demonstrate the specificity, and what I'm asking for is not the documents -- I'm not seeking, you know, today -- this morning I sent a document request for all the Oklahoma documents. That documents doesn't -- request doesn't exist, and it's not in my email to Ms. Hoffman.

What I alerted her to was the article, which is a -- which is a reporter in Oklahoma who basically said, "Look. These courts now are ordering all of these documents to be produced, and here's what they say," and they demonstrate the existence of this plan. So now I can say with specificity it's Accenture who's giving them the consulting; we know there's a C-level task force called the "Fixed Profit Task Force" which is monitoring these things; we have C-level involvement. So what I have is specificity, but the requests happened in April.

THE COURT: Okay. Okay. I understand the parties here, and I haven't decided any of these issues. I just wanted to get a better sense of where things were at and, again, what was new and old in these disputes.

But -- so, Mr. Schaffer, I don't think you're going

to love what I'm going to propose here, but I am not prepared to decide anything today, and I would like you to meet and confer further principally about whatever you've learned from this Oklahoma litigation. So it -- I imagine you're already in contact with your colleagues out there to try to learn more about them and I -- it sounds like you're in communication with Ms. Hoffman.

I'll give the parties two weeks to continue to confer -- with respect to these issues. I don't know that any other ones require much more meeting and conferring because the parties seem a bit dug in on them -- on the personnel files and whatnot. But as to the Oklahoma documents, learn what you can -- and, Ms. Hoffman, I trust that you will as well -- and to exchange information so that when it comes to the Court, which I suspect it will, that we know exactly what we're talking about here in terms of what those documents are and how they might relate to the claims here.

And then, Mr. Schaffer, thereafter, I do authorize you to proceed with a motion to compel. I can't recall if we talked about this last time we were all together. I don't follow the joint stipulation process that you may be familiar with in the Central District. It's just an ordinary motions practice. So you can just file a motion, an opposition, a reply. You can notice a hearing date. I most likely will

not have a hearing, but you never know. This is a complicated issue. Maybe I would. But go ahead and notice a hearing date, and that's it. You don't need to follow that cumbersome joint stipulation process.

MR. SCHAFFER: Your Honor, a couple of just points of procedure.

One thing to note about Oklahoma, which you may not like, which is I can't look -- I can't see anything there or ask them any questions because, like everything else, it's under a protective order. The information that we've learned is essentially the volume of productions, which I know, and we've learned certain pieces of information from reporting about specifics -- this profit task force, this Accenture involvement, and so forth. So I think it unlikely that I'm going to be able to give Ms. Hoffman any specificity. Now, of course --

THE COURT: What were these -- were these produced from a discovery order?

MR. SCHAFFER: Correct. Multiple discovery orders in multiple cases.

THE COURT: Are those under seal?

MR. SCHAFFER: The discovery orders?

THE COURT: Yes.

MR. SCHAFFER: Absolutely not.

THE COURT: So you can see what the court ordered?

MR. SCHAFFER: I can see what the requests are. I can see what the court ordered, which is basically to produce everything that they asked for. So I can provide the Court that, but I can't --

THE COURT: Well, I think it's you're trying to plum the pleadings there a bit more and --

MR. SCHAFFER: Yeah.

THE COURT: I would be surprised if there's nothing useful in the public portions of what's filed there that could help educate at least me --

MR. SCHAFFER: A hundred percent. I --

THE COURT: I mean, some of this is, honestly, for me so I know what you're asking for.

MR. SCHAFFER: Yeah.

THE COURT: Because, if you're asking for hundreds of thousands of documents, you're going to have a high burden to demonstrate that kind of --

MR. SCHAFFER: Understood. Understood.

So the categories of documents that they were asking for and the categories that I'm asking for are identical.

THE COURT: Okay.

MR. SCHAFFER: The productions are State Farm, not the lawyers. So they produced what they had. You know, I assume that they produced it fairly. So I can describe the

volume, and, you know, that's what they have. So --

THE COURT: Well, yeah, I trust that Ms. Hoffman will do her due diligence as well and share what she can with you. I understand she's not counsel there, but it's her client so hopefully --

MR. SCHAFFER: Understood.

THE COURT: But I think two weeks should be sufficient for the parties to at least figure out better what the universe is here and what might plausibly be relevant and what not, so.

MR. SCHAFFER: One other point of procedure.

I know Your Honor has a 10-page limit for motions, and I want to do whatever is -- you know, I don't -- because of the joint statement we did in *Tong* -- that document was like, you know, 150 pages. So, you know, I obviously don't want to violate the Court's orders but given the volume here --

THE COURT: No, no. I think the ordinary 25-page motion limit should be sufficient here.

