J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Nicholas J. Peterson (287902)
**Kerley Schaffer LLP**
1939 Harrison Street, #900
Oakland, California 94612
Telephone: (510) 379-5801

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

KATHY MYLES, an individual, and WILLIE DANIELS, an individual,

Plaintiffs,

v.

STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 10,

Defendants.

Case No.: 2:26-cv-00452-CAS-MBK

**DISCOVERY MATTER**

Magistrate Judge Michael B. Kaufman

**DECLARATION OF MARK ROMANO IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FURTHER RESPONSES TO REQUESTS FOR PRODUCTION, AND FOR SANCTIONS**

Hearing Date: September 30, 2026
Time: 9:00 a.m.
Courtroom: 255 E. Temple St., Los Angeles, Courtroom 550, 5th Floor

2nd Amended Complaint: 3/16/2026
Discovery Cutoff: 4/15/2027

I, Mark Romano, declare under penalty of perjury as follows:

1. If called to testify, I would state under penalty of perjury as follows:
2. I have previously been a licensed insurance adjuster in Florida beginning in 1982 and have approximately 43 years of experience in the insurance industry, focusing on, among other things, the investigation, evaluation, and payment of first party insurance claims involving property policies and property damage coverage.
3. Additionally, I have approximately 23 years of experience supervising, auditing, and training adjusters in the investigation, evaluation, and payment of first-party claims involving property policies and commercial property damage.
4. My academic credentials include a Master of Jurisprudence in Risk Management from Texas A&M University School of Law and a Bachelor of Science in Risk Management & Insurance from Florida State University.
5. I currently operate Romano Claims Consulting, LLC, and over the course of my career I have held positions ranging from multi-line claims trainee to home-office claims management roles at two major property and casualty insurers.
6. My experience adjusting claims, supervising adjusters, managing litigation, and serving as an expert consultant and witness has afforded me the opportunity to review thousands of claim files from a wide variety of insurers. Through years of reviewing training materials, claims-handling guidelines, expert testimony, and deposition and trial testimony in bad-faith

matters, I have developed extensive familiarity with accepted insurance industry standards for good-faith claims handling.

7. I am retained by Kerley Schaffer LLP to provide consulting and potentially expert services in this case.

8. Before drafting this declaration, I reviewed the following:

    a. Plaintiffs' Second Amended Complaint, Docket 18;

    b. Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Compel, Docket 43-1;

    c. Dylan Schaffer Declaration in Support of Motion to Compel and accompanying exhibits, Docket 43-2 and 43-3;

    d. State Farm Opposition to Motion to Compel, Docket 53;

    e. Jennifer Hoffman Declaration in Opposition to Motion to Compel, Docket 53-1;

    f. Ellen Redmond Declaration in Support of Opposition to Motion to Compel, Docket 53-2;

    g. Laura Siff Declaration in Support of Opposition to Motion to Compel, Docket 53-3;

    h. Robin Dixon Declaration in Support of Opposition to Motion to Compel, Docket 53-4;

    i. Nicole Manduca Declaration in Support of Opposition to Motion to Compel, Docket 53-5;

    j. Transcript of the parties informal discovery conference on August 17, 2026, attached to the accompanying Supplemental Declaration of

Dylan Schaffer, Exhibit A.

9. I am retained by the Whitten Burrage firm, Oklahoma City, to provide consulting and potentially expert services in *West v. State Farm Fire and Casualty Company*, District Court of Comanche County, Oklahoma, No. CJ-2025-135, and *Hursh v. State Farm Fire and Casualty Company,* District Court of Oklahoma County, Oklahoma, No. CJ-2025-2626.

10. Both cases involve individual State Farm insureds who suffered wind and/or hail losses, whose claims were denied and/or underpaid, and who sued for bad faith.

11. In both Oklahoma cases, as here, the plaintiffs have alleged that the denial and/or underpayment of their claims is part of systemic initiatives at State Farm going back at least a decade aimed at reducing its claim-related liabilities, including both loss adjustment expenses and benefits payments.

12. In the *Hursh* case, following the filing of an order compelling the defendant to produce documents relating to its systemic programs relating to wind and hail claims, State Farm produced documents. A database holding the produced *Hursh* documents contains 156,745 documents.