MR. SCHAFFER: Absolutely.

THE COURT: Do you agree?

MR. SCHAFFER: Absolutely.

THE COURT: Okay. This is not that complicated here so --

MR. SCHAFFER: No. I just didn't want to be

confined to 10.

THE COURT: No. No, that's fair. That's fair.

And, Ms. Hoffman, is that agreeable, from your perspective?

MS. HOFFMAN: Yes, Your Honor.

I would -- I will add, though, as far as timing, I expect that we would be pushed out if we can't resolve this and proceed to motion practice. I'm scheduled to be in a federal trial through the end of September. So it wouldn't -- we would have to have a hearing after that, if possible. I would be in trial --

THE COURT: So are you able to do the briefing during that time period?

MS. HOFFMAN: It will be challenging. I would -- if it's possible that we can push that out. My trial is scheduled from the 9th up to the 23rd of September.

MS. BLITZ: And I'm -- just -- I’m also in trial in a separate case starting the week of September 20th for three weeks.

THE COURT: I mean, I'm not inclined to push this off another six weeks. I know the discovery cutoff is not imminent, but it does back everything up if you get documents late in discovery so -- I mean, I do think it would be worthwhile for the parties to meet and confer further but if the -- if it doesn't work, we can proceed right away, and I'm

sure Mr. Schaffer can put together his motion pretty quickly, and you can file your briefing, Ms. Hoffman, before you're in trial. What would be your preference? Just to proceed --

MS. HOFFMAN: Thank you, Your Honor.

THE COURT: -- stage?

MS. HOFFMAN: Either proceed to briefing or a briefing where we would have until the last week of September to oppose it.

THE COURT: Mr. Schaffer, when would you be prepared to file your motion if I didn't impose some extra meet and confer (indecipherable)?

MR. SCHAFFER: Your Honor, I don't know what they're doing with these witnesses, I don't know what they're doing with the claim file but -- I mean, the answer is, you know, I can have the motion on file, you know, the end of next week.

But I just -- you know, this is a pattern. I've been watching this happen for ten years, and this "Hey, I'm in trial for six weeks" -- again, this is a -- it's a plan and what it -- what they do is they eat up one year, and we are not even going to have a ruling from Your Honor on this, and then they're going to want a production schedule if I get a page. So I'm just alerting Your Honor that I've been having these conversations, and, you know, if I'm -- if I come off as being a little frustrated, you could put me --

put yourself in my shoes. Every time we have a conversation there's two more weeks of meet-and-confer and then six weeks of trial and -- so you tell me -- I mean, I'll have it on file a week from Friday.

THE COURT: Let's --

MS. HOFFMAN: Your Honor, if I may.

THE COURT: Yeah.

MS. HOFFMAN: We have not yet served the -- we are gathering the updated claim file. Our production is not complete. So we are gathering the updated claim file, and we are circling back to confirm that we've produced everything else we've agreed to, and we can do that, I expect, in the next two weeks -- or at least serve the amended responses specifying when that production will be done so we know what is still -- so we know what is still at issue and having -- if that is -- if in the next two weeks that doesn't resolve the issue or it finally frames the issues, then Mr. Schaffer would have the benefit of filing that motion the first week of September. I'm simply asking for another week and a half, two weeks to oppose it.

THE COURT: But you want -- normally you would be opposing within two weeks. You want four weeks to oppose it?

MS. HOFFMAN: Yes, Your Honor.

MR. SCHAFFER: And you notice she just said, "We can give you amended responses," but didn't say when I'm

getting the documents, and those documents don't even relate to the categories at issue here, which they've made very, very clear on multiple meet-and-confers they're not giving me a page. So this --

THE COURT: I mean -- okay. So, Ms. Hoffman, I appreciate that, but I don't know that the amended responses sound like they're going to change the dispute here. So I -- and I really don't want to put this off another six weeks, which almost seems inevitable if we wait for after the trial because you're going to have post-trial briefing and whatever else.

So, Mr. Schaffer, I would say get your brief together filed by the 26th; so that's a week from Wednesday.

And, you know, Ms. Hoffman, your trial starts on the 9th?

MS. HOFFMAN: Yes.

THE COURT: I know -- when is your pretrial conference?

MS. HOFFMAN: It's on the -- well, we had it already. It's on the -- we have another continued conference on the 26th.

THE COURT: Okay.