13. In the *West* case, following the filing of an order compelling the defendant to produce documents relating to its systemic programs relating to wind and hail claims, State Farm produced documents. A database holding the produced *West* documents contains 687,719 documents.

14. Since the productions I have spent significant time reviewing the produced documents in both cases.

15. I am precluded by protective orders in both the *West* and *Hursh* cases from providing details regarding the contents of the documents I have reviewed.

16. In the *West* case, however, on August 20, 2026, the court de-designated many documents, including documents that had been used to depose Nicole Manduca, a Property & Casualty Claims Director, at State Farm, who has submitted a declaration here in support of State Farm's opposition to Plaintiffs' Motion to Compel.

17. Under the circumstances, I believe I can offer useful information regarding the scope and relevance of the Oklahoma productions, as well as the relevance of the documents produced in those cases to this matter.

18. Given the Court's indication at the parties' informal discovery conference on August 17, 2026, that it would like to have information about the nature of the Oklahoma productions to understand the scope of those materials and their relevance here, I believe it is appropriate for me to provide this declaration to assist the Court.

19. Upon the Court's order, I can provide further testimony or documents supporting the statements below for the Court's *in camera* review.

20. In the past decade at least, State Farm and both retained and internal consultants designed and implemented various initiatives at the senior executive level which sought to reduce claim payments and loss adjustment expenses in its property claims across the United States.

21. Initiatives targeting wind/hail and water claims were implemented together and were tracked in concert, as the recently released documents show. *See,*

*e.g.,* Schaffer Declaration, Docket 43-3, Exhibit U, p.17 ["Year-over-year trends indicate Wind/Hail and Non-Weather Water perils provide the greatest opportunity to impact enterprise results, accounting for 57% of Net Paid Indemnity (NPI) and 70% of claim counts."]

22. Documents from the Oklahoma productions relating to wind initiatives routinely contain information pertaining to design, implementation, tracking metrics, goals, and outcomes, for the parallel water initiatives, including in California.

23. While mid-western states like Oklahoma were the focus of wind initiatives, California was the focus of State Farm's water initiatives.

24. In particular, State Farm's California water initiatives focused on coverage, namely, reducing the number of paid claims by steering claims to specialized coverage teams or higher levels of claims staff, and audits of paid claims, to ensure a decrease in "findings" or errors where, per State Farm, the claims were improperly covered.

25. The recently de-designated documents show State Farm established clear metrics and goals for each of these initiatives and tracked its performance intensively.

26. I can generally say that the initiatives relating to California water coverage resulted in large percentage increases in denied claims with a resulting large benefit to State Farm's profits.

27. I cannot provide the specifics of those reductions and financial benefits due to the protective orders in the Oklahoma cases, but to be sure State Farm

sought, tracked, and reported those outcomes intensively during the past decade.

28. I have reviewed the description of State Farm's water initiatives that appears in the Declaration of Dylan Schaffer, Docket 43-2, pp.30:8-38:16.

29. Based on my review of the documents in the Oklahoma cases, counsel's description is accurate in its essentials and would be proven by documents within State Farm's possession and/or control.

30. In my opinion, based on my more than four decades of experience, these practices could only have been implemented successfully by maintaining their secrecy, because revelation would, in my opinion, have resulted in a substantial regulatory and consumer backlash.

31. In my opinion, based on my long experience working for insurance carriers, the practices at issue, which involve a systemic implementation of systems to reduce claim payments are not trade secrets, but were hidden from consumers and regulators to avoid precisely the large number of challenges by consumers, regulators, and state officials to the fairness of State Farm's profit-maximizing efforts.

32. In my opinion, these practices fall below and are inconsistent with the industry standard that applies to the investigation and adjusting of property claims in California.

33. In my opinion, given the allegations in the complaint in this case, I believe many of the produced documents in the Oklahoma cases are highly relevant to this case as bearing on State Farm's initiatives.

34. While there are documents in both Oklahoma cases that are claim-related, and/or relate exclusively to wind/hail claims, a substantial subset include documents bearing on State Farm's parallel water initiatives.

I declare under penalty of perjury this 16th day of September, 2026, at Holly Springs, North Carolina, that the foregoing is true and correct.

/s/ Mark Romano
Mark Romano