MS. HOFFMAN: It's before Judge Orrick --

THE COURT: And --

MS. HOFFMAN: -- in the Northern District.

THE COURT: And you have your motions in limine to be briefed by the 26th, I take it?

MS. HOFFMAN: They've already been briefed.

THE COURT: Okay.

MS. HOFFMAN: It's a class action trial, and so there's further issues to discuss. It's a complicated trial.

THE COURT: Okay. Well, I mean, if he files -- if Mr. Schaffer files by the 26th, that'll give you -- if I give you two weeks, then -- I mean, that's the start of your trial. I don't know how much you'll do in the days prior to your trial, but it gives you substantial time to oppose. Is that sufficient?

MS. HOFFMAN: I appreciate that, Your Honor. Thank you.

THE COURT: Okay. So --

MR. SCHAFFER: So to the extent that there's more meet-and-confer, I'll just wait to hear from counsel for State Farm in that period, and if I don't hear anything or we don't get anything resolved, I'll just file the motions on the 26th?

THE COURT: The 26th. Opposition will be due on the 9th; and, Mr. Schaffer, your reply will be due on the 16th; and why don't we set it for a hearing on the 30th. I do think it's useful to at least notice a hearing date.

Mr. Muñoz, we're available?

(Pause.)

THE COURT: Are you there, Mr. Muñoz?

THE CLERK: I'm checking the (indecipherable).

THE COURT: James?

THE CLERK: Yes, sir? Oh, I was checking --

THE COURT: Are we available on the 30th -- September 30th?

THE CLERK: I'm looking, looking -- you have one 10:00 a.m. settlement conference that day, sir.

THE COURT: All right. Well, let's set this for 9:00 a.m. then.

THE CLERK: Okay.

THE COURT: Okay. And, yes, of course, I would encourage the parties to meet and confer further if they can narrow the disputes or eliminate them.

All right. Anything further from the parties today?

MR. SCHAFFER: No, Your Honor. Appreciate your time.

THE COURT: Thanks to you both.

MS. HOFFMAN: Thank you, Your Honor.

THE COURT: All right. Take care.

THE CLERK: Court is now adjourned.

(Proceedings adjourned at 2:13 p.m.)

///

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

| | |
|---|---|
| /s/ Julie Messa | August 24, 2026 |
| Julie Messa, CET**D-403 | Date |
| Transcriber | |

# EXHIBIT B

EXHIBIT B

**Dylan Schaffer**

**From:** Jennifer Hoffman <jhoffman@sheppard.com>
**Sent:** Friday, September 11, 2026 6:01 PM
**To:** Nicholas Peterson
**Cc:** Dylan Schaffer; Sarah Blitz; Madalyn Macarr; Chris Quesada; Gino Pasquale
**Subject:** RE: Myles v. State Farm - Request for Stipulation

Counsel,

Confirming receipt of your email late this afternoon. We are available to confer pursuant to Local Rule 79.5.2.2(b) on Monday between 10 am and 12:30 pm. Please circulate a call-in invitation for a convenient time.

Also, please be advised that State Farm's production of resources, which we anticipated completing by September 4, is not yet complete. In particular, in preparing that production, we found that the version of a responsive document effective during a portion of the agreed time frame was inadvertently omitted. That document will be produced shortly.

We are currently confirming whether there are any other outstanding resources within the scope of our agreed production, and will supplement any production and State Farm's written responses once complete as previously agreed.

**Jennifer Hoffman**
Partner

Sheppard
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071
Direct +1.213.617.4136 | Office +1.213.620.1780
jhoffman@sheppard.com | Bio | LinkedIn | sheppard.com

**From:** Nicholas Peterson <nick@kslaw.us>
**Sent:** Friday, September 11, 2026 4:07 PM
**To:** Jennifer Hoffman <jhoffman@sheppard.com>; Sarah Blitz <sblitz@sheppard.com>; Madalyn Macarr <mmacarr@sheppard.com>
**Cc:** Dylan Schaffer <dylan@kslaw.us>
**Subject:** Myles v. State Farm - Request for Stipulation
**Importance:** High

Hello Counsel,

We write to you to regarding documents we intend to attach to Plaintiffs' counsel's declaration in support of their reply to State Farm's opposition to Plaintiff's motion to compel documents, due next week, and which Plaintiffs will need to file under seal to abide by State Farm's "confidential" designations. These confidential documents include Bates labels: MYLEK00002147PROD - MYLEK00002163 PROD, MYLEK00002275PROD - MYLEK00002309PROD, and MYLEK00002402PROD- MYLEK00002419PROD.